J. Andrew Coombs  (SBN 123881)
Annie S. Wang (SBN 243027)
J. Andrew Coombs, A Prof. Corp.
517 E. Wilson Ave., Suite 202
Glendale, California 91206
Telephone:  (818) 500-3200
Facsimile:  (818) 500-3201

andy@coombspc.com
annie@coombspc.com

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Louis Vuitton Malletier, S.A., | Case No.: C 07 3952 JW |
| Plaintiff, | Hon. Magistrate Judge Howard R. Lloyd |
| v. | NOTICE OF MOTION AND MOTION OF PLAINTIFF LOUIS VUITTON MALLETIER, S.A. FOR AN ORDER COMPELLING PRODUCTION, OR IN THE ALTERNATIVE, INSPECTION OF ELECTRONIC RECORDS |
| Akanoc Solutions, Inc., et al. | |
| Defendants. | |
| | Date:  April 29, 2008 |
| | Time:  10:00 a.m. |
| | Courtroom 2, 5th Floor |

TO DEFENDANTS AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 34 and 37 before the

Honorable Magistrate Judge Howard R. Lloyd in Courtroom 2, 5th Floor of the San Jose Division

of the United States District Court for the Northern District of California, located at 280 South First

Street, San Jose at 10:00 a.m. on April 29, 2008, Plaintiff Louis Vuitton Malletier, S.A. ("Louis

Vuitton") will move for an compelling production and/or inspection of electronic records.

The present motion is based upon this Notice of Motion, the Memorandum of Points and

Authorities attached hereto, the Declaration of J. Andrew Coombs and Exhibits attached thereto,

1    filed concurrently herewith and upon such further and additional evidence and records as may be

2    presented to the Court at or before the hearing hereof.

3

4    Dated: March 25, 2008                          J. ANDREW COOMBS
                                                     A Professional Corporation
5

6

7                                                    By:  J. Andrew Coombs
                                                     Attorneys for Plaintiff Louis Vuitton Malletier,
8                                                    S.A.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

**A.    Summary of Dispute.**

Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton") is a producer and distributor of luxury goods under a number of long-established, incontestable and world-famous trademarks, including LOUIS VUITTON, LV and a number of devices including those illustrated below (collectively the "Louis Vuitton Trademarks").

 

Defendants Akanoc Solutions, Inc., Managed Solutions Group, Inc. and their principal Steven Chen (collectively "Defendants") reportedly own and/or operate approximately fifteen hundred (1500) Internet servers at any given time, each of which host a varying number of websites. Declaration of J. Andrew Coombs ("Coombs Decl."), ¶ 8. Defendants have, at one time or another, hosted scores of websites which trade in the sale of counterfeit Louis Vuitton merchandise. Defendants have ignored repeated demands to disable access to the counterfeit offers appearing on websites hosted on their servers and engage in a shell game moving those websites to different Internet protocol ("IP") addresses assigned to them.

Despite legal responsibility for content appearing on websites hosted on Defendants' servers, Defendants offer "bullet proof" hosting designed to evade such responsibility and to defeat Louis Vuitton's admittedly relevant and appropriate discovery demands in this case.

On or about January 3, 2008, Louis Vuitton propounded separate sets of document production requests to each defendant. Coombs Decl., ¶ 3. Examples of relevant requests are set

forth below, along with sample responses. In their material respects, both requests and responses track as between defendants are not separately repeated herein.

The key material sought by these requests which are the subject of this motion are: (i) publicly posted Internet content evidencing offers made of counterfeit Louis Vuitton merchandise on the numerous websites hosted by Defendants, and (ii) traffic logs which may evidence the volume of underlying counterfeiting activity for which Defendants' are liable.

Not one printout, traffic log, page of information or bit of data from any of the 1500 servers has been produced. Although such data may still exist (or be recoverable) no effort has been made to produce such data. For these reasons, Louis Vuitton seeks an order to compel production or, in the alternative, to permit forensic inspection of a sampling of the servers.[1]

The document production request specifically requested production of electronic records and this request followed on correspondence among counsel pursuant to Fed. R. Civ. P. 16 and 26 expressly noting the parties' obligations to preserve electronic evidence. Coombs Decl., ¶ 2. As set forth verbatim below, Defendants' responses disclaim the existence of any responsive documents in their possession, custody or control.

Counsel for Louis Vuitton and Defendants met and conferred telephonically on more than one occasion concerning these requests and data which may (or may not) be available on Defendants' servers. Defendants assert (i) that they have no control over the servers once "leased" to an account; and (ii) even where they may have such control where a re-seller ceases to use a particular server, they have no obligation to preserve such data despite this litigation or to produce it. To the contrary, counsel freely admits that such data is "wiped" and routinely overwritten as a part of the Defendants' standard operating procedures. Coombs Decl., ¶ 8.

---

[1] As a practical matter, inspection of all 1500 servers is neither practical nor realistic and Louis Vuitton offered to inspect a sampling to review available data and to test recoverability of overwritten data. Coombs Decl. ¶ 7.

As outlined below, the foregoing position(s) are unsupported by any pertinent authority and, to the extent they evidence a wholesale "overwriting" of relevant data, an egregious and sanctionable violation of Defendants' discovery obligations.

**B.     Document Production Requests and Responses at Issue.**

**Request No. 1**

All DOCUMENTS[2] concerning the WEBSITES.

**Response to Request No 1**

AKANOC/MSG will produce correspondence/emails sent to AKANOC/MSG concerning the WEBSITES and any subsequent "take down" notices sent to re-sellers.  No other DOCUMENTS responsive to this request have ever been in AKANOC'S/MSG'S possession, custody or control.

**Request No. 5**

All DOCUMENTS RELATING TO any services YOU provide in connection with the WEBSITES.

**Response to Request No. 5**

No responsive documents have ever existed.  AKANOC/MSG has never provided any services to the WEBSITES.

**Request No. 7**

All DOCUMENTS concerning any items or merchandise sold or bought at or through the WEBSITES.

**Response to Request No. 7.**

No responsive documents have ever existed.  AKANOC/MSG has never bought or sold items or merchandise through the WEBSITES nor has it ever had any documents which evidence items or merchandise bought or sold through the WEBSITES.

---

[2] Capitalized terms are defined, but as the issues for resolution on this motion do not turn on those definitions, they have not been restated here.

**Request No. 12.**

All computer records or electronic data relating to the WEBSITES, specifically including records of all sales made through the WEBSITES.

**Response to Request No. 12.**

AKANOC/MSG will produce correspondence/emails sent to AKANOC/MSG concerning the WEBSITES and any subsequent "take down" notices sent to Web hosting re-sellers. No other DOCUMENTS responsive to this request have ever been in AKANOC'S/MSG'S possession, custody or control.

**Request No. 13.**

All BOOKS AND RECORDS related to the WEBSITES.

**Response to Request No. 13.**

AKANOC/MSG has never had any responsive documents in its possession, custody or control. AKANOC/MSG has never had any relationship or communication with any WEBSITE and therefore does not keep and has never kept, any books and records relating to the WEBSITES or any other Website (apart from the Website for its own business).

**Request No. 21.**

All DOCUMENTS, including but not limited to customer service records, financial records, telecommunications records and computer logs relating to the WEBSITES.

**Response to Request No. 21.**

AKANOC/MSG will produce any correspondence/emails sent to AKANOC/MSG concerning the WEBSITES and any subsequent "take down" notices sent to the re-sellers. No other DOCUMENTS responsive to this request have ever been in AKANOC'S/MSG'S possession, custody or control.

**Request No. 22.**

All DOCUMENTS RELATING TO or evidencing any COMMUNICATION through any of the WEBSITES.

**Response to Request No. 22.**

AKANOC/MSG does not have, and has never had, any documents responsive to this request.

**Request No. 24.**

All DOCUMENTS RELATING TO or evidencing any COMMUNICATIONS about the WEBSITES or any COMMUNICATIONS initiated through any of the WEBSITES.

**Response to Request No. 24.**

AKANOC/MSG will produce any correspondence/emails sent to AKANOC/MSG concerning the WEBSITES and any subsequent "take down" notices sent to re-sellers.  No other DOCUMENTS responsive to this request have ever been in AKANOC'S/MSG'S possession, custody or control.

**Request No. 25.**

All DOCUMENTS evidencing or containing any COMMUNICATIONS to or from any of the WEBSITES, specifically including emails.

**Response to Request No. 25.**

AKANOC/MSG has never had any responsive documents in its possession, custody or control. AKANOC/MSG does not communicate with the operators or owners of any WEBSITE.


        Louis Vuitton seeks documents evidencing the hosting of counterfeit sales offers on websites hosted by Defendants' servers and traffic logs and other communication data pertaining to those websites and the counterfeit offers.  Defendants do not object to production and have waived any objections concerning the cost or burden of such a production, any otherwise applicable privileges or that the requests are in some manner overbroad.

# ARGUMENT

**A.    Defendants Must Be Compelled to Produce Electronic Data or to Make Their Servers Available for Forensic Inspection.**

The issue before the Court is, therefore, clear: is electronic data on the servers within Defendants' possession, custody OR control? If, as Louis Vuitton contends, the data (or any portion of it) is within Defendants' possession, custody or control, then the consequences are plain: the data must be produced. If, as Defendants maintain, the data cannot be produced, then their servers must be made available for forensic inspection. *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050 (S.D.Ca. 1999). Should Defendants fail to produce such data or make their servers available, they must be held to account for their wholesale spoliation of evidence.

That an Internet Service Provider may be compelled to produce electronic records stored on its servers is well-established. See, for example, *In re Verizon Internet Services, Inc. v. Verizon Internet Services*, 257 F. Supp. 2d 244 (D.D.C. 2003). The only issue therefore, is whether the Defendants can fully insulate themselves from their discovery obligations through an alleged re-seller relationship by which purported offshore individuals can be set up to serve as "hosts" of offshore illegal activity although the activity admittedly occurs on servers owned by Defendants, possessed by Defendants and, ultimately, controlled by Defendants.

As described in more detail in the supporting declaration of J. Andrew Coombs, Louis Vuitton has attempted to offer less intrusive and even partial forensic inspection of unused servers as an interim, partial measure and, as outlined in *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050 (S.D.Ca. 1999), Louis Vuitton is prepared to accept procedural safeguards in addition to those implicated by the standing Protective Order should Defendants be compelled to produce electronic data stored on servers within their possession, custody and control. However, given

Defendants' dogmatic rejection of any production of such electronic data, there has been no resolution on such issues given a blanket refusal to produce one bit or byte of data.

### B.     Defendants Have Possession, Custody or Control.

Defendants admit that responsive data exists on servers which they own. Coombs Decl., ¶ 8. Defendants justify their failure to produce such data based on the untested proposition that the servers are leased to re-sellers and Defendants, therefore, have no control over the content on those servers. For purposes of this motion, the Court need not resolve the more fundamental factual question about whether Defendants' alleged "re-sellers" are arm's length viable businesses or a fictional device to avoid liability.[3]

First, all Louis Vuitton need show is possession, custody OR control. See, for example, *In re Bankers Trust Company*, 61 F.3d 465, 469 (6th Cir. 1995) ("legal ownership of the document is not determinative"). Defendants admit that they maintain custody of the servers, but they allegedly turn over operational control to the alleged re-sellers. Coombs Decl., ¶ 8. Defendants further admit that, as server capacity is reorganized and individual resellers change, the servers again come within their control. On the basis of Defendants' continued possession of the underlying hardware on which the data is stored, production is properly compelled.

Second, Defendants admit that they operate the servers and are in a position to "pull the plug" in the event of non-compliance with Defendants' terms of use. This operational control – based on possession of the underlying hardware – evidences control and, for these additional reasons, production is properly compelled.

Third, Defendants stated during the course of the Parties' meet and confer that as much as 10% of the servers are, at any given time, not in use and represent excess capacity. In such cases,

---

[3] Defendants have produced no contracts, agreements or other documents evidencing any relationship with the alleged re-sellers –all of whom are conveniently located offshore – nor do their financial records evidence any payment record which substantiates the alleged distinction between the purported re-sellers and the website counterfeiters.

the servers are operated, controlled and in the possession of Defendants in every sense of the word. In the interest of avoiding this discovery dispute, Louis Vuitton offered to inspect a sampling of that 10% to test the veracity of the Defendants' assertions. This, the Defendants have refused to consider.

### C.    Louis Vuitton is Entitled To Inspect the Servers if Defendants Maintain the Data Cannot Be Produced.

A party to litigation unable to produce electronic data, especially where the party contends such data has been destroyed, must make the computer hardware available for forensic inspection. See, for example, *Playboy Enterprises, Inc. v. Welles, supra, Simon Property Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639 (D.Ind. 2000). Such procedures are patently available here and have been offered to Defendants. Not only is a protective order in place, but Louis Vuitton has offered to accept procedural protections – none of which were discussed in detail as Defendants refuse to consider any production under any conditions. Coombs Decl., ¶ 9.

### CONCLUSION

For all the foregoing reasons, Louis Vuitton requests an order compelling production of (i) hosted websites incorporating offers of Louis Vuitton branded merchandise; and (ii) traffic logs pertaining to those websites. Should the Defendants maintain that such production is not possible, Louis Vuitton prays for an order compelling inspection of Defendants servers, such inspection to be conducted in accordance with the terms of the Court's Protective Order and such other conditions as the Court may consider appropriate.

Dated: March 25, 2008

                J. ANDREW COOMBS,
                A Professional Corporation

                By: J. Andrew Coombs
                Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

## DECLARATION OF J. ANDREW COOMBS

I, J. Andrew Coombs, declare as follows:

1.    I am an attorney at law, duly admitted to practice before the Courts of the State of California and the United States District Court for the Northern District of California. I am counsel of record for Plaintiff, Louis Vuitton Malletier, S.A. ("Louis Vuitton") in an action styled *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, *et al.*, and, except as otherwise expressly noted to the contrary, I have personal knowledge of the following facts.

2.    On or about November 6, 2007, I received a letter from James Lowe, counsel for Defendants noting the Parties' obligations under the Federal Rules of Civil Procedure to take appropriate steps consistent with those rules to preserve electronic data. On or about November 8, 2007, I replied to Mr. Lowe and noted that the issues related to electronic evidence were discussed during our early meeting pursuant to Rule 26. I further specifically noted Louis Vuitton's appreciation of Defendants' stated understanding of its responsibilities as evidence stored on Defendants' servers "will facilitate Louis Vuitton's analysis of the scope of their liability and damages". I received no response to my November 8 letter indicating that Defendants were at that same time systematically "wiping" and over-writing data stored on those selfsame servers.

3.    On or about January 3, 2008, I caused to be served Louis Vuitton's Second Set of Requests for Production of Documents on each of the three named defendants in this action, Akanoc Solutions, Inc., Managed Solutions Groups, Inc. and Steven Chen (collectively the "Defendants"). This Second Set of Requests for Production of Documents tracked previously propounded requests for production which inadvertently failed to attach an Exhibit A listing the Internet websites referred to in Louis Vuitton's defined term "WEBSITES". All requests referring to the WEBSITES in the first sets of requests for production of documents were objected to as ambiguous and no documents were produced.

4.     On or about February 1, 2008, my office received the Defendants' Responses to Louis Vuitton's Second Set of Requests for Production of Documents.  As outlined in the Memorandum filed concurrently herewith, Defendants consistently responded that they have no documents responsive to numerous requests pertaining to the WEBSITES.

5.     On or about February 5, 2008, I transmitted to defense counsel a letter proposing a meet and confer on various discovery issues, specifically including the Defendants' responses to Louis Vuitton's document production requests.  The letter specifically noted Defendants' failure to produce any documents from the WEBSITES and the necessity of moving for sanctions for spoliation of evidence if, as Louis Vuitton inferred from the responses, data was being systematically destroyed notwithstanding the Parties' obligation to preserve evidence.  In this letter I also noted Defendants' responsibility in law and cited *In re Bankers Trust,* 61 F.3d 465 (6th Cir. 1995) for the proposition that the Defendants' control over electronic data stored on their servers is sufficient to mandate production.  Defense counsel responded to my letter by assuring us that we would find the production satisfactory and proposed that we defer the meet and confer until after those documents Defendants agreed to produce were in fact produced.

6.     We received Defendants' production on or about February 20, 2008.  Upon reviewing that production, we confirmed that no documents were produced from any of the WEBSITES and we identified additional deficiencies in Defendants' production. (For example, although Defendants did agree to produce correspondence, an alleged "crash" one month before the lawsuit was filed combined with the absence of any backup effectively eliminated production of any correspondence predating the filing of this lawsuit.).

7.     On or about February 26, 2008 and in anticipation of our belated telephonic meet and confer scheduled for later that same week, I again wrote to defense counsel outlining these

1    additional deficiencies and outlined the importance of producing documents relating to the

2    WEBSITES themselves.

> "Most significant, however, and in some measure consistent with
> our interpretation of the Defendants' responses is a complete
> failure to produce ANY of the content of websites hosted by
> Defendants or of any logs evidencing traffic on those sites. We
> expect this to be a central part of our discussion about the
> Defendants' wholesale failure to abide by its obligations under the
> Federal Rules of Civil Procedure."

8.    On or about February 27, 2008, and again on March 4, 2008, I spoke with James

Lowe and Brian Edwards, counsel for Defendants to meet and confer concerning these issues as

required by applicable local rules. Defense counsel stated that the Defendants sell Internet services

to re-sellers, not to the website operators or merchants and further asserted the Defendants have no

direct relationship with the underlying website operators and merchants. As such, counsel averred,

the Defendants turn over control of their servers to the re-sellers and any documentation

concerning the WEBSITES mush be sought from the website operators, merchants or re-sellers.

Defense counsel further state that content on the servers is "wiped" and over-written and that these

practices continued after the litigation was filed. No effort is made to preserve data even after the

Defendants admittedly re-acquires control as when a re-seller ceases to use some of Defendants'

server capacity. Defense counsel represented that the Defendants own approximately 1500 servers

and, at any given time up to 10% of those servers represent excess capacity which is not in active

use. Defendants maintained their refusal to produce any electronic data or otherwise make servers

available for inspection.

9.    On or about March 6, 2008, I followed up with a letter confirming the substance of our meet and confer on this and other issues and provided defense counsel with additional authority for the proposition that Defendants will be obligated to make their servers available for inspection to the extent that they insist upon refusing to provide any data pertaining to the underlying infringing activity which they have facilitated through their Internet hosting business.

I declare under penalty of perjury that the foregoing is true and correct and this declaration was executed the 25th day of March, 2008 at Glendale, California.

J. ANDREW COOMBS

## PROOF OF SERVICE

I, _Daniel Villarreal_, certify and declare

I am over the age of 18 years, employed in the County of Los Angeles, State of California and my business address is: 3950 Verdugo View Drive, Los Angeles, California 90065

On March 25, 2008, I served a copy via hand delivery of the enclosed:

NOTICE OF MOTION AND MOTION OF PLAINTIFF LOUIS VUITTON MALLETIER, S.A. FOR AN ORDER COMPELLING PRODUCTION, OR IN THE ALTERNATIVE, INSPECTION OF ELECTRONIC RECORDS

[PROPOSED] ORDER GRANTING MOTION TO COMPEL PRODUCTION OR INSPECTION OF ELECTRONIC RECORDS

on the following:
James A. Lowe, Esq.
Brian S. Edwards, Esq.
Gauntlett & Associates
18400 Von Karman Ave., Suite 300
Irvine, California 92612

I delivered by hand the:

NOTICE OF MOTION AND MOTION OF PLAINTIFF LOUIS VUITTON MALLETIER, S.A. FOR AN ORDER COMPELLING PRODUCTION, OR IN THE ALTERNATIVE, INSPECTION OF ELECTRONIC RECORDS

[PROPOSED] ORDER GRANTING MOTION TO COMPEL PRODUCTION OR INSPECTION OF ELECTRONIC RECORDS

to the above referenced addressee.

Executed on March 25, 2008 at Los Angeles, California.

_____
Daniel Villarreal