J. Andrew Coombs (SBN 123881)
*andy@coombspc.com*
Annie S. Wang (SBN 243027)
*annie@coombspc.com*
J. Andrew Coombs, A P. C.
517 East Wilson Avenue, Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

Attorneys for Plaintiff
Louis Vuitton Malletier, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE DIVISION)

| | |
|---|---|
| Louis Vuitton Malletier, S.A., <br><br> Plaintiff, <br><br> v. <br><br> Akanoc Solutions, Inc., et al. <br><br> Defendants. | Case No.: C 07 3952 JW <br><br> Hon. Magistrate Judge Howard R. Lloyd <br><br> REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OR TO PERMIT INSPECTION; DECLARATION OF J. ANDREW COOMBS AND EXHIBITS IN SUPPORT <br><br> Date: April 28, 2008 <br> Time: 10:00 a.m. <br> Dept: Courtroom 2, 5th Floor |

## INTRODUCTION

In a litigation strategy all too reminiscent of their business model, the Defendants Akanoc Solutions, Inc. and Managed Solutions Group, Inc. (collectively "Defendants") seek to avoid all responsibility for complying with clear and reasonable discovery obligations. Having effectively failed to produce their own communications for any period before July, 2007 on account of an alleged hardware crash, having produced parts of their own computer database only after its existence was disclosed in deposition and having belatedly produced other relevant documents within the scope of past agreements, Defendants introduce new arguments against production for the first time in Opposition to the motion of Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton" or "Plaintiff"), having failed to raise those same arguments or objections in their written responses or during a prolonged meet and confer pursuant to the Local Rules. Declaration of J. Andrew Coombs ("Coombs Decl."), ¶ 2.

First, a preliminary factual matter concerning the scope of the production at issue on this motion: Through deliberate mischaracterization, Defendants' attempt to create confusion where none existed concerning the scope of the production sought to be compelled on this motion. Defendants assert Louis Vuitton seeks production of webpages and server logs pertaining to thousands of websites. Perversely, they then suggest that because trap purchases were made from between five and fifteen websites, the dispute is limited to production of documents pertaining to those websites. Neither assertion is correct and, as noted in the moving papers, there being no dispute (at that time) about the definition of "Websites" concerning which documents were requested, that definition was not included in the moving papers.[1] Because the Defendants now seek to inject a dispute on that issue, Plaintiff herein restates the definition which effectively incorporates a list of "Websites" which include known sellers of counterfeit Louis Vuitton merchandise hosted on Defendants' servers. A copy of an updated version of that list is attached hereto as Exhibit A. This mischaracterization is compounded by the fact that, according to Defendants' own testimony not more than 10 to 15% of its server capacity is used for website hosting at any given time, as distinct from other telecommunications services not at issue in this litigation, making Defendants' computation about the purported scope of production pursuant to the demands at issue herein entirely inaccurate and speculative. Coombs Decl., ¶ 5.

Second, Defendants appear to recognize the poverty of their initial, exclusive, objection to the requests based upon a practical lack of possession, custody or control by seeking to assert statutory objections first identified in Opposition to Louis Vuitton's motion. The Requests at issue and the Defendants' objections thereto are quoted verbatim in the moving papers and will not be repeated here.

As noted in Defendants' objections, however, general objections purportedly applicable to all requests were also identified in the Responses served on behalf of Defendants. No

---

[1] "WEBSITE" or "WEBSITES" refers to all Internet content hosted by YOU at each of the Internet websites located within uniform resource locators or domain names including but not limited to those listed in Exhibit A attached hereto." During the meet and confer Louis Vuitton offered to limit review to those sites identified as selling counterfeit Louis Vuitton and listed in Exhibit A to the requests. Exhibit A was thereafter updated, an updated copy of which is attached hereto.
Louis Vuitton v. Akanoc, et al.: Reply in Support of Motion to Compel      - 2 -

discussion occurred during the parties' extensive meet and confer on any objection predicated upon the federal statutes asserted in Opposition. Coombs Decl. ¶ 2. In itself, this was not surprising: Defendants have, however, in connection with Louis Vuitton's discovery responses taken the position that such "general" objections are of no force and effect. Coombs Decl., ¶ 3 (Defendants cite *Kerr v. United States District Court, Northern District of California*, 511 F.2d 192, 198 (9th Cir. 1975) for the proposition). This position adopted in connection with Louis Vuitton's discovery responses, combined with the fact that, throughout the meet and confer process mandated by Local Rules, Defendants exclusively addressed their lack of possession, custody or control of the pertinent servers, were the reasons why Louis Vuitton made those assertions in its moving papers. This last, desperate effort to avoid Louis Vuitton's legitimate discovery requests are properly rejected.

Finally, Louis Vuitton recently took the deposition of Defendant Steven Chen, owner and chief operating officer ("General Manager") of the Defendants. Coombs Decl., ¶¶ 4-5. During that deposition, Mr. Chen confirmed the servers are within Defendants' possession at its datacenter near downtown San Jose. He also confirmed that initial password access is assigned by the Defendants. *Id.*

## ARGUMENT

### A. The Wiretap Act Does Not Apply.

Defendants' own authorities show that the Wiretap Act [18 U.S.C. §§ 2510, *et seq.*] does not apply to prohibit production of the material requested by Louis Vuitton. In *Konop v. Hawaiian Airlines, Inc.*, 302 F. 3d 868, 876 (9th Cir. 2002) the Ninth Circuit clearly identified the distinction between the Wiretap Act and the Stored Communications Act [18 U.S.C. §§ 2701, *et seq.*] in finding that the Wiretap Act prohibits only "interceptions" of electronic communications:

> "We therefore hold that for a website such as Konop's to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage. This conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before

arrival.' *Webster's Ninth New Collegiate Dictionary* 630 (1985). More importantly, it is consistent with the structure of the ECPA, which created the SCA for the express purpose of addressing 'access to *stored* ... electronic communications and transactional records.' S. Rep. No. 99-541 at 3 (emphasis added). The level of protection provided stored communications under the SCA is considerably less than that provided communications covered by the Wiretap Act..."

*Id.*, 902 F. 2d at 878-879.

At no time has Louis Vuitton sought documents during the moment of their transmission and even were that the case (or were the possibility of such instantaneous communications raised by the Defendants at any time during their discussions about Louis Vuitton's demands), Louis Vuitton is prepared to exclude such communications from the production.

### B. The Stored Communication Act Does Not Apply and in any case Does Not Bar The Discovery Propounded by Louis Vuitton

At least one circuit has held that, "In order to be protected by the SCA, an Internet website must be configured in some way so as to limit ready access by the general public." *Snow v. DirecTV, Inc., et al.*, 450 F.3d 1314, 1322 (11th Cir. 2006). Louis Vuitton requests information partly relating to websites which were not only accessible to the public, but engaged in the sale of counterfeit Louis Vuitton merchandise to the public at large.

Further, the SCA includes specific limitations on service provider liability directly pertinent to the present application and wholly ignored by Defendants. First, the civil liability provided for by *18 U.S.C. § 2707* includes an express limitation for disclosures made pursuant to court processes:

> A good faith reliance on (1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization (including a request of a governmental entity under section 2703(f) of this *title [18 USCS § 2703(f)]*); (2) a request of an investigative or law enforcement officer under section 2518(7) of this *title [18 USCS § 2518(7)]*; or(3) a good faith determination that section 2511(3) of this *title [18 USCS § 2511(3)]* permitted the conduct complained of; is a complete defense to any civil or criminal action brought under this chapter *[18 USCS §§ 2701* et seq.] or any other law.

*18 U.S.C. § 2707(e)(1)*.

Good faith reliance upon civil discovery procedures, including a civil subpoena and, *a foritiori*, an order of this Court is a complete defense to a claim for violation of the SCA. *McCready v eBay, Inc.*, 453 F.3d 882, 892 (7th Cir. 2006).

To the extent that Defendants rely upon the decision in *FTC v. Netscape Comms. Corp.*, 196 F.R.D. 559 (N.D. Cal. 2000) that reliance is misplaced. In *FTC v. Netscape Comms. Corp.* and in the absence of any relevant legislative history or prior authority, Judge Patel concluded that the term "trial subpoena" in § 2703(c)(1)(C) did not include a pre-trial discovery subpoena issue pursuant to Fed. R. Civ. P. 45. Apart from the fact that the Court's narrow construction of § 2703(c)(1)(C) did not consider the implications of the "complete defense" provided by § 2707, Courts have since concluded that the clear construction of § 2703 is such that it applies to criminal processes and, therefore, that section does not purport to diminish the effectiveness of civil discovery tools. See, for example, *Quon v. Arch Wireless Operating Co., Inc.*, 445 F. Supp. 2d. 1116, 1129 (C.D. Cal. 2006) (*Quon II)* ("Section 2703 concerns a governmental entity's attempt to gain information in electronic storage *during the course of a criminal investigation*. This criminal investigation nexus is manifested by section 2703's reference to the need for a grand jury or administrative subpoena before an electronic communication in storage may be divulged, functions associated with ongoing criminal investigation.").[2]

Similarly, the decision in *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004) does not support Defendants' assertion that the SCA bars civil discovery. To the contrary, if all civil discovery were effectively prohibited by the SCA, the Court's reasoning that the specific civil discovery propounded in *Theofel* was unreasonable and invalid was an unnecessary analysis which could have been avoided by simply ruling that the SCA does not provide for any disclosure, whether pursuant to a valid subpoena (or otherwise).

Any number of cases where an ISP has produced information comparable with that requested by Louis Vuitton in this case further evidences the permissibility of civil discovery in this context: See, for example, *Atlantic Recording Corp., et al. v. Serrano*, 2007 U.S. Dist.

---

[2] The two *Quon* cases deal with the very different issues related to disclosure of employee pager records to the employer/subscriber of the underlying remote computer services.


LEXIS 95203 (S.D. Cal. Dec. 28, 2007) (dismissing counterclaim based upon Plaintiff's *ex parte* application and discovery propounded pursuant thereto seeking the identity of a particular user of the ISP's services); *Twentieth Century Fox Film Corp. v. iCraveTV*, 2000 U.S. Dist. LEXIS 11670 (W.D. Penn. Feb. 8, 2000) (ordering production of server logs to evidence access to copyrighted materials); *Interstellar Starship Servs., Ltd., v. Epix Inc.*, 184 F. 3d 1107, 1111 (9th Cir. 1999) (server logs admitted in evidence in trademark infringement action to preclude entry of summary judgment); *Inventory Locator Serv., LLC v. Partsbase, Inc.*, 2006 U.S. Dist. LEXIS 39521 at *3-*5 (W.D. Tenn. June 14, 2006) (server logs used to demonstrate unlawful access).

Significantly, Defendants rely upon a prior proceeding in the *Quon II* matter (without referring to the subsequent proceeding where defendants' motion for summary judgment on Plaintiff's Section 2703 claim was dismissed). In the initial proceeding on defendants' motion to dismiss, the District Court identified a second, independent and additional basis for ordering the discovery sought by Louis Vuitton by this motion:

The SCA expressly exempts from its operation electronic communications held in electronic storage when disclosure is done "with the lawful consent of the originator or an addressee or intended recipient of such communication....". *18 U.S.C. § 2702(b)(3)*. After noting that the motion should be granted as the SCA "deliberately structured the ECPA to afford electronic communications *in storage* less protection than other forms of communication." *Quon II*, 445 F. Supp. 2d. at 1135. To the extent Louis Vuitton's demand seeks production of the underlying websites – whose intended addressee or audience is the public at large – the SCA simply does not apply to prevent production.

In view of this Federal Court authority, citation to and reliance upon state court authority cited by Defendants is simply inappropriate and inapposite.

Finally, § 2702(c)(6) also expressly provides that a person or entity providing electronic communications storage "may divulge a record or other information pertaining to a subscriber to or customer of such service [excluding the contents of such communications]...to any person other than a governmental entity." To the extent server logs contain such customer records they

Louis Vuitton v. Akanoc, et al.: Reply in Support of Motion to Compel    - 6 -

too are properly compelled as Defendants do not contend Louis Vuitton is a "governmental entity".[3]

## CONCLUSION

For all the foregoing reasons and as set forth in Louis Vuitton's moving papers, an order compelling production of (i) publicly accessible webpages and (ii) server logs is properly entered. In the alternative and to the extent that Defendants fail to produce the documents so compelled, Louis Vuitton prays for an order compelling inspection of a sampling of those servers hosting the websites listed in Exhibit A attached hereto to test Defendants' assertions and to measure its responsibility for spoliation of relevant evidence it was under an obligation to preserve.

DATED: April 15, 2008

J. Andrew Coombs, A Professional Corp.

By: ___/s/ J. Andrew Coombs___
    J. Andrew Coombs
    Annie S. Wang
Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

---

[3] To the extent server the Court relies upon this section to order production of server log data and some part of such data incorporates the underlying communication, Louis Vuitton would accept a redacted production that excludes such communications or submit to such protections consistent with the Protective Order already entered into in this case as the Court considers appropriate. *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 191-192 (C.D. Cal. 2006) (privacy interest of financial information adequately protected by protective order); *ICG Comms., Inc. v. Allegiance Telecom*, 211 F.R.D. 610, 614 (N.D. Cal. 2002) (same).

Louis Vuitton v. Akanoc, et al.: Reply in Support of Motion to Compel     - 7 -

## DECLARATION OF J. ANDREW COOMBS

I, J. ANDREW COOMBS, declare as follows:

1. I am an attorney at law, duly admitted to practice before the Courts of the State of California and the United States District Court for the Northern District of California. I am an attorney for Plaintiff Louis Vuitton Malletier, S.A. ("Plaintiff" or "Louis Vuitton") in an action styled <u>Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., et al.</u> I make this Declaration in support of Plaintiff's Opposition to Defendants' Motion to Compel the Deposition of Plaintiff Louis Vuitton Malletier, S.A. Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2. During a meet and confer with counsel for Defendants which extended over several weeks and encompassed numerous phone calls and an exchange of correspondence, Defendants' arguments against production of the evidence which is requested by this motion addressed the Defendants' lack of control over the requested data. On at least one occasion I requested and obtained confirmation that this alleged inability to produce was the basis for Defendants' refusal to produce otherwise relevant and unprivileged material. I drafted Louis Vuitton's motion in a way to reflect the dispute as clarified over the course of the parties' extensive meet and confer.

3. During the same period that we discussed Defendants' production, the parties met and conferred concerning Louis Vuitton's responses to Defendants' requests for production of documents. In a letter dated January 17, 2008, initiating that meet and confer, Defendants' counsel asserted that "blanket objections" were of no force and effect and quoted from the decision in *Kerr v. United States District Court, Northern District of California*, 511 F.2d 192, 198 (9th Cir. 1975).

4. On April 8 and April 9 I took the deposition of Steven Chen, as the Rule 30(b)(6) designee of both of the corporate defendants and as an individual defendant. During Mr. Chen's deposition I inquired about a database identified as CPRO in emails previously produced by Defendants. That database included service entries pertaining to the servers owned and maintained by Defendants. Late in the afternoon of April 8, 2008, Defendants produced a series of spreadsheets reportedly generated from the CPRO database. Those spreadsheets, which consisted of several hundred pages, were the subject of testimony of Mr. Chen on April 9 at which time he confirmed that, despite this production, service log entries and other relevant

information from the CPRO database which fell within Louis Vuitton's prior requests for production of documents were still not included in the belated April 8 production. Mr. Chen also confirmed that income statements and balance sheets for Defendant Akanoc Solutions, Inc. existed and, despite production of such financial information for Managed Solutions Group, Inc. and an equivalent agreement to produce such documents as pertain to Akanoc Solutions, Inc., the financials for Akanoc Solutions, Inc. were produced by email on April 14, 2008. Mr. Chen also testified concerning an alleged hard drive crash which deleted all emails before approximately June, 2007.

5. During Mr. Chen's deposition, he estimated that at any given time only about 10 to 15% of the server capacity owned or maintained by Defendants is used for website hosting, as distinct from, for example, voice over internet telephone, online storage and other unrelated functions. He also confirmed that initial password access is assigned by the Defendants.

6. Attached hereto as Exhibit A is a true and correct copy of the list of Websites attached to Plaintiff's Second Set of Document Requests. Attached hereto as Exhibit B is a true and correct copy of an updated version of Exhibit A which lists the Websites at issue.

Executed this 15th day of April, 2008, at Glendale, California.

            /s/ J. Andrew Coombs
            J. ANDREW COOMBS

# EXHIBIT A

# EXHIBIT A

| 1 | 315EC.com |
|---|---|
| 2 | Ape168.com |
| 3 | Atozbrand.com |
| 4 | Bag4Sell.com |
| 5 | Bag925.com |
| 6 | BigWorldShoes.com |
| 7 | Bizyao.com |
| 8 | BrandFashioner.com |
| 9 | BrandStyleSales.com |
| 10 | Brandtrading.net |
| 11 | BuyMyShoes.net |
| 12 | Cn-Nike.com |
| 13 | DreamyShoes.com |
| 14 | Eastarbiz.com |
| 15 | EBuyNike.com |
| 16 | ECshoes.com |
| 17 | EGoToBuy.com |
| 18 | EMSYou.com |
| 19 | EShoes99.com |
| 20 | Famous-Shop.com |
| 21 | Fansjersey.com |
| 22 | Globefashion.com |
| 23 | GucciFendi.com |
| 24 | GZ-Free.com |
| 25 | HandBagSell.com |
| 26 | Imitation-Gold.com |
| 27 | InNike.com |
| 28 | LLouisVuitton.com |
| 29 | LongTimeGroup.com |
| 30 | Louisvuittonbags.com |
| 31 | Louis-vuitton-bags.org |
| 32 | Louisvuittonbagz.com |
| 33 | LoverNike.com |
| 34 | LuxeLike.com |
| 35 | Luxury2Us.com |
| 36 | LVBagz.com |
| 37 | lv-nike.com |
| 38 | MailGoods.com |
| 39 | Myshoes99.com |
| 40 | Nike558.com |
| 41 | Nikeexp.com |
| 42 | NikeShoesOffer.com |
| 43 | NikeWTO.com |
| 44 | NonStopBeauty.com |
| 45 | PFCStation.com |
| 46 | PickHipHop.com |
| 47 | PickYourGoods.com |
| 48 | PickYourOrder.com |
| 49 | Pro-Jordan.com |
| 50 | Replica-ebags.com |
| 51 | RRGNL.com |

| 52 | Shoes-Order.com |
|---|---|
| 53 | SoApparel.com |
| 54 | Sunny7Shoes.com |
| 55 | Super925.com |
| 56 | Swisshours.biz |
| 57 | Tytrade88.com |
| 58 | Watchesnreplica.com |
| 59 | WatchesReplica.net |
| 60 | WatchNReplica.net |
| 61 | WearOnline.net |
| 62 | Wendy929.com |
| 63 | Wendy929.net |
| 64 | Wendyluxury.com |
| 65 | WorldKeyTrade.com |
| 66 | YeahEBay.com |
| 67 | Yseenet.net |

# EXHIBIT B

# Exhibit B

|    | Website |
|----|---------|
| 1  | 315EC.com |
| 2  | Ape168.com |
| 3  | Atozbrand.com |
| 4  | Bag4Sell.com |
| 5  | Bag925.com |
| 6  | BigWorldShoes.com |
| 7  | Bizyao.com |
| 8  | BrandFashioner.com |
| 9  | BrandStyleSales.com |
| 10 | Brandtrading.net |
| 11 | BuyMyShoes.net |
| 12 | Cn-Nike.com |
| 13 | DreamyShoes.com |
| 14 | Eastarbiz.com |
| 15 | Eastarbiz.net |
| 16 | EBuyNike.com |
| 17 | ECshoes.com |
| 18 | EGoToBuy.com |
| 19 | EMSYou.com |
| 20 | EShoes99.com |
| 21 | Eshoes99.net |
| 22 | Famous-Shop.com |
| 23 | Fansjersey.com |
| 24 | GucciFendi.com |
| 25 | GZ-Free.com |
| 26 | HandBagSell.com |
| 27 | Imitation-Gold.com |
| 28 | InNike.com |
| 29 | Ilouisvuitton.com |
| 30 | LongTimeGroup.com |
| 31 | Louis-vuitton-bags.org |
| 32 | Louisvuittonbagz.com |
| 33 | LoverNike.com |
| 34 | LuxeLike.com |
| 35 | Luxury2Us.com |
| 36 | LVBagz.com |
| 37 | lv-nike.com |
| 38 | MailGoods.com |
| 39 | Myshoes99.com |
| 40 | Nike558.com |
| 41 | NikeShoesOffer.com |
| 42 | NikeWTO.com |
| 43 | NonStopBeauty.com |
| 44 | PFCStation.com |

| 45 | PickHipHop.com |
|----|----------------|
| 46 | PickYourGoods.com |
| 47 | PickYourOrder.com |
| 48 | Pro-Jordan.com |
| 49 | Replica-ebags.com |
| 50 | RRGNL.com |
| 51 | Shoes-Order.com |
| 52 | SoApparel.com |
| 53 | Soapparel.net |
| 54 | Sunny7Shoes.com |
| 55 | Super925.com |
| 56 | Swisshours.biz |
| 57 | Tytrade88.com |
| 58 | Watchesnreplica.com |
| 59 | WatchesReplica.net |
| 60 | WatchNReplica.net |
| 61 | WearOnline.net |
| 62 | Wendy929.com |
| 63 | Wendy929.net |
| 64 | Wendyluxury.com |
| 65 | WorldKeyTrade.com |
| 66 | YeahEBay.com |
| 67 | Yseenet.net |

## PROOF OF SERVICE

I, _Moises F. Aguian_, certify and declare

I am over the age of 18 years, employed in the County of Los Angeles, State of California and my business address is: 3950 Verdugo View Drive, Los Angeles, California 90065

On April 15, 2008, I served a copy via hand delivery of the enclosed:

REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OR TO PERMIT INSPECTION; DECLARATION OF J. ANDREW COOMBS AND EXHIBITS IN SUPPORT

on the following:

James A. Lowe, Esq.
Brian S. Edwards, Esq.
Gauntlett & Associates
18400 Von Karman Ave., Suite 300
Irvine, California 92612

Executed on April 15, 2008 at Glendale, California.

_/s/ Moises Aguian_