**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Brian S. Edwards (SBN 166258)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
jal@gauntlettlaw.com
bse@gauntlettlaw.com

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.
and Steve Chen

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A.,<br><br>Plaintiff,<br><br>vs.<br><br>AKANOC SOLUTIONS, INC., et al.,<br><br>Defendants. | Case No.: C 07-3952 JW<br><br>Hon. James Ware<br><br>**DECLARATION OF STEVE CHEN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: June 23, 2008<br>Time: 9:00 a.m.<br>Dept.: Courtroom 8, 4th Floor<br><br>Discov. Cut-off: April 29, 2008<br>Pre-Trial Conf: Sept. 8, 2008<br>Trial Date: None Set |

I, STEVE CHEN, declare as follows:

I am the President and manager of Managed Solutions Group, Inc. ("MSG") and Akanoc Solutions, Inc. ("Akanoc"). I am also a named Defendant in this action. The facts set forth in this declaration are of my own personal knowledge and I could competently testify to them if called as a witness.

1. I am submitting this declaration in support of Defendants' motion for summary judgment with regard to plaintiff Louis Vuitton Malletier, S.A.'s ("Vuitton") complaint in this action.

2. MSG and Akanoc do not market or sell services directly to website operators. They are Internet Service Providers ("ISP") who provide unmanaged Internet hosting services to their customers, mainly resellers located in China.[1]

3. Internet hosts typically provide either "managed" or "unmanaged" services. The basic difference is the level of control over the server on which the data or applications are being hosted. A managed hosting service generally provides complete or nearly complete care of the customers' servers and therefore charges significantly more than for unmanaged hosting. Typical customers of a managed hosting service are individuals or small businesses that are technically unsophisticated or unwilling to expend the effort to control their own servers.

4. In contrast, MSG and Akanoc provide unmanaged hosting services to third party resellers. They charge a much lower fee than what is typically charged for managed Internet hosting services. The fee is charged mainly to keep the machine operating and connected to the Internet. Customers maintain operational control over the computer server and restrict access by passwords, so customers must be technologically knowledgeable and experienced so that they can manage their operations remotely with little intervention by the hosting provider. Because the reseller customers have control, MSG and Akanoc have no way of knowing if a particular website hosted on their servers appears to be selling counterfeit goods unless a third-party notifies them.

5. MSG and Akanoc typically rent one or more computer servers with the basic

---

[1] MSG provides only unmanaged Internet hosting services, despite the use of the term "managed" in its name.

operating system(s) requested by their customer together with an Internet router pointing one or more temporarily assigned Internet Protocol ("IP") addresses to a server, together with a good connection to an Internet "pipe" permitting the customer a specified maximum quantity of data ("bandwidth"). MSG and Akanoc turn this system over to the customer who then assigns all passwords to access content on the server. Unless customers happen to reveal that information to them, Akanoc and MSG are not aware of any passwords or what specific use will be made of the Internet access they provide.

6. Like other unmanaged Internet hosts, unless the customer chooses to allow them access MSG and Akanoc have no way of accessing the content being hosted on their servers. Access is usually granted, if at all, for limited purposes such as reformatting the hard drive or reinstalling an operating system. This additional maintenance is done only if requested and for an additional fee. MSG and Akanoc receive their modest monthly fee via a credit card or PayPal to keep the hardware running and the Internet communications open and they respond as requested to technical operations problems.

7. MSG and Akanoc together own and have available for monthly rental approximately 1,400 computer servers, approximately 30,000 IP addresses and approximately 1.2 gigabits of bandwidth of Internet access. These servers are used by numerous resellers and by thousands or potentially even millions of legitimate Website operators, many in China. Chinese companies commonly seek to host their Internet operations in the United States because the speed and quality of Internet transmissions in China is poor and Chinese Internet connections to the rest of the world are heavily restricted by the Chinese government.

8. MSG and Akanoc do not do business with any Website operators and, unless given notice by a third party such as Vuitton, are not aware of any infringing conduct potentially occurring on a particular site. This is because the services they provide are unmanaged and the Defendants are prohibited by law from accessing or monitoring the content on their equipment under the Stored Communications Act (18 U.S.C. § 2700, *et al.*). Just as a telephone service provider is prohibited from listening in on or wiretapping its customers' calls, so are Internet Service Providers such as MSG and Akanoc prohibited from examining the customer content of its servers without specific

1  authorization by the customer or a search warrant. It is the responsibility of a copyright or trademark owner to police infringement and they can then send notices to an ISP like MSG or Akanoc.

9. The customer of an unmanaged hosting service typically agrees to an "acceptable use policy" that prohibits illegal use of the server and agrees to respond to and correct unacceptable use when a complaint is made, for example, of spam originating from the IP address or alleged intellectual property infringement. MSG and Akanoc require agreement to such an "acceptable use policy" that, among other things specifies that the services provided are unmanaged but that the customer is responsible for improper use or content.

Section I(8) of Akanoc's agreement with customers (**Exhibit "1500"**) provides:

> Customer will be responsible for all server management and administration related issues.

The acceptable use policy also provides that Akanoc and MSG have no access to the content of servers without consent of the customer.

Section III(1) of **Exhibit "1500"** provides:

> [Web Host] will exercise no control whatsoever over the content of the information passing through the network or on the customer's web sites.

10. Because of the high number of servers and IP addresses rented out by MSG and Akanoc, and because there is a constant problem with people around the world sending spam or infringing or illegal material, MSG and Akanoc receive thousands of complaints every month and it is impractical for them to investigate or validate all complaints. All complaints concerning domains or websites that are located within MSG or Akanoc's IP ranges are forwarded to their customers for evaluation and action.

11. MSG and Akanoc's standard protocol when they receive a complaint is as follows. If notice is received about a Website that is alleged to be using one of the Defendants' IP addresses (and therefore on one of their servers), we do not log on to the Internet to investigate or verify whether the complaint is well founded. Either Juliana Luk or myself will "ping" the domain name about which a complaint is made to determine whether the particular Website is located at an IP

1  address within the range of IP addresses assigned to Akanoc or MSG.

2  12.  Assuming the website at issue is functional and located within Akanoc or MSG's IP ranges, all abuse complaints are treated as being justified and sent along to our customer with a "take down" notice. This is the only practical way for an Internet Service Provider to operate. This practical approach is for several reasons: (1) the Defendants regularly receive too many complaints to have time to verify or investigate abuse complaints, (2) the Defendants are unable to determine who has rights in any content on the Internet, (3) the Defendants cannot easily verify complaints, and (4) opening an e-mail containing spam could be dangerous to the MSG or Akanoc servers and their customers because virus, worm, and other malware infections could be spread thereby.

3  13.  "Pinging" a domain name on a computer's DOS prompt sends a request to Internet name translation servers to return the IP address that is being used by that domain name. This is done by typing in the command "ping [domain name]", which instructs a computer to send test packets of information to that domain. When the computer receives the test packets back, it confirms the IP address that the domain is using. Attached as **Exhibit "1501"** is a screen printout of a DOS prompt showing the pinging of the domain www.cand.uscourts.gov.

4  14.  By pinging a Website it is possible to identify a domain's IP address and whether it is located within the range of IP addresses assigned to a customer. If it is, Juliana Luk or I immediately send the complaint on to the reseller with a demand that the offending Website be taken down.

5  15.  Often "pinging" the Website will reveal that it is not located within MSG's or Akanoc's IP range (the website is located within another Web hosts' range) or that the domain is non-functioning. In that situation, no further action is required. As an unmanaged Internet host who is not able to monitor the content of the domain data on its servers, this protocol is the only method available to assist third parties to combat infringement, spamming, etc.

6  16.  Repeat complaints can result in MSG or Akanoc unplugging a server accused of infringing conduct. If a complaint about the same domain is repeated within a short time (and it is confirmed to be located at the same IP address within Akanoc or MSG's IP range) or there are other reasons to believe the customer is not responding to the complaint notice, MSG or Akanoc can only

unplug the server from the Internet or otherwise disable the customer's access. Unplugging the server from the Internet or otherwise disabling the customer's access is an extreme action, taken only when necessary, because there may be numerous compliant customers using the same server while perhaps one customer of a reseller with whom Akanoc and MSG deal has allowed a single IP address to be misused. Unplugging a server will potentially harm dozens or even hundreds of ultimate users of the same server so this action is a last resort to enforce the acceptable use policy.

17. Vuitton's complaint in this case was served on or about August 22, 2007. Promptly thereafter I "pinged" the five websites listed in the complaint (atozbrand.com, bag925.com, ape168.com, wendy929.net and eshoes99.com). I discovered that four of the five domains were not located at IP addresses within the range of IP addresses assigned to MSG or Akanoc, meaning they were either never within Akanoc or MSG's IP range or were no longer within range. The only other website named in the complaint, wendy929.net, was not functional at that time and could not be accessed using the Internet.

18. Because the five sites were out of the Defendants range of IP addresses and therefore hosted by a different ISP or were not functioning, MSG and Akanoc were not able to contact the Websites or take any further action. At the time the complaint was served, only one of the five websites listed in Vuitton's complaint were located on either MSG's or Akanoc's servers but that website was not functioning.

19. In approximately June 2007 MSG's and Akanoc's email server hard drive "crashed" and data was lost. As a result Defendants have incomplete evidence of email complaints before that time. However, the fact that these five websites were not located within MSG's or Akanoc's IP range or were non-functioning at the time the complaint was served indicates that they were either never within MSG's or Akanoc's IP range or were taken down as a consequence of the standard warning protocol described above.

20. In the course of their business MSG and Akanoc have never used Vuitton's trademarks or copied any of Vuitton's works in any way. Defendants do not advertise or sell merchandise. Their business activities do not involve any infringement of trademark or copyrights, or inducing others to infringe trademarks or copyrights.

21. Defendants have never controlled or monitored the data on MSG or Akanoc's servers. Defendants' do not monitor or have control over the content of websites being hosted on their servers.

22. Defendants' operations have always been entirely separate from the websites being hosted on their servers. They have never had any partnership with any party allegedly or actually infringing Vuitton's trademarks or copyrights.

23. There has never been any connection whatsoever between any Defendant and any operator of any Website being hosted on their servers.

24. There has never been any partnership between any Defendant and any operator of any Website being hosted on their servers.

25. Defendants have never known any operators of Websites alleged to infringe copyrights or trademarks being hosted on their servers because they do not deal directly with those Website operators, do not receive money from them, and have no connection to them whatsoever.

26. Defendants have never had any authority to bind the operators of Websites located on their servers or exercise joint control over any operations at their sites.

27. The Defendants have never done any business with and have never received any money from any website operator alleged to have infringed any copyrights or trademarks.

28. Defendants have never intentionally induced copyright infringement in the course of their business.

29. Defendants have never had the right to supervise or control conduct or content on their servers, aside from prohibiting abuse in their User Agreement.

30. There is no practical or lawful way for Defendants to monitor information transmitted through or stored on the servers they rent to resellers. prior to receiving a notice of copyright infringement.

31. With 30,000 IP addresses accessing 1,400 Internet servers constantly, there is no practical means to wiretap communication or monitor content in such a way that can prevent or identify every appearance of a copyrighted work or a trademark appearing on the servers.

32. Defendants have no direct financial interest in infringing activity or infringing

1  persons. They have always derived their income solely from the unmanaged Internet hosting services
2  that they market to resellers.

3      33.    The fixed monthly service fees MSG and Akanoc charge are not based on sales or
4  activity of any Website doing business with any of the resellers any more that a telephone company
5  makes any profit on sales made by its customers.

6      34.    Defendants do not create, design, operate, manage, or have any information about any
7  Website using its servers and IP addresses.

8      35.    Akanoc and MSG do not know who their customers deal with and have no knowledge
9  as to what particular use is made of the Internet hosting services provided.

10  I declare under penalty of perjury under the laws of the United States of America that the
11  foregoing is true and correct.

12  Executed at Fremont, California on this 19th day of May, 2008.

15  _____
    STEVE CHEN