# EXHIBIT 1503

1               IN THE UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION

4   LOUIS VUITTON MALLETIER, S.A.,     )
                                       )
5                     PLAINTIFF        )
               VS                      )C.A. NO. C 07 3952 JW
6                                      )
    AKANOC SOLUTIONS, INC., MANAGED    )
7   SOLUTIONS GROUP, INC., STEVEN      )
    CHEN AND DOES 1 THROUGH 10,        )
8   INCLUSIVE,                         )
                          DEFENDANTS   )
9   _____   )

10

11

12

13

14             ORAL DEPOSITION OF ROBERT L. HOLMES,

15   produced as a witness at the instance of the Defendants,

16   and duly sworn, was taken in the above-styled

17   and -numbered cause on the 1st day of April, 2008, from

18   9:31 AM to 6:22 PM, before Ronald R. Cope, a CSR in and

19   for the State of Texas, Registered Professional Reporter

20   and Certified Realtime Reporter, reported by machine

21   shorthand at the offices of U.S. Legal

22   Support/MillerParker, Inc., 5910 North Central

23   Expressway, 100 Premier Place, Dallas, Texas, 75206,

24   pursuant to the Federal Rules of Civil Procedure and the

25   provisions stated on the record or attached hereto.



EXHIBIT

1503

ALL-STATE LEGAL®

ROBERT L. HOLMES

1    they -- I don't know of their advertising practices, so

2    I don't -- yeah.  I can't testify to how they advertise

3    or if they induce --

4        Q.   You have no knowledge or no evidence that the

5    three Defendants in this case have induced or caused the

6    infringing conduct on the part of website operators?

7        A.   Well, I know they have thousands of customers

8    that sell the product.

9             MR. COOMBS:  Move to strike to interpose

10   the same objections.

11       Q.   (BY MR. LOWE)  I don't believe you answered my

12   question.  Do you have any knowledge or any evidence

13   that the three Defendants -- any of the three Defendants

14   in this case induced or caused the infringing conduct on

15   the part of website operators?

16       A.   No personal knowledge.

17       Q.   Do you have any evidence or knowledge that any

18   of the three Defendants in this lawsuit have materially

19   contributed to the infringing conduct of website

20   operators?

21            MR. COOMBS:  Same objections.

22       A.   Yes.

23       Q.   (BY MR. LOWE)  What?

24       A.   They facilitate the sale of that product by

25   hosting the space that those items are stored upon, and

                              167

BARKLEY
Court Reporters

1        A.    I found them that way.

2        Q.    I'm not sure that that was the question I

3    asked, but I do want to explore your answer.

4              You're talking about reputation as in

5    among third parties?

6              MR. COOMBS:    Not Louis Vuitton?    Not the

7    Defendants?

8              MR. LOWE:    Yeah.

9        A.    Yeah, reputation in the online community.

10       Q.    (BY MR. LOWE)    And you obtained that knowledge

11   by what means?

12       A.    Well, that's why I answered -- I said the

13   answer was abstract, because typically reputation is

14   hearsay.

15       Q.    Is there any other kind?

16       A.    Exactly.    So, you know, again -- but reputation

17   is advertisement.    You buy Coca-Cola typically because

18   of reputation, not necessarily because of the

19   billboards.

20       Q.    I don't think you understood the question I was

21   asking.    I was not asking about the advertising of the

22   hosting services.    I was asking you if you have any

23   information, any evidence that any of the three

24   Defendants in this lawsuit themselves advertised or

25   otherwise promoted the websites that allegedly sell

190

ROBERT L. HOLMES

1    control.  The IP address is just a string of numbers.

2    The IP address is not property.  The IP address points

3    to property.

4        Q.   So it's not the IP address that's critical, it

5    is the servers?

6        A.   Well, no.

7              MR. COOMBS:  Same objection.  Slow down.

8    Calls for conclusion, speculation.

9        Q.   (BY MR. LOWE)  I'm just trying to understand

10   your point of view and your -- the way you investigate

11   these things.  The difference is that it's the servers

12   that matter and not the IP address that makes these

13   three Defendants responsible for what happens on

14   websites?

15       A.   The IP address designates the destination.  The

16   destination is the responsibility of the assignee, which

17   would be your client, in this case.  Once they're given

18   a string of numbers, it's their responsibility to

19   determine where it points.

20             MR. COOMBS:  You answered the question.

21             THE WITNESS:  Okay.  Sorry.

22       Q.   (BY MR. LOWE)  Do you have any evidence that

23   the three Defendants in this case had any knowledge

24   about alleged infringing activity on the websites you

25   investigated on behalf of Louis Vuitton?

234

ROBERT L. HOLMES

BARKLEY
Court Reporters

1     A.    It's a real tough question to answer.

2     Q.    I'm just asking:  Do you have any evidence that

3   they had knowledge?

4     A.    Again, the only evidence is assuming your

5   clients are not inept.

6     Q.    I'm not asking you to assume anything.  I'm

7   asking you to tell me what knowledge you have in your

8   records that shows that they had knowledge of infringing

9   activity on the websites you have investigated on behalf

10  of Louis Vuitton, if any.

11    A.    Because of the multitude of domain names that

12  are registered on your clients' servers and your

13  clients' IP addresses that have other people's

14  trademarks contained in them, again --

15    Q.    How does that show that they had knowledge of

16  infringing activity on websites that were hosted on

17  their servers?

18    A.    That would go on the assumption that they're

19  not inept, again.

20    Q.    I'm not asking for assumptions.  I'm asking for

21  evidence that you have or that you know of.

22              MR. COOMBS:  I think he's answered that --

23              MR. LOWE:  Well --

24              MR. COOMBS:  -- a couple of times.

25              MR. LOWE:  -- I'm afraid he hasn't

235

BARKLEY
Court Reporters

1    answered other than speculation.

2        Q.    (BY MR. LOWE)  Do you have any knowledge of any

3    evidence that they had actual knowledge that there was

4    infringing activity going on on the websites that you

5    investigated for Louis Vuitton?

6        A.    No direct knowledge --

7        Q.    All right.

8        A.    -- that your client -- your cognitive client,

9    which would be Steve Chen -- is that what you're asking?

10   Because when you ask -- when you ask a corporation can't

11   know or not know, it's hard for me to answer that

12   properly, because you say your clients; but I can answer

13   a person.  No, I do not know particularly if Steve Chen

14   did, but I can say that your corporations -- the two

15   corporations, as a whole, someone within the

16   corporations absolutely knew.  And that's because that

17   information has to be cataloged in order to be placed on

18   a server.  Someone within that corporation had to have

19   placed that data into a registry that would be

20   accessible to our clients and to you and to the public.

21       Q.    What data exactly would they have to put into

22   some sort of registry?

23       A.    The data that you put in front of me, domain

24   names.

25       Q.    You think they put domain names into a

236

ROBERT L. HOLMES

1    A.    Well, again conduct --

2    Q.    Conduct --

3    A.    Conduct is control.  And again, you use the

4    word "physical."  I can say no to "physical," but I

5    cannot say no, that I do not know they control this --

6    Q.    What evidence do you have that they control it?

7         MR. COOMBS:  Asked and answered.

8    A.    Lack of chaos.

9    Q.    (BY MR. LOWE)  Well, that's a conclusion.  I'm

10   asking for evidence that you have.

11   A.    Order is evidence.

12   Q.    Well, it is not evidence of who, is it?

13        MR. COOMBS:  That's argumentative.  It's

14   been asked and answered.  I think this is increasingly

15   unfruitful.

16   Q.    (BY MR. LOWE)  Do you have any evidence that

17   any of the three Defendants directly controlled or

18   monitored any of the websites that you have investigated

19   on behalf of Louis Vuitton?

20   A.    No physical evidence.

21   Q.    No documentary evidence?

22   A.    Yes.

23   Q.    What?

24   A.    The assignment of the IP addresses to your

25   clients.  It proves control.

ROBERT L. HOLMES

BARKLEY
Court Reporters

```
 1       Q.    Directly control the content of the websites

 2   that are using the domain names that you have

 3   investigated, the question is:  Do you have any evidence

 4   of direct control or monitoring of the content of any of

 5   the websites that you investigated for Louis Vuitton?

 6       A.    Evidence of monitoring, no.

 7       Q.    Or evidence of directly controlling of the

 8   websites.

 9       A.    Evidence of controlling, yes.

10       Q.    Directly controlling the content of the

11   websites?

12             MR. COOMBS:  Objection; ambiguous, asked

13   and answered.

14       A.    I don't have evidence of their control of the

15   content.

16       Q.    (BY MR. LOWE)  Thank you.  Do you have any

17   evidence of any agency or partnership that exists

18   between the Defendants and anyone else who is directly

19   controlling or operating the websites that are in the

20   domains using the domain names that you investigated on

21   behalf of Louis Vuitton?

22       A.    No.

23             MR. COOMBS:  Move to strike.  Objection,

24   calls for legal conclusion.

25       A.    You're asking me to conclude a lot of stuff, so
```

246

ROBERT L. HOLMES

BARKLEY
Court Reporters

1    A.   Can you define "bind"?

2    Q.   (BY MR. LOWE)  In other words, act for them in

3 some legal fashion, in other words, contract for them or

4 do something that binds them legally.

5          MR. COOMBS:  Same objection.

6    A.   I couldn't answer that.

7    Q.   (BY MR. LOWE)  So you have no ability to answer

8 that question?

9    A.   Well, if phrased differently.  Ask it again.

10    Q.   I understand that this is a term of art, a

11 legal term of art.

12    A.   No, no, no.

13    Q.   So I appreciate you're not a lawyer, so I'm

14 asking if you have any evidence that you believe

15 indicates that any of the Defendants in this case have

16 any ability to act on behalf of or to legally bind other

17 people who may be operating websites that you

18 investigated for Louis Vuitton.

19    A.   It goes back to the word "control," if they

20 control what happens on their property.

21    Q.   Anything else?

22    A.   I don't have evidence of what the contracts are

23 with the customers, no.

24    Q.   Or any contracts between them, for example?

25          MR. COOMBS:  Between -- I'm sorry.

248

ROBERT L. HOLMES

BARKLEY
Court Reporters

1    Between --

2        Q.   (BY MR. LOWE)   Between any of the Defendants

3    and anybody else operating a website that you

4    investigated for --

5        A.   I've --

6        Q.   -- Louis Vuitton.

7        A.   -- never seen a contract your client has drawn

8    up.

9        Q.   You have no knowledge of any contracts that

10   might involve these people?

11       A.   There may not even be contracts.

12       Q.   All right.  And you have no evidence of any

13   agreements -- any verbal agreements between the people

14   who operate websites that you investigated for Louis

15   Vuitton and any of the Defendants in this case?

16       A.   No, sir, I have no knowledge.  I'm sorry if

17   that was a "yes" or "no."  I don't have knowledge.

18       Q.   Do you have any evidence that the -- any of the

19   Defendants in this lawsuit and any website operators

20   have exercised any joint ownership and control over any

21   infringing products?

22            MR. COOMBS:  Objection, calls for

23   speculation.

24       A.   Your clients are in the business of controlling

25   content.  The content is what your clients are in the

                          249

BARKLEY
Court Reporters

1    business of controlling, so your -- my answer is yes.
2    As far as I know, that is -- all your clients are in
3    business to do is control content, so the content is
4    number one.
5        Q.   (BY MR. LOWE)  What evidence do you have they
6    are in the business of controlling content?
7        A.   Because your client is a data provider.  Data
8    is the content.
9        Q.   What evidence do you have that they are a data
10   provider?
11       A.   They're a website that states that they provide
12   web-hosting services.
13       Q.   Web-hosting services, in your mind, equates to
14   data provider?
15       A.   They provide web-hosting services.
16       Q.   Yes.  Is that the same as data provider, in
17   your mind?
18       A.   It's not the same as data provider.  Providing
19   data is incidental to web hosting.
20       Q.   What data do they provide, do you believe?
21       A.   Again, I may have misused the word "provider."
22   They control content, they store content.  That is what
23   hosting is.  I may have misused the word -- the words
24   "data" and "provider."
25       Q.   All right.  So talking --

ROBERT L. HOLMES

BARKLEY
Court Reporters

1   STATE OF TEXAS      X

2   COUNTY OF DALLAS    X

3

4           I, Ronald R. Cope, a Certified Shorthand

5   Reporter duly commissioned and qualified in and for the

6   State of Texas, Registered Professional Reporter and

7   Certified Realtime Reporter, do hereby certify that

8   there came before me on the 1st day of April, 2008, at

9   U.S. Legal Support/MillerParker, Inc. Located at 5910

10  North Central Expressway, 100 Premier Place, Dallas,

11  Texas, 75206, the following named person, to-wit: ROBERT

12  L. HOLMES, who was duly sworn to testify the truth, the

13  whole truth, and nothing but the truth of knowledge

14  touching and concerning the matters in controversy in

15  this cause; and that he was thereupon examined upon oath

16  and his examination reduced to typewriting under my

17  supervision; that the deposition is a true record of the

18  testimony given by the witness.

19          I further certify that pursuant to FRCP

20  Rule 30(e) that the signature of the deponent:

21          _X_ was requested by the deponent or a

22  party before the completion of the deposition, and that

23  signature is to be before any notary public and returned

24  within 30 days from date of receipt of the transcript;

25          ____ was not requested by the deponent or a

316

ROBERT L. HOLMES

BARKLEY
Court Reporters

Page 317

1   party before the completion of the deposition.

2            I further certify that I am neither

3   attorney or counsel for, nor related to or employed by

4   any of the parties to the action in which this

5   deposition is taken, and further that I am not a

6   relative or employee of any attorney or counsel employed

7   by the parties hereto, or financially interested in the

8   action.

9            CERTIFIED TO BY ME on this the 7th day of

10  April, 2008.

11

12

13  RONALD R. COPE, CSR, RPR, CRR,
    Texas CSR 1813

14  Expiration Date: 12/31/09
    US Legal Support/MillerParker

15  CRCB Registration No. 343
    100 Premier Place

16  5910 North Central Expressway
    Dallas, Texas  75206-5190

17  (214) 369-3376

    Charge for transcript and exhibits $ _____
18
    To be paid by Defendant James A. Lowe
19
    Job No. 68415
20

21

22

23

24

25

1    STATE OF CALIFORNIA          }
                                  }  ss.
2    COUNTY OF LOS ANGELES        }

3

4          I, I Chun Su, hereby certify:

5          I am an employee of Barkley Court Reporters,

6    duly authorized agent for the deposition officer that

7    stenographically recorded the testimony in the foregoing

8    proceeding and authorized to execute this copy

9    certificate.

10         The foregoing is a true and correct copy of

11   the original transcript of the stated proceeding.

12

13   Dated  04/08/08 .

14

15                              _____

16

17

18

19

20

21

22

23

24

25

BARKLEY
Court Reporters