1

2

3

4

J. Andrew Coombs (SBN 123881)
Annie S. Wang (SBN 243027)
J. Andrew Coombs, A Prof. Corp.
517 E. Wilson Ave., Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile:  (818) 500-3201

5

6

andy@coombspc.com
annie@coombspc.com

7

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

10

11

12

13

14

15

| | |
|---|---|
| Louis Vuitton Malletier, S.A., | ) Case No. C 07 3952 JW |
| Plaintiff, | ) PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT; DECLARATION IN SUPPORT |
| v. | ) |
| Akanoc Solutions, Inc., et al. | ) |
| Defendants. | ) Date:   September 8, 2008<br>) Time:  9:00 a.m.<br>) Court:  Hon. James Ware |

16

17

TO THE COURT AND TO THE DEFENDANTS:

18

19

20

21

22

23

PLEASE TAKE NOTICE that on September 8, 2008 at 9:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Hon. James Ware, United States District Judge, located at Courtroom 8, 4th Floor of the United States District Courthouse, 280 South 1st Street, San Jose, California 95113, Plaintiff Louis Vuitton Malletier, S.A. ("Plaintiff" or "Louis Vuitton") will and hereby does move the Court for leave to file a First Amended Complaint a redline version of which is attached hereto as Exhibit A.

24

25

26

27

This motion is based on this Notice of Motion, Motion for Leave to File a First Amended Complaint and accompanying Memorandum of Points and Authorities, the Declarations and exhibits attached thereto, the exhibits and evidence to be presented at the hearing hereon, the

28

pleadings, records and papers on file herein and such other matters and evidence as may be

presented at or before the hearing.

Dated:  July 15, 2008                          J. Andrew Coombs, A Professional Corp.


　　　　　　　　　　　　　　　　　　　　　　　　　　　　____/s/ J. Andrew Coombs_____
                                               By:  J. Andrew Coombs
                                                    Annie S. Wang
                                               Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

**INTRODUCTION**

Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton" or "Plaintiff") brings this motion for leave to file its First Amended Complaint, the purpose of which is to specify the names of some of the websites at issue. An amendment will address Defendants Akanoc Solutions, Inc., Managed Solutions Group, Inc. and Steven Chen's (collectively "Defendants") concern that websites relating to this matter be listed in the Complaint, though Plaintiff does not waive its position that these specifically named websites were already at issue under the original complaint. In view of the nature of the amendment and the absence of any prejudice or delay in granting the requested leave, Plaintiff submits leave be freely granted as contemplated by the applicable rules.

**STATEMENT OF FACTS**

Louis Vuitton alleges claims for infringement of valuable intellectual property rights arising out of systematic and extensive online sales of pirated goods through websites hosted by Defendants despite notice of such infringement.

Plaintiff independently identified the websites listed in the amendment as Defendants have never produced any data from any webpage hosted by them, stating the lack of information was partly due to a "crash" which occurred in or around June of 2007. Declaration of J. Andrew Coombs ("Coombs Decl.") at ¶ 4. Plaintiff is also awaiting the order on its motion to compel or, in the alternative, inspect electronic records due to a continued default in the discovery process by Defendants. Id. Defendants have been notified since as early as November of 2007, of these specified websites, most of which were the subject of discovery requests to and from Defendants and deposition questions by Defendants. Id. at ¶ 3. No website in the amendment has not been previously brought to Defendants' attention through counsel. Id.

Recently, Defendants claimed that only five (5) websites were at issue despite the notification letters, discovery history, and clear language of the Complaint which states, "The

websites hosted by servers maintained by the ISP Defendants include but are not limited to…"
Compl. p. 10, ¶ 31; Coombs Decl. at ¶¶ 3-5.  As the amendment does not require any change to any
preliminary pre-trial date set by the Court pursuant to the Scheduling Order, is requested due to the
position taken by Defendants, and does not prejudice the Defendants, Plaintiff respectfully requests
that the Court grant this motion for leave to file a First Amended Complaint.

## ARGUMENT

Fed. R. Civ. P. 15(a) provides that "leave [to amend the pleadings] shall be freely given
when justice so requires" and lies "within the sound discretion of the trial court."  DCD Programs,
Ltd. V. Leighton, 833 F.2d 183, 185 (9th Cir. 1987) (quoting United States v. Webb, 655 F.2d 977,
979 (9th Cir. 1981).

In exercising its discretion, "leave to amend should be granted unless amendment would
cause undue prejudice to the opposing party, is sought in bad faith, is futile, or creates undue
delay."  Martinez v. Newport Beach City, 125 F.3d 777, 785 (9th Cir. 1997); see also Foman v.
Davis, 371 U.S. 178, 182 (1962).  In making this determination, "a court must be guided by the
underlying purpose of Rule 15, -- to facilitate decision on the merits rather than on the pleadings or
technicalities."  DCD Programs, 833 F.2d at 186 (quoting Webb, 655 F.2d at 979).  "In adhering to
Rule 15's policy favoring amendment, the court should apply that policy with 'extreme liberality.'"
Id.; Imax Corporation, et al v. In-Three, Inc., 2005 U.S. Dist. Court 24198, at *3-4 (C.D. Cal. July
8, 2005).

I.    Plaintiff's Motion Merely Identifies the Minimum Websites at Issue in Response to
Defendants' Concerns of the Scope of the Original Complaint.

The proposed First Amended Complaint merely specifies websites which have been the
subject of numerous cease and desist letters on behalf of Plaintiff to Defendants.  Coombs Decl. at
¶ 3.  The specifically listed websites have been identified by Plaintiff as selling counterfeit Louis

Vuitton branded goods while hosted by Defendants. No claims are added or changed as to Defendants.

II.    Factors Against Granting Leave to Amend are Absent in this Case.

Defendants are not prejudiced by the proposed amendment because the underlying claims remain unchanged and Defendants have been notified of the names of the specified websites post-filing of the Complaint through letters from Plaintiff dated as early as November of 2007. Coombs Decl. at ¶ 3. Defendants have conducted discovery as to most of the websites listed in the amendment and in any event, have claimed they lack associated data which was the subject of Plaintiff's motion to compel. Id. at ¶ 4. The proposed amendment will make the Complaint more clear given Defendants' position on the websites at issue. Id. at ¶ 5. Only after Defendants stated that they did would not change their position on this issue and that they would not stipulate to the proposed leave, did Plaintiff file the present motion.

Second, Plaintiff's proposed amendment is not made in bad faith as Plaintiff merely attempts to clarify the scope of the claim in response to Defendants' concerns and the websites were identified as quickly as possible without the aid of Defendants. Defendants have not provided any webpage data of any websites they host despite repeated requests which prompted Plaintiff's Motion to Compel. Id. at ¶ 4.

Third, Plaintiff's proposed amendment would not be futile as it would more correctly clarify the websites at issue. The amendment better states the scope of Plaintiff's claims and facilitates a more complete resolution of the action.

Lastly, Plaintiff's proposed amendment does not create undue delay as it comes before the court far in advance of the preliminary pre-trial conference which is set for September 8, 2008. The hearing for the present motion will occur concurrently with the currently set preliminary pre-trial conference in this matter.

1

## CONCLUSION

2

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for

3

leave to file a first amended complaint, a copy of which is attached hereto as Exhibit B and

4

separately lodged.

5

6

Dated:  July 15, 2008                         J. Andrew Coombs, A Professional Corp.

7

8

         /s/ J. Andrew Coombs
         By:  J. Andrew Coombs
              Annie Wang

9

         Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DECLARATION OF J. ANDREW COOMBS

2

I, J. Andrew Coombs, declare as follows:

3

4     1.    I am an attorney at law duly admitted to practice before the Courts of the State of

5     California and the United States District Court for the Northern District of California.  I am counsel

6     of record for Plaintiff Louis Vuitton Malletier, S.A. ("Plaintiff" or "Louis Vuitton") in an action

7     styled <u>Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., et al.</u>, Case No. C 07 3952 JW.  I

8     submit this declaration in support of Plaintiff's motion for leave to file a First Amended Complaint

9     in this matter.  Except as otherwise stated to the contrary, I have personal knowledge of the

10    following facts and, if called as a witness, I could and would competently testify as follows.

11    2.    A redlined copy of the proposed First Amended Complaint is attached hereto as

12    Exhibit A, and a clean copy is attached hereto as Exhibit B.  Like the initial Complaint filed in this

13    matter, the First Amended Complaint pleads causes of action for contributory and vicarious

14    infringement of valuable intellectual properties owned by Plaintiff.  The First Amended Complaint

15    expressly identifies websites hosted by Defendants which were selling counterfeit Louis Vuitton

16    branded goods.

17

18    3.    Starting on or about November 26, 2007, my office began sending letters to

19    Defendants' counsel identifying more specifically websites which were hosted by Defendants and

20    selling counterfeit Louis Vuitton merchandise.  Most of the websites identified in the amendment

21    were the subject of discovery requests to and from Defendants and were touched upon in

22    deposition questions by Defendants.  Letters of notice of infringements continued to be sent to

23    Defendants in March, April, and June and I am informed and believe notification on one occasion

24    was completed by telephone.  The specified websites in the amendment are all those which

25    Defendants have been previously notified as infringing.

26

27

28

4.       I am informed and believe Defendants have provided no webpage data concerning any websites hosted by them due to a "crash" of their equipment they contend occurred in or about June of 2007. This lack of discovery as to the websites, in part, prompted Plaintiff's filing of its Motion For an Order Compelling Production, or in the Alternative, Inspection of Electronic Records.

5.       I am informed and believe that beginning in or about the end of April 2008, Defendants suggested that the only websites at issue were the five (5) websites listed in the Complaint. As of June 6, 2008, Defendants made clear that this was going to be their position in the litigation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 15th day of July, 2008, at Glendale, California.

_____/s/ J. Andrew Coombs_____
J. ANDREW COOMBS

# EXHIBIT A

J. Andrew Coombs  (SBN 123881)
Annie S. Wang (SBN 243027)
J. Andrew Coombs, A Prof. Corp.
517 East Wilson Avenue, Suite 202
Glendale, California 91206
Telephone:  (818) 500-3200
Facsimile:   (818) 500-3201

andy@coombspc.com
annie@coombspc.com

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

**Deleted:** 450 North Brand Blvd., Suite 600¶

**Deleted:** 91203-2349¶

**Deleted:** 291-6444¶

**Deleted:** 291-6446

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | |
|---|---|
| Louis Vuitton Malletier, S.A., | Case No.:  CV07-3952 JW |
| Plaintiff, | First Amended Complaint For: Contributory and Vicarious Trademark Infringement; Contributory and Vicarious Copyright Infringement |
| v. | |
| Akanoc Solutions, Inc., Managed Solutions Group, Inc., Steven Chen and Does 1 through 10, inclusive, | |
| Defendants. | |

Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton" or "Plaintiff") for its first amended complaint alleges as follows:

**I.   Jurisdiction and Venue**

1.      The claims alleged herein arise under the Trademark Act, 15 U.S.C. § 1051, et seq., and under the Copyright Act of 1976, 17 U.S.C. § 101, et seq., for (i) contributory and vicarious liability for trademark infringement; and (iii) contributory and vicarious liability for copyright infringement.

2.      This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332 and 1338.

3.       This Court has personal jurisdiction over the Defendants because they do business and/or reside in the State of California and, as to the entities, do business, are incorporated, and/or are authorized to do business in the State of California.

4.       Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

**II.   Introduction**

5.       The substantial profits to be reaped from piracy and counterfeiting have led to the creation, development and proliferation of business models, the object of which is to capitalize on world famous trademarks and copyrights owned by others, including those owned by Plaintiff.  The opportunities created by the Internet have led to a dramatic increase in the opportunities to profit from such activity.  These opportunities rely upon the active participation and contribution of third parties which make such illegal activities possible.

6.       In particular, the promotion of infringing product and the offer of product for sale occurs through communications published on the Internet.   These promotions, advertisements and offers are often published on websites which can be accessed by entering Internet addresses or through hypertext links which direct Internet users to websites containing such offers. Communications designed to complete sales of such infringing merchandise are transmitted over servers which host these same websites.

7.       Defendants Akanoc Solutions Inc.  ("Akanoc") and Managed Solutions Group, Inc. ("MSGI") operate servers hosting websites.  Louis Vuitton is informed and believes that Defendant Steven Chen is an individual with responsibility for the operation and management of Akanoc and MSGI and that Akanoc and MSGI are under common control and ownership.  Louis Vuitton is further informed and believes that Akanoc and MSGI were formed for and exist primarily to facilitate the promotion and advertisement of offers for counterfeit and infringing merchandise. Akanoc and MSGI aid and abet the distribution and sale of counterfeit and infringing merchandise

Louis Vuitton v Akanoc, et al.:  First Amended Complaint          - 2 -

through the provision of Internet hosting services and they do so knowingly and despite having been provided with full notice of such conduct.  Louis Vuitton is informed and believes that Akanoc, MSGI and Chen benefit financially from the services they render hosting website which offer counterfeit Louis Vuitton merchandise and through which sales of such merchandise are consummated.

### III.  The Parties: Plaintiff

8.     Plaintiff is organized and existing under the laws of the Republic of France, with its principal place of business in Paris, France.  Plaintiff owns the trademarks and trade names "LOUIS VUITTON", "VUITTON" and "LV" (hereinafter collectively referred to as "Plaintiff's Trademarks").  Plaintiff has engaged in services using Plaintiff's Trademarks and Plaintiff is the exclusive distributor in the United States of handbags, luggage and accessories, all of which bear one or more of Plaintiff's Trademarks.  Plaintiff distributes authentic product online through www.eluxury.com.

9.     Plaintiff is the sole and exclusive distributor in the United States of leather goods bearing Plaintiff's Trademarks, which are exclusively manufactured in France, Spain and San Dimas, California.  Plaintiff is engaged in the manufacture, sale and distribution in interstate and foreign commerce of prestigious high-quality, luxury merchandise, including a wide variety of luggage, handbags, trunks, garment bags, wallets, small leather goods, apparel and other similar items sold throughout the United States in Louis Vuitton boutiques, and high quality retail stores such as Saks Fifth Avenue, Neiman Marcus and Bloomingdale's that contain departments operated by Plaintiff and staffed by Plaintiff's personnel.

10.     Plaintiff is responsible for assembling, finishing, marketing and selling in interstate commerce high quality handbags, luggage, accessories and related products and/or services for men and women.  Plaintiff has acquired an outstanding reputation because of the uniform high

quality of its handbags, luggage and accessories and the boutiques through which Plaintiff sells these products.

11.    As a result of the Louis Vuitton boutiques, extensive advertising of Louis Vuitton in connection with Plaintiff's intellectual properties, the widespread sale of Louis Vuitton merchandise and the celebrity that Plaintiff and Plaintiff's intellectual properties have achieved, Louis Vuitton boutiques, handbags, luggage and accessories, all utilizing and/or bearing one or more of Plaintiff's intellectual properties have been and are now recognized by the public and the trade as originating from Plaintiff.

12.    Commencing at least as early as 1932, Plaintiff adopted one or more of Plaintiff's Trademarks for handbags, luggage, accessories and related products and caused said trademarks to be registered in the United States Patent and Trademark Office.

13.    Plaintiff is the owner of all rights in and to numerous trademarks including, but not limited to, Plaintiff's Trademarks that are the subject of the following trademark registrations:

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) in a Circle Design | 286,345 | | 18 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Design | 297,594 | | 18 |
| LOUIS VUITTON | 1,045,932 | LOUIS VUITTON | 18 |

Louis Vuitton v Akanoc, et al.: First Amended Complaint        - 4 -

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) Design | 1,519,828 | | 18 |
| LOUIS VUITTON MALLETIER A PARIS in Rectangle | 1,615,681 | | 16, 18 |
| Louis Vuitton (Interlocked Letters) on Epi Leather Design | 1,655,564 | | 18 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Pattern Design | 1,770,131 | | 25 |
| Louis Vuitton (Interlocked Letters) Design | 1,794,905 | | 16, 25 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Design | 1,875,198 | | 16 |

Louis Vuitton v Akanoc, et al.: First Amended Complaint     - 5 -

EXHIBIT A                                                    PAGE 11

| Trademark | Registration Number | Trademark Picture | Class of Goods |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) | 1,938,808 | | 14, 24 |
| LOUIS VUITTON World Mark | 1,990,760 | LOUIS VUITTON | 16, 18, 24, 25 |
| Louis Vuitton (Interlocked Letters) Design | 2,291,907 | | 34 |
| LOUIS VUITTON | 2,303,212 | LOUIS VUITTON | 34 |
| Louis Vuitton (Interlocked Letters) Design | 2,361,695 | | 25 |
| LOUIS VUITTON PARIS and Damier (pattern design) | 2,378,388 | | 18 |

14.    Plaintiff's Trademarks are in full force and effect, and are used and have never been abandoned.  Plaintiff intends to continue to preserve and maintain its rights with respect to Plaintiff's Trademarks.

Louis Vuitton v Akanoc, et al.: First Amended Complaint        - 6 -

15.     Plaintiff's products utilizing and/or bearing one or more of Plaintiff's Trademarks, by reason of their style, distinctive designs and quality have come to be known by the purchasing public throughout the United States as being of the highest quality.  As a result thereof, Plaintiff's Trademarks and the goodwill associated therewith are of inestimable value to Plaintiff.

16.     Based on the Louis Vuitton boutiques and the extensive sales of Plaintiff's products and their wide popularity, Plaintiff's Trademarks have developed a secondary meaning and significance in the minds of the purchasing public, and the services and products utilizing and/or bearing such marks and names are immediately identified by the purchasing public with Plaintiff.

17.     Those trademarks are vital to Plaintiff, and Plaintiff will suffer irreparable harm if any third parties, including Defendants herein, are allowed to continue engaging in services and selling infringing goods utilizing and/or bearing identical or substantially similar trademarks.

18.     Louis Vuitton has also registered its copyrights in the United States Copyright Office and uses those copyrights in connection with its sale of luxury products.  A significant aspect of Louis Vuitton's business is the merchandising of product incorporating the distinctive elements associated with its luxury goods.

19.     The revenue from products that bear Louis Vuitton designs and are sold in the United States is substantial.  The appearance and other features of the Louis Vuitton designs are inherently distinctive.  The design, configuration, and distinctive features of the Louis Vuitton copyrighted works, and of works related thereto (hereinafter collectively, the "Louis Vuitton Copyrighted Designs"), are wholly original with Louis Vuitton and, as fixed in various tangible media, including merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., Sections 101 et seq.  Louis Vuitton is the owner of the Louis Vuitton Copyrighted Designs, which, as featured in connection with various merchandise, are copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. § 101, et seq.  (The Plaintiff's Trademarks and

the Louis Vuitton Copyrighted Designs are hereinafter collectively referred to as the "Louis

Vuitton Intellectual Properties").

20.    Louis Vuitton has complied in all respects with the laws governing copyright and

has secured the exclusive rights and privileges in and to the copyrights to Louis Vuitton

Copyrighted Designs.  Louis Vuitton owns certificates of registration for works in which the Louis

Vuitton Copyrighted Designs appear.  Copyright registrations secured by Louis Vuitton for the

Louis Vuitton Copyrighted Designs include:

| **Copyright** | **Reg. No.** | **Date Published** | **Date Registered** |
|---|---|---|---|
| Multicolor Monogram – Black Print | VA 1-250-121 | 12/18/02 | 06/24/04 |
| Multicolor Monogram – White Print | VA 1-250-120 | 12/18/02 | 06/24/04 |

21.    Products featuring the Louis Vuitton Copyrighted Designs that are manufactured,

sold, and distributed by Louis Vuitton or under its authority have been manufactured, sold, and

distributed in conformity with the provisions of the copyright laws.  Louis Vuitton and those acting

under its authority have complied with their obligations under the copyright laws and Louis

Vuitton, in its own right or as successor-in-interest, has at all times been the sole proprietor or

otherwise authorized to enforce all right, title, and interest in and to the copyrights in the Louis

Vuitton Copyrighted Designs.

22.    Louis Vuitton maintains strict quality control standards for all its products.  All

genuine Louis Vuitton products are inspected and approved by Louis Vuitton prior to distribution

and sale and are sold only through Louis Vuitton stores and Louis Vuitton boutiques within

department stores such as Saks Fifth Avenue, Neiman Marcus, and Bloomingdales, and

ELuxury.com.  No Louis Vuitton product is sold by anyone other than Louis Vuitton.  By

definition, any new (i.e. unused) product bearing any of the Louis Vuitton Intellectual Properties that is sold anywhere other than at a Louis Vuitton store (or ELuxury.com) is not a genuine Louis Vuitton product but rather a counterfeit product. Plaintiff does not sell its high-end products through licensees or franchisees and Plaintiff has not authorized independent retail vendors to engage in services and advertising utilizing and/or displaying the Louis Vuitton Intellectual Properties

23. At great expense, Louis Vuitton has created, developed, manufactured, advertised, and marketed its products in such a way that they convey and are associated with luxury products that meet the highest standards and are used by celebrities and dignitaries around the world.

24. Louis Vuitton's goods, so marked, continue to be recognized by the fashion industry and public as those of Louis Vuitton.

25. The Louis Vuitton Intellectual Properties and the goodwill of Louis Vuitton's business in connection with its trademarks and copyrights are continuously used and have never been abandoned.

IV. **The Parties: Defendants**

26. Louis Vuitton is informed and believes that Akanoc is a California corporation with its principal office in Fremont, California. Akanoc is an internet service provider which, among other things, hosts commercial websites.

27. Louis Vuitton is informed and believes that MSGI is a California corporation with its principal office in Fremont, California. MSGI is an internet service provider which, among other things, hosts commercial websites. Akanoc and MSGI are collectively referred to herein as the "ISP Defendants".

Louis Vuitton v Akanoc, et al.: First Amended Complaint        - 9 -

28.     Louis Vuitton is informed and believes that Steve Chen is an individual resident in the City of Fremont and State of California.  Louis Vuitton is further informed and believes that Steve Chen is an officer, owner and/or managing employee of Akanoc and MSGI.

29.     Plaintiff is informed and believes, and upon that basis alleges, that at all relevant times each of the defendants Does 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues such Doe defendants as individuals and/or business entities, agents, partners, and/or employees of the named Defendants, which, in taking the actions alleged in this Complaint, were acting within the scope of such agency, partnership, and/or employment.

**V.  The Infringing Activities**

30.     The ISP Defendants host websites (the "Counterfeiting Websites") and facilitate communications between the sellers of counterfeit product who operate the Counterfeiting Websites and their customers.  The Counterfeiting Websites offer, promote, advertise and facilitate the offer and sale of counterfeit merchandise which infringes the intellectual property rights of Louis Vuitton, among others.  The Counterfeiting Websites publish unauthorized reproductions of the Louis Vuitton Copyrighted Designs to promote the sale of counterfeit merchandise.  Louis Vuitton is informed and believes that the servers upon which the Counterfeiting Websites are hosted are also used to transmit communications by and between the operators of the Counterfeiting Websites and their customers.

31.     The websites hosted by servers maintained by the ISP Defendants include but are not limited to the following: 315EC.com, Ape168.com, Atozbrand.com, At88.com, Bag1881.net, Bag4Sell.com, Bag925.com, BigWorldShoes.com, Bizyao.com, BrandFashioner.com, Brandstreets.com.cn, BrandStyleSales.com, Brandtrading.net, BuyMyShoes.net, Cn-nike.us, DreamyShoes.com, Eastarbiz.com, Eastarbiz.net, EBuyNike.com, ECshoes.com, EGoToBuy.com, EMSYou.com, EShoes99.com, Eshoes99.net, Famous-Shop.com, Fansjersey.com,

| Deleted: atozbrand |
| Deleted: bag925 |
| Deleted: ape168 |
| Deleted: wendy929 |
| Deleted: and eshoes99.com. |

GucciFendi.com, GZ-Free.com, HandBagSell.com, Imitation-Gold.com, InNike.com, Lkkfashion2006.com, Ilouisvuitton.com, LongTimeGroup.com, Louis-vuitton-bags.org, Louisvuittonbagz.com, LoverNike.com, LuxeLike.com, Luxury2Us.com, LVBagz.com, lv-handbag.com, lv-nike.com, MailGoods.com, Myshoes99.com, Nike558.com, Nikeexp.com, NikeShoesOffer.com, NikeWTO.com, NonStopBeauty.com, PFCStation.com, PickHipHop.com, PickYourGoods.com, PickYourOrder.com, Pro-Jordan.com, Queen-bag.com, Replica-ebags.com, Replicabc.com, RRGNL.com, Shoes-Order.com, SoApparel.com, Soapparel.net, Sportsvendor.biz, Sunny7Shoes.com, Super925.com, Swisshours.biz, Top-handbag.com, Tytrade88.com, Watchesnreplica.com, WatchesReplica.net, WatchNReplica.net, WearOnline.net, Wendy929.com, Wendy929.net, Wendyluxury.com, WorldKeyTrade.com, YeahEBay.com, Yseenet.net. Louis Vuitton is further informed and believes that most, if not all, of the websites hosted by the ISP Defendants are engaged in the trafficking of counterfeit merchandise, specifically including merchandise infringing the Louis Vuitton Intellectual Properties.

    32.    Defendants have been repeatedly placed on notice of the counterfeit activity which occurs using the hosting services offered by the ISP Defendants. Louis Vuitton has not granted any of the Defendants license to use, exploit any of the Louis Vuitton Intellectual Properties. The ISP Defendants have taken no steps to limit, curtail, disable, stop or otherwise discontinue the services they provide which make such infringing activity possible. Louis Vuitton is informed and believes that the ISP Defendants generate revenue and profit from the Internet traffic and counterfeit sales which occur as a result of their hosting activity.

    33.    Plaintiff has no adequate remedy at law and is suffering irreparable harm and damages as a result of the acts of Defendants as aforesaid in an amount thus far not determined.

### FIRST CLAIM FOR RELIEF

**(For Contributory Trademark Infringement)**

34.    Plaintiff repeats and re-alleges all of the allegations contained in paragraphs 1 through 33, inclusive, as though fully set forth herein.

35.    The Counterfeiting Websites are engaging in illegal conduct including but not necessarily limited to the promotion, advertisement, offer for sale, sale and distribution of counterfeit goods in violation of the Lanham Act, as amended.

36.    Defendants have actual knowledge of the Counterfeiting Websites' illegal activities from, among other things, written notification by counsel and agents for Plaintiff.

37.    Defendants have deliberately disregarded these notifications and have otherwise consciously avoided learning about the full extent of illegal counterfeiting and infringing activities that are continuing at the Counterfeiting Websites.

38.    Defendants have materially encouraged, enabled, and contributed to the infringing conduct at the Counterfeiting Websites by providing, among other things, hosting the Counterfeiting Websites, displaying offers for counterfeit products, facilitating communications by and between the sellers of counterfeit goods over the Counterfeiting Websites and their distributors, consumers and vendors.

39.    Defendants therefore bear contributory liability for the Counterfeiting Websites' counterfeiting of the Plaintiff's Trademarks in violation of 15 U.S.C. § 1051, et seq. and the common law.

40.    Plaintiff has no adequate remedy at law and has suffered irreparable harm and damage as a result of the contributory counterfeiting conduct of the Defendants.

Louis Vuitton v Akanoc, et al.: First Amended Complaint        - 12 -

41.     Plaintiff has sustained damages as a result of the Defendants' wrongful contributory conduct in an amount to be ascertained at trial but in no event less than One Million Dollars ($1,000,000) per trademark per counterfeit.

## SECOND CLAIM FOR RELIEF

### (For Vicarious Trademark Counterfeiting)

42.     Plaintiff repeats and re-alleges all of the allegations contained in paragraphs 1 through 41, inclusive, as though fully set forth herein.

43.     The illegal sales of products that infringe on the Plaintiff's Trademarks have generated enormous sums of monies for the Counterfeiting Websites.

44.     Despite the Defendants' duty and right to control the Counterfeiting Websites, they have taken no steps to stop or otherwise prevent the ongoing counterfeiting at the websites operated by the Counterfeiting Websites or to disconnect links directing its users to such websites.

45.     Defendants are therefore vicariously liable for the damages caused to Plaintiff as a result of the illegal promotion, advertisement, offer for sale and/or sale of counterfeit merchandise at the Counterfeiting Websites in violation of 15 U.S.C. § 1051, et seq. and the common law.

46.     Plaintiff has sustained damages as a result of the Defendants' wrongful vicarious conduct in an amount to be determined at trial but in no event less than One Million Dollars ($1,000,000) per trademark per counterfeited.

## THIRD CLAIM FOR RELIEF

### (Contributory and Vicarious Copyright Piracy)

47.     Plaintiff repeats and re-alleges all of the allegations contained in paragraphs 1 through 33, inclusive, as though fully set forth herein.

48.     Louis Vuitton is informed and believes that Defendants earn revenues for hosting the Counterfeiting Websites for each Internet user directed to websites operated by the

Louis Vuitton v Akanoc, et al.: First Amended Complaint     - 13 -

Deleted: 40

Deleted: 45

1  Counterfeiting Websites.  The ISP Defendants do so pursuant to terms of use which permit them to

2  discontinue links through websites offering product infringing the rights of third parties.

3      49.    Defendants have actual knowledge of the illegal acts of the Counterfeiting Websites

4  from, among other things, written notification from Louis Vuitton.  Defendants have therefore

5  deliberately disregarded and otherwise consciously avoided learning about the full extent of illegal

6  counterfeiting and infringing activities that are continuing at the websites operated by the

7

8  Counterfeiting Websites.

9      50.    Defendants have knowingly and willfully permitted and continue to permit the

10  Counterfeiting Websites to sell and offer for sale unauthorized copies of products bearing the Louis

11  Vuitton Intellectual Properties at the Counterfeiting Websites.

12

13      51.    Defendants have therefore materially encouraged, enabled, and contributed to the

14  infringing conduct at the websites operated by the Counterfeiting Websites.

15      52.    Plaintiff has sustained, and will continue to sustain, substantial injuries, loss, and

16  damage to its exclusive rights in the Louis Vuitton Copyrights, and Plaintiff has sustained and will

17  continue to sustain damages from the loss of value of the exclusive rights thereunder as a result of

18  the Defendants' wrongful conduct in an amount to be determined at trial but in no event less than

19  One Hundred and Fifty Thousand Dollars ($150,000) per copyright infringed.

20

21                      **PRAYER FOR RELIEF**

22          WHEREFORE, Plaintiff demands:

23      1)    That Defendants and their officers, agents, servants, employees, representatives,

24  successors, and assigns; and all other persons, firms, or corporations in active concert or

25  participation with them who receive actual notice of this Order, be temporarily, preliminarily and

26  permanently enjoined and restrained from:

27

28

Louis Vuitton v Akanoc, et al.:  First Amended Complaint        - 14 -

a)  directly or indirectly infringing Plaintiff's Trademarks or any marks similar thereto, in any manner, including generally, but not limited to engaging in services and manufacturing, importing, distributing, advertising, selling, and/or offering for sale any merchandise which infringes said Trademarks and specifically:

i)  advertising, selling, and/or offering for sale any other unauthorized merchandise, which pictures, reproduces, or utilizes the likenesses of or which copy or are likely to cause consumer confusion with any of Plaintiff's Trademarks;

ii)  hosting websites which offer product purporting to be Plaintiff's product or any imitation or replica thereof;

b)  indirectly infringing the Louis Vuitton Copyrights and Designs, in any manner, including generally, but not limited to engaging in services and manufacturing, importing, distributing, advertising, selling, and/or offering for sale any merchandise which infringes said Copyrights and specifically:

i)  advertising, selling, and/or offering for sale any other unauthorized merchandise, which pictures, reproduces, or utilizes the likenesses of or which copy or are substantially similar to any of the Louis Vuitton Copyrights and Designs;

ii)  hosting websites which offer product purporting to be Plaintiff's product or any imitation or replica thereof;

c)  effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs A and B.

Louis Vuitton v Akanoc, et al.:  First Amended Complaint       - 15 -

2)      That Defendants be required to account to Plaintiff for all profits and damages resulting from Defendants' infringing activities and that the award to Plaintiff be increased as provided for under 15 U.S.C. §1117;

3)      That Defendants pay over to Plaintiff in the alternative statutory damages pursuant to 15 U.S.C. § 1117(c);

4)      That Plaintiff have a recovery from Defendants of the costs of this action and Plaintiff's reasonable attorneys' fees pursuant to 15 U.S.C. §1117(b);

5)      That Defendants be required to account to Plaintiff for all profits and damages resulting from Defendants' respective infringing activities as provided for under 17 U.S.C. §504;

6)      That Defendants pay over to Plaintiff in the alternative statutory damages pursuant to 15 U.S.C. § 504;

7)      That Plaintiff have a recovery from Defendants of the costs of this action and Plaintiff's reasonable attorneys' fees pursuant to 17 U.S.C. §505;

8)      That Plaintiff has all other and further relief as the Court may deem just and proper under the circumstances.

Dated: July 15, 2008                      J. ANDREW COOMBS,
                                          A Professional Corporation


                                          /s/ J. Andrew Coombs
                                          By:  J. Andrew Coombs
                                          Attorneys for Plaintiff Louis Vuitton Malletier,
                                          S.A.

Deleted: //¶ /¶

Deleted: 30, 2007

Deleted: _____

Louis Vuitton v Akanoc, et al.:  First Amended Complaint          - 16 -

EXHIBIT A                                           PAGE 22

# EXHIBIT B

1  J. Andrew Coombs  (SBN 123881)
   Annie S. Wang (SBN 243027)
2  J. Andrew Coombs, A Prof. Corp.
   517 East Wilson Avenue, Suite 202
3  Glendale, California 91206
   Telephone:  (818) 500-3200
4  Facsimile:   (818) 500-3201

5  andy@coombspc.com
   annie@coombspc.com
6

7  Attorneys for Plaintiff Louis
   Vuitton Malletier, S.A.

8                    UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

10                                      )
   Louis Vuitton Malletier, S.A.,       )    Case No.:  CV07-3952 JW
11                                      )
                      Plaintiff,        )    First Amended Complaint For:
12                                      )    Contributory and Vicarious Trademark
        v.                              )    Infringement; Contributory and
13                                      )    Vicarious Copyright Infringement
   Akanoc Solutions, Inc., Managed Solutions )
14 Group, Inc., Steven Chen and Does 1 through 10, )
   inclusive,                           )
15                                      )
                      Defendants.       )
16

17        Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton" or "Plaintiff") for its first amended

18 complaint alleges as follows:

19  **I.   Jurisdiction and Venue**

20        1.     The claims alleged herein arise under the Trademark Act, 15 U.S.C. § 1051, et seq.,

21 and under the Copyright Act of 1976, 17 U.S.C. § 101, et seq., for (i) contributory and vicarious

22 liability for trademark infringement; and (iii) contributory and vicarious liability for copyright

23 infringement.

24        2.     This Court has original jurisdiction over the subject matter of this action pursuant to

25 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332 and 1338.

26

27

28

   Louis Vuitton v Akanoc, et al.:  First Amended Complaint        - 1 -

3.    This Court has personal jurisdiction over the Defendants because they do business and/or reside in the State of California and, as to the entities, do business, are incorporated, and/or are authorized to do business in the State of California.

4.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## II.  Introduction

5.    The substantial profits to be reaped from piracy and counterfeiting have led to the creation, development and proliferation of business models, the object of which is to capitalize on world famous trademarks and copyrights owned by others, including those owned by Plaintiff.  The opportunities created by the Internet have led to a dramatic increase in the opportunities to profit from such activity.  These opportunities rely upon the active participation and contribution of third parties which make such illegal activities possible.

6.    In particular, the promotion of infringing product and the offer of product for sale occurs through communications published on the Internet.   These promotions, advertisements and offers are often published on websites which can be accessed by entering Internet addresses or through hypertext links which direct Internet users to websites containing such offers. Communications designed to complete sales of such infringing merchandise are transmitted over servers which host these same websites.

7.    Defendants Akanoc Solutions Inc.  ("Akanoc") and Managed Solutions Group, Inc. ("MSGI") operate servers hosting websites.  Louis Vuitton is informed and believes that Defendant Steven Chen is an individual with responsibility for the operation and management of Akanoc and MSGI and that Akanoc and MSGI are under common control and ownership.  Louis Vuitton is further informed and believes that Akanoc and MSGI were formed for and exist primarily to facilitate the promotion and advertisement of offers for counterfeit and infringing merchandise. Akanoc and MSGI aid and abet the distribution and sale of counterfeit and infringing merchandise

Louis Vuitton v Akanoc, et al.:  First Amended Complaint          - 2 -

through the provision of Internet hosting services and they do so knowingly and despite having been provided with full notice of such conduct.  Louis Vuitton is informed and believes that Akanoc, MSGI and Chen benefit financially from the services they render hosting website which offer counterfeit Louis Vuitton merchandise and through which sales of such merchandise are consummated.

**III.**  **The Parties: Plaintiff**

8.    Plaintiff is organized and existing under the laws of the Republic of France, with its principal place of business in Paris, France.  Plaintiff owns the trademarks and trade names "LOUIS VUITTON", "VUITTON" and "LV" (hereinafter collectively referred to as "Plaintiff's Trademarks").  Plaintiff has engaged in services using Plaintiff's Trademarks and Plaintiff is the exclusive distributor in the United States of handbags, luggage and accessories, all of which bear one or more of Plaintiff's Trademarks.  Plaintiff distributes authentic product online through www.eluxury.com.

9.    Plaintiff is the sole and exclusive distributor in the United States of leather goods bearing Plaintiff's Trademarks, which are exclusively manufactured in France, Spain and San Dimas, California.  Plaintiff is engaged in the manufacture, sale and distribution in interstate and foreign commerce of prestigious high-quality, luxury merchandise, including a wide variety of luggage, handbags, trunks, garment bags, wallets, small leather goods, apparel and other similar items sold throughout the United States in Louis Vuitton boutiques, and high quality retail stores such as Saks Fifth Avenue, Neiman Marcus and Bloomingdale's that contain departments operated by Plaintiff and staffed by Plaintiff's personnel.

10.    Plaintiff is responsible for assembling, finishing, marketing and selling in interstate commerce high quality handbags, luggage, accessories and related products and/or services for men and women.  Plaintiff has acquired an outstanding reputation because of the uniform high

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

quality of its handbags, luggage and accessories and the boutiques through which Plaintiff sells

these products.

     11.    As a result of the Louis Vuitton boutiques, extensive advertising of Louis Vuitton in

connection with Plaintiff's intellectual properties, the widespread sale of Louis Vuitton

merchandise and the celebrity that Plaintiff and Plaintiff's intellectual properties have achieved,

Louis Vuitton boutiques, handbags, luggage and accessories, all utilizing and/or bearing one or

more of Plaintiff's intellectual properties have been and are now recognized by the public and the

trade as originating from Plaintiff.

     12.    Commencing at least as early as 1932, Plaintiff adopted one or more of Plaintiff's

Trademarks for handbags, luggage, accessories and related products and caused said trademarks to

be registered in the United States Patent and Trademark Office.

     13.    Plaintiff is the owner of all rights in and to numerous trademarks including, but not

limited to, Plaintiff's Trademarks that are the subject of the following trademark registrations:

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) in a Circle Design | 286,345 | | 18 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Design | 297,594 | | 18 |
| LOUIS VUITTON | 1,045,932 | LOUIS VUITTON | 18 |

Louis Vuitton v Akanoc, et al.: First Amended Complaint    - 4 -

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) Design | 1,519,828 | | 18 |
| LOUIS VUITTON MALLETIER A PARIS in Rectangle | 1,615,681 | | 16, 18 |
| Louis Vuitton (Interlocked Letters) on Epi Leather Design | 1,655,564 | | 18 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Pattern Design | 1,770,131 | | 25 |
| Louis Vuitton (Interlocked Letters) Design | 1,794,905 | | 16, 25 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Design | 1,875,198 | | 16 |

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) | 1,938,808 | | 14, 24 |
| LOUIS VUITTON World Mark | 1,990,760 | LOUIS VUITTON | 16, 18, 24, 25 |
| Louis Vuitton (Interlocked Letters) Design | 2,291,907 | | 34 |
| LOUIS VUITTON | 2,303,212 | LOUIS VUITTON | 34 |
| Louis Vuitton (Interlocked Letters) Design | 2,361,695 | | 25 |
| LOUIS VUITTON PARIS and Damier (pattern design) | 2,378,388 | | 18 |

14.     Plaintiff's Trademarks are in full force and effect, and are used and have never been abandoned.  Plaintiff intends to continue to preserve and maintain its rights with respect to Plaintiff's Trademarks.

15.     Plaintiff's products utilizing and/or bearing one or more of Plaintiff's Trademarks, by reason of their style, distinctive designs and quality have come to be known by the purchasing public throughout the United States as being of the highest quality.  As a result thereof, Plaintiff's Trademarks and the goodwill associated therewith are of inestimable value to Plaintiff.

16.     Based on the Louis Vuitton boutiques and the extensive sales of Plaintiff's products and their wide popularity, Plaintiff's Trademarks have developed a secondary meaning and significance in the minds of the purchasing public, and the services and products utilizing and/or bearing such marks and names are immediately identified by the purchasing public with Plaintiff.

17.     Those trademarks are vital to Plaintiff, and Plaintiff will suffer irreparable harm if any third parties, including Defendants herein, are allowed to continue engaging in services and selling infringing goods utilizing and/or bearing identical or substantially similar trademarks.

18.     Louis Vuitton has also registered its copyrights in the United States Copyright Office and uses those copyrights in connection with its sale of luxury products.  A significant aspect of Louis Vuitton's business is the merchandising of product incorporating the distinctive elements associated with its luxury goods.

19.     The revenue from products that bear Louis Vuitton designs and are sold in the United States is substantial.  The appearance and other features of the Louis Vuitton designs are inherently distinctive.  The design, configuration, and distinctive features of the Louis Vuitton copyrighted works, and of works related thereto (hereinafter collectively, the "Louis Vuitton Copyrighted Designs"), are wholly original with Louis Vuitton and, as fixed in various tangible media, including merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., Sections 101 et seq.  Louis Vuitton is the owner of the Louis Vuitton Copyrighted Designs, which, as featured in connection with various merchandise, are copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. § 101, et seq.  (The Plaintiff's Trademarks and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the Louis Vuitton Copyrighted Designs are hereinafter collectively referred to as the "Louis Vuitton Intellectual Properties").

20.    Louis Vuitton has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to Louis Vuitton Copyrighted Designs.  Louis Vuitton owns certificates of registration for works in which the Louis Vuitton Copyrighted Designs appear.  Copyright registrations secured by Louis Vuitton for the Louis Vuitton Copyrighted Designs include:

| Copyright | Reg. No. | Date Published | Date Registered |
|-----------|----------|----------------|-----------------|
| Multicolor Monogram – Black Print | VA 1-250-121 | 12/18/02 | 06/24/04 |
| Multicolor Monogram – White Print | VA 1-250-120 | 12/18/02 | 06/24/04 |

21.    Products featuring the Louis Vuitton Copyrighted Designs that are manufactured, sold, and distributed by Louis Vuitton or under its authority have been manufactured, sold, and distributed in conformity with the provisions of the copyright laws.  Louis Vuitton and those acting under its authority have complied with their obligations under the copyright laws and Louis Vuitton, in its own right or as successor-in-interest, has at all times been the sole proprietor or otherwise authorized to enforce all right, title, and interest in and to the copyrights in the Louis Vuitton Copyrighted Designs.

22.    Louis Vuitton maintains strict quality control standards for all its products.  All genuine Louis Vuitton products are inspected and approved by Louis Vuitton prior to distribution and sale and are sold only through Louis Vuitton stores and Louis Vuitton boutiques within department stores such as Saks Fifth Avenue, Neiman Marcus, and Bloomingdales, and ELuxury.com.  No Louis Vuitton product is sold by anyone other than Louis Vuitton.  By

definition, any new (i.e. unused) product bearing any of the Louis Vuitton Intellectual Properties that is sold anywhere other than at a Louis Vuitton store (or ELuxury.com) is not a genuine Louis Vuitton product but rather a counterfeit product. Plaintiff does not sell its high-end products through licensees or franchisees and Plaintiff has not authorized independent retail vendors to engage in services and advertising utilizing and/or displaying the Louis Vuitton Intellectual Properties

23.    At great expense, Louis Vuitton has created, developed, manufactured, advertised, and marketed its products in such a way that they convey and are associated with luxury products that meet the highest standards and are used by celebrities and dignitaries around the world.

24.    Louis Vuitton's goods, so marked, continue to be recognized by the fashion industry and public as those of Louis Vuitton.

25.    The Louis Vuitton Intellectual Properties and the goodwill of Louis Vuitton's business in connection with its trademarks and copyrights are continuously used and have never been abandoned.

**IV.   The Parties: Defendants**

26.    Louis Vuitton is informed and believes that Akanoc is a California corporation with its principal office in Fremont, California. Akanoc is an internet service provider which, among other things, hosts commercial websites.

27.    Louis Vuitton is informed and believes that MSGI is a California corporation with its principal office in Fremont, California. MSGI is an internet service provider which, among other things, hosts commercial websites. Akanoc and MSGI are collectively referred to herein as the "ISP Defendants".

Louis Vuitton v Akanoc, et al.:  First Amended Complaint        - 9 -

28.     Louis Vuitton is informed and believes that Steve Chen is an individual resident in the City of Fremont and State of California.  Louis Vuitton is further informed and believes that Steve Chen is an officer, owner and/or managing employee of Akanoc and MSGI.

29.     Plaintiff is informed and believes, and upon that basis alleges, that at all relevant times each of the defendants Does 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues such Doe defendants as individuals and/or business entities, agents, partners, and/or employees of the named Defendants, which, in taking the actions alleged in this Complaint, were acting within the scope of such agency, partnership, and/or employment.

## V.  **The Infringing Activities**

30.     The ISP Defendants host websites (the "Counterfeiting Websites") and facilitate communications between the sellers of counterfeit product who operate the Counterfeiting Websites and their customers.  The Counterfeiting Websites offer, promote, advertise and facilitate the offer and sale of counterfeit merchandise which infringes the intellectual property rights of Louis Vuitton, among others.  The Counterfeiting Websites publish unauthorized reproductions of the Louis Vuitton Copyrighted Designs to promote the sale of counterfeit merchandise.  Louis Vuitton is informed and believes that the servers upon which the Counterfeiting Websites are hosted are also used to transmit communications by and between the operators of the Counterfeiting Websites and their customers.

31.     The websites hosted by servers maintained by the ISP Defendants include but are not limited to the following: 315EC.com, Ape168.com, Atozbrand.com, At88.com, Bag1881.net, Bag4Sell.com, Bag925.com, BigWorldShoes.com, Bizyao.com, BrandFashioner.com, Brandstreets.com.cn, BrandStyleSales.com, Brandtrading.net, BuyMyShoes.net, Cn-nike.us, DreamyShoes.com, Eastarbiz.com, Eastarbiz.net, EBuyNike.com, ECshoes.com, EGoToBuy.com, EMSYou.com, EShoes99.com, Eshoes99.net, Famous-Shop.com, Fansjersey.com,

GucciFendi.com, GZ-Free.com, HandBagSell.com, Imitation-Gold.com, InNike.com,

Lkkfashion2006.com, Ilouisvuitton.com, LongTimeGroup.com, Louis-vuitton-bags.org,

Louisvuittonbagz.com, LoverNike.com, LuxeLike.com, Luxury2Us.com, LVBagz.com, lv-

handbag.com, lv-nike.com, MailGoods.com, Myshoes99.com, Nike558.com, Nikeexp.com,

NikeShoesOffer.com, NikeWTO.com, NonStopBeauty.com, PFCStation.com, PickHipHop.com,

PickYourGoods.com, PickYourOrder.com, Pro-Jordan.com, Queen-bag.com, Replica-ebags.com,

Replicabc.com, RRGNL.com, Shoes-Order.com, SoApparel.com, Soapparel.net, Sportsvendor.biz,

Sunny7Shoes.com, Super925.com, Swisshours.biz, Top-handbag.com, Tytrade88.com,

Watchesnreplica.com, WatchesReplica.net, WatchNReplica.net, WearOnline.net, Wendy929.com,

Wendy929.net, Wendyluxury.com, WorldKeyTrade.com, YeahEBay.com, Yseenet.net.  Louis

Vuitton is further informed and believes that most, if not all, of the websites hosted by the ISP

Defendants are engaged in the trafficking of counterfeit merchandise, specifically including

merchandise infringing the Louis Vuitton Intellectual Properties.

32.    Defendants have been repeatedly placed on notice of the counterfeit activity which

occurs using the hosting services offered by the ISP Defendants.  Louis Vuitton has not granted

any of the Defendants license to use, exploit any of the Louis Vuitton Intellectual Properties.  The

ISP Defendants have taken no steps to limit, curtail, disable, stop or otherwise discontinue the

services they provide which make such infringing activity possible.  Louis Vuitton is informed and

believes that the ISP Defendants generate revenue and profit from the Internet traffic and

counterfeit sales which occur as a result of their hosting activity.

33.    Plaintiff has no adequate remedy at law and is suffering irreparable harm and

damages as a result of the acts of Defendants as aforesaid in an amount thus far not determined.

Louis Vuitton v Akanoc, et al.:  First Amended Complaint        - 11 -

1

2

## **FIRST CLAIM FOR RELIEF**

### **(For Contributory Trademark Infringement)**

3

4

34.     Plaintiff repeats and re-alleges all of the allegations contained in paragraphs 1

5

through 33, inclusive, as though fully set forth herein.

6

35.     The Counterfeiting Websites are engaging in illegal conduct including but not

7

necessarily limited to the promotion, advertisement, offer for sale, sale and distribution of

8

counterfeit goods in violation of the Lanham Act, as amended.

9

36.     Defendants have actual knowledge of the Counterfeiting Websites' illegal activities

10

from, among other things, written notification by counsel and agents for Plaintiff.

11

37.     Defendants have deliberately disregarded these notifications and have otherwise

12

consciously avoided learning about the full extent of illegal counterfeiting and infringing activities

13

that are continuing at the Counterfeiting Websites.

14

38.     Defendants have materially encouraged, enabled, and contributed to the infringing

15

16

conduct at the Counterfeiting Websites by providing, among other things, hosting the

17

Counterfeiting Websites, displaying offers for counterfeit products, facilitating communications by

18

and between the sellers of counterfeit goods over the Counterfeiting Websites and their

19

20

distributors, consumers and vendors.

21

39.     Defendants therefore bear contributory liability for the Counterfeiting Websites'

22

counterfeiting of the Plaintiff's Trademarks in violation of 15 U.S.C. § 1051, et seq. and the

23

common law.

24

40.     Plaintiff has no adequate remedy at law and has suffered irreparable harm and

25

damage as a result of the contributory counterfeiting conduct of the Defendants.

26

27

28

Louis Vuitton v Akanoc, et al.:  First Amended Complaint          - 12 -

41.     Plaintiff has sustained damages as a result of the Defendants' wrongful contributory conduct in an amount to be ascertained at trial but in no event less than One Million Dollars ($1,000,000) per trademark per counterfeit.

## SECOND CLAIM FOR RELIEF

### (For Vicarious Trademark Counterfeiting)

42.     Plaintiff repeats and re-alleges all of the allegations contained in paragraphs 1 through 41, inclusive, as though fully set forth herein.

43.     The illegal sales of products that infringe on the Plaintiff's Trademarks have generated enormous sums of monies for the Counterfeiting Websites.

44.     Despite the Defendants' duty and right to control the Counterfeiting Websites, they have taken no steps to stop or otherwise prevent the ongoing counterfeiting at the websites operated by the Counterfeiting Websites or to disconnect links directing its users to such websites.

45.     Defendants are therefore vicariously liable for the damages caused to Plaintiff as a result of the illegal promotion, advertisement, offer for sale and/or sale of counterfeit merchandise at the Counterfeiting Websites in violation of 15 U.S.C. § 1051, et seq. and the common law.

46.     Plaintiff has sustained damages as a result of the Defendants' wrongful vicarious conduct in an amount to be determined at trial but in no event less than One Million Dollars ($1,000,000) per trademark per counterfeited.

## THIRD CLAIM FOR RELIEF

### (Contributory and Vicarious Copyright Piracy)

47.     Plaintiff repeats and re-alleges all of the allegations contained in paragraphs 1 through 33, inclusive, as though fully set forth herein.

48.     Louis Vuitton is informed and believes that Defendants earn revenues for hosting the Counterfeiting Websites for each Internet user directed to websites operated by the

Louis Vuitton v Akanoc, et al.:  First Amended Complaint         - 13 -

Counterfeiting Websites. The ISP Defendants do so pursuant to terms of use which permit them to discontinue links through websites offering product infringing the rights of third parties.

49.    Defendants have actual knowledge of the illegal acts of the Counterfeiting Websites from, among other things, written notification from Louis Vuitton. Defendants have therefore deliberately disregarded and otherwise consciously avoided learning about the full extent of illegal counterfeiting and infringing activities that are continuing at the websites operated by the Counterfeiting Websites.

50.    Defendants have knowingly and willfully permitted and continue to permit the Counterfeiting Websites to sell and offer for sale unauthorized copies of products bearing the Louis Vuitton Intellectual Properties at the Counterfeiting Websites.

51.    Defendants have therefore materially encouraged, enabled, and contributed to the infringing conduct at the websites operated by the Counterfeiting Websites.

52.    Plaintiff has sustained, and will continue to sustain, substantial injuries, loss, and damage to its exclusive rights in the Louis Vuitton Copyrights, and Plaintiff has sustained and will continue to sustain damages from the loss of value of the exclusive rights thereunder as a result of the Defendants' wrongful conduct in an amount to be determined at trial but in no event less than One Hundred and Fifty Thousand Dollars ($150,000) per copyright infringed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands:

1)    That Defendants and their officers, agents, servants, employees, representatives, successors, and assigns; and all other persons, firms, or corporations in active concert or participation with them who receive actual notice of this Order, be temporarily, preliminarily and permanently enjoined and restrained from:

Louis Vuitton v Akanoc, et al.:  First Amended Complaint        - 14 -

a)     directly or indirectly infringing Plaintiff's Trademarks or any marks similar
       thereto, in any manner, including generally, but not limited to engaging in
       services and manufacturing, importing, distributing, advertising, selling,
       and/or offering for sale any merchandise which infringes said Trademarks
       and specifically:

       i)     advertising, selling, and/or offering for sale any other
              unauthorized merchandise, which pictures, reproduces, or
              utilizes the likenesses of or which copy or are likely to cause
              consumer confusion with any of Plaintiff's Trademarks;

       ii)    hosting websites which offer product purporting to be
              Plaintiff's product or any imitation or replica thereof;

b)     indirectly infringing the Louis Vuitton Copyrights and Designs, in any
       manner, including generally, but not limited to engaging in services and
       manufacturing, importing, distributing, advertising, selling, and/or offering
       for sale any merchandise which infringes said Copyrights and specifically:

       i)     advertising, selling, and/or offering for sale any other
              unauthorized merchandise, which pictures, reproduces, or
              utilizes the likenesses of or which copy or are substantially
              similar to any of the Louis Vuitton Copyrights and Designs;

       ii)    hosting websites which offer product purporting to be
              Plaintiff's product or any imitation or replica thereof;

c)     effecting assignments or transfers, forming new entities or associations or
       utilizing any other device for the purpose of circumventing or otherwise
       avoiding the prohibitions set forth in subparagraphs A and B.

Louis Vuitton v Akanoc, et al.: First Amended Complaint        - 15 -

2)       That Defendants be required to account to Plaintiff for all profits and damages resulting from Defendants' infringing activities and that the award to Plaintiff be increased as provided for under 15 U.S.C. §1117;

3)       That Defendants pay over to Plaintiff in the alternative statutory damages pursuant to 15 U.S.C. § 1117(c);

4)       That Plaintiff have a recovery from Defendants of the costs of this action and Plaintiff's reasonable attorneys' fees pursuant to 15 U.S.C. §1117(b);

5)       That Defendants be required to account to Plaintiff for all profits and damages resulting from Defendants' respective infringing activities as provided for under 17 U.S.C. §504;

6)       That Defendants pay over to Plaintiff in the alternative statutory damages pursuant to 15 U.S.C. § 504;

7)       That Plaintiff have a recovery from Defendants of the costs of this action and Plaintiff's reasonable attorneys' fees pursuant to 17 U.S.C. §505;

8)        That Plaintiff has all other and further relief as the Court may deem just and proper under the circumstances.

Dated:  July 15, 2008                              J. ANDREW COOMBS,
                                                    A Professional Corporation


                                                     _/s/ J. Andrew Coombs_____
                                                    By:  J. Andrew Coombs
                                                    Attorneys for Plaintiff Louis Vuitton Malletier,
                                                    S.A.

Louis Vuitton v Akanoc, et al.:  First Amended Complaint          - 16 -