J. Andrew Coombs (SBN 123881)
Annie S. Wang (SBN 243027)
J. Andrew Coombs, A Prof. Corp.
517 East Wilson Avenue, Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

andy@coombspc.com
annie@coombspc.com

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | |
|---|---|
| Louis Vuitton Malletier, S.A.,<br><br>        Plaintiff,<br><br>v.<br><br>Akanoc Solutions, Inc., Managed Solutions Group, Inc., Steven Chen and Does 1 through 10, inclusive,<br><br>        Defendants. | Case No.: CV07-3952 JW<br><br>First Amended Complaint For:<br>Contributory and Vicarious Trademark Infringement; Contributory and Vicarious Copyright Infringement |

Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton" or "Plaintiff") for its first amended complaint alleges as follows:

**I. Jurisdiction and Venue**

1.      The claims alleged herein arise under the Trademark Act, 15 U.S.C. § 1051, et seq., and under the Copyright Act of 1976, 17 U.S.C. § 101, et seq., for (i) contributory and vicarious liability for trademark infringement; and (iii) contributory and vicarious liability for copyright infringement.

2.      This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332 and 1338.

3. This Court has personal jurisdiction over the Defendants because they do business and/or reside in the State of California and, as to the entities, do business, are incorporated, and/or are authorized to do business in the State of California.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## II. **Introduction**

5. The substantial profits to be reaped from piracy and counterfeiting have led to the creation, development and proliferation of business models, the object of which is to capitalize on world famous trademarks and copyrights owned by others, including those owned by Plaintiff. The opportunities created by the Internet have led to a dramatic increase in the opportunities to profit from such activity. These opportunities rely upon the active participation and contribution of third parties which make such illegal activities possible.

6. In particular, the promotion of infringing product and the offer of product for sale occurs through communications published on the Internet. These promotions, advertisements and offers are often published on websites which can be accessed by entering Internet addresses or through hypertext links which direct Internet users to websites containing such offers. Communications designed to complete sales of such infringing merchandise are transmitted over servers which host these same websites.

7. Defendants Akanoc Solutions Inc. ("Akanoc") and Managed Solutions Group, Inc. ("MSGI") operate servers hosting websites. Louis Vuitton is informed and believes that Defendant Steven Chen is an individual with responsibility for the operation and management of Akanoc and MSGI and that Akanoc and MSGI are under common control and ownership. Louis Vuitton is further informed and believes that Akanoc and MSGI were formed for and exist primarily to facilitate the promotion and advertisement of offers for counterfeit and infringing merchandise. Akanoc and MSGI aid and abet the distribution and sale of counterfeit and infringing merchandise

through the provision of Internet hosting services and they do so knowingly and despite having been provided with full notice of such conduct. Louis Vuitton is informed and believes that Akanoc, MSGI and Chen benefit financially from the services they render hosting website which offer counterfeit Louis Vuitton merchandise and through which sales of such merchandise are consummated.

### III. The Parties: Plaintiff

8.  Plaintiff is organized and existing under the laws of the Republic of France, with its principal place of business in Paris, France. Plaintiff owns the trademarks and trade names "LOUIS VUITTON", "VUITTON" and "LV" (hereinafter collectively referred to as "Plaintiff's Trademarks"). Plaintiff has engaged in services using Plaintiff's Trademarks and Plaintiff is the exclusive distributor in the United States of handbags, luggage and accessories, all of which bear one or more of Plaintiff's Trademarks. Plaintiff distributes authentic product online through www.eluxury.com.

9.  Plaintiff is the sole and exclusive distributor in the United States of leather goods bearing Plaintiff's Trademarks, which are exclusively manufactured in France, Spain and San Dimas, California. Plaintiff is engaged in the manufacture, sale and distribution in interstate and foreign commerce of prestigious high-quality, luxury merchandise, including a wide variety of luggage, handbags, trunks, garment bags, wallets, small leather goods, apparel and other similar items sold throughout the United States in Louis Vuitton boutiques, and high quality retail stores such as Saks Fifth Avenue, Neiman Marcus and Bloomingdale's that contain departments operated by Plaintiff and staffed by Plaintiff's personnel.

10.  Plaintiff is responsible for assembling, finishing, marketing and selling in interstate commerce high quality handbags, luggage, accessories and related products and/or services for men and women. Plaintiff has acquired an outstanding reputation because of the uniform high

quality of its handbags, luggage and accessories and the boutiques through which Plaintiff sells these products.

11. As a result of the Louis Vuitton boutiques, extensive advertising of Louis Vuitton in connection with Plaintiff's intellectual properties, the widespread sale of Louis Vuitton merchandise and the celebrity that Plaintiff and Plaintiff's intellectual properties have achieved, Louis Vuitton boutiques, handbags, luggage and accessories, all utilizing and/or bearing one or more of Plaintiff's intellectual properties have been and are now recognized by the public and the trade as originating from Plaintiff.

12. Commencing at least as early as 1932, Plaintiff adopted one or more of Plaintiff's Trademarks for handbags, luggage, accessories and related products and caused said trademarks to be registered in the United States Patent and Trademark Office.

13. Plaintiff is the owner of all rights in and to numerous trademarks including, but not limited to, Plaintiff's Trademarks that are the subject of the following trademark registrations:

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) in a Circle Design | 286,345 | (LV in circle logo) | 18 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Design | 297,594 | (Monogram canvas pattern) | 18 |
| LOUIS VUITTON | 1,045,932 | LOUIS VUITTON | 18 |

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) Design | 1,519,828 | | 18 |
| LOUIS VUITTON MALLETIER A PARIS in Rectangle | 1,615,681 | | 16, 18 |
| Louis Vuitton (Interlocked Letters) on Epi Leather Design | 1,655,564 | | 18 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Pattern Design | 1,770,131 | | 25 |
| Louis Vuitton (Interlocked Letters) Design | 1,794,905 | | 16, 25 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Design | 1,875,198 | | 16 |

Louis Vuitton v Akanoc, et al.: First Amended Complaint          - 5 -

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) | 1,938,808 | *LV logo* | 14, 24 |
| LOUIS VUITTON World Mark | 1,990,760 | LOUIS VUITTON | 16, 18, 24, 25 |
| Louis Vuitton (Interlocked Letters) Design | 2,291,907 | *LV logo* | 34 |
| LOUIS VUITTON | 2,303,212 | LOUIS VUITTON | 34 |
| Louis Vuitton (Interlocked Letters) Design | 2,361,695 | *LV logo* | 25 |
| LOUIS VUITTON PARIS and Damier (pattern design) | 2,378,388 | *Damier pattern* | 18 |

14.     Plaintiff's Trademarks are in full force and effect, and are used and have never been abandoned. Plaintiff intends to continue to preserve and maintain its rights with respect to Plaintiff's Trademarks.

15. Plaintiff's products utilizing and/or bearing one or more of Plaintiff's Trademarks, by reason of their style, distinctive designs and quality have come to be known by the purchasing public throughout the United States as being of the highest quality. As a result thereof, Plaintiff's Trademarks and the goodwill associated therewith are of inestimable value to Plaintiff.

16. Based on the Louis Vuitton boutiques and the extensive sales of Plaintiff's products and their wide popularity, Plaintiff's Trademarks have developed a secondary meaning and significance in the minds of the purchasing public, and the services and products utilizing and/or bearing such marks and names are immediately identified by the purchasing public with Plaintiff.

17. Those trademarks are vital to Plaintiff, and Plaintiff will suffer irreparable harm if any third parties, including Defendants herein, are allowed to continue engaging in services and selling infringing goods utilizing and/or bearing identical or substantially similar trademarks.

18. Louis Vuitton has also registered its copyrights in the United States Copyright Office and uses those copyrights in connection with its sale of luxury products. A significant aspect of Louis Vuitton's business is the merchandising of product incorporating the distinctive elements associated with its luxury goods.

19. The revenue from products that bear Louis Vuitton designs and are sold in the United States is substantial. The appearance and other features of the Louis Vuitton designs are inherently distinctive. The design, configuration, and distinctive features of the Louis Vuitton copyrighted works, and of works related thereto (hereinafter collectively, the "Louis Vuitton Copyrighted Designs"), are wholly original with Louis Vuitton and, as fixed in various tangible media, including merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., Sections 101 et seq. Louis Vuitton is the owner of the Louis Vuitton Copyrighted Designs, which, as featured in connection with various merchandise, are copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. § 101, et seq. (The Plaintiff's Trademarks and

the Louis Vuitton Copyrighted Designs are hereinafter collectively referred to as the "Louis Vuitton Intellectual Properties").

20. Louis Vuitton has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to Louis Vuitton Copyrighted Designs. Louis Vuitton owns certificates of registration for works in which the Louis Vuitton Copyrighted Designs appear. Copyright registrations secured by Louis Vuitton for the Louis Vuitton Copyrighted Designs include:

| **Copyright** | **Reg. No.** | **Date Published** | **Date Registered** |
|---|---|---|---|
| Multicolor Monogram – Black Print | VA 1-250-121 | 12/18/02 | 06/24/04 |
| Multicolor Monogram – White Print | VA 1-250-120 | 12/18/02 | 06/24/04 |

21. Products featuring the Louis Vuitton Copyrighted Designs that are manufactured, sold, and distributed by Louis Vuitton or under its authority have been manufactured, sold, and distributed in conformity with the provisions of the copyright laws. Louis Vuitton and those acting under its authority have complied with their obligations under the copyright laws and Louis Vuitton, in its own right or as successor-in-interest, has at all times been the sole proprietor or otherwise authorized to enforce all right, title, and interest in and to the copyrights in the Louis Vuitton Copyrighted Designs.

22. Louis Vuitton maintains strict quality control standards for all its products. All genuine Louis Vuitton products are inspected and approved by Louis Vuitton prior to distribution and sale and are sold only through Louis Vuitton stores and Louis Vuitton boutiques within department stores such as Saks Fifth Avenue, Neiman Marcus, and Bloomingdales, and ELuxury.com. No Louis Vuitton product is sold by anyone other than Louis Vuitton. By

definition, any new (i.e. unused) product bearing any of the Louis Vuitton Intellectual Properties that is sold anywhere other than at a Louis Vuitton store (or ELuxury.com) is not a genuine Louis Vuitton product but rather a counterfeit product. Plaintiff does not sell its high-end products through licensees or franchisees and Plaintiff has not authorized independent retail vendors to engage in services and advertising utilizing and/or displaying the Louis Vuitton Intellectual Properties

23. At great expense, Louis Vuitton has created, developed, manufactured, advertised, and marketed its products in such a way that they convey and are associated with luxury products that meet the highest standards and are used by celebrities and dignitaries around the world.

24. Louis Vuitton's goods, so marked, continue to be recognized by the fashion industry and public as those of Louis Vuitton.

25. The Louis Vuitton Intellectual Properties and the goodwill of Louis Vuitton's business in connection with its trademarks and copyrights are continuously used and have never been abandoned.

### IV. The Parties: Defendants

26. Louis Vuitton is informed and believes that Akanoc is a California corporation with its principal office in Fremont, California. Akanoc is an internet service provider which, among other things, hosts commercial websites.

27. Louis Vuitton is informed and believes that MSGI is a California corporation with its principal office in Fremont, California. MSGI is an internet service provider which, among other things, hosts commercial websites. Akanoc and MSGI are collectively referred to herein as the "ISP Defendants".

28.     Louis Vuitton is informed and believes that Steve Chen is an individual resident in the City of Fremont and State of California.  Louis Vuitton is further informed and believes that Steve Chen is an officer, owner and/or managing employee of Akanoc and MSGI.

29.     Plaintiff is informed and believes, and upon that basis alleges, that at all relevant times each of the defendants Does 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues such Doe defendants as individuals and/or business entities, agents, partners, and/or employees of the named Defendants, which, in taking the actions alleged in this Complaint, were acting within the scope of such agency, partnership, and/or employment.

## V.  **The Infringing Activities**

30.     The ISP Defendants host websites (the "Counterfeiting Websites") and facilitate communications between the sellers of counterfeit product who operate the Counterfeiting Websites and their customers.  The Counterfeiting Websites offer, promote, advertise and facilitate the offer and sale of counterfeit merchandise which infringes the intellectual property rights of Louis Vuitton, among others.  The Counterfeiting Websites publish unauthorized reproductions of the Louis Vuitton Copyrighted Designs to promote the sale of counterfeit merchandise.  Louis Vuitton is informed and believes that the servers upon which the Counterfeiting Websites are hosted are also used to transmit communications by and between the operators of the Counterfeiting Websites and their customers.

31.     The websites hosted by servers maintained by the ISP Defendants include but are not limited to the following: 315EC.com, Ape168.com, Atozbrand.com, At88.com, Bag1881.net, Bag4Sell.com, Bag925.com, BigWorldShoes.com, Bizyao.com, BrandFashioner.com, Brandstreets.com.cn, BrandStyleSales.com, Brandtrading.net, BuyMyShoes.net, Cn-nike.us, DreamyShoes.com, Eastarbiz.com, Eastarbiz.net, EBuyNike.com, ECshoes.com, EGoToBuy.com, EMSYou.com, EShoes99.com, Eshoes99.net, Famous-Shop.com, Fansjersey.com,

GucciFendi.com, GZ-Free.com, HandBagSell.com, Imitation-Gold.com, InNike.com, Lkkfashion2006.com, Ilouisvuitton.com, LongTimeGroup.com, Louis-vuitton-bags.org, Louisvuittonbagz.com, LoverNike.com, LuxeLike.com, Luxury2Us.com, LVBagz.com, lv-handbag.com, lv-nike.com, MailGoods.com, Myshoes99.com, Nike558.com, Nikeexp.com, NikeShoesOffer.com, NikeWTO.com, NonStopBeauty.com, PFCStation.com, PickHipHop.com, PickYourGoods.com, PickYourOrder.com, Pro-Jordan.com, Queen-bag.com, Replica-ebags.com, Replicabc.com, RRGNL.com, Shoes-Order.com, SoApparel.com, Soapparel.net, Sportsvendor.biz, Sunny7Shoes.com, Super925.com, Swisshours.biz, Top-handbag.com, Tytrade88.com, Watchesnreplica.com, WatchesReplica.net, WatchNReplica.net, WearOnline.net, Wendy929.com, Wendy929.net, Wendyluxury.com, WorldKeyTrade.com, YeahEBay.com, Yseenet.net.  Louis Vuitton is further informed and believes that most, if not all, of the websites hosted by the ISP Defendants are engaged in the trafficking of counterfeit merchandise, specifically including merchandise infringing the Louis Vuitton Intellectual Properties.

32.     Defendants have been repeatedly placed on notice of the counterfeit activity which occurs using the hosting services offered by the ISP Defendants.  Louis Vuitton has not granted any of the Defendants license to use, exploit any of the Louis Vuitton Intellectual Properties.  The ISP Defendants have taken no steps to limit, curtail, disable, stop or otherwise discontinue the services they provide which make such infringing activity possible.  Louis Vuitton is informed and believes that the ISP Defendants generate revenue and profit from the Internet traffic and counterfeit sales which occur as a result of their hosting activity.

33.     Plaintiff has no adequate remedy at law and is suffering irreparable harm and damages as a result of the acts of Defendants as aforesaid in an amount thus far not determined.

Louis Vuitton v Akanoc, et al.: First Amended Complaint          - 11 -

# FIRST CLAIM FOR RELIEF

## (For Contributory Trademark Infringement)

34. Plaintiff repeats and re-alleges all of the allegations contained in paragraphs 1 through 33, inclusive, as though fully set forth herein.

35. The Counterfeiting Websites are engaging in illegal conduct including but not necessarily limited to the promotion, advertisement, offer for sale, sale and distribution of counterfeit goods in violation of the Lanham Act, as amended.

36. Defendants have actual knowledge of the Counterfeiting Websites' illegal activities from, among other things, written notification by counsel and agents for Plaintiff.

37. Defendants have deliberately disregarded these notifications and have otherwise consciously avoided learning about the full extent of illegal counterfeiting and infringing activities that are continuing at the Counterfeiting Websites.

38. Defendants have materially encouraged, enabled, and contributed to the infringing conduct at the Counterfeiting Websites by providing, among other things, hosting the Counterfeiting Websites, displaying offers for counterfeit products, facilitating communications by and between the sellers of counterfeit goods over the Counterfeiting Websites and their distributors, consumers and vendors.

39. Defendants therefore bear contributory liability for the Counterfeiting Websites' counterfeiting of the Plaintiff's Trademarks in violation of 15 U.S.C. § 1051, et seq. and the common law.

40. Plaintiff has no adequate remedy at law and has suffered irreparable harm and damage as a result of the contributory counterfeiting conduct of the Defendants.

41.     Plaintiff has sustained damages as a result of the Defendants' wrongful contributory conduct in an amount to be ascertained at trial but in no event less than One Million Dollars ($1,000,000) per trademark per counterfeit.

## SECOND CLAIM FOR RELIEF

### (For Vicarious Trademark Counterfeiting)

42.     Plaintiff repeats and re-alleges all of the allegations contained in paragraphs 1 through 41, inclusive, as though fully set forth herein.

43.     The illegal sales of products that infringe on the Plaintiff's Trademarks have generated enormous sums of monies for the Counterfeiting Websites.

44.     Despite the Defendants' duty and right to control the Counterfeiting Websites, they have taken no steps to stop or otherwise prevent the ongoing counterfeiting at the websites operated by the Counterfeiting Websites or to disconnect links directing its users to such websites.

45.     Defendants are therefore vicariously liable for the damages caused to Plaintiff as a result of the illegal promotion, advertisement, offer for sale and/or sale of counterfeit merchandise at the Counterfeiting Websites in violation of 15 U.S.C. § 1051, et seq. and the common law.

46.     Plaintiff has sustained damages as a result of the Defendants' wrongful vicarious conduct in an amount to be determined at trial but in no event less than One Million Dollars ($1,000,000) per trademark per counterfeited.

## THIRD CLAIM FOR RELIEF

### (Contributory and Vicarious Copyright Piracy)

47.     Plaintiff repeats and re-alleges all of the allegations contained in paragraphs 1 through 33, inclusive, as though fully set forth herein.

48.     Louis Vuitton is informed and believes that Defendants earn revenues for hosting the Counterfeiting Websites for each Internet user directed to websites operated by the

Counterfeiting Websites. The ISP Defendants do so pursuant to terms of use which permit them to discontinue links through websites offering product infringing the rights of third parties.

49. Defendants have actual knowledge of the illegal acts of the Counterfeiting Websites from, among other things, written notification from Louis Vuitton. Defendants have therefore deliberately disregarded and otherwise consciously avoided learning about the full extent of illegal counterfeiting and infringing activities that are continuing at the websites operated by the Counterfeiting Websites.

50. Defendants have knowingly and willfully permitted and continue to permit the Counterfeiting Websites to sell and offer for sale unauthorized copies of products bearing the Louis Vuitton Intellectual Properties at the Counterfeiting Websites.

51. Defendants have therefore materially encouraged, enabled, and contributed to the infringing conduct at the websites operated by the Counterfeiting Websites.

52. Plaintiff has sustained, and will continue to sustain, substantial injuries, loss, and damage to its exclusive rights in the Louis Vuitton Copyrights, and Plaintiff has sustained and will continue to sustain damages from the loss of value of the exclusive rights thereunder as a result of the Defendants' wrongful conduct in an amount to be determined at trial but in no event less than One Hundred and Fifty Thousand Dollars ($150,000) per copyright infringed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands:

1) That Defendants and their officers, agents, servants, employees, representatives, successors, and assigns; and all other persons, firms, or corporations in active concert or participation with them who receive actual notice of this Order, be temporarily, preliminarily and permanently enjoined and restrained from:

a) directly or indirectly infringing Plaintiff's Trademarks or any marks similar thereto, in any manner, including generally, but not limited to engaging in services and manufacturing, importing, distributing, advertising, selling, and/or offering for sale any merchandise which infringes said Trademarks and specifically:

   i) advertising, selling, and/or offering for sale any other unauthorized merchandise, which pictures, reproduces, or utilizes the likenesses of or which copy or are likely to cause consumer confusion with any of Plaintiff's Trademarks;

   ii) hosting websites which offer product purporting to be Plaintiff's product or any imitation or replica thereof;

b) indirectly infringing the Louis Vuitton Copyrights and Designs, in any manner, including generally, but not limited to engaging in services and manufacturing, importing, distributing, advertising, selling, and/or offering for sale any merchandise which infringes said Copyrights and specifically:

   i) advertising, selling, and/or offering for sale any other unauthorized merchandise, which pictures, reproduces, or utilizes the likenesses of or which copy or are substantially similar to any of the Louis Vuitton Copyrights and Designs;

   ii) hosting websites which offer product purporting to be Plaintiff's product or any imitation or replica thereof;

c) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs A and B.

2) That Defendants be required to account to Plaintiff for all profits and damages resulting from Defendants' infringing activities and that the award to Plaintiff be increased as provided for under 15 U.S.C. §1117;

3) That Defendants pay over to Plaintiff in the alternative statutory damages pursuant to 15 U.S.C. § 1117(c);

4) That Plaintiff have a recovery from Defendants of the costs of this action and Plaintiff's reasonable attorneys' fees pursuant to 15 U.S.C. §1117(b);

5) That Defendants be required to account to Plaintiff for all profits and damages resulting from Defendants' respective infringing activities as provided for under 17 U.S.C. §504;

6) That Defendants pay over to Plaintiff in the alternative statutory damages pursuant to 15 U.S.C. § 504;

7) That Plaintiff have a recovery from Defendants of the costs of this action and Plaintiff's reasonable attorneys' fees pursuant to 17 U.S.C. §505;

8) That Plaintiff has all other and further relief as the Court may deem just and proper under the circumstances.

Dated: July 15, 2008

J. ANDREW COOMBS,
A Professional Corporation

_/s/ J. Andrew Coombs_____
By:  J. Andrew Coombs
Attorneys for Plaintiff Louis Vuitton Malletier, S.A.