J. Andrew Coombs (SBN 123881)
*andy@coombspc.com*
Annie S. Wang (SBN 243027)
*annie@coombspc.com*
J. Andrew Coombs, A Prof. Corp.
517 E. Wilson Ave., Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | |
|---|---|
| Louis Vuitton Malletier, S.A., ) | Case No.: C 07 3952 JW |
| ) | |
| Plaintiff, ) | DECLARATION OF NIKOLAY LIVADKIN IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; EXHIBITS THERETO |
| v. ) | |
| ) | |
| Akanoc Solutions, Inc., et al. ) | |
| ) | |
| Defendants. ) | Date: September 8, 2008 |
| ) | Time: 9:00 a.m. |
| ) | Courtroom 8, 4th Floor |

I, NIKOLAY LIVADKIN, declare as follows:

1. I am an Anti-Counterfeiting Coordinator with LVMH Fashion Group, a division of LVMH. I have responsibility for global Internet enforcement for brands included within LVMH Fashion Group, specifically including Plaintiff, Louis Vuitton Malletier, S.A. ("Louis Vuitton"). I have had responsibility for Louis Vuitton's Internet enforcement efforts since 2002. Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows.

2. Louis Vuitton has duly registered and renewed the following trademarks and copyrights with the United States Patent and Trademark Office and the United States Copyright Office, respectively:

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) in a Circle Design | 286,345 | | 18 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Design | 297,594 | | 18 |
| LOUIS VUITTON | 1,045,932 | LOUIS VUITTON | 18 |
| Louis Vuitton (Interlocked Letters) Design | 1,519,828 | | 18 |
| LOUIS VUITTON MALLETIER A PARIS in Rectangle | 1,615,681 | LOUIS VUITTON MALLETIER A PARIS | 16, 18 |
| Louis Vuitton (Interlocked Letters) on Epi Leather Design | 1,655,564 | | 18 |

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Pattern Design | 1,770,131 |  | 25 |
| Louis Vuitton (Interlocked Letters) Design | 1,794,905 |  | 16, 25 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Design | 1,875,198 |  | 16 |
| Louis Vuitton (Interlocked Letters) | 1,938,808 |  | 14, 24 |
| LOUIS VUITTON World Mark | 1,990,760 | LOUIS VUITTON | 16, 18, 24, 25 |
| Louis Vuitton (Interlocked Letters) Design | 2,291,907 |  | 34 |
| LOUIS VUITTON | 2,303,212 | LOUIS VUITTON | 34 |

| Trademark | Registration Number | Trademark Picture | Class of Goods |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) Design | 2,361,695 | | 25 |
| LOUIS VUITTON PARIS and Damier (pattern design) | 2,378,388 | | 18 |

| Copyright | Reg. No. | Date Published | Date Registered |
|---|---|---|---|
| Multicolor Monogram – Black Print | VA 1-250-121 | 12/18/02 | 06/24/04 |
| Multicolor Monogram – White Print | VA 1-250-120 | 12/18/02 | 06/24/04 |

3. True and correct copies or proof of registration of all of the aforementioned properties are collectively attached hereto as Exhibit A.

4. Counterfeiting of Louis Vuitton brands online is widespread. A significant percentage of the overall online counterfeiting activity as it relates to the Louis Vuitton brand originates in the People's Republic of China. In view of various practical and legal impediments to efficient and effective enforcement of trademark rights in the People's Republic of China, a significant part of Louis Vuitton's online enforcement efforts occur in end user markets, specifically including the United States.

5. Louis Vuitton is well-positioned to identify counterfeit sales online for several reasons. Among the more important factors is the fact that Louis Vuitton has a strictly controlled distribution network such that the only online sites which sell new authentic Louis Vuitton merchandise in the United States are eluxury.com and louisvuitton.com, controlled by Plaintiff. Samples of offers for Louis Vuitton merchandise from those authorized sites are attached as Exhibit B and C, respectively. Although there is a secondary market for legitimate used Louis Vuitton merchandise, in most cases counterfeit sites are easily distinguished. First, many sites specifically self-identify their sites as offerors of "replica" merchandise. Second, many sites offer a range of merchandise inconsistent with the more limited range of product offered by sellers in the secondary market. Third, counterfeiters identify products in ways which distinguish their product from legitimate merchandise. Finally, the price point of legitimate Louis Vuitton merchandise, combined with strict control over distribution which effectively eliminates any significant discounting of legitimate merchandise all aid me in confirming counterfeit offers online.

6. Over my years of managing Louis Vuitton's online enforcement efforts, during which time I have analyzed product purchased from several hundred websites each year, I have never obtained legitimate product from a website where my initial determination was that the offered product was counterfeit.

7. As a general rule, Louis Vuitton strives to secure voluntary compliance with its trademarks rights and the trademark laws through the service of cease and desist letters. In every case, before a demand letter is transmitted, I insure that Louis Vuitton's file includes evidence of the infringing offer, specifically including contemporaneous printouts from the website evidencing at least some of the offers which are the subject of Louis Vuitton's demands.

8. Each cease and desist letter is followed by a letter to the internet service provider ("ISP") which acts as host of the website offering counterfeit Louis Vuitton merchandise. In most

cases, demand letters sent to ISPs are sent to enforce both Louis Vuitton's trademark rights and copyrights. In few cases, where only Louis Vuitton's trademark rights are concerned, I transmit such letters in the form of notices called for under the Digital Millennium Copyright Act ("DMCA").  In my experience, responsible ISPs are familiar with the standards and requirements imposed by the DMCA and are more likely to remove infringing offers where Louis Vuitton's demand addressed to the ISP are framed in the familiar format of a DMCA notice.  Before sending a demand to an ISP, I ping the website to confirm the Internet Protocol ("IP") address of the website and I research the Internet, using widely accessible online records to identify the ISP to which the IP address was assigned.  I insure that Louis Vuitton's files include records of those additional investigative steps before sending a demand to an ISP.

9.    The initial demand to an ISP is transmitted usually by email and, if Louis Vuitton does not receive a satisfactory response within a one to two week time frame or confirm that the counterfeit offers have been deleted, a follow up is sent.  The follow up refers to the initial demand, includes a copy of the initial demand and is transmitted by messenger service or by some method intended to confirm receipt of the demand at the address to which the demand has been sent.  I rely upon online records to find the address to which demands are sent, specifically including "Contact Me" pages for the ISP and, more importantly, the agent for service filing under the DMCA with the United States Copyright Office.

10.   My office sends hundreds of DMCA notices to ISPs based in the United States each year and the vast majority of these notices result in an immediate disabling of the counterfeit offers which the subject of the DMCA notice.

11.   During the second half of 2006, I began to notice a pattern where counterfeit offers were not removed, even in response to follow up demands.  Upon closer examination it appeared that most of these demands were addressed to the Defendants.  In connection with that examination

I noted that (a) neither of the ISP Defendants had filed a notice with the Copyright Office designated an agent for service of DMCA notices, and (b) that one of the ISP Defendants, Managed Solutions Group, Inc. did not maintain a webpage which posted terms of service, acceptable use policy or other document listing policies for handling notices of infringement as required by the DMCA or a "Contact Us" page with appropriate contact information. Consequently, I researched the World Wide Web and noticed several postings of commercial offers by Managed Solutions Group, Inc. designating www.managed.com as the corporate website for Managed Solutions Group, Inc. I then visited the website located at www.managed.com and noted under "Contact Us", that the "corporate offices" were located at 2115 Linwood Avenue 5th Floor, Fort Lee, NJ 07024, while for network administration issues the contact electronic mail address was abuse@webhostplus.com.  As a result of (b) I was later informed from discovery in this action, that the New Jersey address to which two demands were sent as detailed below, actually belonged to a different company, Managed, Inc., which was a company "spun" out of Managed Solutions Group, Inc., a defendant in this case, and that the website www.managed.com was simply not updated to reflect the change in corporate structure.

      12.     On or about October 16, 2006, I sent a letter via electronic mail to Managed Solutions Group, Inc., 2115 Linwood Ave 5th Floor, Fort Lee NJ 07024, USA at abuse@webhostplus.com regarding wendy929.net, hosted on IP address 205.209.163.83 registered to Managed Solutions Group, Inc.  After receiving no response and confirming that the objectionable material was still viewable, I sent a "reminder" or follow up electronic mail to abuse@webhostplus.com on or about October 25, 2006.  In the absence of any kind of response, I noticed that the wendy929.net was moved to a different server with IP address 204.13.69.140, registered to Akanoc Solutions, Inc. I then sent another letter and email on or about October 30, 2006, to Akanoc Solutions, Inc. at 45535 Northport loop East, Freemont, CA 94538, USA and

Louis Vuitton v Akanoc, et al.: Livadkin Declaration in Opposition   - 7 -
to Motion for Summary Judgment

abuse@akanoc.com. I never received a response to any of these letters or emails. Two reminder letters were sent, by electronic mail on or about January 17, 2007 to abuse@akanoc.com and by express mail, on January 23, 2007. Again, no response to these letters or emails was received and wendy929.net remained on Akanoc Solutions, Inc.'s server 204.13.69.140 until approximately mid-December 2007.

13.     On or about February 7, 2007, I sent a letter via electronic mail to Managed Solutions Group, Inc., 2115 Linwood Ave 5th Floor, Fort Lee, New Jersey 07024, USA on abuse@webhostplus.com regarding atozbrand.com, hosted on IP address 205.209.140.10 registered to Managed Solutions Group, Inc. After receiving no response and confirming that the objectionable material was still viewable, I sent a follow up "reminder" letter by express mail to Managed Solutions Group Inc at 46750 Fremont Blvd, Fremont, CA 94538, USA on or about February 21, 2007. I never received a response to any of these letters or email. On or about March 22, 2007, the express mail carrier DHL returned the February 21, 2007 follow up letter and explained that the package could not be delivered at that location. On or about March 30, 2007, I drafted a new cease and desist letter and sent it by DHL express mail to Managed Solutions Group, Inc., attn: Steve Chen, 45535 Northport Loop East, Fremont, CA 94538. DHL confirmed delivery of the letter on April 4, 2007. I received no response whatsoever to this letter but noticed on or about April 7, 2007 that atozbrand.com was moved to a different server with IP address 204.16.195.49, registered to Akanoc Solutions, Inc. on which atozbrand.com remained until approximately mid-June 2007.

14.     On or about February 9, 2007, I sent a letter via electronic mail to Akanoc Solutions Inc., 45535 Northport Loop East, Fremont, CA 95538, USA on abuse@akanoc.com regarding bag925.com, hosted on IP address 204.16.195.46, registered to Akanoc Solutions, Inc.. After receiving no response and confirming that the objectionable material was still viewable, I sent a

follow up "reminder" letter by express mail carrier DHL to Akanoc Solutions Inc. 45535 Northport Loop East, Fremont, CA 95538, USA on or about February 19, 2007 (DHL confirmed delivery on March 5, 2007). I never received a response to any of these letter or email, while bag925.com remained on various servers registered to Akanoc Solutions, Inc. until approximately mid-June 2007.

15.    On or about October 23, 2006, I sent a letter via electronic mail to Akanoc Solutions, Inc., 45535 Northport Loop East, Fremont, CA 95538 at abuse@akanoc.com regarding eshoes99.com, hosted on IP address 204.16.197.26 , registered to Akanoc Solutions, Inc. After receiving no response and confirming that the objectionable material was still viewable, I sent a follow up email on or about January 17, 2007 to abuse@akanoc.com and a follow up letter on February 6, 2007 by express mail carrier Fedex to Akanoc Solutions, Inc., 45535 Northport Loop East, Fremont, CA 95538. Fedex confirmed delivery on February 8, 2007. On or about February 14, 2007, I realized that eshoes99.com had been actually moved to another server with IP address 205.209.172.165, registered to Managed Solutions Group, Inc. and decided to send a new cease and desist letter that same day via email to Managed Solutions Group, Inc., 46750 Fremont Blvd. #107, Fremont, CA 94538 at abuse@managedsg-inc.com. After receiving no response and confirming that the objectionable material was still viewable, I sent a follow up letter by express mail carrier DHL to Managed Solutions Group, Inc. at 46750 Fremont Blvd. #107, Fremont, CA 94538, USA on or about February 23, 2007. Still without a response or evidence of action, I contacted DHL and was informed by DHL on March 20, 2007 that the package could not be delivered at that location and the follow up letter was returned to me on or about March 23, 2007. I then sent a new cease and desist letter to Managed Solutions Group, Inc., Steve Chen, 45535 Northport Loop East, Fremont, CA 94538 via express mail carrier DHL on or about March 30,

2007, delivery of which DHL confirmed on April 3, 2007. I never received a response to any of these letters or email.

16. On or about February 21, 2007, I sent a letter via electronic mail to Akanoc Solutions Inc., 45535 Northport Loop East, Fremont, CA 94538, USA at info@akanoc.com regarding ape168.com, hosted on 204.16.197.27 registered to Akanoc Solutions, Inc.. After receiving no response and confirming that the objectionable material was still viewable, I sent a follow up or "reminder" letter by express mail carrier DHL to Akanoc Solutions Inc. at 45535 Northport Loop East, Fremont, CA 94538, USA on or about March 19, 2007. DHL confirmed delivery of the letter on March 23, 2007. I never received a response to any of these letter or email.

17. I caused further investigation to be made concerning each of the websites which was the subject of the DMCA notices sent to the ISP Defendants, as well as other websites hosted by Defendants in this action and evidentiary purchases were made on behalf of Louis Vuitton by an investigator acting under Louis Vuitton's direction. Each of the purchases was reviewed by me and I have confirmed that each is counterfeit. Pursuant to that investigation and analysis we determined that the ISP defendants operated out of the same premises and that they appeared to be owned and operated by the same individual, the individual defendant Steven Chen. I caused a further written demand to be transmitted to Mr. Chen's attention on or about April 20, 2007, and when that, also, did not result in a disabling of the counterfeit offers, Louis Vuitton filed the present action.

18. During the course of the litigation, Louis Vuitton has identified numerous additional websites which now total more than eighty (80) which were hosted by servers controlled by the ISP Defendants and which have each been the subject of subsequent demands to disable the infringing offers. Follow up investigation concerning those demands reveal that, notwithstanding the present litigation, in many cases the infringing offers which were the subject of Louis Vuitton's demands

remained accessible through the ISP Defendants' servers for several weeks after the initial demand was transmitted.

19. Additionally, while investigating the infringing websites, I conducted Reverse IP Searches to determine other websites hosted at the same IP Address of an identified infringing website. Through this process, I reviewed hundreds of websites which also sold counterfeit Louis Vuitton product while hosted by one or another of the Defendants.

20. All of the counterfeiting activities that Defendants support and allow to continue damage Louis Vuitton's goodwill, undermine the value of its intellectual properties, and affect sales of legitimate product. However, in this instance, and given the difficulty associated with Defendants' lack of information due to "crash", erasure or otherwise, Louis Vuitton seeks to recover statutory damages.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30 day of July, 2008, at Paris, France

_____
NIKOLAY LIVADKIN