**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Brian S. Edwards (SBN 166258)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
jal@gauntlettlaw.com
bse@gauntlettlaw.com

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.
and Steve Chen

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A., | Case No.: C 07-3952 JW |
| Plaintiff, | Hon. James Ware |
| vs. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| AKANOC SOLUTIONS, INC., et al., | Date: September 8, 2008 |
| Defendants. | Time: 9:00 a.m. |
| | Dept.: Courtroom 8, 4th Floor |

# TABLE OF CONTENTS

Page

I. VUITTON FAILS TO SHOW A GENUINE ISSUE FOR TRIAL ................................... 1

II. VUITTON HAS SHOWN NO EVIDENCE OF DIRECT INFRINGEMENT ................. 2

III. VUITTON HAS NO EVIDENCE OF SECONDARY TRADEMARK INFRINGEMENT ......................................................................................................... 4

    A. Contributory Trademark Infringement Not Proven ................................... 4

        1. No Evidence That Defendants Intentionally Induced Infringer ................ 4

        2. No Evidence of Direct Control or Monitoring ............................................. 6

        3. No Evidence that Defendants Supplied an Infringing Product ................... 6

    B. Vicarious Trademark Infringement Not Proven .......................................... 6

        1. No Evidence of an Actual or Apparent Partnership ..................................... 6

        2. No Evidence of Defendants' Ability to Bind Their Customers in Transactions with Third Parties or Exercise Joint Ownership or Control .................................................................................................................... 7

IV. VUITTON HAS NO EVIDENCE OF SECONDARY COPYRIGHT INFRINGEMENT ......................................................................................................... 8

    A. Contributory Copyright Infringement ............................................................. 8

        1. Required Elements ......................................................................................... 8

        2. No Evidence of Actual or Constructive Knowledge of Infringement ......... 8

        3. Vuitton Presented No Evidence that Defendants Provided a Material Contribution to or Induced Third Parties to Infringe Vuitton's Copyrights ....................................................................................... 10

    B. Vicarious Copyright Infringement ................................................................. 12

        1. No Evidence to Meet Elements of Vicarious Copyright Infringement ..................................................................................................... 12

            a. No Evidence of Right and Ability to Supervise Conduct ............... 12

            b. No Evidence of Direct Financial Benefit ........................................ 14

V. CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ................................................................................................ 2

*Adobe Systems Inc. v. Canus Productions, Inc.*,
    173 F. Supp. 2d 1044 (C.D. Cal. 2001) ................................................................................ 14

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505 (1986) .................................................................................... 1

*Atlas Copco AB v. Atlascopcoiran.com*,
    533 F. Supp. 2d 610 (E.D. Va. 2008) .................................................................................... 9

*Cable News Network L.P., L.L.L.P. v. CNNews.com*,
    177 F. Supp. 2d 506 (E.D. Va. 2001) .................................................................................... 9

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548 (1986) ......................................................................... 2, 4, 15

*Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.*,
    441 F. Supp. 2d 695 (M.D. Pa. 2006) .................................................................................... 5

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) .......................................................................................... 8, 14

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
    76 F.3d 259 (9th Cir. 1996) ................................................................................................. 12

*Fromberg, Inc. v. Thornhill*,
    315 F.2d 407 (5th Cir. 1963) ............................................................................................... 11

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574, 106 S. Ct. 1348 (1986) .................................................................................... 1

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*,
    380 F.3d 1154 (9th Cir. 2004) ............................................................................................... 2

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*,
    545 U.S. 913, 125 S. Ct. 2764 (2005) ............................................................................ 11, 12

*Nevada Power Co. v. Monsanto Co.*,
    891 F. Supp. 1406 (D. Nev. 1995) ......................................................................................... 5

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ........................................................................... 10, 11, 12, 13

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ............................................................................................. 14

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
    213 F. Supp. 2d 1146 (C.D. Cal. 2002) ................................................................................ 6

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ........................................................................... 2, 4, 6, 11, 12

*Perfumebay.com Inc. v. eBay, Inc.*,
    506 F.3d 1165 (9th Cir. 2007) ............................................................................................. 3

*Religious Tech. Ctr. v. Netcom On-Line Communication Servs., Inc.*,
    907 F. Supp. 1361 (N.D.Cal.1995) ..................................................................................... 3

*Sims v. Mack Trucks, Inc.*,
    459 F. Supp. 1198 (E.D. Pa. 1978) ................................................................................... 12

*Triton Energy Corp. v. Square D Co.*,
    68 F.3d 1216 (9th Cir. 1995) ............................................................................................... 1

*Wady v. Provident Life & Accident Ins. Co. of America*,
    216 F. Supp. 2d 1060 (C.D. Cal. 2002) .............................................................................. 9

**DOCKETED CASES**

*Haworth Inc. v. Herman Miller Inc.*,
    37 U.S.P.Q. 2d 1080, 1994 WL 875931 (W.D. Mich. 1994) ............................................ 11

*Internet Specialties West, Inc. v. ISPWest*,
    No. CV 05-3296 FMC AJWX, 2006 WL 4568796 (C.D. Cal. Sept. 19, 2006) ................. 9

**FEDERAL STATUTES**

17 U.S.C. § 106 .............................................................................................................................. 2, 3

Fed. R. Civ. P. 30(b)(6) ........................................................................................................ 5, 7, 9, 14

Fed. R. Civ. P. 56 .......................................................................................................................... 1, 15

Fed. R. Civ. P. 56(e)(1) ................................................................................................................ 1, 10

Fed. R. Civ. P. 56(e)(2) ...................................................................................................................... 1

## I. VUITTON FAILS TO SHOW A GENUINE ISSUE FOR TRIAL

Vuitton's anti-counterfeiting campaign appears to be designed more for intimidating small businesses than collecting admissible evidence for a lawsuit. This would explain Vuitton's substantial failure to produce evidence in opposition to Defendants' summary judgment motions. Rather than meet its burden by producing competent evidence to support the elements of its claims, Vuitton relies on vague generalities, suppositions and suspicions. [*See, e.g.*, Livadkin Decl. ¶¶ 4-7.] Vuitton does not meet Rule 56's requirement of producing admissible evidence to establish a genuine issue for trial. An "opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e)(1). "[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2).

The evidence opposing a summary judgment motion must be sufficiently probative to permit a reasonable trier of fact to find in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). When the moving party has carried its burden under Rule 56(c), its opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986). *Anderson*, 477 U.S. at 249-50 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (citations omitted)). The test is whether the opposing party " 'has come forward with sufficiently "specific" facts from which to draw reasonable inferences about other material facts that are necessary elements of the [opposing] party's claim.' " *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (citations omitted).

Crucially, Vuitton has no evidence of direct infringement and no evidence of other elements of its claims. No direct infringers have been identified. No evidence of counterfeit product at any accused Websites has been produced. The assertion that "[c]ounterfeiting of Louis Vuitton brands online is widespread" is not proof of any claim. [Livadkin Decl. ¶ 4.]

The absence of evidence of direct infringement is fatal to all of Vuitton's claims, but it is not

the only fatal flaw in Vuitton's case. No evidence has been produced to support nearly all of the elements of its secondary copyright and trademark infringement claims. Summary judgment is therefore appropriate because Vuitton has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

## II.    VUITTON HAS SHOWN NO EVIDENCE OF DIRECT INFRINGEMENT

Vuitton has **no** admissible evidence to support its claim that direct infringement of Vuitton's copyrights or trademarks occurred at any accused Website. Without proof of direct infringement it is impossible to establish any secondary liability for infringement. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party. *Religious Tech. Ctr. v. Netcom On-Line Communication Servs., Inc.*, 907 F.Supp. 1361, 1371 (N.D.Cal.1995) ('[T]here can be no contributory infringement by a defendant without direct infringement by another.').").

Before it can establish any secondary *copyright* infringement, Louis Vuitton must first prove that a third party has directly infringed specific copyrights. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) ("We have found that a defendant is a contributory [copyright] infringer **if** it (1) has knowledge of **a third party's infringing activity** . . . ." (emphasis added)); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 380 F.3d 1154, 1160 (9th Cir. 2004) ("The three elements required to prove a defendant liable under the theory of contributory copyright infringement are: (1) **direct infringement by a primary infringer**, (2) knowledge of the infringement, and (3) material contribution to the infringement." (emphasis added)). Direct copyright infringement elements are (1) ownership of the allegedly infringed material and (2) violation of an exclusive right granted to copyright holders under 17 U.S.C. § 106.[1] *Napster I,* 239 F.3d at 1013.

The same rule applies to secondary *trademark* infringement liability. *Visa Int'l*, 494 F.3d at

---

[1] "[T]he owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work . . . ." 17 U.S.C. § 106.

807 ("To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' **the primary infringer** to infringe, or (2) continued to supply an infringing product **to an infringer** with knowledge that the infringer is mislabeling the particular product supplied." (emphasis added; citations omitted)). A likelihood of confusion must be established before secondary liability can be established. *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1173 (9th Cir. 2007) ("The core element of trademark infringement is whether customers are likely to be confused about the source or sponsorship of the products."). *Perfumebay.com Inc.*, 506 F.3d at 1173, lists the eight *Sleekcraft* factors that must be considered to establish trademark infringement.[2]

Vuitton has no admissible evidence whatsoever to establish any specific direct infringement of copyrights or trademarks and has no evidence identifying any specific third party infringers.[3] Vuitton cannot claim violation of any exclusive rights under 17 U.S.C. § 106 when it fails to identify any infringement, any direct infringers or prove that any infringement of copyrights took place at any Website hosted on Defendants' servers. Vuitton also has no evidence to satisfy the *Sleekcraft* factors by showing likelihood of confusion.[4] Nor is there any way to compare similarities between any allegedly infringing products with Vuitton's marks. There is no evidence of direct infringement.

Vuitton attempts to avoid the consequences of its lack of admissible evidence by arguing that Defendants "do not dispute" alleged direct infringement by unnamed third parties. [Vuitton Opp. 11:7-10] This unfounded argument is not a substitute for the evidence that Vuitton was required but failed to produce. Vuitton must present evidence to prove all elements of its causes of action.

---

[2] "'An eight-factor test – the so-called *Sleekcraft* factors – guides the assessment of whether a likelihood of confusion exists.' . . . The *Sleekcraft* factors are: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care customers are likely to exercise in purchasing the goods; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion into other markets." citing *McCord*, 452 F.3d at 1136, n. 9.

[3] Of course, the Defendants themselves cannot be and are not alleged to be direct infringers. *See Religious Tech. Ctr. v. Netcom On-Line Communication Servs., Inc.*, 907 F. Supp. 1361, 1371 (N.D. Cal. 1995) ("[T]he storage on a defendant's system of infringing copies and retransmission to other servers is not a direct infringement by the . . . operator of the exclusive right to reproduce the work where such copies are uploaded by an infringing user.").

[4] Nikolay Livadkin testifies that "[i]n most cases counterfeit sites are easily distinguished. First, many specifically self-identify their sites as offers of 'replica' merchandise . . . . Third, counterfeiters identify products in ways which distinguish their product from legitimate merchandise." [Livadkin Decl. ¶ 5:8-13] This suggests there is little or no likelihood of confusion.

*Celotex Corp.,* 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Instead of admissible evidence, Vuitton's Opposition relies on allegations, suppositions, and suspicions that someone must be infringing a wide range of its rights. Without specific direct copyright and trademark infringement, Vuitton cannot prove contributory or vicarious liability for that infringement. Vuitton also has no evidence to prove critical elements of its secondary liability.

## III. VUITTON HAS NO EVIDENCE OF SECONDARY TRADEMARK INFRINGEMENT

### A. Contributory Trademark Infringement Not Proven

#### 1. No Evidence That Defendants Intentionally Induced Infringer

In addition to lack of proof of direct infringement, Vuitton's Opposition fails to set forth any evidence to support other elements of its claim for contributory trademark infringement. At page 16:1-12 Vuitton misstates the applicable legal standard for a finding of contributory trademark infringement. But *Visa Int'l*, 494 F.3d at 807, establishes the elements of contributory trademark infringement where the *direct* infringer supplies a product. A plaintiff must prove the defendant intentionally induced the primary infringer to infringe:

> **To be liable for contributory trademark infringement, a defendant must have (1) "intentionally induced" the primary infringer to infringe**, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied. [Emphasis added; citations omitted.]

The alleged **direct** infringers in this case are unknown but allegedly sell counterfeit Vuitton products through Websites. Since they allegedly provide an infringing product to the public, only element (1) applies. It is undisputed that Defendants do not supply any *products* to any websites and allegation that Defendants supplied products to an infringer,[5] so element (2) does not apply.

---

[5] *Visa Int'l*, 494 F.3d at 807 ("**When the alleged *direct infringer supplies a service* rather than a product**, under the second prong of this test, the court must 'consider the extent of control exercised by the defendant over the third party's means of infringement.' " (emphasis added)).

Even if element (2) applied, Vuitton cannot prevail. For liability to attach there must be "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's

Vuitton has no evidence of intentional inducement. Its Rule 30(b)(6) witness, Nikolay Livadkin, admitted Vuitton had no evidence that "any of the defendants intentionally induced or caused any third party Website operators to infringe any rights of Louis Vuitton." [Livadkin Depo. 171:16:172:4] *Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1418 (D. Nev. 1995) ("In producing representatives for a Rule 30(b)(6) deposition, a corporation must prepare them to give 'complete, knowledgeable and binding answers.' *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C.1989)."). Vuitton is bound by testimony of its designated witness and may not rely on a contrary factual theory. *See Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.*, 441 F. Supp. 2d 695, 723 (M.D. Pa. 2006).

> Rule 30(b)(6) requires that a party served with a notice of deposition under the rule must designate a corporate representative to "testify as to matters known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). The corporate designee does not merely speak for his own personal knowledge, but is "speaking for the corporation." Thus, when a corporation designates a representative, it cannot present "a theory of facts that differs from that articulated by the designated representatives." [*Id.* (citation omitted).]

Vuitton's investigator Robert Holmes also testified that he had "no personal knowledge" that "any of the three defendants in this case induced or caused the infringing conduct on the part of the Website operators." [Holmes Depo. 167:11-16] This is consistent with Steve Chen's undisputed testimony that Defendants MSG and Akanoc are Internet Service Providers ("ISP") that provide unmanaged Internet hosting services to their customers, mainly resellers. They do not market or sell services directly to website operators. [Chen Decl. ¶ 2] Defendants MSG and Akanoc do not do business with any Website operators and, unless given notice by a third party such as Vuitton, are not aware of any infringing conduct potentially occurring on a particular site. [*Id.* ¶ 8] Defendants' operations have always been entirely separate from the websites being hosted on their servers and they have never had any partnership with any party allegedly or actually infringing Vuitton's

---

mark." Vuitton presents no evidence that Defendants directly controlled or monitored any accused Websites. Vuitton only argues that "Defendants are *able* to monitor websites" but presents no evidence that Defendants actually did monitor any of the Websites at issue here. Vuitton does not dispute that its own witnesses *admit* that Vuitton has no evidence that Defendants "operate any websites" or "somehow manifest control over the websites" or "monitor any of the websites." [Livadkin Depo. 175:11-176:2] [Holmes Depo. 245:16-246:15] This is consistent with Chen's testimony that Defendants do not monitor or control any website content. [Chen Decl. ¶ 9] (Vuitton Opp. P&A: 16-17)

trademarks or copyrights. [*Id.* ¶ 22] Defendants have never known any operators of Websites alleged to infringe copyrights or trademarks being hosted on their servers because they do not deal directly with those Website operators, do not receive money from them, and have no connection to them whatsoever. [*Id.* ¶¶ 25, 27] Defendants have never intentionally induced copyright infringement in the course of their business. [*Id.* ¶ 28]

### 2. No Evidence of Direct Control or Monitoring

Vuitton mentions but does not show evidence to apply the "willful blindness" approach to proving contributory trademark liability. Element (2), discussed in *Visa Int'l*, 494 F.3d at 807 (citing *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)) ("direct control and monitoring of the instrumentality used by a third-party to infringe the plaintiff's mark"), may be satisfied "where one knows or has reason to know of the infringing activity, and [is] . . . 'willfully blind' to such activity." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1188-1189 (C.D. Cal. 2002). But **the "direct control and monitoring" test does not apply here** because the alleged direct infringers supply a *product* rather than a *service*. *See Visa Int'l*, 494 F.3d at 807. Vuitton failed to produce evidence to support this element.

### 3. No Evidence that Defendants Supplied an Infringing Product

Element (2) only applies where the alleged contributory infringer (the defendant) supplies a product, as opposed to a service. That element requires proof that a Defendant "continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Visa Int'l*, 494 F.3d at 807. Since Defendants are Internet Service Providers that provide a *service* to their customers, the element does not apply here.

### B. Vicarious Trademark Infringement Not Proven

### 1. No Evidence of an Actual or Apparent Partnership

In addition to showing no proof of direct infringement, Vuitton presents no evidence to support other elements of its claim for vicarious trademark infringement. Liability for vicarious trademark infringement requires a finding that the defendant and the infringer "have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Visa Int'l*, 494 F.3d at 807. Summary

judgment is appropriate because Vuitton has failed to show any evidence of an actual or apparent partnership existed between the Defendants and any operator of any allegedly infringing Website.

Vuitton's Rule 30(b)(6) witness admitted that Vuitton has no evidence to support an agency or partnership relationship between Defendants and any accused Website:

> Mr. Lowe: What evidence does Louis Vuitton have that any of the defendants had an agency or partnership relationship with any of the websites listed in the Complaint or on Exhibit A to Exhibit 1468B?
>
> Mr. Livadkin: I don't have any such evidence. [Livadkin Depo: 176:3-7]

Vuitton's Opposition now claims that "Defendants have described a 'partner' relationship with its 'customers' " based on Akanoc employee and non-English speaker Will Lone's casual reference to Akanoc's customers as "partners" (through an interpreter) *once* during his deposition. [Opp. 20:3-4] But Mr. Lone immediately clarified that "partners" was not the appropriate term:

> Mr. Coombs: Are these companies you've identified as partners the same as the customers or distributors or something else?
>
> Mr. Lone: They are distributors. Sorry. We can't say distributor. They rent our machines and then they sell it to their customers. **Reseller may be the more appropriate word.** [Lone Depo. 16:11-17]

In that deposition Will Lone referred to the companies as "customers" nine times [Lone Depo. 6:18; 7:17; 13:2, 4, 17, 20; 17:21; 22:18; 24:15], as "resellers" five times [Lone Depo. 16:21; 17:3, 4; 20:9; 23:10], and as "clients" twice [Lone Depo. 13:19, 23]. Will Lone's comment is not evidence of any apparent or actual partnership between Defendants and their customers. There is no evidence to support an inference of any partnership. The unrefuted testimony of Livadkin, Holmes and Chen (along with the testimony of Will Lone) shows conclusively that no apparent or actual partnership between Defendants and their reseller customers ever existed. [Livadkin Depo. 176:3-7] [Holmes Depo. 246:16-22] [Chen Decl. ¶¶ 22-25] [Chen Depo. 55: 21-23; 107:6-7]

### 2. No Evidence of Defendants' Ability to Bind Their Customers in Transactions with Third Parties or Exercise Joint Ownership or Control

Vuitton admits it has no evidence that Defendants either have the ability to bind any operators of the Websites listed in the complaint [Livadkin Depo. 176:8-17; Holmes Depo. 248:13-23; 249:12-17] or that Defendants exercise joint ownership or control over the infringing Websites.

1  [Livadkin Depo. 176:18-23; Holmes Depo. 249:18-250:4]

2  Vuitton's Opposition ignores these elements altogether and does not dispute Steve Chen's testimony that Defendants have no authority to bind another or exercise joint control. [Chen Decl. ¶ 26] Defendants do not deal directly with website operators. [Chen Decl. ¶ 25] MSG and Akanoc exclusively market their services to resellers, who then deal with various Internet users including website operators. [Chen Depo. 55:21-23] Defendants have never exerted authority to bind website operators or to exercise joint ownership or control over them. [Chen Decl. ¶ 26]

No rational trier of fact could find that Defendants are liable for vicarious trademark infringement because Vuitton is unable to prove **any** of the necessary elements.

## IV. VUITTON HAS NO EVIDENCE OF SECONDARY COPYRIGHT INFRINGEMENT

### A.  Contributory Copyright Infringement

#### 1.  Required Elements

Vuitton cannot prove contributory copyright infringement because it has not proven any direct copyright infringement and has no evidence to prove other required elements. To show liability for contributory copyright infringement, in addition to proving direct infringement by a third party, Vuitton must prove that a defendant (1) has knowledge of a third party's infringing activity and (2) induces, causes, or materially contributes to the infringing conduct. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). But Vuitton has no evidence to prove these elements.

#### 2.  No Evidence of Actual or Constructive Knowledge of Infringement

Vuitton has no evidence that Defendants had knowledge of any *infringing conduct*. Although Vuitton sent a few letters to Defendants, it has no evidence that the Websites its letters listed ever had infringing content, or that any accused Websites were located at an IP address assigned to Defendants, or that those Websites ever used Defendants' servers. Vuitton's complaint letters do not establish any necessary element of contributory infringement.

That Vuitton purchased products from some third party and packages "indicated Chinese return addresses" is irrelevant; it does not link Defendants to any specific Website or prove specific Websites were in Defendants' IP range, or even prove that the products purchased were counterfeit. Robert Holmes admitted that he cannot authenticate any alleged counterfeit Louis Vuitton products:

> Mr. Lowe: All right, so you would not be testifying in this lawsuit about the authenticity of any Louis Vuitton product or lack of authenticity of any Louis Vuitton product?
>
> Mr. Holmes: No, sir.  [Holmes Depo 135:23-136-2]

Robert Holmes testified that all of the items he allegedly purchased from allegedly infringing Websites were "later forwarded for review by Louis Vuitton."  [Holmes Decl. 2:26-27; 3:10, 20-21; 4:2-4, 12-14, 24-26; 5:8, 17-19; 6:1-2, 11-13, 21-23; 7:4-6, 16]  At his deposition in this case, Robert Holmes testified that Vuitton instructs him to send Internet purchases to "Ken Klug" in New York.  [Holmes Depo. 65:5-66:4]  Assuming they were sent to Mr. Klug, there is no evidence of what happened to them after they were received.  No Declaration of Mr. Klug or anyone else at Vuitton who may have received the items was presented in order to establish a chain of custody or any other link with accused Websites.  Because "counterfeiting of Louis Vuitton brands online is widespread" [Livadkin Decl. ¶ 4], Vuitton apparently expects the Court to simply assume the items it purchased are counterfeit without presenting any evidence.  But there is no evidence tying an actual counterfeit product to any direct infringement or to any Defendant.

Information from unverified reports from the Internet is inadmissible double and triple hearsay.  This information is inherently unreliable because it is self-reported and is never verified for accuracy.[6]  As one court has put it, "anyone can put anything on the Internet" and "any evidence procured off the Internet is adequate for almost nothing."[7]

Vuitton's own Rule 30(b)(6) witness even admitted that such information is unreliable ("WHOIS database could not be reliable"), and that this self-reported information can destroy the accuracy of information from unverified reports from the Internet.  [Livadkin Depo 115:21-116:20]

Similarly, Vuitton's assertions that defendants are "known hosts of counterfeiters" who

---

[6] *See Cable News Network L.P., L.L.L.P. v. CNNews.com*, 177 F. Supp. 2d 506, 526 (E.D. Va. 2001) (recognizing that [Chinese company] Maya HK provided false contact information to the WHOIS database when applying for the registration of a domain name); *Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 613 n.1 (E.D. Va. 2008) (recognizing that WHOIS information for domain Atlas-Caspian.com is false and consists of the same contact email address as other domain names).

[7] *See Internet Specialties West, Inc. v. ISPWest*, No. CV 05-3296 FMC AJWX, 2006 WL 4568796, at *1 (C.D. Cal. Sept. 19, 2006), citing *Wady v. Provident Life & Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1064 (C.D. Cal. 2002).

1  "market themselves specifically to Chinese customers" is hearsay and baseless conjecture. It is not
2  admissible evidence. [Vuitton Opp. 14:24-28] Generalized conclusions are not evidence and prove
3  no actual or constructive knowledge of any infringing conduct. Vuitton presents no evidence that
4  direct infringement occurred at any of the Websites it listed in the First Amended Complaint.
5  Vuitton's *belief* that counterfeit items were sold on accused Websites hosted and its belief that sites
6  are hosted by Defendants is not enough. Fed. R. Civ. P. 56(e)(1) is clear that an "opposing affidavit
7  must be made on personal knowledge, **set out facts that would be admissible in evidence**, and
8  show that the affiant is competent to testify on the matters stated" (Emphasis added.) Even if
9  Vuitton's lawyer sent letters about suspected infringement, he is not an expert on Vuitton's
10 trademarks and copyrights and he cannot be a witness. No evidence establishes that products sold
11 on any accused Websites are infringing or that Defendants are connected with any Website.

### 3. Vuitton Presented No Evidence that Defendants Provided a Material Contribution to or Induced Third Parties to Infringe Vuitton's Copyrights

14 Obviously Defendants cannot materially contribute to direct infringement at accused
15 Websites if Vuitton cannot first prove direct infringement. But even if it could prove direct
16 infringement, Vuitton still has no evidence of material contribution or inducement and cannot satisfy
17 this element. In *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1170 (9th Cir. 2007), the court
18 held that material contribution requires a defendant to actively encourage infringement:

> Within the general rule that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement," *Grokster,* 545 U.S. at 930, 125 S.Ct. 2764, the Court has defined two categories of contributory liability: "Liability under our jurisprudence may be predicated on **actively encouraging (or inducing) infringement through specific acts** . . . or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Id.* at 942, 125 S.Ct. 2764 (Ginsburg, J., concurring) (quoting *Sony,* 464 U.S. at 442, 104 S.Ct. 774); *see also id.* at 936-37, 125 S.Ct. 2764. [Emphasis added.]

24 Since Defendants' Internet servers are capable of substantial and commercially significant
25 non-infringing uses, only the first test applies in this case. But Vuitton has no evidence that
26 Defendants actively encouraged infringing activity. Vuitton merely alleges that because MSG and
27 Akanoc (as Internet Service Providers) rent equipment and Internet access to companies in China,
28 they are responsible as secondary infringers if unknown customers of a customer use that service to

1  sell products Vuitton suspects of not being genuine Louis Vuitton products. By Vuitton's flawed
2  logic a telephone company would be liable for all fraudulent sales carried out by telephone, a car
3  rental company would be responsible for all bad driving of its customers, and the postal service
4  would be responsible for packages of contraband it delivers. But this is not the law and it is not
5  logical. "The law [is] reluctant [] to find liability when a defendant merely sells a commercial
6  product suitable for some lawful use." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 545
7  U.S. 913, 936, 125 S. Ct. 2764, 2779 (2005).

8  *Visa Int'l*, 494 F.3d at 796, instructs that in order to prove material contribution, Vuitton
9  must prove a "direct connection" between Defendants and the infringing conduct: "The credit card
10 companies cannot be said to materially contribute to the infringement in this case because they have
11 no direct connection to that infringement." This element likewise cannot be met here because
12 Vuitton has no evidence of any direct connection between Defendants and any infringing Website,
13 much less any infringing activity occurring at any Website.

14 Even if Vuitton could somehow show a direct connection (and it cannot), it still could not
15 prevail on this element. Vuitton must also prove that Defendants took active steps to encourage
16 direct infringement. *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d at 1170 ("*Grokster* tells us that
17 contribution to infringement must be **intentional** for liability to arise." (emphasis added), citing
18 *Grokster,* 545 U.S. at 930.). The *Grokster* Court, 545 U.S. at 936, explained that "intentional"
19 conduct for purposes of this element requires active steps to aid infringing that show an affirmative
20 intent that the product be used to infringe:

21 > The rule on inducement of infringement as developed in the early cases is no different today. Evidence of "**active steps** ... taken **to encourage direct infringement," such as advertising an infringing use or instructing how to engage in an infringing use**, show **an affirmative intent that the product be used to infringe**, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use . . . . [Emphasis added; citation and footnote omitted.]

25 Examples of "material contribution" cited by the *Grokster* Court include demonstrations by
26 sales staff of infringing uses [citing *Fromberg, Inc. v. Thornhill*, 315 F.2d 407, 412-13 (5th Cir.
27 1963)], demonstrations and recommendations of infringing configurations of the plaintiff's product
28 [citing *Haworth Inc. v. Herman Miller Inc.*, 37 U.S.P.Q.2d 1080, 1090, 1994 WL 875931 (W.D.

1  Mich. 1994)], and depictions by the defendant in its promotional films and brochures that infringed
2  the plaintiff's patent [citing *Sims v. Mack Trucks, Inc.*, 459 F. Supp. 1198, 1215 (E.D. Pa. 1978)].
3  *Grokster,* 545 U.S. at 936.  No such conduct by Defendants is shown by Vuitton.

4  In *Fonovisa, Inc. v. Cherry Auction,* Inc., 76 F.3d 259, 264 (9th Cir. 1996), the court found
5  material contribution where a defendant "actively strives" to provide the environment and market for
6  counterfeit recording sales to thrive.  The court specifically noted that the defendant provided
7  support services to the infringers, including "the provision of space, utilities, parking, advertising,
8  plumbing, and customers." without which "it would be difficult for the infringing activity to take
9  place in the massive quantities alleged." *Id.*  But Vuitton has no evidence to show that Defendants
10 had **any** relationship whatsoever with any Website operators, much less took active steps to
11 encourage infringement at specific Websites.  When asked whether Vuitton had "any reason to
12 believe that any of the Defendants knew that any infringement was going on," Livadkin responded
13 that Vuitton's evidence was limited to the attempts to contact Defendants regarding the infringing
14 Websites. [Livadkin Depo. 138:10-139:3]  That Defendants market services to Chinese customers,
15 just like tens of thousands of other businesses worldwide, or that they failed to open some of their
16 mail [Vuitton Opp. 12:17-13:3] does not show an affirmative intent to aid unnamed alleged
17 infringers.

18 Vuitton's contributory copyright infringement claim fail for lack of admissible evidence to
19 prove Defendants' material contribution or inducement of infringement by any Websites.

20 **B.  Vicarious Copyright Infringement**

21 **1.  No Evidence to Meet Elements of Vicarious Copyright Infringement**

22 "To state a claim for vicarious copyright infringement, a plaintiff must allege that the
23 defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial
24 interest in the infringing activity." *Visa Int'l*, 494 F.3d at 802.

25 **a.  No Evidence of Right and Ability to Supervise Conduct**

26 Vuitton incorrectly cites *Perfect 10, Inc. v. Amazon.com*, 508 F.3d at 1173, for the argument
27 that a defendant can be held liable if it has the "right and ability to supervise *or* control the infringing
28 activity of the direct infringer . . . ." [Vuitton Opp. 17:18-20]  The *Amazon.com* court, 508 F.3d at

1    1173, actually defined the ability to "control" infringing activity as the right and ability to
2    "**supervise**" infringing activity:

> *Grokster* states that one "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Grokster,* 545 U.S. at 930, 125 S.Ct. 2764. As this formulation indicates, to succeed in imposing vicarious liability, a plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement. *See id.* **Grokster further explains the "control" element of the vicarious liability test as the defendant's "right and ability to supervise the direct infringer."** *Id.* at 930 n. 9, 125 S.Ct. 2764. [Emphasis added.]

Vuitton admits that it has no evidence of Defendants' right and ability to supervise and control the Website information on its servers. Livadkin testified that Vuitton had no evidence of Defendants "somehow manifesting control over the websites." Livadkin also testified that he had no evidence that "any of the defendants monitored any of the websites listed in the Complaint." [Livadkin Depo. 175:11-176:2] When asked whether he had "evidence of direct control or monitoring of the content of any of the websites that you investigated for Louis Vuitton," Holmes testified that he had no evidence of either direct control or monitoring of website content by Defendants. [Holmes Depo. 245:16-246:15]

Steve Chen's uncontradicted testimony is supported by the testimony of Livadkin and Holmes. That Defendants lack control over accused Websites is undisputed. For example, Defendants do not create, design, operate, manage, or have any information about any Website using its servers and IP addresses. [Chen Decl. ¶ 34] The Defendants do not even know who their reseller customers deal with or what specific use is made of the Internet services provided by website operators. [Chen Decl. ¶ 35] They have no direct financial interest in infringing activity or infringing persons. [Chen Decl. ¶ 32] There is no evidence the Defendants encouraged or disregarded infringing activity. They had no more "control" over Internet transmissions of infringing advertising than a telephone company would have control over someone using telephone equipment to commit a tort or even a crime. There is no evidence of any link whatsoever between Defendants and any operators of any infringing Websites, much less a "right and ability to supervise" their operations. Vuitton has no contrary evidence to satisfy this element.

### b. No Evidence of Direct Financial Benefit

Vuitton has no evidence of any direct financial benefit to Akanoc and MSG from any infringing conduct; much less satisfying the more strict test that applies to Internet Service Providers such as Akanoc and MSG. Vuitton cites language in *Ellison v. Robertson*, 357 F.3d at 1079, where the court rejected a quantification requirement imposed by the district court and held that a financial benefit can be found if the "the infringing activity constitutes a draw for subscribers, not just an added benefit." Although this language has been interpreted quite narrowly,[8] in the Internet context it has been limited even further.

In *Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1117 (9th Cir. 2007), the court applied *Ellison*'s "draw for customers" language in the context of an Internet Service Provider such as MSG or Akanoc.[9] The *CCBill* court held, 488 F.3d at 1118, that an ISP that hosts websites for a fee does not receive a direct financial benefit within the meaning of *Ellison,* a result that is consistent with the legislative history of the Lanham Act:

> In this case, Perfect 10 provides almost no evidence about the alleged direct financial benefit to CWIE. **Perfect 10 only alleges that "CWIE 'hosts' websites for a fee." This allegation is insufficient to show that the infringing activity was "a draw" as required by *Ellison*, 357 F.3d at 1079.** Furthermore, the legislative history expressly states that **"receiving a one-time set-up fee and flat, periodic payments for service from a person engaging in infringing activities would not constitute receiving a 'financial benefit directly attributable to the infringing activity.' "** H.R. Rep., at 54. [Emphasis added.]

Vuitton admits it has no proof that Defendants have ever received any compensation for their ISP services other than a basic monthly fee from resellers for renting server space, IP addresses, bandwidth and Internet access. Vuitton's Rule 30(b)(6) witness testified that Vuitton has no evidence that Defendants "receive[d] money from the sale of infringing products that may be hosted

---

[8] *Adobe Systems Inc. v. Canus Productions, Inc.*, 173 F. Supp. 2d 1044, 1050-51 (C.D. Cal. 2001) ("In order to satisfy [the direct financial benefit] prong, **there must be 'an obvious and direct financial interest in the exploitation of copyrighted materials.**' " (emphasis added; citations omitted)).

[9] "[W]e hold that 'direct financial benefit' should be interpreted consistent with the similarly-worded common law standard for vicarious copyright liability. *See, e.g., Ellison*, 357 F.3d at 1078 (a vicariously liable copyright infringer 'derive[s] a direct financial benefit from the infringement and ha[s] the right and ability to supervise the infringing activity'). Thus, the relevant inquiry is 'whether the infringing activity constitutes a draw for subscribers, not just an added benefit.' "

1  on their servers." [Livadkin Depo. 165:17-20] Vuitton also admits it has no evidence that "any
2  defendants receive[d] any direct compensation for the sale of infringing products." [*Id.* 165:21-
3  166:3]

4  Mr. Livadkin's testimony supports that of Steve Chen that Defendants do not receive any
5  monies directly from any Website operator. [Chen Decl. ¶ 25] They charge fixed monthly service
6  fees not based on sales or activity of any Website doing business with any of the resellers. [Chen
7  Decl. ¶ 33] They have no direct financial interest in infringing activity or infringing persons. [Chen
8  Decl. ¶ 32] They do not create, design, operate, manage, or have any information about any Website
9  using its servers and IP addresses. [Chen Decl. ¶ 34] They derive income solely from the
10 unmanaged Internet hosting services marketed to resellers. [Chen Decl ¶ 32] The Defendants do not
11 know who their customers deal with or what particular use is made of the Internet services provided,
12 except as they may be occasionally informed. [Chen Decl. ¶¶ 6, 35]

13 Vuitton's vicarious copyright infringement claim must fail because it has no proof of any
14 direct infringement, no evidence of Defendants' right and ability to supervise any direct infringer, no
15 evidence that Defendants receive any direct financial benefit from any infringer, and no evidence
16 that Defendants receive any additional financial benefit.

17 **V.   CONCLUSION**

18 Vuitton has failed to meet its burden to provide evidence to prove elements of its claims. *See*
19 *Celotex Corp.,* 477 U.S. at 322. Vuitton has established no genuine issue of material fact or
20 evidence from which a reasonable jury could find in its favor. Defendants respectfully request
21 summary judgment pursuant to Fed. R. Civ. P. 56.

22 Dated: August 25, 2008                                **GAUNTLETT & ASSOCIATES**

                                                        By:   s/James A. Lowe
                                                              David A. Gauntlett
                                                              James A. Lowe
                                                              Brian S. Edwards

                                                        Attorneys for Defendants
                                                        Akanoc Solutions, Inc.,
                                                        Managed Solutions Group, Inc.
                                                        and Steve Chen