J. Andrew Coombs (SBN 123881)
Annie S. Wang (SBN 243027)
J. Andrew Coombs, A Prof. Corp.
517 E. Wilson Ave., Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

andy@coombspc.com
annie@coombspc.com

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Louis Vuitton Malletier, S.A., | Case No.: C 07 3952 JW (HRL) |
| Plaintiff, | Hon. Magistrate Judge Howard R. Lloyd |
| v. | NOTICE OF ADMINISTRATIVE MOTION RE DISCOVERY ORDERS; DECLARATION OF J. ANDREW COOMBS |
| Akanoc Solutions, Inc., et al. | |
| Defendants. | |

TO DEFENDANTS AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to this Court's Orders dated April 15, 2008 and

July 15, 2008, and Fed. R. Civ. P. 30, 34 and 37, Plaintiff Louis Vuitton Malletier, S.A. ("Louis

Vuitton") moves for an administrative order (i) to set a protocol for the inspection of Defendant's

servers or for such other discovery order as the Court deems appropriate; and (ii) to compel

payment of costs by Defendants as ordered by the Court.

The present motion is based upon this Notice of Motion, the Memorandum of Points and

Authorities attached hereto, the Declaration of J. Andrew Coombs and Exhibits attached thereto,

filed concurrently herewith and upon such further and additional evidence and records as may be presented to the Court.

Dated: November 10, 2008

J. ANDREW COOMBS
A Professional Corporation

By: J. Andrew Coombs
Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

# MEMORANDUM OF POINTS AND AUTHORITIES

## A. Summary of Dispute.

Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton") brings this Action against Defendants Akanoc Solutions, Inc., Managed Solutions Group, Inc. and their principal Steven Chen (collectively "Defendants") for contributory and vicarious liability for copyright and trademark infringement.

Louis Vuitton alleges Defendants benefited from and continued to aid counterfeiting of Louis Vuitton trademarks through the provision of Internet website hosting services and the routing of Internet traffic to third party websites hosted on servers owned, controlled and maintained by Defendants and despite notice to Defendants of the infringing activity occurring on those Websites.

On or about January 3, 2008, Louis Vuitton propounded separate sets of document production requests to each defendant. Not one printout, traffic log, page of information or bit of data from any of the servers operated by Defendants was produced in response to Louis Vuitton's demands. Although such data may still exist (or be recoverable) Defendants have made no discernable effort to produce such data. For these reasons, Louis Vuitton filed its motion on March 25, 2008 seeking an order to compel production or, in the alternative, to permit forensic inspection of a sampling of the servers.

In Opposition to the Motion Defendants asserted (i) that they have no control over the servers once "leased" to an account; (ii) even where they may have such control where a re-seller ceases to use a particular server, they have no obligation to preserve such data despite this litigation or to produce it and (iii) production of the requested material would violate federal privacy legislation.

After oral argument, the Court entered its ruling which provided, among other things,

Based on the foregoing, IT IS ORDERED THAT plaintiff's motion to compel is GRANTED as follows:

**No later than July 31, 2008** defendants shall either (1) produce all responsive publicly posted Internet content evidencing offers made of counterfeit Louis Vuitton merchandise and traffic logs evidencing the volume of underlying counterfeit activity, or (2) permit inspection of their servers to allow plaintiff an opportunity to ascertain same. The discovery shall be limited to the 67 allegedly infringing websites identified by plaintiff. In the event an inspection is held it shall be conducted pursuant to an appropriate protocol. The court trusts that the parties should be able to agree upon a suitable protocol between themselves. However, if they are not, each side shall submit its protocol for this court's consideration and the court shall decide upon the protocol to be followed.

Defendants produced no documents by the July 31, 2008 deadline specified in the Court's Order. At no time have the Defendants identified what, if any steps were taken before that deadline to comply with that part of the Court's order.

Defendants did file objections to the Court's order on July 25, 2008. By order dated August 7, 2008, the Court overruled the Defendants' objections. In so doing, the Court stated, among other things,

The Court OVERRULES the Defendants' objection to the Order to Compel. AS directed by Judge Lloyd, the parties shall meet and confer to determine an appropriate protocol for obtaining the discovery at issue.

Between August 4, 2008 and October 24, 2008, through counsel and technical experts, Louis Vuitton attempted to structure a protocol to accomplish the inspection ordered by the Court.

On or about October 14, 2008, as a result of those efforts, Louis Vuitton transmitted a working draft proposed protocol, a copy of which is attached hereto as Exhibit C. Thereafter, on October 24, 2008, through counsel Defendants objected to the proposed protocol, proposed no changes to the proposed protocol and, despite a request for their proposed protocol, have submitted no "counter" protocol.

On April 15, 2008, in response to the Defendants' motion for an order compelling production of Louis Vuitton's Rule 30(b)(6) designee in Los Angeles, the Court entered its order compelling production and ordering the Defendants to pay one half of the out-of-pocket costs incurred for such production. In response to the Court's order, Louis Vuitton produced its witness eight days later at the office of Defendants' counsel of record. On April 17, 2008 Louis Vuitton provided its estimate of out-of-pocket costs for production. In response to Defendants' request for back up evidencing those costs, a statement and receipts were provided to Defendants' counsel on September 9, 2008. Despite follow up requests, Defendants have not paid any of the costs or otherwise responded to Louis Vuitton's request for reimbursement of those costs ordered by the Court.

### B. The Proposed Inspection.

Pursuant to the Court' July 15, 2008 order, the parties were to agree upon a protocol for inspection of the Defendants' servers and, if unable to agree, to submit their proposed protocols to the Court for further decision. Louis Vuitton's proposed protocol is attached hereto as Exhibit C.

Despite requests to Defendants, Louis Vuitton has not been apprised of any proposed protocol being offered by Defendants and their correspondence suggests no protocol will be forthcoming. Defendants reassert arguments advanced in opposition to the motion and in support of their objections, which have now twice been overruled by the Court.

Defendants appear to have two objections to the proposed protocol: First, having taken no steps to secure requested unprivileged data, they now seek to provide Defendants' customers with specific notice well in advance of the proposed inspection – notice which can only insure that to the extent the servers have not already been sanitized of probative evidence, they will be before any inspection occurs.[1] While the parties might be able to agree to a specified amount of time for notice, Louis Vuitton strenuously objects to any notice which could only encourage offshore operators to destroy evidence for the Defendants' benefit.

Defendants further object to the manner in which the proposed protocol would deal with data not publicly accessible, without proposing any alternative for accessing such data. A principal reason for the time it has taken to develop a proposed protocol is to address this concern. Regrettably, the Defendants' once again adopt a wholesale rejectionist approach and fail to even attempt to offer any alternative method by which data they have been ordered to produce can be made available in the litigation.

Finally, to the extent that the Court concludes data cannot be made available as a result of Defendants' obstruction and delay, Louis Vuitton requests in the alternative, that the Court order discovery sanctions including (i) admission of alternate forms of evidence in support of Louis Vuitton's allegations or (ii) deemed admission of facts.

### C.  Louis Vuitton's Costs.

Defendants have provided no explanation for their failure to pay those costs previously ordered by the Court. The Order is clear. The costs are established[2]. Despite repeated requests, Defendants have offered no explanation or excuse for their failure to pay those costs already

---

[1] In this respect it worth noting that Defendants effectively produced no email traffic predating the filing of the instant lawsuit because of an alleged "crash" of the email server – data which was reportedly not backed up in any form.

[2] The out-of-pocket costs submitted are €7301.07. At the time these costs were incurred, the Euro was trading at approximately $1.59. It is now trading at $1.27. Delay in complying with the Court's order should not redound to the benefit of Defendants and one half of the out-of-pocket costs at the $1.59 exchange rate are $5,804.35.

ordered by this Court. Louis Vuitton respectfully requests the Court enter such order as it deems appropriate for this additional discovery default.

Dated: November 10, 2008

J. ANDREW COOMBS,

A Professional Corporation

By: J. Andrew Coombs
Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

## DECLARATION OF J. ANDREW COOMBS

I, J. Andrew Coombs, declare as follows:

1.     I am an attorney at law, duly admitted to practice before the Courts of the State of California and the United States District Court for the Northern District of California. I am counsel of record for Plaintiff, Louis Vuitton Malletier, S.A. ("Louis Vuitton") in an action styled *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., et al.*, and, except as otherwise expressly noted to the contrary, I have personal knowledge of the following facts.

2.     On March 25, 2008 I caused to be filed Louis Vuitton's motion to compel production and, in the alternative, to permit inspection of servers operated by Defendants in this matter. On April 29, 2008 I attended the hearing before Magistrate Judge Lloyd on Louis Vuitton's motion to compel. On July 15, 2008, the Court entered its Order compelling production and, in the alternative, ordering inspection of the Defendants' servers. A copy of that Order is attached hereto as Exhibit A.

3.     Defendants produced no documents on or before July 31, 2008. Defendants did file objections to the Exhibit A order. Those objections were overruled by Judge Ware on August 7, 2008. A copy of the Court's order overruling Defendants' objections is attached hereto as Exhibit B.

4.     On August 4, 2008, having received no documents pursuant to the Exhibit A Order and no order staying its effect, I wrote to Defendants' counsel of record confirming that no documents were produced and proposing that we move forward in establishing the protocol ordered by the Court. After further correspondence, I met telephonically with Defendants' counsel and we agreed to involve our respective experts in the process of seeking to establish a protocol in accordance with the Courts order. An initial conference call with experts participating was held on August 27, 2008.

5.      Between August 27, 2008 and September 29, 2008, the Parties continued to exchange information in an effort to establish the protocol ordered by the Court. On October 14, 2008 I caused to be transmitted a working draft proposed protocol based on the discussion which had occurred. A true copy of that communication is attached hereto as Exhibit C. By letter dated October 24, 2008, Defendants rejected the proposed protocol, asserted that any proposed inspection was unworkable (apparently on the same grounds rejected by the Court) and submitted no alternative proposal. A true copy of Defendants' response is attached hereto as Exhibit D. By letter dated November 3, 2008, I caused to be transmitted a follow up, expressly requesting Defendants' proposed protocol. I have received no further response from Defendants' counsel.

6.      On April 15, 2008, the Court entered its order pursuant to Defendants' motion to compel, ordering that Louis Vuitton's Rule 30(b)(6) designee be produced in California. (The discovery cutoff was April 28, 2008, later extended to April 29, 2008.) The Court further ordered that the Defendants pay one-half of the out-of-pocket costs incurred by Louis Vuitton. On April 17, 2008 I provided an estimate based on charges incurred by Louis Vuitton. On September 9, 2008 my office provided the Defendants' counsel with the expense report prepared, along with accompanying backup. The total out-of-pocket costs were €7301.07. I am informed and believe the exchange rate was approximately $1.59 to the euro on April 23, 2008 and approximately $ 1.27 to the Euro as of today's date. Printouts evidencing the exchange rate on each of these dates are collectively attached as Exhibit F.

7. Despite requests for reimbursement as ordered by the Court's order, I have received no communication from Defendants since transmission of the expense report either objecting to the amount or specifying when payment would be made.

I declare under penalty of perjury that the foregoing is true and correct and this declaration was executed the 10th day of November, 2008 at Glendale, California.

J. ANDREW COOMBS



United States District Court
For the Northern District of California

1

2　　　　　　　　　　　　　　　　　　　　　　　　*E-FILED 7/15/2008*

3

4

5

6

7　　　　　　　　　　　　　　　　NOT FOR CITATION

8　　　　　　　　　　　IN THE UNITED STATES DISTRICT COURT

9　　　　　　　　FOR THE NORTHERN DISTRICT OF CALIFORNIA

10　　　　　　　　　　　　　　SAN JOSE DIVISION

11 | LOUIS VUITTON MALLETIER, S.A.,　　　No. C07-03952 JW (HRL)

12　　　　　　　　Plaintiff,　　　　　**ORDER GRANTING PLAINTIFF'S**
                                   **MOTION TO COMPEL DOCUMENTS**
13　　v.

14 | AKANOC SOLUTIONS, INC., MANAGED　　**[Re: Docket No. 30]**
     SOLUTIONS GROUP, INC. STEVEN CHEN
15 | and DOES 1 THROUGH 10,

16　　　　　　　　Defendants.
                                              /
17

18　　　　Plaintiff Louis Vuitton Malletier, S.A. moves for an order compelling defendants to

19　produce documents, or alternatively, permitting plaintiff to conduct a forensic examination of a

20　sampling of defendants' servers. Defendants oppose the motion. Upon consideration of the

21　moving and responding papers,[1] as well as the arguments presented, this court grants the

22　motion.

23

24

25　　　　[1]　　Defendants object to plaintiff's reply brief and to certain portions of the

26　supporting declaration of plaintiff's counsel, Andrew Coombs. The stated objections are
     based on one or more of the grounds of relevance, lacking in foundation or personal
27　knowledge, speculation, or hearsay. Defendants argue that plaintiff's reply brief and
     Coombs' declaration contain new facts and arguments that were not raised in the initial
28　moving papers. However, the court finds that the challenged statements were properly raised
     in response to arguments that defendants made (apparently for the first time) in their
     opposition. Moreover, the court finds that defendants had sufficient opportunity to respond
     to those arguments at the motion hearing. The court appreciated what was relevant and what
     was not and considered the declaration for what it was worth.

United States District Court
For the Northern District of California

1    Plaintiff sues for alleged trademark and copyright infringement.  It claims that

2 defendants are secondarily liable for infringement because they provide Internet hosting

3 services for a number of websites that sell counterfeit Louis Vuitton merchandise.  Defendants

4 say that they simply provide access to the Internet by renting Internet Protocol ("IP") addresses

5 and Internet bandwidth to third-party resellers and other Internet hosting companies who, in

6 turn, host individual websites.  Defendants further contend that, unless a specific complaint is

7 brought to their attention, they have no knowledge or control over the contents of websites

8 hosted on their servers.

9    Plaintiff moves to compel two categories of documents concerning the websites[2] –

10 namely:  (1) publicly posted Internet content evidencing offers made of counterfeit Louis

11 Vuitton merchandise on the websites; and (2) traffic logs that evidence the volume of

12 underlying counterfeit activity.  Plaintiff says that these documents are called for by Request

13 Nos. 1, 5, 7, 12, 13, 21, 22, 24 and 25.

14    Defendants agreed to produce correspondence and emails sent to them concerning the

15 websites and any subsequent "take down" notices sent to re-sellers.  However, defendants assert

16 that responsive documents otherwise never existed or are not in their possession, custody or

17 control.  (*See* Lowe Decl., Exs. 1501 and 1502).  Apparently for the first time in their

18 opposition brief, defendants also contend that their production of the requested information

19 would violate the federal Wiretap Act (18 U.S.C. § 2510, *et seq.*) and the Stored

20 Communications Act (18 U.S.C. § 2702).

21 **A.    Defendants' General Objections**

22    Preliminarily, plaintiff argues that defendants did not object to any of the specific

23 requests at issue.  Defendants maintain that they properly objected by asserting General

24 Objections on several grounds, including that the information is protected by the attorney-client

25

26

27    [2]    Plaintiff's requests reportedly defined "website" or "websites" as terms
"refer[ring] to all Internet content hosted by YOU at each of the Interest websites located

28 within uniform resource locators or domain names including but not limited to those listed in
Exhibit A attached hereto."  (Reply at 2 n.1).

2

1  privilege and the attorney work product doctrine, and that the requests are vague, ambiguous,

2  overbroad and unduly burdensome. (Lowe Decl., Exs. 1501 and 1502).

3       Grounds for objection to discovery requests must be stated with specificity as to each

4  request. *See* FED.R.CIV.P. 34(b)(2). This is particularly true with respect to claims of privilege.

5  *See* FED.R.CIV.P. 26(b)(5)(A). Here, defendants merely asserted a number of boilerplate,

6  blanket General Objections at the outset of their responses. This practice obscures the extent to

7  which defendants may be withholding information in response to each request and does not

8  satisfy the requirement for specificity under Fed. R. Civ. P. 34. Accordingly, this court

9  concludes that, except as to any objections asserted in response to specific requests, defendants

10  did not properly object to the requests in question.

11  **B.   Publicly Posted Internet Content and Traffic Logs**

12       Defendants initially took the position that they do not deal directly with individual

13  websites and are therefore unable to produce the requested data. However, they acknowledge

14  that they own the servers on which the requested information resides; and, Federal Rule of Civil

15  Procedure 34 requires a party to produce not only documents in its control, but also those in its

16  possession or custody. FED.R.CIV.P. 34(a)(1).

17       Nonetheless, defendants now contend that, even if they could be said to possess the

18  requested information, they are prohibited from disclosing it to plaintiff by the federal Wiretap

19  Act, 18 U.S.C. § 2510, *et seq.*, and the Stored Communications Act, 18 U.S.C. § 2702.

20       Congress passed the Electronic Communications Privacy Act (ECPA) in 1986 to protect

21  the privacy of electronic communications. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868,

22  874 (9th Cir. 2002). "Title I of the ECPA amended the federal Wiretap Act, which previously

23  addressed only wire and oral communications, to 'address[] the interception of . . . electronic

24  communications.'" *Id.* (quoting S. Rep. No. 99-541, at 3 (1986)). "Title II of the ECPA created

25  the Stored Communications Act (SCA), which was designed to 'address[] access to stored wire

26  and electronic communications and transactional records." *Id.* (quoting S. Rep. No. 99-541, at

27  3 (1986)).

28

*United States District Court*
*For the Northern District of California*

3

1    Louis Vuitton's requested production is not prohibited by the federal Wiretap Act. "The

2  Wiretap Act makes it an offense to 'intentionally intercept [] . . . any wire, oral, or electronic

3  communication.'" *Konop*, 302 F.3d at 876 (quoting 18 U.S.C. § 2511(1)(a)). The Ninth Circuit

4  has held that, in order for information to be "intercepted" within the meaning of the Wiretap

5  Act, "it must be acquired during transmission, not while it is in electronic storage." *Id.* at 878.

6  Here, plaintiff says that it is not seeking information during transmission and agrees to exclude

7  any such communications from its requests.

8    Defendants nonetheless maintain that the requested production will cause them to

9  violate the SCA. "Generally, the SCA prevents 'providers' of communication services from

10 divulging private communications to certain entities and/or individuals." *Quon v. Arch*

11 *Wireless Operating Co.*, __ F.3d __, 2008 WL 2440559 at *5 (9th Cir., June 18, 2008).

12 Defendants say that they are prohibited from producing the requested information by SCA

13 Section 2702(a)(1), which makes it unlawful for a person or entity providing an "electronic

14 communication service" to the public to "knowingly divulge to any person or entity the contents

15 of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

16 Defendants have provided few details about how their business operates or the nature of their

17 relationship with their customers; and, the little information that has been is very generalized.

18    However, the cases cited by defendants concern the disclosure of the contents of email

19 messages, personal text messages, private messages posted for a limited number of subscribers

20 on a secure website, and the like. Here, by contrast, plaintiff seeks information – publicly

21 posted content evidencing offers of counterfeit Louis Vuitton merchandise – that was broadcast

22 on publicly accessible websites to the public at large. "The legislative history and the statutory

23 structure [of the ECPA] clearly show that Congress did not intend to criminalize or create civil

24 liability for acts of individuals who 'intercept' or 'access' communications that are otherwise

25 readily accessible by the general public." *Snow v. Directv, Inc.*, 450 F.3d 1314, 1320-21 (11th

26 Cir. 2006). Nor is there anything in the record presented to indicate that the requested server

27 logs, which reflect the volume of traffic to the allegedly infringing websites, contain the

28

*United States District Court*
*For the Northern District of California*

4

1  contents of any communications. Even if they did, plaintiff indicates that it is willing to accept

2  a redacted production that excludes such communications.

3     Although defendants assert that they have no ability to access the content on their own

4  servers, they acknowledged at oral argument that such access is technologically feasible.[3] It

5  was further suggested at the hearing that defendants control the router that directs traffic to the

6  assigned IP addresses – an assertion which defendants did not deny. And, the record presented

7  suggests that they have the ability to conduct searches of some kind. (*See* Coombs Suppl.

8  Decl., ¶¶ 5-6, Exs. A and B).[4]

9     Defendants argue that the requested discovery is unduly burdensome because they claim

10  that the requests, as drafted, call for information from potentially thousands of websites. (Opp.

11  at p. 2, n.2). However, plaintiff indicates that it is willing to limit the discovery to 67 websites

12  that it has identified as selling allegedly counterfeit Louis Vuitton merchandise. (*See* Reply,

13  Ex. B). As such, this court finds that the discovery is reasonably tailored and that any burden

14  that may be imposed is not undue.

15     Based on the foregoing, IT IS ORDERED THAT plaintiff's motion to compel is

16  GRANTED as follows:

17     **No later than July 31, 2008**, defendants shall either (1) produce all responsive publicly

18  posted Internet content evidencing offers made of counterfeit Louis Vuitton merchandise and

19  traffic logs evidencing the volume of underlying counterfeit activity, or (2) permit inspection of

20  their servers to allow plaintiff an opportunity to ascertain the same. The discovery shall be

21  limited to the 67 allegedly infringing websites identified by plaintiff. In the event an inspection

---

23      [3]    Defendants say that they give password control to their customers.
Nevertheless, at the motion hearing, defendants also confirmed that their servers rotate in and
24  out of use, that defendants initially assign passwords to their clients, and that defendants also
re-set passwords when servers have been "returned" or "abandoned."

25      [4]    Plaintiff acknowledges that Mr. Coombs' supplemental declaration was not
26  submitted in compliance with the court's Civil Local Rules. *See* Civ. L.R. 7-3(d).
Nevertheless, the key issues in dispute were only raised by defendants for the first time in
27  their opposition brief; and, given the nature of the parties' dispute, this court found that
resolution of the instant dispute was aided by more information, not less. Moreover, at the
28  motion hearing, each side had ample opportunity to address all issues raised in the papers.
Accordingly, this court has exercised its discretion and considered the belated declaration.
However, plaintiff is admonished to comply with the court's rules on all future filings.

United States District Court
For the Northern District of California

1    is held, it shall be conducted pursuant to an appropriate protocol.  The court trusts that the

2    parties should be able to agree upon a suitable protocol between themselves.  However, if they

3    are not, each side shall submit its proposed protocol for this court's consideration and the court

4    shall decide upon the protocol to be followed.

5    Dated:    July 15, 2008

6

7    HOWARD R. LLOYD
     UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

6

1    **5:07-cv-3952 Notice has been electronically mailed to:**

2    J. Andrew Coombs andy@coombspc.com, jeremy@coombspc.com

3    James A. Lowe info@gauntlettlaw.com, arm@gauntlettlaw.com, bse@gauntlettlaw.com,
4    jal@gauntlettlaw.com, pam@gauntlettlaw.com

5    Annie S Wang annie@coombspc.com, andy@coombspc.com

6    **Counsel are responsible for distributing copies of this document to co-counsel who have
7    not registered for e-filing under the court's CM/ECF program.**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

7



United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Louis Vuitton Malletier, S.A.,

          Plaintiff,

     v.

Akanoc Solutions, Inc., et al.,

          Defendants.

NO. C 07-03952 JW

**ORDER OVERRULING DEFENDANTS' OBJECTION TO THE MAGISTRATE JUDGE'S ORDER COMPELLING PRODUCTION OF DOCUMENTS**

## I. INTRODUCTION

Luis Vuitton Malletier, S.A. ("Plaintiff") brings this action against Akanoc Solutions, Managed Solutions Group, and Steven Chen (collectively, "Defendants"), alleging contributory and vicarious trademark and copyright infringement. Defendants are internet service providers who host third-party websites on their servers. Plaintiff alleges that Defendants have knowingly facilitated the sale of counterfeit products through their hosting of web sites that sell such goods. (See Amended Complaint for Contributory and Vicarious Trademark Infringement, Docket Item No. 71.)

A discovery dispute arose concerning Plaintiff's request for information stored on Defendants' servers. On July 15, 2008, Magistrate Judge Lloyd granted Plaintiff's motion to compel. (hereafter, "Order to Compel," Docket Item No. 65.) Judge Lloyd ordered Defendants to "produce all responsive publicly posted Internet content evidencing offers made of counterfeit Louis Vuitton merchandise and traffic logs evidencing the volume of underlying counterfeit activity....The discovery shall be limited to the 67 allegedly infringing websites identified by plaintiff." (Id. at 5.)

1       Presently before the Court is Defendants' objection to the order to compel. (hereafter,

2   "Objection," Docket Item No. 69.)

3   **II. DISCUSSION**

4       Defendants object to the order on the grounds that: (1) disclosing information stored by

5   third-parties would violate the Stored Communications Act ("SCA") 18, U.S.C. § 2702; and (2)

6   producing the contents requested is impossible. (Objection at 1, 9.)

7       A district court reviews a magistrate judge's ruling under the "clearly erroneous" or

8   "contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Bahn v. NME

9   Hospitals, Inc., 929 F.2d 1404, 1414 (9th Cir. 1991).

10      The Court considers each issue in turn.

11  **A.**   **Stored Communications Act**

12      Defendants contend that Judge Lloyd erred by ordering discovery that would require them to

13  violate the SCA. (Objection at 1.)

14      The SCA "prevents 'providers' of communication services from divulging private

15  communication to certain entities and/or individuals." Quon v. Arch Wireless Operating Co.,

16  —F.3d—, 2008 WL 2440559 at *5 (9th Cir., June 18, 2008). However, the SCA does not

17  "criminalize or create civil liability for acts of individuals who 'intercept' or 'access'

18  communications that are otherwise readily accessible by the general public." Snow v. Directv, Inc.,

19  450 F.3d 1314, 1320-21 (11th Cir. 2006).

20      Defendants contend that the discovery sought violates the SCA because it requires them to

21  disclose private information belonging to third-parties. (Objection at 3.) Defendants' contention

22  blatantly misrepresents Judge Lloyd's order. Judge Lloyd specifically limited his order to all

23  "publicly posted Internet content." (Order to Compel at 5.) Defendants are not required to disclose

24  private information stored on their computers; they are only required to disclose information that the

25  third-parties have made available to the public. Accordingly, the Court finds that the Order to

26  Compel does not violate the SCA.

27

28  2

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**B.    Compliance**

Defendants contend that they cannot comply with the Order to Compel because (1) they do not have access to the password protected content and (2) they have approximately 1500 servers, which make any search unduly burdensome. (Objection at 9.)

First, as discussed above, the discovery is limited to publicly available contents. Defendants have offered no evidence to suggest that they cannot produce publicly available contents without accessing password protected contents. Second, although Defendants claim they have more than 1500 servers, discovery is limited to 67 specific web sites. (Order to Compel at 5.) Defendants have offered no evidence to suggest that they cannot narrow the number of servers on which responsive contents might exist based on these 67 specific web sites and their own business records. Accordingly, the Court finds Defendants have not shown that the discovery sought is unduly burdensome.

**III. CONCLUSION**

The Court OVERRULES Defendants' objection to the Order to Compel. As directed by Judge Lloyd, the parties shall meet and confer to determine an appropriate protocol for obtaining the discovery at issue. All other discovery disputes are referred to Judge Lloyd.

Dated: August 7, 2008

_____
JAMES WARE
United States District Judge

3

United States District Court
For the Northern District of California

1

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2
Annie S Wang annie@coombspc.com
Brian S. Edwards bse@gauntlettlaw.com
3
David A. Gauntlett info@gauntlettlaw.com
J. Andrew Coombs andy@coombspc.com
4
James A. Lowe info@gauntlettlaw.com

5

6
Dated: August 7, 2008

Richard W. Wieking, Clerk

7

8
By:   /s/ JW Chambers
Elizabeth Garcia
9
Courtroom Deputy

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



## Andy Coombs

| | |
|---|---|
| **From:** | Annie Wang [annie@coombspc.com] |
| **Sent:** | Tuesday, October 14, 2008 10:29 AM |
| **To:** | 'Lowe, James A.' |
| **Cc:** | 'Christopher Lai'; 'Andy Coombs' |
| **Subject:** | RE: Akanoc Solutions, Inc. et al. adv. Louis Vuitton Malletier, S.A. (10562-002) |

Jim,

Please see the below proposal. I am still waiting to hear back from Guidance Software as to final comments so this is not necessarily set in stone, but in the interests of getting this moving again, please let me know your thoughts on the below proposed protocol.

Thanks,
Annie

1. LV will provide 12 hours notice as to the servers to be inspected.

2. Defendants may not "tipoff" or otherwise suggest to their "customers" the purpose of the inspection other than to state after LV has provided notice identifying a specific server, that "service may be disrupted on [a specified date]" as to the identified server only.

3. LV will initially isolate 5 servers for inspection and will stagger additional inspections pursuant to the order.

4. Guidance Software personnel will sign Exhibit A to the Protective Order as necessary.

5. The Parties can agree that documents produced will be covered under the protective order and each party will have 20 days to designate material as confidential, etc.

6. Guidance Software will go to Defendants' premises where at least one technical person on Defendants' side will be present should any questions arise.

7. Guidance Software will create a forensic image of the contents of identified servers as efficiently as possible.

8. Guidance Software will comply with the Court's order and referenced Exhibits.

9. Guidance Software will provide copies of results to LV.

10. LV's counsel will send digital copies to Defendants' counsel.

11. Guidance Software will destroy the rest of the copied contents upon joint instructions by the Parties, failing that, by order of the Court.

12. The Parties will cooperate with each other in this process.

---

**From:** Mendizabal, A. Richard [mailto:ARM@gauntlettlaw.com]

11/10/2008

EXHIBIT C                    Page 22

**Sent:** Monday, October 13, 2008 5:15 PM
**To:** annie@coombspc.com
**Cc:** Lowe, James A.; Christopher Lai
**Subject:** Akanoc Solutions, Inc. et al. adv. Louis Vuitton Malletier, S.A. (10562-002)

Please see attached correspondence from Mr. Lowe dated October 13, 2008.

Thank you,


A. Richard Mendizabal
Assistant to James Lowe and Christopher Lai, Esq.
Gauntlett & Associates

Gauntlett & Associates

(949) 553-1010

(949) 553-2050 FAX

This information is intended for use by the individuals or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us.

11/10/2008

EXHIBIT C                    Page 23





**GAUNTLETT & ASSOCIATES**

A T T O R N E Y S   A T   L A W

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

Our File Number:
10562-002

October 24, 2008

**CONFIDENTIAL SETTLEMENT COMMUNICATION**

This communication constitutes an offer of compromise and is subject to the provisions of California
Evidence Code § 1152, Rule 408 of the Federal Rules of Evidence and all other similar rules.

**VIA E-MAIL**
annie@coombspc.com

Annie Wang, Esq.
LAW OFFICES J. ANDREW COOMBS, APC
517 E. Wilson Avenue, Suite 202
Glendale, CA 91206-5902

Re:   *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc. et al.*
       **U.S.D.C., Northern District of CA, Case No. C07 3952-JW**

- **Objections to Vuitton's Proposed Server Inspection Protocol**

Dear Ms. Wang:

In furtherance of our effort to agree with Louis Vuitton to a protocol for inspection of Internet servers at our clients' facilities, as required by Judge Ware's Order of August 7, 2008, we provide the following information for use by your forensic computer consultant and your office to identify potential servers to inspect and to develop a practical protocol. This information, according to our agreement in this matter, is not to be used for any other purpose, including as evidence in this case. If this does not accord with your understanding, please contact me immediately.

The letter follows up on your email on October 14, 2008 that contained your proposed protocol for the inspection of Internet servers at our clients' facilities. We have numerous concerns with this proposed protocol and find it insufficient for a number of reasons.

<u>Compliance with the Court's August 7, 2008 Order</u>

As we have noted to you in our previous letters sent on September 5, 2008, September 19, 2008, September 26, 2008 and October 13, 2008, we have made it clear that our clients provide unmanaged Internet hosting, and that, pursuant to their service agreements with their customers, our clients are not authorized, nor are they able to, access their clients' password-

163205.1-10562-002-10/24/2008 3:26 PM

protected content. Our primary question about this upcoming server inspection was how your client would propose to conduct the inspection, without the passwords necessary to access the servers, in a way that limits the inspection to "publically available information" "without accessing password protected contents" in full compliance with the Court's Aug 7, 2008 Order, which provides:

> Defendants are not required to disclose private information stored on their computers, they are only required to disclose **information that the third-parties have made available to the public**.[1]

> [T]he discovery is **limited to publically available contents**. Defendants have offered no evidence to suggest that they cannot produce **publically available contents without accessing password protected contents**.[2]

Nowhere in your proposed protocol do you discuss *how* you intend to perform the server inspection in compliance with the Court's order. You merely say that "Guidance Software will comply with the Court's order and referenced Exhibits" without any further discussion as to what steps, in particular, your forensic examiner will take to ensure compliance with the Court's order.

This lack of explanation is completely unacceptable and insufficient in light of the Court's order. Please provide us with a protocol for this inspection that includes *detailed* steps that your expert will take to comply with the Court's order. The entire point of developing an agreed protocol is to establish exactly how the inspection will be performed. We frankly do not understand how your forensic consultant intends to proceed without violating the privacy rights of the third parties and potentially violating federal statutes. We have been asking this question from the beginning and neither you, Mr. Coombs, nor your consultant have been able to give us an answer. Your comments on October 14, 2008 essentially dodge that critical question again and suggest "trust us." This is unacceptable. We need to know the technical details before we can agree to your protocol.

<u>Proposed Notice to Customers</u>

We also object to the two proposed notice requirements set forth in your proposed protocol.

Our clients believe its customers should have notice 24 hours prior to the server interruption instead of the 12 hours notice that you propose. While our clients have sent their customers 12 hour "takedown" notices in the past, this server interruption requires a much more

---

[1] Court's Aug 7, 2008 Order 2:23-25
[2] Court's Aug 7, 2008 Order 3:5-7
163205.1-10562-002-10/24/2008 3:26 PM

complicated response. 12 hours notice may be sufficient to take down certain material from a website, but it is not enough time to devise entire contingency plans for a service interruption.

Also, many of our clients' customers are in China, and the time difference between our clients' time zone and their customers' time zone makes it such that 12 hours may not be sufficient time to allow them to plan for contingencies for a server interruption. For instance, sending a China-based customer a notice at 8:00 p.m. local time (after business hours) and initiating the server inspection at 8:00 a.m. local time would likely prevent customers from being able to prepare adequately for the service interruption.

We also find the following portion of your proposed protocol to be objectionable:

> Defendants may not "tipoff" or otherwise suggest to their "customers" the purpose of the inspection other than to state after LV has provided notice identifying a specific server, that "service may be disrupted on [a specified date]" as to the identified server only.

While our clients understand that you would prefer that the service disruption notices not refer to this upcoming inspection, placing such a restriction on our clients' notices to their customers will negatively affect their business relationships, which are directly tied to their ability to offer uninterrupted Internet hosting services. In order to maintain their reputation as providers of quality Internet hosting services, our clients seek to prevent any disruptions of service to their customers, and if any such disruptions are necessary, to sufficiently explain the bases for these disruptions to assuage any of their customers' concerns as to the quality of our clients' services. There has never been such a server interruption as you are proposing and it will shock customers.

The negative ramifications of a "generic" disruption notice to our clients' business reputation would outweigh any potential benefits. While you may believe that a "generic" service interruption notice will prevent any website operator from removing potentially offending content, this may not be the case. Our clients almost never send server interruption notices and, in the rare times when they do, they explain the reasons for the interruption. A "generic" interruption notice with no explanation would likely cause confusion, possibly causing website operators to speculate as to the cause of the interruption. This speculation would not only harm our clients' business reputation, it would likely cause any potentially offending website operators to remove content anyway. We must agree on some notice that is reasonable on its face and that will not panic customers.

Please advise us as to how you plan to revise your proposed protocol to address these issues. We are especially concerned about your complete failure to explain how your forensic expert will comply with the Court's August 7, 2008 order. Preventing the disclosure of

password-protected content is of paramount importance to our clients, and the Court's order acknowledges the significance of preventing such disclosure.

Very truly yours,

James A. Lowe

JAL:pam

cc:          Clients (via email)



1

2                                              *E-FILED 4/15/2008*

3

4

5

6

7                                    NOT FOR CITATION

8                        IN THE UNITED STATES DISTRICT COURT

9                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                  SAN JOSE DIVISION

11    LOUIS VUITTON MALLETIER, S.A.,          No. C07-03952 JW (HRL)

12                  Plaintiff,                **ORDER GRANTING IN PART AND**
                                              **DENYING IN PART DEFENDANTS'**
13        v.                                  **MOTION TO COMPEL PLAINTIFF'S**
                                              **DEPOSITION**
14    AKANOC SOLUTIONS, INC., MANAGED
      SOLUTIONS GROUP, INC. STEVEN CHEN       **[Re: Docket No. 28]**
15    and DOES 1 THROUGH 10,

16                  Defendants.
                                       /
17

18        This is an action for alleged trademark and copyright infringement. Plaintiff Louis

19    Vuitton Malletier, S.A. claims that defendants bear contributory and vicarious liability because

20    they provide internet hosting services for a number of websites that sell counterfeit

21    merchandise.

22        Pursuant to Fed. R. Civ. P. 30(b)(6), defendants served a notice for plaintiff's deposition

23    to take place in California. Reportedly, plaintiff will designate one individual, Mr. Livadkin, to

24    testify on its behalf as to all noticed topics of examination. Mr. Livadkin is identified as a

25    lawyer who lives in France and is responsible for plaintiff's global internet enforcement efforts.

26        The parties dispute where the deposition should be conducted. Plaintiff contends that

27    the deposition should take place telephonically or, if in person, then in France (its principal

28    place of business), in New York (an alleged place of business of defendants) or in

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  California at defendants' expense. Defendants maintain that the deposition should take place in

2  California – either here in the forum district, or in Southern California where lead counsel for

3  all parties are located. They further contend that plaintiff should bear the expense of bringing

4  Mr. Livadkin to California.

5       The matter has been fully briefed. The court finds it appropriate to rule without oral

6  argument, and the April 22, 2008 motion hearing is vacated. *See* Civ. L.R. 7-1(b). Upon

7  consideration of the papers filed by the parties, this court grants the motion in part and denies

8  the motion in part.

9       Pursuant to Fed. R. Civ. P. 30(b)(4), the court may, upon motion, order that a deposition

10  be taken by telephone or other remote means. For purposes of this rule, and Fed. R. Civ. P.

11  28(a), 37(a)(2) and 37(b)(1), "the deposition takes place where the deponent answers the

12  questions." *Id.* Here, there is no information presented by which this court may meaningfully

13  assess whether such means are feasible, practical, or fair. Accordingly, this court declines to

14  order that plaintiff's deposition be taken telephonically.

15       "A district court has wide discretion to establish the time and place of depositions."

16  *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994). Although there is a general

17  presumption that the deposition of a corporate party should be taken at its place of business, *see,*

18  *e.g., Thomas v. Int'l Business Machines*, 48 F.3d 478, 483 (10th Cir. 1995), that presumption is

19  not conclusive. The court also considers the convenience of the parties, relative hardships and

20  the economy obtained in attending a particular location. Relevant factors in making a

21  determination include the location of counsel for both parties, the number of corporate

22  representatives a party seeks to depose, whether the deponent often travels for business

23  purposes, the likelihood of significant discovery disputes arising which would require resolution

24  by the forum court, and the equities with respect to the nature of the claims and the parties'

25  relationship. *See Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 628-29 (C.D. Cal. 2005).

26       Lead counsel for both parties are located in California, and there is only one designee to

27  be deposed. Defendants' assertions that Mr. Livadkin likely travels for work extensively and

28  often are speculative. At the same time, however, plaintiff has not presented a declaration from

2

1   Mr. Livadkin to rebut those assertions; and, the court is underwhelmed by plaintiff's counsel's

2   assertion that he is unaware that Mr. Livadkin has traveled to California in the last several

3   years. Nor has plaintiff presented evidence to substantiate its assertions as to any burden that

4   would be imposed or that any such burden would be undue. Plaintiff does not deny that it is a

5   large corporation with business operations worldwide, including in California. It is of no

6   moment that plaintiff's operations in San Dimas, California reportedly have nothing to do with

7   intellectual property enforcement:

8           When a foreign corporation is doing business in the United States,
        is subject to the court's jurisdiction, and has freely taken advantage of our
9       federal rules of discovery, exceptions to the general rule on the location of
        depositions are often made. . . . The bottom line is that a foreign corporation,
10      subject to the in personam jurisdiction of this court, can be ordered under
        Rule 30(b)(6) to produce its officers, directors or managing agents in the
11      United States to give deposition testimony.

12   *See Custom Form Mfg. v. Omron Corp.*, 196 F.R.D. 333, 336 (N.D. Ind. 2000).

13          Plaintiff protests that it still prefers either New York or France over California because it

14   has an additional attorney in New York who may also attend the deposition. It has also

15   submitted documents (i.e., internet "whois" records) which, it asserts, show that defendants own

16   two servers located in New York. However, counsel's assertions lack foundation. Moreover,

17   defendants' president and founder attests that defendants have no business operations in New

18   York and have never utilized any third-party servers or other support anywhere outside

19   Fremont, California and San Jose, California. (*See* Chen Decl., ¶ 2). Having the deposition

20   proceed in New York may be preferable for plaintiff, but plaintiff's preferences are not the only

21   considerations here.

22          Based on the record presented, and after weighing competing legitimate interests and

23   possible prejudice, the court finds that it will be less costly and disruptive to have the deposition

24   proceed in California, than to have one or more attorneys for each party travel to France, or to

25   have Mr. Livadkin and one or more attorneys for each party travel to New York. *See*

26   FED.R.CIV.P. 1 ("These rules . . . should be construed and administered to secure the just,

27   speed, and inexpensive determination of every action and proceeding.") This court is

28   unpersuaded by plaintiff's assertion that, because defense counsel traveled from California to

*United States District Court*
*For the Northern District of California*

3

1 Texas for the deposition of plaintiff's investigator, Mr. Holmes, he can just as easily travel from
2 California to France or New York. Similarly unconvincing is plaintiff's suggestion that
3 defendants can readily bear the expense of travel to France or New York because their initial
4 disclosures indicate the existence of insurance coverage. While defendants have not
5 persuasively shown that discovery disputes are likely to arise, the court generally agrees that
6 disputes may be handled more efficiently if the deposition proceeds in California.

7      Accordingly, IT IS ORDERED THAT plaintiff's deposition shall take place in Southern
8 California where all counsel are located (or, alternatively, here in the forum district if the parties
9 so choose). Nevertheless, the parties shall split Mr. Livadkin's reasonable travel expenses. If
10 plaintiff wishes to have an additional attorney from New York attend the deposition, it will bear
11 all expenses for that trip.

12 Dated:   April 15, 2008

13
14 HOWARD R. LLOYD
     UNITED STATES MAGISTRATE JUDGE
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

4

1  **5:07-cv-3952 Notice has been electronically mailed to:**

2  J. Andrew Coombs andy@coombspc.com, jeremy@coombspc.com

3  James A. Lowe info@gauntlettlaw.com, arm@gauntlettlaw.com, bse@gauntlettlaw.com,
   jal@gauntlettlaw.com, pam@gauntlettlaw.com

4
   Annie S Wang annie@coombspc.com, andy@coombspc.com

5

6  **Counsel are responsible for distributing copies of this document to co-counsel who have
   not registered for e-filing under the court's CM/ECF program.**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

United States District Court

For the Northern District of California



| euro exchange rate | Search | Return to Ask.com  |

# x-rates.com

**Exchange Rates**
Quickly Find Foreign Exchange Trading
Solutions in Our Directory.
www.business.com

**Forex History – Free**
Deep FX history and live charts. Always on.
Always Free!
wwww.MarketBrowser.com

**US Dollar Cro**
Unmatched Exc
Free Money Tra
Remit2India.co

## Menu

. Currency Calculator
. Custom Table
. Historic Lookup
. Currency Photos
. Home

## More Links

. Euro Information
. Bookmark help
. Frequent questions
. Feedback
. Developers
. Advertising FAQ
. Advertise here
. Terms of Service

## results (1 EUR)

| 2008-04-21 April 21, Monday | 1.5881 USD |
| 2008-04-22 April 22, Tuesday | 1.601 USD |
| 2008-04-23 April 23, Wednesday | 1.5898 USD |
| 2008-04-24 April 24, Thursday | 1.5668 USD |
| 2008-04-25 April 25, Friday | 1.5634 USD |

invert target/base, 2008 graph

## historic lookup

| BASE | Euro |
| TARGET | American Dollar |

| MONTH | DAY | YEAR |
| 4 | 23 | 2008 |

go



**BECOME DEBT FREE!**

Get started
today with a
Free Consultation

**Zip Code:**
90001

**Phone No.:**

**E-Mail:**

Get Started

www.eDebtAssurance.com

advertise on this site
read our privacy policy

© 2007 x-rates.com, all rights
reserved
Terms of Use, Copyright and
Disclaimer

we like feedback
our answers to frequently asked
questions

| euro exchange rate | | Search | | Return to Ask.com  |

**x-rates.com**

**Exchange Rates**
Quickly Find Foreign Exchange Trading
Solutions in Our Directory.
www.business.com

**Forex History - Free**
Deep FX history and live charts. Always on.
Always Free!
wwww.MarketBrowser.com

**US Dollar Cr**
Unmatched Exc
Free Money Tra
Remit2India.co

## Menu

. **Currency Calculator**
. **Custom Table**
. **Historic Lookup**
. **Currency Photos**
. **Home**

### results (1 EUR)

| 2008-11-07 | November 07, Friday | 1.2777 USD |
| 2008-11-10 | November 10, Monday | 1.276 USD |

invert target/base, 2008 graph

## More Links

. **Euro Information**
. **Bookmark help**
. **Frequent questions**
. **Feedback**
. **Developers**
. **Advertising FAQ**
. **Advertise here**
. **Terms of Service**

### historic lookup

BASE    | Euro |

TARGET  | American Dollar |

| MONTH | DAY | YEAR |
| 11 | 10 | 2008 |

go

**Zip Code:**
90001

**Phone No.:**

**E-Mail:**

Submit

advertise on this site
read our privacy policy

© 2007 x-rates.com, all rights
reserved
Terms of Use, Copyright and
Disclaimer

we like feedback
our answers to frequently asked
questions