**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Brian S. Edwards (SBN 166258)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
jal@gauntlettlaw.com
bse@gauntlettlaw.com

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.
and Steve Chen

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A., | Case No.: C 07-3952 JW (HRL) |
| Plaintiff, | Hon. Magistrate Judge Howard R. Lloyd |
| vs. | **DEFENDANTS' OPPOSITION TO VUITTON'S ADMINISTRATIVE MOTION RE DISCOVERY ORDERS** |
| AKANOC SOLUTIONS, INC., et al., | |
| Defendants. | [Local Rule 7-11] |

163362.2-10562-002-11/12/2008 — **DEFENDANTS' OPPOSITION TO VUITTON'S ADMIN. MOTION RE DISCOVERY ORDERS -- C 07-03952 JW (HRL)**

Dockets.Justia.com

## I. VUITTON'S ADMINISTRATIVE MOTION IS IMPROPER

Vuitton's motion is improper under the Local Rules of the Northern District[1] because it seeks affirmative relief and therefore does not involve a "miscellaneous administrative matter." Vuitton's motion is also improper because the discovery issues and request for sanctions that form the basis of Vuitton's motion are outside the scope of L.R. 7-11 because these issues are governed by the Federal Rules of Civil Procedure.

This motion is also improper in light of the Court's July 15, 2008 order which states that, in the event that the parties are unable to mutually agree to an inspection protocol, each party "shall submit its proposed protocol for this court's consideration." The court's order does not authorize the filing of a motion seeking affirmative relief; it merely authorizes both parties to file their respective protocols. Vuitton's motion goes beyond what the Court's order provides.

Vuitton's motion also violates L.R. 7-11. L.R. 7-11(a) provides that a motion for administrative relief may not exceed 5 pages (not counting declarations and exhibits) and must be accompanied by a proposed order. Vuitton's motion is 7 pages (not counting declarations and exhibits) and is not accompanied by a proposed order.

## II. VUITTON'S PROPOSED INSPECTION PROTOCOL IS DEFICIENT AND INCOMPLETE

Vuitton has not brought this improper motion because of Defendants' failure to cooperate. Vuitton has not proposed a real protocol for inspection and refuses to consider any of Defendants' suggested additions to its initial proposed protocol, which is overly vague, lacks crucial details and contains objectionable notice requirements.

### 1. Vuitton's Proposed Protocol Fails to Distinguish Between Private and Publically Available Content

As Defendants explained in their October 24, 2008 letter,[2] the foremost concern with Vuitton's initial proposed protocol is that it does not explain what will be done or how it will be

---

[1] L.R. 7-11 states: "The Court recognizes that during the course of case proceedings a party may require a Court order with respect to miscellaneous administrative matters, not otherwise governed by a federal statute, Federal or local rule or standing order of the assigned judge. These motions would include matters such as motions to exceed otherwise applicable page limitations or motions to file documents under seal, for example."

done. Vuitton's suggested protocol fails to discuss the specific means that Vuitton intends to employ in order to limit the server inspection to "publically available information." That is essential to comply with Judge Ware's August 7, 2008 order.[3] That order states:

> Defendants are not required to disclose private information stored on their computers, they are only required to disclose **information that the third-parties have made available to the public**.[4]

> [T]he discovery is limited to publically available contents.

Vuitton's proposed protocol is entirely different because it lacks sufficient detail for compliance with the District Court's order. Vuitton's protocol only states that "Guidance Software [Vuitton's forensic examiner] will comply with the Court's order and referenced Exhibits." This amounts to saying "Trust us." This is not a sufficient protocol. "Trust us" not to access or copy private content of third parties is not an explanation of how the court's requirement will be met. A protocol is a rule or process for properly accomplishing a task.

As the Court's order makes clear, the protocol requires distinguishing between private and publically available contents in the inspection. In its October 24, 2008 letter, Defendants again asked Vuitton *how* (i.e., by what means) their forensic examiner would distinguish between private information and publically available contents and thereby not access private data of third parties.

Vuitton has improperly construed this reasonable and logical question as a "refusal to cooperate in developing a protocol." Vuitton erroneously claims that Defendants have "proposed no changes to the proposed protocol." But Defendants' October 24, 2008 letter is evidence that Defendants *have* suggested additions to Vuitton's initial proposed protocol, requesting that Vuitton's forensic expert revise this proposed protocol to list the particular methods that Vuitton's forensic expert will use to comply with the Court's order.

Vuitton's complaint that Defendants have not submitted a "counter" protocol is illogical.

---

[2] Declaration of James A. Lowe ("Lowe Decl.") ¶4

[3] Lowe Decl ¶5

[4] Court's Aug 7, 2008 Order 2:23-25

1   Defendants did not submit a counter proposal because they have not retained a forensic expert[5] and
2   they do not know of a means of limiting searches to publicly available content.[6] Because
3   Defendants do not know how to limit the searches to publically available information, they have
4   requested clarifications to Vuitton's initial protocol so that Vuitton's expert can explain how the
5   inspection will be conducted in such a way to comply with the Court's August 7, 2008 order.

**2. Vuitton's Proposed Protocol Includes Unreasonable Notice Requirements**

Defendants' October 24, 2008 letter explains that their customers should have notice 24 hours prior to a server interruption instead of the 12 hours notice that Vuitton proposes. This server interruption requires enough time to devise entire contingency plans for a service interruption that will effectively shut down business operations of innocent third parties.

Additionally, the time difference between Defendants' time zone and their China-based customers' time zone makes it such that 12 hours may not be sufficient time to allow them to plan for contingencies for a server interruption. This would unnecessarily harm third parties.

Defendants also requested that Vuitton adjust the portion of its proposed protocol that prohibits Defendants from informing or suggesting to their customers the purpose of the inspection. Defendants' business is dependent on their ability to offer uninterrupted Internet hosting services and placing such a restriction on Defendants' notices to their customers will negatively affect their business relationships. In order to maintain their reputation as providers of quality Internet hosting services, our clients seek to minimize any disruptions of service to their customers, and if any such disruptions are necessary, to sufficiently explain the bases for these disruptions to assuage any of their customers' concerns as to the quality of Defendants' services. There has never been such a server interruption as Vuitton is proposing and it will shock customers when it happens.

A "generic" disruption notice would likely cause website operators to speculate as to the cause of the interruption. This speculation would not only harm Defendants' business reputation, it would likely cause any potentially offending website operators to remove content anyway.

---

[5] Contrary to ¶4 of the Declaration of J. Andrew Coombs ("Coombs Decl."), Defendants have not retained an expert. Mr. Coombs may be referring to Defendants' employee, Andrew Cheng. He is not a forensic expert but he manages Defendants' network operation.

Defendants' October 24, 2008 letter was intended to assist in creating a mutually acceptable protocol that would address Defendants' concerns while fully complying with Judge Ware's August 7, 2008 order. Defendants have not been able to determine technological methods of performing a search that distinguishes between private information and publically available contents. Vuitton's lawyers and its expert refuse to explain how they propose to proceed. Instead of revising its proposed protocol to address these concerns, Vuitton filed an improper motion.

On November 12, 2008, Defendants proposed to Vuitton an inspection protocol that might serve both parties because it circumvents the parties' disagreements on what constitutes "publically available" content while allowing this server inspection process to move forward.[7]

## III. VUITTON'S REQUEST FOR SANCTIONS IS IMPROPER

Vuitton has no basis for requesting any discovery sanctions in this case because Defendants have not failed to obey any court orders. *See* Fed. R. Civ. P. 37(b)(2)(A). Since the Court's orders of July 15, 2008 and August 7, 2008, Defendants have been proactive in initiating the process of crafting a mutually agreeable protocol.

On August 8, 2008, *the day after* Judge Ware issued his order overruling Defendants' objections, Defendants sent a letter to Vuitton discussing issues to be address in a proposed protocol.[8] Defendants participated in a conference call with Vuitton's counsel and forensic expert on August 14, 2008. Defendants subsequently sent follow-up letters[9] to Vuitton's counsel on September 5, 2008, September 19, 2008, September 26, 2008, and October 13, 2008, requesting that Vuitton provide a proposed protocol. Vuitton did not send a substantive reply to these communications until October 14, 2008 when it provided its first proposed but incomplete protocol. Defendants have not only been cooperative in this process, they have been proactive, and it makes no sense for Vuitton to request sanctions when it provided its first protocol on October 14, 2008. Accordingly, the Court should not grant Vuitton's request for sanctions.

---

[6] Declaration of Christopher Lai ¶¶4-6.

[7] Lowe Decl ¶12.

[8] Lowe Decl ¶6

[9] Lowe Decl. ¶¶7-10.

## IV. VUITTON NEVER PROVIDED EVIDENCE OF THE ACTUAL COSTS THAT IT SEEKS TO HAVE REIMBURSED

Defendants have not paid one-half of the actual, reasonable out-of-pocket expenses incurred in producing Vuitton's Rule 30(b)(6) witness because Defendants did not receive any actual evidence (i.e. bills) of the travel expenses incurred until November 11, 2008. Defendants sent a letter to Vuitton on August 22, 2008 regarding this very issue,[10] but they did not receive this evidence until a day after Vuitton filed its motion. Vuitton did not even attach a copy of these allegedly responsive documents to its motion. Now that Defendants have received these documents, they will review them for reasonableness and submit them to the defending insurer for partial reimbursement.

## V. CONCLUSION

The Court should deny Vuitton's Administrative Motion. It is procedurally improper, requesting relief unavailable in such a motion. It is substantively improper because it seeks to unilaterally impose a defective protocol contrary to the Court's orders. It is not supported by proper evidence. It improperly seeks sanctions.

The Court should not adopt Vuitton's proposed protocol because it is overly vague and does not describe the methods that Vuitton will utilize to comply with the Court's August 7, 2008 order. The Court should deny Vuitton's request for sanctions because Defendants have fully participated in crafting a mutually agreeable inspection protocol and have not failed to obey a Court order.

Dated: November 12, 2008      **GAUNTLETT & ASSOCIATES**

By: /s/ James A. Lowe
    David A. Gauntlett
    James A. Lowe
    Brian S. Edwards

Attorneys for Defendants
AKANOC SOLUTIONS, INC., MANAGED
SOLUTIONS GROUP, INC., AND STEVE CHEN

---

[10] Lowe Decl. ¶11.