J. Andrew Coombs (SBN 123881)
andy@coombspc.com
Annie S. Wang (SBN 243027)
annie@coombspc.com
J. Andrew Coombs, A Professional Corporation
517 E. Wilson Ave., Suite 202
Glendale, California 91206
Telephone:    (818) 500-3200
Facsimile:    (818) 500-3201

Attorneys for Plaintiff
Louis Vuitton Malletier, S.A.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | | |
|---|---|---|
| Louis Vuitton Malletier, S.A., | ) | Case No. C07-03952 JW (HRL) |
| | ) | |
| Plaintiff, | ) | PLAINTIFF'S [PROPOSED] JURY |
| v. | ) | INSTRUCTIONS |
| | ) | |
| Akanoc Solutions, Inc., Managed Solutions | ) | Final Pre-Trial Conference |
| Group, Inc., Steven Chen and Does 1 through | ) | Date:   March 23, 2009 |
| 10, inclusive, | ) | Time:   3:00 p.m. |
| | ) | Court:  Hon. James Ware |
| Defendants. | ) | |

TO THE COURT:

Plaintiff Louis Vuitton Malletier, S.A. ("Plaintiff") respectfully submits the following

[Proposed] Jury Instructions.

Plaintiff requests the right to amend or supplement these proposed jury instructions at any

time during the course of the trial until the jury retires to conform to the proofs presented, the

issues developed and the defenses asserted during the trial.  These proposed jury instructions are

also submitted subject to the Plaintiff's reservation of all rights under the Federal Rules of Civil

Procedure.

DATED: February 23, 2009          J. Andrew Coombs, A Professional Corp.

                                   __/s/ J. Andrew Coombs_____
                                        J. Andrew Coombs
                                        Annie S. Wang
                                   Attorneys for Plaintiff Louis Vuitton Malletier S.A.

# TABLE OF CONTENTS

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 1 | Duty of Jury | 9th Cir. Manual 1.1B | **11** |
| 2 | Claims and Defenses | 9th Cir. Manual No. 1.2 | **12** |
| 3 | Burden of Proof – Preponderance of Evidence | 9th Cir. Manual No. 1.3 | **13** |
| 4 | What is Evidence | 9th Cir. Manual 1.6 | **14** |
| 5 | What is Not Evidence | 9th Cir. Manual 1.7 | **15** |
| 6 | Direct and Circumstantial Evidence | 9th Cir. Manual 1.9 | **16** |
| 7 | Ruling on Objections | 9th Cir. Manual 1.10 | **17** |
| 8 | Credibility of Witnesses | 9th Cir. Manual 1.11 | **18** |
| 9 | Conduct of the Jury | 9th Cir. Manual 1.12 | **19** |
| 10 | Stipulations of Fact | 9th Cir. Manual 2.2 | **20** |
| 11 | Use of Requests for Admission | 9th Cir. Manual 2.10 (modified) | **21** |
| 12 | Charts and Summaries Not Received in Evidence | 9th Cir. Manual 2.12 | **22** |
| 13 | Charts and Summaries in Evidence | 9th Cir. Manual 2.13 | **23** |
| 14 | Two or More Parties - Different Legal Rights | 9th Cir. Manual 1.5 | **24** |
| 15 | Duties of Jury to Find Facts and Follow Law | | **25** |
| 16 | Duty to Deliberate | 9th Cir. Manual 3.1 | **26** |
| 17 | Definition – Trademark- Counterfeit Mark | *Model Instructions*, No. 15.1 (modified); *State of Idaho Potato Commission v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) | **27** |
| 18 | Trademark Liability – Theories and Policies | 9th Cir. Manual 15.4 | **30** |
| 19 | Direct Infringement Required | *Perfect 10 v. Visa Int'l Serv. Assoc.*, 494 F.3d | **31** |

| | | | |
|---|---|---|---|
| | | 788, 795, 807 (9th Cir. 2007); Judge Ware's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment 5:7-9, *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., et al.*, 5:07-cv-03952-JW (Filed 12/23/08) (hereinafter "Summary Judgment Ruling") | |
| 20 | Trademark Counterfeiting- Elements and Burden of Proof | See 15 U.S.C. Section 1114(1)(a); 15 U.S.C. § 1116 (d)(1)(B); 5 U.S.C. 1117 (c); *Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.* 106 F.3d 894, 899 (9th Cir. 1997); Patterned after Ninth Circuit Manual of Model Jury Instruction 15.5 Infringement— Elements and Burden of Proof—Trademark; *State of Idaho Potato Commission v. G &T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) | **32** |
| 21 | Infringement – Elements — Presumed Validity and Ownership- Registered Trademark | 9th Cir. Manual 15.7 | **33** |
| 22 | Presumption of Confusion When Dealing with Counterfeit Marks | *Brookfield Communs. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999); *Shakespeare Co. v. Silstar Corp. of Am.*, 110 F.3d 234, 241 (4th Cir. 1997); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. | **34** |

| | | | |
|---|---|---|---|
| | | 1987); *see Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 256-57 (9th Cir. 1986); *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) citing *Phillip Morris USA Inc. v. Felizardo*, 2004 U.S. Dist. LEXIS 11154, at *18 (S.D.N.Y. June 18, 2004); *Phillip Morris USA Inc. v. Felizardo*, 2004 U.S. Dist. LEXIS 11154, at *18 (S.D.N.Y. June 18, 2004**);** *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003); *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1007 fn. 11 (S.D. Tex. 2000); *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1346 (E.D.N.Y. 1994) | |
| 23 | Contributory Trademark Counterfeiting | *Model Instruction*, No. 15.19, modified consistent with *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264-265 (9th Cir.1996); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 983-84 (9th Cir. 1999); *see* 4 J. Thomas McCarthy, Trademarks | **35** |

| | | and Unfair Competition § 25.17 (4th ed. 2001); Summary Judgment Ruling 15:2-18 | |
|---|---|---|---|
| 24 | Contributory Trademark Counterfeiting - Knowledge | *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020-21 (9th Cir. 2001); *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 907 F. Supp. 1361, 1374 (N.D. Cal. 1995); Summary Judgment Ruling 8:9-20 | **37** |
| 25 | Contributory Trademark Counterfeiting – Material Contribution | *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 985 (9th Cir. 1999); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 265 (9th Cir.1996) v. Summary Judgment Ruling 16:5-18 – 17-1:8 | **38** |
| 26 | Trademark Damages —Statutory Damages | 15 U.S.C. § 1117 | **39** |
| 27 | Purpose of Trademark Statutory Damages – Factors to Consider | *Gucci America, Inc. v. Duty Free Apparel, Ltd. d/b/a Duty Free Apparel, Inc., et al.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004); *Fitzgerald Pub. Co., Inc., v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986); *see* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04 [E] [1], at 14-69 (2003); 15 U.S.C. § 1117(b); S. Rep. No. 104-177, at 10 (1995) | **40** |

| 28 | Copyright – Defined | *9th Cir. Manual 17.1* | **41** |
|----|---------------------|------------------------|--------|
| 29 | Direct Infringement Required | *Perfect 10 v. Visa Int'l Serv. Assoc.*, 494 F.3d 788, 795, 807 (9th Cir. 2007); 17 U.S.C. §§ 106, 501; Summary Judgment Ruling 5:7-9 | **42** |
| 30 | Derivative Liability— Contributory Infringement Elements and Burden of Proof | *Model Instruction*, No. 17.21; *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001) *citing Religious Tech. Center, et al. v. Netcom On-Line Communication Services, Inc., et al.*, 907 F. Supp. 1361, 1374 (N.D. Cal. 1995) | **43** |
| 31 | Copyright—Knowledge | *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020-21 (9th Cir. 2001); *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 907 F. Supp. 1361, 1374 (N.D. Cal. 1995); *Fonovisa v. Cherry Auction, Inc.*, 76 F.3d 259, (9th Cir. 1996); Summary Judgment Ruling 8:6-20 | **44** |
| 32 | Copyright—Material Contribution | *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019-1021 (9th Cir. 2001) *citing Religious Tech. Center, et al. v. Netcom On-Line Communication Services, Inc., et al.*, 907 F. Supp. 1361, 1374 (N.D. Cal. 1995); *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th | **45** |

| | | | Cir. 2007); Summary Judgment Ruling 10:8-20 | |
|---|---|---|---|---|
| 33 | Copyright – Damages | 9th Cir. Manual 17.22 | | **46** |
| 34 | Copyright—Damages—Defendants' Profits | 9th Cir. Manual 17.24 (modified) | | **47** |
| 35 | Copyright Damages – Statutory Damages | 9th Cir. Manual 17.25 | | **48** |
| 36 | Purposes and Functions of Copyright and Statutory Damages | *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 106-107 (1919); U.S. Const. Art. I, § 8; *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998); *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984); *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231-232, 73 S.Ct. 222 (1952); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113-14 (2d Cir. 2001); *Los Angeles News Serv. v. Reuters TV Int'l,* 149 F.3d 987, 996 (9th Cir. 1998); *Broadcast Music v. Star Amusements,* 44 F.3d 485, 489 (7th Cir.1995);*Chi-Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1229  (7th Cir. 1991); *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 592 F.2d 651, 657 (2d | | **49** |

| | | | |
|---|---|---|---|
| | | Cir. 1978)*Yurman Design, Inc. v. PAJ, Inc.,* 93 F. Supp. 2d 449, 462 (S.D.N.Y. 2000), *rev'd on other grounds,* 262 F.3d 101 (2d Cir. 2001) | |
| 37 | The Compensation Purpose of Statutory Damages | 17 U.S.C. § 504; *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 352 (1998); *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 113 (2d Cir. 2001); *Los Angeles News Serv. v. Reuters TV Int'l,* 149 F.3d 987, 996 (9th Cir. 1998); *Broadcast Music v. Star Amusements,* 44 F.3d 485, 489 (7th Cir.1995); *Chi-Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1229 (7th Cir. 1991); *Fitzgerald Pub. Co. v. Baylor Pub. Co.,* 807 F.2d 1110, 1117 (2d Cir. 1986); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978); *Latin Am. Music Co. v. Spanish Broadcasting Sys.,* 866 F. Supp. 780, 782 (S.D.N.Y.1994); *Bly v. Banbury Books, Inc.,* 638 F. Supp. 983, 987 (E.D.Pa. 1986); *Lauratex Textile Corp. v. Allton Knitting Mills,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981) | **51** |
| 38 | The Deterrence Purpose of Statutory Damages | *F.W. Woolworth Co. v. Contemporary Arts,* | **52** |

| | | | | |
|---|---|---|---|---|
| | | | *Inc.,* 344 U.S. 228, 233 (1952); *Reebok International, Ltd., et al. v. Marnatech Enterprises, Inc., et al.,* 970 F.2d 552, 559 (9th Cir. 1992); *N.A.S. Import, Corp. v. Chenson Enters., Inc.,* 968 F.2d 250, 252 (2d Cir. 1992); *Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1336-37 (9th Cir. 1990); *International Korwin Corp. v. Kowalczyk,* 855 F.2d 375, 383 (7th Cir. 1988); *Fitzgerald Pub. Co. v. Baylor Pub. Co.,* 807 F.2d 1110, 1117 (2d Cir. 1986); *National Football League v. Primetime 24 Joint Venture,* 131 F. Supp. 2d 458, 473-474 (S.D.N.Y. 2001); *Engel v. Wild Oats, Inc.,* 644 F. Supp. 1089, 1091, 1092 (S.D.N.Y. 1986); Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, H.R. Report 106-216 at 3 (1999) | |
| 39 | The Punishment Purpose of Statutory Damages | | *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 352, 118 S.Ct. 1279 (1998); *F.W. Woolworth v. Contemporary Arts, Inc.,* 344 U.S. 228, 233 (1952); *Los Angeles News Serv. v. Reuters TV Int'l,* 149 F.3d 987, 996 (9th Cir. 1998);* | **<u>54</u>** |

| | | | |
|---|---|---|---|
| | | *Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co., Inc.,* 807 F.2d 1110, 1117 (2d Cir. 1986); *Lyons Partnership, L.P. v. AAA Entertainment Inc.,* 53 U.S.P.Q.2d 1397, 1405 (S.D.N.Y. 1999) | |
| 40 | Copyright Damages – Innocent Infringement | 9th Cir. Manual 17.26 | **56** |
| 41 | Copyright Damages – Willful Infringement | 9th Cir. Manual 17.27 | **57** |
| 42 | Domain Names/IP Addresses  Defined | http://en.wikipedia.org | **58** |
| 43 | Pinging Defined | http://en.wikipedia.org | **59** |

# PRELIMINARY INSTRUCTIONS

## JURY INSTRUCTION No. 1

## DUTY OF JURY

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

You must not infer from these instructions or from anything I may say or do as indicating I have an opinion regarding the evidence or what your verdict should be. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions you must follow all of them and not single out some and ignore others, they are all important.

*Ninth Circuit Manual of Model Civil Jury Instructions* (2007 ed.) (Additions incorporated as reflected at http://207.41.19.15/web/sdocuments.nsf/civ?OpenView&Start=1&Count=250&Expand=19#19) ("Model Instructions") Instruction No. 1.1B

**JURY INSTRUCTION No. 2**

**CLAIMS AND DEFENSES**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiff claims that it has rightfully-obtained and federally registered trademarks and copyrights and that such are valuable property rights. By this action, Plaintiff seeks to hold liable Internet Service Providers and its principal for the substantial sales of counterfeit Louis Vuitton, merchandise that has occurred, and is continuing to occur on websites hosted on Defendants' servers and to which Internet traffic is directed by Defendants' routers. The plaintiff has the burden of proving these claims.

The defendant denies those claims [and also contends that [*defendant's affirmative defenses*]].

*Model Instructions*, No. 1.2

**JURY INSTRUCTION No. 3**

**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**


When a party has the burden of proof on any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.


You should base your decision on all of the evidence, regardless of which party presented it.

*Model Instructions,* No. 1.3

**JURY INSTRUCTION No. 4**

**WHAT IS EVIDENCE**


The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits which are received into evidence; and

(3) any facts to which the lawyers have agreed..


     *Model Instructions,* No. 1.6

**JURY INSTRUCTION No. 5**

**WHAT IS NOT EVIDENCE**


In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)      Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I [give] [have given] a limiting instruction, you must follow it.

(4)     Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.


*Model Instructions*, No. 1.7

**JURY INSTRUCTION No. 6**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**


Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to be given to any evidence.


*Model Instructions*, No. 1.9

**JURY INSTRUCTION No. 7**

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what answer might have been given.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case you must not consider the evidence that I told you to disregard.

*Model Instructions*, No. 1.10

**JURY INSTRUCTION No. 8**

**CREDIBILITY OF WITNESSES**


In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness' memory;

(3) the witness' manner while testifying;

(4) the witness' interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness' testimony;

(6) the reasonableness of the witness' testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.


*Model Instructions*, No. 1.11

## JURY INSTRUCTION No. 9

## CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case please let me know about it immediately;

Second, do not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the clerk to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide that case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

*Model Instruction,* No. 1.12

**JURY INSTRUCTION No. 10**

**STIPULATIONS OF FACT**


The parties have agreed to certain facts that have been stated to you. You should therefore treat these facts as having been proved.


*Model Instructions*, No. 2.2

## JURY INSTRUCTION No. 11

## USE OF REQUESTS FOR ADMISSION

Evidence is now to be presented to you in the form of answers of one of the parties to requests for admission submitted by the other side. These answers have been given in writing and under oath, before the actual trial, in response to questions which were submitted in writing under established court procedures. The answers are entitled to the same consideration and are to be judged as to credibility and weight, and otherwise considered by you insofar as possible, as if the answers were made from the witness stand.

*Model Instructions*, No. 2.10 (modified)

## JURY INSTRUCTION No. 12

## CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

*Model Instructions*, No. 2.12

## JURY INSTRUCTION No. 13

## CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

*Model Instructions*, No. 2.13

**JURY INSTRUCTION No. 14**

**TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS**


You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.


*Model Instructions*, No. 1.5

## INSTRUCTIONS AT END OF CASE

### JURY INSTRUCTION No. 15

### DUTIES OF JURY TO FIND FACTS AND FOLLOW LAW

Members of the jury, now that you have heard all the evidence and the arguments of the attorneys, it is my duty to instruct you on the law which applies to this case. A copy of these instructions will be available in the jury room for you to consult if you find it necessary.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return—that is a matter entirely up to you.

# JURY INSTRUCTION No. 16

## DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

*Model Instructions*, No. 3.1

## JURY INSTRUCTION No. 17

## DEFINITION—TRADEMARK—COUNTERFEIT MARK

A trademark is any word, name, symbol, device or any combination thereof, used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods.

The trademarks involved in this trial are:

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) in a Circle Design | 286,345 |  | 18 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Design | 297,594 |  | 18 |
| LOUIS VUITTON | 1,045,932 | LOUIS VUITTON | 18 |
| Louis Vuitton (Interlocked Letters) Design | 1,519,828 |  | 18 |
| LOUIS VUITTON MALLETIER A PARIS in Rectangle Design | 1,615,681 |  | 16, 18 |

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) on Epi Leather Design | 1,655,564 |  | 18 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Pattern Design | 1,770,131 |  | 25 |
| Louis Vuitton (Interlocked Letters) Design | 1,794,905 |  | 16, 25 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Design | 1,875,198 |  | 16 |
| Louis Vuitton (Interlocked Letters) | 1,938,808 |  | 14, 24 |
| LOUIS VUITTON World Mark | 1,990,760 | LOUIS VUITTON | 16, 18, 24, 25 |

| Trademark | Registration Number | Trademark Picture | Class of Goods |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) Design | 2,291,907 |  | 34 |
| LOUIS VUITTON | 2,303,212 | LOUIS VUITTON | 34 |
| Louis Vuitton (Interlocked Letters) Design | 2,361,695 |  | 25 |
| LOUIS VUITTON PARIS and Damier (pattern design) | 2,378,388 |  | 18 |

A "counterfeit" mark is an identical, non-genuine mark, of one in use by Plaintiff and registered in the same class of goods complained of without Plaintiff's prior authorization.

*Model Instructions,* No. 15.1 (modified); *State of Idaho Potato Commission v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005).

# JURY INSTRUCTION No. 18

## TRADEMARK LIABILITY—THEORIES & POLICIES

The trademark laws balance three often-conflicting goals: 1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; 2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and 3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In my instructions, I will identify types of facts you are to consider in deciding if the defendant is liable to the plaintiff for violating the trademark law. These facts are relevant to whether the defendant is liable for infringing plaintiff's registered trademark rights, by using a trademark in a manner likely to cause confusion among consumers.

*Model Instructions*, No. 15.4

# JURY INSTRUCTION No. 19

## DIRECT INFRINGEMENT REQUIRED

Contributory trademark counterfeiting requires some underlying direct infringement, including counterfeiting, by a third party whom I shall refer to as the Website Operator.

> *Perfect 10 v. Visa Int'l Serv. Assoc.*, 494 F.3d 788, 795, 807 (9th Cir. 2007); Judge Ware's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment 5:7-9, *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., et al.*, 5:07-cv-03952-JW (Filed 12/23/08) (hereinafter "Summary Judgment Ruling").

**JURY INSTRUCTION No. 20**

**TRADEMARK COUNTERFEITING**

**ELEMENTS AND BURDEN OF PROOF**

On the plaintiff's claim for contributory trademark counterfeiting, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence that:

(1) Website Operator intentionally used a counterfeit mark in commerce- defining "counterfeit mark" as, an identical, non-genuine mark, of one in use by Plaintiff and registered in the same class of goods complained of without Plaintiff's prior authorization;

(2) Knowing the mark was counterfeit;

(3) In connection with the sale, offering for sale, or distribution of goods; and

(4) Its use was likely to confuse or deceive.

If you find that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendants.

See 15 U.S.C. Section 1114(1)(a); *Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.* 106 F.3d 894, 899 (9th Cir. 1997) ("Section 1114 of the Lanham Act, which establishes the trademark counterfeiting cause of action, prohibits the use of 'any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale ... of any goods ... [where] such use is likely to cause confusion ... or to deceive.'") Patterned after Ninth Circuit Manual of Model Jury Instruction 15.5 Infringement—Elements and Burden of Proof—Trademark; *State of Idaho Potato Commission v. G &T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); Section 15 U.S.C. 1117 (c) refers to the definition in 15 U.S.C. § 1116 (d)(1)(B) as one that "is registered on the principal register in the United States Patent and Trademark Office for such foods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered."

# JURY INSTRUCTION No. 21

## INFRINGEMENT—ELEMENTS—PRESUMED

## VALIDITY AND OWNERSHIP—REGISTERED TRADEMARK

I gave you instruction number 20 regarding the elements of trademark counterfeiting that the plaintiff must prove by a preponderance of the evidence that the trademark is valid and protectable and that the plaintiff owns the trademark.

One way for the plaintiff to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Exhibits 451-465 are certificates of registration from the United States Patent and Trademark Office.

In this case, there is no dispute that the plaintiff received registrations for the trademarks identified during these proceedings and including the LOUIS VUITTON, LV and Daumier pattern trademarks and these registrations are now "incontestable" under the trademark laws. This means that the plaintiff's registration of the trademark is conclusive evidence of plaintiff's ownership of those trademarks and that the trademarks are valid and protectable.

*Model Instructions,* No. 15.7

# JURY INSTRUCTION No. 22

## PRESUMPTION OF CONFUSION WHEN DEALING WITH COUNTERFEIT MARKS

There is a presumption of a likelihood of confusion, or a likelihood of confusion as a matter of law, when the offending mark is a counterfeit mark, or a mark virtually identical to a previously registered mark coupled with the intent to pass off or borrow from established good will.

*Brookfield Communs. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."); *Shakespeare Co. v. Silstar Corp. of Am.*, 110 F.3d 234, 241 (4th Cir. 1997) ("Our cases make clear, however, that that presumption arises only where the intentional copying is motivated by an "intent to exploit the good will created by an already registered trademark""); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion."); *see Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 256-57 (9th Cir. 1986) (reversing a district court's finding of no likelihood of confusion even though the six other likelihood of confusion factors all weighed against a finding of likelihood of confusion); *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) citing *Phillip Morris USA Inc. v. Felizardo*, 2004 U.S. Dist. LEXIS 11154, at *18 (S.D.N.Y. June 18, 2004) ("However, "in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination . . . because counterfeit marks are inherently confusing."); *Phillip Morris USA Inc. v. Felizardo*, 2004 U.S. Dist. LEXIS 11154, at *18 (S.D.N.Y. June 18, 2004) ("[C]ounterfeit marks are inherently confusing."**;** *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003); ("[C]ounterfeits by their very nature, cause confusion…Indeed, confusing the customer is the whole purpose of creating counterfeit goods."); *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1007 fn. 11 (S.D. Tex. 2000) ("However, in the case of a counterfeit mark, likelihood of confusion is clear."); *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1346 (E.D.N.Y. 1994) ("Moreover, confusion is simply inevitable since the parties are selling the same products in the same channels of commerce under the guise of the identical Dial-A-Mattress mark.").

# JURY INSTRUCTION No. 23

## CONTRIBUTORY TRADEMARK COUNTERFEITING

A person is liable for trademark counterfeiting by another if the person sells or supplies goods or services to another knowing or having reason to know that the other person will use the goods or services to infringe the plaintiff's trademark.

The plaintiff has the burden of proving each of the following by a preponderance of the evidence:

1.    defendants supplied the goods and services to the Website Operators for any of the various infringing websites identified during the trial;

2.    any of those Website Operators used the goods and services supplied by the defendants to counterfeit the plaintiff's trademarks;

3.    defendants knew or should have known any of those Website Operators would use the goods or services to counterfeit plaintiff's trademarks; and

4.    the plaintiff was damaged by the counterfeiting.

The showing required for the continued provision of a service to a known infringer is less restrictive than when dealing with the continued sale of an infringing product. In cases where an internet service provider may not have supplied a "product" to infringing third parties, you should "consider the extent of control exercised by the defendant over the third party's means of infringement" so that a plaintiff must only show that in addition to some form of knowledge, defendant's had direct control and monitoring of the instrumentality used by the third party to infringe the plaintiff's mark.

If you find that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendants.

*Model Instruction,* No. 15.19, modified consistent with *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264-265 (9th Cir.1996) (flea market liable for contributory infringement if it supplied the necessary market place for the sale of infringing products); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 983-84 (9th Cir. 1999); *see* 4 J. Thomas McCarthy, Trademarks and Unfair Competition § 25.17 (4th ed. 2001) (discussion of contributory infringement); Summary Judgment Ruling 15:2-18.

**JURY INSTRUCTION No. 24**

**CONTRIBUTORY TRADEMARK COUNTERFEITING – KNOWLEDGE**


The required knowledge for contributory trademark counterfeiting can be actual or constructive.

Actual knowledge exists where it can be shown by a defendant's conduct or statements that it actually knew of specific instances of direct infringement.

Constructive knowledge exists where it can be shown a defendant should have known of the direct infringement. For example, if a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement.

Either actual or constructive knowledge is sufficient.

Internet service providers can not remain willfully blind to trademark infringement taking place on their servers. If you find that Defendants knew third parties were infringing Plaintiff's trademarks and remained willfully blind despite the ability to terminate their services to those third-parties, your verdict must be for the Plaintiff.


*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020-21 (9th Cir. 2001); *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 907 F. Supp. 1361, 1374 (N.D. Cal. 1995); Summary Judgment Ruling 8:9-20.

# JURY INSTRUCTION No. 25

## CONTRIBUTORY TRADEMARK COUNTERFEITING – CONTROL

"The guiding principle of holding a flea market operator liable for contributory infringement is that a host who permits others to use his premises cannot remain "willfully blind" to their directly infringing acts." "Defendants' activity as Internet service providers is like the flea market proprietors" in that they "physically host websites on their servers and route internet traffic to and from those websites. This service is the Internet equivalent of leasing real estate."

If you find Defendants remained "willfully blind" to trademark infringement taking place on their servers despite the ability to terminate their services to infringing third parties, your verdict should be for the Plaintiff.

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 985 (9th Cir. 1999); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 265 (9th Cir.1996) v. Summary Judgment Ruling 16:5-18 – 17-1:8.

# JURY INSTRUCTION No. 26

## TRADEMARK DAMAGES—STATUTORY DAMAGES

If you determine that the defendants are liable for contributory trademark counterfeiting, you must consider the damages the defendants must pay to the plaintiff. The plaintiff seeks a statutory damage award, established by Congress for each work infringed. Its purpose is to penalize the infringer and deter future violations of the trademark laws.

You may award as statutory damages for the infringement of the plaintiff's trademarks in an amount that you feel is just under the circumstances, provided that amount is not more than $100,000 for each trademark per type of good counterfeited. In this case, the plaintiff contends that the defendants infringed fifteen of the plaintiff's trademarks.

The plaintiff contends that the defendants willfully contributed to counterfeiting of the trademarks. If the plaintiff proves by a preponderance of the evidence willful infringement, you may, but are not required to, increase the statutory damages for infringement of that work to a sum as high as $2,000,000 for each trademark per type of good counterfeited.

An infringement was willful when the defendant engaged in acts that contributed to counterfeiting of the trademarks, and knew that those actions may infringe the trademarks.

15 U.S.C. § 1117.

# JURY INSTRUCTION No. 27

## PURPOSE OF TRADEMARK STATUTORY DAMAGES – FACTORS TO CONSIDER

Congress added the statutory damages provision of the Lanham Act in 1995 because "counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept …, making proving actual damages in these cases extremely difficult if not impossible."

In determining an award for statutory damages these following factors may be used for guidance:

(1) the expenses saved and the profits reaped;

(2) the revenues lost by the plaintiff;

(3) the value of the trademark;

(4) the deterrent effect on others besides the defendants;

(5) whether the defendants' conduct was innocent or willful;

(6) whether defendants have cooperated in providing particular records from which to assess the value of the infringing material produced; and

(7) the potential for discouraging the defendants.

To the extent possible, statutory damages "should be woven out of the same bolt of cloth as actual damages."  Under the trademark laws, actual damages for a willful violation generally include three times the amount of the defendant's profits or the plaintiff's losses (whichever is greater), plus attorney's fees.

S. Rep. No. 104-177, at 10 (1995); *Gucci America, Inc. v. Duty Free Apparel, Ltd. d/b/a Duty Free Apparel, Inc., et al.,* 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004); *Fitzgerald Pub. Co., Inc., v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986); *see* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04 [E] [1], at 14-69 (2003); 15 U.S.C. § 1117(b).

**JURY INSTRUCTION No. 28**

**COPYRIGHT—DEFINED**

The copyrighted works involved in this trial are:

| Copyright | Registration No. | Date Published | Date Registered |
|---|---|---|---|
| Multicolor Monogram Black Print | VA 1-250-121 | 12/18/02 | 6/24/04 |
| Mutlicolor Monogram White Print | VA 1-250-120 | 12/18/02 | 6/24/04 |

These copyrighted works are known as graphic works such as two-dimensional works and three-dimensional works of fine, graphic and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models and technical drawings including architectural plans. You are instructed that a copyright may be obtained in the works at issue.

Copyright is the exclusive right to copy. This right to copy includes the exclusive rights to:

(1) authorize, or make additional copies, or otherwise reproduce the copyrighted work;

(2) distribute copies of the copyrighted work to the public by sale or other transfer of ownership;

(3) display publicly a copyrighted graphic work.

It is the owner of a copyright who may exercise these exclusive rights to copy. In general, copyright law protects against production, distribution and display of substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in an action for copyright infringement.

*Model Instructions*, No. 17.1

**JURY INSTRUCTION No. 29**

**DIRECT INFRINGEMENT REQUIRED**


Contributory copyright liability requires some underlying direct infringement by a third party.


*Perfect 10 v. Visa Int'l Serv. Assoc.*, 494 F.3d 788, 795, 807 (9th Cir. 2007); 17 U.S.C. §§ 106, 501; Summary Judgment Ruling 5:7-9.

# JURY INSTRUCTION No. 30

## DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT

## ELEMENTS AND BURDEN OF PROOF

A person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and materially contributes to the activity.

If you find that the website operators infringed the plaintiff's copyright in displaying, distributing or selling merchandise which bears unauthorized reproductions of the plaintiff's copyrights, you may consider the plaintiff's claim that the defendants contributorily infringed that copyright. The plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1. the defendant knew or should have known of any of the website operators infringing activity; and

2. the defendant materially contributed to any of the website operators infringing activity.

If you find both of these elements are proved, your verdict should be for the plaintiff if you also find that any of the website operators infringed plaintiff's copyright. On the other hand, if either of these elements was not proved, your verdict should be for the defendants.

For example, "if a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement."

*Model Instruction,* No. 17.21; *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001) *citing Religious Tech. Center, et al. v. Netcom On-Line Communication Services, Inc., et al.*, 907 F. Supp. 1361, 1374 (N.D. Cal. 1995).

# JURY INSTRUCTION No. 31

## COPYRIGHT—KNOWLEDGE

The required knowledge for contributory copyright infringement can be actual or constructive.

Actual knowledge exists where it can be shown by a defendant's conduct or statements that it actually knew of specific instances of direct infringement.

Constructive knowledge exists where it can be shown a defendant should have known of the direct infringement. For example, if a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement.

Either actual or constructive knowledge is sufficient.

Internet service providers can not remain willfully blind to copyright infringement taking place on their servers. If you find that Defendants knew third parties were infringing Plaintiff's copyrights and remained willfully blind despite the ability to terminate their services to those third-parties, your verdict must be for the Plaintiff.

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020-21 (9th Cir. 2001); *Religious Technology Center v. Netcom On-Line Communication Services, Inc.,* 907 F. Supp. 1361, 1374 (N.D. Cal. 1995); *Fonovisa v. Cherry Auction, Inc.*, 76 F.3d 259, (9th Cir. 1996); Summary Judgment Ruling 8:6-20.

# JURY INSTRUCTION No. 32

## COPYRIGHT—MATERIAL CONTRIBUTION

"Contributory infringement "liability exists if the defendant engages in personal conduct that encourages or assists the infringement" activity.

Under this standard, knowingly providing the "site and facilities" for infringing activity is a material contribution.

In the internet context, where "a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement."

Computer operators can be liable where, knowing that specific infringing materials are present on their systems and able to take "simple measures" to limit infringement, they continue to provide access to the infringing materials.

> *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019-1021 (9th Cir. 2001) *citing Religious Tech. Center, et al. v. Netcom On-Line Communication Services, Inc., et al.*, 907 F. Supp. 1361, 1374 (N.D. Cal. 1995); *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007); Summary Judgment Ruling 10:8-20.

## JURY INSTRUCTION No. 33

## COPYRIGHT—DAMAGES

If you find for the plaintiff on the plaintiff's copyright infringement claim, you must determine the plaintiff's damages. The plaintiff is entitled to recover the actual damages suffered as a result of the infringement.

In addition to actual damages, the plaintiff is also entitled to recover any profits of the defendant attributable to the infringement. However, you may not include in an award of the defendant's profits any amount that you have taken into account in determining actual damages. The plaintiff must prove damages by a preponderance of the evidence.

*Model Instructions* No. 17.22

# JURY INSTRUCTION No. 34

## COPYRIGHT—DAMAGES—DEFENDANT'S PROFITS

In addition to actual damages, the copyright owner is entitled to any profits of the defendant attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages.

The defendant's profit is determined by subtracting all expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from the sale of a product containing or using the copyrighted work. The plaintiff has the burden of proving the defendant's gross revenue by a preponderance of the evidence.

Expenses are all operating costs incurred in producing the defendant's gross revenue. The defendant has the burden of proving the defendant's expenses by a preponderance of the evidence. Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendant has the burden of proving the percentage of the profit, if any, attributable to factors other than infringing the copyrighted work.

*Model Instruction*, No. 17.24 (modified)

# JURY INSTRUCTION No. 35

## COPYRIGHT DAMAGES—STATUTORY DAMAGES

If you determine that the defendants are liable for contributory copyright infringement, you must consider the damages the defendants must pay to the plaintiff. The plaintiff seeks a statutory damage award, established by Congress for each work infringed. Its purpose is to penalize the infringer and deter future violations of the copyright laws.

You may award as statutory damages for the infringement of the plaintiff's copyrighted work an amount that you feel is just under the circumstances, provided that amount is not less than $750, nor more than $30,000. In this case, the plaintiff contends that the defendant infringed two of the plaintiff's works.

The plaintiff contends that the defendants willfully infringed the copyrights. If the plaintiff proves by a preponderance of the evidence willful infringement, you may, but are not required to, increase the statutory damages for infringement of that work to a sum as high as $150,000. An infringement was willful when the defendant engaged in acts that infringed the copyright, and knew that those actions may infringe the copyright.

*Model Instruction*, No. 17.25

# JURY INSTRUCTION No. 36

## PURPOSES AND FUNCTIONS OF COPYRIGHT AND STATUTORY DAMAGES

In setting statutory damages, the jury has broad discretion to select any amount per infringed work that is "just" and that falls within the statutory range, taking into account the purposes of copyright law and the circumstances of the infringement. I first will explain the purposes of copyright law and then will discuss how you should analyze the circumstances of infringement, including whether or not the infringement was Willful.

The United States Constitution gives Congress the power "To promote the progress of science and the useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." The word "science" as it was used back then means all types of knowledge and understanding. And "to promote" means to encourage or provide an incentive. So the broad constitutional purpose of federal copyright law is to encourage progress concerning all types of knowledge by assuring authors that they will have the exclusive right to control their works for a limited period of time. During that limited time, the authors can charge a royalty or sell a subscription or otherwise reap the benefits of their work.

Congress has given authors various kinds of exclusive rights to encourage such progress. Violating any of those exclusive rights is what we mean by copyright infringement. This case involves the plaintiff's exclusive right to copy and to distribute copies of its works. The law forbids copyright infringement because, if authors cannot be sure that their exclusive rights will be respected, their incentive to produce useful writings is undermined, and the public is denied the progress that copyright incentives are intended to encourage.

Experience has shown that copyright infringements often are hard to detect and that the precise economic effects of infringement, while damaging may be hard to determine. Congress created the special copyright remedy of statutory damages to address these problems so as to maintain full incentives for authors to contribute to our knowledge and progress. Statutory Damages have three basic purposes and functions: (1) compensation, (2) deterrence, and (3)

punishment. A variety of factors are relevant to these basic purposes, and you may consider them. These factors are discussed in the following instructions.

*L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 106-107 (1919); U.S. Const. Art. I, § 8; *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 352 (1998); *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 429 (1984); *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 231-232, 73 S.Ct. 222 (1952); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113-14 (2d Cir. 2001); *Los Angeles News Serv. v. Reuters TV Int'l,* 149 F.3d 987, 996 (9th Cir. 1998); *Broadcast Music v. Star Amusements,* 44 F.3d 485, 489 (7th Cir.1995);*Chi-Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1229 (7th Cir. 1991); *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978)*Yurman Design, Inc. v. PAJ, Inc.,* 93 F. Supp. 2d 449, 462 (S.D.N.Y. 2000), *rev'd on other grounds,* 262 F.3d 101 (2d Cir. 2001)

# JURY INSTRUCTION No. 37

## THE COMPENSATION PURPOSE OF STATUTORY DAMAGES

One purpose and function of Statutory Damages is to compensate the plaintiff for its losses and disgorge any profits earned by the defendants resulting from the infringement. In theory a copyright owner is entitled to all of the damages caused by an infringement plus all of the profits that the defendant earned as a result of the infringement. However, those damages and profits often cannot be proved. Rather than allow the defendants to avoid the economic consequences of their actions and the incentives of the copyright law to be defeated, the jury is allowed to exercise a broad discretion to award an amount that seems likely to provide just compensation.

In exercising its discretion, the jury is to take into account all facts and circumstances bearing on the economic aspect of the infringement. For example, you may consider the evidence relating to expenses saved and profits reaped by the defendants in connection with the infringements; nature of the infringed works, the extent and duration of the infringements, the number of copies made, and the purposes of the infringements. These factors will not allow you to calculate an amount, but they can provide some of the guidance in selecting a fair amount as a matter of discretion.

17 U.S.C. § 504; *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 352 (1998); *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 113 (2d Cir. 2001); *Los Angeles News Serv. v. Reuters TV Int'l,* 149 F.3d 987, 996 (9th Cir. 1998); *Broadcast Music v. Star Amusements,* 44 F.3d 485, 489 (7th Cir.1995); *Chi-Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1229 (7th Cir. 1991) (because actual damages are "often virtually impossible to prove, a copyright owner may elect instead to recover statutory damages"); *Fitzgerald Pub. Co. v. Baylor Pub. Co.,* 807 F.2d 1110, 1117 (2d Cir. 1986); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978); *Latin Am. Music Co. v. Spanish Broadcasting Sys.,* 866 F. Supp. 780, 782 (S.D.N.Y.1994) ("It is precisely in those instances where actual damages are difficult to ascertain that the award of statutory damages is appropriate"); *Bly v. Banbury Books, Inc.,* 638 F. Supp. 983, 987 (E.D.Pa. 1986) (statutory damages serve in part to "compensat[e] plaintiffs who have been injured by a defendant's infringement, particularly when [plaintiff's] actual damages and [defendant's] profits are difficult to prove"); *Lauratex Textile Corp. v. Allton Knitting Mills,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981) (in general, statutory damages are appropriate where "the measure of actual; damages is difficult to prove").

# JURY INSTRUCTION No. 38

## THE DETERRENCE PURPOSE OF STATUTORY DAMAGES

Another goal and function of statutory damages is to deter future copyright infringement by the defendants and others. As I already mentioned, infringement often is hard to detect and actual damages or lost profits often are difficult to prove. This can lead to a lack of concern with avoiding infringement or even to a willingness or desire to infringe as a risk of doing business. If the defendant is at little risk of being caught or sued, or only would be expected to pay what it would have paid had it followed the law, there may be little incentive to follow the law. Congress and the Courts therefore have relied upon Statutory Damages to deter infringement.

The current range of statutory damages reflects Congress's objective of providing a significant deterrent to infringement, particularly digital or computer-based infringement. Congress increased the maximum statutory damages amounts to today's levels due to its concern that many computer users were ignorant or refused to acknowledge that copyright laws apply to Internet activity, believed that they would not be caught, or did not consider the prior penalties to be a real threat, and as a result continued infringing even after the copyright owner put them on notice that their actions constitute infringement.

Statutory Damages seek to deter both the defendant in the particular case and others who may be similarly situated from similar infringements. In considering the purposes of deterrence, you are to take into account all of the facts and circumstances. Among other things, you may consider the benefits that the infringements in this case and similar infringements might provide for the infringers and the likelihood of such infringers avoiding detection. You also may take into account the size and wealth of the infringer and the amount of Statutory Damages likely to be necessary to deter such an infringer. And, you may take into account the duration of the infringing conduct, prior events (including but not limited to infringement lawsuits) related to copyright, the defendants' treatment and use of other third party copyrighted materials, and any warnings or notice given to the defendant regarding the infringement at issue in this case. Based on all relevant

factors, you are to decide in your discretion what amount, if any, is just and proper to deter

Defendants and others who may be similarly situated from future similar infringements.

> *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233 (1952) ("The statutory rule… not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct"); *Reebok International, Ltd., et al. v. Marnatech Enterprises, Inc., et al.,* 970 F.2d 552, 559 (9th Cir. 1992) ("it is a *per se* abuse of discretion to fail to award relief under § 1117 that is adequate to make willful trademark infringement unprofitable"); *N.A.S. Import, Corp. v. Chenson Enters., Inc.,* 968 F.2d 250, 252 (2d Cir. 1992) (statutory damages meant to "discourage wrongful conduct"); *Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1336-37 (9th Cir. 1990) (upholding district court award of maximum statutory damages where plaintiff's actual damages were only "nominal," because statutory damages should vindicate policy of "discouraging infringement"); *International Korwin Corp. v. Kowalczyk,* 855 F.2d 375, 383 (7th Cir. 1988) ("deterrence of future violations" factor in determining statutory damages; "defendants must not be able to sneer in the face of copyright owners and copyright laws") (citations omitted); *Fitzgerald Pub. Co. v. Baylor Pub. Co.,* 807 F.2d 1110, 1117 (2d Cir. 1986) (both "the potential for discouraging the defendant" and "the deterrent effect on others beside the defendant" relevant to statutory damages calculation); *National Football League v. Primetime 24 Joint Venture,* 131 F. Supp. 2d 458, 473-474 (S.D.N.Y. 2001) ("The purpose of statutory damages is … to discourage wrongful conduct by imposing a high enough penalty so that defendants will realize that it is less expensive to comply with the law than to violate it," the court may consider "the deterrent effect on the defendant and third parties"); *Engel v. Wild Oats, Inc.,* 644 F. Supp. 1089, 1091, 1092 (S.D.N.Y. 1986) (statutory damages should "discourag[e] further infringement" by "remind[ing] defendants and other would-be infringers of the seriousness of copyright violations"); Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, H.R. Report 106-216 at 3 (1999).

# JURY INSTRUCTION No. 39

## THE PUNISHMENT PURPOSE OF STATUTORY DAMAGES

A third goal and function of Statutory Damages is punishment. As discussed above, infringement injures both the copyright author and the public by reducing the incentives to progress that the copyright law seeks to achieve. Whether punishment is just in a particular case, and how much punishment is just, requires you to consider several things.

First, you must consider degree of fault. If there was little or no fault by the defendant, there may be no basis for any punishment, or the just amount may be small. On the other hand, if the infringement was negligent or reckless or intentional, then you may decide that some greater punishment is just. If the infringement was Willful – which is a special concept I will discuss in a minute – then there are further considerations.

Second, you must consider the nature of the infringement. Isolated or minor infringements may call for a lesser degree of punishment than systematic or major infringements. This is a matter for your discretion.

Third, if you decide that some punishment is called for, you must take into account the economic circumstances of the defendant. This is because an amount that would severely punish a small or poor defendant might have little or no material effect on a large and wealthy defendant. However, you must not punish a defendant solely because it is large or wealthy; you must weigh the facts and circumstances of the case.

> *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 352, 118 S.Ct. 1279 (1998) (statutory damages serve purpose of punishment); *F.W. Woolworth v. Contemporary Arts, Inc.,* 344 U.S. 228, 233 (1952) ("[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to <u>sanction</u> and vindicate the statutory policy") (emphasis added); *Los Angeles News Serv. v. Reuters TV Int'l,* 149 F.3d 987, 996 (9th Cir. 1998) ("Because awards of statutory damages service both compensatory and punitive purposes, a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant, in order to sanction and vindicate the statutory policy of discouraging infringement") (internal quotation marks and citations omitted);

*Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co., Inc.,* 807 F.2d 1110, 1117 (2d Cir. 1986) ("statutory damages serve two purposes – compensatory and punitive"); *Lyons Partnership, L.P. v. AAA Entertainment Inc.,* 53 U.S.P.Q.2d 1397, 1405 (S.D.N.Y. 1999) (statutory damages designed to serve compensation, deterrence, and punishment purposes).

**JURY INSTRUCTION No. 40**

**COPYRIGHT—DAMAGES—INNOCENT INFRINGEMENT**


An infringement is considered innocent when a defendant has proved both the following elements by a preponderance of the evidence:

1.  the defendant was not aware that its acts constituted infringement of the copyright; and

2.  the defendant had no reason to believe that its acts constituted an infringement of the copyright.


*Model Instructions*, No. 17.26

**JURY INSTRUCTION No. 41**

**COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT**


An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:


1. the defendant engaged in acts that infringed the copyright; and


2. the defendant knew that those acts infringed the copyright.


*Model Instructions*, No. 17.27.

# JURY INSTRUCTION No. 42

## DOMAIN NAMES/IP ADDRESSES DEFINED

The main purpose of a domain name is to provide symbolic representations, commonly something memorable to an Internet user, to a specific Internet Protocol or "IP" Address. Domain names are combinations of letters from a-z, digits from 0-9, dots, hyphens and underscores. Domain names allow Internet users to more easily find and communicate with web sites. A domain name indicates what we seek. An IP Address indicates where it is.

An IP Address is a unique set of 4 numbers that acts much like a street address and marks where a particular website or other internet content is located on a computer, also known as a server. The server is connected to the internet and owned by a "host". American IP Addresses are regulated by the American Registry for Internet Numbers (ARIN). ARIN assigns IP Address "blocks" to internet service providers so that no two internet service providers should control the same IP Address at a given point in time. When we type in a particular domain name into a web browser for example, which has its own IP Address, the information we see on our computers is contained on another computer or server by a host. Specific IP Addresses, and thus websites, are traceable to only one host at a given point in time.

http://en.wikipedia.org/wiki/Domain_name;
http://en.wikipedia.org/wiki/IP_address; http://en.wikipedia.org/wiki/ARIN;
http://en.wikipedia.org/wiki/Internet_host

# JURY INSTRUCTION No. 43

## PINGING DEFINED

A "ping" or "pinging" is a computer network tool used to test whether a particular host is reachable across an IP network. It can also be used to identify the IP Address associated with a particular domain name. Pinging works by sending a packet of information from the computer of the requestor, out to the target host of a specific domain name, and waiting for a response from the other computer. The ping measures not only the round-trip time of the packet of information, but also the source of the response. The source of the response is typically identified by the IP Address associated with that domain name and will be noted by a unique set of 4 numbers.

The IP Address can then be traced to a specific host or internet service provider through ARIN's website.

http://en.wikipedia.org/wiki/Ping; http://en.wikipedia.org/wiki/ARIN; http://en.wikipedia.org/wiki/Internet_host