1   **GAUNTLETT & ASSOCIATES**
    David A. Gauntlett (SBN 96399)
2   James A. Lowe (SBN 214383)
    Brian S. Edwards (SBN 166258)
3   Christopher Lai (SBN 249425)
    18400 Von Karman, Suite 300
4   Irvine, California 92612
    Telephone:    (949) 553-1010
5   Facsimile:    (949) 553-2050
    jal@gauntlettlaw.com
6   bse@gauntlettlaw.com
    cl@gauntlettlaw.com
7
    Attorneys for Defendants
8   Akanoc Solutions, Inc.,
    Managed Solutions Group, Inc.
9   and Steve Chen

10

11                    **UNITED STATES DISTRICT COURT**

12        **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

13

14   LOUIS VUITTON MALLETIER, S.A.,       )   Case No.:  C 07-3952 JW (HRL)
                                          )
15                   Plaintiff,           )
                                          )   **DEFENDANTS' MOTION IN LIMINE #6**
16          vs.                           )   **TO EXCLUDE TESTIMONY ABOUT**
                                          )   **PINGING INTERNET DOMAINS**
17                                        )
                                          )
18   AKANOC SOLUTIONS, INC., et al.,      )
                                          )
19                   Defendants.          )
                                          )
20   _____

21

22

23

24

25

26

27

28

Dockets.Justia.com

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

Defendants Akanoc Solutions, Inc., Managed Solutions Group, Inc. and Steve Chen ("Defendants") move for an order, in limine, precluding Plaintiff Louis Vuitton Malletier from offering in evidence any testimony about "pinging"[1] Internet domains. This motion is set for hearing on March 23, 2009.

Defendants move for an order excluding testimony about pinging on the grounds that such testimony is inadmissible lay witness testimony under Federal Rules of Evidence 701(c) and 701(a).

## I. AN ORDER IN LIMINE IS PROPER TO EXCLUDE INADMISSIBLE LAY TESTIMONY

A motion in limine is "any motion whether made before or during trial to exclude anticipated prejudicial evidence before the evidence is actually offered."[2] Obtaining a discretionary advance ruling on the admission of specific evidence or resolving critical evidentiary issues at the outset enhances the efficiency of the trial process.[3] Authority is also implied from "the district court's inherent authority to manage the course of trials."[4]

Defendants move for this order in limine because it is anticipated that Vuitton will attempt to introduce testimony about pinging Internet domains. The Court should exclude such testimony because it violates Fed. R. Evid. 701.

## II. TESTIMONY ABOUT PINGING INTERNET DOMAINS IS INADMISSIBLE

Vuitton has designated two lay witnesses in this case, Nicolay Livadkin and Robert Holmes. Livadkin is Vuitton's designated Rule 30(b)(6) witness and Holmes is a private investigator. Livadkin and Holmes both have testified that either they or their staff have used various methods and software to ping allegedly infringing Internet domains. Both have testified that this has led them to

---

[1]"Pinging" an Internet domain is a method of determining the Internet Protocol ("IP") address that a domain is hosted on. This process involves (1) inputting a command prompt to a computer instructing it to send out a packet of data over the Internet towards a particular domain and (2) determining which IP address the data packet returns from.

[2]*Luce v. United States*, 469 U.S. 38, 40 (1984).

[3]*In re Japanese Electronic Products Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds*, 475 U.S. 574 (1986).

[4]*Luce*, 469 U.S. at 41 n.4; *United States v. Holmquist*, 36 F.3d 154, 163 (1st Cir. 1994).

believe that Defendants are somehow liable for contributory copyright and trademark infringement. The Court should exclude such testimony because it is inadmissible lay witness testimony.

Both Livadkin and Holmes will be testifying solely as lay witnesses in this case because Vuitton has not designated any expert witnesses as required by Fed. R. Civ. P. 26(a)(2). The deadline for designating expert witnesses, January 7, 2009, has passed. Fed. R. Civ. P. 26(a)(2)(C)(i) (requiring designation of expert witnesses at least 90 days before the date set for trial or for the case to be ready for trial). Because both Livadkin and Holmes will be providing lay testimony, the admissibility of their testimony is governed by Fed. R. Evid. 701, which states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Any testimony from Livadkin or Holmes about pinging is inadmissible both under Rule 701(c) as testimony based on scientific, technical, or other specialized knowledge and, under Rule 701(a) because, to the extent that this pinging was done by individuals other than the two witnesses, it is testimony not rationally based on the perception of the witness.

**A. Rule 701(c)**

Rule 701(c) prohibits lay witness testimony that is based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Livadkin and Holmes have both testified about pinging. Livadkin testified about how he pinged domains through "Netscan tools" and through a DOS prompt. [Declaration of James A. Lowe ("Lowe Decl.") ¶4, **Exhibit "1520"** Deposition of Nicolay Livadkin ("Livadkin Depo.") 57:16-58:25] Holmes testified about how to ping through the use of software such as network-tools.com, NetDemon, and using "DOS through a computer." [Lowe Decl. ¶5, **Exhibit "1521"** Deposition of Robert Holmes ("Holmes Depo.") 115:11-116:8], testifying that:

> Pinging comes from the actual place that the packet is bounced from. So say, for example, if I dial your telephone number and it rings, I know that that telephone number rings to that telephone, and I can say that beyond a shadow of a doubt. Just like with an IP address, if I type in that domain and I send a packet of information – when I say "a

packet," basically the computer just spits at another computer, and that data bounces back. And that data comes back as the physical place – the physical IP address of that specific location. [Lowe Decl. ¶5, **Exhibit "1521"** Holmes Depo. 116:11-23]

The first and easiest way we typically use is we actually ping using DOS through a computer. We will also go to – typically, my employees will go to or I will go to a website called network-tools.com. There's also software. If you go to netdemon.net, there's software you can download. And when you use the Netdemon software, you can choose from a drop down of several reliable sources. And when I say several, I'm saying probably about two dozen sources. And what we do is – and they're all registered with ARIN as well and APNIC – ARIN is a North American organization, but there are other organizations in other regions. And what the Netdemon software does which is very reliable as well because like I said there are about two dozen sources. And the software allows us to type an IP address in, ping some data, and receive a packet back from physically where that – where that data is stored. [Lowe Decl. ¶5, **Exhibit "1521"** Holmes Depo 115:18-116:6]

This type of testimony should be excluded under Fed. R. Evid. 701(c).

Section (c) was added to Rule 701 in 2000 in order to "[forbid] the admission of expert testimony dressed in lay witness clothing." *U.S. v. Testerman*, 263 Fed. Appx. 328 (4th Cir. 2008). "Lay testimony 'results from a process of reasoning familiar in everyday life,' whereas "an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." *U.S. v. White*, 492 F.3d 380, 401 (6th Cir. 2007); *U.S. v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) (citing to Rule 701 Advisory Committee's Notes).

Courts have applied Rule 701(c) in excluding numerous types of testimony because they are not based on reasoning familiar in everyday life. In *White*, 492 F.3d. at 403-404., the Court rejected testimony by a hospital employee about Medicare reimbursement procedures. In *U.S. v. Cruz*, 363 F.3d 187, 191, 193 (2d Cir. 2004), the Court rejected testimony by a police officer about the meaning of "to watch someone's back" in a drug transaction. In *Garcia*, 413 F.3d at 210, the Court rejected a police officer's opinion about the role of a "partner" in the drug trade. Most importantly, a Court has excluded testimony about *computer-generated reports* because such testimony is not based on reasoning familiar in everyday life. *U.S. v. Ganier*, 468 F.3d 920, 925 (6th Cir.2006),

In *Ganier*, the Sixth Circuit rejected testimony by a computer specialist allegedly offering "lay testimony available by 'running commercially-available software, obtaining results, and reciting

them." *Id*. The Sixth Circuit held that **"such an interpretation would require [the witness] to apply knowledge and familiarity with computers and the particular forensic software well beyond that of the average layperson."** *Id.* (emphasis added)    Any testimony about pinging is inadmissible under Rule 701 because it similarly requires the witness "to apply knowledge and familiarity with computers and the particular forensic software well beyond that of the average layperson." *Id.*

Livadkin and Holmes' testimony about pinging domains and verifying IP addresses is not admissible as lay testimony.    This testimony about pinging is not the result of "a process of reasoning familiar in everyday life."    It is the *opposite* of that.    Almost no normal citizens ever discuss pinging in their everyday life.    Knowledge about pinging is highly scientific, technical and specialized.  Fed. R. Evid. 701(c).    The Court should exclude this testimony because it requires the witnesses "to apply knowledge and familiarity with computers and the particular forensic software well beyond that of the average layperson." *Ganier*, 468 F.3d at 925.

Rule 701(c) also prohibits Livadkin and Holmes from interpreting the results derived from pinging.    For instance, Holmes testified that:

> I recognize this IP address and – from a previous exhibit, 204.13.66.161, as an IP address that I read to you earlier that was second and triple-sourced as being registered to Akanoc.    This IP address is one of many IP addresses that are registered to Akanoc. This is a list of domain names that resolve to IP address 204.13.66.161 [Lowe Decl. ¶5, **Exhibit "1521"** Holmes Depo. 139:19-25]

> We would typically go to – say, for example, we show you this page here (gesturing).    This isn't the only page that we search.    We may have gone to another website.  Say, for example, the IP address here – if you look about halfway down the page, the IP address, 204.13.66.161.    Then underneath, it says, "IP location: California, Fremont, Akanoc Solutions, Inc."    That right there is the IP address data.    And what we do with that data to verify its accuracy, this – this data is registered with several different companies.    It's registered with a company called ARIN, which is the American – the American Registry of Internet Numbers.    They register their data with a whole bunch of different search engines as well as themselves.    There are other organizations that also catalog these numbers.  [Lowe Decl. ¶5, **Exhibit "1521"** Holmes Depo. 113:8-22]

Rule 701(c) applies to **any** part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge.  *Garcia*, 413 F.3d at 215 (citing to Advisory Committee

Notes to 2000 Amendments) (emphasis added). Any testimony by Livadkin or Holmes in relation to pinging or interpreting ping results is inadmissible because such testimony is based upon scientific, technical, or other specialized knowledge. No layperson would be able to interpret anything significant from a ping report. Any interpretation of a ping report is therefore inadmissible as lay testimony under Rule 701(c).

**B. Rule 701(a)**

Vuitton's witnesses also cannot testify at trial about pinging if they have not personally pinged the domains themselves. Both Livadkin and Holmes have admitted that they did not personally ping many of the domains that are pertinent to this case. Such testimony is precluded by Fed. R. Evid. 701(a).

Livadkin testified that he did not ping a number of domains named in Vuitton's complaint. For example, when asked if he had personally pinged the website ape168.com, he admitted that he did not do it and that another person going by "jackie91356" had pinged the domain. [Lowe Decl. ¶4, **Exhibit "1520"** Livadkin Depo. 132:23-133:20] Livadkin also similarly admitted that he had not personally pinged the domains atozbrand.com,[5] bag925.com,[6] eshoes99.com,[7] tytrade99.com[8] and wendy929.net.[9] When Holmes was asked whether he had pinged ape168.com, he admitted "To tell you that I remember a specific search would be impossible." [Lowe Decl. ¶5, **Exhibit "1521"** Holmes Depo. 56:20-21]. Holmes was similarly unsure about whether he had pinged the domains 315ec.com,[10] ape168. atozbrand.com,[11] bag4sell.com,[12] bag925.com[13] and tytrade99.com.[14]

Rule 701(a) limits lay testimony to that which is "rationally based on the *perception of the*

---

[5] *Id*. at Livadkin Depo. 124:19-125:3

[6] *Id*. at Livadkin Depo. 115:12-21; 118:9-119:1

[7] *Id*. at Livadkin Depo. 100:11-101:5

[8] *Id*. at Livadkin Depo. 101:6-25

[9] *Id*. at Livadkin Depo. 86:20-87:9; 87:14-88:3; 88:11-89:1

[10] *Id*. at Holmes Depo. 53:12-55:2; 55:3-4

[11] *Id*. at Holmes Depo. 58:22-59:22

[12] *Id*. at Holmes Depo. 110:4-111:2; 136:3-19; 139:1-9; 141:14-19

[13] *Id*. at Holmes Depo. 143:10-19

[14] *Id*. at Holmes Depo. 49:6-9

*witness.*" (emphasis added)  Both of Vuitton's witnesses have admitted that they did not ping the domains themselves.  Rule 701(a) therefore prevents them from testifying to pinging done by someone else.

## III.    CONCLUSION

Instead of going to the trouble of designating expert witnesses, Vuitton wants to shortcut the fact finding process by trying to provide expert testimony disguised as lay witness testimony because it is convenient to do so.  Vuitton could have designated an expert witness to testify about pinging. Vuitton could have deposed and used the testimony of the individuals that performed the actual pinging.  Vuitton could then have used deposition evidence.  But because doing so would require a proper investigation of primary sources and expert witnesses, perhaps in other states and countries, Vuitton chose to proceed in the case with two witnesses with no expertise or personal knowledge. Vuitton's lack of serious effort to designate expert witnesses and to depose witnesses with personal knowledge suggests this Court is being misused to advance a shakedown by a large international business rather than an effort to prove actual liability.

Defendants move to exclude any testimony by Livadkin and Holmes related to pinging Internet domains.

Dated:  February 23, 2009

**GAUNTLETT & ASSOCIATES**


By:    /s/James A. Lowe
        David A. Gauntlett
        James A. Lowe
        Brian S. Edwards
        Christopher Lai

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.,
and Steve Chen