1
J. Andrew Coombs (SBN 123881)
*andy@coombspc.com*
2
Annie S. Wang (SBN 243027)
*annie@coombspc.com*
3
J. Andrew Coombs, A P. C.
517 East Wilson Avenue, Suite 202
4
Glendale, California 91206
Telephone: (818) 500-3200
5
Facsimile: (818) 500-3201
6
Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.
7

8

9
UNITED STATES DISTRICT COURT
10
NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)
11
Louis Vuitton Malletier, S.A.,                    )   Case No.: C 07 3952 JW (HRL)
                                                  )
12
                        Plaintiff,                )   OPPOSITION OF PLAINTIFF LOUIS
                                                  )   VUITTON MALLETIER, S.A. TO
13
        v.                                        )   DEFENDANTS' MOTION IN LIMINE
                                                  )   NO. 2 TO EXCLUDE INTERNET
14
Akanoc Solutions, Inc., et al.                    )   MATERIAL AND TESTIMONY ABOUT
                                                  )   INTERNET MATERIAL; DECLARATION
15
                        Defendants.               )   OF J. ANDREW COOMBS, EXHIBITS IN
                                                  )   SUPPORT
16
_____          )

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Introduction...................................................................................1

A.    The Rules of Evidence Favor Admissibility..............................1

B.    Authentication Requirements Are Amply Satisfied...................2

C.    The Internet Material Can Be Authenticated by Defendants...........4

D.    Defendants' Stated Intent To Rely Upon the Same Data
Estops Them From Objecting Now.......................................4

E.    The Internet Material Can Be Authenticated by Plaintiff's
Witnesses...................................................................5

F.    The Internet Material Can Be Authenticated by Distinctive Characteristics.........7

G.    The Internet Material Can Be Authenticated by Judicial Notice.......................8

H.    The Internet Material Is Not Hearsay.......................................10

I.    Even if Hearsay, the Internet Material is Properly Admitted...........................12

J.    The Internet Material is Extremely Probative and There is No Unfair
Prejudice to Defendants.................................................12

Declaration of J. Andrew Coombs........................................................16

Louis Vuitton v Akanoc, et al.: Opposition to Motion in
Limine No. 2 re Internet Materials
    - ii -

## TABLE OF AUTHORITIES

**CASES**

Alliance Fin. Capital, Inc. v. Herzfeld,
2007 Bankr. LEXIS 4511, at *2 (N.D. Ga. December 17, 2007)............................................1

Caldwell v. Caldwell,
420 F. Supp. 2d 1102, 1105 (N.D. Cal. 2006).............................................................8

CFM Communs., LLC v. Mitts Telecasting Co.,
424 F. Supp. 2d 1229, 1233 (E.D. Cal. 2005).........................................................1-2

City of Monroe Employees Ret. Sys. v. Bridgestone Corp.,
399 F.3d 651, 655 n.1 (6th Cir. 2005) ...................................................................8

Daubert v. Merrell Dow Pharms.,
509 U.S. 579, 587 (1993)...............................................................................2

Dellums v. Powell,
566 F.2d 231, 235 (D.C. Cir. 1977).................................................................1, 13

Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.,
2006 U.S. Dist. LEXIS 42159, at *14 (N.D. Cal. June 12, 2006)..........................................2

General Atomic Co. v. Exxon Nuclear Co.,
90 F.R.D. 290, 1981 U.S. Dist. LEXIS 9374, at *60 (S.D. Cal. April 23, 1981)....................1, 13

Grimes Navigant Consulting, Inc.,
185 F. Supp. 2d 906, 913 (N.D. Ill. 2002) ...............................................................8

Huddleston v. United States,
485 U.S. 681, 688-89 (1988)..............................................................................2

Internet Specialities West, Inc. v. ISPWest,
No. CV 05-3296 FMC AJWx (C.D. Cal. Sept. 19, 2006)......................................................6

Lund v. Leprino Foods Co.,
No. 06-431, 2007 U.S. Dist. LEXIS 46705,
2007 WL 1775474 at * 1 n.3 (E.D. Cal. June 20, 2007)....................................................8

Maljack Productions, Inc. v. Goodtimes Home Video Corp.,
81 F.3d 881, 889 n.12 (9th Cir. 1996)....................................................................4

Masters v. UHS of Delaware, Inc.,
2008 U.S. Dist. LEXIS 107383, *5 (E.D. Missouri Oct. 21, 2008) .........................................9

Middleby Corp. v. Hussmann Corp.
1992 U.S. Dist. LEXIS 13138, at *9-10 (N.D. Ill. August 27, 1992). ....................................1

MGM Studios, Inc. v. Grokster, Ltd.,
454 F. Supp. 2d 966, 972 (C.D. Cal. 1996)...............................................................4

Moose Creek, Inc. et al. v. Abercrombie & Fitch Co.,
331 F. Supp. 2d 1214, 1225 fn. 4 (C.D. Cal. 2004)....................................................3, 8

O'Toole v. Northrop Grumman Corp.,
499 F.3d 1218, 1225 (10th Cir. 2007) ...............................................................8

Orr v. Bank of America,
285 F.3d 764, 774 (9th Cir. 2002)...............................................................2-3

People v. Holowko,
109 Ill. 2d 187, 486 N.E.2d 877, 878-79 (Ill. 1985)...........................................10

Perfect 10, Inc. v. Amazon.com, Inc.,
508 F.3d 1146, 1172 (9th Cir. 2007) ...........................................................13

Perfect 10, Inc. v. Cybernet Ventures, Inc.,
213 F. Supp. 2d 1146, 1154 (C.D. Cal 2002)...............................3, 5-6, 11, 13

Premier Nutrition, Inc. v. Organic Food Bar, Inc.,
2008 U.S. Dist. LEXIS 78353 *16-17,
86 U.S.P.Q.2D (BNA) 1344 (C.D. Cal. March 27, 2008)....................................7

Schaffer v. Clinton,
240 F.3d 878, 885 n.8 (10th Cir. 2001)...............................................................8

Sperberg v. Goodyear Tire & Rubber Co.,
519 F.2d 708, 712 (6th Cir. 1975)...............................................................1

Till v. SCS Credit Corp.,
541 U.S. 465, 477 fn.14 (2004) ...............................................................8

Telewizja Polska USA, Inc. v. Echostar Satellite Corp.,
2004 U.S. Dist. LEXIS 20845,
2004 WL 2367740, at *18 (N.D. Ill. Oct. 15, 2004)......................................9, 11

U.S. v. Curtin,
489 F.3d 935, 942 (9th Cir. 2007) ...............................................................2

U.S. v. Fleming,
215 F.3d 930, 939 (9th Cir. 2000) ...........................................................2, 12

U.S. v. Gagliardi,
506 F.3d 140, 151 (2d Cir. 2007)...............................................................2

U.S. v. Hamilton,
413 F.3d 1138, 1142-43 (10th Cir. 2005) ...................................................10

U.S. v. Hankey,
203 F.3d 1160, 1172 (9th Cir. 2000) .....................................................2, 12, 14

U.S. v. Khorozian,
333 F.3d 498, 506 (3d Cir. 2003) ...............................................................10

U.S. v. Marino,
200 F.3d 6, 11 (1st Cir. 1999) ...............................................................2

U.S. v. Pang,
362 F.3d 1187, 1193 (9th Cir. 2004)...............................................................2

U.S. v. Standring,
2005 U.S. Dist. LEXIS 41330, *4-5 (S.D. Ohio Oct. 19, 2005)......................8-9

U.S. v. Starzecpyzel,
880 F. Supp. 1027, 1035 fn. 7 (S.D.N.Y. 1995)..................................9

U.S. v. Stout,
509 F.3d 796, 806 (6th Cir. 2007). ..................................12

U.S. v. Tank,
200 F.3d 627, 630 (9th Cir. 2000). ..................................3, 5

U.S. v. Washington,
498 F.3d 225, 233 (4th Cir. 2007)..................................10

U.S. v. Williams,
445 F.3d 724, 732 (4th Cir. 2006)..................................2

Williams v. Long,
585 F. Supp. 2d 679, 688 (D. Md. 2008) ..................................11

**STATUTES/ RULES**

F.R.E. 102 ........................................................................................2

F.R.E. 403 ................................................................................2, 12, 14

F.R.E. 404 ........................................................................................2

F.R.E. 801 ......................................................................................11

F.R.E. 807 ......................................................................................12

F.R.E. 901 ..........................................................................2-3, 6, 9, 11

F.R.E. 902 ........................................................................................2

**OTHER**

31 Wright & Gold, Federal Practice & Procedure: Evidence § 7106, 43 (2000). ...............3

*McCormick On Evidence,* § 294(b), at 447 (John W. Strong ed., 5th ed. 1999). ...............10

## INTRODUCTION

Defendants' Motion in Limine No. 2 to Exclude Internet Material and Testimony About Internet Material ("Motion No. 2") is properly denied on several separate and independent grounds. In addition to the fact that the data represented by these "Internet Materials" should have been produced by Defendants in response to Plaintiff's discovery requests (and this Court's orders compelling such production), the illogical effect of its argument would be to insulate otherwise illegal conduct merely because such conduct occurs online. Neither the case law nor the Federal Rules of Evidence justify such a radical outcome.

Defendants improperly seek to benefit from a situation of their own making: "It is fundamental that a party that does not provide discovery cannot profit from its own failure…and may be estopped from 'supporting or opposing designated claims or defenses.'" General Atomic Co. v. Exxon Nuclear Co., 90 F.R.D. 290, 1981 U.S. Dist. LEXIS 9374, at *60 (S.D. Cal. April 23, 1981) (quoting Dellums v. Powell, 566 F.2d 231, 235 (D.C. Cir. 1977)).

Defendants could have authenticated the material that is the subject of this motion, but they have not produced any website printout from any of the underlying infringing websites even though hosted on their servers. Defendants first claimed a crash destroyed pre-litigation files. Then, Defendants were silent as to why they did not visit publicly viewable websites that were pinged or traced to their servers by them as evidenced by emails they sent out to their "customers" identifying both the domain names and as well as the IP Address at issue. This motion is simply disguised to unfairly seek an advantage due to Defendants' own bad faith discovery failures and should be denied for that reason.

### A.    The Rules of Evidence Favor Admissibility

Motions in limine should be granted sparingly. Alliance Fin. Capital, Inc. v. Herzfeld, 2007 Bankr. LEXIS 4511, at *2 (N.D. Ga. December 17, 2007) citing Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975); Middleby Corp. v. Hussmann Corp. 1992 U.S. Dist. LEXIS 13138, at *9-10 (N.D. Ill. August 27, 1992). "A pretrial motion in limine forces a court to decide the merits of introducing a piece of evidence without the benefit of the context of trial."

CFM Communs., LLC v. Mitts Telecasting Co., 424 F. Supp. 2d 1229, 1233 (E.D. Cal. 2005); see also U.S. v. Marino, 200 F.3d 6, 11 (1st Cir. 1999) (recognizing that proffered evidence can be more accurately assessed in the context of other evidence).

Evidence should be "excluded on a motion in limine only if the evidence is *clearly* inadmissible for any purpose" (internal quotations omitted, emphasis added). Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc., 2006 U.S. Dist. LEXIS 42159, at *14 (N.D. Cal. June 12, 2006). This means Defendants will have to overcome the well established policies favoring admissibility. Daubert v. Merrell Dow Pharms., 509 U.S. 579, 587 (1993) ("The Rules' basic standard of relevance thus is a liberal one."); U.S. v. Curtin, 489 F.3d 935, 942 (9th Cir. 2007) citing Huddleston v. United States, 485 U.S. 681, 688-89 (1988) (the version of Rule 404(b) which became law was intended to "plac[e] greater emphasis on admissibility than did the final Court version."); see also U.S. v. Williams, 445 F.3d 724, 732 (4th Cir. 2006) (relief against admissibility under Rule 403 should be granted sparingly); U.S. v. Fleming, 215 F.3d 930, 939 (9th Cir. 2000) (Rule 403 favors admissibility); U.S. v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000) ("the application of Rule 403 must be cautious and sparing"); F.R.E. 102 Adv. Comm. Notes ("rules are to be liberally construed in favor of admissibility" within the bounds of the Rules to achieve goals of "speedy, inexpensive, and fair trials designed to reach the truth"). Defendants fail to meet their burden given the probative value of the evidence, the Rules, sound case law, and in light of these policies.

**B.     Authentication Requirements are Amply Satisfied**

"The bar for authentication is not particularly high...The proponent need not rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." U.S. v. Gagliardi, 506 F.3d 140, 151 (2d Cir. 2007) (citations omitted). The authentication requirement is satisfied with "evidence sufficient to support a finding that the matter in question is what its proponent claims." U.S. v. Pang, 362 F.3d 1187, 1193 (9th Cir. 2004) citing F.R.E. 901(a). A foundation through personal knowledge is unnecessary, a proper foundation "can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902." Id. citing Orr v. Bank

of America, 285 F.3d 764, 774 (9th Cir. 2002); see also F.R.E. 901(b) (specifically stating illustrations are listed "not by way of limitation"). The proponent "need only make a prima facie showing of authenticity, as 'the rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" U.S. v. Tank, 200 F.3d 627, 630 (9th Cir. 2000). Rule 901(a) defines a standard of admissibility that is rather general or elastic. Moose Creek, Inc. et al. v. Abercrombie & Fitch Co., 331 F. Supp. 2d 1214, 1225 fn. 4 (C.D. Cal. 2004). "A document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it, signed it, used it, or saw others do so." Orr, 285 F.3d at 774 fn. 8 citing 31 Wright & Gold, Federal Practice & Procedure: Evidence § 7106, 43 (2000).

None of the cases cited by Defendants support their overreaching and unrealistic motion to exclude the evidence here. Instead, Courts deciding issues similar to the ones in the present case, have admitted such evidence. Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F. Supp. 2d 1146, 1154 (C.D. Cal 2002) (in unfair business practices, copyright and trademark infringement case for online infringement, recognizing that "computer printouts are the only practical method by which the allegations of the complaint can be brought before the Court") see also Moose Creek, Inc., 331 F. Supp. 2d at 1225 fn. 4 (admitting even unauthenticated website printouts in context of other uses of trademark online in a preliminary injunction motion).

Unlike the authentication issues cited in those cases by Defendants, Plaintiff does not seek to introduce complex accounting records or government reports for purposes of establishing the truth of the underlying accounting data. Here, like Moose Creek and Perfect 10 cases noted above, Plaintiff seeks to introduce evidence of (i) website offers easily observed (and intended to be easily observed) by any consumer routinely using the Internet and (ii) website printouts corroborating or evidencing the results of "pings" separately undertaken by Plaintiff and/or its investigator.[1]

---

[1] Defendants' repeated references to the reliability of WHOIS data contained in those records is a red herring. First, Plaintiff does not seek to introduce the data for purposes of such WHOIS data and, if that is the issue, Louis Vuitton will stipulate to redaction of individual WHOIS information from those records. Second, even were the WHOIS data relevant for Plaintiff's purposes, it is not whether that data is accurate (in the sense it accurately relates the contact information for an identified registrant) but whether it accurately reflects data stored on the registry (which is not disputed).

### C.     The Internet Material Can Be Authenticated by Defendants

Had Defendants complied with their discovery obligations, the relevant internet materials would have been authenticated by them. As the host, they could have produced content on their server which would have evidenced the underlying infringement and their hosting of that underlying infringing content. Having failed to produce such discovery, even in response to this Court's orders, Defendants cannot now be heard to complain that such evidence obtained by Plaintiff should be excluded.

Regardless, based upon Defendants' emails to their "customers" and the "customers'" responses (the very few that were produced), Defendants have provided evidence that in fact authenticates that some of the websites were hosted by Defendants at the time of Louis Vuitton's notice to them. Declaration of J. Andrew Coombs ("Coombs Decl.") at ¶ 2, Ex. A. Defendants own testimony shows that these emails to the customers would not exist but for Defendants' identification of the websites on their servers. Plaintiff's printouts merely illustrate the particular copyrights and trademarks infringed that Defendants did not detail in their emails as well as the same website on different occasions post-notice, still up, infringing and hosted by Defendants.

### D.     Defendants' Stated Intent To Rely Upon the Same Data Estops Them From Objecting Now

Arin.net and DomainTools.com printouts should be admitted because Defendants themselves intended to rely on them as stated in their Initial Disclosures. Coombs Decl. at ¶ 3, Ex. B (Defendants' Initial Disclosures). "Authentication can be accomplished by judicial admission, such as stipulation or production of the items at issue in response to a discovery request" and where offered by the party opponent. MGM Studios, Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 972 (C.D. Cal. 1996); see also Maljack Productions, Inc. v. Goodtimes Home Video Corp., 81 F.3d 881, 889 n.12 (9th Cir. 1996). Defendants intended to rely on these same documents until they changed their position for strategic purposes. Defendants attack the credibility of WHOIS information generally, but do not attack pinging results, proof of their ownership of certain IP Addresses, and do not delve into which of the thousands of pages of internet materials they believe

1  was hacked or forged.  See also Coombs Decl. at ¶ 4, Ex. C (Defendants' Responses to Requests

2  for Admission ("Defendants' Admissions") (verifying ownership of listed IP Addresses).

3       Defendants' motion is silent as relating to pinging results and their ownership of certain IP

4  Addresses but to the extent those results from online sources are included in the materials

5  Defendants seek to exclude, they should also be admitted because Defendants have relied on the

6  same method for locating websites off of the Internet and have admitted to ownership of specified

7  IP Addresses.  Coombs Decl. at ¶¶ 5-6, Ex.s D-E (Deposition of Steve Chen ("Chen Depo.") at pp.

8  24-25, 114-115, 120-127, 186-194 and Deposition of Juliana Luk ("Luk Depo.") at p. 30)

9  (Defendants' employee pings domain names on the Internet), Ex.s K-L; see also Defendants'

10  Admissions.  As the Court has pointed out, as supported by the testimony of Defendant Steve Chen

11  and Juliana Luk, and as illustrated in Defendants' internal emails, Defendants also use pinging, and

12  notably from a source off of the Internet.  Coombs Decl. Ex.s D-E, K-L; Judge Ware's Motion for

13  Summary Judgment Ruling at p. 6, fn. 10 (overruling objection to pinging evidence).  They cannot

14  now complain those results are inadmissible when they themselves rely on those functions, using

15  the Internet, to locate websites for themselves.  Defendants' motion should be denied.

16      **E.**    **The Internet Material Can be Authenticated by Plaintiff's Witnesses**

17       Website printouts, particularly relating to intellectual property cases involving infringing

18  content on websites, can be authenticated by the person who printed the copies or if the copies

19  were printed under the declarant's direction.[2]  Perfect 10, Inc., 213 F. Supp. 2d at 1154 (describing

20  Defendants' cited case St. Clair as "a more extreme view") citing U.S. v. Tank, 200 F.3d 627, 630

21  (9th Cir. 2000).  Plaintiff's witnesses have already attested to these investigations of hundreds of

22  websites.  Coombs Decl. at ¶ 7-8, Ex.s F-G (Declaration of Nikolay Livadkin in Support of

23  Opposition to Defendants' Motion for Summary Judgment ("Livadkin Decl.") at ¶¶ 8, 18 and

24  Declaration of Robert Holmes in Support of Opposition to Defendants' Motion for Summary

---

25  [2] Defendants attempt to set up a straw man by reference to testimony disclaiming knowledge of
specific websites present to Louis Vuitton's witness at the time of his deposition should be
26  disregarded.  Defendants requested "all" copies of various documents and Defendants' election to
examine Louis Vuitton's witness with reference to printouts which were generated otherwise than
27  by the Plaintiff's representative does not disqualify all printouts, including those generated by him
or at his office under his direction.
28

Judgment ("Holmes Decl.") at ¶¶ 2-16). In a case such as this, where the infringements occurred online, "computer printouts are the only practical method by which the allegations of the complaint can be brought before the Court." Perfect 10, Inc., 213 F. Supp. 2d at 1154. Defendants' motion should be denied.

Even according to Defendants' authority, the Internet Material may be authenticated by Plaintiff's witnesses. Defendants quote an unpublished case "To be authenticated, someone with knowledge of the accuracy of the contents of the internet print-outs must testify." Internet Specialities West, Inc. v. ISPWest, No. CV 05-3296 FMC AJWx (C.D. Cal. Sept. 19, 2006).

As to the Domaintools.com and other hosting related documents, Robert Holmes testified that he not only checked his hosting conclusions twice, but triple checked such information. In his deposition, he made it clear that DomainTools.com printouts are a reader-friendly format for information that he has already verified. Coombs Decl. at ¶ 9, Ex. H (Deposition of Robert Holmes ("Holmes Depo.") at pp. 112-122). Additionally, Mr. Holmes made several purchases from a number of the websites, based upon the offers he saw, paying the listing price and later receiving the product pictured. The fact he received what was offered and paid the price listed on the websites only corroborates that he had knowledge of the accuracy of the contents of the websites. Moreover Defendants' isolated comments about one particular printout shown to Mr. Holmes during his deposition should not be misconstrued that Mr. Holmes would not be able to testify as to any others, or any relating to the hundreds of websites he stated he had investigated. Id. at 152-153. Defendants misrepresent the testimony. Contrary to Defendants' further misstatements, Mr. Livadkin also testified that he personally verifies pinged or traced websites (actions utilized by Defendants themselves) that were accurately reflected in DomainTools.com printouts and other sources. Livadkin Decl., ¶ 8. Mr. Livadkin also testified as to the process of printing out the websites on the dates reflected on those printouts sufficient to meet F.R.E. 901(b)(9). Coombs Decl. at ¶ 10, Ex. I (Deposition of Nikolay Livadkin ("Livadkin Depo.") at pp. 17-19, 77-78, 101). That Mr. Livadkin did not personally print out some of the exhibits shown to

1  him at the time of the deposition does not mean that he did not print any of the exhibits nor that
2  they were not all printed at his direction.

3          Defendants' twisting of Mr. Livadkin's statements on the sometimes false WHOIS
4  information, yet another device used by infringers to escape accountability aside from giving their
5  business to bulletproof hosts such as Defendants, does not speak to the offers for counterfeit Louis
6  Vuitton product on the websites, or to their hosting status by Defendants. If anything, the false
7  WHOIS information only further supports a finding that the offers for purported "Louis Vuitton"
8  products on the various websites were for counterfeits or "replicas" as the operators were
9  attempting to avoid accountability. The Internet printouts that reflect false WHOIS information do
10 not alter the information, but rather transmit the information that is offered at that time. Even if
11 falsely offered by a counterfeiter, that information is still probative.

12      F.      **The Internet Material Can Be Authenticated by Comparison and by Their**
13              **Appearance, Contents, Substance, Internal Patterns or Other Distinctive**
14              **Characteristics**

15          In the context of the internet, courts consider the distinctive characteristics of a website in
16 making a finding of authenticity. <u>Premier Nutrition, Inc. v. Organic Food Bar, Inc.</u>, 2008 U.S.
17 Dist. LEXIS 78353 *16-17, 86 U.S.P.Q.2D (BNA) 1344 (C.D. Cal. March 27, 2008). Thus,
18 another basis for authentication is through the cross-reference of the websites. Many of the
19 websites reference another of the websites. Multiple websites are often mirror images of each
20 other with minor changes. <u>See</u> Coombs Decl. at ¶ 11, Ex. J. These websites are thus self-
21 authenticating because they refer to one another, not through links alone, but through the two
22 different domain names. The identical nature of these websites is no coincidence and the websites
23 act to verify each other.

24          To the extent the same website was visited on different occasions those website printouts
25 should also be admitted so the jury can compare the printouts and determine the applicable weight
26 it wishes to afford as to whether or not that website is the same website, and if it was offering
27 Louis Vuitton product. The website images from different dates speak to the continued

28

infringements occurring and the hosting status printouts address Defendants' continued shielding of those websites so that they can stay online and in business.

The hosting status related documents showing Defendants' hosting of certain websites does not appear to be issues raised by Defendants, because they are in essence, summaries or pinging results as to a particular domain name on a particular date, a method also used by Defendants.

### G. The Internet Material Can Be Authenticated by Judicial Notice

"It is not uncommon for courts to take judicial notice of factual information found on the world wide web." O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1225 (10th Cir. 2007) (court abused discretion be failing to take judicial notice of actual earnings history by Northrop on the internet); see e.g., Lund v. Leprino Foods Co., No. 06-431, 2007 U.S. Dist. LEXIS 46705, 2007 WL 1775474 at * 1 n.3 (E.D. Cal. June 20, 2007); City of Monroe Employees Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 655 n.1 (6th Cir. 2005) (taking judicial notice of a term defined on the website of the National Association of Securities Dealers, Inc.); Schaffer v. Clinton, 240 F.3d 878, 885 n.8 (10th Cir. 2001) (taking judicial notice of information found in a political reference almanac and citing to the almanac's website); cf. Grimes Navigant Consulting, Inc., 185 F. Supp. 2d 906, 913 (N.D. Ill. 2002) (taking judicial notice of published stock prices found on the world wide web); Caldwell v. Caldwell, 420 F. Supp. 2d 1102, 1105 (N.D. Cal. 2006) (taking judicial notice of webpages from Understanding Evolution and National Center for Science Education's mission and "voices for evolution" webpage).

It is not disputed that government websites are often cited by Courts, but it is also not uncommon for courts, including the United States Supreme Court, to consider evidence of privately published internet materials and to cite to such internet material. Till v. SCS Credit Corp., 541 U.S. 465, 477 fn.14 (2004) (citing and considering website printouts of Balmoral Financial Corporation at http://www.balmoral.com/bdip.htm and 1st National Finance Association DIP Division at http://www.loanmallusa.com/dip.htm re their advertisements); Moose Creek, Inc., 331 F. Supp. 2d at 1225 fn. 4 (admitting unauthenticated printouts from various third party retail websites); U.S. v. Standring, 2005 U.S. Dist. LEXIS 41330, *4-5 (S.D. Ohio Oct. 19, 2005)

(admitting printouts from third-party non-governmental websites foiagen.com and sovereignandfree.com); U.S. v. Starzecpyzel, 880 F. Supp. 1027, 1035 fn. 7 (S.D.N.Y. 1995) (citing internet search results even and links to the State University of New York and Nijmegen Institute for Cognition and Information in the Netherlands websites).

Courts have admitted compilations of websites by third party website companies particularly when the evidence does not fit neatly into any of the non-exhaustive examples listed in Rule 901. See Masters v. UHS of Delaware, Inc., 2008 U.S. Dist. LEXIS 107383, *5 (E.D. Missouri Oct. 21, 2008) (admitting Internet Archive pages from www.archive.org) citing Telewizja Polska USA, Inc. v. Echostar Satellite Corp., 2004 U.S. Dist. LEXIS 20845, 2004 WL 2367740, at *18 (N.D. Ill. Oct. 15, 2004) (objector presented "no evidence that the Internet Archive is unreliable or biased. And [objector] has neither denied that the exhibit represents the contents of its website on the dates in question, nor come forward with its own evidence challenging the veracity of the exhibit.... [Objector] is free to raise its concerns regarding reliability with the jury."). Here, Defendants have provided no evidence that the websites would have reason to incriminate themselves or that the hosting status documents are unreliable as relating to pinging results and conclusions as to Defendants as hosts in particular, or any kind of bias by Domaintools.com or any of the other Internet tools, for example. Defendants do not challenge any content on any of the websites in any particularized form. In light of the inherent indicia of reliability contained in the websites and the automatic collection of data by pinging, and domaintools.com for example, the internet material should all be admitted.

Defendants' speculative argument as to hackers altering information on the Internet is simply unrealistic in light of the thousands of web pages gathered by Plaintiff. The web pages themselves have indicia of truthfulness in the sheer number of websites that are infringing and found to be hosted by Defendants. Also, most of the same web pages look nearly identical on different dates, some domains reference other domains on their web pages, multiple web pages correlate in terms of format and offers, and similar domain names that may only differ by a ".com"

1  or ".net" are almost identical. There has been no proof of any such hacking offered by Defendants
2  and the bulk of the web pages, literally thousands of pages, prove otherwise.

3        Defendants also state they have no means of challenging the information but that is untrue
4  and simply not a bar to admission of this evidence. Defendants have offered no evidence that the
5  websites, identified by domain name and publicly available, were different than what Plaintiff's
6  printouts show. Defendants do not deny that Louis Vuitton sent multiple cease and desist requests
7  to Defendants based upon infringements on the internet that must have been viewed and pinged or
8  traced to Defendants that Defendants themselves could have viewed. Defendants do not dispute
9  that Louis Vuitton purchased and received products, as depicted on the websites, in the amounts
10 reflected on the websites, and with monies paid to a number of these websites. The persistent
11 theme that gave rise to this litigation of Defendants doing nothing when they could have and
12 resorting to unfounded excuses of feigned and imaginary handicaps, is precisely why they should
13 not be allowed to exclude highly probative and inherently reliable information from the case that
14 concerns core, highly disputed issues.

15        **H.    The Internet Material is Not Hearsay**

16        It has been widely held that information generated instantaneously by the computer without
17 the assistance or input of a person, such as the header information on a web page, is not hearsay.
18 U.S. v. Washington, 498 F.3d 225, 233 (4th Cir. 2007); U.S. v. Hamilton, 413 F.3d 1138, 1142-43
19 (10th Cir. 2005) (concluding that the computer-generated header information accompanying
20 pornographic images retrieved from the Internet was not a hearsay statement because there was no
21 "person" acting as a declarant); U.S. v. Khorozian, 333 F.3d 498, 506 (3d Cir. 2003) (concluding
22 that an automatically generated time stamp on a fax was not a hearsay statement because it was not
23 uttered by a person); People v. Holowko, 109 Ill. 2d 187, 486 N.E.2d 877, 878-79 (Ill. 1985)
24 (concluding "that the printout of results of computerized telephone tracing equipment is not
25 hearsay evidence" but rather "a self-generated record of its operations") (citations omitted);
26 McCormick On Evidence, § 294(b), at 447 (John W. Strong ed., 5th ed. 1999) (computer-generated

27

28

1   records should not be considered hearsay because "such records are not the counterpart of a

2   statement by a human declarant").

3          Even Defendants' authorities have "accepted the printout containing the 'internet domain

4   address' and the 'date on which it was printed' as sufficient for *authentication* under Rule 901(a)."

5   Williams v. Long, 585 F. Supp. 2d 679, 688 (D. Md. 2008) (in the context of government

6   webpages).  Thus, the hosting status documents are admissible to show the automatic function and

7   results of pinging, and the website printouts are admissible to show what was publicly viewable on

8   the automatically generated date and domain name reflected on the page.

9          Additionally, in circumstances more akin to the present case, Courts have held that

10  evidence of website content on a particular date is not hearsay.  Perfect 10, Inc., 213 F. Supp. 2d at

11  1155 ("To the extent these images and text are being introduced to show the images and text found

12  on the websites, they are not statements at all - and thus fall outside the ambit of the hearsay

13  rule.");  see also Telewizja Polska USA, Inc. v. Echostar Satellite Corp., 2004 U.S. Dist. LEXIS

14  20845, 2004 WL 2367740, at *16 (N.D. Ill. Oct. 15, 2004) (rejecting "double hearsay" arguments

15  regarding website printouts).  The printouts from the various infringing websites show what

16  websites were operational and what content was publicly viewable on a specific date.  They are not

17  hearsay.

18         Also, often times the website printouts are not offered for the truth of the matter asserted

19  and thus, are not hearsay.  F.R.E. 801.  The majority of the website printouts are not offered for

20  their truth to the extent they claim they are selling "real" Louis Vuitton products, but are actually

21  selling counterfeits.  Coombs Decl. at ¶ 11, Ex. J.  Also, some of the website printouts are offered

22  to show that multiple websites are really run by the same individual or group of people most likely

23  working in concert because they are identical and also because the domain names are very similar

24  or nearly identical.  Id.  In these instances, what is actually on the websites is not at issue, it is that

25  they are the same.  These sets of websites are also offered to rebut Defendants' statements that

26  there is no way to tell who is behind a website and that the problem is unmanageable for them.

27  They are simply not offered for their truth and are not hearsay.

28

## I.     Even If Hearsay, the Internet Material Is Properly Admitted

Even if the Court disagrees with the above, the infringing offers for Louis Vuitton products and the web pages relating to the Defendants' hosting status are also admissible even if hearsay because they fall under the residual exception. This type of evidence has not been accounted for under Rule 803 or 804 but have equivalent circumstantial guarantees of trustworthiness. F.R.E. 807. In this case, where Defendants have not provided any such documents, and Plaintiff's claims absolutely require evidence of publicly viewed evidence and hosting results, the residual exception is particularly applicable. Here, the Court can determine that (A) the internet material is offered as evidence of material facts, specifically, publicly viewed infringing websites and Defendants' hosting of those websites on particular dates, (B) the internet material is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, particularly in light of Defendants' discovery failures, and (C) the general purpose of the rules and the interests of justice will best be served by admission of the internet material. Here, justice requires that the fact finder be allowed to weigh evidence that not only speaks to Defendants' continued disregard of intellectual property rights, but also the broader, widespread effect of Defendants' unacceptable behavior, and the sheer volume of counterfeiting taking place on Defendants' servers. The jury should at least be able to see the evidence and decide what weight it wants to afford these materials. They are intrinsically reliable because they advance a profit driven enterprise, albeit unlawful, that depends on the continuity of their online presence to the public and truthfulness in their extremely low offers.

## J.     The Internet Material is Extremely Probative and There is No Unfair Prejudice to Defendants

Relief against admissibility under Rule 403 should be granted sparingly as Rule 403 favors admissibility. Fleming, 215 F.3d at 939; see also Hankey, 203 F.3d at 1172. Some circuits have required that the unfair prejudice be "exceedingly great" while looking at the evidence "most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect..." U.S. v. Stout, 509 F.3d 796, 806 (6th Cir. 2007).

There is little evidence more probative in this case than the vast number of underlying infringements occurring on the websites and proof of Defendants' continued hosting of those same infringing websites having been placed on notice of their underlying illegal activity. The internet materials are all relevant to the case and extremely illustrative of the continuing problem that forced Plaintiff to pursue the present action in the first place. These materials are particularly probative in light of the void of documents produced by Defendants despite a right and ability to do so. Both Magistrate Judge Lloyd and this Court agreed that Defendants should have produced the electronic documents. To the extent Defendants sandbagged the discovery process and now the inspection protocol, makes this material particularly probative. Defendants should not be allowed to profit from their discovery failures. General Atomic Co. v. Exxon Nuclear Co., 90 F.R.D. 290, 1981 U.S. Dist. LEXIS 9374, at *60 (S.D. Cal. April 23, 1981) (quoting Dellums v. Powell, 566 F.2d 231, 235 (D.C. Cir. 1977). Defendants should not be rewarded for failing to cooperate in discovery and forcing Plaintiff to independently develop this information from reliable, publicly available means.

Case law supports the admission of such evidence in intellectual property cases based on online infringement due to the recognition that "computer printouts are the only practical method by which the allegations of the complaint can be brought before the Court". Perfect 10, Inc., 213 F. Supp. 2d at 1154. Defendants' chance of being unfairly prejudiced by some misinformation when literally thousands of pages point to them is miniscule to nonexistent, particularly when Plaintiff's investigator often double and triple checks his information. Ironically, Defendants' statement that "the multitude of scams, hoaxes and untruths that proliferate on the Internet solely because of some users' baseless trust in the veracity of material appearing on a computer screen" is precisely the reason why Louis Vuitton has had to institute this action to combat the proliferation of counterfeiters who have taken up residence on Defendants' servers. Infringing website operators are cashing in on unsuspecting consumers and Defendants materially aid and protect these counterfeiters. All of the internet material should be admitted to the jury in light of Defendants' failure to produce documents, Plaintiff's authentication and verification of the data,

the inherent reliability of the evidence, and the several other means of authentication that speak to not only the broad reasoning behind Plaintiff's claims of liability, but also to the core issues of notice and continued infringement.

Prior controlling decisions have acknowledged that "services or products that facilitate access to websites throughout the world can significantly magnify the effects" of infringing conduct and that in certain instances, seeking compliance from providers may be the only meaningful way for copyright holders to protect their rights. Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1172 (9th Cir. 2007). In this case, this could not be more applicable. The array of websites infringing Plaintiff's intellectual property is precisely why this action against the internet service provider is necessary and appropriate. The scale of the problem and Defendants' part, are what they are. The website printouts and the hosting information support Plaintiff's claims and there is no other way to illustrate for the jury the issues, the scope of the problem, and the policy behind Plaintiff's requested relief. Thus, they are highly probative and material and should be admitted.

"Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." Hankey, 203 F.3d at 1172. In the absence of any documents produced by Defendants, Plaintiff's evidence regarding the underlying infringing websites as they were viewable by the public on an automatically time stamped date, evidence showing the hosting status of those websites by Defendants that was verified, and in some instances double and triple checked, that was also supported by Defendants' responses to requests for admission, is all crucial, extremely probative, not unfairly prejudicial and should be admissible. Plaintiff, like Defendants, used the pinging method and purports to offer the Domaintools.com printouts that simply organize various sources of data, not only WHOIS information, but pinging results, ownership of IP Addresses, at

times snapshots of cached versions of the websites, among other things, to help package the data in a way that would be easy for a juror to understand. Plaintiff even completed orders from some of the websites even though Plaintiff was able to identify an infringing site just by reviewing its offers. Plaintiff has gone above and beyond its duties to gather evidence despite Defendants' efforts to sandbag. The internet materials are sufficiently reliable and Plaintiff should be allowed to present its case in the interests of fairness and the pursuit of justice.

For the foregoing reasons, Defendants' Motion No. 2 should be denied.

Dated: March 9, 2009

J. Andrew Coombs, A Professional Corp.

By:     J. Andrew Coombs
        Annie Wang
        Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

## DECLARATION OF J. ANDREW COOMBS

I, J. Andrew Coombs, declare as follows:

1.      I am an attorney at law duly admitted to practice before the Courts of the State of California and the United States District Court for the Northern District of California. I am counsel of record for Plaintiff Louis Vuitton Malletier, S.A. ("Plaintiff" or "Louis Vuitton") in an action styled <u>Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., et al.</u>, Case No. C 07 3952 JW. I submit this declaration in support of Plaintiff's Opposition to Defendants' Motion in Limine No. 2. Except as otherwise stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows.

2.      Attached Exhibit A are true and correct copies of representative emails produced by Defendants in this matter."

3.      Attached Exhibit B is a true and accurate copy of Defendants' Initial Disclosures.

4.      Attached Exhibit C is a true and accurate copy of selected portions of Defendant's Responses to Requests for Admission.

5.      Attached Exhibit D is a true and accurate copy of portions of the transcript from the deposition testimony of Steve Chen, individually and as the Rule 30(b)(6) witness for each of the two corporate defendants in this matter, which too place on or about April 8-9, 2008.

6.      Attached Exhibit E is a true and accurate copy of portions of the transcript from the deposition testimony of Juliana Luk, which took place on or about April 12, 2008.

7.      Attached Exhibit F is a true and accurate copy of the Declaration of Nikolay Livadkin in Support of Opposition to Defendants' Motion for Summary Judgment.

8.      Attached Exhibit G is a true and accurate copy of the Declaration of Robert Holmes in Support of Opposition to Defendants' Motion for Summary Judgment.

9.      Attached Exhibit H is a true and accurate copy of portions of the transcript from the deposition testimony of Robert L. Holmes, which took place on or about April 1, 2008.

10.     Attached Exhibit I is a true and accurate copy of portions of the transcript from the deposition testimony of Nikolay Livadkin, which took place on or about April 23, 2008.

1    11.    Attached Exhibit J are true and correct copies from Plaintiff's Document Production

2    (websites printouts).

3    12.    Attached Exhibit K is a true and accurate copy of the Declaration of Steve Chen and

4    Exhibit 1501 filed by Defendants May 19, 2008, in support of their Motion for Summary

5    Judgment.

6    13.    Attached Exhibit L is a true and accurate copy of the Declaration of Juliana Luk

7    filed by Defendants May 19, 2008, in support of their Motion for Summary Judgment.

8    I declare under penalty of perjury under the laws of the United States that the foregoing is

9    true and correct.

10    Executed this 9th day of March, 2009, at Glendale, California.

13    J. ANDREW COOMBS