1  J. Andrew Coombs (SBN 123881)
   *andy@coombspc.com*
2  Annie S. Wang (SBN 243027)
   *annie@coombspc.com*
3  J. Andrew Coombs, A Professional Corporation
   517 E. Wilson Ave., Suite 202
4  Glendale, California 91206
   Telephone:     (818) 500-3200
5  Facsimile:     (818) 500-3201

6  Attorneys for Plaintiff
   Louis Vuitton Malletier, S.A.
7

8
                    UNITED STATES DISTRICT COURT
9
              NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)
10

11  Louis Vuitton Malletier, S.A.,          )   Case No. C 07 3952 JW
                                            )
12                      Plaintiff,          )   PLAINTIFF'S OPPOSITION TO
                                            )   DEFENDANTS' MOTION IN LIMINE
13        v.                                )   No. 9 TO EXCLUDE TESTIMONY
                                            )   ABOUT THE GENUINENESS OF
14  Akanoc Solutions, Inc., et al.          )   GOODS; DECLARATION OF J.
                                            )   ANDREW COOMBS, EXHIBIT IN
15                      Defendants.         )   SUPPORT
                                            )
    _____)

16                         **INTRODUCTION**

17        Plaintiff Louis Vuitton Malletier, S.A. ("Plaintiff") files this Opposition to Defendants'

18  Motion in Limine No. 9 to Exclude Testimony About the Genuineness of Goods ("Motion No. 9").

19  Plaintiff moves for an order denying Defendants' motion on the grounds that motions in limine

20  should be granted sparingly, Rule 701 does not exclude the evidence, and there is no prejudice to

21  Defendants.

22        **A.  The Rules of Evidence Favor Admissibility**

23        Motions in limine should be granted sparingly.  Alliance Fin. Capital, Inc. v. Herzfeld, 2007

24  Bankr. LEXIS 4511, at *2 (N.D. Ga. December 17, 2007) citing Sperberg v. Goodyear Tire &

25  Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975); Middleby Corp. v. Hussmann Corp. 1992 U.S. Dist.

26  LEXIS 13138, at *9-10 (N.D. Ill. August 27, 1992).  "A pretrial motion in limine forces a court to

27  decide the merits of introducing a piece of evidence without the benefit of the context of trial."

28  CFM Communs., LLC v. Mitts Telecasting Co., 424 F. Supp. 2d 1229, 1233 (E.D. Cal. 2005); *see*

*also* U.S. v. Marino, 200 F.3d 6, 11 (1st Cir. 1999) (recognizing that proffered evidence can be more accurately assessed in the context of other evidence).

Evidence should be "excluded on a motion in limine only if the evidence is *clearly* inadmissible for any purpose" (internal quotations omitted, emphasis added). Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc., 2006 U.S. Dist. LEXIS 42159, at *14 (N.D. Cal. June 12, 2006). This means Defendants will have to overcome the well established policies favoring admissibility. Daubert v. Merrell Dow Pharms., 509 U.S. 579, 587 (1993) ("The Rules' basic standard of relevance thus is a liberal one."); U.S. v. Curtin, 489 F.3d 935, 942 (9th Cir. 2007) citing Huddleston v. United States, 485 U.S. 681, 688-89 (1988) ("the version of Rule 404(b) which became law was intended to "plac[e] greater emphasis on admissibility than did the final Court version."); see also U.S. v. Williams, 445 F.3d 724, 732 (4th Cir. 2006) (relief against admissibility under Rule 403 should be granted sparingly); U.S. v. Fleming, 215 F.3d 930, 939 (9th Cir. 2000) (Rule 403 favors admissibility); U.S. v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000) ("the application of Rule 403 must be cautious and sparing"); Fed. R. Evid. 102 Adv. Comm. Notes ("rules are to be liberally construed in favor of admissibility" within the bounds of the Rules to achieve goals of "speedy, inexpensive, and fair trials designed to reach the truth"). Defendants fail to meet their burden given the highly probative value of the evidence, the Rules, sound case law, and in light of these policies.

## B. The Testimony Regarding Genuine Goods is Admissible

Defendants point to Rule 701 of the Federal Rules of Evidence as a basis for the exclusion of testimony regarding pinging. Rule 701 states as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Civ. Evid. 701.

The testimony Plaintiff seeks to introduce regarding genuine goods, however, does not consist of lay witness opinion testimony but rather covers factual matters traditionally within the scope of lay witness testimony. Even applying Rule 701, the testimony in question cannot be excluded on the basis of section (c), as Defendants argue, due to the fact that the distinction between counterfeit and genuine goods is something that arises from the witnesses' personal familiarity with this type of product. Therefore, Defendants' Motion No. 9 should be denied.

## 1. Rule 701 Does Not Apply to the Testimony Regarding Genuine Goods

Defendants contend that the testimony of two of Plaintiff's witnesses, Nikolay Livadkin and Robert Holmes, regarding the genuineness of goods sought to be introduced by Plaintiff, should be excluded under Rule 701.[1] This argument is without merit as Rule 701 does not apply to non-*opinion* testimony.

Federal Rule of Evidence, Rule 701 is entitled "Opinion Testimony by Lay Witnesses" and governs a "witness' testimony in the form of opinions or inferences." Fed. R. Evid. 701. Rule 701 does not govern or otherwise limit lay witness testimony regarding facts, no matter the nature of the facts or observations. *See* Jerden v. Amstutz, 430 F.3d 1231, 1239-1240 (9th Cir. 2005) (Rule 701 covers opinion testimony and not detailed and scientific factual observations); *see also* Sitrick v. Dreamworks, LLC, 2006 U.S. Dist. LEXIS 97312, at *63-65 (C.D. Cal. July 20, 2006). In fact, factual testimony is the traditional function of the lay witness. *Cf.* Kalina v. Fletcher, 522 U.S. 118, 130 (1997) ("[t]estifying about facts is the function of the witness"); Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 168 (1988) ("traditional requirement that lay witnesses give statements of fact rather than opinion").

Mr. Livadkin's testimony regarding the genuineness of certain goods concern factual distinctions between the two types of product – distinctions personally observed by the witness.

---

[1] At no time has Plaintiff suggested that Robert Holmes will testify concerning the genuineness of product. To the contrary, Holmes repeatedly disclaimed any intention to so testify during his deposition. See Declaration of J. Andrew Coombs ("Coombs Decl."), at Ex. A, Deposition of Robert Holmes p. 132-134. Insofar as Defendants' motion addresses Mr. Holmes' testimony in this regard, the motion is properly denied as moot.

These facts are completely within the realm of non-expert testimony and are not subject to limitation or exclusion by Rule 701.

### 2. Testimony Regarding the Genuineness of Goods Falls Under the Particularized Knowledge Exception

Moreover, the testimony regarding the genuineness of goods is not of the type to be excluded under Rule 701(c). Defendants argue that the distinction between counterfeit and genuine product is specialized knowledge and cite non-binding authority outside of the Ninth Circuit to support this proposition.

Rule 701 states that opinion testimony by lay witnesses must not be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). However, *particularized* knowledge does not fall under this limitation – that is, knowledge gained due to one's personal familiarity with a subject, even knowledge relating to one's own business or occupation. U.S. v. Durham, 464 F.3d 976, 982 (9th Cir. 2006) (allowed lay witness opinion testimony on the identification of narcotics due to witness' familiarity with the substance); Hynix Semiconductor, Inc. v. Rambus, Inc., 2008 U.S. Dist. LEXIS 16716, at *35-36 (N.D. Cal. Feb. 19, 2008) (allowed lay witness opinion testimony on the witness' own business); *see also* Fed. R. Evid. 701, Notes of Advisory Committee; U.S. v. Munoz-Franco, 487 F.3d 25 (1st Cir. 2007) (allowed lay witness opinion testimony regarding a bank's banking procedures, knowledge which was acquired by the witness while he was an employee at the bank).

Mr. Livadkin has been an employee of Plaintiff's company, which manufactures clothing, handbags and other personal accessories, since 2002. As a result of his occupation, he has been exposed to both counterfeit goods and Plaintiff's genuine goods on a daily basis, allowing him to distinguish between the two types of product. See Coombs Decl. Ex. B, Declaration of Nikolay Livadkin in Support of Opposition to Defendants' Motion for Summary Judgment ("Livadkin Decl."), ¶¶ 1, 5, 6. Thus, Mr. Livadkin's testimony regarding the genuineness of goods is not specialized knowledge to be excluded under Rule 701(c).

C. **Defendants Have Waived Their Objection to This Proposed Testimony.**

Plaintiff offered testimony from Nikolay Livadkin regarding his knowledge of identifying counterfeit products in support of its opposition to Defendants' motion for summary judgment. Defendants objected only narrowly to such information and testimony which was overruled by the Court. Ruling on Motion for Summary Judgment p. 6, fn. 8 ("MSJ Ruling"). Any other objections to this testimony were not raised and should be deemed waived, thus, this motion should be denied.

D. **The Law of the Case Precludes Defendants From Revisiting This Issue**

The Court's overruling of Defendants' limited objections to the evidence regarding Mr. Livadkin's testimony on the counterfeit nature of products from the websites at issue now constitutes "law of the case" which precludes re-litigation of the issue absent very narrow exceptions not applicable here.

"The law of the case doctrine provides that 'a court is generally precluded from reconsidering an issue that has already been decided by the same court...'" U.S. v. Cuddy, 147 F.3d 1111, 1114 (9th Cir. 1998) citing U.S. v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) (internal quotation and citation omitted).

The Court cited Mr. Livadkin's testimony and the Court considered this evidence in partially denying Defendants' Motion for Summary Judgment. MSJ Ruling at pp. 5-6. None of the exceptions to the doctrine apply to Defendants' renewed objection: 1) the first decision was not *clearly erroneous*; 2) there have been no intervening changes in the law; 3) the evidence is not substantially different; 4) no other changed circumstances exist; and 5) no manifest injustice would otherwise result. Cuddy, 147 F.3d at 1114. Thus, Defendants objection has already been decided and this motion should be summarily denied as barred by the law of the case.

Defendants' arguments are similarly contrary to law and practice and Defendants' motion should be denied in its entirety.

### E. There Would Be No Prejudice To Defendants To Afford Plaintiff An Opportunity To Lay The Missing Pieces Of The Requisite Expert Foundation

Granting Defendants' Motion No. 9 to exclude testimony regarding the genuineness of goods would elevate form over substance in the determination of this matter. Plaintiff has substantially complied with the requirements for expert opinion disclosure, regardless of its non-designation of Mr. Livadkin as expert witness, and there is no prejudice to Defendants to allow the testimony identifying counterfeit merchandise offered on websites hosted by Defendants.

Failure to disclose under Fed. R. Civ. P. 26 does not preclude admission of the evidence or testimony if the failure was either substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); Dukes v. Wal-Mart, Inc., 222 F.R.D. 189, 199 (N.D. Cal. 2004); see also Salgado v. General Motors Corp., 150 F.3d 735, 742 (7th Cir. 1998). The court's determination of admissibility should be guided by "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003). Further, it is Defendants' burden to show sufficient prejudice caused by the failure to disclose. Dukes, 222 F.R.D. at 199.

Fed. R. Civ. P. 26 sets a deadline for disclosure of expert witnesses 90 days before trial. Fed. R. Civ. P. 26(a)(2)(C)(ii). This timeframe was instituted in order to provide "sufficiently in advance of trial…a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26, Notes of Advisory Committee on 1993 amendments. Plaintiff disclosed its witnesses early on in the discovery process, more than 90 days before trial, and Defendants have been sufficiently apprised of the contents of the expected testimony from Mr. Livadkin since that time. In fact, Mr. Livadkin was fully deposed by Defendants, including regarding his background and experience and the issues concerning distinguishing genuine goods from counterfeit goods. See Fed. R. Civ. P. 26(b)(4)(A). Defendants have not been prejudiced by the fact that Mr. Livadkin was not specifically identified as an expert witness.

Moreover, there is no questioning the expert qualification of Mr. Livadkin, if necessary, regarding the identification of counterfeit Louis Vuitton product. As the Court agreed, Mr. Livadkin has extensive experience with Plaintiff's genuine goods and detecting counterfeit goods purporting to be Plaintiff's goods. <u>See</u> Livadkin Decl. He is the Anti-Counterfeiting Coordinator of Louis Vuitton, S.A. and has held this position since 2002, and has never been wrong when having made an initial determination that a website is selling counterfeits.[2] <u>Id.</u>

Defendants, therefore, have not and cannot point to sufficient prejudice they have suffered. Mr. Livadkin's testimony should not be excluded under Rule 37, and Plaintiff should be allowed to correct any discrepancies that may exist.

Plaintiff disclosed to Defendants well before trial the identities and subject matter, including genuineness of product, on which Mr. Livadkin would testify. Defendants' Motion No. 9 is properly denied on the basis that Rule 701 does not exclude the testimony regarding factual determinations of the legitimacy of one's own products, or, in the alternative, that Defendants have not shown sufficient prejudice by Plaintiff's harmless error in designation.

Dated: March 9, 2009

J. Andrew Coombs, A Professional Corp.

By:    J. Andrew Coombs
        Annie Wang
        Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

---

[2] These facts were cited by the Court in its Ruling on Defendants' Motion for Summary Judgment pp. 5-6 ("Livadkin has experience in identifying counterfeit products and in this case, has purchased products he testifies are counterfeit.").

# DECLARATION OF J. ANDREW COOMBS

I, J. Andrew Coombs, declare as follows:

1.    I am an attorney at law duly admitted to practice before the Courts of the State of California and the United States District Court for the Northern District of California. I am counsel of record for Plaintiff Louis Vuitton Malletier, S.A. ("Plaintiff" or "Louis Vuitton") in an action styled <u>Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., et al.</u>, Case No. C 07 3952 JW. I submit this declaration in support of Plaintiff's Opposition to Defendants' Motion in Limine No. 9. Except as otherwise stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows.

2.    Attached Exhibit A is a true and accurate copy of portions of the transcript from the deposition testimony of Robert L. Holmes, which took place on or about April 1, 2008.

3.    Attached Exhibit B is a true and accurate copy of the Declaration of Nikolay Livadkin in Support of Opposition to Defendants' Motion for Summary Judgment, without exhibits, filed on or about August 18, 2008.

4.    Attached Exhibit C is a true and accurate copy of the Defendants' Evidentiary Objection to the Livadkin Declaration in Support of Vuitton's Opposition to Defendants' Motion for Summary Judgment filed on or about August 25, 2008.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 9th day of March, 2009, at Glendale, California.

_____
J. ANDREW COOMBS

**EXHIBIT A**

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4    LOUIS VUITTON MALLETIER, S.A.,    )
                                       )
5                      PLAINTIFF       )
               VS                      )C.A. NO. C 07 3952 JW
6                                      )
     AKANOC SOLUTIONS, INC., MANAGED   )
7    SOLUTIONS GROUP, INC., STEVEN     )
     CHEN AND DOES 1 THROUGH 10,       )
8    INCLUSIVE,                        )
                       DEFENDANTS      )
9    _____ )

10

11

12

13

14              ORAL DEPOSITION OF ROBERT L. HOLMES,

15   produced as a witness at the instance of the Defendants,

16   and duly sworn, was taken in the above-styled

17   and -numbered cause on the 1st day of April, 2008, from

18   9:31 AM to 6:22 PM, before Ronald R. Cope, a CSR in and

19   for the State of Texas, Registered Professional Reporter

20   and Certified Realtime Reporter, reported by machine

21   shorthand at the offices of U.S. Legal

22   Support/MillerParker, Inc., 5910 North Central

23   Expressway, 100 Premier Place, Dallas, Texas, 75206,

24   pursuant to the Federal Rules of Civil Procedure and the

25   provisions stated on the record or attached hereto.

ROBERT L. HOLMES

1    Q.   Now, do you have any means of knowing whether

2   this was authentic?

3    A.   Yes.

4    Q.   How?

5    A.   By contacting the client and asking them, if I

6   wished to do so.

7    Q.   I'm not asking about contacting the client.

8    A.   You're asking about means.

9    Q.   I'm asking you:  Let's say you have this bag in

10   your possession you just purchased.  How can you tell

11   whether it's authentic or not?

12    A.   You're assuming that's my job.

13    Q.   No.  I'm just asking if you have the ability to

14   do that.

15    A.   You asked if I had the means.

16    Q.   Well, tell me if you have the ability to do it.

17    A.   Depending on the product.  Everything is

18   different.

19    Q.   Well, this is a bag I would like you to look

20   at.  It's apparently a Louis Vuitton bag.  Can you tell

21   if it's authentic or not?

22    A.   From this photo?

23    Q.   No.  I believe you testified you physically had

24   it in your possession.

25    A.   Yes, sir.  I did not testify that I

ROBERT L. HOLMES

1    authenticated the product, though.

2        Q.    I didn't ask you that.

3        A.    Asked me a hypothetical.

4        Q.    If you had wanted to determine if it was

5    authentic or not, could you have done so?

6        A.    It depends on the product.    Some --

7        Q.    This particular bag.    This bag, could you have

8    done so?

9        A.    You're asking me to go back in time.

10       Q.    I'm asking you to tell me if you could have

11   authenticated this bag or one like it.

12       A.    I may or may not have been able to.

13       Q.    And if you had been able to, how would you do

14   that?

15             MR. COOMBS:    Calls for speculation.

16       A.    Honestly, sir, that is not my job, and I don't

17   do that on a regular basis.    It's not job.    You're

18   asking me to do something that's not my job for some

19   whimsy.    It's not my job, sir.

20       Q.    (BY MR. LOWE)    So it is not your job to

21   determine whether a product that you purchase is

22   authentic or counterfeit?

23       A.    I leave that to Louis Vuitton.

24       Q.    The answer is yes, it is not your job to

25   authenticate whether it is authentic or counterfeit?

```
 1      A.   Yes, it is not my job.

 2      Q.   And you have never done that for any Louis

 3  Vuitton merchandise that you purchased on their behalf?

 4           MR. COOMBS:  Vague.

 5      A.   I didn't say that.  25 years.

 6      Q.   (BY MR. LOWE)  Well, can you tell me if you

 7  have ever?

 8      A.   It is not my job.  I can tell you that for

 9  sure.

10      Q.   All right.  Have you ever, to your

11  recollection, authenticated the authenticity or

12  counterfeit nature of any product that you purchased on

13  behalf of Louis Vuitton?

14      A.   I cannot recall.

15      Q.   You have no recollection of ever doing so?

16           MR. COOMBS:  Are you asking if he's

17  testified to that effect or . . .

18      A.   Not my job.

19           MR. COOMBS:  Not sure I understand the

20  scope either.

21           MR. LOWE:  I'm asking him if he has some

22  recollection that he has ever done that on behalf of

23  Louis Vuitton?

24      A.   I receive training occasionally by brand

25  owners.
```

ROBERT L. HOLMES

**EXHIBIT B**

J. Andrew Coombs  (SBN 123881)
andy@coombspc.com
Annie S. Wang (SBN 243027)
annie@coombspc.com
J. Andrew Coombs, A Prof. Corp.
517 E. Wilson Ave., Suite 202
Glendale, California 91206
Telephone:  (818) 500-3200
Facsimile:  (818) 500-3201

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | |
|---|---|
| Louis Vuitton Malletier, S.A.,<br><br>        Plaintiff,<br><br>v.<br><br>Akanoc Solutions, Inc., et al.<br><br>        Defendants. | Case No.: C 07 3952 JW<br><br>DECLARATION OF NIKOLAY LIVADKIN IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; EXHIBITS THERETO<br><br>Date:  September 8, 2008<br>Time:  9:00 a.m.<br>Courtroom 8, 4th Floor |

I, NIKOLAY LIVADKIN, declare as follows:

1.      I am an Anti-Counterfeiting Coordinator with LVMH Fashion Group, a division of LVMH.  I have responsibility for global Internet enforcement for brands included within LVMH Fashion Group, specifically including Plaintiff, Louis Vuitton Malletier, S.A. ("Louis Vuitton").  I have had responsibility for Louis Vuitton's Internet enforcement efforts since 2002.  Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows.

Louis Vuitton v Akanoc, et al.: Livadkin Declaration in Opposition
to Defendants' Motion for Summary Judgment

2.     Louis Vuitton has duly registered and renewed the following trademarks and

copyrights with the United States Patent and Trademark Office and the United States Copyright

Office, respectively:

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) in a Circle Design | 286,345 |  | 18 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Design | 297,594 |  | 18 |
| LOUIS VUITTON | 1,045,932 | LOUIS VUITTON | 18 |
| Louis Vuitton (Interlocked Letters) Design | 1,519,828 |  | 18 |
| LOUIS VUITTON MALLETIER A PARIS in Rectangle | 1,615,681 | LOUIS VUITTON MALLETIER A PARIS | 16, 18 |
| Louis Vuitton (Interlocked Letters) on Epi Leather Design | 1,655,564 |  | 18 |

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Pattern Design | 1,770,131 |  | 25 |
| Louis Vuitton (Interlocked Letters) Design | 1,794,905 |  | 16, 25 |
| Louis Vuitton (Interlocked Letters) and Monogram Canvas Design | 1,875,198 |  | 16 |
| Louis Vuitton (Interlocked Letters) | 1,938,808 |  | 14, 24 |
| LOUIS VUITTON World Mark | 1,990,760 | LOUIS VUITTON | 16, 18, 24, 25 |
| Louis Vuitton (Interlocked Letters) Design | 2,291,907 |  | 34 |
| LOUIS VUITTON | 2,303,212 | LOUIS VUITTON | 34 |

| TRADEMARK | REGISTRATION NUMBER | TRADEMARK PICTURE | CLASS OF GOODS |
|---|---|---|---|
| Louis Vuitton (Interlocked Letters) Design | 2,361,695 |  | 25 |
| LOUIS VUITTON PARIS and Damier (pattern design) | 2,378,388 |  | 18 |

| Copyright | Reg. No. | Date Published | Date Registered |
|---|---|---|---|
| Multicolor Monogram – Black Print | VA 1-250-121 | 12/18/02 | 06/24/04 |
| Multicolor Monogram – White Print | VA 1-250-120 | 12/18/02 | 06/24/04 |

3.    True and correct copies or proof of registration of all of the aforementioned properties are collectively attached hereto as Exhibit A.

4.    Counterfeiting of Louis Vuitton brands online is widespread. A significant percentage of the overall online counterfeiting activity as it relates to the Louis Vuitton brand originates in the People's Republic of China. In view of various practical and legal impediments to efficient and effective enforcement of trademark rights in the People's Republic of China, a significant part of Louis Vuitton's online enforcement efforts occur in end user markets, specifically including the United States.

Louis Vuitton v Akanoc, et al.: Livadkin Declaration in Opposition
to Motion for Summary Judgment

5.    Louis Vuitton is well-positioned to identify counterfeit sales online for several reasons.  Among the more important factors is the fact that Louis Vuitton has a strictly controlled distribution network such that the only online sites which sell new authentic Louis Vuitton merchandise in the United States are eluxury.com and louisvuitton.com, controlled by Plaintiff. Samples of offers for Louis Vuitton merchandise from those authorized sites are attached as Exhibit B and C, respectively.  Although there is a secondary market for legitimate used Louis Vuitton merchandise, in most cases counterfeit sites are easily distinguished.  First, many sites specifically self-identify their sites as offerors of "replica" merchandise.  Second, many sites offer a range of merchandise inconsistent with the more limited range of product offered by sellers in the secondary market.  Third, counterfeiters identify products in ways which distinguish their product from legitimate merchandise.  Finally, the price point of legitimate Louis Vuitton merchandise, combined with strict control over distribution which effectively eliminates any significant discounting of legitimate merchandise all aid me in confirming counterfeit offers online.

6.    Over my years of managing Louis Vuitton's online enforcement efforts, during which time I have analyzed product purchased from several hundred websites each year, I have never obtained legitimate product from a website where my initial determination was that the offered product was counterfeit.

7.    As a general rule, Louis Vuitton strives to secure voluntary compliance with its trademarks rights and the trademark laws through the service of cease and desist letters.  In every case, before a demand letter is transmitted, I insure that Louis Vuitton's file includes evidence of the infringing offer, specifically including contemporaneous printouts from the website evidencing at least some of the offers which are the subject of Louis Vuitton's demands.

8.    Each cease and desist letter is followed by a letter to the internet service provider ("ISP") which acts as host of the website offering counterfeit Louis Vuitton merchandise.  In most

Louis Vuitton v Akanoc, et al.: Livadkin Declaration in Opposition
to Motion for Summary Judgment

cases, demand letters sent to ISPs are sent to enforce both Louis Vuitton's trademark rights and copyrights. In few cases, where only Louis Vuitton's trademark rights are concerned, I transmit such letters in the form of notices called for under the Digital Millennium Copyright Act ("DMCA"). In my experience, responsible ISPs are familiar with the standards and requirements imposed by the DMCA and are more likely to remove infringing offers where Louis Vuitton's demand addressed to the ISP are framed in the familiar format of a DMCA notice. Before sending a demand to an ISP, I ping the website to confirm the Internet Protocol ("IP") address of the website and I research the Internet, using widely accessible online records to identify the ISP to which the IP address was assigned. I insure that Louis Vuitton's files include records of those additional investigative steps before sending a demand to an ISP.

9.      The initial demand to an ISP is transmitted usually by email and, if Louis Vuitton does not receive a satisfactory response within a one to two week time frame or confirm that the counterfeit offers have been deleted, a follow up is sent. The follow up refers to the initial demand, includes a copy of the initial demand and is transmitted by messenger service or by some method intended to confirm receipt of the demand at the address to which the demand has been sent. I rely upon online records to find the address to which demands are sent, specifically including "Contact Me" pages for the ISP and, more importantly, the agent for service filing under the DMCA with the United States Copyright Office.

10.     My office sends hundreds of DMCA notices to ISPs based in the United States each year and the vast majority of these notices result in an immediate disabling of the counterfeit offers which the subject of the DMCA notice.

11.     During the second half of 2006, I began to notice a pattern where counterfeit offers were not removed, even in response to follow up demands. Upon closer examination it appeared that most of these demands were addressed to the Defendants. In connection with that examination

Louis Vuitton v Akanoc, et al.: Livadkin Declaration in Opposition
to Motion for Summary Judgment

I noted that (a) neither of the ISP Defendants had filed a notice with the Copyright Office designated an agent for service of DMCA notices, and (b) that one of the ISP Defendants, Managed Solutions Group, Inc. did not maintain a webpage which posted terms of service, acceptable use policy or other document listing policies for handling notices of infringement as required by the DMCA or a "Contact Us" page with appropriate contact information. Consequently, I researched the World Wide Web and noticed several postings of commercial offers by Managed Solutions Group, Inc. designating www.managed.com as the corporate website for Managed Solutions Group, Inc. I then visited the website located at www.managed.com and noted under "Contact Us", that the "corporate offices" were located at 2115 Linwood Avenue 5th Floor, Fort Lee, NJ 07024, while for network administration issues the contact electronic mail address was abuse@webhostplus.com. As a result of (b) I was later informed from discovery in this action, that the New Jersey address to which two demands were sent as detailed below, actually belonged to a different company, Managed, Inc., which was a company "spun" out of Managed Solutions Group, Inc., a defendant in this case, and that the website www.managed.com was simply not updated to reflect the change in corporate structure.

12.     On or about October 16, 2006, I sent a letter via electronic mail to Managed Solutions Group, Inc., 2115 Linwood Ave 5th Floor, Fort Lee NJ 07024, USA at abuse@webhostplus.com regarding wendy929.net, hosted on IP address 205.209.163.83 registered to Managed Solutions Group, Inc. After receiving no response and confirming that the objectionable material was still viewable, I sent a "reminder" or follow up electronic mail to abuse@webhostplus.com on or about October 25, 2006. In the absence of any kind of response, I noticed that the wendy929.net was moved to a different server with IP address 204.13.69.140, registered to Akanoc Solutions, Inc. I then sent another letter and email on or about October 30, 2006, to Akanoc Solutions, Inc. at 45535 Northport loop East, Freemont, CA 94538, USA and

abuse@akanoc.com. I never received a response to any of these letters or emails. Two reminder letters were sent, by electronic mail on or about January 17, 2007 to abuse@akanoc.com and by express mail, on January 23, 2007. Again, no response to these letters or emails was received and wendy929.net remained on Akanoc Solutions, Inc.'s server 204.13.69.140 until approximately mid-December 2007.

13.    On or about February 7, 2007, I sent a letter via electronic mail to Managed Solutions Group, Inc., 2115 Linwood Ave 5th Floor, Fort Lee, New Jersey 07024, USA on abuse@webhostplus.com regarding atozbrand.com, hosted on IP address 205.209.140.10 registered to Managed Solutions Group, Inc. After receiving no response and confirming that the objectionable material was still viewable, I sent a follow up "reminder" letter by express mail to Managed Solutions Group Inc at 46750 Fremont Blvd, Fremont, CA 94538, USA on or about February 21, 2007. I never received a response to any of these letters or email. On or about March 22, 2007, the express mail carrier DHL returned the February 21, 2007 follow up letter and explained that the package could not be delivered at that location. On or about March 30, 2007, I drafted a new cease and desist letter and sent it by DHL express mail to Managed Solutions Group, Inc., attn: Steve Chen, 45535 Northport Loop East, Fremont, CA 94538. DHL confirmed delivery of the letter on April 4, 2007. I received no response whatsoever to this letter but noticed on or about April 7, 2007 that atozbrand.com was moved to a different server with IP address 204.16.195.49, registered to Akanoc Solutions, Inc. on which atozbrand.com remained until approximately mid-June 2007.

14.    On or about February 9, 2007, I sent a letter via electronic mail to Akanoc Solutions Inc., 45535 Northport Loop East, Fremont, CA 95538, USA on abuse@akanoc.com regarding bag925.com, hosted on IP address 204.16.195.46, registered to Akanoc Solutions, Inc.. After receiving no response and confirming that the objectionable material was still viewable, I sent a

Louis Vuitton v Akanoc, et al.: Livadkin Declaration in Opposition
to Motion for Summary Judgment

follow up "reminder" letter by express mail carrier DHL to Akanoc Solutions Inc. 45535 Northport Loop East, Fremont, CA 95538, USA on or about February 19, 2007 (DHL confirmed delivery on March 5, 2007). I never received a response to any of these letter or email, while bag925.com remained on various servers registered to Akanoc Solutions, Inc. until approximately mid-June 2007.

15.    On or about October 23, 2006, I sent a letter via electronic mail to Akanoc Solutions, Inc., 45535 Northport Loop East, Fremont, CA 95538 at abuse@akanoc.com regarding eshoes99.com, hosted on IP address 204.16.197.26 , registered to Akanoc Solutions, Inc. After receiving no response and confirming that the objectionable material was still viewable, I sent a follow up email on or about January 17, 2007 to abuse@akanoc.com and a follow up letter on February 6, 2007 by express mail carrier Fedex to Akanoc Solutions, Inc., 45535 Northport Loop East, Fremont, CA 95538. Fedex confirmed delivery on February 8, 2007. On or about February 14, 2007, I realized that eshoes99.com had been actually moved to another server with IP address 205.209.172.165, registered to Managed Solutions Group, Inc. and decided to send a new cease and desist letter that same day via email to Managed Solutions Group, Inc., 46750 Fremont Blvd. #107, Fremont, CA 94538 at abuse@managedsg-inc.com. After receiving no response and confirming that the objectionable material was still viewable, I sent a follow up letter by express mail carrier DHL to Managed Solutions Group, Inc. at 46750 Fremont Blvd. #107, Fremont, CA 94538, USA on or about February 23, 2007. Still without a response or evidence of action, I contacted DHL and was informed by DHL on March 20, 2007 that the package could not be delivered at that location and the follow up letter was returned to me on or about March 23, 2007. I then sent a new cease and desist letter to Managed Solutions Group, Inc., Steve Chen, 45535 Northport Loop East, Fremont, CA 94538 via express mail carrier DHL on or about March 30,

Louis Vuitton v Akanoc, et al.: Livadkin Declaration in Opposition
to Motion for Summary Judgment

2007, delivery of which DHL confirmed on April 3, 2007. I never received a response to any of these letters or email.

16.    On or about February 21, 2007, I sent a letter via electronic mail to Akanoc Solutions Inc., 45535 Northport Loop East, Fremont, CA 94538, USA at info@akanoc.com regarding ape168.com, hosted on 204.16.197.27 registered to Akanoc Solutions, Inc.. After receiving no response and confirming that the objectionable material was still viewable, I sent a follow up or "reminder" letter by express mail carrier DHL to Akanoc Solutions Inc. at 45535 Northport Loop East, Fremont, CA 94538, USA on or about March 19, 2007. DHL confirmed delivery of the letter on March 23, 2007. I never received a response to any of these letter or email.

17.    I caused further investigation to be made concerning each of the websites which was the subject of the DMCA notices sent to the ISP Defendants, as well as other websites hosted by Defendants in this action and evidentiary purchases were made on behalf of Louis Vuitton by an investigator acting under Louis Vuitton's direction. Each of the purchases was reviewed by me and I have confirmed that each is counterfeit. Pursuant to that investigation and analysis we determined that the ISP defendants operated out of the same premises and that they appeared to be owned and operated by the same individual, the individual defendant Steven Chen. I caused a further written demand to be transmitted to Mr. Chen's attention on or about April 20, 2007, and when that, also, did not result in a disabling of the counterfeit offers, Louis Vuitton filed the present action.

18.    During the course of the litigation, Louis Vuitton has identified numerous additional websites which now total more than eighty (80) which were hosted by servers controlled by the ISP Defendants and which have each been the subject of subsequent demands to disable the infringing offers. Follow up investigation concerning those demands reveal that, notwithstanding the present litigation, in many cases the infringing offers which were the subject of Louis Vuitton's demands

1   remained accessible through the ISP Defendants' servers for several weeks after the initial demand

2   was transmitted.

3       19.    Additionally, while investigating the infringing websites, I conducted Reverse IP

4   Searches to determine other websites hosted at the same IP Address of an identified infringing

5   website. Through this process, I reviewed hundreds of websites which also sold counterfeit Louis

6

7   Vuitton product while hosted by one or another of the Defendants.

8       20.    All of the counterfeiting activities that Defendants support and allow to continue

9   damage Louis Vuitton's goodwill, undermine the value of its intellectual properties, and affect

10  sales of legitimate product. However, in this instance, and given the difficulty associated with

11
    Defendants' lack of information due to "crash", erasure or otherwise, Louis Vuitton seeks to
12
    recover statutory damages.
13
14      I declare under penalty of perjury under the laws of the United States of America that the

15  foregoing is true and correct.

16      Executed this 30 day of July, 2008, at Paris, France

17

18

19                              NIKOLAY LIVADKIN

20

21

22

23

24

25

26

27

28

Louis Vuitton v Akanoc, et al.: Livadkin Declaration in Opposition    - 11 -
to Motion for Summary Judgment

# EXHIBIT C

1  **GAUNTLETT & ASSOCIATES**
   David A. Gauntlett (SBN 96399)
2  James A. Lowe (SBN 214383)
   Brian S. Edwards (SBN 166258)
3  18400 Von Karman, Suite 300
   Irvine, California 92612
4  Telephone:    (949) 553-1010
   Facsimile:    (949) 553-2050
5  jal@gauntlettlaw.com
   bse@gauntlettlaw.com
6
   Attorneys for Defendants
7  Akanoc Solutions, Inc.,
   Managed Solutions Group, Inc.
8  and Steve Chen

9

10                **UNITED STATES DISTRICT COURT**

11    **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

12

13  LOUIS VUITTON MALLETIER, S.A.,        )  Case No.: C 07-3952 JW
                                          )
14                                        )  Hon. James Ware
                                          )
15              Plaintiff,                 )  **DEFENDANTS' EVIDENTIARY**
                                          )  **OBJECTION TO THE LIVADKIN**
16                                        )  **DECLARATION IN SUPPORT OF**
       vs.                                )  **VUITTON'S OPPOSITION TO**
17                                        )  **DEFENDANTS' MOTION FOR**
                                          )  **SUMMARY JUDGMENT**
18  AKANOC SOLUTIONS, INC., et al.,       )
                                          )
19                                        )  Date:  September 8, 2008
                                          )  Time:  9:00 a.m.
20              Defendants.                )  Dept.: Courtroom 8, 4th Floor
                                          )
21  _____)

22

23

24

25

26

27

28

10562-002-8/25/2008-162578.1                    OBJECTION TO LIVADKIN DECL
                                          IN OPPOSITION TO DEFTS' MSJ

EXHIBIT C                              Page 24

1        Plaintiff hereby objects to the Declaration of Nikolay Livadkin ("Livadkin Declaration")

2    filed in support of Vuitton's Opposition to Defendants' Motion for Summary Judgment.

3        <u>Paragraph 2:</u> The statement that "a significant percentage of the overall online counterfeiting

4    activity as it relates to the Louis Vuitton brand originates in the People's Republic of China" is not

5    relevant to this matter under Fed. R. Evid. 401. This statement must be excluded under Fed. R.

6    Evid. 403 because the minimal probative value of the statement is substantially outweighed by the

7    danger of unfair prejudice.

8        <u>Paragraph 8:</u> Defendants object to statements about undefined "widely accessible online

9    records" as being vague and irrelevant. Defendants object to the extent the statement that Livadkin

10   himself pings the websites conflicts with his prior testimony. Livadkin has previously testified that

11   numerous employees in his office perform such activities (Livadkin Deposition 54:3-5, 71:9-14,

12   101:12-25).

13       <u>Paragraph 12:</u> Statements that wendy929.net was hosted on a particular IP address, moved to

14   a particular IP address, or that wendy929.net remained on a particular IP address for any period of

15   time are inadmissible hearsay under Fed. R. Evid. 801. Any characterization of the website material

16   being "objectionable" is vague and is hearsay because (1) Vuitton has offered no evidence to support

17   this assertion and (2) only someone with knowledge of the accuracy of the contents of a website may

18   authenticate its contents. *See Internet Specialties West, Inc. v. ISPWest*, No. CV 05-3296 FMC

19   AJWX, 2006 WL 4568796, at *2 (C.D. Cal. Sept. 19, 2006).

20       <u>Paragraph 13:</u> Statements that atozbrand.com was hosted on a particular IP address, moved

21   to a particular IP address, or that atozbrand.com remained on a particular IP address for any period

22   of time are inadmissible hearsay under Fed. R. Evid. 801. Any characterization of the website

23   material being "objectionable" is vague and is hearsay because (1) Vuitton has offered no evidence

24   to support this assertion and (2) only someone with knowledge of the accuracy of the contents of a

25   website may authenticate its contents. *See Internet Specialties West, Inc. v. ISPWest*, No. CV 05-

26   3296 FMC AJWX, 2006 WL 4568796, at *2 (C.D. Cal. Sept. 19, 2006).

27       <u>Paragraph 14:</u> Statements that bag925.com was hosted on a particular IP address, moved to a

28   particular IP address, or that bag925.com remained on a particular IP address for any period of time

1    are inadmissible hearsay under Fed. R. Evid. 801. Any characterization of the website material

2    being "objectionable" is vague and is hearsay because (1) Vuitton has offered no evidence to support

3    this assertion and (2) only someone with knowledge of the accuracy of the contents of a website may

4    authenticate its contents. *See Internet Specialties West, Inc. v. ISPWest*, No. CV 05-3296 FMC

5    AJWX, 2006 WL 4568796, at *2 (C.D. Cal. Sept. 19, 2006).

6        Paragraph 15: Statements that eshoes99.com was hosted on a particular IP address, moved to

7    a particular IP address, or that eshoes99.com remained on a particular IP address for any period of

8    time are inadmissible hearsay under Fed. R. Evid. 801. Any characterization of the website material

9    being "objectionable" is vague and is hearsay because (1) Vuitton has offered no evidence to support

10   this assertion and (2) only someone with knowledge of the accuracy of the contents of a website may

11   authenticate its contents. *See Internet Specialties West, Inc. v. ISPWest*, No. CV 05-3296 FMC

12   AJWX, 2006 WL 4568796, at *2 (C.D. Cal. Sept. 19, 2006).

13       Paragraph 16: The statement that ape168.com was hosted on a particular IP address is

14   inadmissible hearsay under Fed. R. Evid. 801. Any characterization of the website material being

15   "objectionable" is vague and is hearsay because (1) Vuitton has offered no evidence to support this

16   assertion and (2) only someone with knowledge of the accuracy of the contents of a website may

17   authenticate its contents. *See Internet Specialties West, Inc. v. ISPWest*, No. CV 05-3296 FMC

18   AJWX, 2006 WL 4568796, at *2 (C.D. Cal. Sept. 19, 2006).

19       Paragraph 17: The statement referencing "websites hosted by Defendants" is a legal

20   conclusion and hearsay under Fed. R. Evid. 801. The reference to "an investigator acting under

21   Louis Vuitton's direction" is vague and irrelevant because it does not identify the investigator. Any

22   statements referring to what "we" did are vague because "we" is not defined and is hearsay. Any

23   characterization of the website material being "counterfeit" is vague and is hearsay because Vuitton

24   has offered no facts to support this assertion and no evidence this is within the personal knowledge

25   of the witness.

26       Paragraph 18: Any reference to websites "hosted by servers controlled by the ISP

27   defendants" and the statement that offers "remained accessible through the ISP defendants' servers"

28   are inadmissible hearsay under Fed. R. Evid. 801 and unfounded conclusions.

EXHIBIT C                                                            Page 26

1

     **Paragraph 19:**  Livadkin does not explain what constitutes "Reverse IP Searches" and any

2

references to such searches are hearsay under Fed. R. Evid. 801.  The statement that Livadkin

3

"reviewed hundreds of websites which also sold counterfeit Louis Vuitton product while hosted by

4

one or another of Defendants" is an unsubstantiated and improper legal conclusion apparently based

5

on hearsay.

6

7

Dated:    August 25, 2008

         **GAUNTLETT & ASSOCIATES**

8

9

    By:    <u>/s/ James A. Lowe</u>

10

          David A. Gauntlett

          James A. Lowe

11

          Brian S. Edwards

12

    Attorneys for Defendants Akanoc Solutions, Inc., Managed Solutions Group, Inc., and Steve Chen

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        3

        OBJECTION TO LIVADKIN DECL
        IN OPPOSITION TO DEFTS' MSJ