| | |
|---|---|
| 1 | **GAUNTLETT & ASSOCIATES** |
| | David A. Gauntlett (SBN 96399) |
| 2 | James A. Lowe (SBN 214383) |
| | Brian S. Edwards (SBN 166258) |
| 3 | Christopher Lai (SBN 249425) |
| | 18400 Von Karman, Suite 300 |
| 4 | Irvine, California  92612 |
| | Telephone:     (949) 553-1010 |
| 5 | Facsimile:      (949) 553-2050 |
| | jal@gauntlettlaw.com |
| 6 | bse@gauntlettlaw.com |
| | cl@gauntlettlaw.com |
| 7 | |
| | Attorneys for Defendants |
| 8 | Akanoc Solutions, Inc., |
| | Managed Solutions Group, Inc. |
| 9 | and Steve Chen |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A., | Case No.:  C 07-3952 JW (HRL) |
| Plaintiff, | |
| vs. | **DEFENDANTS' RESPONSE TO VUITTON'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS** |
| AKANOC SOLUTIONS, INC., et al., | |
| Defendants. | |

164477.1-10562-002-3/16/2009        **DEFENDANTS' RESPONSE TO VUITTON'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS – C 07-3952 JW**

Dockets.Justia.com

Defendants hereby respond to Plaintiff Louis Vuitton Malletier ("Vuitton's") objections to Defendants' proposed jury instructions.

## General Response to Vuitton's Improper Reliance on the Law of the Case Doctrine

Vuitton repeatedly and improperly objects to Defendants' proposed jury instructions on the basis that these instructions violate the law of the case doctrine. Contrary to Vuitton's argument, the Court's legal instructions to the jury were not determined in this Court's December 23, 2008 Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment. There, the Court did not address the proper legal standard that the jury will be instructed to apply in this case; it merely considered whether a genuine issue of material fact existed and if Defendants were entitled to a judgment as a matter of law. *Celotex v. Catrett*, 417 U.S. 317, 323-24 (1986).

Vuitton also cannot invoke the law of the case doctrine because this doctrine is limited to issues determined by the same court ***on appeal***:

> The "law of the case" doctrine provides that "one panel ***of an appellate court*** will not as a general rule reconsider questions which ***another panel*** has decided ***on a prior appeal*** in the same case." *United States v. Scrivner,* 189 F.3d 825, 827 (9th Cir. 1999). [Emphasis added.]

> [T]he prior decision of legal issues should be followed ***on a later appeal*** "unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991) [Emphasis added.]

Vuitton cites *United States v. Cuddy,* 147 F.3d 1111 (9th Cir. 1998), but there the "law of the case doctrine" was implicated only because the District Court did not follow the decision of the Ninth Circuit Court of Appeals after remand:

> Defendants Sherwood and Cuddy then appealed their convictions to this court in a consolidated appeal. See *United States v. Sherwood,* 98 F.3d 402 (9th Cir.1996) ("*Sherwood I*"). We affirmed their convictions but remanded to the district court the question whether it properly departed upward based on Application Note 8 of U.S.S.G. § 2B3.2, which permits an upward departure if the offense involved "a threat to a family member of the victim."
>
> * * *
>
> First, the defendants note that our decision in *Sherwood I* stated that

> the record did not support a finding that Ms. Wynn's life was threatened. Thus, they argue that the district court violated the "law of the case" when it determined that the record did support such a finding.

*Id.* at 1113.

Vuitton cannot invoke the law of the case doctrine here because, not only is this doctrine limited to cases on appeal, the Court has never ruled on the proper legal standards in this case or the determinations to be made by the jury.

<u>Response to Vuitton's Objections to Jury Instruction No. 1.2 Claims and Defenses</u>

Defendants' proposed jury instruction No. 1.2 does not misstate the law when it says Defendants have no duty to "monitor" content. Vuitton fails to cite any case law saying otherwise. Vuitton also wrongly assumes that monitoring Internet server content is synonymous with the "willful blindness" element of contributory trademark infringement. But no case law states that an Internet Service Provider must monitor content in order to avoid a "willful blindness" finding.

<u>Response to Vuitton's Objections to Jury Instruction No. 5.1 Damages Proof</u>

The entire first paragraph of Defendants' proposed jury instruction No. 5.1 is not biased or misleading as Vuitton claims. The instruction fairly states that the issue of whether to award damages is a matter for the jury to decide.

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 1 Contributory Trademark Infringement</u>

The requirement that a third-party infringer be "identifiable" is supported by *E-pass Technologies, Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222-23 (Fed. Cir. 2007) (requiring that a plaintiff be able to point to at least one infringing end user). This requirement is consistent with the causal nexus that other courts have required when analyzing the direct infringement element of contributory trademark infringement. Contrary to Vuitton's claims, the Court's partial summary judgment order did not determine any of the pertinent legal instructions in this case.

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 2 Contributory Copyright Infringement</u>

The requirement that a third-party infringement be by a "specified" third party is supported

**DEFENDANTS' RESPONSE TO VUITTON'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS – C 07-3952 JW**

by *E-pass Technologies, Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222-23 (Fed. Cir. 2007) (requiring that a plaintiff be able to point to at least one infringing end user) and *Tiffany, Inc. v. Ebay, Inc.* 576 F. Supp. 2d 463, 510 (S.D.N.Y. 2008) ("[C]ourts have also rejected a standard that would reach conduct that only might be infringing. Instead, courts have required a much higher showing that a defendant knew or had reason to know of specific instances of actual infringement.").

*Tiffany,* 576 F. Supp. 2d at 510 n.37 also indicates that, in order to prove liability, Vuitton must show that Defendants had knowledge of infringement at the time the infringement was taking place ("Under copyright law, generalized knowledge that copyright infringement may take place in an Internet venue is insufficient to impose contributory liability. *See, e.g., A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1027 (9th Cir.2001) ('The mere existence of the Napster system, absent actual notice and Napster's demonstrated failure to remove the offending material, is insufficient to impose contributory liability.') . . . .").

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 3 Willful Trademark Infringement</u>

Contrary to Vuitton's objection, Defendants' proposed jury instruction that willfulness be proved by a "clear and convincing" standard is based not only on "one case from the District Court of Oregon." It is based on controlling Ninth Circuit authority. *See Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir.1993) ("Willful infringement carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard.").

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 5 Defenses to Contributory Copyright Infringement – DMCA Safe Harbor - Requirements</u>

This instruction is fully applicable to Defendants because they are Internet service providers ("ISPs") that have registered for the safe harbor protections offered by § 512(c) of the Digital Millennium Copyright Act ("DMCA"). This instruction is proper because the DMCA exempts ISPs from contributory copyright infringement claims that result from the conduct of their customers when they meet certain criteria.

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 6 Obligation of</u>

<u>Rights Holder to Notify ISP – ISP Prohibited from Monitoring Contents of Servers</u>

This instruction is entirely appropriate because Defendants have not monitored contents of the servers for anything other than mechanical or service quality control checks, as permitted by law.

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 7 Contributory Copyright Infringement – Substantial Non-Infringing Uses</u>

"Substantial non-infringing uses" have a direct effect on the issue of Defendant's constructive knowledge of infringing activity that is an element of contributory copyright infringement.

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 8 Contributory Copyright Infringement – Induced, Caused or Materially Contributed to Direct Infringement</u>

Contrary to Vuitton's objections, this proposed jury instruction is not misleading. It is based on controlling Ninth Circuit case law. *See Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir. 1996); *Perfect 10, Inc. v. Visa International Service Association,* 494 F.3d 788, 798 (9th Cir. 2007); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 985 F. Supp. 949, 962 (C.D. Cal. 1997), *aff'd*, *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999).

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 9 Contributory Trademark Infringement – Direct Control and Monitoring</u>

This proposed jury instruction is proper. The requirement that Vutitton must show "control over operations at infringing websites including advertising and promoting infringing businesses" is based on *Fare Deals Ltd. v. World Choice Travel.Com, Inc*., 180 F. Supp. 2d 678, 689-90 (D. Md. 2001) ("Moreover, liability in the flea-market cases rested on more than the relatively passive degree of control and monitoring usually exercised by a landlord. **The flea-market operators not only exercised considerable actual control over the operations of their vendors; they also actively supported the infringing businesses of their vendors – by advertising and promoting the flea markets and by providing the vendors their customers**." (emphasis added)); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 983, 985 (9th Cir. 1999) ("[Lockheed] must prove that NSI supplies a product to third parties with actual or constructive knowledge that its product is being used to infringe 'Skunk Works.' . . . Direct control and monitoring of the instrumentality used

1 by a third party to infringe the plaintiff's mark permits the expansion of *Inwood Lab's* 'supplies a product' requirement for contributory infringement.").

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 10 Contributory Trademark Infringement – Induced, Caused or Materially Contributed to Direct Infringement</u>

This proposed jury instruction is proper. This instruction is based on *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936-37 (2005) ("[M]ere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability.").

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 11 Contributory Trademark Infringement – Willful Blindness</u>

Contrary to Vuitton's objection, the Court has not yet determined its jury instruction for the element of willful blindness. Defendants' proposed instruction is based on *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 855 (1982); *Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992); and *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 962 n.7 (C.D. Cal. 1997), *aff'd, Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999).

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 12 Contributory Copyright Infringement – Induced, Caused or Materially Contributed to Direct Infringement</u>

Contrary to Vuitton's objection, Defendants' proposed supplemental jury instruction No. 12 correctly states the standard for direct infringement set forth in *Perfect 10, Inc. v. Visa Int'l Service Ass'n,* 2004 WL 1773349, at *3 (N.D. Cal. 2004) ("To have engaged in contributory copyright infringement, it is not sufficient for the Defendants to merely have contributed to the general business of the infringer. To have materially contributed to copyright infringement, 'the ... assistance must bear some direct relationship to the infringing acts.' 3-12 *Nimmer on Copyright* § 12.04[A][2][a] (2004); . . . *MGM Studios, Inc. v. Grokster, Ltd.,* 259 F.Supp.2d 1029, 1042 (C.D.Cal.2003) (The Defendants' assistance 'must bear a direct relationship to the infringing acts.').").

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 13 Contributory Copyright Infringement – Induced, Caused or Materially Contributed to Direct Infringement</u>

Defendants' proposed supplemental jury instruction No. 13 correctly states the applicable standard for inducement, causation or material contribution to direct infringement as it pertains to Defendants. *A&M Records, Inc. v Napster, Inc.,* 239 F.3d 1004 (9th Cir. 2001) ("Napster was a file sharing program which, while capable of non-infringing use, was expressly engineered to enable the easy exchange of pirated music and was widely so used."); *Perfect 10, Inc. v. Visa Int'l Service Ass'n*, 494 F.3d 788, 799 n.10 (9th Cir. 2007) ("In fact, as virtually every interested college student knew – and as the program's creator expressly admitted – **the *sole purpose* of the Napster program was to provide a forum for easy copyright infringement.** Perfect 10 does not contend that Defendants' payment systems were engineered for infringement in this way, and **we decline to radically expand *Napster*'s cursory treatment of 'material contribution' to cover a credit card payment system that was not so designed."** (bold emphasis added; citation omitted)).

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 14 Contributory Copyright Infringement – Induced, Caused or Materially Contributed to Direct Infringement</u>

This proposed supplemental jury instruction is proper. Whether a party provides content-neutral services is a factor that relates to the inducement, causation or material contribution to direct infringement element of contributory copyright infringement as it pertains to Defendants. *Perfect 10, Inc. v. Visa Int'l Service Ass'n*, 2004 WL 1773349, at *3 (N.D. Cal. 2004) ("Unlike [*Perfect 10, Inc. v. Cybernet Ventures, Inc*.] Defendants provide **content-neutral services**. Defendants do not promote the websites that use their services. Nor do Defendants have content-specific regulations with which merchants must comply before using Defendants services, as Cybernet did. Defendants do not hold out certain merchants as being providers of a particular quality of product. Defendants are concerned solely with the financial aspects of the websites, not their content." (emphasis added)).

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 15 Contributory Copyright Infringement – Induced, Caused or Materially Contributed to Direct Infringement</u>

This proposed supplemental jury instruction is properly based on *Perfect 10, Inc. v. Visa Int'l Service Ass'n*, 2004 WL 1773349, at *4 (N.D. Cal. 2004) ("Plaintiff alleges that because Defendants provide essential financial services to the alleged infringers, they are materially contributing. There are two flaws with this argument. The first flaw is the assumption that the services Defendants

provide are essential to the functioning of the allegedly infringing websites. Plaintiff asserts, 'acceptance of MasterCard and Visa is necessary to an Internet merchant's commercial viability.' This statement is belied by facts from the Plaintiff's own complaint. Plaintiff itself was blacklisted by Visa and had its merchant account revoked, yet it still continues to operate its website and accept Visa and Mastercard as payment through an intermediate payment service. The allegedly infringing websites could employ intermediate payment services if Defendants terminated their merchant accounts. The websites could also use alternate forms of payment such as personal checks, money orders, debit cards, or other credit card providers. **There is no reason to believe that the allegedly infringing websites could not continue to infringe and operate effectively** if Visa and Mastercard were to terminate their financial services." (emphasis added)).

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 16 Contributory Trademark Infringement – Likelihood of Confusion</u>

This proposed supplemental jury instruction is proper because, despite Vuitton's claims, it has not yet been established whether Vuitton's alleged websites were, in fact, selling counterfeit goods. This unresolved factual issue necessitates an analysis on whether the alleged sale of these goods created a "likelihood of confusion"

<u>Response to Vuitton's Objections to Supplemental Jury Instruction No. 17 Contributory Trademark Infringement – Likelihood of Confusion</u>

This proposed supplemental jury instruction is proper because, despite Vuitton's claims, it has not yet been established whether Vuitton's alleged websites were, in fact, selling counterfeit goods. This unresolved factual issue necessitates an analysis as to whether the alleged sale of these goods created a "likelihood of confusion."

Dated: March 16, 2009

**GAUNTLETT & ASSOCIATES**

By: /s/James A. Lowe
David A. Gauntlett
James A. Lowe
Brian S. Edwards
Christopher Lai
Attorneys for Defendants Akanoc Solutions, Inc., Managed Solutions Group, Inc. and Steve Chen

164477.1-10562-002-3/16/2009       7       **DEFENDANTS' RESPONSE TO VUITTON'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS – C 07-3952 JW**