1  **GAUNTLETT & ASSOCIATES**
   David A. Gauntlett (SBN 96399)
2  James A. Lowe (SBN 214383)
   Brian S. Edwards (SBN 166258)
3  Christopher Lai (SBN 249425)
   18400 Von Karman, Suite 300
4  Irvine, California 92612
   Telephone:    (949) 553-1010
5  Facsimile:    (949) 553-2050
   jal@gauntlettlaw.com
6  bse@gauntlettlaw.com
   cl@gauntlettlaw.com
7
   Attorneys for Defendants
8  Akanoc Solutions, Inc.,
   Managed Solutions Group, Inc.
9  and Steve Chen

10              **UNITED STATES DISTRICT COURT**

11          **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

12

13  LOUIS VUITTON MALLETIER, S.A.,              ) Case No.: C 07-3952 JW (HRL)
                                                )
14                  Plaintiff,                  )
                                                ) **DEFENDANTS' REPLY TO VUITTON'S**
15       vs.                                    ) **OPPOSITION TO MOTION IN LIMINE #2**
                                                ) **TO EXCLUDE INTERNET MATERIAL**
16                                              ) **AND TESTIMONY ABOUT INTERNET**
                                                ) **MATERIAL**
17  AKANOC SOLUTIONS, INC., et al.,             )
                                                )
18                  Defendants.                 )
                                                )
19  _____ )

20

21

22

23

24

25

26

27

28

## I. VUITTON CANNOT PROPERLY AUTHENTICATE INTERNET MATERIAL

The Internet material that Vuitton seeks to introduce cannot be authenticated and is inadmissible. Vuitton has misinterpreted Defendants' motion in limine #2 as arguing that all Internet material should always be excluded from trial. Defendants' position is not that broad. Instead, Defendants' motion in limine argues that (1) Vuitton has not called the proper witnesses whose testimony is necessary to authenticate the material and (2) without such testimony, the Internet material is inadmissible.

### A. Vuitton's Witnesses Cannot Authenticate the Internet Material

Fed. R. Evid. 901(a) requires a proponent to show that material from the Internet is authentic before such material can be admitted as evidence. *Williams v. Long*, 585 F. Supp. 2d 679 (D. Md. 2008). Rule 901(a) provides that "the requirement of authentication or identification as a condition precedent to its admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

#### 1. Vuitton Cannot Provide Testimony Necessary to Authenticate Its Internet Material

In order to satisfy Fed. R. Evid. 901(a), someone with personal knowledge of the accuracy of the ***contents*** of the Internet material must testify. *Wady v. Provident Life and Accident Ins. Co. of America*, 216 F. Supp. 2d 1060 (C.D. Cal. 2002); *Internet Specialties West, Inc. v. ISPWest,* No. CV 05-3296 FMC AJWx, 2006 WL 4568796 at *1-2 (C.D. Cal. Sept. 19, 2006).

The cases that Vuitton cites in its opposition do not change the fact that Vuitton has no one with the requisite personal knowledge necessary to testify as to the authenticity of its Internet material. Vuitton relies on *Perfect 10 v. Cybernet Ventures, Inc.* 213 F. Supp. 2d 1146, 1154 (C.D. Cal. 2002) and *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000), but these cases are completely distinguishable because they are examples of Internet material being *properly authenticated* by the testimony of someone with personal knowledge of the material's contents. In *Perfect 10,* 213 F. Supp. 2d at 1154, Internet material was attached to the declaration of Perfect 10's president, an individual who had personal knowledge of the contents of the material. In *Tank*, 200 F.3d at 630, Internet chat room logs were only admitted after being authenticated by the individual

who created those logs.

Authenticating Internet material requires testimony by someone with personal knowledge of the accuracy of the contents of the material. Here, unlike the parties in *Perfect 10* and *Tank*, Vuitton has no witness who can authenticate its Internet material based on personal knowledge of contents. Instead, Vuitton listed only two witnesses that clearly do not have such personal knowledge. Nicolay Livadkin is a Vuitton employee who has no personal knowledge of the accuracy of the contents of third-party websites that neither he nor Vuitton are affiliated with. Robert Holmes, Vuitton's investigator, also has no personal knowledge of the accuracy of the contents of third-party websites that he is not affiliated with. Neither of Vuitton's witnesses has any personal knowledge sufficient to authenticate its proffered Internet material. At most they can only testify to something seen on a computer screen or printed from their computer. They cannot testify as to the creation of material, maintenance and website ownership, authorship or accuracy of anything they saw.

Vuitton's reliance on *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 32d 1214 (C.D. Cal. 2004) is misplaced. There, the court sidestepped the actual question of whether the Internet material at issue was authenticated under Fed. R. Evid. 901. Even though it recognized that "Plaintiffs are correct that these Internet documents are not individually authenticated," proper authentication was not required because the court applied the lower evidentiary standard for preliminary injunctions. This significance of this lowered standard is reflected in the court's stating that "Abercrombie could properly authenticate the materials before trial or summary judgment proceedings." *Id*. at 1225. In *Moose Creek*, the pertinent Internet material did not need to be properly authenticated in order for the court to grant a preliminary injunction. In contrast, proper authentication of Vuitton's Internet material is required before such material is admitted at trial and shown to a jury. Vuitton cannot properly authenticate this Internet material.

### 2. Defendants' Emails Do Not Authenticate Any Internet Material

The Internet material at issue has not been properly authenticated and is not authenticated by Defendants' act of forwarding Vuitton's complaint notices to their customers via email. Vuitton erroneously argues that "Defendants have provided evidence that in fact authenticates that some of the websites were hosted by Defendants." But Fed. R. Evid. 901(a) requires parties to authenticate

1 evidence, not arguments.

2 Rule 901(a) provides that "the requirement of authentication or identification as a condition precedent to its admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." None of Defendants' emails satisfy the requirement of Rule 901(a) because Defendants merely forwarded complaint notices to resellers without verifying the contents of the websites themselves. These emails do not validate the accuracy of any of the contents of Vuitton's Internet material because these emails are sent without ever looking at the Internet material. Nor do Defendants have any personal knowledge of the contents of any accused website.

In order to satisfy Fed. R. Evid. 901(a), Vuitton must provide testimony of someone with *personal knowledge* of the accuracy of the *contents* of its Internet material. *Wady v. Provident Life and Accident Ins. Co. of America*, 216 F. Supp. 2d 1060 (C.D. Cal. 2002); *Internet Specialties West, Inc. v. ISPWest,* No. CV 05-3296 FMC AJWx, 2006 WL 4568796 at *1-2 (C.D. Cal. Sept. 19, 2006). Vuitton has not provided such testimony and has failed to authenticate its evidence under Fed. R. Evid. 901(a).

### B. Defendants Are Not Estopped from Requesting Exclusion of Internet Material

Defendants are not estopped from requesting exclusion of Internet material and Vuitton's citation of *MGM Studios, Inc. v. Grokster, Ltd*., 454 F. Supp. 2d 966, 972 (C.D. Cal. 1996) and *Maljack Productions, Inc. v. Goodtimes Home Video Corp*., 81 F.3d 881, 889 n.12 (9th Cir. 1996) provides no support for Vuitton's arguments.

Vuitton's novel argument, that Defendants are somehow estopped by their Initial Disclosure Statement, is not even supported by *MGM Studios* or *Maljack*. Both of those cases involved parties that objected to the authenticity of evidence that they had *produced themselves*. Here, Defendants have never produced any of the Internet material that Vuitton seeks to introduce. Vuitton even admits this, saying that Defendants merely "intended to rely" on these documents. Defendants have never produced such documents at any stage of this case and they are not estopped from requesting that Vuitton's Internet material be excluded. Neither Plaintiff nor Defendants can authenticate the exhibits. Similarly, Defendants are not estopped by Steve Chen and Juliana Luk's prior testimony

1 that they pinged Internet websites through DOS prompts because the Internet material that Vuitton is
2 seeking to introduce does not include any printouts of pinging through DOS prompts and certainly
3 none performed by these witnesses.

### C. The Internet Material Is Not Authenticated by Comparison or Characteristics

Contrary to Vuitton's assertion, any apparent similarities between different website printouts do not authenticate the printouts. Vuitton's argument makes no sense. The purpose of the authenticity requirement is to ensure that the exhibit is what its proponent says it is. An exhibit's authenticity is not established if it is accompanied by similar-looking exhibits. A false and unauthenticated exhibit is still false and unauthenticated even if produced in conjunction with other similarly false and unauthenticated exhibits.

Vuitton has no applicable authority that supports its argument. The single case that Vuitton cites, *Premier Nutrition, Inc. v. Organic Food Bar, Inc*., 2008 WL 1913163 (C.D. Cal. 2008), does not even address the issue of whether apparent similarities are sufficient to authenticate multiple exhibits.

### D. The Internet Material Cannot Be Authenticated by Judicial Notice

The Internet material in question has not met the stringent standards for admission by judicial notice set forth in Fed. R. Evid. 201, which states, "Judicial notice may be taken of any fact 'not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' " *Guzman v. Shewry*, 552 F.3d 941, 956 n.11 (9th Cir. 2009). All of Vuitton's Internet material is highly questionable and it is therefore not appropriate for the Court to take judicial notice of this material.

Vuitton has not suggested and there is no way to authenticate by "resort to sources whose accuracy cannot reasonably be questioned." Even if the Court performed an Internet search, the Court would have no way of knowing whether information appearing on a computer screen is accurate and no way of knowing the source of the material. All computer users learn from painful experience not to trust Internet material (however authentic it may appear) unless it comes directly from a source personally known to the computer user. This practical knowledge mirrors the requirement of Fed. R. Evid. 901.

None of Vuitton's cited cases support this Court's taking judicial notice of its hundreds of exhibits. None of the cases that Vuitton cites in support of its argument for judicial notice involve Internet material that is as unreliable as Vuitton's material. For instance, *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) concerned a situation where the appellant sought judicial notice of historical retirement fund earnings on Northrop Grumman's own website. Northrop Grumman posted the data itself, so it had no basis for arguing against the reliability of that data. In *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.,* 399 F.3d 651, 655 n.1 (6th Cir. 2005), the court took judicial notice that "Bridgestone's stock trades in the United States on the over-the-counter, or 'OTC,' market. The OTC market is an American market for foreign-issued securities not traded on any domestic stock exchange." It was appropriate for the court to take judicial notice of this definition because the public existence of this regulated stock market was a matter that could not be disputed. In *Schaffer v. Clinton*, 240 F.3d 878, 885 n.8 (10th Cir. 2001), the court took judicial notice of the publicly available vote totals for a Congressman in three elections, which are matters of public record not reasonably disputable. *Grimes v. Navigant Consulting, Inc.*, 185 F. Supp. 2d 906, 913 (N.D Ill. 2002) similarly involved taking judicial notice of stock prices that were not reasonably disputable. The Internet material at issue in *Caldwell v. Caldwell*, 420 F. Supp. 2d 1102, 1105 (N.D. Cal. 2006) was more reliable than the material here because the *Caldwell* defendants sought judicial notice of Internet material that they created and produced themselves in support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Vuitton also cites cases that are totally unrelated to the issue of Internet material authentication by judicial notice. Neither *Till v. SCS Credit Corp.*, 541 U.S. 465, 477 n.14 (2004) nor *United States v. Starzecpyzel*, 880 F. Supp. 1027 (S.D.N.Y. 1995) even address the proper method of authenticating Internet material for admissibility at trial. Similarly, neither *Moose Creek, Inc.*, 331 F. Supp. 2d at 1225 n.4, nor *United States v. Standring*, 2005 WL 3981672, at *2 (S.D. Ohio 2005) supports Vuitton's argument, as both courts applied the lower evidentiary standard applying to preliminary injunctions.

**E. Vuitton Wrongly Assumes that Defendants Have the Burden of Authenticating**

Vuitton's Internet material is inherently unreliable and Vuitton has the burden of

authenticating its own exhibits before they are admitted at trial. Vuitton attempts to shift the burden of authentication by falsely claiming that its material has an "indicia of reliability," when, in fact, courts have readily recognized that Internet material is inherently unreliable.

" 'Anyone can put anything on the Internet. No website is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation ….hackers can adulterate the content on any web-site from any location at any time. For these reasons, **any evidence procured off the Internet is adequate for almost nothing**.…' " *Internet Specialties West, Inc. v. ISPWest,* No. CV 05-3296 FMC AJWx, 2006 WL 4568796, at *1 (C.D. Cal. Sept. 19, 2006) (emphasis added). Ninth Circuit courts recognize that "hackers can adulterate the content on any web-site from any location at any time. For these reasons, any evidence procured off the Internet is adequate for almost nothing." *Wady v. Provident Life and Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1064-65 (C.D. Cal. 2002).

To the extent that Vuitton seeks to introduce printouts containing WHOIS information, courts have recognized that any website operator can intentionally input fake data into a WHOIS database with no means of checking or correcting erroneous information. Courts have specifically recognized WHOIS database information as particularly unreliable. *See Cable News Network L.P., L.L.L.P. v. CNNews.com*, 177 F. Supp. 2d 506, 526 (E.D. Va. 2001) (recognizing that [Chinese company] Maya HK provided false contact information to the WHOIS database when applying for the registration of a domain name); *Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 613 n.1 (E.D. Va. 2008) (recognizing that WHOIS information that was "false and fictitious.")

The Internet "is one large catalyst for rumor, innuendo and misinformation." *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 774 (S.D. Tex. 1999). Admitting such evidence without proper authentication testimony would be tantamount to "relying on the voodoo information taken from the Internet." *Id.* Vuitton is the party attempting to authenticate such "voodoo information" and Vuitton cannot meet its burden of authenticating this inherently unreliable information.

The sheer number of websites has no authenticating effect on Vuitton's Internet material. Vuitton cites to no authority in support of its argument that "the sheer number of websites" somehow

authenticates all of its material. This illogical argument is tantamount to arguing that the authenticity of a false website printout is somehow heightened when coupled with several printouts of other false websites. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Fed. R. Evid. 901(a). The sheer volume of Vuitton's Internet material does not affect Vuitton's failure to authenticate its Internet material.

Vuitton has not properly authenticated the Internet material that it seeks to introduce. Vuitton only cites cases where parties properly authenticated their Internet material via testimony of someone with personal knowledge of the accuracy of the contents such as the person who created the material. Vuitton cannot provide such testimony. None of Vuitton's cases support Vuitton's request for judicial notice of its Internet material. Vuitton's Internet material is, therefore, unauthenticated and inadmissible.

## II. VUITTON'S INTERNET MATERIAL IS INADMISSIBLE HEARSAY

Vuitton's Internet material is inadmissible as hearsay under Fed. R. Evid. 801 and 802. Vuitton does not cite any controlling contrary authority.

### A. Vuitton's Internet Materials Are Hearsay Statements Under Fed. R. Evid. 801 and 802

Vuitton's Internet material is hearsay because it is comprised of material posted on the Internet by unknown persons that is being offered for the truth of the matter asserted, namely, that the websites were directly infringing Vuitton's copyrights and trademarks and were hosted by Defendants. Fed. R. Evid. 801, 802. Vuitton cites *United States v. Washington*, 498 F.3d 225 (4th Cir. 2007), *United States v. Khorozian*, 333 F.3d 498 (3d Cir. 2003) and *People v. Holowko*, 109 Ill. 2d 187, 486 N.E.2d 877 (Ill. 1985), but they are not relevant to this analysis because all of these cases discuss automated, computer-generated material, not Internet material. The former is automatically created by computer, while the latter is hearsay because it was originally created by another person. In fact, the *Holowko* court recognized this exact distinction. ("Printouts of the computer-stored data constitute statements placed into the computer by out-of-court declarants and cannot be tested by cross-examination. However, computer-generated data are different. The

1 evidence is generated instantaneously as the telephone call is placed, without the assistance,
2 observations, or reports from or by a human declarant.") 109 Ill. 2d at 191, 486 N.E.2d at 878.
3 Vuitton misses the point that Internet material constitutes a "statement" under the hearsay rule
4 because such material is generated by *people*, not computers.

5 Printouts from third-party Internet websites are hearsay because they are out of court
6 statements offered for the truth of their substantive content. *Williams*, 585 F. Supp. 2d at 685.
7 Vuitton's printouts of Internet websites are being offered to prove the truth of their contents and
8 even Vuitton admits that they are offered to show "what content was publicly viewable on a specific
9 date." Neither of Vuitton's cases, *Perfect 10*, 213 F. Supp. 2d at 1155 nor *Telewizja Polska USA,*
10 *Inc. v. Echostar Satellite Corp.*, 2004 WL 2367770 at *5-6 (N.D. Ill. 2004), apply here. In both
11 cases, the website printouts were not statements of an out of court declarant because the printouts in
12 both cases were supported by direct testimony of an employee that had knowledge of the contents of
13 the printouts.

14 Printouts of WHOIS data reports are hearsay because Vuitton's own Rule 30(b)(6) witness
15 has admitted that he does not maintain or generate these reports printouts himself. This is triple
16 hearsay because these printouts are (1) printed by unknown persons, based on (2) information input
17 by unknown persons that is (3) based on unverified third-party sources.

### B. Vuitton's Internet Material Does Not Fall under the Residual Exception

19 Vuitton's Internet materials are hearsay statements that do not fall under the residual
20 exception of Fed. R. Evid. 807. Rule 807 only provides an exception for hearsay statements that
21 have "equivalent circumstantial guarantees of trustworthiness." But Internet material is almost
22 guaranteed to be *untrustworthy* because it is not verified for accuracy and can be falsified by anyone.
23 *Wady*, 216 F. Supp. 2d at 1064-65; *Internet Specialties West, Inc. v. ISPWest,* 2006 WL 4568796 at
24 *1-2. Such inherently unreliable statements cannot possibly fall under the residual exception.

### III. VUITTON'S INTERNET MATERIAL IS UNFAIRLY PREJUDICIAL

26 The prejudicial nature of Vuitton's Internet material outweighs its probative effect. This
27 material should therefore be excluded under Fed. R. Evid. 403. If Vuitton's reports and printouts are
28 admitted into evidence, jurors would likely accept the "truth" of those printouts at face value because

of the implied verification by the Court. This implied verification would be highly damaging to the Defendants because Defendants cannot mitigate this excessive prejudicial effect because there are no means of establishing the truth or falsity of this material, and no means of identifying the actual source of statements and cross-examining them. Any juror will be powerfully inclined to simply adopt the WHOIS data "reports" that Vuitton offers as true, simply because jurors have no means to verify the accuracy of WHOIS data.

## IV. CONCLUSION

Vuitton's Internet material should be excluded. Vuitton's objections do not mask the fact that it has failed to properly authenticate the Internet material that it seeks to introduce. Vuitton could have produced the appropriate testimony to properly authenticate its evidence. But it has failed to do so, perhaps because it wanted to shortcut the evidence-gathering process. This Internet material is also inherently unreliable and inadmissible as hearsay under Fed. R. Evid. 801 and 802 and as unduly prejudicial material under Fed. R. Evid. 403.

Dated: March 16, 2009      **GAUNTLETT & ASSOCIATES**

By:    /s/James A. Lowe
        David A. Gauntlett
        James A. Lowe
        Brian S. Edwards
        Christopher Lai

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.,
and Steve Chen