**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Brian S. Edwards (SBN 166258)
Christopher Lai (SBN 249425)
18400 Von Karman, Suite 300
Irvine, California  92612
Telephone:     (949) 553-1010
Facsimile:      (949) 553-2050
jal@gauntlettlaw.com
bse@gauntlettlaw.com
cl@gauntlettlaw.com

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.
and Steve Chen

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A.,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>AKANOC SOLUTIONS, INC., et al.,<br><br>　　　　　　　　Defendants. | Case No.:  C 07-3952 JW (HRL)<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE #5 TO EXCLUDE EMAILS SENT BETWEEN DEFENDANTS AND THEIR CUSTOMERS DISCUSSING SUBSEQUENT REMEDIAL MEASURES** |

164469.1-10562-002-3/16/2009

**DEFENDANTS' REPLY TO VUITTON'S OPPOSITION TO MOTION IN LIMINE #5
– C 07-3952 JW**

## I. VUITTON DOES NOT CONTEST THAT THE E-MAILS AT ISSUE EVIDENCE SUBSEQUENT REMEDIAL MEASURES

At pages 1 - 3:17 of its Opposition, Vuitton does not dispute that takedown emails between Defendants and their reseller customers constitute subsequent remedial measures under Rule 407. Instead, Vuitton raises several issues that are irrelevant to this motion. Vuitton repeatedly raises the Defendants' server crash in February 2007. (Vuitton Opp. 2:1-6) But the e-mails that evidence "subsequent remedial measures" were **not** lost in a server crash. That event has nothing to do with this motion.[1]

Vuitton also appears to be confused about the injury or harm to which the subsequent remedial measures at issue (the takedown emails) relate. Rule 407 bars evidence of subsequent remedial measures taken after an injury or harm to prove the Defendants' culpability:

> When, after an **injury or harm allegedly caused by an event**, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, **evidence of subsequent remedial measures is not admissible to prove . . . culpable conduct**. [Emphasis added.]

The injury or harm Vuitton alleges is copyright and trademark infringement occurring at certain websites. The takedown emails Defendants sent to their customers are the subsequent remedial measures that are inadmissible to prove culpability.

Vuitton argues that because Defendants took subsequent remedial measures in response to notifications regarding *specific* websites on specific dates, Defendants necessarily failed to take subsequent remedial measures (send takedown emails) as to *other* websites. But just because Vuitton sent a complaint notice to Defendants on Day 2 regarding a specific act of infringement at a specific website, and the Defendants did something remedial about it on Day 3 (sent a takedown email), that does not mean that Defendants failed to do something to prevent the event on Day 1. Vuitton's argument assumes incorrectly that the alleged infringement noticed on Day 1 is the same alleged infringement at issue on Day 2. Like every other Internet service provider, Defendants cannot be found liable for alleged events on Day 2 based on their remedial measures on Day 3 that,

---

[1] It also has nothing to do with this case. Defendants' server crashed in February 2007, five months before Vuitton filed the instant action.

if taken on Day 1, would have prevented events on Day 2. The fact that Defendants undertook subsequent remedial measures regarding a Day 2 notice is irrelevant to show what did or did not happen on Day 1.

## II. VUITTON'S OPPOSITION REVEALS IT CANNOT USE THE EMAILS FOR ANYTHING OTHER THAN PROVING LIABILITY

### A. The Emails Do Not Demonstrate Defendants' Ownership of Anything

Subsequent remedial measures are inadmissible to establish liability for prior acts. At Section C(1) of its Opposition, Vuitton proves that it is *incapable* of explaining a use for the emails that does not include proving the Defendants' liability. Vuitton first ignores Rule 407 entirely and argues that the emails should be admitted because *they prove the Defendants are liable*: "[T]he emails are properly admitted to prove that the complained of websites resided on Defendants' servers." (Opp. 4:17-18)

Vuitton then argues that the emails somehow show "ownership" because "the repetition of emails to certain specific addresses should be admissible to prove that the real problem [of on-line counterfeiting] is not as massive or unknown as Defendants claim, but that it is Defendants' choice to continue to do business as usual with some of their best 'customers' despite repeated violations." (Opp. 4:19-25) Rather than showing Defendants' ownership of anything, Vuitton seeks to use the emails to prove the Defendants *are liable* because the takedown notices allegedly involve only a few customers. This use is barred under Rule 407 because it is offered to prove culpability.

### B. Vuitton Cannot Demonstrate the Emails Will Evidence "Control" Outside of the Liability Context

Vuitton also seeks to use the emails to prove the "direct control and monitoring" element of contributory trademark infringement. To prevail on its contributory trademark claim, Vuitton must prove Defendants' "direct control and monitoring" of their customers' websites. *Perfect 10, Inc. v. Visa Int'l Service Ass'n,* 494 F.3d 788, 807 (9th Cir. 2007) ("For [contributory trademark] liability to attach, there must be '[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.' ").

Vuitton argues the emails "are properly admitted to prove Defendants' control over their

customers, the direction of Internet traffic, the websites, and their server space." (Opp. 5:2-3) Vuitton offers the emails as evidence of the Defendants' culpability; e.g., their "direct control and monitoring" over their customers' websites. Incredibly, Vuitton admits this in its opposition: "**These emails speak to the issue of *control* but also evidence *monitoring*, both issues of contention in the case."** (Opp. 5:9-10) (emphasis added). It is undisputed that Rule 407 bars admission of subsequent remedial measures to prove culpability (which in this case includes direct control and monitoring).

### C. Feasibility of Precautionary Measures

Vuitton fails to address Defendants' argument that the emails are evidence of *reactionary* measures, not precautionary measures, because they were sent only as a reaction to receiving a notice from Vuitton. Instead, Vuitton again ignores Rule 407 and admits that it only plans to use the emails to prove Defendants' liability. Direct control and monitoring can be proven by showing Defendants were **willfully blind** to infringing activity on their servers. *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1188, 1189 (C.D. Cal. 2002).

> [D]irect control and monitoring of the instrumentality used by a third-party to infringe the plaintiff's mark . . . [may be satisfied] where one knows or has reason to know of the infringing activity, and [is] . . . "**willfully blind**" to such activity. [Emphasis added.]

Crucially, at page 5:15-17 of its brief, Vuitton argues that **"[i]t is Defendants' refusal to stop doing business with infringers**, despite the feasibility of this precautionary measure, that is an additional ground for admission of these emails." Vuitton cannot use the emails to show feasibility of precautionary measures because these are reactions to specific complaints and do not show what preventive measures were feasible. If they are admitted, Vuitton will use them to prove direct control and monitoring through alleged "willful blindness" to counterfeit activities at websites. The emails are inadmissible because Rule 407 bars admission of subsequent remedial measures to prove culpability.

### D. The Emails Do Not Prove Defendants' Knowledge of a Dangerous Condition

Vuitton claims (without citing any authority or explaining how) that the emails prove Defendants' knowledge of a dangerous condition. This argument assumes the existence of an

unarticulated "dangerous condition." To the extent the emails prove Defendants' knowledge of websites or support Vuitton's theory that "Defendants continued to do business with [certain customers] over a significant period of time," they are inadmissible under Rule 407 because they tend only to prove culpability, i.e., that Defendants were "willfully blind" to infringement.

### E. Vuitton Admits Its Use of the Emails As Impeachment Goes to Proving Liability

At page 6:16-17 of its opposition, Vuitton ignores Rule 407 in arguing that the emails should be admitted because they "**contradict Defendants' contentions of a lack *of monitoring and control*.**"[2] (Emphasis added.) Again, Vuitton argues the emails are evidence to prove liability. *Perfect 10, Inc. v. Visa Int'l Service Ass'n,* 494 F.3d 788, 807 (9th Cir. 2007) ("For [contributory trademark] liability to attach, there must be '**[d]irect control and monitoring** of the instrumentality used by a third party to infringe the plaintiff's mark.' " (emphasis added)).

### F. Party Admissions Are Not Admissible As an Exception to Rule 407

Even if the emails could be deemed admissions by a party opponent (they cannot because they admit nothing), that would not get around the requirements of Rule 407. Statements of a party opponent are only treated as non-hearsay for purposes of Rule 801. (Rule 801(d) states, in pertinent part: "A statement is not hearsay if – (2) The Statement is offered against a party and is (A) the party's own statement . . . .")

Vuitton selectively cites language from *Perfect 10, Inc. v. Cybernet Ventures, Inc.,* 213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002), but in that case the court only dealt with a party's admission in the context of a hearsay objection:

> Cybernet does not object to the Court's consideration of the communications purportedly made by Cybernet's employees "if the Court were to accept Plaintiff's scanty authentication" but does object to consideration of the communications attributed to third parties **on hearsay grounds**. See Evid. Obj. at 3. The Court treats the communications attributable to Cybernet employees as party admissions and will accept the third party communications only insofar as they indicate notice of infringing or potentially infringing activity. [Emphasis added.]

---

[2]*Perfect 10, Inc. v. Visa Int'l Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) ("For [contributory trademark] liability to attach, there must be '[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.' ").

### G. Defendants Can Contest Admissibility of Emails At Issue

First, no waiver of Defendants' objection to the evidence could have occurred because the Court's summary judgment Order did not "purport to dispose of the question of admissibility." *See Sherry v. Massey-Ferguson, Inc.,* 1997 WL 480893, at *2 (W.D. Mich. 1997):

> **Nothing** in the motion before the magistrate judge or in his order **purported to dispose of the question of admissibility**. Accordingly, **plaintiffs did not waive their right to seek to have the evidence at issue admitted**. [Emphasis added.]

Second, no waiver could have occurred because Vuitton has not previously attempted to admit all of the emails at issue into evidence. Vuitton claims without any support that all of the exhibits at issue in this motion in limine were attached to its opposition to Defendants' motion for summary judgment. They of course were not.

Third, Defendants properly objected to the admission into evidence of the emails attached as part of Exhibit E to Mr. Coombs' Declaration in opposition to Defendants' motion for summary judgment. *See* Defendants' Evidentiary Objection to the Coombs Declaration in Support of Vuitton's Opposition to Defendants' Motion for Summary Judgment [Docket # 88].

### H. No Exception to Rule 407 Exists for When "The Subsequent Measure Was Required in the First Place"

Vuitton makes up an exception to Rule 407 out of whole cloth when it argues that "Rule 407 does not apply when the subsequent measure was required in the first place." (Opp. 7:6-7) In support of this, Vuitton cites *Herndon v. Seven Bar Flying Service, Inc.,* 716 F.2d 1322, 1332 (10th Cir. 1983). But that case only concerns the situation where a **government agency** requires post-accident repairs:

> These directives, however, were admissible under Rule 407. Where a superior authority **requires a tort feasor to make post-accident repairs**, the policy of encouraging voluntary repairs which underlies Rule 407 has no force – **a tort feasor cannot be discouraged from voluntarily making repairs if he *must* make repairs in any case**. *See, e.g., Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1343 (5th Cir.1978) (trend cost estimate admissible under Rule 407 because **government agency** would have required it (dictum)) . . . . [Bold emphasis added.]

No government agency required action by Defendants. Vuitton's argument that Defendants should

1 have initially acted in a different way is not the situation discussed in *Herndon*. The policy behind
2 Rule 407 of not discouraging subsequent remedial measures is furthered in *every case* where a
3 defendant "should" have employed remedial measures in the first instance.

### III.     CONCLUSION

For the foregoing reasons and as argued in Defendants' motion, the Defendants respectfully move to exclude the emails sent between Defendants and their reseller customers because they are evidence of subsequent remedial measures inadmissible under Fed. R. Evid. 407.

Dated: March 16, 2009                    **GAUNTLETT & ASSOCIATES**

By:     /s/James A. Lowe
        David A. Gauntlett
        James A. Lowe
        Brian S. Edwards
        Christopher Lai
Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.,
and Steve Chen