**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Brian S. Edwards (SBN 166258)
Christopher Lai (SBN 249425)
18400 Von Karman, Suite 300
Irvine, California  92612
Telephone:     (949) 553-1010
Facsimile:     (949) 553-2050
jal@gauntlettlaw.com
bse@gauntlettlaw.com
cl@gauntlettlaw.com

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.
and Steve Chen

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A., <br><br> Plaintiff, <br><br> vs. <br><br> AKANOC SOLUTIONS, INC., et al., <br><br> Defendants. | Case No.:  C 07-3952 JW (HRL) <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE #6 TO EXCLUDE TESTIMONY ABOUT PINGING INTERNET DOMAINS** |

164455.1-10547-005-3/16/2009

**DEFENDANTS' REPLY TO VUITTON'S OPPOSITION TO MOTION IN LIMINE #6 – C 07-3952 JW**

## I. VUITTON MUST ADMIT THAT "PINGING" TESTIMONY IS NOT LAY OPINION TESTIMONY UNDER FEDERAL RULE OF EVIDENCE 701

### A. Testimony about "Pinging" Is Based on Technical or Other Specialized Knowledge

Vuitton admits that it failed to designate *any* experts in this case, despite the Court's November 15, 2007 Scheduling Order that set forth explicit and mandatory requirements and deadlines for doing so [Doc. 23]. Vuitton cannot get around the fact that Federal Rule of Evidence 701(c) only allows opinion testimony by lay witnesses if, among other requirements, it is "not based on scientific, technical or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c).

Vuitton tries to convince the Court that "pinging" and the *conclusions to be drawn* from the results of "pinging" (about which Mr. Livadkin plans to testify) are not based on technical or other specialized knowledge. Vuitton cannot meet this standard. As this Court recently held, the scope of lay opinion testimony under Rule 701 is quite narrow:

> Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying **and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events.**

*Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 504098, at *4 (N.D. Cal. 2008).

Actual "pinging" from the DOS prompt is, by definition, a technical exercise. A user must be able to access a computer's DOS prompt, understand that the domain name has to be entered in a specialized fashion (e.g., www.ping [domain name]). Once the command "ping [domain name]" is sent, the user will receive a random nine-digit number back, such as 234.56.7890. An untrained layman would not understand how to access a DOS prompt, how to enter the domain name correctly, or know the significance of the number generated. Any testimony about this would necessarily require technical or other specialized knowledge.[1]

---

[1] Vuitton's argument at page 5:1-13 that case law references to pinging mean the term is "commonplace, everyday" is contradicted by the references themselves. *See, e.g.*, *A&M Records, Inc. v. Napster, Inc.,* 114 F. Supp. 2d 896, 906 (N.D. Cal. 2000) ("In addition to listed text results from an executed search, Napster's servers provide other information about particular MP3 files. For instance, the client software can sort the results of 'echo packets' or 'ping requests' that it sends out to host users; these requests help gauge the 'responsiveness value' of a transmission between two

The fact that computers are used by many people does not change this fact. As *United States v. Ganier*, 468 F.3d 920, 926 (6th Cir. 2006), cited by Vuitton, points out, there is a big difference between being able to operate a computer (run a computer program) and being able to interpret the *results* of that program:

> The average layperson today may be able to interpret the outputs of popular software programs as easily as he or she interprets everday vernacular, but **the interpretation Drueck needed to apply to make sense of the software reports** is more similar to the **specialized knowledge** police officers use to interpret **slang and code words** used by drug dealers.

Just as specialized knowledge is required to interpret slang and code words to make sense of software reports, specialized knowledge is necessary to access the DOS prompt, correctly send a request, and interpret random nine digit numbers.

Vuitton ignores the relevant standard when it argues that "the act of pinging a website and the results from such an act are facts. They are not at all affected by opinion." (Opp. 3:18-22) The critical distinction is not between facts and opinions, but whether the testimony is based on scientific, technical or other specialized knowledge such that an *untrained layman* would be able to testify to the jury about what the random numbers coming back mean or whether they were properly generated. Rule 701 *does* limit lay witness testimony about facts where, as here, the testimony is based on scientific, technical, or other specialized knowledge. See Fed. R. Evid. 701(c).

At page 4 of its opposition, Vuitton argues that Rule 702 only applies to subjects that must be "mastered by experts in the field." In effect, Vuitton is saying that highly educated witnesses must be designated as experts, but less educated witnesses can opine on any subject without having to be designated under Rule 702. (Opp. 4:9-28) This argument not only ignores the applicable law, it is nonsensical. The fact that Juliana Luk is not college-educated but can "ping" websites because it is part of her specific job duties does not mean that "pinging" does not require technical or other specialized knowledge. (See Opp. 4:19-27) Again, the standard is whether an untrained layman would need specialized training to "ping" from a DOS prompt. Ms. Luk's declaration, attached as

---

users by calculating the amount of time it takes for ping responses to be returned to the client software.").

Exhibit B to Vuitton's opposition, clearly sets forth the specialized knowledge she has acquired at her job. Vuitton's elitist attitude that only highly educated people can acquire scientific, technical or other specialized knowledge sufficient to require designation under Rule 702 is not supported by any case authority and should be rejected.

**B.  Vuitton's Website Printouts Are Not "Ping" Results and Cannot Be Authenticated by Vuitton's Witnesses**

The instant motion in limine seeks to exclude *testimony* about pinging Internet domains. Whether the ping results themselves can be authenticated is a separate issue. But they cannot be authenticated. Internet information can only be authenticated by the testimony of "someone with knowledge of the accuracy of the contents" of the material from the Internet. They cannot be authenticated by someone like Mr. Livadkin who goes to a particular website and prints out material. *See Internet Specialties West, Inc. v. ISPWest*, No. CV 05-3296 FMC AJWX, 2006 WL 4568796, at *1 (C.D. Cal. Sept. 19, 2006).

> [M]ost of plaintiff's arguments are addressed to print-outs from websites and the question of their admissibility. Plaintiff properly contends that these print-outs are inadmissible unless properly authenticated. **Defendant's argument, that they could be "authenticated" by the person who went to the website and printed out the home page, is unavailing.** It is now well recognized that "Anyone can put anything on the internet. No website is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation ....hackers can adulterate the content on any web-site from any location at any time. For these reasons, any evidence procured off the Internet is adequate for almost nothing...." *Wady v. Provident Life and Accident Ins. Co. of America*, 216 F.Supp.2d. 1060, 1064 (C.D.Cal.2002). [Emphasis added.]

Vuitton argues that its website printouts are admissible as admissions by a party opponent. But there is no evidence that Defendants ever offered Vuitton's exhibits as evidence in this case. **None** of the DomainTools printouts or other website printouts were ever produced in discovery by Defendants or offered by Defendants as evidence in this case. Vuitton cites **nothing** in the record to even suggest otherwise.

Vuitton incorrectly characterizes its DomainTools and NetscanTools printouts as "pings" and then argues that they are admissible because Defendants attached an actual ping result, Exhibit

| | |
|---|---|
| 1 | "1501," to their summary judgment motion. But Exhibit "1501" (Exhibit A to Vuitton's opposition) |
| 2 | does not relate to any of the websites at issue in this case. It is a ping result from a DOS prompt for |
| 3 | the *United States District Court's website* that Defendants attached to their summary judgment |
| 4 | motion to attempt to explain the pinging process to the Court. |

Further, Vuitton's documents are entirely dissimilar to **Exhibit "1501."** The thousands of pages of documents Vuitton self-servingly refers to as "pings" are actually results of Internet searches allegedly through third-party websites such as *www.domaintools.com*; websites that rely on other third-party content for their results. Mr. Livadkin admitted this at his deposition.

> Q. Do you ever ping the domain name to determine what the IP address is?
> A. Yes. There is – on DomainTools there's a sort of button which – which does that.
> Q. Okay. Do you it any other way? You mentioned Netscan Tools. Is there a way to do it there?
> A. Yes.
> Q. Okay. Do you ever do it at the DOS prompt?
> A. I have – I have done it a couple of times, yeah.

Livadkin Depo. 58:16-25.

Unlike an actual ping from a DOS prompt where an "echo packet" is sent and information is received directly back without any third-party input, Vuitton's unauthenticated documents are based on information received from third-party websites. Livadkin admits that the information received from DomainTools and Netscan Tools is gleaned by those websites from various third-party databases:

> Q. DomainTools would seek information from various third-party --
> A. Yes.
> Q. -- databases?
> A. Yes.
> Q. Do you know exactly how DomainTools obtains that information? Do you know how they – what they do?
> A. You mean the technical aspects?
> Q. Yes.
> A. No.

Livadkin Depo. 31:2-11.

> Q. Now, do you know – you mentioned some other sources of information that you used, Netscan Tools, for example. Do you know anything about how they might verify information that they report?
>
> A. They query publicly accessible databases.
>
> Q. So they obtain information from third parties?
>
> A. Yeah.

Livadkin Depo 32:12-18, Supplemental Declaration of James A. Lowe ¶ 4, **Exhibit "1529."**

Crucially, **all** of the documents Vuitton produced in discovery indicate that they were obtained directly from DomainTools or another Internet website. **None** were actual pings utilizing an "echo packet" from a DOS prompt like **Exhibit "1501."**

### C. Defendants Have Suffered Substantial Prejudice by Vuitton's Decision to Disregard the Expert Disclosure Requirements of This Court

Vuitton has not "substantially complied" with the disclosure requirements of Rule 702. The requirements of Rule 702 are *mandatory*. Nor is its failure to comply substantially justified or harmless. Rather, the facts indicate that Vuitton's failure to comply was *intentional*. The deadline to disclose experts in this case was **not** 90 days prior to trial as Vuitton claims. (Opp. 9:25-10:10) The Court's November 15, 2007 Scheduling Order explicitly provided that *experts were to be disclosed 63 days before the April 28, 2008 close of discovery:*

> Any party wishing to present expert witness testimony with respect to a claim or defense shall lodge with the Court and serve on all other parties the name, address, qualifications, resume, and a written report which complies with Fed.R.Civ.P. 26(a)(2)(B) **63 days before close of discovery**.

Scheduling Order, p. 3:4-7 [Doc. 23] (emphasis in original).

Crucially, there is no "substantial compliance" proviso in the Court's Scheduling Order. The Scheduling Order made clear that disclosure of experts 63 days before discovery cutoff was **mandatory** for "**regular employees**" "who **may** be called to provide expert opinion testimony":

> Expert witness disclosure **must be made** with respect to a person who is either (a) specially retained or specially employed to provide expert testimony pursuant to Fed.R.Evid. 702 or (b) **a regular employee** or agent or treating physician **who may be called to provide expert opinion testimony**.

Scheduling Order, p. 3:7-10 [Doc. 23] (emphasis added).

Defendants have suffered substantial prejudice as a result of Vuitton's decision to ignore the

Court's November 15, 2007 Scheduling Order. Defendants have not received an opportunity to depose Mr. Livadkin or any other witness as an expert. They have not received any written reports as required by the Court. Defendants have never been given the opportunity to object to the qualifications or proposed testimony of Vuitton's experts, or file a motion to exclude an expert, as set forth in paragraph 6 of the Scheduling Order:

> Any party objecting to the qualifications or proposed testimony of an expert must file, serve, and notice a motion to exclude the expert or any portion of the expert's testimony in writing in accordance with Civil Local Rules 7-2, for hearing no later than **42 DAYS AFTER BOTH EXPERT AND REBUTTAL EXPERT DISCLOSURES ON A MONDAY (LAW AND MOTION DAY) at 9:00 a.m.** and preferably before or on the same day as the discovery cutoff date at 9:00 a.m. [Scheduling Order, p. 3:7-10 [Doc. 23]]

What has transpired in this case is exactly the scenario the Court likely sought to avoid by setting forth explicit expert witness disclosure requirements in its November 15, 2007 Scheduling Order. It is now just a few weeks before trial. Defendants are still unaware what the exact scope of Mr. Livadkin's expert testimony will be. No expert witness reports have been proffered by Vuitton, even belatedly (they were due over a year ago). Even now Vuitton refuses to allow its witnesses who will be offering opinion testimony under Rule 702 sit for expert depositions. Instead, Vuitton expects the Defendants to defend themselves in a "bet the company' jury trial against a large and well-funded opponent who blatantly and intentionally disregards orders of the Court when it suits itself; and to do so without the benefit of any expert reports or expert witness depositions.

## II. THE LAW OF THE CASE DOCTRINE DOES NOT APPLY HERE

### A. The Court Did Not Rule That Pinging Testimony Was Admissible

Vuitton attempts to divert attention away from its failure to designate expert witnesses in this case by pretending that this Court already ruled that testimony regarding pinging qualifies as lay opinion testimony under Rule 701. Nothing could be further from the truth. The summary judgment order overruled Defendants' *hearsay* objection only. MSJ Ruling at 6 fn. 10. This Court has not considered whether Vuitton's "pinging" is properly subject of lay opinion testimony, or whether it requires "scientific, technical or other specialized knowledge within the scope of Rule 702. Fed.R.Evid. 701

**B. The Law of The Case Doctrine Only Applies to Issues Determined On Appeal**

Vuitton argues that the 'law of the case' precludes any inquiry by this Court into the admissibility of "pinging" evidence. At pages 2-3 of its opposition Vuitton cites selective language from case law to mask the fact that the law of the case doctrine is limited to issues determined by the same court ***on appeal***:

> The "law of the case" doctrine provides that "one panel ***of an appellate court*** will not as a general rule reconsider questions which ***another panel*** has decided ***on a prior appeal*** in the same case." *United States v. Scrivner,* 189 F.3d 825, 827 (9th Cir.1999)

> "[T]he prior decision of legal issues should be followed ***on a later appeal*** 'unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.' " *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir.1991)

Vuitton cites *United States v. Cuddy,* 147 F.3d 1111 (9th Cir. 1998), but there the 'law of the case doctrine' was implicated only because the District Court did not follow a finding of the Ninth Circuit Court of Appeals ***after remand***:

> Defendants Sherwood and Cuddy then appealed their convictions to this court in a consolidated appeal. See *United States v. Sherwood,* 98 F.3d 402 (9th Cir.1996) ("*Sherwood I*"). We affirmed their convictions but remanded to the district court the question whether it properly departed upward based on Application Note 8 of U.S.S.G. § 2B3.2, which permits an upward departure if the offense involved "a threat to a family member of the victim."
>
> * * *
>
> First, the defendants note that our decision in *Sherwood I* stated that the record did not support a finding that Ms. Wynn's life was threatened. Thus, they argue that the district court violated the "law of the case" when it determined that the record did support such a finding. *Id.* at 1113

/ / /

/ / /

/ / /

### III. CONCLUSION

For the foregoing reasons, and those set forth in their initial brief, Defendants move to exclude any testimony related to pinging Internet domains.

Dated: March 16, 2009

**GAUNTLETT & ASSOCIATES**

By: /s/James A. Lowe
David A. Gauntlett
James A. Lowe
Brian S. Edwards
Christopher Lai

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.,
and Steve Chen