1  **GAUNTLETT & ASSOCIATES**
   David A. Gauntlett (SBN 96399)
2  James A. Lowe (SBN 214383)
   Brian S. Edwards (SBN 166258)
3  Christopher Lai (SBN 249425)
   18400 Von Karman, Suite 300
4  Irvine, California  92612
   Telephone:     (949) 553-1010
5  Facsimile:     (949) 553-2050
   jal@gauntlettlaw.com
6  bse@gauntlettlaw.com
   cl@gauntlettlaw.com
7
   Attorneys for Defendants
8  Akanoc Solutions, Inc.,
   Managed Solutions Group, Inc.
9  and Steve Chen

10

11                    **UNITED STATES DISTRICT COURT**

12          **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

13

14  LOUIS VUITTON MALLETIER, S.A.,          ) Case No.:  C 07-3952 JW (HRL)
                                            )
15                    Plaintiff,            )
                                            )  **REPLY IN SUPPORT OF DEFENDANTS'**
16          vs.                             )  **MOTION IN LIMINE #9 TO EXCLUDE**
                                            )  **TESTIMONY ABOUT THE**
17                                          )  **GENUINENESS OF GOODS**
                                            )
18  AKANOC SOLUTIONS, INC., et al.,         )
                                            )
19                    Defendants.           )
                                            )
20  _____)

21

22

23

24

25

26

27

28

164441.1-10562-002-3/16/2009                        **DEFENDANTS' REPLY TO VUITTON'S**
                                                     **OPPOSITION TO MOTION IN LIMINE #9**
                                                     **– C 07-3952 JW**

Dockets.Justia.com

1    **I.    RULE 701 BARS LAY OPINION TESTIMONY ABOUT THE GENUINENESS OF
          VUITTON GOODS PURCHASED ON-LINE**

2
          **A.    Forming an Opinion About the Genuineness of Vuitton Goods Purchased on the
3                  Internet Requires Specialized Knowledge**

4          Vuitton's argument that its percipient witnesses can testify as to the genuineness of Vuitton

5    goods purchased on the Internet because it arises from their "personal familiarity with the product"

6    ignores the explicit requirements of Fed. R. Civ. P. Rule 701(c).  Rule 701(c) allows a witness not

7    testifying as an expert to testify to opinions as long as the testimony is "not based on scientific,

8    technical or **other specialized knowledge** within the scope of Rule 702."

9          As the court in *Jerden v. Amstutz,* 430 F.3d 1231, 1239-40 (9th Cir. 2005), a case Vuitton

10   incorrectly cites at page 3:15-16 of its brief, states:

11                     Lay witnesses can permissibly base opinion testimony upon their
                       experience, but the Federal Rules of Evidence require that lay opinion
12                     testimony be ". . . (c) not based on scientific, technical, or other
                       specialized knowledge within the scope of Rule 702."  Fed.R.Evid.
13                     701.

14   *Jerden* makes clear that just because a witness is percipient to the facts means nothing if the opinion

15   is based on specialized knowledge:

16                     "The mere percipience of a witness to the facts on which he wishes to
                       tender an opinion does not trump Rule 702."
17

18   *Id.*, citing *United States v. Figueroa-Lopez,* 125 F.3d 1241, 1246 (9th Cir. 1997).

19         In *Figueroa-Lopez,* the trial court allowed percipient witness DEA agents to opine that the

20   defendant's actions were consistent with those of an experienced drug trafficker.  The appellate court

21   reversed, finding the opinions to be based on specialized knowledge within the meaning of Rule 701

22   because they were "properly characterized as testimony based on the perceptions, education,

23   training, and experience of the witness."  The critical distinction between Federal Rules of Evidence

24   701 and 702 is whether a person with no specialized training would be allowed to opine to the jury

25   merely because that person was an eyewitness to the event:

26                     The Government's argument simply blurs the distinction between
                       Federal Rules of Evidence 701 and 702. Lay witness testimony is
27                     governed by Rule 701, which limits opinions to those "rationally based
                       on the perception of the witness."  Rule 702, on the other hand,
28                     governs admission of expert opinion testimony concerning

1  "specialized knowledge." The testimony in this case is precisely the
2  type of "specialized knowledge" governed by Rule 702. . . . The mere
   percipience of a witness to the facts on which he wishes to tender an
3  opinion does not trump Rule 702. Otherwise, a layperson witnessing
   the removal of a bullet from a heart during an autopsy could opine as
4  to the cause of the decedent's death. Surely a civilian bystander, or for
   that matter a raw DEA recruit would not be allowed to interpret for the
5  jury Lopez's behavior in the parking lot on May 25, 1995 as that of an
   "experienced" trafficker merely because that person was an eyewitness
6  to the same.

7  *Id.* at 1246.

8        Rule 702 applies here because specialized knowledge is required to opine on whether an item

9  purchased from the Internet is or is not genuine Vuitton product. Vuitton's Rule 30(b)(6) witness

10 admits as much. Nikolay Livadkin testified that it requires "significant expertise in recognizing

11 counterfeit products." [Declaration of James A. Lowe ("Lowe Decl.") ¶ 4, **Exhibit "1522"**

12 Deposition of Nicolay Livadkin ("Livadkin Depo.") 20:18-21] Vuitton's other witness, Robert

13 Holmes, testified that he occasionally receives training by brand owners to identify fake products,

14 but that he had not received such training for Vuitton products and would not be testifying about the

15 authenticity of any Louis Vuitton product at trial. [Supplemental Declaration of James A. Lowe. ¶ 4,

16 **Exhibit "1528"** Deposition of Robert L. Holmes ("Holmes Depo.") 134-136] Rule 701 is not

17 implicated because a witness lacking specialized knowledge would be unable to testify about the

18 genuineness of Vuitton products purchased on the Internet.

19        **B.    The Ninth Circuit Limits Application of the Particularized Knowledge Language
              to One Narrow Context**
20

21        The Advisory Committee Note to Rule 701 provides that the 2000 Amendments that added

22 subdivision (c) were not intended to affect longstanding rules that allow a court to "permit[] the

23 owner or officer of a business to testify to the value or projected profits of a business, without the

24 necessity of qualifying the witness as an accountant, appraiser or similar expert." Fed. R. Civ. P.

25 Rule 701, Advisory Committee Note (2000 Amendments). The Committee noted that the testimony

26 is admitted under Rule 701 "not because of experience, training, or specialized knowledge within the

27 realm of an expert, but because of the *particularized knowledge* that the witness has by virtue of his

28 or her position in his business." *Id.* The Committee wanted to make clear that the Supreme Court

1 | did not intend to foreclose lay testimony from a business owner testifying about the value of the

2 | business:

3 | > The amendment is not intended to affect the "prototypical example[s]
4 | > of the type of evidence contemplated by the adoption of Rule 701. . . .
   | > For example, most courts have permitted the owner or officer of a
   | > business to testify to the value or projected profits of a business,
5 | > without the necessity of qualifying the witness as an accountant,
   | > appraiser, or similar expert.

6 |

7 | Federal Rules of Evidence, Rule 701, Advisory Committee Notes (2000).

8 | Noting that the Ninth Circuit had not yet addressed the scope of the paragraph of the

9 | Advisory Committee Note to Rule 701 regarding lay opinion testimony based on particularized

10 | knowledge,[1] this Court in *Hynix Semiconductor Inc. v. Rambus Inc.,* 2008 WL 504098, at \*4 (N.D.

11 | Cal. 2008) considered the "particularized knowledge" language and limited it to one specific

12 | context:

13 | > The court finds these cases persuasive only **in the limited context
14 | > described in the advisory committee note regarding testimony
    | > about one's business, and it does not believe they can be read to
    | > support a broader "particularized knowledge" exception** to the
15 | > expert disclosure rules**.** As a general matter, "[l]ay opinion testimony
    | > is admissible only to help the jury or the court to understand the facts
16 | > about which the witness is testifying **and not to provide specialized
    | > explanations or interpretations that an untrained layman could
17 | > not make if perceiving the same acts or events."** [citing *United
    | > States v. Conn,* 297 F.3d 548, 554 (7th Cir. 2002) (quoting *United
18 | > States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001))] [Emphasis
    | > added.]

19 |

20 | Vuitton's witnesses admit that spotting fake Vuitton merchandise requires specialized

21 | training. Mr. Livadkin testified at his Rule 30(b)(6) deposition in this case: "I have significant

22 | *expertise* in recognizing counterfeit products." Livadkin Depo. 20:18-19. Mr. Holmes testified that,

23 | despite conducting counterfeit investigations for Vuitton for over 25 years, he was unable to spot

24 | brand fakes without specialized training. Holmes Depo. 68:11-13, 134-136. Rule 702 is implicated

25 | because determining the genuineness of Vuitton goods purchased on the Internet requires specialized

26 | 

---

27 | [1]*Hynix*, 2008 WL 504098, at \*4 n.4 ("The Ninth Circuit has not addressed the paragraph of the
   | advisory committee note endorsing lay opinion testimony based on particularized knowledge. It has,
   | however, favorably relied on a related paragraph of the note about identifying drugs. [citing *United*
28 | *States v. Durham,* 464 F.3d 976, 982 (9th Cir. 2006)]).

1    explanations or interpretations that an untrained layman (even one who has worked with Vuitton for

2    many years) could not make.  Certainly a layman or juror would not have the knowledge to

3    determine if a proffered handbag is a genuine Vuitton or a clever fake.

4          **C.     The Law of the Case Doctrine Only Applies to Issues Determined on Appeal**

5          Incredibly, Vuitton attempts to argue that the "law of the case" precludes any inquiry by this

6    Court into whether Mr. Livadkin can testify as to the genuineness of Vuitton products.  At page 5 of

7    its opposition, Vuitton cites selective language from case law to mask the fact that the law of the

8    case doctrine is limited to issues determined ***on appeal***:

9            The "law of the case" doctrine provides that "one panel ***of an***
     ***appellate court*** will not as a general rule reconsider questions which
10   ***another panel*** has decided ***on a prior appeal*** in the same case."
     *United States v. Scrivner,* 189 F.3d 825, 827 (9th Cir.1999)

11

12           "[T]he prior decision of legal issues should be followed ***on a later***
     ***appeal*** 'unless the evidence on a subsequent trial was substantially
     different, controlling authority has since made a contrary decision of
13   the law applicable to such issues, or the decision was clearly erroneous
     and would work a manifest injustice.' " *Merritt v. Mackey*, 932 F.2d
14   1317, 1320 (9th Cir.1991)

15         Vuitton cites *United States v. Cuddy,* 147 F.3d 1111 (9th Cir. 1998), but there the "law of the

16   case doctrine" was implicated only because the District Court did not follow a finding of the Ninth

17   Circuit Court of Appeals after remand:

18           Defendants Sherwood and Cuddy then appealed their convictions to
     this court in a consolidated appeal.  See *United States v. Sherwood,* 98
19   F.3d 402 (9th Cir.1996) ("*Sherwood I*").   We affirmed their
     convictions but remanded to the district court the question whether it
20   properly departed upward based on Application Note 8 of U.S.S.G.
     § 2B3.2, which permits an upward departure if the offense involved "a
21   threat to a family member of the victim."

22           * * *

23           First, the defendants note that our decision in *Sherwood I* stated that
     the record did not support a finding that Ms. Wynn's life was
24   threatened.  Thus, they argue that the district court violated the "law of
     the case" when it determined that the record did support such a
25   finding.

26   *Id.* at 1113.

27   / / /

28   / / /

**D.** **Defendants Have Suffered Substantial Prejudice by Vuitton's Decision to Disregard the Expert Disclosure Requirements of This Court**

Vuitton's claim that it has "substantially complied" with the requirements of Rule 702 and the orders of this Court regarding disclosure of expert witnesses is baseless. The deadline to disclose experts in this case was **not** 90 days prior to trial as Vuitton claims. (Opp. 6:17-27) The Court's November 15, 2007 Scheduling Order explicitly provided that *experts were to be disclosed 63 days before the April 28, 2008 close of discovery:*

> Any party wishing to present expert witness testimony with respect to a claim or defense shall lodge with the Court and serve on all other parties the name, address, qualifications, resume, and a written report which complies with Fed.R.Civ.P. 26(a)(2)(B) **63 days before close of discovery**.

Scheduling Order, p. 3:4-7 [Doc. 23] (emphasis in original).

The Scheduling Order made clear that disclosure of experts 63 days before discovery cutoff was **mandatory** for "regular employees" "who may be called to provide expert opinion testimony":

> Expert witness disclosure **must be made** with respect to a person who is either (a) specially retained or specially employed to provide expert testimony pursuant to Fed.R.Evid. 702 or (b) **a regular employee** or agent or treating physician **who may be called to provide expert opinion testimony**.

Scheduling Order, p. 3:7-10 [Doc. 23] (emphasis added).

Defendants have suffered substantial prejudice as a result of Vuitton's decision to ignore the Court's November 15, 2007 Scheduling Order. Defendants have received no report, and have not received an opportunity to depose Mr. Livadkin or any other witness as an expert. Defendants had no opportunity to obtain a rebuttal expert. Defendants have never been given the opportunity to object to the qualifications or proposed testimony of Vuitton's experts, or file a motion to exclude an expert, as set forth in paragraph 6 of the Scheduling Order:

> Any party objecting to the qualifications or proposed testimony of an expert must file, serve, and notice a motion to exclude the expert or any portion of the expert's testimony in writing in accordance with Civil Local Rules 7-2, for hearing no later than **42 DAYS AFTER BOTH EXPERT AND REBUTTAL EXPERT DISCLOSURES ON A MONDAY (LAW AND MOTION DAY) at 9:00 a.m.** and preferably before or on the same day as the discovery cutoff date at 9:00 a.m.

1 Scheduling Order, p. 3:7-10 [Doc. 23].

2       This is exactly the scenario the Court was seeking to avoid by setting forth explicit expert

3 witness disclosure requirements in its November 15, 2007 Scheduling Order. It is now just three

4 weeks before trial. Defendants are still unaware what the exact scope of Mr. Livadkin's proposed

5 expert testimony would be. No expert witness reports have been proffered by Vuitton, even

6 belatedly (they were due over a year ago). There is no practical opportunity to depose experts or to

7 prepare for trial. Instead, Vuitton expects the Defendants to defend themselves in a "bet the

8 company" jury trial against a rich, powerful international company that blatantly and intentionally

9 disregards orders of the Court to suit itself; and to do so without the benefit of any expert reports or

10 expert witness depositions.

11 **II.     CONCLUSION**

12       For the foregoing reasons, Defendants move to exclude any testimony by Livadkin and

13 Holmes or any undisclosed witness about the genuineness of goods that Vuitton intends to introduce

14 as evidence.

15

16 Dated: March 16, 2009                      **GAUNTLETT & ASSOCIATES**

17

18                              By:    /s/James A. Lowe

19                                    David A. Gauntlett
                                   James A. Lowe
                                   Brian S. Edwards

20                                    Christopher Lai

21                        Attorneys for Defendants
                       Akanoc Solutions, Inc.,

22                        Managed Solutions Group, Inc.,
                       and Steve Chen

23

24

25

26

27

28