1   J. Andrew Coombs (SBN 123881)
    *andy@coombspc.com*
2   Annie S. Wang (SBN 243027)
    *annie@coombspc.com*
3   J. Andrew Coombs, A Prof. Corp.
    517 E. Wilson Ave., Suite 202
4   Glendale, California 91206
    Telephone: (818) 500-3200
5   Facsimile: (818) 500-3201

6   Attorneys for Plaintiff Louis
    Vuitton Malletier, S.A.

7

8

9                    UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

11   Louis Vuitton Malletier, S.A.,          )   Case No. C 07 3952 JW (HRLx)
                                             )
12                      Plaintiff,           )   NOTICE AND MOTION FOR
                                             )   MODIFICATION OF ORDER FOR
13        v.                                 )   INSPECTION AND SANCTIONS
                                             )
14   Akanoc Solutions, Inc., et al.          )
                                             )   Date:  May 26, 2009
15                      Defendants.          )   Time:  10:00 a.m.
                                             )   Court: Mag. Judge Howard R. Lloyd
16   _____)

17   TO THE COURT AND TO THE DEFENDANTS:

18        PLEASE TAKE NOTICE that on May 26, 2009 at 10:00 a.m., or as soon thereafter as the

19

20   matter may be heard in the Courtroom of the Hon. Howard R. Lloyd, Magistrate Judge for the

21   United States District Court located at the United States District Courthouse, 280 South 1st Street,

22   5th Floor, San Jose, California 95113, Plaintiff Louis Vuitton Malletier, S.A. ("Plaintiff" or "Louis

23   Vuitton") will and hereby does move the Court for an order modifying the Order for Inspection

24   entered March 10, 2009 ("Inspection Protocol") and for sanctions pursuant to Fed. R. Civ. P. 37.

25        This motion is based on this Notice of Motion and accompanying Memorandum of Points

26   and Authorities, the Declarations and exhibits filed concurrently herewith, the pleadings, records

27

28

and papers on file herein and such other matters and evidence as may be presented at or before the hearing.

Dated:  April 14, 2009                  J. Andrew Coombs, A Professional Corp.

                                       _____/s/ J. Andrew Coombs_____
                                      By:  J. Andrew Coombs
                                          Annie S. Wang
                                    Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

# INTRODUCTION

## A.    Summary of Dispute.

Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton") brings this Action against Defendants Akanoc Solutions, Inc., Managed Solutions Group, Inc. and their principal Steven Chen (collectively "Defendants") for contributory and vicarious liability for copyright and trademark infringement. Louis Vuitton alleges Defendants aided counterfeiting of Louis Vuitton copyrights and trademarks through the provision of Internet website hosting services and the routing of Internet traffic to third party websites hosted on servers owned, controlled and maintained by Defendants and despite notice to Defendants of the infringing activity occurring on those Websites.

Defendants have produced no documents evidencing their systematic, willful and ongoing hosting services for websites offering counterfeit Louis Vuitton merchandise despite the recent confirmation that they have always had the ability to do so. This is now Louis Vuitton's third motion to the Court on Defendants' (a) initial failure to produce any relevant documents and (b) refusal to cooperate in the inspection of its own servers on which such infringing activity occurs. Louis Vuitton requests monetary sanctions in the form of its attorneys' fees incurred in connection with these efforts and the expert fees incurred in connection with the inspection made necessary by Defendants' obstructionist discovery strategy.

## B.    Statement of Relevant Facts.

On or about January 3, 2008, Louis Vuitton propounded separate sets of document production requests to each defendant. Not one printout, traffic log, page of information or bit of data from any of the servers operated by Defendants was produced in response to Louis Vuitton's demands. Although such data may still exist (or be recoverable) Defendants have made no discernable effort to produce such data. For these reasons, Louis Vuitton filed its motion on March 25, 2008, seeking an order to compel production or, in the alternative, to permit forensic inspection of a sampling of the servers. Declaration of J. Andrew Coombs ("Coombs Decl.") at ¶¶ 2-3.

In Opposition to the Motion, Defendants asserted (i) that they have no control over the servers once "leased" to an account; (ii) even where they may have such control where a re-seller

ceases to use a particular server, they have no obligation to preserve such data despite this litigation or to produce it, and (iii) production of the requested material would violate federal privacy legislation.

After oral argument, the Court entered its ruling on July 15, 2008, which read in part:

> "Based on the foregoing, IT IS ORDERED THAT plaintiff's motion to compel is GRANTED as follows:
> **No later than July 31, 2008,** defendants shall either (1) produce all responsive publicly posted Internet content evidencing offers made of counterfeit Louis Vuitton merchandise and traffic logs evidencing the volume of underlying counterfeit activity, or (2) permit inspection of their servers to allow plaintiff an opportunity to ascertain the same. The discovery shall be limited to the 67 allegedly infringing websites identified by plaintiff. In the event an inspection is held, it shall be conducted pursuant to an appropriate protocol. The court trusts that the parties should be able to agree upon a suitable protocol between themselves. However, if they are not, each side shall submit its proposed protocol for this court's consideration and the court shall decide upon the protocol to be followed."

Defendants produced no documents by the July 31, 2008, deadline specified in the Court's Order. At no time have the Defendants identified what, if any steps were taken before that deadline to comply with that part of the Court's order.

Defendants did file objections to the Court's order on July 25, 2008. By order dated August 7, 2008, Judge Ware overruled the Defendants' objections. In so doing, the Judge Ware stated, among other things:

> "The Court OVERRULES Defendants' objection to the Order to Compel. As directed by Judge Lloyd, the parties shall meet and confer to determine an appropriate protocol for obtaining the discovery at issue."

Between August 4, 2008 and October 24, 2008, through discussions with Defendants' counsel and technical experts, Louis Vuitton attempted to structure a protocol to accomplish the inspection ordered by the Court. On or about October 14, 2008, as a result of those efforts, Louis Vuitton transmitted a working draft proposed protocol, a copy of which is attached hereto as Exhibit D. Thereafter, on October 24, 2008, Defendants objected to the proposed protocol, proposed no changes, and despite requests, submitted no "counter" protocol. Coombs Decl. at ¶¶ 5-6.

On November 10, 2008, Louis Vuitton filed its administrative motion asking the Court to order a protocol for inspection of the Defendants' servers. On March 10, 2009, the Court entered its Order re Discovery Protocol ("Protocol") which provides, among other things that an Inspection shall proceed on the following basis:

- Plaintiff will initially isolate 5 servers for inspection and will stagger additional inspections pursuant to the orders of the court.
- The parties can agree that documents produced will be covered under the protective order and each party will have 20 days to designate materials as confidential.
- Plaintiff's forensic expert shall make best efforts by whatever means necessary to extract the discovery authorized by this court – namely, publicly posted Internet content evidencing offers made of counterfeit Louis Vuitton merchandise and traffic logs evidencing the volume of underlying counterfeit activity pertaining the 67 websites identified by plaintiff.

Prior to the inspection, Louis Vuitton provided Defendants with a list of problem IP Addresses to isolate the five servers to be inspected. Coombs Decl. at ¶ 7. To Louis Vuitton's surprise, additional IP Addresses were needed because multiple IP Addresses provided initially, appeared to be contained on the same servers. Id. Apparently multiple problem IP Addresses belonged to the same "customer." Furthermore, on March 25, 2009, while isolating the five servers on site, it appeared that Defendants' personnel was able to search and identify the IP Addresses at issue very quickly and it was observed that the same individuals identified in connection with prior complaints, including those identified in connection with the 67 websites under the Court's Order to Compel, were the customers to which at least four of the servers belonged. Id. at ¶ 8. The updated and user friendly information easily accessed by Defendants' personnel and observed during the inspection, particularly regarding the histories of the servers, frustratingly, was never produced by Defendants despite a demonstrated ability to do so. Id.; Declaration of Joseph T. Murin ("Murin Decl.") at ¶ 5, Ex. A.

The inspection was completed on the morning of March 26, 2009, and copies of data contained on those servers is currently in possession of forensic experts retained on behalf of Louis Vuitton. Murin Decl. at ¶¶ 2, 5. It appears from information gathered at the time of the inspection, in addition to other things, that the servers may contain data pertaining to publicly accessible website offers of counterfeit Louis Vuitton merchandise located on many more websites than the 67 identified by Louis Vuitton when it filed the underlying motion to compel in March, 2008. Id. at ¶ 7; Coombs Decl. at ¶ 8. This is due, in part, to ongoing hosting activities engaged in by Defendants to the same individuals responsible for the infringing conduct after the underlying motion was filed, and, due to incomplete information available to Louis Vuitton based on Defendants' systematic and ongoing discovery defaults. Coombs Decl. at ¶¶ 7-8; Murin Decl. at ¶ 4, Ex. A. Additional websites have been brought to Defendants' attention since March 2008, and it is likely the problems have continued because the "customers" who were the subject of prior demands have since started to use additional domain names[1]. Coombs Decl. at ¶ 9. Thus, the underlying scope of the order was inadvertently limited and is properly expanded to include all traffic logs and publicly available documents concerning all counterfeiting websites engaged in the infringement of Louis Vuitton's copyrights and trademarks.

Louis Vuitton is informed that the most efficient way to extract the material ordered by the Court is to conduct a search for Louis Vuitton trademarks and other commonly used words on counterfeit sites such as "monogram". Murin Decl. at ¶ 7. However, Defendants object to production regarding websites beyond those identified by Louis Vuitton when it filed the underlying motion to compel in March of 2008, over twelve long months ago, thus necessitating this motion.

**C.**     **Argument.**

    **a.**     **The Underlying Order to Compel was Inadvertently Limited Due to Information Louis Vuitton Was Previously Unaware; Its Modification is Proper In Light of New Facts.**

---

[1] See Exhibit A filed under seal, and particularly entries dated July 30, 2008, and February 2, 2009, within Exhibit A. The information appeared to relate to the same server and the entries corresponded to the dates of cease and desist letters from Louis Vuitton. Coombs Decl. at ¶ 9.

Louis Vuitton should not be constrained by the limits to discovery identified during oral argument on its motion to compel one year ago. All traffic logs and publicly accessible data evidencing offers of counterfeit Louis Vuitton merchandise are relevant, discoverable and appropriately inspected as part of this case. The underlying order to compel was inadvertently limited. Louis Vuitton could not have known at the time of the filing of the underlying motion, or during the oral argument on the motion, that this discovery issue would still exist today, or that the same kinds of problems would persist with the same "customers" of Defendants. Because Defendants have continued their claims of feigned impossibility and have done so inappropriately for the past year, Louis Vuitton seeks modification of the Court's order as well as monetary sanctions.

During oral argument on April 29, 2008, the Court asked counsel for Louis Vuitton about the scope of the dispute before it – including whether the production sought was limited to the websites identified in the discovery propounded. In the interest of facilitating resolution of the dispute, because this was the scope of the infringing activity then known to Louis Vuitton and, most significantly, because the proceeding was for a motion to compel production of documents by Defendants, Louis Vuitton agreed to limit the relief sought to those websites previously identified. Coombs Decl. at ¶ 3.

As noted above, however, Defendants produced no documents notwithstanding the Court's order compelling production by not later than July 31. Significantly, Defendants have made no pretense of their utter failure to even attempt to make such a production, persisting in their misguided and repeatedly rejected assertion of inapplicable statutory protections under the Stored Communications Act. There did not appear to be any barrier to the production of information on Defendants' servers, or, of Defendants' own records regarding the complained of material, even if only in the form of Defendants' internal database entries reflecting counterfeiting activity on the servers and IP Addresses at issue. Coombs Decl. at ¶¶ 7-8; Murin Decl. at ¶¶ 3-4.

Louis Vuitton has, since the hearing on its motion, identified additional sites hosted by Defendants which have been the subject of demands to Defendants. There is, accordingly, no surprise – to Louis Vuitton nor to Defendants – that the servers employed for past illegal infringing

activity continued to be used for such activity after the hearing, order, subsequent notifications and, apparently, even at the time of the long-postponed inspection on March 25, 2009. Coombs Decl. at ¶¶ 7-8. Moreover, evidence generated at the time to insure the inspection proceeded in a manner consistent with the Protocol provided further evidence of infringement. Murin Decl. at Ex. A (see photograph indicating Defendants' own personnel input data apparently acknowledging the server continued to host more than forty sites after follow up notices to Defendants and more than a year after this action was filed.).

Even though Rule 37 also provides for the ultimate sanction of an entry of default judgment for willful disregard of court orders or discovery failures, the less harsh modification order requested by Louis Vuitton is fully supported by the facts of this case, the Court's inherent sanctioning power, and case law. Chambers v. Nasco, Inc., 501 U.S. 32, 43-44 (1991) (going further stating "…it is firmly established that "the power to punish for contempts is inherent in all courts." citing Ex Parte Robinson, 86 U.S. 505, 510 (1873)); NHL Hockey League, et al. v. Metropolitan Hockey Club, Inc., et al., 427 U.S. 639, 640-43 (1976) (affirming dismissal of case under Rule 37 when discovery responses not timely filed despite opportunity, and when finally filed, "grossly inadequate"); U.S. v. Sumitomo Marine & Fire Insurance Company, 617 F.2d 1365, 1370 (9th Cir. 1980) (preclusion order even appropriate if "understaffing" was cause of non-production due to prejudice to other side). An order modifying the Court's inspection protocol to allow for the discovery of all traffic logs and publicly available information pertaining to websites counterfeiting Louis Vuitton's intellectual properties is proper in light of Defendants' deliberate bad faith dealings in the discovery process and purely imagined obstacles that have delayed not only their production of this highly relevant information, but also the discontinuation of infringing sales of counterfeit Louis Vuitton product.

Defendants understandably seek to prevent discovery of this incriminating evidence that will show that not only is the material still existing on their servers, but that even one year later, they are continuing to do business with known infringers. They understand that, in the absence of any defenses and in view of their ongoing willful conduct aiding and abetting the infringement of Louis Vuitton's rights, they have no alternative but to continue to obstruct Louis Vuitton's efforts

to obtain that evidence which ought, properly, to have been produced by them over one year ago in response to Louis Vuitton's proper discovery requests.  Thus, the Court should grant Louis Vuitton's request for a modification of the underlying order.

### b. Defendants' Conduct is Sanctionable.

Based upon the ease by which Louis Vuitton's retained forensics examiner was able to copy the information and the observed convenience at which other relevant, previously undisclosed information was accessed by Defendants' personnel, Louis Vuitton seeks monetary sanctions for Defendants willful withholding of evidence and fabricated obstacles despite Court orders. Additionally, Defendants' responses through counsel contradicted what appeared to be more truthful statements in Defendants' internal database entries regarding continuing infringements. Compare February 10, 2009, letter in Ex. F with Ex. A.  For these reasons, Defendants are properly sanctioned for the added fees and costs which Louis Vuitton has been obliged to incur unnecessarily.

Fed. R. Civ. P. 37(b) lists appropriate sanctions for a party in noncompliance with a court order compelling discovery.  Defendants have delayed and obstructed the development of relevant evidence as provided for by a series of orders by this Court, and the requested relief is proper given that even when a failure to provide discovery is seemingly "innocent…it is fundamental that a party that does not provide discovery cannot profit from its own failure." Dellums v. Powell, 566 F.2d 231, 235 (D.C. Cir. 1977); see also Sumitomo Marine & Fire Insurance Company, 617 F.2d at 1369 (quoting Dellums).  Given the shocking simplicity of the access and review of relevant data that was observed at Defendants' data center just identifying the servers for inspection, there is no doubt that Defendants' willfully withheld pertinent information to this litigation in contempt of the Court's orders and their discovery obligations.

The Court's inherent power to sanction also supports an award of fees and costs as this power is "vested in courts to manage their own affairs as to achieve the orderly and expeditious disposition of cases." Chambers, 501 U.S. at 43 citing Link v. Wabash R. Co., 370 U.S. 626, 630-631 (1962).  Even though "inherent powers must be exercised with restraint and discretion," a court is entirely within reason to assess fees when a party has "acted in bad faith, vexatiously,

wantonly or for oppressive reasons." <u>Chambers</u>, 501 U.S. at 44-46. Furthermore, the Supreme Court has recognized that if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorneys' fees against the responsible party." <u>Id.</u> at 45-46. Defendants' litigation conduct is the exact kind of bad faith delaying, disruption, and hampering of enforcement of court orders that the court's inherent power was contemplated to address. By sanctioning Defendants, the court would serve the dual purpose of "vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." <u>Id.</u> at 46. Defendants' deplorable conduct can not go unpunished and Louis Vuitton would be left without redress for not only the additional costs manufactured by Defendants' misrepresentations and false claims of an inability to produce, but the prejudice that Louis Vuitton has experienced because of Defendants' intentional disregard of their responsibilities not only to the Court but also to their opponent and this judicial process.

Louis Vuitton accordingly requests that this Court award monetary sanctions pursuant to Fed.R.Civ.P. 37(b) in the amount of not less than Fifty-Seven Thousand Seven Hundred Seventy Dollars ($57,770.00), made necessary by Defendants' obstructionist strategies.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for a modification of the March 10, 2009, protocol permitting it to search for all publicly accessible references to the Louis Vuitton Trademarks and other words commonly associated with counterfeiting sites not limited to the 67 websites specified in the underlying order, and for monetary sanctions in the amount of not less than Fifty-Seven Thousand Seven Hundred Seventy Dollars ($57,770.00).

Dated: April 14, 2009                              J. Andrew Coombs, A Professional Corp.


                                         ____/s/ J. Andrew Coombs_____
                                         By:    J. Andrew Coombs
                                                Annie Wang
                                         Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

# DECLARATION OF JOSEPH T. MURIN

I, Joseph T. Murin, declare as follows:

1.     I am currently employed by Guidance Software, Inc. ("Guidance") as a Senior eDiscovery Consultant in the Professional Services Division. I have been employed in this position for the past seven months but have been a forensic consultant with Guidance for over two years. Throughout my tenure at Guidance, I regularly conduct forensic retrieval and examinations of computer hard drives of various sizes and configurations and other data for both criminal and civil matters. In the past year, I have conducted approximately ___25___ such examinations. Prior to joining Guidance, I was a forensic examiner and investigator for the New Jersey Division of Criminal Justice with the Computer Analysis and Technology Unit for approximately three years. I have multiple certifications from the Federal Bureau of Investigation ("FBI"), have obtained TOP SECRET security clearance, and have previously worked as a task force member in FBI funded and managed digital forensics labs. I hold a Bachelors of Science in Information Technology and am frequently invited to speak and retained to instruct courses on forensic data retrieval and processing all over the world. Except as otherwise stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows.

2.     On or about March 25, 2009, at approximately 10:00 a.m., pursuant to the instruction of Louis Vuitton, I travelled to 55 S. Market Street, San Jose, CA 95113, to copy five servers with two of my colleagues and Ms. Annie Wang, counsel for Louis Vuitton.

3.     Once escorted into the data center by an onsite technician who I am informed and believe was named "Srash," I soon learned that the five servers that were the subject of the examination were not set aside. I was informed that a previously agreed upon list of IP Addresses was used to identify the five servers prior to my arrival, so I consulted with Srash and watched him isolate the servers at issue by IP Address using what appeared to be a Windows based internal computer database. Four of the five servers were relatively quickly located and found to be active,

or online, using the database. It was later discovered that the fifth server was already offline but was put aside in another office.

4.    To ensure that all of the servers are traced, it is my standard protocol to take photos of the machines and their original locations so that they can be returned to the proper location once the retrieval is completed. Because the fifth server was brought in from a separate room, I asked Srash how he knew this last server, that was labeled with a different IP Address, was the last one on the previously agreed upon list. In response, Srash again conducted a search of the internal database and found the IP Address on the agreed upon list as an "additional" IP Address to the listed "Main" IP Address on the physical server. Because this server was unique compared to the other servers i.e offline, not on a rack, and Srash apparently had trouble locating it, pursuant to my standard protocol and without prompting from anyone else, I took a series of photographs of the screen where this information was stated. Attached hereto as Exhibit A are true and correct copies of the photographs I took of data appearing on the internal database concerning this fifth server.

5.    The inspection took most of March 25, 2009, and a few hours on March 26, 2009, to complete. However, all five servers were copied and the copies are currently in the possession of Guidance.

6.    I am informed and believe that this inspection is restricted by Court Order to the production of information of traffic logs as well as publicly available information for 67 specified websites that were allegedly selling counterfeit Louis Vuitton merchandise.

7.    Guidance forensic examination software uses a system of keywords or search terms to automatically search through data file names as well as data itself for relevant information. In complying with the protocol, the most efficient method, and the method that in my opinion will yield the highest likelihood of success, is to search keywords such as "LV", "Vuitton" and additional words that are commonly associated with websites selling counterfeit Louis Vuitton. Executing this search has a near certainty that additional publicly available information outside of the 67 specified websites, will be considered a positive result or "hit" by the software. These "hits" may otherwise be relevant. The software will produce the results of the keyword search by

location on the drive in list form before any of the underlying data is actually produced or needs to be reviewed. I anticipate reviewing the search results for this search for "LV", "Vuitton" and others, and then narrowing the data actually produced to the 67 specified websites in the Court's Order.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 13 day of April, 2009, at _____Emeryville_____, California.

_____
JOSEPH T. MURIN

# DECLARATION OF J. ANDREW COOMBS

I, J. Andrew Coombs, declare as follows:

1.      I am an attorney at law, duly admitted to practice before the Courts of the State of California and the United States District Court for the Northern District of California.  I am counsel of record for Plaintiff, Louis Vuitton Malletier, S.A. ("Louis Vuitton") in an action styled *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, *et al.*, and, except as otherwise expressly noted to the contrary, I have personal knowledge of the following facts.

2.      On or about January 3, 2008, Louis Vuitton propounded separate sets of document production requests to each defendant.  Not one printout, traffic log, page of information or bit of data from any of the servers operated by Defendants was produced in response to Louis Vuitton's demands.  Although such data may still exist (or be recoverable) Defendants have made no discernable effort to produce such data.

3.      On March 25, 2008 I caused to be filed Louis Vuitton's motion to compel production and, in the alternative, to permit inspection of servers operated by Defendants in this matter.  On April 29, 2008 I attended the hearing before Magistrate Judge Lloyd on Louis Vuitton's motion.  In the interest of facilitating resolution of the dispute, because this was the scope of the infringing activity then known to Louis Vuitton and, most significantly, because the proceeding was for a motion to compel production of documents by Defendants, Louis Vuitton agreed to limit the relief sought to those websites previously identified.  On July 15, 2008, the Court entered its Order compelling production and, in the alternative, ordering inspection of the Defendants' servers.  A copy of that Order is attached hereto as Exhibit B.

4.      Defendants produced no documents on or before July 31, 2008.  Defendants did file objections to the Exhibit B order.  Those objections were overruled by Judge Ware on August 7, 2008.  A copy of the Court's order overruling Defendants' objections is attached hereto as Exhibit C.

5.      On August 4, 2008, having received no documents pursuant to the Exhibit B Order and no order staying its effect, I wrote to Defendants' counsel of record confirming that no documents were produced and proposing that we move forward in establishing the protocol

ordered by the Court.  After further correspondence, I met telephonically with Defendants' counsel and we agreed to involve our respective experts in the process of seeking to establish a protocol in accordance with the Courts order.  An initial conference call was held on August 27, 2008.

6.      Between August 27, 2008 and September 29, 2008, the Parties continued to exchange information in an effort to establish the protocol ordered by the Court.  On October 14, 2008, I caused to be transmitted a working draft proposed protocol based on the discussion which had occurred.  By letter dated October 24, 2008, Defendants rejected the proposed protocol, asserted that any proposed inspection was unworkable (apparently on the same grounds rejected by the Court) and submitted no alternative proposal.  By letter dated November 3, 2008, I caused to be transmitted a follow up, expressly requesting Defendants' proposed protocol but was met with more claims of impossibility.

7.      On or about March 10, 2009, the court issued its order on the protocol attached hereto as Exhibit D, after Plaintiff's request for intervention.  Prior to the inspection, my office provided Defendants' counsel with a list of IP Addresses to isolate the five servers to be inspected pursuant to the Court's orders.  My office was required to supplement that initial list because multiple IP Addresses initially identified were in fact hosted on the same servers.  Attached hereto as Exhibit E are true and correct copies of the correspondence between counsel regarding the servers to be inspected.

8.      I am informed and believe that, on March 25, 2009, while isolating the five servers on site, Defendants' personnel was able to search and identify the IP Addresses at issue quickly and the same individuals identified in connection with prior complaints, including those identified in connection with the 67 websites under the Court's Order to Compel, were the customers to which at least four of the five servers belonged.  This updated hosting data has not been produced by Defendants despite an apparent ability to do.

9.      Numerous additional infringing websites outside of the 67 listed in the attachment to Louis Vuitton's initial request have been the subject of subsequent cease and desist requests to counsel.  Among those include but are not limited to correspondence dated March 31, 2008, April 7, 2008, June 2, 2008, June 20, 2008, June 24, 2008, July 25, 2008, September 19, 2008, January

30, 2009, and February 4, 2009. Attached collectively as Exhibit F is a sample consisting of

Plaintiff's letter of January 30, 2009, February 4, 2009 and Defendants' response of February 10,

2009, which contained flat contradictions to what appears to be stated in Defendants' internal

database, attached hereto as Exhibit A.

10.     My hourly rate is $395 per hour and that of my associate Annie S. Wang was $225

per hour until approximately June 2008, and since then is $265 per hour. For the Court's benefit

should it wish to order sanctions against Defendants, I estimate that the fees for my associate and I,

along with costs associated with Defendants' bad faith tactics is not less than Fifty-Seven

Thousand Seven Hundred Seventy Dollars ($57,770.00). This includes Twenty Thousand Seven

Hundred Seventy Dollars ($20,770.00) worth of fees and costs (1) of bringing the initial motion to

compel and appearing at oral argument on that motion; (2) for preparing and filing a response to

Defendants' objections to this Courts order to compel; (3) for counsel's ongoing and fruitless

attempts to agree upon a protocol consistent with the Court's underlying order to compel; (4) for

preparing the administrative motion requesting the Court set a protocol for inspection; (5) for

Defendants' refusal to stipulate to the requested relief and thus preparing this supplemental motion

to modify the Protocol and (6) $37,000 for the expert costs associated with engaging in an

inspection made necessary by Defendants' obstructionist strategies. Should the Court award

sanctions, I am prepared to submit a detailed accounting supporting this estimate.

I declare under penalty of perjury that the foregoing is true and correct and this declaration

was executed the 14th day of April, 2009 at Glendale, California.


_____/s/ J. Andrew Coombs_____
J. ANDREW COOMBS

EXHIBIT A

FILED UNDER SEAL IN ACCORDANCE WITH LOCAL RULE 79-5

**EXHIBIT A**

J. Andrew Coombs (SBN 123881)
Annie S. Wang (SBN 243027)
J. Andrew Coombs, A Prof. Corp.
517 E. Wilson Ave., Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

andy@coombspc.com
annie@coombspc.com

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | |
|---|---|
| Louis Vuitton Malletier, S.A., | Case No. C 07 3952 JW |
| Plaintiff, | **EXHIBIT A TO PLAINTIFF'S** |
| v. | **NOTICE AND MOTION FOR** |
| | **MODIFICATION OF ORDER FOR** |
| Akanoc Solutions, Inc., et al. | **INSPECTION AND SANCTIONS** |
| Defendants. | |

MANUAL FILING NOTIFICATION

Regarding:          EXHIBIT A to PLAINTIFF'S NOTICE AND MOTION FOR

MODIFICATION OF ORDER FOR INSPECTION AND SANCTIONS.


This filing is in paper or physical form only, and is being maintained in the case file in the Clerk's

office.


If you are a participant in this case, this filing will be served in hard-copy shortly.


For information on retrieving this filing directly from the court, please see the court's main web site

at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

This filing was not efiled for the following reason(s):

[_] Voluminous Document (PDF file size larger than the efiling system allows)

[_] Unable to Scan Documents

[_] Physical Object (description): _____

_____

[_] Non-Graphic/Text Computer File (audio, video, etc.) on CD or other media

[X] Item Under Seal

[_] Conformance with the Judicial Conference Privacy Policy (General Order 53).

[_] Other (description): _____

_____

Dated:  April 14, 2009                    J. Andrew Coombs, A Professional Corp.

                                          ____/s/ J. Andrew Coombs_____
                                          By:    J. Andrew Coombs
                                                 Annie S. Wang
                                          Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

**EXHIBIT B**

United States District Court

For the Northern District of California

1

2          *E-FILED 7/15/2008*

3

4

5

6

7                    NOT FOR CITATION

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11   LOUIS VUITTON MALLETIER, S.A.,          No. C07-03952 JW (HRL)

12          Plaintiff,                       **ORDER GRANTING PLAINTIFF'S
                                              MOTION TO COMPEL DOCUMENTS**
13     v.

14   AKANOC SOLUTIONS, INC., MANAGED          **[Re: Docket No. 30]**
     SOLUTIONS GROUP, INC. STEVEN CHEN
15   and DOES 1 THROUGH 10,

16          Defendants.

17   _____/

18          Plaintiff Louis Vuitton Malletier, S.A. moves for an order compelling defendants to

19   produce documents, or alternatively, permitting plaintiff to conduct a forensic examination of a

20   sampling of defendants' servers.  Defendants oppose the motion.  Upon consideration of the

21   moving and responding papers,[1] as well as the arguments presented, this court grants the

22   motion.

23

24

25          [1]      Defendants object to plaintiff's reply brief and to certain portions of the
     supporting declaration of plaintiff's counsel, Andrew Coombs.  The stated objections are
26   based on one or more of the grounds of relevance, lacking in foundation or personal
     knowledge, speculation, or hearsay.  Defendants argue that plaintiff's reply brief and
27   Coombs' declaration contain new facts and arguments that were not raised in the initial
     moving papers.  However, the court finds that the challenged statements were properly raised
28   in response to arguments that defendants made (apparently for the first time) in their
     opposition.  Moreover, the court finds that defendants had sufficient opportunity to respond
     to those arguments at the motion hearing.  The court appreciated what was relevant and what
     was not and considered the declaration for what it was worth.

Exhibit B, Page 18

United States District Court

For the Northern District of California

1    Plaintiff sues for alleged trademark and copyright infringement.  It claims that

2    defendants are secondarily liable for infringement because they provide Internet hosting

3    services for a number of websites that sell counterfeit Louis Vuitton merchandise.  Defendants

4    say that they simply provide access to the Internet by renting Internet Protocol ("IP") addresses

5    and Internet bandwidth to third-party resellers and other Internet hosting companies who, in

6    turn, host individual websites.  Defendants further contend that, unless a specific complaint is

7    brought to their attention, they have no knowledge or control over the contents of websites

8    hosted on their servers.

9    Plaintiff moves to compel two categories of documents concerning the websites[2] –

10    namely:  (1) publicly posted Internet content evidencing offers made of counterfeit Louis

11    Vuitton merchandise on the websites; and (2) traffic logs that evidence the volume of

12    underlying counterfeit activity.  Plaintiff says that these documents are called for by Request

13    Nos. 1, 5, 7, 12, 13, 21, 22, 24 and 25.

14    Defendants agreed to produce correspondence and emails sent to them concerning the

15    websites and any subsequent "take down" notices sent to re-sellers.  However, defendants assert

16    that responsive documents otherwise never existed or are not in their possession, custody or

17    control.  (*See* Lowe Decl., Exs. 1501 and 1502).  Apparently for the first time in their

18    opposition brief, defendants also contend that their production of the requested information

19    would violate the federal Wiretap Act (18 U.S.C. § 2510, *et seq.*) and the Stored

20    Communications Act (18 U.S.C. § 2702).

21    **A.    Defendants' General Objections**

22    Preliminarily, plaintiff argues that defendants did not object to any of the specific

23    requests at issue.  Defendants maintain that they properly objected by asserting General

24    Objections on several grounds, including that the information is protected by the attorney-client

25

26

27    _____

        [2]    Plaintiff's requests reportedly defined "website" or "websites" as terms
28    "refer[ring] to all Internet content hosted by YOU at each of the Interest websites located
within uniform resource locators or domain names including but not limited to those listed in
Exhibit A attached hereto."  (Reply at 2 n.1).

2

1    privilege and the attorney work product doctrine, and that the requests are vague, ambiguous,

2    overbroad and unduly burdensome.  (Lowe Decl., Exs. 1501 and 1502).

3        Grounds for objection to discovery requests must be stated with specificity as to each

4    request.  *See* FED.R.CIV.P. 34(b)(2).  This is particularly true with respect to claims of privilege.

5    *See* FED.R.CIV.P. 26(b)(5)(A).  Here, defendants merely asserted a number of boilerplate,

6    blanket General Objections at the outset of their responses.  This practice obscures the extent to

7    which defendants may be withholding information in response to each request and does not

8    satisfy the requirement for specificity under Fed. R. Civ. P. 34.  Accordingly, this court

9    concludes that, except as to any objections asserted in response to specific requests, defendants

10   did not properly object to the requests in question.

**B.    Publicly Posted Internet Content and Traffic Logs**

11

12       Defendants initially took the position that they do not deal directly with individual

13   websites and are therefore unable to produce the requested data.  However, they acknowledge

14   that they own the servers on which the requested information resides; and, Federal Rule of Civil

15   Procedure 34 requires a party to produce not only documents in its control, but also those in its

16   possession or custody.  FED.R.CIV.P. 34(a)(1).

17       Nonetheless, defendants now contend that, even if they could be said to possess the

18   requested information, they are prohibited from disclosing it to plaintiff by the federal Wiretap

19   Act, 18 U.S.C. § 2510, *et seq.*, and the Stored Communications Act, 18 U.S.C. § 2702.

20       Congress passed the Electronic Communications Privacy Act (ECPA) in 1986 to protect

21   the privacy of electronic communications.  *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868,

22   874 (9th Cir. 2002).  "Title I of the ECPA amended the federal Wiretap Act, which previously

23   addressed only wire and oral communications, to 'address[] the interception of . . . electronic

24   communications.'"  *Id*. (quoting S. Rep. No. 99-541, at 3 (1986)).  "Title II of the ECPA created

25   the Stored Communications Act (SCA), which was designed to 'address[] access to stored wire

26   and electronic communications and transactional records."  *Id*. (quoting S. Rep. No. 99-541, at

27   3 (1986)).

28

**United States District Court**
For the Northern District of California

3

United States District Court

For the Northern District of California

1    Louis Vuitton's requested production is not prohibited by the federal Wiretap Act. "The

2    Wiretap Act makes it an offense to 'intentionally intercept [] . . . any wire, oral, or electronic

3    communication.'" *Konop*, 302 F.3d at 876 (quoting 18 U.S.C. § 2511(1)(a)). The Ninth Circuit

4    has held that, in order for information to be "intercepted" within the meaning of the Wiretap

5    Act, "it must be acquired during transmission, not while it is in electronic storage." *Id*. at 878.

6    Here, plaintiff says that it is not seeking information during transmission and agrees to exclude

7    any such communications from its requests.

8    Defendants nonetheless maintain that the requested production will cause them to

9    violate the SCA. "Generally, the SCA prevents 'providers' of communication services from

10   divulging private communications to certain entities and/or individuals." *Quon v. Arch

11   Wireless Operating Co.*, __ F.3d __, 2008 WL 2440559 at *5 (9th Cir., June 18, 2008).

12   Defendants say that they are prohibited from producing the requested information by SCA

13   Section 2702(a)(1), which makes it unlawful for a person or entity providing an "electronic

14   communication service" to the public to "knowingly divulge to any person or entity the contents

15   of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

16   Defendants have provided few details about how their business operates or the nature of their

17   relationship with their customers; and, the little information that has been is very generalized.

18   However, the cases cited by defendants concern the disclosure of the contents of email

19   messages, personal text messages, private messages posted for a limited number of subscribers

20   on a secure website, and the like. Here, by contrast, plaintiff seeks information – publicly

21   posted content evidencing offers of counterfeit Louis Vuitton merchandise – that was broadcast

22   on publicly accessible websites to the public at large. "The legislative history and the statutory

23   structure [of the ECPA] clearly show that Congress did not intend to criminalize or create civil

24   liability for acts of individuals who 'intercept' or 'access' communications that are otherwise

25   readily accessible by the general public." *Snow v. Directv, Inc.*, 450 F.3d 1314, 1320-21 (11th

26   Cir. 2006). Nor is there anything in the record presented to indicate that the requested server

27   logs, which reflect the volume of traffic to the allegedly infringing websites, contain the

28

4

1  contents of any communications. Even if they did, plaintiff indicates that it is willing to accept

2  a redacted production that excludes such communications.

3      Although defendants assert that they have no ability to access the content on their own

4  servers, they acknowledged at oral argument that such access is technologically feasible.[3] It

5  was further suggested at the hearing that defendants control the router that directs traffic to the

6  assigned IP addresses – an assertion which defendants did not deny. And, the record presented

7  suggests that they have the ability to conduct searches of some kind. (*See* Coombs Suppl.

8  Decl., ¶¶ 5-6, Exs. A and B).[4]

9      Defendants argue that the requested discovery is unduly burdensome because they claim

10 that the requests, as drafted, call for information from potentially thousands of websites. (Opp.

11 at p. 2, n.2). However, plaintiff indicates that it is willing to limit the discovery to 67 websites

12 that it has identified as selling allegedly counterfeit Louis Vuitton merchandise. (*See* Reply,

13 Ex. B). As such, this court finds that the discovery is reasonably tailored and that any burden

14 that may be imposed is not undue.

15     Based on the foregoing, IT IS ORDERED THAT plaintiff's motion to compel is

16 GRANTED as follows:

17     **No later than July 31, 2008**, defendants shall either (1) produce all responsive publicly

18 posted Internet content evidencing offers made of counterfeit Louis Vuitton merchandise and

19 traffic logs evidencing the volume of underlying counterfeit activity, or (2) permit inspection of

20 their servers to allow plaintiff an opportunity to ascertain the same. The discovery shall be

21 limited to the 67 allegedly infringing websites identified by plaintiff. In the event an inspection

22

23     [3]    Defendants say that they give password control to their customers.
   Nevertheless, at the motion hearing, defendants also confirmed that their servers rotate in and

24 out of use, that defendants initially assign passwords to their clients, and that defendants also
   re-set passwords when servers have been "returned" or "abandoned."

25     [4]    Plaintiff acknowledges that Mr. Coombs' supplemental declaration was not
   submitted in compliance with the court's Civil Local Rules. *See* Civ. L.R. 7-3(d).

26 Nevertheless, the key issues in dispute were only raised by defendants for the first time in
   their opposition brief; and, given the nature of the parties' dispute, this court found that

27 resolution of the instant dispute was aided by more information, not less. Moreover, at the
   motion hearing, each side had ample opportunity to address all issues raised in the papers.

28 Accordingly, this court has exercised its discretion and considered the belated declaration.
   However, plaintiff is admonished to comply with the court's rules on all future filings.

Exhibit B, Page 22

United States District Court

For the Northern District of California

1  is held, it shall be conducted pursuant to an appropriate protocol. The court trusts that the

2  parties should be able to agree upon a suitable protocol between themselves. However, if they

3  are not, each side shall submit its proposed protocol for this court's consideration and the court

4  shall decide upon the protocol to be followed.

5  Dated:    July 15, 2008

6  _____

7  HOWARD R. LLOYD
   UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

6

**5:07-cv-3952 Notice has been electronically mailed to:**

J. Andrew Coombs andy@coombspc.com, jeremy@coombspc.com

James A. Lowe info@gauntlettlaw.com, arm@gauntlettlaw.com, bse@gauntlettlaw.com, jal@gauntlettlaw.com, pam@gauntlettlaw.com

Annie S Wang annie@coombspc.com, andy@coombspc.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.

**United States District Court**
For the Northern District of California

7

**EXHIBIT C**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Louis Vuitton Malletier, S.A., | NO. C 07-03952 JW |
| Plaintiff, | **ORDER OVERRULING DEFENDANTS'** |
| v. | **OBJECTION TO THE MAGISTRATE** |
| | **JUDGE'S ORDER COMPELLING** |
| Akanoc Solutions, Inc., et al., | **PRODUCTION OF DOCUMENTS** |
| Defendants. | |
| _____/ | |

## I.  INTRODUCTION

Luis Vuitton Malletier, S.A. ("Plaintiff") brings this action against Akonoc Solutions, Managed Solutions Group, and Steven Chen (collectively, "Defendants"), alleging contributory and vicarious trademark and copyright infringement.  Defendants are internet service providers who host third-party websites on their servers.  Plaintiff alleges that Defendants have knowingly facilitated the sale of counterfeit products through their hosting of web sites that sell such goods.  (See Amended Complaint for Contributory and Vicarious Trademark Infringement, Docket Item No. 71.)

A discovery dispute arose concerning Plaintiff's request for information stored on Defendants' servers.  On July 15, 2008, Magistrate Judge Lloyd granted Plaintiff's motion to compel.  (hereafter, "Order to Compel," Docket Item No. 65.)  Judge Lloyd ordered Defendants to "produce all responsive publicly posted Internet content evidencing offers made of counterfeit Louis Vuitton merchandise and traffic logs evidencing the volume of underlying counterfeit activity....The discovery shall be limited to the 67 allegedly infringing websites identified by plaintiff."  (Id. at 5.)

1    Presently before the Court is Defendants' objection to the order to compel.  (hereafter,

2    "Objection," Docket Item No. 69.)

3                                    **II.  DISCUSSION**

4    Defendants object to the order on the grounds that: (1) disclosing information stored by

5    third-parties would violate the Stored Communications Act ("SCA") 18, U.S.C. § 2702; and (2)

6    producing the contents requested is impossible.  (Objection at 1, 9.)

7    A district court reviews a magistrate judge's ruling under the "clearly erroneous" or

8    "contrary to law" standard.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); <u>Bahn v. NME</u>

9    <u>Hospitals, Inc.</u>, 929 F.2d 1404, 1414 (9th Cir. 1991).

10    The Court considers each issue in turn.

11    **A.    <u>Stored Communications Act</u>**

12    Defendants contend that Judge Lloyd erred by ordering discovery that would require them to

13    violate the SCA.  (Objection at 1.)

14    The SCA "prevents 'providers' of communication services from divulging private

15    communication to certain entities and/or individuals."  <u>Quon v. Arch Wireless Operating Co.</u>,

16    —F.3d—, 2008 WL 2440559 at *5 (9th Cir., June 18, 2008).  However, the SCA does not

17    "criminalize or create civil liability for acts of individuals who 'intercept' or 'access'

18    communications that are otherwise readily accessible by the general public."  <u>Snow v. Directv, Inc.</u>,

19    450 F.3d 1314, 1320-21 (11th Cir. 2006).

20    Defendants contend that the discovery sought violates the SCA because it requires them to

21    disclose private information belonging to third-parties.  (Objection at 3.)  Defendants' contention

22    blatantly misrepresents Judge Lloyd's order.  Judge Lloyd specifically limited his order to all

23    "publicly posted Internet content."  (Order to Compel at 5.)  Defendants are not required to disclose

24    private information stored on their computers; they are only required to disclose information that the

25    third-parties have made available to the public.  Accordingly, the Court finds that the Order to

26    Compel does not violate the SCA.

27

28                                           2

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

**B.      Compliance**

Defendants contend that they cannot comply with the Order to Compel because (1) they do not have access to the password protected content and (2) they have approximately 1500 servers, which make any search unduly burdensome.  (Objection at 9.)

First, as discussed above, the discovery is limited to publicly available contents.  Defendants have offered no evidence to suggest that they cannot produce publicly available contents without accessing password protected contents.  Second, although Defendants claim they have more than 1500 servers, discovery is limited to 67 specific web sites.  (Order to Compel at 5.)  Defendants have offered no evidence to suggest that they cannot narrow the number of servers on which responsive contents might exist based on these 67 specific web sites and their own business records.  Accordingly, the Court finds Defendants have not shown that the discovery sought is unduly burdensome.

### III.  CONCLUSION

The Court OVERRULES Defendants' objection to the Order to Compel.  As directed by Judge Lloyd, the parties shall meet and confer to determine an appropriate protocol for obtaining the discovery at issue.  All other discovery disputes are referred to Judge Lloyd.


Dated:  August 7, 2008                          _____
                                                JAMES WARE
                                                United States District Judge

3

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Annie S Wang annie@coombspc.com
Brian S. Edwards bse@gauntlettlaw.com
David A. Gauntlett info@gauntlettlaw.com
J. Andrew Coombs andy@coombspc.com
James A. Lowe info@gauntlettlaw.com

**Dated:  August 7, 2008**                    **Richard W. Wieking, Clerk**

                                              **By:   /s/ JW Chambers              **
                                                   **Elizabeth Garcia**
                                                   **Courtroom Deputy**

**United States District Court**
For the Northern District of California

**EXHIBIT D**

*E-FILED 3/10/2009*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LOUIS VUITTON MALLETIER, S.A.,

       Plaintiff,

  v.

AKANOC SOLUTIONS, INC., MANAGED
SOLUTIONS GROUP, INC. STEVEN CHEN
and DOES 1 THROUGH 10,

       Defendants.

_____/

No. C07-03952 JW (HRL)

**ORDER RE DISCOVERY PROTOCOL**

**[Re: Docket No. 94]**

     This is an action for alleged trademark and copyright infringement.  Plaintiff claims that defendants are secondarily liable for infringement because they provide Internet hosting services for a number of websites that sell counterfeit Louis Vuitton merchandise.  Defendants say that they simply provide access to the Internet by renting Internet Protocol ("IP") addresses and Internet bandwidth to third-party resellers and other Internet hosting companies who, in turn, host individual websites.  Defendants further contend that, unless a specific complaint is brought to their attention, they have no knowledge or control over the contents of websites hosted on their servers.

     This court previously granted plaintiff's motion to compel and ordered defendants to "(1) produce all responsive publicly posted Internet content evidencing offers made of counterfeit Louis Vuitton merchandise and traffic logs evidencing the volume of underlying

1    counterfeit activity, or (2) permit inspection of their servers to allow plaintiff an opportunity to

2    ascertain the same." (Order, Docket No. 65 at 5). Discovery was limited to the 67 allegedly

3    infringing websites identified by plaintiff. (Id.). In the event plaintiff proceeded with an

4    inspection, the parties were directed to meet-and-confer to agree upon an appropriate protocol.

5    (Id. at 5-6). Defendants' objections to that discovery order were overruled by the presiding

6    judge. (Order, Docket No. 76).

7        Plaintiff says that defendants have produced no documents, and the parties advise that

8    they have not been able to agree on a protocol for an inspection of defendants' servers. Now

9    before this court is plaintiff's "Administrative Motion re Discovery Orders."[1] Plaintiff advises

10    that the parties have resolved the dispute over payment of Mr. Livadkin's travel expenses, and

11    that portion of plaintiff's motion has been withdrawn. Thus, the only remaining issues in

12    dispute are an appropriate protocol for the inspection of defendants' servers and whether

13    discovery sanctions should be imposed. Specifically, the parties seek this court's guidance on

14    two issues:

15        (1)    the amount and nature of the advance notice (if any) to be given to defendants'

16            customers re the inspection; and

17        (2)    how to search for and produce publicly posted Internet content evidencing offers

18            made of counterfeit Louis Vuitton merchandise.[2]

19    Plaintiff requests that, if the court concludes that data cannot be made available as a result of

20    defendants' conduct in discovery, then the court should impose sanctions – i.e., either by

21    deeming facts admitted or admitting alternate forms of evidence in support of plaintiff's

22    allegations.

23

24    _____

25        [1]    Defendants contend that plaintiff's motion was improperly brought as one
    seeking "administrative" relief. Indeed, plaintiff's motion seeks relief well beyond
26    administrative matters falling within the ambit of Civil Local Rule 7-11.

27        [2]    This court does not understand the portion of its July 15, 2008 discovery order
    requiring the production of traffic logs to be cabined by the phrase "publicly available." As
28    such, it assumes that ordered production of traffic logs is not implicated in the instant
    dispute.

Exhibit D, Page 30

**United States District Court**
For the Northern District of California

1    Upon consideration of the moving and responding papers, and after weighing competing

2    legitimate interests and possible prejudice, this court rules as follows:

3    The primary issue in dispute is whether plaintiff's proposed protocol properly can

4    accomplish what the court has ordered – i.e., production of publicly posted Internet content

5    evidencing offers made of counterfeit Louis Vuitton merchandise (as opposed to contents of

6    non-public communications).  Apparently, the current (and ongoing) stumbling block to this

7    discovery is that defendants continue to insist that producing the ordered material is impossible.

8    Defense counsel says that he spoke to various forensic experts who reportedly told him that they

9    did not know of a way to conduct a server search that "distinguishes between private

10    information and publically [sic] available contents stored on Defendants' Internet servers."  (Lai

11    Decl., ¶ 6).  Defendant, however, has not provided this court with any expert declarations to aid

12    in the determination of this motion, and defense counsel's hearsay pronouncements about the

13    opinions of unnamed individuals ring hollow.  Also, defendants have provided precious little

14    information about their systems, how they work, or what an inspection of their servers would

15    entail.  Instead, defendants simply maintain (without proof) that any proposed inspection will be

16    unworkable and offer no alternative – except to say that this court should conduct an *in camera*

17    review of any server contents extracted by a forensic expert to figure it out – without indicating

18    what this court would look for or how it would even make the determination.  Plaintiff has not

19    said that its forensic expert cannot conduct the inspection so as to distinguish between what is

20    public and what is not; and, this court believes that an expert is in the best position to locate and

21    identify public information.

22    As for the dispute over the advance notice to be given to defendants' customers, plaintiff

23    shall give 24-hours notice.  However, this court is unpersuaded that defendants' desire to inform

24    their customers of the reason for the inspection outweighs plaintiff's interest in obtaining any

25    evidence of counterfeiting activity.

26    Accordingly, this court adopts plaintiff's proposed protocol, with some modification:

27    1.    Plaintiff shall provide 24-hours notice as to the servers to be inspected.

28

3

United States District Court

For the Northern District of California

2.     Defendants may not "tip off" or otherwise suggest to their customers the purpose of the inspection other than to state, after plaintiff has provided notice identifying a specific server, that "service may be disrupted on [a specified date]" as to the identified server only.

3.     Plaintiff will initially isolate 5 servers for inspection and will stagger additional inspections pursuant to the orders of the court.

4.     Plaintiff's forensic expert (and its personnel) shall sign Exhibit A to the Protective Order as necessary.

5.     The parties can agree that documents produced will be covered under the protective order and each party will have 20 days to designate material as confidential.

6.     Plaintiff's forensic expert will go to defendants' premises where at least one technical person on defendants' side will be present should any questions arise.

7.     Plaintiff's forensic expert shall make best efforts by whatever means necessary to extract the discovery authorized by this court – namely, publicly posted Internet content evidencing offers made of counterfeit Louis Vuitton merchandise and traffic logs evidencing the volume of underlying counterfeit activity pertaining to the 67 websites identified by plaintiff.

8.     Plaintiff's forensic expert will provide copies of results to plaintiff.

9.     Plaintiff's counsel will send digital copies to defense counsel.

10.    The inspection shall take place without delay.

11.    The parties will cooperate with each other in this process.

On the record presented, this court cannot determine whether evidentiary sanctions properly may be imposed.  Accordingly, that portion of plaintiff's motion is denied without prejudice.

4

1      SO ORDERED.

2    Dated:   March 10, 2009

3

4                  HOWARD R. LLOYD
                    UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

5

**United States District Court**
For the Northern District of California

1   **5:07-cv-3952 Notice has been electronically mailed to:**

2   Annie S Wang annie@coombspc.com, andy@coombspc.com

3   Brian S. Edwards bse@gauntlettlaw.com

4   David A. Gauntlett info@gauntlettlaw.com

5   J. Andrew Coombs andy@coombspc.com, jeremy@coombspc.com, katrina@coombspc.com

6   James A. Lowe info@gauntlettlaw.com, ams@gauntlettlaw.com, arm@gauntlettlaw.com,
    bse@gauntlettlaw.com, jal@gauntlettlaw.com, pam@gauntlettlaw.com

7

8   **Counsel are responsible for distributing copies of this document to co-counsel who have
    not registered for e-filing under the court's CM/ECF program**.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

# EXHIBIT E

# Annie Wang

**From:** Christopher Lai [CL@gauntlettlaw.com]
**Sent:** Tuesday, March 24, 2009 12:38 PM
**To:** Annie Wang
**Cc:** Lowe, James A.; Murray, Peggy A.; Andy Coombs
**Subject:** RE: LV v. Akanoc- Inspection, 10562.002

Annie,

The fifth server (205.209.177.131) will be available for inspection tomorrow.

Chris

---

**From:** Annie Wang [mailto:annie@coombspc.com]
**Sent:** Tuesday, March 24, 2009 11:15 AM
**To:** Christopher Lai
**Cc:** Lowe, James A.; Murray, Peggy A.; 'Andy Coombs'
**Subject:** RE: LV v. Akanoc- Inspection, 10562.002

Chris,

Thanks for your email. I trust we should be able to start on time for those 4 at least tomorrow morning.

Re the fifth server, can we look at the server for 205.209.177.131 from January 2009? Let me know.

Thanks,
Annie

---

**From:** Christopher Lai [mailto:CL@gauntlettlaw.com]
**Sent:** Tuesday, March 24, 2009 10:59 AM
**To:** Annie Wang
**Cc:** Lowe, James A.; Murray, Peggy A.; Andy Coombs
**Subject:** RE: LV v. Akanoc- Inspection, 10562.002

Annie,

The IP addresses noticed emcompass 4 servers as follows:

(1) 208.77.46.40 and 208.77.46.42 are all on the same server
(2) 205.209.136.83
(3) 205.209.139.107 and 205.209.137.51 and 205.209.137.52 and 205.209.137.55 are all on the same server
(4) 205.209.164.69

Christopher Lai, Esq.
Gauntlett & Associates
Tel: (949) 553-1010 ext. 256
Fax: (949) 553-2050
Email: CL@gauntlettlaw.com
Web: www.gauntlettlaw.com

Exhibit E, Page 35

This information is intended for use by the individuals or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us.

**From:** Annie Wang [mailto:annie@coombspc.com]
**Sent:** Tuesday, March 24, 2009 9:35 AM
**To:** Christopher Lai
**Cc:** Lowe, James A.; Murray, Peggy A.; 'Andy Coombs'
**Subject:** LV v. Akanoc- Inspection

Chris,

Please see the below list of IP Addresses. We would expect to inspect the servers that are currently using these IP Addresses. If the ones listed in 5) are not on the same server, please use 6) as our fifth server. If any of these are on the same server so that we actually have less than 5 servers identified, please let us know ASAP.

1) 208.77.46.40
2) 208.77.46.42
3) 205.209.136.83
4) 205.209.139.107
5) 205.209.137.51/205.209.137.52/205.209.137.55 (only if on the same server)
6) 205.209.164.69

If there are any issues, let me know as soon as possible in light of the 24 hour generic notice contemplated in Magistrate Judge Lloyd's order.

Thanks,
Annie


**Annie S. Wang**
Law Offices of J. Andrew Coombs, A P.C.
517 East Wilson Avenue, Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201
Email: annie@coombspc.com

This message contains information that is privileged, confidential and exempt from disclosure under applicable law. The information is intended to be for the use of the individual or entity to which it is addressed. If you are not the intended recipient, or an employee of the recipient, be aware that any disclosure, copying, distribution or use of the contents of this communication is strictly prohibited. If you have received this electronic message in error, please notify us by calling (818) 500-3200 immediately and delete or destroy all copies of this transmission.

**EXHIBIT F**

LAW OFFICES
# J. ANDREW COOMBS
A PROFESSIONAL CORPORATION
517 EAST WILSON AVENUE, SUITE 202
GLENDALE, CALIFORNIA 91206-5902
TELEPHONE (818) 500-3200
FACSIMILE (818) 500-3201

January 30, 2009

**Via E-Mail and**
**First Class Mail**
*jal@gauntlettlaw.com*

James A. Lowe, Esq.
Gauntlett & Associates
18400 Von Karman, Suite 300
Irvine, California 92612

Re: **Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., et al. –**
**Additional and Recidivist Infringing Sites**

Dear Mr. Lowe:

I write regarding the continuing infringement of intellectual property rights owned by Louis Vuitton Malletier, S.A. ("Louis Vuitton") using servers and routing services supplied by your clients, Akanoc Solutions, Inc. and/or Managed Solutions Group, Inc. ("Defendants"). In keeping with your past statements on behalf of Defendants, we are sending this request to your attention. In view of your recent comments stating a preference that these notifications be made in the form specified in the Digital Millennium Copyright Act, we request that Defendants take immediate action to disable access to the below websites (collectively the "Websites") hosted at the referenced IP addresses.

I certify under penalty of perjury that I am authorized to act on behalf of Louis Vuitton, the owner of exclusive rights that have been infringed on pages appearing on the Websites identified below. I am sending this notification on the basis of a good faith belief that the Websites are involved in the distribution of infringing material that is not authorized by Louis Vuitton, its agents or the law, which specifically infringes the properties specifically listed in the First Amended Complaint.

Please act expeditiously to remove or disable access to the infringing materials which can be found at the following links, among others:

| | |
|---|---|
| 66773388.com | 205.209.136.234 |
| 2008allshoes.com | 205.209.177.131 |

| | |
|---|---|
| aileapparelonline.com | 205.209.177.131 |
| alijordan.com | 205.209.177.131 |
| bapedirect.com | 204.13.64.179 |
| bapesky.com | 204.13.64.179 |
| bestgoods4u.com | 205.209.177.131 |
| bigworldshoes.com | 205.209.161.43 |
| bizwto.com | 205.209.177.131 |
| chinabizshop.com | 205.209.177.131 |
| cicitrade.com | 208.77.46.190 |
| cn2009.com | 205.209.157.159 |
| cnlv.us | 205.209.177.131 |
| cn-nike.us | 208.77.46.190 |
| cocotrade.com | 205.209.177.131 |
| copy-offer.com | 205.209.177.131 |
| copytransfer.com | 205.209.177.131 |
| cxdtrade.com | 205.209.177.131 |
| dadidatrade.com | 208.77.47.171 |
| dreamyshoes.com | 204.16.198.150 |
| ebaytra.com | 205.209.177.131 |
| ec21china.com | 205.209.177.131 |
| ec21copy.com | 205.209.177.131 |
| ecvvcn.com | 205.209.177.131 |
| electricvip.com | 205.209.177.131 |
| equaldeal.com | 204.13.64.130 |
| eshoes99.net | 204.16.192.77 |
| eshoesbiz.com | 205.209.177.131 |
| fashionholland.com | 205.209.172.211 |
| gift-pop.com | 208.77.46.190 |
| globwholesale.com | 208.77.47.173 |
| guangruntrade.com | 204.13.67.152 |
| itemscatalog.com | 208.77.46.195 |
| joinustrade.com | 204.13.67.152 |
| jordanaf1.com | 205.209.177.131 |
| kickaaa.com | 205.209.177.131 |
| kneagle.com | 205.209.177.131 |
| lg668.com | 204.13.67.152 |
| look9good.com | 204.13.67.152 |

| | |
|---|---|
| maike998.com | 205.209.177.131 |
| nikejordan.us | 205.209.149.14 |
| nikeme.com | 208.77.43.165 |
| nikeseller.com | 208.77.43.165 |
| nikeshoes888.com | 208.77.47.171 |
| nikeshoeshua.com | 204.13.67.152 |
| nikeshoesshopping.com | 204.13.67.152 |
| niketrading.com | 205.209.177.131 |
| nikewto.com | 205.209.177.131 |
| popularkicks8.com | 205.209.177.131 |
| pro-jordan.com | 205.209.136.234 |
| realfashion.us | 205.209.177.131 |
| replicabc.com | 204.13.67.208 |
| ruimachina.com | 205.209.177.131 |
| sellcnshoes.com | 205.209.177.131 |
| shoestrade.biz | 205.209.137.51 |
| shopping-key.com | 204.13.67.152 |
| sndress-trade.com | 205.209.177.131 |
| sneaker123.com | 205.209.177.131 |
| sportsshoesshow.com | 205.209.177.131 |
| sportsvendor.biz | 205.209.142.218 |
| sunny7shoes.com | 208.77.46.190 |
| super99nike.com | 205.209.177.131 |
| supplyingshoes.com | 205.209.137.52 |
| tophopworld.com | 205.209.137.55 |
| trade31.com | 205.209.177.131 |
| trade789.com | 205.209.177.131 |
| tradeelectron.com | 205.209.177.131 |
| tradekey1.com | 205.209.177.131 |
| tradewto.com | 205.209.177.131 |
| trapkicks.com | 205.209.139.107 |
| viciper.com | 205.209.177.131 |
| vow-nike.com | 205.209.177.131 |
| well-telecom.com | 205.209.177.131 |
| wholesale-bn.com | 205.209.177.131 |
| wholesaleprice.us | 66.79.172.74 |
| wholesalerelectron.com | 205.209.177.131 |

| xinda-trade.com | 204.13.67.152 |
| xinteshoes.com | 205.209.177.131 |
| xqmade.com | 205.209.177.131 |
| yabertrade.com | 205.209.177.131 |
| yournikeshop.com | 205.209.177.131 |

I may be contacted at:

J. Andrew Coombs, A Prof. Corp.
517 East Wilson Avenue, Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

The foregoing is sent to you as the Internet Service Provider and in the form provided by the Digital Millennium Copyright Act, 17 U.S.C. § 512.

Please provide immediate written confirmation that the Defendants will take immediate steps to disable access to these wholesale offers of counterfeit products using the Defendants' goods and services. The foregoing is without prejudice to Louis Vuitton's rights all of which are expressly reserved.

Very Truly Yours,

J. Andrew Coombs,
A Professional Corporation

By: J. Andrew Coombs
Attorney for Louis Vuitton Malletier, S.A.

JAC:bm

LAW OFFICES
# J. ANDREW COOMBS
A PROFESSIONAL CORPORATION
517 EAST WILSON AVENUE, SUITE 202
GLENDALE, CALIFORNIA 91206-5902
TELEPHONE (818) 500-3200
FACSIMILE (818) 500-3201

February 4, 2009

**Via E-Mail and**
**First Class Mail**
*jal@gauntlettlaw.com*

James A. Lowe, Esq.
Gauntlett & Associates
18400 Von Karman, Suite 300
Irvine, California 92612

**Re:** **Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., et al.** –
**Recidivist Infringing Sites**

Dear Mr. Lowe:

I follow up on my letter dated January 30, 2009. Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton") is shocked to discover that two years after first providing Defendants Managed Solutions Group, Inc., Akanoc Solutions, Inc. and Steven Chen (collectively "Defendants") with notice of infringing websites and 18 months after filing suit, websites which have been the subject of prior notifications continue to be the beneficiary of Defendants' goods and services.

As set forth in greater detail below, seventy-three websites listed in our letter of January 30, 2009 were the subject of prior notifications and, despite such notifications, as of January continued to benefit from Defendants' routing of Internet traffic and hosting services.

|   | SITE | URL | IP ADDRESS | NOTIFIED | NOTIFIED |
|---|------|-----|-----------|----------|----------|
| 1. | aileapparelonline.com | http://www.aileapparelonline.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 2. | alijordan.com | http://www.alijordan.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 3. | bapedirect.com | http://www.bapedirect.com | 204.13.64.179 | 1-30-09 | 9-19-08 |
| 4. | bapesky.com | http://www.bapesky.com | 204.13.64.179 | 1-30-09 | 9-19-08 |
| 5. | bestgoods4u.com | http://www.bestgoods4u.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 6. | bigworldshoes.com | http://www.bigworldshoes.com | 205.209.161.43 | 1-30-09 | 11-26-07 |
| 7. | bizwto.com | http://www.bizwto.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 8. | chinabizshop.com | http://www.chinabizshop.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 9. | cicitrade.com | http://www.cicitrade.com | 208.77.46.190 | 1-30-09 | 7-25-08 |

| | | | | | |
|---|---|---|---|---|---|
| 10. | cn2009.com | http://www.cn2009.com | 205.209.157.159 | 1-30-09 | 7-25-08 |
| 11. | cnlv.us | http://www.cnlv.us | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 12. | cn-nike.us | http://www.cn-nike.us | 208.77.46.190 | 1-30-09 | 6-2-2008 |
| 13. | cocotrade.com | http://www.cocotrade.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 14. | copy-offer.com | http://www.copy-offer.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 15. | copytransfer.com | http://www.copytransfer.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 16. | cxdtrade.com | http://www.cxdtrade.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 17. | dadidatrade.com | http://www.dadidatrade.com | 208.77.47.171 | 1-30-09 | 7-25-08 |
| 18. | dreamyshoes.com | http://www.dreamyshoes.com | 204.16.198.150 | 1-30-09 | 11-26-07 |
| 19. | ebaytra.com | http://www.ebaytra.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 20. | ec21china.com | http://www.ec21china.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 21. | ec21copy.com | http://www.ec21copy.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 22. | ecvvcn.com | http://www.ecvvcn.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 23. | electricvip.com | http://www.electricvip.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 24 | eshoes99.net | http://www.eshoes99.net | 204.16.192.77 | 1-30-09 | 4-7-08 / 3-31-08 |
| 25. | eshoesbiz.com | http://www.eshoesbiz.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 26. | fashionholland.com | http://www.fashionholland.com | 205.209.172.211 | 1-30-09 | 7-25-08 |
| 27. | gift-pop.com | http://www.gift-pop.com | 208.77.46.190 | 1-30-09 | 7-25-08 |
| 28. | guangruntrade.com | http://www.guangruntrade.com | 204.13.67.152 | 1-30-09 | 7-25-08 |
| 29. | joinustrade.com | http://www.joinustrade.com | 204.13.67.152 | 1-30-09 | 7-25-08 |
| 30. | jordanaf1.com | http://www.jordanaf1.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 31. | kickaaa.com | http://www.kickaaa.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 32. | kneagle.com | http://www.kneagle.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 33. | lg668.com | http://www.lg668.com | 204.13.67.152 | 1-30-09 | 7-25-08 |
| 34. | look9good.com | http://www.look9good.com | 204.13.67.152 | 1-30-09 | 7-25-08 |
| 35. | maike998.com | http://www.maike998.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 36. | nikejordan.us | http://www.nikejordan.us | 205.209.149.14 | 1-30-09 | 7-25-08 |
| 37. | nikeme.com | http://www.nikeme.com | 208.77.43.165 | 1-30-09 | 7-25-08 |
| 38. | nikeseller.com | http://www.nikeseller.com | 208.77.43.165 | 1-30-09 | 7-25-08 |
| 39. | nikeshoes888.com | http://www.nikeshoes888.com | 208.77.47.171 | 1-30-09 | 7-25-08 |
| 40. | nikeshoeshua.com | http://www.nikeshoeshua.com | 204.13.67.152 | 1-30-09 | 7-25-08 |

| 41. | nikeshoesshopping.com | http://www.nikeshoesshopping.com | 204.13.67.152 | 1-30-09 | 7-25-08 |
|-----|------------------------|-----------------------------------|---------------|---------|---------|
| 42. | niketrading.com | http://www.niketrading.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 43. | nikewto.com | http://www.nikewto.com | 205.209.177.131 | 1-30-09 | 3-3-08 / 11-26-07 |
| 44. | popularkicks8.com | http://www.popularkicks8.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 45. | pro-jordan.com | http://www.pro-jordan.com | 205.209.136.234 | 1-30-09 | 3-3-08 / 11-26-08 |
| 46. | realfashion.us | http://www.realfashion.us | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 47. | replicabc.com | http://www.replicabc.com | 204.13.67.208 | 1-30-09 | 6-2-2008 |
| 48. | ruimachina.com | http://www.ruimachina.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 49. | sellcnshoes.com | http://www.sellcnshoes.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 50. | shoestrade.biz | http://www.shoestrade.biz | 205.209.137.51 | 1-30-09 | 7-25-08 |
| 51. | shopping-key.com | http://www.shopping-key.com | 204.13.67.152 | 1-30-09 | 7-25-08 |
| 52. | sndress-trade.com | http://www.sndress-trade.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 53. | sneaker123.com | http://www.sneaker123.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 54. | sportsshoesshow.com | http://www.sportsshoesshow.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 55. | sportsvendor.biz | http://www.sportsvendor.biz | 205.209.142.218 | 1-30-09 | 6-20-08 |
| 56. | sunny7shoes.com | http://www.sunny7shoes.com | 208.77.46.190 | 1-30-09 | 11-26-07 |
| 57. | super99nike.com | http://www.super99nike.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 58. | tophopworld.com | http://www.tophopworld.com | 205.209.137.55 | 1-30-09 | 7-25-08 |
| 59. | trade31.com | http://www.trade31.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 60. | trade789.com | http://www.trade789.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 61. | tradekey1.com | http://www.tradekey1.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 62. | tradewto.com | http://www.tradewto.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 63. | trapkicks.com | http://www.trapkicks.com | 205.209.139.107 | 1-30-09 | 7-25-08 |
| 64. | viciper.com | http://www.viciper.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 65. | vow-nike.com | http://www.vow-nike.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 66. | well-telecom.com | http://www.well-telecom.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 67. | wholesale-bn.com | http://www.wholesale-bn.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 68. | wholesalerelectron.com | http://www.wholesalerelectron.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 69. | xinda-trade.com | http://www.xinda-trade.com | 204.13.67.152 | 1-30-09 | 7-25-08 |
| 70. | xinteshoes.com | http://www.xinteshoes.com | 205.209.177.131 | 1-30-09 | 7-25-08 |

| 71. | xqmade.com | http://www.xqmade.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 72. | yabertrade.com | http://www.yabertrade.com | 205.209.177.131 | 1-30-09 | 7-25-08 |
| 73. | yournikeshop.com | http://www.yournikeshop.com | 205.209.177.131 | 1-30-09 | 7-25-08 |

The recurring intentional contribution to the wholesale infringement of Louis Vuitton's rights outlined above must stop (not just interrupt) immediately. If we do not promptly receive Defendants' written assurance to this effect, Louis Vuitton sees no alternative but to seek appropriate injunctive relief. Defendants must act expeditiously to remove the infringing material and, with respect to websites the subject of previous notifications, those websites and corresponding accounts should be permanently banned.

Please insure that the Defendants take all appropriate steps to preserve any and all evidence regarding the websites identified in our letter and the location of those websites using Defendants' servers and services.

The foregoing is without prejudice to Louis Vuitton's rights all of which are expressly reserved.

Very Truly Yours,

J. Andrew Coombs,
A Professional Corporation

By: J. Andrew Coombs
Attorney for Louis Vuitton Malletier, S.A.

JAC:bm



# GAUNTLETT & ASSOCIATES

### ATTORNEYS AT LAW

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

Our File Number:
10562-002

February 10, 2009

**VIA E-MAIL & U.S. Mail**
andy@coombspc.com

J. Andrew Coombs, Esq.
LAW OFFICES J. ANDREW COOMBS, APC
517 E. Wilson Avenue, Suite 202
Glendale, CA 91206-5902

**Re:** ***Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., et al.***
**U.S.D.C., Northern District of CA, Case No. C07 3952-JW**

• **Response to Your Letters of January 30, 2009 and February 4, 2009**

Dear Mr. Coombs:

We are responding to your letters dated January 30, 2009 and February 4, 2009.

Your January 30, 2009 letter referenced the following 81 websites:

| | | |
|---|---|---|
| 66773388.com | eshoesbiz.com | shopping-key.com |
| 2008allshoes.com | fashionholland.com | sndress-trade.com |
| aileapparelonline.com | gift-pop.com | sneaker123.com |
| alijordan.com | globwholesale.com | Sportshoesshow.com |
| bapedirect.com | guangruntrade.com | sportvendor.biz |
| bapesky.com | itemscatalog.com | sunny7shoes.com |
| bestgoods4u.com | joinustrade.com | super99nike.com |
| bigworldshoes.com | jordanafl.com | Supplyingshoes.com |
| bizwto.com | kickaaa.com | tophopworld.com |
| chinabizshop.com | kneagle.com | trade31.com |
| cicitrade.com | lg668.com | trade789.com |
| cn2009.com | look9good.com | tradeelectron.com |

| | | |
|---|---|---|
| cnlv.us | maike998.com | Shoestrade.biz |
| cn-nike.us | nikejordan.us | tradekey1.com |
| cocotrade.com | nikeme.com | tradewto.com |
| copy-offer.com | nikeseller.com | trapkicks.com |
| copytransfer.com | nikeshoes888.com | viciper.com |
| cxdtrade.com | nikeshoeshua.com | vow-nike.com |
| dadidatrade.com | nikeshoesshopping.com | well-telecom.com |
| dreamyshoes.com | niketrading.com | Wholesale-bn.com |
| Ebaytra.com | nikewto.com | Wholesaleprice.us |
| ec21china.com | popularkicks8.com | wholesalerelectron.com |
| ec21copy.com | pro-jordan.com | xinda-trade.com |
| Ecvvcn.com | reafashion.us | Xinteshoes.com |
| Electricvip.com | replicabc.com | xqmade.com |
| equaldeal.com | ruimachina.com | Yabertrade.com |
| eshoes99.net | sellcnshoes.com | yournikeshop.com |

As of February 9, 2009 our clients have not been able to identify any of these websites as using an IP address assigned to Managed Solutions Group, Inc. or Akanoc Solutions, Inc. These websites are either inaccessible or appear to be using IP addresses that are assigned to other unknown parties.

Your February 4, 2009 letter listed 73 websites, all of which were also listed in your January 30, 2009 letter. As of February 9, 2009 all 73 websites are either inaccessible or appear to be using IP addresses that are assigned to other unknown parties.

We also need to correct some comments in your February 4, 2009 letter.

**First,** you characterize the 73 websites listed as "recidivist" because you say they had been the subject of prior notices. But the term "recidivist" implies that these allegedly infringing domains listed in the February 4, 2009 letter are hosted on the same IP addresses as they were at the time of prior notices. This is not true.

Our clients responded quickly to prior complaints and the websites were either made inaccessible or had moved to IP addresses that were assigned to other unknown parties. While Vuitton's February 4, 2009 letter lists domains that may have been listed on previous complaint letters, Vuitton's most recent letter alleges *different IP addresses*. We have explained to you on numerous occasions that MSG and Akanoc provide unmanaged Internet services to Internet resellers and do not provide any services to website operators.

Additionally, our clients do not and cannot control when domains are hosted on their IP addresses because such retail listings are controlled by our clients' wholesale customers. Even though our clients' contracts with their wholesale customers prohibit using our services for any improper purpose, it is difficult to prevent the occasional website operator, with whom we have

no contact, from selling products to which your client objects. Further, our clients have no means of knowing if your complaints accurately accuse websites of offering infringing Louis Vuitton merchandise, our clients try to accommodate you and Louis Vuitton by simply requesting the termination of any website usage about which you complain. But this hardly means that our clients know what merchandise is being sold and whether it is really infringing.

Further, because large numbers of websites can be use a single IP address and can move around among different IP addresses provided by many different ISPs, tens of thousands or millions of websites can use some of the approximately 40,000 IP addresses assigned to our clients. Our clients cannot know in advance who may be using their Internet services for improper purposes. MSG and Akanoc, however, act expeditiously to request that allegedly infringing websites be removed by their customers when they receive complaints. We have repeatedly informed you of our clients' regular successful efforts to stop such Internet Service usage.

**Second**, your February 4, 2009 letter lists 41 domains allegedly hosted on IP address 205.209.177.131. That IP address had previously been completely disabled on February 2, 2009. Contrary to your allegations in your February 4, 2009 letter, it was impossible that these websites were then hosted on IP address 205.209.177.131. You and your client seem to be complaining based on unreliable information.

Very truly yours,

James A. Lowe

JAL:pam
cc: Clients (via email)