**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Brian S. Edwards (SBN 166258)
Christopher Lai (SBN 249425)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone:  (949) 553-1010
Facsimile:  (949) 553-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com
bse@gauntlettlaw.com

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.
and Steve Chen

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A., <br><br>Plaintiff, <br><br>vs. <br><br>AKANOC SOLUTIONS, INC., et al., <br><br>Defendants. | Case No.: C 07-3952 JW (HRL) <br><br>**DEFENDANTS' OPPOSITION TO VUITTON'S MOTION FOR MODIFICATION OF ORDER FOR INSPECTION AND SANCTIONS** <br><br>Date: May 26, 2009 <br>Time: 10:00 a.m. <br>Ctrm: 2, 5th Floor |

# TABLE OF CONTENTS

Page

I. THE SCOPE OF THE COURT'S ORDER SHOULD NOT BE MODIFIED ................... 1

    A. Vuitton Has No Basis for Expanding the Scope of the Inspection Protocol .......... 1

        1. Vuitton's Proposed Expansion of Inspection is Unjustified ........................ 1

        2. Vuitton's Inspection Is Not Shown To Have Found Relevant Evidence ................................................................................................ 2

        3. Vuitton's Discovery Requests Were Always Limited to 67 Websites ................................................................................................. 2

        4. Vuitton Has Never Amended its Complaint Beyond 67 Websites ............... 4

    B. Expanding the Inspection Would Not Yield Additional Relevant Evidence ......... 5

    C. Vuitton Requests Unreasonable and Unlimited Search .................................... 5

II. VUITTON'S MOTION FOR SANCTIONS IS IMPROPER AND UNFOUNDED ......... 6

    A. Vuitton's Motion for Sanctions Violates Court Rules ...................................... 6

    B. There Is No Basis For Sanctions .................................................................. 7

        1. Vuitton Shows No Violation of Discovery Orders ...................................... 7

        2. Defendants Fully Cooperated With Server Inspection ................................. 8

        3. Vuitton Has No Evidence That Defendants "Withheld Pertinent Information In Contempt of Court's Orders" ............................................. 9

III. CONCLUSION ................................................................................................ 12

## I. THE SCOPE OF THE COURT'S ORDER SHOULD NOT BE MODIFIED

### A. Vuitton Has No Basis for Expanding the Scope of the Inspection Protocol

#### 1. Vuitton's Proposed Expansion of Inspection is Unjustified

Vuitton's motion for modification of the inspection order is unjustified, will likely delay this trial once more and should be denied. What is the point of Vuitton's proposed expanded search? Vuitton has not explained how an expanded search will produce any evidence relevant to this case that is scheduled to go to trial in three months. Vuitton has not shown that its inspections to date have uncovered any evidence of infringement by the 67 websites alleged in Vuitton's lawsuit. This failure implies that Vuitton has found no such evidence. Vuitton has not shown why expanding the inspection beyond those 67 websites would yield relevant evidence. Even if Vuitton found that some other website has infringed, such information would not support its claim of infringement by the 67 websites, let alone that the Defendants' materially contributed to infringement by the 67 as has been alleged.

Vuitton's has shown no basis for the Court to modify its July 15, 2008 server inspection order or its March 10, 2009 protocol order to allow Vuitton to search for infringing websites other than the 67 domains named by Vuitton in its discovery requests or its motion to compel. The Court limited Vuitton's server inspection to "the 67 allegedly infringing websites identified by the plaintiff" because "plaintiff indicates that it is willing to limit the discovery to 67 websites that it has identified as selling allegedly counterfeit Louis Vuitton merchandise. [] As such, this court finds that the discovery is reasonably tailored and that any burden that may be imposed is not undue." [Docket No. 65, p. 5]. Vuitton's First Amended Complaint names only the 67 domains. Vuitton's discovery requests during the discovery period (that ended a year ago) were limited to these 67 named domains. Vuitton's motion to compel was limited to the 67 domains. All of the Court's orders concerning this inspection were limited to 67 domains. Now, long after the discovery cutoff has passed, after the deadline for amending its complaint has passed, after the first trial date has passed, and only three months before the trial is set to begin, Vuitton wants the Court to compel production of materials never before requested and inspection beyond what the Court has ordered.

### 2. Vuitton's Inspection Is Not Shown To Have Found Relevant Evidence

Vuitton has offered no evidence that the server inspection it has conducted has resulted in any useful or relevant information. Instead, Vuitton's counsel has refused to provide to defense counsel copies of the hard drives it has copied, despite the Court's order that it do so.[1] Vuitton's refusal has made impossible more specific opposition to this motion because the Defendants have no idea what information or data Vuitton relies upon.[2] But Vuitton offers no evidence that its proposed modification of the inspection order will yield information relevant to the 67 allegedly infringing websites that are at issue in this case.

But it is certain that Vuitton's request will delay this case further. Vuitton has not justified its late date request for essentially unlimited server inspection to search for alleged infringement by unidentified websites. Vuitton may suggest that its request was caused by the late server inspection and may further argue that the Defendants caused the delayed inspection. Such an argument would be contrary to fact. Between August 6, 2008 and March 17, 2009, defense counsel sent twenty-one letters and e-mails to Vuitton's counsel trying to start or move along the server inspection.[3] Now when this case should be essentially ready for trial, Vuitton wants to start new broad ranging discovery that will likely delay this trial once again.

### 3. Vuitton's Discovery Requests Were Always Limited to 67 Websites

Vuitton's present motion inaccurately asserts that that the limitation on server inspection to find evidence of counterfeiting activity by 67 specifically identified websites was "inadvertent" and arose at an oral argument. [Document No. 137, 7:4-7] The Court's records, however, show the facts to be otherwise.

Vuitton has no basis for expanding the scope of the Internet server inspection because Vuitton has always based its discovery requests on the 67 websites that are the subject of the current orders. The 67 websites were even the exclusive subject of Vuitton's preceding requests for production. On January 3, 2008, Vuitton served its Second Set of Requests for Production of

---

[1] Declaration of James A. Lowe ("Lowe Decl."). ¶¶ 12-13 **Exhibits "1539-1540."**

[2] Deposition of Richard Gralnik ("Gralnik Decl.") ¶9.

[3] Lowe Decl. ¶11 **Exhibit "1538."**

Documents[4] requesting documents related to 67 WEBSITES (domain names).[5] Those same 67 websites were the exclusive subject of Vuitton's original motion to compel [Document No. 30]. Vuitton continued to limit its requests to the same 67 Websites in its Reply on that motion. [Document No. 40] filed April 15, 2008. WEBSITES was a defined term in Vuitton's Request, in its Motion and in its Reply. Andrew Coombs declaration in support of the Reply attached Exhibit A from Vuitton's document request "which lists the Websites at issue." [Document No. 40, 9:13]. There has never been a question about what Vuitton wanted to look for.

The Court's July 15, 2008 order granting Plaintiff's motion to compel [Document No. 65, 5:11-14] recognized the importance of a limitation of the inspection, stating that "plaintiff indicates that it is willing to limit the discovery to 67 websites that it has identified as selling allegedly counterfeit Louis Vuitton merchandise. As such, the court finds that the discovery is reasonably tailored and that any burden that may be imposed is not undue." The District Judge's August 8, 2008 order [Document No. 76, 1:27-28] overruled objections to server inspection discovery provided they were "limited to the 67 allegedly infringing websites identified by the plaintiff." Later in his order the District Judge held that the requested discovery was not unduly burdensome, first because "discovery is limited to publicly available contents" and, second because "discovery is limited to 67 specific websites." [*Id.* 3:5-12]. The Magistrate Judge's March 10, 2009 Order re Discovery Protocol [Document No 124, 2:2-3] repeated the inspection limitation "to the 67 allegedly infringing websites identified by the plaintiff." That order specifically provided that Plaintiff's forensic expert was to extract "publicly posted Internet content evidencing offers made of counterfeit Louis Vuitton merchandise and traffic logs evidencing the volume of underlying counterfeit activity pertaining to the 67 websites identified by plaintiff." [*Id.* 4:14-18]

Vuitton's repeated requests for information about and inspection of servers concerning 67 specific allegedly infringing websites belies its new argument that Vuitton should not be constrained by "limits to discovery identified during oral argument on its motion to compel one year ago." Vuitton's motion [Document 137, 7:1-2] The record of Vuitton's request for evidence concerning

---
[4] Lowe Decl. ¶4 **Exhibit "1531."**

1  67 specific allegedly infringing websites and the repeated orders of this Court about those 67
2  websites shows that this discovery limitation was not "identified during oral argument." It is untrue
3  that "The underlying order to compel was inadvertently limited." [*Id*. 7:4-5]

4  Before the "discovery cutoff date of April 25, 2008" listed in the Joint Case Management
5  Statement [Document 21, 5:22-23] approved by the District Judge in the November 15, 2007
6  Scheduling Order [Document 23, 2:12-13], Vuitton never requested documents, inspections or
7  information beyond the 67 Websites that were the constant basis of the Court's orders. It is now
8  improper to file a motion to expand an order compelling production of materials that were never
9  requested in discovery in the first place. The discovery cutoff expired a year ago and has never been
10 extended.

11 Now a month after the Court reset the jury trial date to August 19, 2009 [Document No. 135]
12 (because Vuitton had not conducted the server inspection previously ordered and was not able to
13 proceed with the previously scheduled April 7, 2009 trial), Vuitton wants to expand the inspection
14 order without any limits beyond the 67 allegedly infringing websites. At the hearing date for this
15 motion, the parties will be only 99 days away from the new trial date. A new and expanded
16 discovery regime is not based on any previous discovery requests and is entirely impractical at this
17 late date. The current order is sufficient for Vuitton's reasonable needs.

### 4. Vuitton Has Never Amended its Complaint Beyond 67 Websites

19 The Court should deny Vuitton's request to expand the scope of the server inspection
20 because Vuitton has never attempted to amend its complaint beyond its First Amended Complaint
21 ("FAC") that listed the same 67 alleged websites that have been the subject of all discovery requests
22 and the three discovery orders. The 67 websites or domains named in Vuitton's FAC are the only
23 ones at issue in this case.

24 The parties' Joint Case Management Statement [Document 21, 4:17-23] required any
25 motions to amend be filed by 2-18-2008 (about fifteen months ago). Ignoring that deadline, Vuitton
26 successfully moved on 7-15-2008 to file its FAC, alleging infringement by the 67 websites. But

---

[5] Lowe Decl. ¶4 **Exhibit "1531."**

164769.2-10562-002-4/24/2009      4      **DEFENDANTS' OPPOSITION TO VUITTON'S MOTION FOR MODIFICATION OF ORDER FOR INSPECTION AND SANCTIONS – C 07-3952 JW**

Vuitton has not sought to amend the complaint again and it would be highly prejudicial to do so three months before a reset trial date.

Additionally, Vuitton has not even identified any other allegedly infringing websites beyond the 67. Vuitton's present motion only vaguely speculates that "the servers **may contain** data pertaining to publicly accessible website offers of counterfeit Louis Vuitton merchandise located **on many more sites than the 6**7 identified by Louis Vuitton . . ." (Emphasis added.) So obviously Vuitton cannot identify any additional infringing websites, or file an amended complaint to list such websites.

### B. Expanding the Inspection Would Not Yield Additional Relevant Evidence

Vuitton should not be allowed to expand the scope of the server inspection to include domains that are not named in its FAC or its discovery or its previous motions. Vuitton has not explained why it would matter if different websites were found to be infringing. Identifying additional websites or even proving infringement beyond the 67 is pointless.

Vuitton has not offered any actual evidence that expanding the scope of its Internet inspection would yield additional relevant evidence in this case. Thus far in this case, even though Vuitton has copies of the five hard drives that it requested, it has not provided any actual evidence of copyright or trademark infringement by the 67 domains named in the FAC. Vuitton has not shown that searching for additional websites will prove any infringement by those 67 domains that are the subject of this lawsuit.

### C. Vuitton Requests Unreasonable and Unlimited Search

Vuitton is unreasonably requesting that the Court allow it to search Internet server hard drives for any and all mention of Louis Vuitton, its initials or any variations thereof. But this approach cannot distinguish between "publicly available" and private data that must be protected under the Stored Communications Act.[6] This late date request appears to be based on Vuitton's theory that websites unknown to it or to the Defendants might be using the Defendants' servers and also infringing Vuitton's rights. Perhaps because it could not find any evidence about the 67 accused

---

[6] Gralnik Decl. ¶ 5.

websites, Vuitton wants to look for someone new to accuse. But the Court's three orders regarding this inspection have been specifically limited to 67 domains so that the inspection is "reasonably tailored."

> Plaintiff indicates that it is willing to limit the discovery to 67 websites that it has identified as selling allegedly counterfeit Louis Vuitton merchandise. As such, the court finds that the discovery is **reasonably tailored** and that any burden that may be imposed is not undue. (emphasis added)

[July 15, 2008 Order, Document 65]

> Publicly posted Internet content evidencing offers made of counterfeit Louis Vuitton merchandise and traffic logs evidencing the volume of underlying counterfeit activity pertaining to the 67 websites identified by plaintiff." Court's March 10, 2009 Order at p. 4.

[March 10, 2009 Order, Document 124]

Vuitton's request should also be denied because, thus far, its search already appears to be overbroad. The Court's three orders have provided that Vuitton's search is limited to items that pertain to "publicly available content" but Vuitton has never indicated to Defendants or the Court *how* it is limiting its search to publicly available content. Thus far, Vuitton has only suggested that it intends to search the five hard drives it has copied for particular terms or words. Such a search would not be limited to publicly available content, and would likely encompass personal user information that has always been outside of the scope of the Court's inspection protocol.[7]

## II. VUITTON'S MOTION FOR SANCTIONS IS IMPROPER AND UNFOUNDED

### A. Vuitton's Motion for Sanctions Violates Court Rules

The Court should deny Vuitton's motion for sanctions because Vuitton's motion is entirely improper under Local Rule 7-8 and because no sanctions are warranted under Fed. R. Civ. P. 37(C).

Northern District Civil Local Rule 7-8(a) requires that a motion for sanctions be separately filed, as Vuitton's counsel must know. Vuitton's request for sanctions appears to be improperly filed in an effort to prejudice the Court against the Defendants by making broad ranging allegations of misconduct that has nothing to do with discovery. Vuitton has frequently made improper requests for

---

[7] Gralnik Decl. ¶¶ 5-8.

6

**DEFENDANTS' OPPOSITION TO VUITTON'S MOTION FOR MODIFICATION OFORDER FOR INSPECTION AND SANCTIONS – C 07-3952 JW**

sanctions, routinely making *ad hominem* attacks to tilt the scales in its favor by improperly encouraging the Court to believe unfounded character attacks on its opponents.

People associated with Vuitton may have convinced themselves that the world is full of counterfeiters out to deny the company its rightful several thousand dollars per purse and they may harbor the belief that anyone who disagrees with them is motivated by some malice. But Vuitton should not be permitted to substitute such conspiratorial assertions for evidence and adherence to American law. Vuitton has no basis for requesting sanctions and the only logical purpose of Vuitton's repeated filing of procedurally improper requests for sanctions is to paint the Defendants in a false and negative light. To avoid manipulation and injustice, the Court must reject Vuitton's uncivil approach to motion practice.

### B. There Is No Basis For Sanctions

#### 1. Vuitton Shows No Violation of Discovery Orders

Defendants have acted in full compliance with the Court's orders in this case. Vuitton complaints are imaginary. Vuitton implies that Defendants could have "simply" produced images from their servers in response to its first inspection demand. This implication ignores the undisputed fact that Managed Solutions Group (despite its name) and Akanoc Solutions provide **un**managed Internet hosting services and have no right or ability to monitor activity on the Internet or control in advance the actions of any of thousands or tens of thousands of end users of its wholesale customers. And the Defendants do not install, control or operate any computer programs that may be stored or operated on the Internet.[8] The Defendants have no access to the contents of server hard drives unless its customers give them access, any more than a self-storage company has access to the contents of a storage unit rented and locked by a customer. The Defendants do not supply programs or content.

Despite intemperate rhetoric, Vuitton has not shown what images Defendants could have produced before the server inspection—or even now. Defendants previously objected to Vuitton's inspection request because, among other reasons, the Stored Communications Act (SCA) prohibits an Internet service provider from inspecting or monitoring data stored on its servers by customers,

---

[8] Gralnik Decl. ¶ 5.

on pain of criminal prosecution or third party civil suit. The Court's orders for inspection and copying of "publicly available" server data protects the Defendants from the risks of violating that law; any risk is now borne by Vuitton and its forensic examiner. The Court's July 15, 2008 Order recognized Defendants' SCA argument but interpreted the applicable law as permitting inspection of publicly accessible content and it ordered the parties to try and develop a protocol for a limited inspection that would protect the rights of Defendants' customers.

Defense counsel repeatedly requested Vuitton to suggest an inspection protocol.[9] After the Plaintiff could not suggest a specific agreeable protocol despite the Defendants' repeated efforts to reach an agreement,[10] the Court entered an Order re Discovery Protocol [Document 124] that modified what the Plaintiff had proposed. The Court effectively instructed Vuitton's "forensic expert [to] make its best efforts by whatever means necessary to extract the discovery authorized by this court—namely, publicly posted Internet content evidencing offers made of counterfeit Louis Vuitton merchandise and traffic logs evidencing the volume of underlying counterfeit activity pertaining to the 67 websites identified by the plaintiff." [*Id.* 4:14-18] Vuitton's present motion suggests that its expert could not actually do that job, just as Defendants had argued. Otherwise Vuitton would have no need to change the order, effectively removing its limits.

### 2. Defendants Fully Cooperated With Server Inspection

The Defendants fully cooperated with the Court's order and on March 25-26, 2009 Vuitton's expert made copies of five servers that had been identified by Vuitton the day before. During this two day server copying process, numerous Defendants' customers were without Internet service— and were given no explanation for the outage. Vuitton has no evidence of any Defendant's failure to comply with the order or to cooperate with Vuitton's expert, contrary to Mr. Coombs' claims.

While baselessly denigrating Defendants' cooperation with the server copying, Vuitton has ironically refused to provide Defendants with copies of the hard drive copies that its expert made,[11]

---

[9] Lowe Decl. ¶11, **Exhibit "1538."**

[10] Lowe Decl. ¶11, **Exhibit "1538."**

[11] Lowe Decl. ¶13, **Exhibit "1540."**

despite the Court's order that it do so [Document No. 124, 4:20] and requests by defense counsel.[12] This has made the Defendants' response to this discovery motion more difficult because the Defendants cannot determine what is on the copied drives and what reasonable alternatives might be suggested to Vuitton's demand.[13]

### 3. Vuitton Has No Evidence That Defendants "Withheld Pertinent Information In Contempt of Court's Orders"

Vuitton's unfounded accusations that Defendants have acted in contempt of court are based on misunderstandings of the facts or misrepresentations. There is no evidence that Defendants have withheld any pertinent information in this lawsuit. Vuitton seems to be angry that the Defendants will not confess to the baseless allegations in this lawsuit and have not produced information to which they do not have access. But Vuitton's position is unjustified. Vuitton's claims are based on its expert seeing a database on a computer screen during the server inspection. But that database was actually disclosed and provided to Vuitton over a year ago. Vuitton's counsel deposed the Defendants about that database over a year ago.[14] And Steve Chen described it. Mr. Murin's photo is just a picture of a screen from the CPRO database.[15] But counsel apparently failed to tell that to Mr. Murin.

The photographs of Defendants "CPRO" database, attached to the Declaration of Joseph Murin, do not support Vuitton's request for sanctions. Mr. Murin's declaration [Document 137, 11:23-26] suggests that he was not aware that Defendants had an internal database it could use to determine which IP addresses were on which servers. So Mr. Murin took photographs of it to document its existence [Id. 12:9-13] and Vuitton submitted those photographs to its present motion and Mr. Coombs' declaration apparently to support its meritless argument that the "shocking simplicity of the access and review of relevant data [presumably that IP addresses assigned to particular servers could be looked up on a database], there is no doubt that Defendants willfully withheld pertinent information to this litigation in contempt of the Court's orders . . ." [Vuitton's

---

[12] Lowe Decl. ¶12, **Exhibit "1539."**

[13] Gralnik Decl. ¶9

[14] Lowe Decl. ¶6, **Exhibit "1533."**

present motion, Document 137, 9:23-28]. But Vuitton cannot show anything was withheld. And counsel's arguments are at least mistaken. The photo shows nothing of significance.[16]

What is actually shocking are the misrepresentations made in Vuitton's name. Apparently Vuitton's counsel failed to tell Mr. Murin that Vuitton knew of Defendants' database identifying servers with IP addresses. This is the "CPRO" database that was actually provided in discovery to Vuitton's counsel a year ago.[17] Vuitton was fully aware both of the existence and the function of this database long ago but apparently did not share that knowledge with its forensic expert, for whatever reason. In fact Vuitton's counsel must have used that database to identify the servers it wanted to inspect because that is the only way to identify anything about one of the 1,500 servers.

All of the data from this database was produced to Vuitton on a CD-ROM a year ago on April 23, 20**08**.[18] After printing hundreds of pages of data from the CPRO database, Mr. Coombs questioned Rule 30(b)(6) witness and individual defendant Steve Chen about the content and functions of this database at his deposition in April 20**08**.[19]

Furthermore, defense counsel sent Vuitton's counsel a letter on September 5, 2008 further describing how Defendants are able to utilize this database to identify servers based on IP addresses.[20] Expressly contrary to Vuitton's reckless allegations, no information in or about the database was withheld from Vuitton's counsel. Indeed, defense counsel long ago sent to Vuitton's counsel a letter identifying by number the various Internet servers that had been associated with Internet Protocol (IP) addresses that were reportedly used by the 67 domains listed in Vuitton's discovery requests, its First Amended Complaint, in its motion to compel, and in all the Court's orders.[21] Contrary to Vuitton's false assertions, the Defendants have never claimed that they were unable to identify servers by IP address. For its own undisclosed reasons, Vuitton chose to inspect

---

[15] Declaration of Steve Chen (Chen Decl.) ¶¶ 2-5.
[16] Chen Decl. ¶¶ 4-5.
[17] Lowe Decl, ¶5, **Exhibit "1532."**
[18] Lowe Decl. ¶9, **Exhibit "1536."**
[19] Lowe Decl. ¶6, **Exhibit "1533."**
[20] Lowe Decl. ¶10, **Exhibit "1537."**
[21] Lowe Decl. ¶10, **Exhibit "1537."**

different servers than those identified by using the information in the CPRO database.

Although Vuitton's counsel selected servers to have Mr. Murin copy, he apparently did not tell him how that selection was made. But it had to have been made from the CPRO database that was in the hands of Vuitton's counsel for the past year. Vuitton's counsel independently selected those servers out of the 1,500 in the facility and gave notice of them to defense counsel on March 24, 2009. Mr. Murin's declaration suggests that he believed that there were specific "servers at issue." [Document 137, 11:25].

It is also curious that Mr. Murin was apparently surprised to "learn[] that **the five servers** that were the subject of the examination **were not set aside**." (Emphasis added.) Mr. Murin apparently was not provided by Vuitton's counsel with the Court's Order re Discovery Protocol or he would have known that the servers were expected to be actively in use and the Defendants were specifically prohibited from giving any user more than 24 hours advance notice of the inspection. Defendants were ordered not to "'tip off'" its customers about the inspection in advance. [Document No. 124, 3:26-4:4] Mr. Murin apparently was also not told that "**Plaintiff will initially isolate** 5 servers for inspection . . ." [*Id.* 4:5]. So it would have been surprising if the Defendants had set them aside first. It just happened that one of the servers identified by Vuitton was no longer in service so it had been taken out of storage without change to be ready for the inspection.[22]

It is therefore not surprising that Vuitton failed to find evidence of the 67 domains on the different servers it chose to inspect. Vuitton's overheated speculations based on CPRO data appearing on a computer screen does not establish that anything has been withheld from Vuitton. Mr. Murin's photograph of a screen of data from a database long in the possession of Vuitton's counsel just indicates a lack of communication from Vuitton's counsel to its retained expert.

Vuitton's failure to find any relevant evidence in its inspection process may simply indicate that the protocol suggested by Vuitton is flawed, just as the Defendants have contended all along. There is no factual or legal basis for Vuitton's request for sanctions, even if it had been procedurally proper.

---

[22] Chen Decl. ¶6

11

## III. CONCLUSION

Vuitton has shown no justification for expanding the inspection of Defendants' Internet servers beyond the prior orders of the Court, especially so close to trial. Vuitton has shown no point in doing so. Vuitton's baseless and procedurally improper demand for sanctions must be rejected. The request violates the Local Rules of this Court and has no factual or legal basis. The intemperate request for sanctions appears to be made only to baselessly prejudice the Court against the Defendants. The Defendants have fully cooperated in discovery, making reasonable objections based on federal statutes and rules while trying to point out practical problems with Vuitton's requests and proposals. The Defendants have fully obeyed the Court's discovery orders. It is not the Defendants' fault that Vuitton has been unable to find actual admissible evidence to prove Vuitton's meritless allegations.

Dated: April 24, 2009

**GAUNTLETT & ASSOCIATES**

By: s/James A. Lowe
David A. Gauntlett
James A. Lowe

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.,
and Steven Chen