J. Andrew Coombs (SBN 123881)
andy@coombspc.com
Annie S. Wang (SBN 243027)
annie@coombspc.com
J. Andrew Coombs, A Prof. Corp.
517 E. Wilson Ave., Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | | |
|---|---|---|
| Louis Vuitton Malletier, S.A., | ) | Case No. C 07 3952 JW (HRLx) |
| | ) | |
| Plaintiff, | ) | REPLY OF PLAINTIFF IN SUPPORT |
| | ) | OF ITS MOTION FOR MODIFICATION |
| v. | ) | OF ORDER FOR INSPECTION AND |
| | ) | SANCTIONS; DECLARATION AND |
| Akanoc Solutions, Inc., et al. | ) | EXHIBITS IN SUPPORT |
| | ) | |
| Defendants. | ) | Date: May 12, 2009 |
| | ) | Time: 10:00 a.m. |
| | ) | Court: Hon. Howard R. Lloyd |

## **INTRODUCTION**

Defendants' effrontery in addressing Plaintiff's legitimate discovery requests has rarely been so evident as in its ill-considered, unfounded and factually misleading Opposition to Plaintiff's motion for clarification on the protocol for inspecting servers that have been in Defendants' possession, custody and control throughout this litigation.

To clarify, Plaintiff seeks a limited modification of the Court's order permitting it to inspect and copy data on publicly accessible websites, it only asks that the protocol be modified to eliminate the limitation to the 67 websites specifically identified in the underlying request for production of documents (propounded in January, 2008) because (a) Defendants continue to host counterfeiting websites with knowledge of the underlying infringement of Louis Vuitton's rights; and (b) the limitation was initially accepted based on an underlying request for production

pursuant to which Defendants have produced no data – whether in relation to these 67 websites or any others.

Defendants' arguments, especially those based on the incorrect assumption that the review is complete, should be afforded no weight because of this fatal flaw.[1]  Evidence from this year and years past, incidentally captured in one photograph during the inspection was never produced by Defendants and showed on its face Defendants' continued business with known infringers despite repeated notices from Plaintiff and this litigation.

Defendants' arguments are silent on these facts and indicate that their responses to notices transmitted during this litigation were deliberately inaccurate.  *See* Ex. F to Plaintiff's Moving Papers.  Defendants also filed a document that shows they hosted sites Louis Vuitton claimed were infringing, despite Defendants' stated inability to produce equivalent information and refusal to admit as such beforehand.[2]  Sanctions are accordingly, appropriate.

## ARGUMENT

### I. Plaintiff's Relevant Discovery Requests were Never Limited to 67 Websites or The 77 Listed in the First Amended Complaint.

The underlying discovery never limited the Plaintiff's requests to 67 websites.  Instead, during oral argument in April, 2008, on what was then a motion to compel responses to discovery initially propounded in January, 2008, Plaintiff agreed that production could be limited to the specifically enumerated websites.  At no time has Plaintiff asserted that the proposed limitation was "inadvertent."  Opposition Brief, 2:19.  While such a limitation may have been appropriate in terms of defining the scope of Defendants' production to be ordered by the Court (and to establish

---

[1] Among Defendants' unsupported statements, is the argument that Plaintiff is required to provide Defendants with copies of the forensically imaged servers, however, Plaintiff maintains that it stated in its proposal from October 14, 2008, and what appeared to be adopted in the Court's March 10, 2009, order, that Plaintiff would produce digital copies of the <u>results</u> to Defendants. Anything more would be unreasonable and an unreasonable financial burden to Plaintiff – especially as these copies reflect raw data all of which has been within Defendants' possession throughout this litigation without Defendants having made any attempt to produce such data despite requests dating back almost two years.  Defendants cannot show that providing copies would serve any purpose, given the limitations imposed by this Court's protocol, other than to make this process still more expensive and burdensome for Plaintiff.
[2] See Defendants' Exhibit 1537, p. 5.

a corresponding limit on the potential burden to Defendants), such a limitation no longer makes sense when Defendants failed to produce any documents, continued their illicit activity, and it is now Plaintiff who has the burden of extracting publicly available data that Defendants could have accessed all along. The less filtering Plaintiff is required to do, the more efficient the process. Plaintiff's original request should now control to include additional websites outside of the 67 previously enumerated.

Plaintiff's underlying discovery specifically defines the terms "WEBSITE" or "WEBSITES" as follows:[3]

> ""WEBSITE" or "WEBSITES" refers to all Internet content hosted by YOU at each of the Internet websites located within uniform resource locators or domain names *including but not limited to* those listed in Exhibit A attached hereto" (emphasis added).

The first two Requests for Documents requested "All DOCUMENTS concerning the WEBSITES," and "All DOCUMENTS which IDENTIFY any Internet content hosted by YOU apart from the WEBSITES." Numerous other requests would have included responsive website information hosted by Defendants. The list was never meant to be an absolute, but merely to aid the Defendants in insuring minimal compliance. Instead of producing a partial production for one, 67, 77 or 100 websites, Defendants produced no website printouts whatsoever. The issue was thus never about degrees of compliance, it was about the wholesale failure to comply.

Furthermore, Plaintiff's First Amended Complaint, which expressly identifies 77 websites, also states "The websites hosted by servers maintained by the ISP Defendants *include but are not limited to…*" a list of exemplary websites. First Amended Complaint at ¶ 31 (emphasis added). As Plaintiff stated in its moving papers for the Motion For Leave to Amend, it "does not waive its position that these specifically named websites were already at issue under the original complaint," Docket No. 64, p. 1:7-8, and as stated by Judge Ware in granting leave to file the amendment, the change did not "modify any substantive allegations…" Docket No. 67, p. 1:24. The amendment

---

[3] Defendants' Exhibit 1531, p. 3:3-6.

1    was merely to clarify for Defendants, at their insistence, that the scope of the claims did not just

2    include the websites named in the complaint, and that their continued business with infringers, was

3    contributing to what is a real and concrete proliferation of counterfeiting on their servers.

4    Defendants' continued forced ignorance is contrary to reason and law particularly in light of the

5    statements on their internal data systems identifying repeat offenders and a multitude of websites

6    owned by a few of Defendants' long time customers through at least January of this year.  *See* Ex.

7    A to Plaintiff's Moving Papers; *see also* Declaration of J. Andrew Coombs ("Coombs Decl.") at

8    Ex.s B (Defendants' emails to their infringing customers) and C (Deposition of Steve Chen, pp. 60,

9    143-144).

10         Plaintiff's continued notifications to Defendants of infringing activity on their servers,

11   aside from everything else, should have indicated to them that the scope of the problem was not

12   limited to just those websites identified in the pleadings.  Plaintiff had offered about a year ago, to

13   limit the Defendants' <u>production</u> to 67 websites, but it never stated that the 67 websites constituted

14   the scope of the litigation or that only material pertaining to those 67 websites was relevant.

15   Instead, Plaintiff has continued to notify Defendants of continued and "new" infringements.  Since

16   no documents were produced by Defendants and the infringements have continued despite notice,

17   the Court's order is appropriately modified.

18         Defendants' willful, continued hosting of additional websites, belonging to the same

19   handful of customers, necessitates modification of the protocol.  Coombs Decl. Ex.s B and C.

20   Because Defendants have no intention of refusing these illegal streams of revenue, the problems

21   have continued and have only expanded since the Complaint (08/2007), the underlying Motion to

22   Compel (03/2008), and even the First Amended Complaint (07/2008), all filed months and years

23   ago.  Defendants' repeated attempts to make this about Plaintiff's purported "delay" is

24   preposterous when instead, it is about Defendants' wholesale failure to abide by any of its

25   discovery obligations, including those ordered by this Court.  The modification of the inspection

26   protocol is necessary to help alleviate Plaintiff's burden caused by Defendants' defaults and to

27   address the continued and "new" infringements fostered by Defendants.

28

## II. Evidence of Any Infringing Websites is Relevant to This Case to Prove Contributory Copyright and Trademark Infringement.

### A. Defendants' Liability is Proven by Continued Hosting of Infringing Websites and Their Continued Business With Known Infringers.

Defendants' liability for contributory infringement is not limited to liability for those sites expressly enumerated in the pleadings. To the extent that Defendants have since been provided with notice of additional websites and those websites are still hosted on Defendants' servers, Defendants' liability extends to such contributory behavior. This scope of Defendants' liability was expressly recognized by Judge Ware when he granted leave to file a First Amended Complaint – after the time for doing so was past as noted in Defendants' Opposition (4:25-26) because, the identification of additional websites did not "modify any substantive allegations…" Docket No. 67, p. 1:24.

Defendants' arrogance is once again apparent. Perhaps it is their misguided belief that contributory infringement occurring on different websites occurring after the First Amended Complaint are beyond the scope of this litigation is one reason they continue to engage in this activity. In any event, it is Defendants' own ongoing contributory infringement and not Plaintiff's purported desire to enlarge the scope of discovery, which underscores the need for the required amendment.

Accordingly, to the extent the inspection reveals additional websites, specifically including those that have been the subject of more recent notices, data pertaining to those websites is relevant and properly within the scope of the Court ordered inspection.

### B. Regardless of Liability, Additional Instances of Underlying Infringement Are Relevant for Purposes of Showing Defendants' Knowledge.

Knowledge of the underlying infringing activity is one element required to prove contributory liability. Actual knowledge is proved by specific notices provided by Defendants. Such notices were provided during the course of this litigation as a result of continued hosting

activity. *See e.g.,* Ex. F to Plaintiff's Moving Papers. Constructive knowledge can also be proved by a pattern and course of conduct over time. <u>UMG Recordings, Inc. v. Sinott</u>, 300 F. Supp. 2d 993, 998-999 (E.D. Cal. 2004).[4] Repeated notices provided to Defendants and their inaction in response to such notices are relevant to prove Defendants' knowledge.

The IP Addresses selected for inspection were on a small number of servers: apparently a small number of "problem customers" are responsible for the lion's share of infringing activity aided and abetted by Defendants. Such "coincidence" also evidences knowledge – both directly in terms of demonstrating that the activity is not randomly distributed across the hundreds of servers operated by Defendants and indirectly, in terms of demonstrating Defendants' resistance to taking action against valued "customers," even where those "customers" engage in the underlying illegal activity concerning which Plaintiff seeks to adduce evidence. Coombs Decl. at Ex.s B and C. At the inspection it was found that not only were the same "customers" involved, Defendants knew about it as stated in their internal records that were photographed during the inspection, but never produced to Plaintiff. See Ex. A to Plaintiff's Moving Papers; Coombs Decl. at ¶ 3. The existence of infringing websites on those copied servers, would thus be relevant to prove Defendants' knowledge and willful hosting of counterfeiters and pirates.

### C. The Presence of Any Infringing Website Evidences Defendants' Inaction Despite an Ability to Control.

Defendants' opposition states that while the inspection was occurring, some of Defendants' customers were offline. Defendants' Opposition p. 8:19-20. This evidences the kind of ultimate control Defendants' have over their servers and that they should have exercised all along. The presence of any infringing website on the servers obtained, that were observed to belong to some of Defendants' most notorious infringers would show Defendants' continued and willful blindness to the very real counterfeiting and piracy problems occurring on Defendants' servers.

---

[4] *See also Inwood Lab., Inc. v. Ives,* 546 U.S. 844, 854 (1982) (a party may be liable if it continues to provide assistance in the form of supplying a product or service to one whom the actor knows (*i.e.*, actual knowledge), or has reason to know (*i.e.*, constructive knowledge), is engaged in trademark infringement).

Thus, the presence of any infringing website, whether one or one million, is relevant for a number of reasons central to this case.

### III. Sanctions are Appropriate Because This Discovery Dispute and Associated Time, Fees and Costs were All Unnecessary.

Defendants' Opposition deliberately misses the point of Plaintiff's motion for sanctions – one expressly contemplated by the Court's order establishing a protocol when it expressly stated Plaintiff's request for sanctions was denied "without prejudice."  Judge Lloyd's Order re Discovery Protocol p. 4:23-25.  Defendants' purported inability to produce data was confirmed to be flagrantly false during the inspection.  Additional documents filed by Defendants in Opposition which show that they hosted some of the infringing websites is only additional evidence that, had they been inclined to comply with underlying discovery, they could have complied and none of this motion practice or the expense of forensic examination would have been required.  All along Defendants were able to identify and locate infringing material on their servers.  *See* Defendants' Exhibit 1537, page 5.

The information obtained during the inspection reinforced Plaintiff's presumption that Defendants not only continued to do business with known infringers, it did so through at least January of 2009.  *See* Ex.s A and F to Plaintiff's Moving Papers.  Because Defendants have refused to comply with applicable legal standards, despite Louis Vuitton's pre-litigation cease and desist efforts, the filing of this lawsuit, and considerable motion practice, sanctions are appropriate, both because Defendants' conduct warrants such sanctions and because Defendants have failed to respond to anything which does not have an effect on their bottom line.

An order for sanctions would help to insure that Defendants' behavior going forward would be corrected and that similarly situated defendants will think twice before engaging in this fruitless and meritless contempt of the Court's rules, procedures and orders.[5]

---

[5] Plaintiff included its sanctions request into its motion for modification of the inspection order because the issues are inextricably intertwined, past requests for similar relief were allowed in this form (Docket No. 94), and pursuant to its interpretation of the Court's March 10, 2009, Order that stated "On the record presented, this court cannot determine whether evidentiary sanctions properly may be imposed. Accordingly, that portion of plaintiff's motion is denied without

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for a modification of the March 10, 2009, protocol permitting it to search for all publicly accessible references to the Louis Vuitton Trademarks and other words commonly associated with counterfeiting sites not limited to the 67 websites specified in the underlying order, and for monetary sanctions in the amount of not less than Fifty-Seven Thousand Seven Hundred Seventy Dollars ($57,770.00).


Dated: April 28, 2009                    J. Andrew Coombs, A Professional Corp.


_____/s/ J. Andrew Coombs_____
By:     J. Andrew Coombs
         Annie S. Wang
Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

prejudice." Also, the matters are more efficiently resolved together in this discovery dispute and Defendants are not prejudiced.

# DECLARATION OF J. ANDREW COOMBS

I, J. Andrew Coombs, declare as follows:

1.     I am an attorney at law, duly admitted to practice before the Courts of the State of California and the United States District Court for the Northern District of California.  I am counsel of record for Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton") in an action styled *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, *et al.*, and, except as otherwise expressly noted to the contrary, I have personal knowledge of the following facts.

2.     Defendants' production of portions of its CPRO database on or about April, 2008, was a result of Plaintiff's specific request based on Defendant Chen's deposition testimony.  The CPRO database was not previously produced and has not been supplemented since April of 2008, despite Plaintiff's transmission of several subsequent notifications of repeat and "new" infringing activity.  Furthermore, the information provided by Defendants as exhibited in the CPRO excerpt, attached hereto as Exhibit A, is not the version that was viewed on Defendants' systems.

3.     I am informed and believe that the servers inspected, were discovered at the inspection to belong to Alice Chen, and "noraq" among others.  These customers were the subject of a number of prior notifications by Defendants themselves, just a few of which are identified and attached hereto as Exhibit B.

4.     Attached hereto as Exhibit C is a true and accurate copy of portions of the transcript from the deposition testimony of Steve Chen, individually and as the Rule 30(b)(6) witness for each of the two corporate defendants in this matter.

I declare under penalty of perjury that the foregoing is true and correct and this declaration was executed the 28th day of April, 2009 at Glendale, California.

_____/s/ J. Andrew Coombs_____
J. ANDREW COOMBS

**EXHIBIT A**

`2004-10-07 11:22:29`;`CUST-30001`;`test`;`2004-10-19 09:40:02`;`CUST-30011`;`10/19-Reloaded with win2k3. server was using FD IP:205.209.184.252 Port 4/cage.`;`2004-11-17 15:02:25`;`CUST-30004`;`11/17-unplug due to non payment.fwd to cage.`;`2004-11-23 15:39 differs from what you state. We had already did the refund and shut the server down.`;`2004-11-24 10:37:52`;`CUST-30001`;`test`;`2004-11-24 13:26:36`;`CUST-30004 ST-30098`;`11/24-unplugged for nonpayment/cage.`;`2004-12-17 16:51:34`;`CUST-30001`;`test`;`2004-11-24 13:26:36`;`CUST-30004 CUST-30043`;`11/2-Reset billing date to 12/2 Activation set up wrong server initially. Restore with new hardware and new pw.`;`2004-12-07 18:42:17`;`CUST-30155`;`C also, this server have APC installed onto it. So please charge customer accordingly.`;`Py.`;`2004-12-15 10:35:24`;`CUST-30164`;`C cancelled/Py.`;`2004-12-15 10:07:38`;`CUST-30093`;`12/15-Unplugged due to nonpayment`;`Py.`;`2004-12-17 16:52:37`;`CUST-30164`;`Customer had tw 30169`;`Cpanel license activated.`;`2004-12-17 16:51:34`;`CUST-30264`;`12/17-Unplug due to Non existent CCA.Customer had tw due to bad network issues brought up by donna. will do refund.`;`2004-12-23 09:29:28`;`cancelled/Py.`;`2004- 06`;`CUST-30210`;`0`;`2004-12-29 12:44:10`;`CUST-30201`;`12/29 fwd to support.`;`2005-01-04 10:09:49`;`CUST-30138`;`Please ...`

**EXHIBIT B**

**From:** security
**Sent:** Thursday, November 29, 2007 11:29 AM
**To:** noraq
**Subject:** [Fwd: Counterfeit product complaint;  immediate action required; 12 hours final notice]

Dear Sir,

We have received letter complaint from legal authority that your server
IP:204.16.193.146 main IP:205.209.136.51 is hosting website: watchesreplica.net   which
engaged in sale of counterfeit products.
Please take down the specific website immediately, or we will disconnect the abuse IP.

Thank you for your cooperation.

Security SS

Δ ⓙ EXHIBIT  8
DATE:  4-8-08
WITNESS:  5. Chen
PAGE  1  OF  1
J. WHITACRE, CSR
Exhibit B, Page 11

| **From:** | security |
| **Sent:** | Friday, November 30, 2007 8:04 AM |
| **To:** | noraq@126.com |
| **Subject:** | Re: [Fwd: Counterfeit product complaint;  immediate action required; 12 hours final  notice] |

```
Nora, this is Steve.
You need to take care this one fast; we are under big pressure from the lawyer.
For the extraIP, we can nullroute the extraIP without killing the whole server; but this
one is on main IP, so if you don't kill the website, we will need to kill the server.
In the future, try not to put applications on main IP.
Steve

noraq@126.com wrote:
> pushing the customer to resolve it
>
> From: "security" <security@akanoc.com>
> To: "noraq" <noraq@126.com>
> Date: Fri, 30 Nov 2007 03:34:51 +0800 (CST)
> Subject: [Fwd: Counterfeit product complaint; immediate action
> required; 12 hours final notice]
>
>
>
> > Dear Sir,
> >
> > We have received letter complaint from legal authority that your
> > server
> > IP:205.209.143.146 main IP:205.209.143.146 is hosting website:
> > ebuynike.com and ecshoes.com which engaged in sale of counterfeit
> > products.
> > Please take down the specific website immediately, or we will
> > disconnect
> > the abuse IP.
> >
> > Thank you for your cooperation.
> >
> > Security SS
> >
> >
> >
> >
> >
```

△ EXHIBIT 9
DATE: 4-8-08
WITNESS: S. Chen
PAGE 1 OF 1
J. WHITAKER, CSR Page 12

1

| From: | security |
|---|---|
| Sent: | Thursday, September 13, 2007 8:56 AM |
| To: | noraq@126.com |
| Cc: | Willlone (E-mail) |
| Subject: | Re: [29763 Fwd: Abuse Investigator] |

it doesnt matter who complained, all you need to do is you ask your customer to remove all
those illegal sites immediately, selling copyrighted merchandises is illegal.pls resolve
it within 12hrs, or i shall have no choice but to shut your servers down.
security

noraq@126.com wrote:
> we want to know which company is complainting the sites, we have to
> send complaint details to the customers, thanks
>
> ----ÔÓÊ⁴þÁÚÈÝÈçÌÅ----
> ·¢⁴þÈÊ£°"security" <security@akanoc.com> ÊÕ⁴þÈÊ£°"noraq"
> <noraq@126.com> ÈÐÆÚ£°Thu, 13 Sep 2007 22:56:42 +0800 (CST)
> Ö÷Ìâ£°[29763 Fwd: Abuse Investigator]
>
>
> > Dear Valued Customer,
> > RE: IP 205.209.149.18 &.17. & .13 pls remove all the illegal sites
> > within 12hrs, or we shall have to shut them all down. tks Akanoc.com
> > has received complaints about illegal spam/ spamvertised site/
> > copyrighted contents/activities being hosted or distributed from
> > your server. A copy of the complaint is attached for your perusal.
> > Please be advised that your server is currently in violation of our
> > Acceptable Use Policy;ª http://www.akanoc.com/acceptable_policy.htm
> >
> > To avoid termination of service and a penalty fee of $25.00 per
> violation,
> > We request that you investigate and terminate the aforementioned
> account
> > immediately.
> > Here by, we shall give you a 12 hours notice before we shall take
> > any unwanted action as to shut down your server without further notice.
> > Please notify us when this case is resolved
> >
> > If you have any question, please don¡⁻t hesitate to contact us.
> >
> > Thank you for your kind attention and full co-operation.
> >
> > Best Regards
> >
> > Network Security Team
> > Akanoc Solutions, Inc.
> > www.akanoc.com
> > www.coloalacarte.com
> > www.dediwebhost.com
> >
> >
> > -------- Original Message --------
> > Subject: Abuse Investigator
> > Date: Thu, 13 Sep 2007 22:18:22 +0800 (CST)
> > From: huangying.xm <huangying.xm@163.com>
> > To: abuse@managedsg-inc.com
> >
> >
> >
> > I have found a lots abuse damains on our IDC IP,
> >

1

△ (π) EXHIBIT 46
DATE: 4-12-08
WITNESS: J. LUK
PAGE 1 OF 2
J. WHITACRE, CSR

Exhibit B, Page 13

46

```
> > These server are used for Fraudulent Domain Hosting,
> >
> > Please Investigator and Termination of service.
> >
> > These server IP likes:205.209.149.18/13/17/140.162.
> >
> > www.mknike.com <http://www.mknike.com/> 205.209.149.18
> > www.ptmaike.com <http://www.ptmaike.com/> 205.209.149.18
> > www.worldmarket68.com <http://www.worldmarket68.com/> 205.209.149.18
> > www.998trade.com <http://www.998trade.com/> 205.209.149.13
> > www.nike222.com <http://www.nike222.com/> 205.209.140.162
> > www.nike10000.com <http://www.nike10000.com/> 205.209.149.17
> > www.nikeson.com <http://www.nikeson.com/> 205.209.149.17
> > www.nike9988.com <http://www.nike9988.com/> 205.209.149.17
> >
> > Thank you for your time .
> >
> >
> >
> > ------------------------------------------------------------------
> > ---- ¶ÃÓÐ¡°ÕË°Å±£ÏÕ¹ñ¡±±£»¤ÃÛÃé£¬¡°ÈðÐÇC08°æ¡±¿ªÊ¼Ãâ·Ñ
> >
> <http://adclient.163.com/event.ng/Type=click&FlightID=94603&AdID=96090
> &TargetID=1200&Values=31,43,51,60,72,85,91,100,110,312,332,499,587,701
> ,702,733,734&Redirect=http://www.rising.com.cn/2008/trial/index.htm>
> >
> > ------------------------------------------------------------------
> > ---- ÐÃÒöÖ÷¶¯·ÀÓù¹¦ÄÜ¬ÈðÐÇC2008°æÈ«ÃæÃâ·Ñ
> >
> <http://pro.163.com/event.ng/Type=click&FlightID=95980&AdID=97425&Targ
> etID=635&Values=31,43,51,60,72,84,90,100,110,312,330,332,499,582,733,7
> 34&Redirect=http://ad.cn.doubleclick.net/clk;134682177;20226578;k%3Fht
> tp://www.rising.com.cn/2008/trial/index.htm>
>
> >
> >
>
> ------------------------------------------------------------------
> -- È«¹ú Íò Ãû Ö° ³¡ Å® ÐÔ£¬Æë ¾Û ·Ç ³£ ÃÀ Å®£¬¾Û¾º¼ª ÑÞ 2 0 0 7
> <http://event.mail.163.com/chanel/click.htm?from=NO_14&domain=126>
```

△ 𝜋 EXHIBIT____46

DATE:_____

WITNESS:_____

PAGE____2___OF___2

J. WHITACRE, CSR

Exhibit B, Page 14

2

435

**From:** "zhonghh" <zhonghh@it8.cn>
**To:** "security" <security@akanoc.com>
**Sent:** Tuesday, January 15, 2008 12:23 AM
**Subject:** Re: Counterfeit product complaint; immediate action required; 12 hoursfinal notice

security您好

　　我们这里处理这个网站,请核实,谢谢


======= 2008-01-15 02:45:11 您在来信中写道：=======

>

>Dear Sir,

>

>We have received letter complaint from legal authority that your server
>IP: 204.16.193.105 main IP:204.13.69.210 is hosting website: luxury2us.com which engaged in sale of counterfeit products.
>Please take down the specific website immediately, or we will disconnect the abuse IP.
>

>Thank you for your cooperation.
>

>Security SS

>

>

>

>

>

>

>


= = = = = = = = = = = = = = = = = = =



　　　　　　致

礼！


PLAINTIFF'S
EXHIBIT
436

Exhibit B, Page 15

8/8/2008

From:      "zhonghh" <zhonghh@it8.cn>
To:        "security" <security@akanoc.com>
Sent:      Tuesday, January 15, 2008 12:28 AM
Subject:   Re: Counterfeit product complaint; immediate action required; 12 hoursfinal notice

security您好

　　我们这里处理这个网站,请核实,谢谢




======= 2008-01-15 02:53:40 您在来信中写道：=======


>
>Dear Sir,
>
>We have received letter complaint from legal authority that your server
>IP: 204.13.66.161 main IP:204.13.69.210 is hosting website: shoes-order.com which
engaged in sale of counterfeit products.
>Please take down the specific website immediately, or we will disconnect the abuse IP.
>
>Thank you for your cooperation.
>
>Security SS
>
>
>
>
>
>
>

= = = = = = = = = = = = = = = = = = =


　　　　　　致

礼！



PLAINTIFF'S EXHIBIT 438

From:     "zhonghh" <zhonghh@it8.cn>
To:         "security" <security@akanoc.com>
Sent:     Tuesday, January 15, 2008 6:44 AM
Subject:  Re: Counterfeit product complaint; immediate action required; 12 hoursfinal notice

security您好

　　我们这里处理这个网站,请核实,谢谢


======= 2008-01-15 02:22:26 您在来信中写道：=======

>

>Dear Sir,

>

>We have received letter complaint from legal authority that your server
>IP:205.209.171.44 main IP:205.209.136.90 is hosting website:buymyshoes.net which engaged in sale of counterfeit products.
>Please take down the specific website immediately, or we will disconnect abuse IP.

>

>Thank you for your cooperation.

>

>Security SS

>

>

>

>

>

>

>


= = = = = = = = = = = = = = = = = =


　　　　　　　致

礼！



PLAINTIFF'S EXHIBIT
439

zhonghh
zhonghh@it8.cn
2008-01-15

| | |
|---|---|
| **From:** | <noraq@126.com> |
| **To:** | "security" <security@akanoc.com> |
| **Sent:** | Monday, January 14, 2008 9:45 PM |
| **Subject:** | Re: Counterfeit product complaint; immedi ate action required; 12 hours final notic e |

we have shutdown the site and will not open it until they remove the content in question


From: "security" <security@akanoc.com>

To: "noraq" <noraq@126.com>

Date: Tue, 15 Jan 2008 02:47:06 +0800 (CST)

Subject: Counterfeit product complaint; immediate action required; 12 hours final notice



>

> Dear Sir,

>

> We have received letter complaint from legal authority that your server

> IP: 205.209.175.218 main IP:204.13.69.10 is hosting website: nikeshoesoffer.com which engaged in sale of counterfeit products.

> Please take down the specific website immediately, or we will disconnect the abuse IP.

>

> Thank you for your cooperation.

>

> Security SS

>

>

>

>

>

>

网易有道词典 - - 全球最强大的免费英汉互译词典（只有2兆）



PLAINTIFF'S EXHIBIT 440

Exhibit B, Page 19

8/8/2008

**From:**     "security" <security@akanoc.com>
**To:**       "noraq" <noraq@126.com>
**Sent:**     Monday, January 14, 2008 11:47 AM
**Subject:**  Counterfeit product complaint; immediate action required; 12 hours final notice

Dear Sir,

We have received letter complaint from legal authority that your server
IP: 205.209.175.218 main IP:204.13.69.10 is hosting website: nikeshoesoffer.com which engaged in
sale of counterfeit products.
Please take down the specific website immediately, or we will disconnect the abuse IP.

Thank you for your cooperation.

Security SS



PLAINTIFF'S
EXHIBIT
441

**From:** <noraq@126.com>
**To:** "security" <security@akanoc.com>
**Sent:** Monday, January 14, 2008 9:40 PM
**Subject:** Re: Counterfeit product complaint; immedi ate action required; 12 hours final notic e

pushing the customer to resolve it,thanks


From: "security" <security@akanoc.com>

To: "noraq" <noraq@126.com>

Date: Tue, 15 Jan 2008 02:52:06 +0800 (CST)

Subject: Counterfeit product complaint; immediate action required; 12 hours final notice



>

> Dear Sir,

>

> We have received letter complaint from legal authority that your server

> IP:204.16.193.146 main IP:205.209.136.51 is hosting website: replica-ebags.com which engaged in sale of counterfeit products.

> Please take down the specific website immediately, or we will disconnect the abuse IP.

>

> Thank you for your cooperation.

>

> Security SS

>

>

>

>

>

>

>

网易有道词典 - - 全球最强大的免费英汉互译词典（只有2兆）



PLAINTIFF'S
EXHIBIT
444

Exhibit B, Page 21

8/8/2008

**From:** "security" <security@akanoc.com>
**To:** "noraq" <noraq@126.com>
**Sent:** Monday, January 14, 2008 11:52 AM
**Subject:** Counterfeit product complaint; immediate action required; 12 hours final notice

Dear Sir,

We have received letter complaint from legal authority that your server
IP:204.16.193.146 main IP:205.209.136.51 is hosting website: replica-ebags.com which engaged in sale
of counterfeit products.
Please take down the specific website immediately, or we will disconnect the abuse IP.

Thank you for your cooperation.

Security SS



PLAINTIFF'S
EXHIBIT
445

| From: | "security" <security@akanoc.com> |
|---|---|
| To: | "zhonghh" <zhonghh@it8.cn> |
| Sent: | Monday, January 14, 2008 11:53 AM |
| Subject: | Counterfeit product complaint; immediate action required; 12 hours final notice |

Dear Sir,

We have received letter complaint from legal authority that your server
IP: 204.13.66.161 main IP:204.13.69.210 is hosting website: shoes-order.com which engaged in sale of counterfeit products.
Please take down the specific website immediately, or we will disconnect the abuse IP.

Thank you for your cooperation.

Security SS



PLAINTIFF'S
EXHIBIT
446

**From:** "security" <security@akanoc.com>
**To:** "zhonghh" <zhonghh@it8.cn>
**Sent:** Monday, January 14, 2008 11:57 AM
**Subject:** Counterfeit product complaint; immediate action required; 12 hours final notice

Dear Sir,

We have received letter complaint from legal authority that your server
IP: 205.209.136.83 is hosting website: tytrade88.com which engaged in sale of counterfeit products.
Please take down the specific website immediately, or we will disconnect the abuse IP.

Thank you for your cooperation.

Security SS



PLAINTIFF'S
EXHIBIT
448

Exhibit B, Page 24
8/8/2008

| | |
|---|---|
| **From:** | steve chen [steve@racklogic.com] |
| **Sent:** | Wednesday, August 08, 2007 3:05 PM |
| **To:** | Security (E-mail) |
| **Subject:** | FW: 204.16.197.27 removed from 204.13.69.170 main IP; we are being suited by LV for hosting this website, ape168.com |

FYI, stupid LV instead of suit ape168, they suit us. damn!

> -----Original Message-----
> From:       steve chen
> Sent: Wednesday, August 08, 2007 3:04 PM
> To:    steve chen; 'zhonghh@it5.cn'; 'chendan@it5.cn'
> Cc:    'Willlone  ( E-mail)  '
> Subject:      RE: 204.16.197.27 removed from 204.13.69.170 main IP;
> we are being suited by LV for hosting this website, ape168.com
>
> Do not let this guy stay here with LV trademark.
> Steve
>
> -----Original Message-----
> From:       steve chen
> Sent: Wednesday, August 08, 2007 2:51 PM
> To:    'zhonghh@it5.cn'; 'chendan@it5.cn'
> Cc:    Willlone  ( E-mail)
> Subject:      204.16.197.27 removed from 204.13.69.170 main IP;  we
> are being suited by LV for hosting this website, ape168.com
>
>

**PLAINTIFF'S
EXHIBIT**
tabbies
**528**

1

Exhibit E

**EXHIBIT C**

1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3

4   LOUIS VUITTON MALLETIER, S.A.,        )
                                          )
5                      Plaintiff,         )
                                          )
6                 vs.                     )  Case No. C073952JW
                                          )
7   AKANOC SOLUTIONS, INC., MANAGED       )
    SOLUTIONS GROUP, INC., STEVEN         )
8   CHEN and DOES 1 through 10,           )
    inclusive,                            )
9                                         )
                       Defendants.        )
10  _____ )

11

12

13

14

15          DEPOSITION OF STEVEN CHEN

16                  VOLUME I

17            Glendale, California

18           Tuesday, April 8, 2008

19

20

21

22

23

24   Reported by:  Janalee Whitacre
                    CSR No. 12223
25   NDS Job No.:  127887

Exhibit C, Page 26

1    Q.    Yes.

2    A.    I can remember one in New York, but I think

3    that he later drop out too.

4    Q.    Do you remember the name?

5    A.    Jimmy Lee.

6    Q.    Are the resellers typically individuals or

7    companies?

8    A.    They will present themselves as company, right,

9    but in reality, if one guy is shooting e-mails to all

10   different e-mail addresses, I'm more intend (sic) to say

11   that maybe they just one or two.

12   Q.    So Jimmy Lee may have been an employee at a

13   company or he may have been --

14   A.    Yes.

15   Q.    -- the customer himself?

16   A.    Yes, yes.

17   Q.    Can you identify for me any of the other

18   customers that Akanoc has?

19   A.    IT5.  Boise -- Boise -- I don't know.  Boise

20   Computer or Boise something.  Nora Q has e-mail address.

21   I don't know the -- I think the company name probably

22   Linlin.

23   Q.    Can you spell that or give us a spelling --

24   A.    L-i-n-l-i-n.  L-i-n.  Double l-i-n.  Linlin.

25         More names?

1   back, we were thinking of forming the business together,

2   and eventually he lost the interest of this, and that's

3   about it.

4       Q.   Was he a part owner at one time?

5       A.   Not really.

6       Q.   Was he an employee at one time?

7       A.   No.

8       Q.   And he has no current involvement with Akanoc?

9       A.   No.

10      Q.   And he has not for two or three years or more?

11      A.   More than -- I think that at the time that

12   we're separating from -- with Jacques, that's pretty

13   much dissolve everything.

14      Q.   That's 2004?

15      A.   Right.

16      Q.   You said that one customer with whom you do

17   have interactions otherwise than by e-mail is IT5; is

18   that correct?

19      A.   Yes.

20      Q.   And why is that? Is it a bigger customer or

21   more problem customer or somebody you know from other

22   circumstances?

23      A.   At one time that they were probably our biggest

24   resellers. At the time, you know, Alice Chen was

25   actually handling the business herself, and later she

1  has babies and family issues and then so she quiet down.

2  And now if we -- send a notice that if we sent e-mail to

3  IT5, we always send it to this ZhongHH.IT8, that

4  particular account, instead of Alice Chen.  And probably

5  right now she's probably No. 5, somewhere around there,

6  not top one anymore.

7      Q.   And where is IT5 located?

8      A.   In China.  Xiamen.

9      Q.   Xiamen?

10     A.   Yeah.  It's southern part of China.

11     Q.   X-i-a-m-e-n?

12     A.   X-i-a- -- yeah.

13     Q.   Earlier I showed you a couple printouts from

14  the DediWebHost.com Website.  Do you remember that?

15     A.   Yes.

16     Q.   Who wrote the text that appears on those

17  Websites?

18     A.   The Chinese --

19     Q.   No, the English.

20     A.   Pretty much it's a copy from Managed.com, so

21  Managed.com was created by Jacques Pham, and then so we

22  just take that and just keep migrating.

23     Q.   Sort of like the service agreement?

24     A.   What attorney said?  Cut and paste?

25     Q.   You said that the correspondence, hard copy

# ERRATA SHEET

I, Steven Chen, declare under penalty of perjury that I have read the foregoing 220 pages of my deposition testimony, taken on April 8-9, 2008 at 517 E. Wilson Street, Glendale, California, and that the same is a true record of the testimony given by me at the time and place hereinabove set forth, with the following exceptions:

| Page | Line | Sentence(s) should read: | Reason for Change: |
|------|------|--------------------------|--------------------|
| 34 | 1 | Change "managed" to "unmanaged" | Reporter error |
| 44 | 20 | Add this sentence to end of sentence at line 20: "We might have 50-100 extra server capacity, not 50-100 extra server on the side." | Clarification |
| 45 | 13 | Change "All" to "Or." | Reporter error |
| 45 | 17 | Add this sentence after first sentence at line 17: "I don't know the percentage of the website hosting application." | Clarification |
| 60 | 19-20 | Change Boise to "Boysee." | Reporter spelling error |
| 115 | 3 | Change "DDOS" to "DOS." | Reporter error |
| 132 | 12 | Change "just trying out cyber police" to "just China police." | Reporter error |
| 132 | 22 | Change "revive" to "replug." | Reporter error |
| 173 | 19 | Change "max, the total max" to "mass, the total mass." | Reporter error |
| 175 | 4 | Change "auto page" to "order page. | Reporter error |
| 181 | 25 | Add this sentence at beginning of paragraph: "That's "re-allocated" not "we allocated."" | Reporter error |
| 203 | 2 | Change "we draw" to "I draw" | Reporter error |

Date: May 13, 2008

Signature of Witness

Steven Chen
Name Typed or Printed

10562-002-5/14/2008-161206.1