**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Brian S. Edwards (SBN 166258)
Christopher Lai (SBN 249425)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone:   (949) 553-1010
Facsimile:   (949) 553-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com
bse@gauntlettlaw.com

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.
and Steve Chen

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A., <br><br> Plaintiff, <br><br> vs. <br><br> AKANOC SOLUTIONS, INC., et al., <br><br> Defendants. | Case No.: C 07-3952 JW (HRL) <br><br> **MOTION TO REQUIRE PLAINTIFF LOUIS VUITTON TO "PARE DOWN" ITS INFRINGEMENT CONTENTIONS FOR TRIAL** <br><br> [Fed. R. Civ. P. 1; Fed. R. Evid. 403] <br><br> Date: June 15, 2009 <br> Time: 9:00 a.m. <br> Ctrm: Courtroom 8, 4th Floor |

164945.2-10562-002-5/11/2009

**MOTION TO REQUIRE VUITTON TO "PARE DOWN"**
**ITS CLAIMS FOR TRIAL**
**– C 07-3952 JW (HRL)**

# TABLE OF CONTENTS

Page

I. VUITTION'S PRESENT CLAIMS ARE EXCESSIVE FOR A JURY TRIAL ............... 1

II. VUITTON MUST PROVE AND EACH DEFENDANT MUST DEFEND NUMEROUS ELEMENTS ON EACH ALLEGED INFRINGEMENT ........................... 2

    A. Contributory Copyright Infringement Elements ........................................ 2

        1. Direct Infringement Proof ................................................................ 2

        2. Contributory Infringement Proof .................................................... 3

    B. Contributory Trademark Infringement Elements ..................................... 5

        1. Direct Infringement Proof ................................................................ 5

        2. Contributory Infringement Proof .................................................... 5

            a. Where Direct Infringer Sells a Product ............................... 5

            b. Where Direct Infringer Sells a Service ................................ 6

III. TRIAL PROBLEMS WITH VUITTON'S PRESENT ALLEGATIONS ........................ 7

    A. The Scope of Vuitton's Claims Is Staggering ............................................. 7

    B. No Party Can Present Its Complex Evidence in the Time Allowed .......................... 8

    C. Vuitton's Repetitive Allegations Create an Impossible Burden for a Jury ........... 9

IV. VUITTON'S CLAIMS MUST BE "PARED DOWN" FOR PRESENTATION TO A JURY IN the LIMITED TIME ALLOTTED ............................................................... 11

    A. The Court Can Order Vuitton to "Pare Down" Its Claims ................................ 11

    B. Eliminating Cumulative Claims Will Not Unduly Prejudice Vuitton ................... 12

V. CONCLUSION ............................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ............................................................................................. 2, 3

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
  725 F.2d 1350 (Fed. Cir. 1984) ................................................................................................ 9

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) .................................................................................................. 2

*Fare Deals, Ltd. v. World Choice Travel.Com, Inc.*,
  180 F. Supp. 2d 678 (D. Md. 2001) ......................................................................................... 6

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996) ................................................................................................. 4, 7

*Great Northern Ry. Co. v. General Ry. Signal Co.*,
  57 F.2d 457 (8th Cir. 1932) ............................................................................................. 12, 13

*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*,
  955 F.2d 1143 (7th Cir. (Ill.) 1992) .......................................................................................... 7

*In re Hawaii Federal Asbestos Cases*,
  871 F.2d 891 (9th Cir. 1989) .................................................................................................. 10

*Inwood Labs, Inc. v. Ives Labs, Inc.*,
  456 U.S. 844, 102 S. Ct. 2182, 72 L. Ed. 2d 606 (1982) ......................................................... 7

*Kenney v. California Tanker Co.*,
  381 F.2d 775 (3d Cir. 1967) ................................................................................................... 11

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
  985 F. Supp. 949 (C.D. Cal. 1997), *aff'd,* 194 F.3d 980 (9th Cir. 1999) ................................. 4

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
  591 F. Supp. 2d 1098 (N.D. Cal. 2008) ............................................................................... 5, 6

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) .................................................................................................. 3

*Perfect 10, Inc. v. Visa Int'l Service Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ......................................................................................... 4, 5, 6, 7

*Tiffany (NJ) Inc. v. Ebay, Inc.*,
  576 F. Supp. 2d 463 (S.D.N.Y. 2008) .................................................................................. 3, 7

*Verizon California Inc. v. Ronald A. Katz Technology Licensing, P.A.*,
  326 F. Supp. 2d 1060 (C.D. Cal. 2003) ................................................................................. 11

**DOCKETED**

*Hearing Components, Inc. v. Shure, Inc.*,
  No. 9:07CV104, 2008 WL 2485426 (E.D. Tex. June 13, 2008) .................................................. 11

*Perfect 10, Inc. v. Visa Int'l Service Ass'n*,
  No. C 04-0371 JW, 2004 WL 1773349 (N.D. Cal. Aug. 5, 2004) .................................................. 4

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  No. C.A. 04-1371-JJF, 2006 WL 2435095 (D. Del. Aug. 22, 2006) ........................................ 11-12


**FEDERAL RULES AND STATUTES**

17 U.S.C. § 106 ........................................................................................................................ 2

Fed. R. Civ. P. 1 ............................................................................................................ 1, 11, 13

FED. R. CIV. P. 49 .................................................................................................................. 9, 10

FED. R. CIV. P. 49(a)(3) ............................................................................................................... 9

Fed. R. Evid. 403 ........................................................................................................... 1, 11, 13

United States District Court, Northern District of California L.R. 7-9 ................................... 1


**OTHER AUTHORITIES**

3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 12.04[A][3][a] (2008) ........... 4

Defendants Managed Solutions Group, Inc. ("MSG"), Akanoc Solutions, Inc. ("Akanoc"), and Steve Chen move to require plaintiff Louis Vuitton Malletier, S.A. ("Vuitton") to provide "pared down" infringement contentions for trial. The motion will be heard on June 15, 2009 at 9:00 a.m. in Courtroom 8, Fourth Floor of the U.S. Courthouse, 280 South 1st Street, San Jose, California.

The motion is made pursuant to Fed. R. Civ. P. 1, Fed. R. Evid. 403, and L.R. 7-9 and is based on the grounds that Vuitton claims that each of the three defendants contributed to infringement of two copyrighted works and fifteen trademarks by at least seventy-seven different Internet websites. The number of claims is so unwieldy that a trial of these 3,927 separate claims is a practical impossibility, especially in the limited time allotted for the jury trial in this case. The Defendants move for an order paring down Plaintiff's claims for trial to a manageable number.

## I. VUITTION'S PRESENT CLAIMS ARE EXCESSIVE FOR A JURY TRIAL

A jury trial is scheduled to begin on August 18, 2009 on Vuitton's claims of contributory copyright and trademark infringement. Defendants MSG and Akanoc are Internet service providers ("ISPs") with facilities in San Jose and Fremont, California. Defendant Chen is the manager of MSG and Akanoc. Vuitton, a seller of handbags and related merchandise, alleges in its First Amended Complaint ("FAC") [Docket No. 71] that its "Intellectual Properties" (the two listed copyrights and fifteen listed trademarks defined in paragraphs 13, 19 and 20 of the FAC) have been directly infringed by numerous Internet websites "including but not limited to" the seventy-seven websites identified in paragraph 31 of the FAC. These seventy-seven are the "Counterfeiting Websites" (FAC paragraph 30) discussed throughout the FAC.

Vuitton then alleges that the Defendants contributorily infringed Vuitton's copyrights and trademarks by providing Internet hosting services to the Counterfeiting Websites ("Defendants therefore bear contributory liability for the Counterfeiting Websites' counterfeiting of the Plaintiff's Trademarks . . . ." (paragraph 39) and "Defendants have . . . contributed to the [copyright] infringing conduct at the websites operated by the Counterfeiting Websites." (paragraph 51)).

Therefore the FAC alleges that each of seventy-seven "Counterfeiting Websites" has infringed all or most of Vuitton's seventeen "Intellectual Properties" and that each of the three Defendants is liable for each alleged infringement by each of the seventy-seven websites.

Vuitton has alleged a total of 1,309 separate infringements by the Counterfeiting Websites (17 x 77 = 1,309) and has alleged each of the three defendants has contributed to each of those infringements. This means that 3,927 separate liability determinations must be made in the pending trial (17 x 77 x 3 = 3,927). The defendants must defend against all these separate allegations. Considering the multiple elements that must be decided for each infringement, the number of factual questions becomes too large to manage in a single trial. There are simply too many factual questions to be determined in a two-week jury trial. Vuitton should be required to pare down its claims to a manageable number.

## II. VUITTON MUST PROVE AND EACH DEFENDANT MUST DEFEND NUMEROUS ELEMENTS ON EACH ALLEGED INFRINGEMENT

### A. Contributory Copyright Infringement Elements

To prove liability for contributory copyright infringement as to each act of alleged infringement, Vuitton must first prove direct infringement by a specific third party. Then, as to each alleged infringement, Vuitton must prove that each Defendant: (1) had actual knowledge of the third party's infringing activity and (2) induced, caused, or materially contributed to the infringing conduct. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).

#### 1. Direct Infringement Proof

Vuitton must establish each alleged direct infringement by proof that a specific third party infringed one of Vuitton's exclusive rights under 17 U.S.C. § 106.[1] *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party. *Religious Tech. Ctr. v. Netcom On-Line Communication Servs., Inc.*, 907 F.Supp. 1361, 1371 (N.D.Cal.1995) ('[T]here can be no contributory infringement by a defendant without direct infringement by another.'). It follows that Napster does not facilitate infringement of the copyright laws in the absence of direct infringement by its users.").

> Plaintiffs must satisfy **two requirements** to present a **prima facie case of direct infringement**: **(1)** they must show **ownership** of the

---

[1] "[T]he owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work . . . ." 17 U.S.C. § 106.

> allegedly infringed material and **(2)** they must demonstrate that the alleged **infringers violate at least one exclusive right** granted to copyright holders under 17 U.S.C. § 106.

*Id.* at 1013 (emphasis added). Each asserted copyright infringement requires that Vuitton establish its ownership of the material and that a specific direct infringer has violated an exclusive right. It will not suffice for Vuitton to show that one or two or even a few websites have infringed one or two copyrights in order to prove the case as alleged. Vuitton must show that its two copyrights were infringed by all seventy-seven alleged infringers.

The Defendants then may challenge or rebut Vuitton's prima facie showing. In this case the Defendants expect to defend by, among other things, challenging Vuitton's evidence of infringement by alleged direct infringers. The defendants must each be prepared to rebut two copyright infringements by seventy-seven direct infringers.

### 2. Contributory Infringement Proof

Vuitton must then prove that each of the three Defendants induced, caused or materially contributed to each alleged direct infringement. In the Internet context, Vuitton must also prove that each Defendant had actual knowledge of *infringing conduct* at each specific website allegedly using the Defendants' services. *Tiffany (NJ) Inc. v. Ebay, Inc.*, 576 F. Supp. 2d 463, 510 n.37 (S.D.N.Y. 2008) ("Under copyright law, generalized knowledge that copyright infringement may take place in an Internet venue is insufficient to impose contributory liability. *See, e.g., A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1027 (9th Cir.2001) ('The mere existence of the Napster system, absent actual notice and Napster's demonstrated failure to remove the offending material, is insufficient to impose contributory liability.'); *Hendrickson* [*v. eBay, Inc.*], 165 F.Supp.2d [1082,] 1088-90 [(C.D. Cal. 2001)] (holding that generalized notice of copyright infringements was insufficient to establish knowledge for the purpose of contributory liability).").

Vuitton must then prove that each Defendant actively encouraged or induced infringement through specific acts or active steps that show an affirmative intent to infringe. In *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007), the court held that material contribution requires a defendant to actively encourage infringement:

> Within the general rule that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement," *Grokster,*

> 545 U.S. at 930, 125 S.Ct. 2764, the Court has defined two categories of contributory liability: "Liability under our jurisprudence may be predicated on **actively encouraging (or inducing) infringement through specific acts** . . . or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Id.* at 942, 125 S.Ct. 2764 (Ginsburg, J., concurring) (quoting *Sony,* 464 U.S. at 442, 104 S.Ct. 774); *see also id.* at 936-37, 125 S.Ct. 2764. [Emphasis added.]

In the alternative, Vuitton may show that each Defendant materially contributed to the infringing conduct by (1) specifically assisting the infringing activity itself, *Perfect 10, Inc. v. Visa Int'l Service Ass'n*, No. C 04-0371 JW, 2004 WL 1773349, at *4 (N.D. Cal. Aug. 5, 2004);[2] or (2) actively striving to provide the environment and market for counterfeiting to thrive, *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir. 1996);[3] or (3) proof that Defendants and website operators were engaged in a mutual enterprise of infringement, *Perfect 10, Inc. v. Visa Int'l Service Ass'n,* 494 F.3d 788, 798 (9th Cir. 2007);[4] or (4) Defendants acted in concert with any alleged infringer;[5] or (5) Defendants were directly and substantially involved in the businesses of infringing website operators, *Lockheed Martin Corp. v. Network Solutions, Inc.,* 985 F. Supp. 949, 962 (C.D. Cal. 1997), *aff'd,* 194 F.3d 980 (9th Cir. 1999).[6]

---

[2] "Defendants' conduct does not begin to approach the level of involvement that existed in the cases enumerated above, where material contribution was found. **In each of those cases, the defendants' conduct specifically assisted the infringing activity itself.** Here, the websites would be every bit as capable of copying and distributing Plaintiff's copyrighted works regardless of whether they employed Defendants' services. As a result, Plaintiff has not adequately pled a claim for contributory copyright infringement." (Emphasis added.)

[3] Flea market proprietor liable as a contributory [copyright] infringer when it "actively strives to provide the environment and market for counterfeit recording sales to thrive."

[4] "In *Fonovisa*, we held a flea market proprietor liable as a contributory infringer when it provided the facilities for and benefitted from the sale of pirated works. The court found that **the primary infringers and the swap meet were engaged in a mutual enterprise of infringement** and observed that it would be difficult for the infringing activity to take place in the massive quantities alleged without the support services provided by the swap meet. . . . The *Fonovisa* court found liability because the swap meet operator knowingly provided the 'site and facilities' for the infringing activity." (Emphasis added.)

[5] 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 12.04[A][3][a] (2008): "In order to be deemed a contributory infringer, the authorization or assistance must bear some direct relationship to the infringing acts, and **the person rendering** such **assistance or giving** such **authorization must be acting in concert with the infringer**." (Emphasis added.)

[6] "In *Fonovisa*, the Ninth Circuit adopted *Hard Rock*'s analogy between landlord/tenant vicarious liability and trademark law contributory liability in order to extend the *Inwood* standard to the flea market context. *Fonovisa*, 76 F.3d at 265. There, too, the court found that **the flea market operator provided more than space, and was directly and substantially involved in the**

### B. Contributory Trademark Infringement Elements

#### 1. Direct Infringement Proof

To prove liability for contributory trademark infringement as to each act of alleged infringement, Vuitton must first prove direct infringement by a specific third party. *Perfect 10 v. Visa Int'l*, 494 F.3d at 807. This Court has held that "[t]o establish direct infringement of a trademark, a plaintiff must show: (1) ownership of a valid trademark, and (2) a likelihood of confusion resulting from a defendant's alleged infringing use. *Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 972 (9th Cir.2007)."[7]

As with the copyright infringement allegations, Vuitton must establish its ownership of the fifteen asserted trademarks and that each alleged website infringer has used the marks in a way that created a likelihood of confusion resulting from each infringer's alleged use. Again, it will not suffice for Vuitton to show that one website has infringed a single trademark in order to prove direct infringement as alleged. Vuitton has alleged and therefore must show infringement of fifteen trademarks by all seventy-seven alleged infringers at seventy-seven websites.

The Defendants then may challenge or rebut Vuitton's prima facie showing. In this case the Defendants expect to defend by, among other things, challenging Vuitton's evidence of infringement by alleged direct infringers.

#### 2. Contributory Infringement Proof

##### a. Where Direct Infringer Sells a Product

After proving direct infringement by each alleged "Counterfeiting Website" selling a product (e.g., handbags, belts, watches as Vuitton alleges), then, as to each alleged infringement, Vuitton must prove each Defendant: (1) intentionally induced the primary infringers to infringe **or** continued to supply an infringing product. *Perfect 10, Inc. v. Visa Int'l,* 494 F.3d at 807:

> To be liable for contributory trademark infringement, a defendant must have (1) "**intentionally induced**" the primary infringer to infringe, **or** (2) **continued to supply an infringing product** to an infringer with knowledge that the infringer is mislabeling the particular product supplied. *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 855,

---

**businesses of the infringing vendors**. *Id.* at 264." (Emphasis added.)

[7]*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098, 1104 (N.D. Cal. 2008).

| | |
|---|---|
| 1 | 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). [Emphasis added.] |

### b. Where Direct Infringer Sells a Service

If the direct infringer supplies a service rather than a product, then Vuitton must prove that each Defendant directly controlled and monitored the website(s) used by a third party primary infringer to infringe. *Perfect 10, Inc. v. Visa Int'l*, 494 F.3d at 807. This **test applies only when the direct infringer supplies a service**, not when the alleged contributory infringer supplies a product.

> **When** the alleged **direct infringer supplies a service** rather than a product, under the second prong of this test, the court must "consider the **extent of control** exercised by the defendant **over the third party's means of infringement.**" *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 984 (9th Cir.1999). **For liability** to attach, **there must be "[d]irect control and monitoring** of the instrumentality used by a third party to infringe the plaintiff's mark. *Id*.

*Id.* (emphasis added).

If this "direct infringer service" theory is used by Vuitton (although Vuitton does not allege that any direct infringers are offering a service), then Vuitton must prove the "extent of control" by each Defendant over each directly infringing service. Under that framework, Vuitton must prove that each Defendant had knowledge and " '[d]irect control and monitoring of the instrumentality used by the third party to infringe the plaintiff's mark.' *Lockheed*, 194 F.3d at 984."[8] In order to show direct control and monitoring, Vuitton must prove that each Defendant had actual control over operations at infringing websites, such as advertising and promoting infringing businesses and providing customers to infringing websites. *Fare Deals, Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 689-90 (D. Md. 2001):

> [L]iability in the flea-market cases rested on more than the relatively passive degree of control and monitoring usually exercised by a landlord. The flea-market operators not only exercised considerable actual control over the operations of their vendors; they also actively supported the infringing businesses of their vendors – by advertising and promoting the flea markets and by providing the vendors their customers. *See Hard Rock Cafe Licensing Corp*., 955 F.2d at 1148; *Fonovisa, Inc.,* 76 F.3d at 264.

The concept of "willful blindness" is limited in the *contributory* trademark context. *Inwood*

---

[8]*Louis Vuitton,* 591 F. Supp. 2d at 1111.

*Labs* instructs that a defendant is liable if it "intentionally induces another to infringe a trademark" or "continues to supply a product to one whom it *knows or has reason to know* is engaging in trademark infringement." *Inwood Labs, Inc. v. Ives Labs, Inc.,* 456 U.S. 844, 853-54, 102 S. Ct. 2182, 2188, 72 L. Ed. 2d 606 (1982); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir. 1996). In determining if a defendant knew or had reason to know, "courts have also rejected a standard that would reach conduct that only *might be* infringing. Instead, courts have required a much higher showing that a defendant knew or had reason to know of **specific instances of actual infringement**." *Tiffany (NJ) Inc.,* 576 F. Supp. 2d at 510 (bold emphasis added).[9]

So although the "knew or had reason to know" requirement can be satisfied by a showing that the defendant was "willfully blind" to the infringing activity (*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.,* 955 F.2d 1143, 1149 (7th Cir. (Ill.) 1992)), in the contributory liability context this standard is difficult to meet. It is necessary that the defendant have **actual** knowledge of infringing conduct and **deliberately** fail to investigate. As the *Hard Rock* court observed, it is not enough that a defendant has generalized knowledge of infringement and fails to take reasonable precautions. Mere negligence is insufficient:

> To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate. The district court, however, made little mention of CSI's state of mind and focused almost entirely on CSI's failure to take precautions against counterfeiting. In its conclusions of law, the court emphasized that CSI had a duty to take reasonable precautions. In short, it looks as if the district court found CSI to be negligent, not willfully blind.

*Id.* (citations omitted).

### III. TRIAL PROBLEMS WITH VUITTON'S PRESENT ALLEGATIONS

#### A. The Scope of Vuitton's Claims Is Staggering

The scope of Vuitton's claims is staggering. **Each** Defendant is alleged to be contributorily

---

[9] Citing *Perfect 10 v. Visa Int'l*, 494 F.3d at 806, and *Fonovisa,* 76 F.3d at 265, the *Tiffany* court noted that " 'trademark infringement liability is more narrowly circumscribed than copyright infringement' " and that "[u]nder copyright law, **generalized knowledge** that copyright infringement may take place **in an Internet venue is insufficient** to impose contributory liability. *See, e.g.*, *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1027 (9th Cir.2001) ('The mere existence of the Napster system, absent actual notice and Napster's demonstrated failure to remove the offending material, is insufficient to impose contributory liability.'); *Hendrickson,* 165 F.Supp.2d at 1088-90 (holding that generalized notice of copyright infringements was insufficient to establish knowledge for the purpose of contributory liability)." 576 F. Supp. 2d at 510 n.37.

liable for at least seventeen separate copyright and trademark infringements committed by seventy-seven directly infringing "Counterfeiting Websites." Vuitton proposes to prove liability of each defendant for one thousand three hundred and nine (1,309) separate acts of infringement committed by seventy-seven websites operated by persons not identified by Vuitton. The Plaintiff will be required to present evidence and argument to establish **3,927 separate acts of infringement** within its trial time allotment of 16.5 hours (990 minutes or 59,400 seconds). This means that Vuitton must present evidence to establish each claim (including all its elements) in an average time of 15 seconds per infringement. The three Defendants will have the same amount of time to defend against nearly four thousand claims at the rate of 15 seconds per claim. Fifteen seconds per claim would barely allow a single witness to utter a single sentence about each claimed infringement. Such a trial is an impossibility.

Perhaps Vuitton does not plan to try proving all 3,927 claims but will focus on a few at the time of trial and then make an argument that if liability for a few websites or trademarks is proven, then the jury can assume that all the other allegations are proven. But that approach would deny due process to the Defendants who have to prepare to defend against the nearly four thousand claims. The three Defendants will have no choice but to defend against each alleged infringement at each website while splitting their allotted time amongst themselves.

One solution to this problem is for the Court to allow substantially more time to try this case, perhaps several months. But Vuitton's claims are unnecessarily duplicative and cumulative. It serves no legitimate purpose to conduct a trial to determine thousands or even hundreds or even dozens of infringements. Neither the courts nor juries are established and equipped to try such an extended case. A far better solution is to require the Plaintiff to pare down its claims to a manageable number that can actually be tried in the allotted time.

**B.     No Party Can Present Its Complex Evidence in the Time Allowed**

The point of discussing the necessary elements of proof and alternatives is to demonstrate the complexity of proof necessary to show that each Defendant contributorily infringed Vuitton's seventeen copyrights and trademarks at seventy-seven accused websites. What one website did is obviously different from what the other seventy-six websites did. Evidence applicable to one

website does not implicate the conduct of other websites (even if all of them are trying to sell similar products). Evidence applicable to one Defendant is not necessarily relevant to prove any contribution to a specific infringement by another Defendant. Vuitton cannot seriously think that everything the Defendants do contributes to infringement of its Intellectual Properties. Not only do the Defendants deny any liability, they assert that Vuitton mischaracterizes their businesses and their conduct generally. Vuitton cannot throw a blanket over the case by providing non-specific evidence and making general arguments. Vuitton must prove all the specific wrongdoing it alleges, or else withdraw the overbroad claims.

The Defendants must likewise defend these broad allegations by challenging Vuitton's evidence and by presenting their own evidence to negate each of the many alternative elements in the Internet context. If a Defendant challenged only some of the evidence or provided its own defense evidence as to only some of the websites, the jury may well conclude that the Defendant was admitting liability of contribution to other instances of alleged infringement. So each Defendant, as a matter of due process, must be given a reasonable opportunity to dispute Vuitton's claims.

Trial of this case is impossible for any party if they only have fifteen seconds per alleged infringement to present their evidence. Fifteen seconds is the approximate time to provide a single sentence of testimony. Even if the three Defendants pooled their time and made a joint defense, forty-five seconds per infringement is still grossly inadequate.

### C. Vuitton's Repetitive Allegations Create an Impossible Burden for a Jury

The jury must make factual determinations on each alleged infringement. In order for the jury to determine any Defendant's liability for alleged wrongdoing, the jury must hear evidence and then decide all facts necessary as to each element of each claimed infringement. In a complex case, such as an intellectual property case, it is customary and even necessary for the jury to decide all factual inquiries using special interrogatories. FED. R. CIV. P. 49. The Defendants here demand submission to the jury of all factual issues and will not waive their rights to a jury determination on any factual issue. *See* Rule 49(a)(3). This case is similar to a patent infringement case with multiple factual issues. It is likely to be error not to submit to the jury all factual inquiries underlying the verdict. *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1361 (Fed. Cir.

1984):

> We also agree with AmHoist that the district court should have submitted to the jury the factual inquiries underlying a § 103 determination in the form of special interrogatories. Fed.R.Civ.P. 49. While the form of jury verdict is normally a matter of discretion with the trial court, one court has noted that the "failure to utilize this method in a patent case places a heavy burden of convincing the reviewing court that the trial judge did not abuse his discretion." *Baumstimler v. Rankin,* 677 F.2d 1061, 1071-72, 215 USPQ 575, 584 (5th Cir.1982).

The Ninth Circuit interprets Rule 49 to require in a case like this the use of interrogatories with a special verdict form. The questions asked of the jury must include all factual issues essential to a judgment; including at least a factual determination of every necessary element of liability. *In re Hawaii Federal Asbestos Cases*, 871 F.2d 891, 894 (9th Cir. 1989):

> According to Fed.R.Civ.P. 49(a), the trial court's complete **discretion** as to whether a special or general verdict is to be returned extends to determining the form of the verdict and interrogatories, **provided that the questions asked are adequate to obtain a jury determination of all factual issues essential to judgment.** *R.H. Baker & Co. v. Smith-Blair, Inc.*, 331 F.2d 506, 508 (9th Cir.1964). We have a duty to reconcile the jury's special verdict responses on any reasonable theory consistent with the evidence. *Ortiz v. Bank of America National*, 824 F.2d 692, 696 (9th Cir.1987) (citing *Gallick v. Baltimore & O.R.R.,* 372 U.S. 108, 119-22, 83 S.Ct. 659, 668-69, 9 L.Ed.2d 618 (1963)). [Emphasis added.]

The sample jury verdict forms (one for a contributory trademark infringement and one for a contributory copyright infringement) attached to the accompanying Declaration of James A. Lowe ("Lowe Decl.") are examples of the necessary factual issues that must be decided as to a **single** Defendant, a **single** copyrighted work or trademark, allegedly infringed by a **single** website. The questions on the verdict form are limited to the elements that must be established by Vuitton to prove one such contributory infringement. The Defendants believe that Vuitton's present allegations, if submitted to the jury, would require multiplying these forms by the 3,927 allegations of infringement.

It would be absurd to ask the jury to consider who knows how much evidence and then decide the liability of the Defendants on each claim. The jury deliberations are scheduled for a two-day period. Assuming that the jury works a total of sixteen hours (960 minutes or 57,600 seconds), they will have an average of 14.7 seconds to review the evidence, discuss, deliberate, vote, and

complete a verdict form as to each claimed infringement. That is an impossibility. For example, a single verdict form (pertaining to one Defendant for a single claim at a single website) will consist of approximately one to two pages. [Lowe Decl., ¶¶ 4-5] In total, unless pared down the verdict forms in this case will amount to nearly **eight thousand pages.** [*Id.*] So even if the jury has unlimited time to deliberate, that is an outrageous burden to place on any jury and it would deny the Defendants a real jury trial. Yet it would be improper to allow the jury to complete only one or two general verdicts, perhaps on the theory that if they found any infringement of any "Intellectual Property" by any "Counterfeiting Website" to which any Defendant had contributed, then it could find the Defendants liable for all alleged infringements.

### IV. VUITTON'S CLAIMS MUST BE "PARED DOWN" FOR PRESENTATION TO A JURY IN THE LIMITED TIME ALLOTTED

#### A. The Court Can Order Vuitton to "Pare Down" Its Claims

The Court has the power to regulate trials and the presentation of evidence. Fed. R. Civ. P. 1 provides that the procedures governing civil actions "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." *See Kenney v. California Tanker Co.*, 381 F.2d 775, 777 (3d Cir. 1967) ("[T]he district courts also have the responsibility to secure the just and speedy and inexpensive determination of every action."). The Court also has discretion to exclude even relevant evidence based on "considerations of undue delay, waste of time or needless presentation of cumulative evidence." FED. R. EVID. 403.

Rule 1 allows the Court to order a party to select a small number of representative claims so that the case can be made manageable for a jury. *Hearing Components, Inc. v. Shure, Inc.*, No. 9:07CV104, 2008 WL 2485426, at *1 (E.D. Tex. June 13, 2008) (plaintiff ordered to "select no more than three (3) representative claims from each patent" in order to "secure the just, speedy and inexpensive determination of this action pursuant to Fed.R.Civ.P. 1"); *Verizon California Inc. v. Ronald A. Katz Technology Licensing, P.A.,* 326 F. Supp. 2d 1060, 1066 (C.D. Cal. 2003) ("Due to the large number of patents and claims at issue, on September 25, 2002, the Court ordered Katz to identify no more than three representative claims per patent for its infringement case.").

In *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,* No. C.A. 04-1371-JJF,

2006 WL 2435095, at *1 (D. Del. Aug. 22, 2006) defendant Fairchild brought a motion to compel Power Integrations to pare down its numerous infringement claims for trial. Power Integrations had offered to stipulate with Fairchild to "narrow the claims [per patent] at issue from 18 to 12." *Id.* But the court went further: "As for the pared down claims and groups of products, the Court will order Power Integrations to select **one claim per asserted patent to litigate at trial** and to specify three groups of products that will be at issue." *Id.*

Since evidence at each of the 77 websites allegedly proves infringement of all 17 of Vuitton's trademarks and copyrights, Vuitton has no need for more than a few "representative" sites and trademarks or copyrights to prove its infringement claims.

> At or before the trial [the railway company] requested the signal company to select from the large number of claims [45 claims] certain ones upon which it would rely, and the signal company did so and selected ten typical claims. . . . Presumably **selection of ten as** typical and **representative** of the large group **shortened the trial** and economized expenses. **It narrowed not the issue but the evidence determinative of the issues**.

*Great Northern Ry. Co. v. General Ry. Signal Co.*, 57 F.2d 457, 461 (8th Cir. 1932) (emphasis added).

Paring down the number of Counterfeiting Websites and Intellectual Properties at issue will allow the jury an opportunity to reasonably determine whether Defendants contributorily infringed anything. This would allow the Defendants to properly prepare for the trial and it would permit manageable case presentation within the allotted time.

**B.     Eliminating Cumulative Claims Will Not Unduly Prejudice Vuitton**

Requiring Vuitton to "pare down" the number of websites to a representative few will not unduly prejudice Vuitton because the 77 websites at issue allegedly infringe ***all*** of Vuitton's copyrights and trademarks. Vuitton's FAC alleges that "most, if not all, of the [77] websites hosted by the ISP Defendants are engaged in the trafficking of counterfeit merchandise, specifically including merchandise infringing the Louis Vuitton Intellectual Properties." [FAC ¶ 31].

Because each of the 77 listed websites allegedly infringes all 17 of Vuitton's copyrights and trademarks, evidence of infringement at more than a few should be excluded as allowing such evidence would amount to a needless presentation of cumulative evidence and a waste of time. FED.

164945.2-10562-002-5/11/2009                    12                    MOTION TO REQUIRE VUITTON TO "PARE DOWN" ITS CLAIMS FOR TRIAL – C 07-3952 JW (HRL)

R. EVID. 403. Paring down the number of websites at issue to a representative group is appropriate under Fed. R. Civ. P. 1 because it will allow the case to be manageably presented to the jury within the allotted time.

Paring down claims will not unduly prejudice Vuitton. It will "narrow[] not the issue but [only] the evidence determinative of the issues." *Great Northern Ry. Co.,* 57 F.2d at 461. The jury will still decide whether Defendants contributorily infringed Vuitton's trademarks and copyrighted works. They will only be spared having to make similar determinations nearly four thousand separate times.

## V. CONCLUSION

Defendants respectfully request that Vuitton be ordered to "pare down" its claims to a few representative websites and Intellectual Properties to make the case manageable for presentation to the jury in the limited time frame allotted for the trial of this matter.

Dated: May 11, 2009            **GAUNTLETT & ASSOCIATES**

By:    s/James A. Lowe
       David A. Gauntlett
       James A. Lowe
       Brian S. Edwards
       Christopher Lai

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.,
and Steve Chen