1  **GAUNTLETT & ASSOCIATES**
   David A. Gauntlett (SBN 96399)
2  James A. Lowe (SBN 214383)
   Brian S. Edwards (SBN 166258)
3  Christopher Lai (SBN 249425)
   18400 Von Karman, Suite 300
4  Irvine, California  92612
   Telephone:    (949) 553-1010
5  Facsimile:    (949) 553-2050
   jal@gauntlettlaw.com
6  bse@gauntlettlaw.com
   cl@gauntlettlaw.com
7
   Attorneys for Defendants
8  Akanoc Solutions, Inc.,
   Managed Solutions Group, Inc.
9  and Steve Chen

10

11                     **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

13

14  LOUIS VUITTON MALLETIER, S.A.,        )  Case No.:  C 07-3952 JW (HRL)
                                          )
15                       Plaintiff,       )  **DEFENDANTS' OPPOSITION TO**
                                          )  **VUITTON'S MOTION IN LIMINE #1**
16         vs.                            )  **TO EXCLUDE QUARTERLY REVENUE**
                                          )  **REPORTS AT TRIAL**
17                                        )
                                          )
18  AKANOC SOLUTIONS, INC., et al.,       )
                                          )
19                       Defendants.      )
                                          )
20  _____  )

21

22

23

24

25

26

27

28

165762.1-10562-002-8/12/2009                                    **DEFENDANTS' OPPOSITION TO**
                                                              **VUITTON'S MOTION IN LIMINE #1**
                                                                       **– C 07-3952 JW**

Dockets.Justia.com

## I. THE RULES OF EVIDENCE FAVOR ADMISSIBILITY

Relevant evidence means evidence having any tendency to make any fact of consequence more or less probable. Fed.R.Evid. 401 All relevant evidence is admissible. Fed.R.Evid. 402 Evidence can be "excluded on a motion in limine only if the evidence is clearly inadmissible for any purpose." *Fresenius Med. Care Holdings, Inc.,* 2006 U.S. Dist. LEXIS 42159, at *14 (N.D. Cal. June 12, 2006) "In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission." *United States v. Dennis,* 625 F.2d 782, 797 (8th Cir.1980); see also *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir.2003) (noting that Rule 403 is "an extraordinary remedy which the district court should invoke sparingly, and [t]he balance ... should be struck in favor of admissibility").

## II. VUITTON'S QUARTERLY REPORTS ARE HIGHLY RELEVANT

### A. The Quarterly Revenue Reports Are Relevant in Determining the *Amount* of Any Statutory Damages Award

The Quarterly Revenue Reports[1] are regular public reports of the performance and sales of, among other things, Louis Vuitton merchandise. These are reports published by Vuitton's public parent company, LVMH. The reports Vuitton wants to exclude show that during the time of alleged contributory infringement, Louis Vuitton's sales regularly and dramatically increased, often by "double digits." The exhibits show that Louis Vuitton has not suffered any loss of sales but has experienced constantly increasing sales and revenue, including in the U.S. and even China.

This evidence tends to prove Vuitton has not suffered any actual damages. Such evidence is therefore relevant in determining the appropriate **amount** of any statutory damages award. Vuitton's claim that the reports do not apply to statutory damages because statutory damages can be awarded even in the absence of actual damages misses the point. Although the reports may not determine *if* statutory damages can be awarded, they are highly probative as to the **amount of any statutory damages award** within the acceptable ranges.[2]

---

[1] True copies of the Quarterly Revenue Reports at issue are attached as **Exhibits "1600.1"** through **"1600.6"** to the accompanying Declaration of James A. Lowe ("Lowe Decl.").

[2] If Vuitton prevails at trial it can elect to receive actual damages or an award of statutory damages. A

Numerous cases have found a link between the existence of actual damages and the amount of statutory damages awarded. In *Adobe Systems, Inc. v. Cain,* 2008 WL 5000194, *5 (N.D. Cal. Nov. 21, 2008), Adobe requested $50,000 per trademark infringed but failed to present evidence that it was actually harmed by the infringement. The court awarded only the statutory minimum:

> [Adobe] no where explains how the statutory damages requested in the amount of $50,000 per trademark infringed bears a plausible relationship to Cain's profits from infringement. … Statutory damages are intended to serve as a deterrent, but that does not justify such a windfall. **Adobe has presented no evidence of how much Cain profited from his infringing activity or why $50,000 is an appropriate award other than it being more reasonable than a million dollars and that it works as a deterrent**. The court agrees with the approach taken in *Microsoft* and holds that Adobe is entitled to $1,000 per trademark infringed, for a total of $5,000.

The *Cain* court relied on another recent Northern District of California case, *Microsoft Corp. v. Ricketts*, 2007 WL 1520965, *4 (N.D. Cal. May 24, 2007) In that case Microsoft requested a maximum enhanced statutory damages award ($150,000 per copyrighted work and $1,000,000 per trademark infringed). The court awarded the statutory *minimum* for willful infringements instead:

> "Here, plaintiff has presented no estimate of how much defendant profited from her infringing activity. Accordingly, the Court thinks it just to award statutory damages in the amount of $1500 per copyright infringed and $1000 per trademark infringed, for a total of $12,500. This is **twice the minimum under each statute** to reflect the finding of willfulness." (emphasis added)[3]

---

party can recover statutory damages between $750 and $30,000 for each copyrighted work infringed, which can be increased to $150,000 if the infringement was willful. 17 U.S.C.A. § 504(c)(1). The Lanham Act allows an award of statutory damages from $500 to $100,000. If the infringement is willful the amount of the award can be increased up to $1 million. 15 U.S.C. §1117(c)  See *Adobe Systems, Inc. v. Taveira,* 2009 WL 506861, *5, fn. 3 (N.D.Cal. Feb. 27, 2009) ("Effective October 13, 2008, Congress raised the range for statutory damages under the Lanham Act to $1,000.00-$200,000.00 and provided for damages of up to two million dollars per violation for willful infringement [up from $1 million ceiling]. **[But if the] infringement occur[s] before October 18, 2008, the effective date of these amendments, the Court applies the *prior* version of section 1117**.").

[3]Other analogous cases have similarly limited statutory damages where evidence of actual damages is lacking. See e.g. *Adobe Systems, Inc. v. Brooks,* 2009 WL 593343, *3-4 (N.D. Cal. March 5, 2009) (Adobe's request for $250,000 in statutory damages reduced to $50,000 because "Adobe has identified only one unit of counterfeit software Brooks sold and does not identify how $250,000 in statutory [fees] bears a plausible relationship to Brooks' profits from infringement."); See also *New Line Cinema Corp. v. Russ Berrie & Co.,* 161 F.Supp.2d 293, 303 (S.D.N.Y.2001); *RSO Records, Inc. v. Peri*, 596 F.Supp. 849, 862 (S.D.N.Y.1984) (holding that "assessed statutory damages should bear some relation to actual damages suffered."); *Warner Brothers, Inc. v. Dae Rim Trading, Inc.,* 677 F.Supp. 740, 769 (S.D.N.Y.1988) (stating that "this option [statutory damages] is not intended

The Quarterly Revenue Reports are relevant because, if Vuitton prevails at trial, they will provide a similar basis to award only minimal statutory damages in favor of Vuitton because it has suffered no damages.

### B. Vuitton Fails to Meet High Burden To Justify Exclusion of Quarterly Revenue Reports

Vuitton fails to show that exclusion is proper under Federal Rules of Evidence, Rule 403 that provides that "relevant ... evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Fed.R.Evid. 403. "Rule 403 favors admissibility, while concomitantly providing the means of keeping distracting evidence out of the trial." *United States v. Fleming,* 215 F.3d 930, 939 (9th Cir. 2000) [citing *United States v. Hankey,* 203 F.3d 1160, 1172 (9th Cir. 2000)] As the *Hankey* court observed:

> Relevant evidence is inherently prejudicial; but **it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403**. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, **the application of Rule 403 must be cautious and sparing**. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect. *Id.* at 1172 (emphasis added)

**First**, as set forth above, the Quarterly Revenue Reports are highly probative as to the amount of any statutory damages to be awarded in this case. Vuitton ignores this issue while incorrectly stating that "the evidence's only purpose is to create bias and unfair prejudice amongst the jurors." [3:12-14] The fact that statutory damages *can* be awarded in the absence of actual damages is beside the point. The probative value of the quarterly revenue reports lies not in their ability to bar recovery of statutory damages altogether, but in their ability to limit the amount of statutory damages awarded.

**Second**, the success of LVMH and the Louis Vuitton brand is no secret. Vuitton believes it will be prejudiced because the jurors will be less likely to award damages against defendants if they

---

to provide the plaintiff with a windfall recovery.").

1    know how successful Vuitton and LVMH have been. [3:14-27]  Vuitton ignores the fact that (1) the
2    reports were prepared and released to the public by LVMH itself, and (2) Vuitton spends millions
3    advertising and marketing itself to consumers as an exclusive luxury brand so that the public will see
4    it as extremely successful. It is unlikely that any juror will not already know that Vuitton and its
5    parent company are much larger and more successful than the defendants.  Vuitton cannot pretend
6    poverty for this trial.

7    **Third**, Vuitton's purported concern that if the reports are admitted the jurors will be less
8    likely to award "the necessary damages" ignores the fact that the jurors are *allowed* to consider
9    quarterly  reports in determining the amount of statutory damages (because they are probative of
10   actual damages). [3:14-27] Excluding the reports on this basis would be tantamount to excluding a
11   murder weapon at a homicide trial because it might prejudice the defendant by making the jury more
12   likely to convict him.

13   **Fourth**, the reports are not "an assessment of Plaintiff's parent company's financial
14   situation," so there is no basis for Vuitton's statement that the reports will "confuse and mislead the
15   jury" as Vuitton claims. [3:9-10]  The reports do not generally described LVMH's businesses.  The
16   portion of the reports that defendants rely upon make *specific* statements about the Louis Vuitton
17   brand's revenues during the particular time-periods that are relevant to this case.   [**Exhibits
18   "1600.1"** to **"1600.6"** to Lowe Decl.]

19   For example, the report for third quarter 2008 states: "Excellent performance of Louis
20   Vuitton in Europe, US and Asia."  The report for first quarter 2009 boasts: "Louis Vuitton: double-
21   digit revenue growth" and notes the "strong performance of Louis Vuitton."  The jury will not be
22   confused or mislead, especially when it is explained why the reports are probative – to show Vuitton
23   has not suffered any actual damages in order to justify a minimum award of statutory damages.

24   **C.   The Quarterly Revenue Reports Were Disclosed In a Timely Manner Pursuant
            to Fed.R.Civ.P. Rule 26(e)**
25

26   The Quarterly Revenue Reports were disclosed in a timely manner pursuant to Rule 26(e).
27   Fed.R.Civ.P. Rule 26(e) lets a party supplement its document production "in a timely manner if the
28   party learns in some material respect the disclosure or response is incomplete or incorrect. …" The

1  Quarterly Revenue Reports were disclosed to Vuitton by e-mail on July 24, 2009 [Lowe Decl. ¶ 11]
2  Disclosure occurred immediately after defendants discovered the reports. [Lowe Decl. ¶ 11] The
3  reports were disclosed in a timely manner because defendants were unaware of them until a few days
4  prior to their disclosure. [Lowe Decl. ¶ 11] Of course, Vuitton created and was always aware of the
5  reports.

**D.  The Court's July 9, 2009 Order Re: *Motions In Limine* Rejects Vuitton's Argument That Untimely Filed Trial Exhibits Are Excluded Under Rule 37(c) In This Case**

The Court has already rejected Vuitton's argument that the Quarterly Revenue Reports should be excluded under Fed.R.Civ.P. Rule 37(c). On July 6, 2009, defendants filed their Motion in Limine #14 to exclude untimely trial exhibits created or produced by Vuitton after April 28, 2008, the discovery cut-off date set by the Court. [Docket No. 180] On July 9, 2009 the Court denied Motion in Limine #14 finding that documents should not be excluded because they "are supplement productions pursuant to Fed.R.Civ.P. 26(e) and because this case involves claims of ongoing infringement." [Docket No. 183]

Like the Vuitton exhibits at issue in Motion in Limine #14, most of the quarterly reports were not issued until *after* the April 28, 2008 discovery cut-off. The reports therefore relate to Vuitton's claims of ongoing infringement at additional websites. Since Vuitton's exhibits relating to ongoing infringement were not excluded pursuant to Rule 37, it is appropriate that defendants' exhibits should likewise not be excluded.

**III.  CONCLUSION**

For the foregoing reasons, defendants request that the Court deny plaintiff Louis Vuitton Malletier's Motion in Limine #1 to bar admission of Quarterly Revenue Reports into evidence at trial.

///
///
///

1   In the event the Court is inclined to grant Vuitton's motion in limine pursuant to Rule 37, the Defendants respectfully request that the Court reconsider its denial of Defendants' Motion in Limine #14 to exclude Vuitton's trial exhibits on the same basis.

Dated: August 12, 2009

**GAUNTLETT & ASSOCIATES**

By: /s/James A. Lowe
    David A. Gauntlett
    James A. Lowe
    Brian S. Edwards
    Christopher Lai

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.,
and Steve Chen