**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Brian S. Edwards (SBN 166258)
Christopher Lai (SBN 249425)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone:   (949) 553-1010
Facsimile:   (949) 553-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com
bse@gauntlettlaw.com

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.
and Steve Chen

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A., | Case No.: C 07-3952 JW |
| Plaintiff, | Hon. James Ware |
| vs. | **DEFENDANTS' RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING: CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM** |
| AKANOC SOLUTIONS, INC., et al., | [Fed. R. Civ. P. 50(a)] |
| Defendants. | Trial Date: August 18, 2009<br>Time: 9:00 a.m.<br>Dept.: Courtroom 8, 4th Floor |

164507.2-10562-002-8/20/2009

**DEFENDANTS' FRCP 50(a) MOTION
RE: PLAINTIFF'S CONTRIBUTORY
COPYRIGHT INFRINGEMENT CLAIM
– C 07-3952 JW**

# TABLE OF CONTENTS

Page

I. VUITTON FAILED TO PRESENT EVIDENCE TO SATISFY ELEMENTS OF ITS CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM ................................. 1

    A. Judgment As a Matter of Law Is Appropriate Under FRCP 50(a) ........................ 1

    B. Vuitton Has Not Presented Evidence to Prove Its Contributory Copyright Infringement Claim .......................................................................................... 1

        1. Element 1 – No Proof of Direct Infringement ................................................... 2

            a. The Copyright Act Does Not Apply Because the Alleged Direct Infringement Did Not Occur Entirely Within the United States ................................................................................ 2

            b. Jurisdiction Over Alleged Direct Infringers Is Lacking .................. 3

            c. The Copyright Act Does Not Apply Because Direct Infringement Occurred Overseas Not On Servers ........................... 5

                (1) ISPs Store Unintelligible Computer Code on Their Servers, They Do Not Display "Copies" of Works ............... 5

                (2) A Computer User Viewing Content On His or Her Computer Screen Is Not Liable for Copyright Infringement ........................................................................ 6

        2. Element 2 - No Evidence Defendants Had Knowledge of Specific Infringing Conduct at Any Website ............................................................... 8

        3. Element 3 - No Evidence Defendants Induced, Caused or Materially Contributed to Infringement at Websites ................................... 9

            a. No Evidence of Inducement ................................................................ 9

            b. No Evidence of Material Contribution .............................................. 9

            c. Evidence of Generalized Knowledge of Infringement Insufficient to Impose Liability ........................................................ 10

II. RECOVERY OF DAMAGES IS BARRED AND INJUNCTIVE RELIEF LIMITED BECAUSE ISP DEFENDANTS QUALIFY FOR SAFE HARBOR PROVISIONS OF DMCA ............................................................................................. 10

III. CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.,*
   239 F.3d 1004 (9th Cir. 2001) ............................................................................... 1, 2, 9

*Ballard v. Savage,*
   65 F.3d 1495 (9th Cir. 1995) ........................................................................................ 4

*Consumers Union of United States, Inc. v. General Signal Corp.,*
   724 F.2d 1044 (2d Cir. 1983), *cert. denied*, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45
   (1984) ........................................................................................................................... 8

*El-Hakem v. BJY Inc.,*
   415 F.3d 1068 (9th Cir. 2005) ...................................................................................... 1

*Ellison v. Robertson,*
   357 F.3d 1072 (9th Cir. 2004) ................................................................................. 1, 2

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
   76 F.3d 259 (9th Cir. 1996) ..................................................................................... 1, 9

*Fromberg, Inc. v. Thornhill,*
   315 F.2d 407 (5th Cir. 1963) ........................................................................................ 9

*Gator.Com Corp. v. L.L. Bean, Inc.,*
   341 F.3d 1072 (9th Cir. 2003) ...................................................................................... 3

*Golden v. Winjohn Taxi Corp.,*
   311 F.3d 513 (2d Cir. 2002) ......................................................................................... 1

*Hanson v. Denckla,*
   357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) .................................................. 3

*Harper & Row Publishers v. Nation Enterprises,*
   471 U.S. 539, 105 S.Ct. 2218 (1985) ........................................................................... 7

*Haworth Inc. v. Herman Miller Inc.,*
   37 U.S.P.Q.2d 1080, 1994 WL 875931 (W.D. Mich. 1994) ....................................... 9

*Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.*
   780 F. Supp. 1283 (N.D. Cal. 1991) ................................................................... 6, 7, 8

*Los Angeles News Service v. Reuters Television Int'l (USA) Ltd.,*
   340 F.3d 926 (9th Cir. 2003) ........................................................................................ 2

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.,*
   380 F.3d 1154 (9th Cir. 2004) ...................................................................................... 1

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
   545 U.S. 913, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005) ......................................... 9, 10

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    487 F.3d 701 (9th Cir. 2007) ................................................................................... 5, 6

*Perfect 10, Inc. v. Visa Int'l Service Association*,
    494 F.3d 788 (9th Cir. 2007) ....................................................................................... 10

*Ricoh Co., Ltd, v. Asustek Computer, Inc.*
    481 F. Supp. 2d 954 (W.D. Wis. 2007) ........................................................................ 4

*Rio Properties, Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ...................................................................................... 3

*Santos v. Gates*,
    287 F.3d 846 (9th Cir. 2002) ........................................................................................ 1

*Sony Corp. v. Universal City Studios, Inc.*,
    464 U.S. 417, 104 S.Ct. 774 (1984) ........................................................................ 7, 8

*Subafilms, Ltd. v. MGM-Pathe Communications Co.*,
    24 F.3d 1088 (9th Cir. 1994) ................................................................................... 2, 3

*Tiffany, Inc. v. Ebay, Inc.*,
    576 F. Supp. 2d 463 (S.D.N.Y. 2008) ......................................................................... 8

*Viacom Int'l Inc. v. Youtube Inc.*,
    253 F.R.D. 256 (S.D.N.Y. 2008) ................................................................................ 11

*Water Technologies Corp. v. Calco, Ltd.*,
    850 F.2d 660 (Fed. Cir. 1988) ..................................................................................... 9

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ................................................. 4

**FEDERAL RULES AND STATUTES**

17 U.S.C. § 101 ................................................................................................................ 5

17 U.S.C. § 106 ............................................................................................................ 2, 5

17 U.S.C. § 106(5) ........................................................................................................... 5

17 U.S.C. § 107(1) ....................................................................................................... 6, 7

17 U.S.C. § 107(1)-(4) ..................................................................................................... 6

17 U.S.C. § 512(c)(2): ................................................................................................... 11

17 U.S.C. § 512(c)(3)(A) ......................................................................................... 11, 12

FED. R. CIV. P. 50(a) .............................................................................................. 1, 2, 12

FED. R. CIV. P. 50(a)(1) ................................................................................................... 1

## I. VUITTON FAILED TO PRESENT EVIDENCE TO SATISFY ELEMENTS OF ITS CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM

### A. Judgment As a Matter of Law Is Appropriate Under FRCP 50(a)

Any time before the case is submitted to the jury, a party can move pursuant to Fed. R. Civ. P. 50(a) for judgment as a matter of law as to the entire case, or on particular claims or issues. *Golden v. Winjohn Taxi Corp.*, 311 F.3d 513, 516 (2d Cir. 2002).

Rule 50(a)(1) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

"Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Santos v. Gates,* 287 F.3d 846, 851 (9th Cir. 2002). In other words, a motion for a judgment as a matter of law is properly granted if "no reasonable juror could find in the non-moving party's favor." *El-Hakem v. BJY Inc.,* 415 F.3d 1068, 1072 (9th Cir. 2005). The Ninth Circuit will affirm this Court's granting of a motion for judgment as a matter of law as long as "no reasonable inferences could support a verdict for the plaintiff." *Santos v. Gates,* 287 F.3d at 851.

### B. Vuitton Has Not Presented Evidence to Prove Its Contributory Copyright Infringement Claim

The elements of Vuitton's contributory copyright infringement claims are (1) direct infringement by a primary infringer,[1] (2) knowledge of the direct infringement, and (3) inducing, causing or materially contributing to the direct infringement. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.,* 380 F.3d 1154, 1160 (9th Cir. 2004); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir. 1996) (" '[O]ne

---

[1] *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party. *Religious Tech. Ctr. v. Netcom On-Line Communication Servs., Inc.*, 907 F.Supp. 1361, 1371 (N.D.Cal.1995) ('[T]here can be no contributory infringement by a defendant without direct infringement by another.').").

1  who, with knowledge of the infringing activity, induces, causes or materially contributes to the
2  infringing conduct of another, may be held liable as a "contributory" infringer.' ").

### 1. Element 1 – No Proof of Direct Infringement

Direct copyright infringement requires proof that (1) Vuitton owned the allegedly infringed copyright and (2) a third party violated an exclusive right granted to copyright holders under 17 U.S.C. § 106. *Ellison v. Robertson,* 357 F.3d at 1076; *Napster, Inc.,* 239 F.3d at 1013.

Although Vuitton's ownership of copyrights is not contested, Vuitton cannot prove violation of any Section 106 right. Entry of judgment as a matter of law pursuant to Rule 50(a) is appropriate for the following reasons.

### a. The Copyright Act Does Not Apply Because the Alleged Direct Infringement Did Not Occur Entirely Within the United States

There can be no violation of any Section 106 right because the alleged *direct* infringement did not occur entirely within the United States. *Subafilms, Ltd. v. MGM-Pathe Communications Co.,* 24 F.3d 1088, 1094 (9th Cir. 1994) ("**The Copyright laws do not apply extraterritorially**, so each of the rights conferred under the five section 106 categories must be read as extending 'no farther than the [United States'] borders.' " (emphasis added)). An infringing act must occur and be completed entirely within the United States. *Los Angeles News Service v. Reuters Television Int'l (USA) Ltd.,* 340 F.3d 926, 928 (9th Cir. 2003) ("[A]lthough the district court was correct to hold that **the Copyright Act does not apply extraterritorially**, an exception may apply where an act of infringement is **completed *entirely within* the United States** and that such infringing act enabled further exploitation abroad." (emphasis added)).

The only evidence presented at trial shows that any alleged infringement of Vuitton's work was completed entirely *outside* the United States. Vuitton offers allegedly counterfeit bags, belts, etc. that Vuitton purchased from China. The orders were made by e-mail and payment was sent by Vuitton through a money transfer agent, e.g., Western Union, to addresses in China. Vuitton then requested and authorized the Chinese sellers ship the merchandise to them in the United States, presumably to create evidence for this lawsuit. But the alleged infringement and counterfeiting was entirely completed in China and then shipped to the United States with the express authorization of

1 Vuitton, the copyright owner. This evidence of copying in China was completed entirely outside the
2 U.S.

### b. Jurisdiction Over Alleged Direct Infringers Is Lacking

Vuitton also cannot prove a direct infringement cognizable under the Copyright Act because personal jurisdiction over the direct infringers does not exist. Because there is no direct infringement, the Defendants cannot be held liable for contributing to that infringement. *Subafilms, Ltd,* 24 F.3d at 1092 (" 'There can, by definition, be no contributory liability if that conduct which is aided by the putative contributory infringer is not itself infringing.' ").

Personal jurisdiction over an Internet company (such as the unidentified operators of accused websites) is only appropriate if (1) business contacts with the forum state are substantial and continuous or systematic [*Gator.Com Corp. v. L.L. Bean, Inc.,* 341 F.3d 1072, 1077 (9th Cir. 2003)] or (2) the Internet company has purposefully availed itself of the privileges of conducting activities in the forum, the claim arises out of or results from the defendant's forum-related activities, and the exercise of jurisdiction is reasonable. [*Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002), citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)].

Vuitton presented no evidence of "substantial" or "continuous and systematic" contacts with California or the U.S. The only evidence of effects in the United States are a few items Vuitton itself purchased from different sources and had shipped here in an attempt to create jurisdiction. These effects are not substantial, and were created by Vuitton itself, not the direct infringers. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

Furthermore, Vuitton has not and cannot identify *anyone* with whom it did business in purchasing any products. Vuitton admits that the Chinese sellers probably used false names and addresses. There is no way to even tie the purchases (let alone multiple purchases) to any website. Instead, the Vuitton investigator in Texas sent merchandise requests to a variety of e-mail addresses, not necessarily connected with any websites, sent payment to a second person, and received the

1 merchandise from a third person.

2 There are no "substantial" and certainly no "continuous and systematic" contacts with California or the U.S. by anyone according to Vuitton's evidence. Vuitton's argument apparently assumes that all Chinese counterfeiters are somehow connected. But there is no shred of evidence to support that speculation. In truth, Vuitton has no idea who they have dealt with and no evidence to support U.S. jurisdiction over these myriad counterfeiters.

There is also no evidence that any direct infringers purposefully availed themselves of the privileges of conducting business in California or the U.S. It is undisputed that all of the accused websites were operated from inside China. The accused sites could be accessed from the entire world by anyone having access to the Internet – California and/or the United States were not specifically targeted. Indeed the Texas investigator made the offer to buy. Purchases were set up via email from outside of California, and completed using Western Union money transfer. The sales took place entirely outside California, with Vuitton ordering the products from France or Texas and then requesting that they be shipped into California.[2]

Vuitton's claims are also not related to, and did not arise "but for," any contacts with California or the U.S. *Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir. 1995) (relying on a "but for" test to determine whether a particular claim arises out of or is related to forum-related activities). Vuitton could have just as easily had the products shipped to France, some other country, or not shipped at all.

/ / /

/ / /

---

[2] Vuitton cannot create jurisdiction by having products shipped to California. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (The mere " 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.' "); *Ricoh Co., Ltd, v. Asustek Computer, Inc.* 481 F. Supp. 2d 954, 959 (W.D. Wis. 2007) ("It is undisputed that plaintiff purchased defendant's products for the sole purpose of providing a basis for personal jurisdiction. … [C]ommon sense requires a conclusion that such a forced and artificial exercise cannot provide the basis for personal jurisdiction. Economic harm to plaintiffs does not 'aris[e] out of' defendants' actions when no sale would have been made but for plaintiff's choice to make a purchase. Alternatively, a strong argument exists that a self inflicted wound is not an 'injury' at all within the meaning of the statute.").

164507.2-10562-002-8/20/2009    4    **DEFENDANTS' FRCP 50(a) MOTION RE: PLAINTIFF'S CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM – C 07-3952 JW**

### c. The Copyright Act Does Not Apply Because Direct Infringement Occurred Overseas Not On Servers

#### (1) ISPs Store Unintelligible Computer Code on Their Servers, They Do Not Display "Copies" of Works

Even if Vuitton had evidence that any direct infringer posted content onto Defendants' servers (Vuitton has not known this) that would not change the fact that the alleged direct copyright infringement in this case occurred and has completed outside the U.S.; not on Defendants' servers.

Direct infringement requires proof that "the alleged [direct] infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Perfect 10, Inc. v. Amazon.com, Inc.,* 487 F.3d 701, 715 (9th Cir. 2007). Section 106(5) states that a copyright owner has the exclusive right "to display the copyrighted work publicly." The Copyright Act explains that "display" for purpose of the Section 106 display right means "to ***show*** a ***copy*** of it, either directly or by means of a film, slide, television image, or any other device or process…." 17 U.S.C. § 101 (emphasis added). An ISP cannot display a "copy" of a work that is stored on its servers because it does not store a "copy" of anything. Defendants' expert testified that MSG and Akanoc do not store photographic images on their servers; they store lines of unintelligible computer code (e.g. 101110000110001). This code is not a "copy" for purposes of the Copyright Act because it is not "sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101.

The testimony of Defendants' expert is that a web browser located on a *computer user's computer* – not the ISPs server, creates an image by using a program on the user's machine to translate the computer code into something that can be perceived. Until that occurs, no "copy" has been made, no display has taken place, and no violation of any section 106 rights has occurred.

In *Perfect 10, Inc.*, 487 F.3d at 716 the court found that Google did not display a "copy" of a work by providing HTML instructions (lines of text, not photographic images) that did not cause infringing images to appear. For infringing images to appear, a computer user's web browser had to interact with the HTML instructions to locate an image:

> **Google does not**, however, **display a copy** of full size infringing photographic images **for purposes of the Copyright Act** … **Because Google's computers do not store the photographic images**, **Google does not have a copy** of the images for

purposes of the Copyright Act…. Instead of communicating a copy of the image, Google provides HTML instructions that direct a user's browser to a website publisher's computer that stores the full-size photographic image. **Providing these HTML instructions is not equivalent to showing a copy. First, the HTML instructions are lines of text, not a photographic image. Second, HTML instructions do not themselves cause infringing images to appear on the user's computer screen.** The HTML merely gives the address of the image to the user's browser. **The browser then interacts with the computer that stores the infringing image. It is this interaction that causes an infringing image to appear on the user's computer screen.**

*Id.* at 717 (emphasis added).

Like Google's HTML instructions, the computer code on defendants' servers is not a copy of anything. It is a series of zeroes and ones (e.g. 1110010101000); not photographic images. Similar to Google, the computer code on Defendants' servers does not itself cause an infringing image to appear – a copy of an infringing image cannot appear **without the assistance of the computer user's web browser**.

### (2) A Computer User Viewing Content On His or Her Computer Screen Is Not Liable for Copyright Infringement

Computer users in the United States who may view a picture created in China are not direct infringers. The fair use defense shields persons who access infringing images on Internet servers from liability as direct copyright infringers. Even if Vuitton had presented evidence that computer users in the U.S. accessed accused websites (it did not), that would still not establish direct infringement within the U.S. borders.

"Fair use is a privilege against a direct infringement claim [citing 17 U.S.C. § 107] and is a privilege held in the first instance by the alleged direct infringer." *Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.* 780 F. Supp. 1283, 1292 (N.D. Cal. 1991). Courts consider four non-exclusive factors in assessing fair use: (1) the purpose and character of the use including whether the use is of a commercial nature (2) the nature of the copyrighted work (3) the amount of and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107(1)-(4).

All four of these factors support a finding of fair use in this case. No one would suggest that someone viewing pictures from the Internet is infringing a copyright.

*Factor one: purpose and character of the use:* a presumption of fair use exists if the work is being used in a non-commercial manner and not to make a profit. *Lewis Galoob Toys*, 780 F. Supp. at 1293. The presumption of fair use applies even if only one of several potential uses is non-commercial. *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 449, 104 S.Ct. 774, 792 (1984) ("The … presumption [of fair use] is appropriate here, however, because … time-shifting for private home use [one of several uses of the VCR] must be characterized as non-commercial, non-profit activity.").

The section 107(1) presumption of fair use applies in the instant case because a person viewing an image of a Vuitton copyrighted work on the Internet is doing so for personal enjoyment, not for a commercial purpose or to make a profit. *Lewis Galoob,* 780 F. Supp. at 1293 ("Likewise, a family's use of a Game Genie for private home enjoyment must be characterized as a non-commercial, nonprofit activity.").

*Factor two: the nature of the copyrighted work:* If a work has been published by its owner, that supports a finding of fair use. *Id.* ("Nintendo has already published millions of copies of its games … The works' published nature supports the fairness of use."); *see Harper & Row Publishers v. Nation Enterprises,* 471 U.S. 539, 560, 105 S.Ct. 2218, 2230 (1985) ("The fact that a work is unpublished is a critical element of its 'nature' " suggesting that prepublication exploitation of the work would be unfair.). Vuitton has, of course, published many times all of the copyrighted works at issue in this case.

*Factor three: the amount of and substantiality of the portion used in relation to the copyrighted work as a whole:* In *Sony*, because the VCR owner "had been invited to witness [the television program] in its entirety free of charge, the fact that the entire work is reproduced … does not have its ordinary effect of militating against a finding of fair use." *Sony*, 464 U.S. at 449, 104 S.Ct. at 792. Likewise, Vuitton invites computer users to view numerous images of its copyrighted works at authorized websites such as *www.LuisVuitton.com*. Because Vuitton allows computer users to view the works free of charge, even if the same works are viewed at accused websites, that does not militate against a finding of fair use.

*Factor four: the effect of the use upon the potential market for or value of the copyrighted*

1 *work:* This factor also supports a finding of fair use. To defeat fair use under this factor "requires proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work." *Sony,* 464 U.S. at 451, 104 S.Ct. at 793. Vuitton has not met this burden. There is no evidence that allowing individuals to view copies of Vuitton's works at websites would be harmful to Vuitton even if the practice became widespread. Despite the availability of images of Vuitton's copyrighted works at numerous websites on the Internet, Vuitton has experienced "double digit" revenue growth from 2006 to 2009; even during a recession. [See Def. Exhibit 1600]. *Lewis Galoob*, 780 F. Supp. at 1294 ("A fair use will frequently suppress demand for a work, but as long as it does so without supplanting demand, the indirect detrimental effect on the market is not the subject of copyright protection.").

Any claim Vuitton might have that it has or will suffer harm because the value or "goodwill" associated with its works suffer when they are viewed at accused websites should be rejected:

> The Copyright Act was not designed to prevent such indirect negative effects of copying. The fourth factor is aimed at the copier who attempts to usurp the demand for the original work. **The copyright laws are intended to prevent copiers from taking the owner's intellectual property,** and are not aimed at recompensing damages which may flow indirectly from copying.

*Consumers Union of United States, Inc. v. General Signal Corp.,* 724 F.2d 1044, 1050 (2d Cir. 1983), *cert. denied*, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984) (emphasis added; citations omitted).

As demonstrated by application of the foregoing four-part test, computer users do not directly infringe Vuitton's copyrighted works when they view images at accused websites. The Copyright Act does not apply because the direct infringement in this case, if any, did not occur entirely within the boundaries of the United States. It occurred and was completed in China.

### 2. Element 2 - No Evidence Defendants Had Knowledge of Specific Infringing Conduct at Any Website

Vuitton failed to present evidence that any defendant was aware of specific *infringing conduct* at specific websites located on their servers. *Tiffany, Inc. v. Ebay, Inc.*, 576 F. Supp. 2d 463, 508, 510 n.37 (S.D.N.Y. 2008) ("Under copyright law, generalized knowledge that copyright infringement may take place in an Internet venue is insufficient to impose contributory liability."

1  [citing *Napster, Inc.,* 239 F.3d at 1027 ("The mere existence of the Napster system, absent actual
2  notice and Napster's demonstrated failure to remove the offending material, is insufficient to impose
3  contributory liability."); *Hendrickson v. eBay, Inc.,* 165 F. Supp. 2d 1082, 1088-90 (C.D. Cal. 2001)
4  (holding that generalized notice of copyright infringements was insufficient to establish knowledge
5  for the purpose of contributory liability)]). No evidence was presented that websites listed in
6  Vuitton's notice emails or other correspondence ever displayed infringing content with the specific
7  knowledge of any defendant. The defendants only learned after the fact.

8  The fact that Vuitton purchased products from an unidentified third party (who may or may
9  not have been the website operator) and the packages indicated Chinese return addresses does not
10 prove any defendant was aware of infringement at any website.

### 3. Element 3 - No Evidence Defendants Induced, Caused or Materially Contributed to Infringement at Websites

#### a. No Evidence of Inducement

Vuitton has no evidence that defendants induced direct infringement. No evidence was presented that any of the defendants took " 'active steps ... to encourage direct infringement,' " *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005), or "actively strive[d] to provide the environment and the market for counterfeit recording sales to thrive." *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir. 1996). Other courts define the inducement standard as "actively and knowingly aid[ing] and abet[ting] another's direct infringement." *Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 (Fed. Cir. 1988). *See also Fromberg, Inc. v. Thornhill,* 315 F.2d 407, 412-13 (5th Cir. 1963) (demonstrations by sales staff of infringing uses supported inducement liability); *Haworth Inc. v. Herman Miller Inc.,* 37 U.S.P.Q.2d 1080, 1090, 1994 WL 875931 (W.D. Mich. 1994) (evidence that defendant "demonstrate[d] and recommend[ed] infringing configurations" of its product supported inducement liability).

#### b. No Evidence of Material Contribution

No evidence was presented that defendants materially contributed to direct infringement. Defendants were not "engaged in a mutual enterprise of infringement" with direct infringers.

*Perfect 10, Inc. v. Visa Int'l Service Association,* 494 F.3d 788, 798 (9th Cir. 2007). Akanoc's or MSG's servers were not "engineered, disseminated, and promoted explicitly for the purpose of facilitating piracy." *Id.* at 801. Their systems were not "engineered for infringement" such that the "sole purpose" of their business was to "provide a forum for easy copyright infringement." *Id.* at 799 n.10 ("Perfect 10 does not contend that Defendants' payment systems were engineered for infringement in this way, and we decline to radically expand *Napster's* cursory treatment of "material contribution" to cover a credit card payment system that was not so designed."). *Id.* The defendants' servers are content-neutral communication devices to facilitate broad Internet use.

### c. Evidence of Generalized Knowledge of Infringement Insufficient to Impose Liability

Vuitton presented evidence that MSG and Akanoc, like every other Internet Service Provider, are generally aware that infringement can occur using their servers. But this type of general knowledge is not sufficient, as a matter of law, to impose liability. *Grokster, Ltd.,* 545 U.S. at 936-37 ("[J]ust as *Sony* did not find intentional inducement despite the knowledge of the VCR manufacturer that its device could be used to infringe, **mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability.** Nor would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves. **The inducement rule, instead, premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise.**" (emphasis added; citations omitted)).

**II.   RECOVERY OF DAMAGES IS BARRED AND INJUNCTIVE RELIEF LIMITED BECAUSE ISP DEFENDANTS QUALIFY FOR SAFE HARBOR PROVISIONS OF DMCA**

The evidence at trial established that on November 26, 2007 MSG's and Akanoc's Interim Designations of Agent to Receive Notification of Claimed Infringement, were received by the U.S. Copyright Office. At that time MSG and Akanoc became eligible to receive the protections afforded

by the DMCA.[3] The protections include immunity from any copyright damage award and limitations on injunctions.[4]

Vuitton can block application of the 'safe harbor' *only* if it complies with section 512(c)(3)(A) of the DMCA (17 U.S.C. § 512(c)(3)(A)), entitled "Elements of Notification," provide the following specific requirements for proper notification of possible copyright infringements to ISPs:

> Elements of notification
>
> (A) To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:
>
> (i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
>
> (ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.
>
> (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be

---

[3] *See* 17 U.S.C. § 512(c)(2): **Designated agent.** – The limitations on liability established in this subsection apply to a service provider only if the service provider has designated an agent to receive notifications of claimed infringement described in paragraph (3), by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office, substantially the following information:

> (A) the name, address, phone number, and electronic mail address of the agent.
>
> (B) other contact information which the Register of Copyrights may deem appropriate.

The Register of Copyrights shall maintain a current directory of agents available to the public for inspection, including through the Internet, in both electronic and hard copy formats, and may require payment of a fee by service providers to cover the costs of maintaining the directory.

[4] *Viacom Int'l Inc. v. Youtube Inc.,* 253 F.R.D. 256 (S.D.N.Y. 2008) ("Among other defenses, YouTube and Google claim the protection afforded by the Digital Millennium Copyright Act of 1998 ('DMCA') (17 U.S.C. §§ 512(c)-(d), (i)-(j)), which among other things limits the terms of injunctions, and bars copyright-damage awards, against an online service provider who: (1) performs a qualified storage or search function for internet users; (2) lacks actual or imputed knowledge of the infringing activity; (3) receives no financial benefit directly from such activity in a case where he has the right and ability to control it; (4) acts promptly to remove or disable access to the material when his designated agent is notified that it is infringing; (5) adopts, reasonably implements and publicizes a policy of terminating repeat infringers; and (6) accommodates and does not interfere with standard technical measures used by copyright owners to identify or protect copyrighted works.").

disabled, and information reasonably sufficient to permit the service provider to locate the material.

(iv)   Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v)   A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi)   A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

The evidence at trial established that the safe harbor applies because Vuitton failed to comply with the notice requirements set forth at clauses (ii), (iii), (v) and (vi) of 17 U.S.C. § 512(c)(3)(A). Other than the November 26, 2007 notice, **all of Vuitton's post-complaint notices were sent at a time after MSG and Akanoc had designated an agent and Vuitton was required to comply with the notification requirements of the DMCA** as described above. Vuitton failed to comply.

## III.   CONCLUSION

As set forth above, Vuitton failed to present evidence sufficient to permit a legally correct jury verdict in its favor on its contributory copyright infringement claim. Defendants respectfully request judgment be entered in their favor as a matter of law on that claim pursuant to Fed. R. Civ. P. 50(a).

Dated:  August 20, 2009                **GAUNTLETT & ASSOCIATES**

By:   s/James A. Lowe
David A. Gauntlett
James A. Lowe
Brian S. Edwards
Christopher Lai

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.
and Steve Chen