**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Brian S. Edwards (SBN 166258)
Christopher Lai (SBN 249425)
18400 Von Karman, Suite 300
Irvine, California  92612
Telephone:      (949) 553-1010
Facsimile:       (949) 553-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com
bse@gauntlettlaw.com

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.
and Steve Chen

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A., | Case No.:  C 07-3952 JW |
| | Hon. James Ware |
| Plaintiff, | **DEFENDANTS' RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING: CONTRIBUTORY TRADEMARK INFRINGEMENT CLAIM** |
| vs. | |
| AKANOC SOLUTIONS, INC., et al., | **[Fed. R. Civ. P. 50(a)]** |
| Defendants. | Trial Date:    August 18, 2009<br>Time:            9:00 a.m.<br>Dept.:           Courtroom 8, 4th Floor |

# TABLE OF CONTENTS

Page

I.    VUITTON FAILED TO PRESENT EVIDENCE TO SATISFY ELEMENTS OF ITS CONTRIBUTORY TRADEMARK INFRINGEMENT CLAIM .............................. 1

     A.    Judgment As a Matter of Law Is Appropriate Under FRCP 50(a) ....................... 1

     B.    Vuitton Has Not Presented Evidence to Prove the Elements of Its Claim ............. 1

     C.    Element 1 - No Evidence of Direct Trademark Infringement ............................... 2

         1.    No Evidence of Direct Infringers' "Use in Commerce" ................................ 2

         2.    The Lanham Act Does Not Apply to Direct Infringement By Foreign Nationals Outside the United States .................................................. 5

         3.    Jurisdiction Over Alleged Direct Infringers Is Lacking .............................. 7

         4.    No Likelihood of Confusion ................................................................. 9

     D.    Element 2 - No Evidence Defendants Induced or Directly Controlled and Monitored Infringement At Specific Websites .......................................................... 10

         1.    Where Direct Infringer Sells a Product ................................................ 10

         2.    Where Direct Infringer Sells a Service ................................................ 10

     E.    No Evidence of Direct Control and Monitoring ....................................... 11

     F.    Willful Blindness Does Not Apply in Absence of Direct Control and Monitoring .................................................................................................. 12

     G.    Willful Blindness Not Proven At Trial ................................................... 13

II.    CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*,
   414 F.3d 400 (2d Cir. 2005) .................................................................................................... 2

*Acme Valve & Fittings Co. v. Wayne*,
   386 F.Supp. 1162 (S.D. Tex. 1974) ......................................................................................... 3

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) ................................................................................................... 9

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ............................................................................................... 10

*Custom Mfg. and Engineering, Inc. v. Midway Services*,
   508 F.3d 641 (11th Cir. 2007) ............................................................................................ 4, 9

*DaimlerChrysler AG v. Bloom*,
   315 F.3d 932 (8th Cir. 2003) ................................................................................................... 5

*El-Hakem v. BJY Inc.*,
   415 F.3d 1068 (9th Cir. 2005) ................................................................................................. 1

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002) ........................................................................................... 9, 10

*Fare Deals Ltd. v. World Choice Travel.Com, Inc.*,
   180 F.Supp.2d 678 (D. Md. 2001) ................................................................................... 11, 12

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996) ................................................................................................... 14

*Gator.Com Corp. v. L.L. Bean, Inc.*,
   341 F.3d 1072 (9th Cir. 2003) ................................................................................................. 7

*Golden v. Winjohn Taxi Corp.*,
   311 F.3d 513 (2d Cir. 2002) .................................................................................................... 1

*Habeeba's Dance of the Arts, Ltd. v. Knoblauch*,
   430 F.Supp.2d 709 (S.D. Ohio 2006) .................................................................................... 11

*Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*,
   955 F.2d 1143 (7th Cir. 1992) ......................................................................................... 13, 14

*International Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.*,
   252 F.3d 1274 (11th Cir. 2001) ............................................................................................... 6

*Karl Storz Endoscopy-America, Inc. v. Surgical Techs., Inc.*,
   285 F.3d 848 (9th Cir. 2002) ................................................................................................... 4

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   194 F.3d 980 (9th Cir. 1999) .......................................................................................... 11, 13

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   985 F.Supp. 949 (C.D. Cal. 1997) .......................................................................................... 5

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
   591 F.Supp.2d 1098 (N.D. Cal. 2008) .................................................................................. 13

*McBee v. Delica Co., Ltd.*,
   417 F.3d 107 (1st Cir. 2005) .................................................................................................. 6

*Perfect 10, Inc. v. Visa Int'l Service Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ..................................................................................... 1, 10, 11

*Perfumebay.com Inc. v. eBay, Inc.*,
   506 F.3d 1165 (9th Cir. 2007) ............................................................................................ 2, 9

*Reebok Int'l, Ltd v. Marnatech Enterprises, Inc.*,
   970 F.2d 552 (9th Cir. 1992) .................................................................................................. 6

*Rescuecom Corp. v. Computer Troubleshooters USA, Inc.*,
   464 F.Supp.2d 1263 (N.D. Ga. 2005) .................................................................................... 3

*Ricoh Co., Ltd, v. Asustek Computer, Inc.*,
   481 F.Supp.2d 954 (W.D. Wis. 2007) ................................................................................ 8, 9

*Rio Properties, Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ................................................................................................ 7

*Santos v. Gates*,
   287 F.3d 846 (9th Cir. 2002) .................................................................................................. 1

*SB Designs v. Reebok Int'l, Ltd.*,
   338 F.Supp.2d 904 (N.D. Ill. 2004) ...................................................................................... 11

*Self-Insurance Institute of America, Inc. v. Software and Information Industry Ass'n*,
   208 F.Supp.2d 1058 (C.D. Cal. 2000) .................................................................................. 10

*Steele v. Bulova Watch Co.*,
   344 U.S. 280 (1952) ................................................................................................................ 5

*Subafilms, Ltd. v. MGM-Pathe Communications Co.*,
   24 F.3d 1088 (9th Cir. 1994) .................................................................................................. 7

*Tiffany (NJ) Inc. v. eBay, Inc.*,
   576 F.Supp.2d 463 (S.D.N.Y. 2008) .......................................................................... 2, 13, 14

*Totalplan Corp. of America v. Colborne*,
   14 F.3d 824 (2d Cir. 1994) ..................................................................................................... 6

*Universal Nutrition Corp. v. Carbolite Foods, Inc.*,
   325 F.Supp.2d 526 (D.N.J. 2004) ........................................................................................... 4

*Vanity Fair Mills v. T. Eaton Co.*,
    234 F.2d 633 (2d Cir. 1956) .............................................................................................. 6, 7

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ................................................... 8, 9

**DOCKETED**

*Starbucks Corp. v. Lundberg*,
    2004 WL 1784753 (D. Or. 2004) ............................................................................................ 5

*The Pet Stop Professional Pet Sitting Service, LLC v. The Professional Pet-Sitting Service, Inc.*,
    2007 WL 1876517 (D. Or. 2007) ............................................................................................ 4

**FEDERAL RULES AND STATUTES**

15 U.S.C. § 1114 ............................................................................................................................. 2

15 U.S.C. § 1127 ............................................................................................................................. 3

FED. R. CIV. P. 50(a) ........................................................................................................... 1, 2, 15

FED. R. CIV. P. 50(a)(1) .................................................................................................................. 1

I. **VUITTON FAILED TO PRESENT EVIDENCE TO SATISFY ELEMENTS OF ITS CONTRIBUTORY TRADEMARK INFRINGEMENT CLAIM**

   A. **Judgment As a Matter of Law Is Appropriate Under FRCP 50(a)**

Any time before the case is submitted to the jury, a party can move pursuant to Fed. R. Civ. P. 50(a) for judgment as a matter of law as to the entire case, or on particular claims or issues. *Golden v. Winjohn Taxi Corp.*, 311 F.3d 513, 516 (2d Cir. 2002).

Rule 50(a)(1) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

"Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Santos v. Gates,* 287 F.3d 846, 851 (9th Cir. 2002). In other words, a motion for a judgment as a matter of law is properly granted if "no reasonable juror could find in the non-moving party's favor." *El-Hakem v. BJY Inc.,* 415 F.3d 1068, 1072 (9th Cir. 2005). The Ninth Circuit will affirm this Court's granting of a motion for judgment as a matter of law as long as "no reasonable inferences could support a verdict for the plaintiff." *Santos v. Gates,* 287 F.3d at 851.

   B. **Vuitton Has Not Presented Evidence to Prove the Elements of Its Claim**

Contributory trademark infringement requires proof that a third party directly infringed Vuitton's trademark; and that each defendant either (1) intentionally induced the direct infringer to infringe its mark, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied.[1]

---

[1] *Perfect 10, Inc. v. Visa Int'l Service Ass'n,* 494 F.3d 788, 807 (9th Cir. 2007) ("To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied. *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 855, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). When the alleged direct infringer supplies a service rather than a product, under the second prong of this test, the court must 'consider the extent of control exercised by the defendant over the third party's means of infringement.' *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 984 (9th Cir. 1999). For liability to attach, there must be '[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.' *Id.*").

**C.      Element 1 - No Evidence of Direct Trademark Infringement**

Direct trademark infringement requires Vuitton to prove (1) ownership of a valid trademark, of a valid trademark, which requires proof of:

> (a)    a valid mark entitled to protection under the Lanham Act;
> (b)    **use** of the mark by a direct infringer **in commerce** "in connection with the sale ... or advertising of goods or services," without the plaintiff's consent.

*Tiffany (NJ) Inc. v. eBay, Inc.,* 576 F.Supp.2d 463, 495 (S.D.N.Y. 2008) (emphasis added) and (2) a likelihood of confusion about the source or sponsorship of the products at issue. *Perfumebay.com Inc. v. eBay, Inc.,* 506 F.3d 1165, 1173 (9th Cir. 2007).

Proof of direct infringement by any specific persons or entities has not been presented by Vuitton. The plaintiff has admitted that it cannot identify any particular person making or selling allegedly infringing products. Even if the Court only required Vuitton to identify a domain name as a direct infringer, Vuitton has not adequately established any trademark infringement. Rather, Vuitton's witnesses testified to seeing allegedly infringing products on a website originating in China or purchasing allegedly infringing products by sending money to China by Western Union or a similar agency in order to cause some unknown person to ship an allegedly infringing product to Texas with the authorization of Vuitton (apparently intending to create evidence of activity in the United States. But even then, Vuitton has not identified any specific trademark on any specific product seen or purchased by Vuitton's agents. There is no testimony that any particular domain has infringed any particular trademark. Vuitton has presented only generalized testimony about alleged counterfeiters in China. Entry of judgment as a matter of law pursuant to Rule 50(a) is appropriate, for the following reasons:

**1.    No Evidence of Direct Infringers' "Use in Commerce"**

Vuitton failed to prove any direct infringer's "use in commerce" of its registered marks. Section 32(1) of the Lanham Act (15 U.S.C. § 1114) prohibits the "*use in commerce* [of] any reproduction, counterfeit copy of colorable imitation of a registered mark … [if] such use is likely to cause confusion" without consent. *See 1-800 Contacts, Inc. v. WhenU.Com, Inc.,* 414 F.3d 400, 412 (2d Cir. 2005) ("Not only are 'use,' 'in commerce,' and 'likelihood of confusion' three distinct elements of a trademark infringement claim, but 'use' must be decided as a threshold matter

because, while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark."). *Rescuecom Corp. v. Computer Troubleshooters USA, Inc.,* 464 F.Supp.2d 1263, 1265 (N.D. Ga. 2005) ("Without 'use in commerce' there can be no violation of the Lanham Act.").

When the mark is used on *goods,* a "use in commerce" occurs only if the marks are affixed to goods and sold or transported in commerce. Section 45 of the Lanham Act (15 U.S.C. § 1127) provides:

> **A mark shall be deemed to be in use in commerce**:
>
> (1) **on goods when**—
>
> (A) **it is placed** in any manner **on the goods** or their containers or the displays **associated therewith** or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale,
> **and**
>
> (B) **the goods are sold or transported in commerce**, and
>
> (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the service is engaged in commerce in connection with the services. [Emphasis added.]

The use in commerce must be in the United States. But there is no evidence of that. Even if Vuitton had any evidence that trademark images are transmitted through or stored on Internet servers, such transmission or storage is not a "use in commerce." Defendants' servers are not a "use in commerce." **First**, no trademarks are stored or displayed on the servers. Defendants' servers store only incomprehensible computer code (e.g. 100111000101) – not images. This is not sufficient to satisfy the "use in commerce" requirement. *Acme Valve & Fittings Co. v. Wayne,* 386 F.Supp. 1162 (S.D. Tex. 1974) ("A trademark on goods is considered to be used in commerce when it is placed on the goods or containers in any manner and the goods are then sold or transported in commerce."). There was no evidence presented that any direct infringer affixed Vuitton's marks to anything or sold or transported them in commerce in the U.S. Any affixing of a mark on a product

1 happened outside of the United States – not on Defendants' servers.[2] The only evidence is of goods manufactured and sold in China to Vuitton's agent upon the delivery to China of cash. Then Vuitton directed and authorized the completed product to be delivered to its address in the United States. If anyone "induced" such activity, it was Vuitton itself.

**Second**, the Lanham Act does not apply because any "use" of Vuitton's marks did not occur in a way that was likely to confuse or deceive consumers. *Karl Storz Endoscopy-America, Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 853-54 (9th Cir. 2002) ("In order to prevail on its Lanham Act claims … Storz must show that Surgi-Tech 'used' Storz's trademark 'in commerce' and that the use was likely to confuse customers as to the source of the product."); *The Pet Stop Professional Pet Sitting Service, LLC v. The Professional Pet-Sitting Service, Inc.,* 2007 WL 1876517, at *2 (D. Or. 2007) ("The Lanham Act … provides remedies for the owners of rights in trademarks and trade dress against those who infringe upon the rights by 'use in commerce' in a way that is likely to confuse or deceive consumers."). Certainly Vuitton and its agents were not confused about the products offered and purchased in China. And no evidence at all was presented of any likelihood of confusion except the self-interested speculation of Vuitton's counsel. A single customer letter was produced in evidence—from a customer in Denmark, not in the U.S. – and that customer reported about what he knew to be a non-genuine product.

The storage of computer code on an Internet server is not use in commerce. No evidence was presented that any consumer accessed any computer code on any of defendants' servers in order to perceive any product bearing a Vuitton trademark. So it is entirely speculative that any such thing did or could occur. So no one was likely to be confused because there was no evidence of anyone perceiving anything connected with Defendants' servers. Even if they had been able to observe the contents of a server, consumers would not have perceived any marks (or been confused) because servers do not store images - only unintelligible computer code (e.g. 1000110011101). *See Custom*

---

[2] Shipment of goods into the United States from a foreign country is not a "use in commerce." *Universal Nutrition Corp. v. Carbolite Foods, Inc.*, 325 F.Supp.2d 526, 534 n.6 (D.N.J. 2004) ("Plaintiff erroneously states that commerce between the U.S. and a foreign country is 'use in commerce,' however the statutory definition so provides specifically in connection with the use of a mark for services, not in connection with the use of a mark on goods. [citing 15 U.S.C. § 1127].").

*Mfg. and Engineering, Inc. v. Midway Services*, 508 F.3d 641, 652 (11th Cir. 2007) ("Like the proverbial tree falling in a forest, the unauthorized use of a trademark that is never perceived by anyone cannot be said to create a likelihood of consumer confusion.").

The Lanham Act prohibits copying trademarks only if doing so is likely to cause confusion - copying a mark for its own sake is not prohibited. *Starbucks Corp. v. Lundberg*, 2004 WL 1784753, at *2 (D. Or. 2004) ("The Lanham Act prohibits parties from reproducing, counterfeiting, copying, or imitating a registered mark, **if such activity 'is likely to cause confusion....'** 15 U.S.C. § 1114(1)(a)." (emphasis added)). There is no evidence of a likelihood of confusion, no actual confusion, no surveys to indicate the likelihood of confusion. Indeed Vuitton's witnesses admitted that many of the items about which it complains are plainly labeled "replicas" that are not represented to be genuine Vuitton products.

**Third**, even if Internet servers in the United States did store images of products, the only possible "use" of Vuitton's marks would be as part of an ISP's automatic function of transmitting data regardless of its content – a "use" that does not fall under the Lanham Act because it does not entail promoting marks. *Lockheed Martin Corp. v. Network Solutions, Inc.,* 985 F.Supp. 949, 956 (C.D. Cal. 1997) ("Where the holder of a vanity telephone number promotes it in a way that causes a likelihood of confusion, the holder has engaged in an infringing use. But, where, as with NSI, the pure machine-linking function is the only use at issue, there is no trademark use and there can be no infringement."); *DaimlerChrysler AG v. Bloom,* 315 F.3d 932, 938-39 (8th Cir. 2003) (holding that defendant's use and subsequent licensing of the toll-free number 1-800-MERCEDE(S) did not constitute trademark infringement because there was no evidence that the defendant advertised or promoted the telephone number).

### 2. The Lanham Act Does Not Apply to Direct Infringement By Foreign Nationals Outside the United States

Like the Copyright Act, the Lanham Act has limited application to infringement occurring overseas. *Steele v. Bulova Watch Co.,* 344 U.S. 280, 292 (1952) ("The Lanham Act, like the Sherman Act, should be construed to apply only to acts done within the sovereignty of the United States."). Courts consider three factors, the so-called *Bulova* factors, in determining whether to

apply the Lanham Act to extraterritorial conduct:

> [U]nder *Bulova*, three factors were relevant to a determination of the extraterritorial reach of the Lanham Act: **(1) whether the defendant was a United States citizen; (2) whether the defendant's conduct had a substantial effect on United States commerce; and (3) whether there was a conflict with trademark rights established under foreign law.**

*Totalplan Corp. of America v. Colborne,* 14 F.3d 824, 830 (2d Cir. 1994) (emphasis added) [citing *Steele v. Bulova Watch Co.*]; *International Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1278 (11th Cir. 2001); (same); *Vanity Fair Mills v. T. Eaton Co.,* 234 F.2d 633, 642-43 (2d Cir. 1956) (same).

The fact that infringing images appear on Internet websites accessible in the United States does not change the extraterritorial nature of the infringement or the requirement that the *Bulova* factors be met. *McBee v. Delica Co., Ltd.,* 417 F.3d 107, 124 (1st Cir. 2005) ("The mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible; as well, given the omnipresence of Internet websites today, allowing personal jurisdiction to be premised on such a contact alone would 'eviscerate' the limits on a state's jurisdiction over out-of-state or foreign defendants.").

**The Direct Infringers Are *Not* U.S. Citizens.** Vuitton's witness has admitted that the direct infringers, whoever they may be, are operating in China and are Chinese citizens. The evidence is that all the products Vuitton purchased have shipping labels written in Chinese, were shipped from China, and list return addresses inside China.

**No Substantial Effects in the United States.** Vuitton presented no evidence that the infringing activity of the direct infringers in this case had substantial effects in the United States. Several websites (at most) shipping *a single product* from China to the United States at Vuitton's specific request is insufficient to show substantial effects.[3] *See Reebok Int'l, Ltd v. Marnatech Enterprises, Inc.,* 970 F.2d 552, 554-55 (9th Cir. 1992) (Substantial effects shown where infringer "organized and directed the manufacture of counterfeit REEBOK shoes from the United States," and

---

[3] *McBee v. Delica Co., Ltd.,* 417 F.3d 107, 120 (1st Cir. 2005) ("The [*Bulova*] substantial effects test requires that there be evidence of impacts within the United States, and these impacts must be of a sufficient character and magnitude to give the United States a reasonably strong interest in the litigation.").

1  evidence presented that infringer's "sales of counterfeit REEBOK shoes decreased the sale of
2  genuine REEBOK shoes in Mexico and the United States and directly decreased the value of
3  Reebok's consolidated holdings.").

4  The absence of one *Bulova* factor is likely determinative and absence of two is "certainly
5  fatal" to application of the Lanham Act in this case. *Vanity Fair Mills v. T. Eaton Co.,* 234 F.2d 633,
6  642-43 (2d Cir. 1956) ("[T]he rationale of the Court was so thoroughly based on the power of the
7  United States to govern 'the conduct of its own citizens upon the high seas or even in foreign
8  countries when the rights of other nations or their nationals are not infringed', that the absence of
9  one of the above [*Bulova*] factors might well be determinative and that the absence of both is
10 certainly fatal [to extraterritorial application of the Lanham Act].").

### 3. Jurisdiction Over Alleged Direct Infringers Is Lacking

12 Vuitton also cannot prove a direct infringement cognizable under the Lanham Act because
13 personal jurisdiction over the direct infringers does not exist. Because there is no direct
14 infringement, the Defendants cannot be held contributorily liable. *Subafilms, Ltd. v. MGM-Pathe
15 Communications Co.,* 24 F.3d 1088, 1092 (9th Cir. 1994) ("There can, by definition, be no
16 contributory liability if that conduct which is aided by the putative contributory infringer is not itself
17 infringing.").

18 Personal jurisdiction over an Internet company (such as the unidentified operators of accused
19 websites) is only appropriate if (1) business contacts with the forum state are substantial and
20 continuous or systematic [*Gator.Com Corp. v. L.L. Bean, Inc.,* 341 F.3d 1072 (9th Cir. 2003)], or
21 (2) the Internet company has purposefully availed itself of the privileges of conducting activities in
22 the forum, the claim arises out of or results from the defendant's forum-related activities, and the
23 exercise of jurisdiction is reasonable. [*Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007,
24 1019 (9th Cir. 2002), citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85
25 L.Ed.2d 528 (1985).]

26 *No Substantial or Continuous and Systematic Contacts.* Vuitton presented no evidence of
27 "substantial" or "continuous and systematic" contacts. The only alleged contacts in the United States
28 are a few items Vuitton itself purchased from different sources and had shipped here in an attempt to

create jurisdiction. Vuitton cannot create jurisdiction by having products shipped to California. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (The mere "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). These purported "contacts" cannot create jurisdiction here:

> It is undisputed that **plaintiff purchased defendant's products for the sole purpose of providing a basis for personal jurisdiction**. … [C]ommon sense requires a conclusion that **such a forced and artificial exercise cannot provide the basis for personal jurisdiction**. Economic harm to plaintiffs does not "arise out of" defendants' actions when **no sale would have been made but for plaintiff's choice to make a purchase**. Alternatively, a strong argument exists that **a self inflicted wound is not an "injury" at all** within the meaning of the statute.

*Ricoh Co., Ltd, v. Asustek Computer, Inc.*, 481 F.Supp.2d 954, 959 (W.D. Wis. 2007) (emphasis added).

Furthermore, Vuitton has not and cannot identify *anyone* with whom it did business in purchasing any products. Vuitton admits that the Chinese sellers probably used false names and addresses. There is no way to even tie the purchases (let alone multiple purchases) to any website. Instead, the Vuitton investigator in Texas sent merchandise requests to a variety of e-mail addresses, not necessarily connected with any websites, sent payment to a second person, and received the merchandise from a third person.

There is no "substantial" and certainly no "continuous and systematic" contacts with California or the U.S. by anyone according to Vuitton's evidence. Vuitton's argument apparently assumes that all Chinese counterfeiters are somehow connected. But there is no shred of evidence to support that speculation. In truth, Vuitton has no idea who they have dealt with and no evidence to support U.S. jurisdiction over these myriad counterfeiters.

*No purposeful availment.* There was also no evidence that any accused website operators in China purposefully availed themselves of the privileges of conducting business in California or the U.S. It is undisputed that all of the accused websites were operated from inside China. The accused sites could be accessed from the entire world by anyone having access to the Internet – California and/or the United States were not specifically targeted. Indeed, the Texas investigator made the offer to buy. Purchases were set up via email from outside of California, and completed using

1 Western Union money transfer. The sales took place entirely outside California, with Vuitton
2 ordering the products from France or Texas and requesting that they be shipped into California.[4]

3 Vuitton claims are also not related to, and did not arise 'but for' any contacts with California
4 or the U.S. *Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir. 1995) (relying on a "but for" test to
5 determine whether a particular claim arises out of or is related to forum-related activities). Vuitton
6 could have easily had the products shipped to France, some other country, or not shipped at all.

### 4. No Likelihood of Confusion

Vuitton has utterly failed to present any evidence of "likelihood of confusion about the source or sponsorship of the products at issue." *Perfumebay.com Inc. v. eBay, Inc.,* 506 F.3d 1165, 1173 (9th Cir. 2007). No evidence was presented of *any* unauthorized Internet purchases of infringing products made from any accused site. *Custom Mfg. and Engineering, Inc.*, 508 F.3d at 641 ("Like the proverbial tree falling in a forest, the unauthorized use of a trademark that is never perceived by anyone cannot be said to create a likelihood of consumer confusion.").

Vuitton apparently instructed its investigator to purchase a single item at several websites. But likelihood of confusion does not exist because Vuitton presented no evidence that third parties were confused about the source or origin of any of the goods displayed at any website.

But even if unauthorized Internet purchases from within the United States are assumed (and there is no basis to do so), Vuitton presented no evidence that any purchasers were likely confused. The Ninth Circuit requires that this issue be addressed from the viewpoint of a reasonably prudent purchaser. *Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1151 (9th Cir. 2002) ("In assessing the likelihood of confusion to the public, the standard used by the court is **the typical buyer**

---

[4] Vuitton cannot create jurisdiction by having products shipped to California. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (The mere "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); *Ricoh Co., Ltd, v. Asustek Computer, Inc.* 481 F. Supp. 2d 954, 959 (W.D. Wis. 2007) ("It is undisputed that plaintiff purchased defendant's products for the sole purpose of providing a basis for personal jurisdiction. … [C]ommon sense requires a conclusion that such a forced and artificial exercise cannot provide the basis for personal jurisdiction. Economic harm to plaintiffs does not "arise out of" defendants' actions when no sale would have been made but for plaintiff's choice to make a purchase. Alternatively, a strong argument exists that a self inflicted wound is not an "injury" at all within the meaning of the statute.").

1 exercising ordinary caution." [citing *AMF v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979)]).

2 "[T]he law has long demanded a showing that the allegedly infringing conduct carries with it a

3 likelihood of confounding an appreciable number of **reasonably prudent purchasers** exercising

4 ordinary care." *Entrepreneur Media, Inc.,* 279 F.3d at 1151 (emphasis added); *see also Brookfield*

5 *Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1060 (9th Cir. 1999)

6 ("**Likelihood of confusion is determined on the basis of a 'reasonably prudent consumer.'**

7 What is expected of this reasonably prudent consumer depends on the circumstances. We expect

8 him to be more discerning-and less easily confused-when he is purchasing expensive items."

9 (emphasis added)).

10 If the goods are relatively expensive, that factor weighs heavily against a finding of

11 likelihood of confusion. *Self-Insurance Institute of America, Inc. v. Software and Information*

12 *Industry Ass'n,* 208 F.Supp.2d 1058, 1073 (C.D. Cal. 2000) ("**Based on the relatively high cost**, the

13 Court finds that consumers seeking association services will be very discerning and not easily

14 confused. … **This factor weighs heavily against finding a likelihood of confusion**." (emphasis

15 added)).

16     **D.**    **Element 2 - No Evidence Defendants Induced or Directly Controlled and Monitored Infringement At Specific Websites**

17

18     **1.**    **Where Direct Infringer Sells a Product**

19 Vuitton alleges that the direct infringers in this case sell products (e.g., handbags, belts,

20 watches as Vuitton alleges), so Vuitton must prove each defendant: (1) intentionally induced the

21 primary infringers to infringe or continued to supply an infringing product. *Perfect 10, Inc. v. Visa*

22 *Int'l,* 494 F.3d at 807:

23     To be liable for contributory trademark infringement, a defendant must have (1) **intentionally induced**" the primary infringer to infringe, **or** (2) **continued to supply an infringing product** to an infringer with knowledge that the infringer is mislabeling the particular product supplied. *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 855, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). [Emphasis added.]

24

25

26     **2.**    **Where Direct Infringer Sells a Service**

27 If the direct infringer supplies a service rather than a product, then Vuitton must prove that

28 each Defendant directly controlled and monitored the website(s) used by a third party primary

infringer to infringe.  *Perfect 10, Inc. v. Visa Int'l*, 494 F.3d at 807.  This **test applies only when the *direct* infringer supplies a *service***, not a product.

> **When** the alleged **direct infringer supplies a service** rather than a product, under the second prong of this test, the court must "consider the **extent of control** exercised by the defendant **over the third party's means of infringement.**"  *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 984 (9th Cir. 1999).  **For liability** to attach, **there must be "[d]irect control and monitoring** of the instrumentality used by a third party to infringe the plaintiff's mark." [*Id.* (emphasis added).]

It is undisputed that the alleged *direct* infringers in this case supply *products* (replica goods), so there is no basis to even consider expanding *Inwood* to consider the "extent of control" of each Defendant over each directly infringing service.

### E.  No Evidence of Direct Control and Monitoring

But even if the "extent of control" is considered, expansion of *Inwood's* "supplies a product" prong to cover the ISP services at issue is inappropriate because Vuitton presented no evidence of any direct control and monitoring at any accused website.

Direct control and monitoring means "direct control over the activity that the third-party alleged infringers engaged in on the premises." *Lockheed*, 194 F.3d at 985.  It requires "more than the relatively passive degree of control and monitoring usually exercised by a landlord." *Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F.Supp.2d 678, 689 (D. Md. 2001).  The inquiry "hinges on **how substantially involved the [defendant is] *in the businesses* of the infringing vendors**, including whether the operators participated in advertising and selling tickets, their degree of supervision, and whether they shared in ticket sale proceeds." *Habeeba's Dance of the Arts, Ltd. v. Knoblauch,* 430 F.Supp.2d 709 (S.D. Ohio 2006) (emphasis added) [citing *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir. 1996) and *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143, 1149 (7th Cir. 1992)].

Evidence that defendants have actual control over the business operations at the accused websites is required. *SB Designs v. Reebok Int'l, Ltd.,* 338 F.Supp.2d 904, 913, 914 (N.D. Ill. 2004) ("[A]n extension of the doctrine beyond 'products' is not warranted in the instant case because there is no evidence . . . Reebok controlled or monitored the contents of the Crossover Promotions website . . . . More significantly, **plaintiffs present no evidence that Reebok sponsored or was in**

1  **any way associated with any of the websites** attached as exhibits.  **Plaintiffs also present no**
2  **evidence that Reebok provided any products sold or displayed on any of the websites**."
3  (emphasis added)).

4  In *Fare Deals*, alleged contributory infringer HRN ran banner ads or links on direct infringer
5  NetHoldings' infringing website, *www.fairdeals.com*, pursuant to an affiliate agreement whereby
6  HRN paid Netholdings to pay a set amount for each travel customer HRN obtained from the
7  infringing *www.fairdeals.com* website.  *Fare Deals*, 180 F.Supp.2d at 681.  Even this level of
8  involvement was insufficient to show direct control and monitoring because **actual** control over
9  operations at infringing websites (such as advertising and promoting infringing businesses and
10 providing customers to the direct infringers) was lacking:

> The flea-market operators [in *Fonovisa*, and *Hard Rock Café*] not only exercised considerable **actual control over the operations of their vendors**; they also **actively supported the infringing businesses of their vendors** – by advertising and promoting the flea markets and by providing the vendors their customers. HRN, however, has provided no such support: it neither steered customers toward <faredeals.com> nor advertised the <faredeals.com> site.

15 *Fare Deals Ltd.,* 180 F.Supp.2d 689-90 (emphasis added).

16 Vuitton's evidence does not come close to proving direct control and monitoring. Vuitton
17 presented **no evidence** that defendants ever had any actual control over any business operations at
18 any accused website.  Vuitton presented **no evidence** that any defendant participated in the business
19 operations at any accused website.  Vuitton presented **no evidence** that any defendant advertised and
20 promoted any accused website. Vuitton presented **no evidence** that defendants actively supported
21 any infringing business at any time.  Judgment as a matter of law is appropriate because no
22 reasonable juror could find in Vuitton's favor on this critical element.

23 **F.    Willful Blindness Does Not Apply in Absence of Direct Control and Monitoring**

24 Vuitton presented no evidence sufficient to prove that defendants' directly controlled and
25 monitored any accused website, so expansion of *Inwood Lab's* "supplies a product" prong to cover
26 the ISP services at issue is inappropriate.  As a result, the concept of "willful blindness" has no
27 application.

28 "Willful blindness" relates only to the supplies a product prong of *Inwood Lab* and, if

proven, can satisfy the "knew or had reason to know" requirement of that prong. *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143, 1149 (7th Cir. 1992). MSG and Akanoc supply a service – not a product, so expansion of the "supplies a product" prong to cover the ISP services in this case is not appropriate because, as discussed above, defendants did not directly control and monitor the instrumentality of infringement (that is, infringing websites) used by a third party to directly infringe:

> *Hard Rock* and *Fonovisa* teach us that when measuring and weighing a fact pattern in the contributory infringement context without the convenient "product" mold dealt with in *Inwood Lab.*, we consider the extent of control exercised by the defendant over the third party's means of infringement. . . . **Direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark permits the expansion of *Inwood Lab.'s* "supplies a product" requirement for contributory infringement.**"

*Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 984 (9th Cir. 1999) (emphasis added).[5]

Because the defendants supply no products and Vuitton has no evidence that the defendants directly controlled and monitored any infringing websites, expansion of the 'supplies a product' prong of *Inwood Lab* is inappropriate and the concept of 'willful blindness' does not apply.

**G. Willful Blindness Not Proven At Trial**

Even if willful blindness is considered, Vuitton presented no evidence to show defendants were willfully blind in this case. At most, like every other ISP, defendants may have had general knowledge that unidentified infringing websites could be located on their servers. But even if they failed to act that is not willful blindness. To be willfully blind, Defendants must "know or have reason to know of **specific instances of actual infringement"** by individual counterfeiters and deliberately fail to act. *Tiffany (NJ) Inc. v. eBay, Inc.,* 576 F.Supp.2d 463, 511 (S.D.N.Y. 2008)

---

[5]This Court explained in its summary judgment order: "Accordingly, when a defendant offers a service instead of a product, a plaintiff can base its contributory trademark infringement claim on the 'extent of control' theory or the 'intentional inducement' theory. . . . Under [the 'extent of control' or 'supply a product'] framework, a plaintiff must prove that the defendant had knowledge and '**[d]irect control and monitoring of the instrumentality used by the third party to infringe the plaintiff's mark.**' *Lockheed*, 194 F.3d at 984." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,* 591 F.Supp.2d 1098, 1111 (N.D. Cal. 2008) (emphasis added).

1  (emphasis added).[6]  Vuitton presented no evidence of this.  None of Vuitton's evidence even
2  suggests that defendants failed to act reasonably in response to any specific notice of infringement.

3  Vuitton's willful blindness argument is based on the mistaken premise that defendants had a continuing duty to monitor the Internet and take precautions against particular domains returning to their servers. But after MSG and Akanoc took action to remove infringing content, they had no continuing or affirmative obligation to "ferret out" potential infringement at the particular domain and no duty to take any other precaution against the domain reappearing on their servers. *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143, 1149 (7th Cir. 1992) (A party "has no affirmative duty to take precautions against the sale of counterfeits. [T]he 'reason to know' part of the [*Inwood Labs*] standard for contributory liability . . . does not impose any duty to seek out and prevent violations."). The *Tiffany* court states:

> eBay did not analyze its data, or research and evaluate the number of "Tiffany" listings removed from its website.  Nor did it track the number of sellers suspended because they had posted infringing listings.
>
> Nevertheless, the fact that eBay did not take these additional steps is immaterial, because **without specific knowledge or reason to know, eBay is under no affirmative duty to ferret out potential infringement**. Willful blindness requires "more than mere negligence or mistake" and does not lie unless the **defendant knew of a high probability of illegal conduct and purposefully contrived to avoid learning of it,** for example, by failing to inquire further out of fear of the result of the inquiry.

*Tiffany,* 576 F. Supp. 2d at 514-15 (emphasis added).

/ / /

/ / /

/ / /

---

[6] Citing *Perfect 10 v. Visa Int'l Services,* 494 F.3d at 806 (9th Cir. 2007) and *Fonovisa,* 76 F.3d at 265, the court noted that "trademark infringement liability is more narrowly circumscribed than copyright infringement" and that **"**[u]nder copyright law, **generalized knowledge** that copyright infringement may take place **in an Internet venue is insufficient** to impose contributory liability." *Tiffany*, 576 F.Supp.2d at 510 n.37, citing *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1027 (9th Cir.2001) ("The mere existence of the Napster system, absent actual notice and Napster's demonstrated failure to remove the offending material, is insufficient to impose contributory liability."); *Hendrickson,* 165 F.Supp.2d at 1088-90 (holding that generalized notice of copyright infringements was insufficient to establish knowledge for the purpose of contributory liability).

## II. CONCLUSION

Vuitton failed to present evidence sufficient to permit a legally correct jury verdict in its favor on its contributory trademark infringement claim. Defendants respectfully request judgment be entered in their favor as a matter of law on that claim pursuant to Fed. R. Civ. P. 50(a).

Dated: August 20, 2009

**GAUNTLETT & ASSOCIATES**

By: s/James A. Lowe
David A. Gauntlett
James A. Lowe
Brian S. Edwards
Christopher Lai

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.
and Steve Chen