J. Andrew Coombs (SBN 123881)
*andy@coombspc.com*
Annie S. Wang (SBN 243027)
*annie@coombspc.com*
J. Andrew Coombs, A Prof. Corp.
517 E. Wilson Ave., Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | |
|---|---|
| Louis Vuitton Malletier, S.A., <br><br> Plaintiff, <br><br> v. <br><br> Akanoc Solutions, Inc., et al. <br><br> Defendants. | Case No. C 07 3952 JW <br><br> OPPOSITION OF PLAINTIFF LOUIS VUITTON MALLETIER, S.A. TO DEFENDANTS' RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING: CONTRIBUTORY COPYRIGHT INFRINGMENT CLAIM |

## INTRODUCTION

Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton" or "Plaintiff") files this Opposition to Defendants' Rule 50(a) Motion for Judgment as a Matter of Law Regarding Contributory Copyright Infringement Claim.

Defendants' motion betrays a profound misunderstanding of the standards applicable to a motion for judgment as a matter of law and for liability under the Copyright Act. Defendants' motion misapplies the holdings in the decision of the Ninth Circuit in *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F. 3d 1088 (9th Cir. 1994), the evidence already introduced evidencing the elements of the claim for contributory copyright infringement, the standards for constructive knowledge as apply in this Circuit, including *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) and the application of the safe harbor provided for by the *Digital Millennium Copyright Act* ("DMCA").

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule 50(a) Motion for Judgment as a Matter of Law Regarding: Contributory Infringement Claim.     - 1 -

Dockets.Justia.com

# ARGUMENT

## A. Introduction

Although a motion for judgment as a matter of law may be filed at any time before submission of the case to the jury, it must be construed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where reasonable minds can differ, where the evidence is in dispute or when credibility is at issue, the motion is properly denied. *Id*. at 250-51.

In addition to Defendants' fundamental misstatement of many of the applicable principles of law underpinning their motion, they cannot and do not meet their burden.

## B. Extraterritoriality of the Copyright Act; Acts of Underlying Infringement Occurred in the United States.

Defendants engage in ongoing, persistent, willful conduct to facilitate the infringement of the Plaintiff's copyrights. The rights infringed through Defendants' assistance are extensive and enumerated in the Copyright Act. These include, for purposes of this action, the display of Plaintiff's copyrights on webpages located on the Defendants' servers, blocks from the courthouse, the distribution of copies of those images to Internet users both here in the United States and located elsewhere around the world with data originating from San Jose, California, the reproduction and sale of merchandise embodying unauthorized copies of those copyrights and the export/import of that merchandise into the United States. Any one of these acts (and Plaintiff argues **all** of these acts) provide the requisite territoriality.

Defendants' argument on these issues is predicated upon the Ninth Circuit's decision in *Subafilms*, *supra*, but Defendants fail to cite key portions of the authority. In *Subafilms*, the Plaintiff's claim for copyright infringement against the defendant rested upon one central allegation. The overseas distribution of a film in which the Plaintiff owned applicable copyrights, was purportedly "authorized" by the defendant located in the United States. There was no allegation that any action – other than the underlying authorization – occurred within the United States. The copies were made, distributed, displayed and sold *entirely* outside the United States.

In arriving at its conclusion that United States courts could not address the Plaintiff's claim in that case, the Ninth Circuit did rule that "***wholly*** extraterritorial acts of infringement cannot support a claim under the Copyright Act[.]" *Subafilms*, *supra*, at 1095 (emphasis added).

What the Defendants omit, however, is "to the extent part of an 'act' of infringement occurs within the United States, then, although such act is completed in a foreign jurisdiction, those parties who contributed to the act within the United States may be rendered liable under American copyright law." Id. at fn 9, quoting from Nimmer § 17.02, at 17-19. Thus, Plaintiff meets its burden under *Subafilms* not only because part of the infringement occurred in the United States, some of the claims for infringement were completed entirely within the United States.

The presumption against extraterritoriality serves two purposes. First, it serves to protect against unintended clashes between our laws and those of other nations which could result in international discord. Second, it reflects the notion that when Congress legislates, it is primarily concerned with domestic conditions. *ARC Ecology v. U.S. Dept. of the Air Force*, 294 F. Supp. 2d 1152, 1158 (N.D. Cal. 2003). These purposes are not advanced by Defendants interpretation of the applicable standards: whatever the difference in enforcement standards between the United States and China, there is no difference or dispute regarding the equivalent illegality of the underlying direct infringement. Moreover, there is ample testimony that Defendants and their customers clearly aim their goods and services at the United States marketplace.

There is no question that *part* of the acts of infringement proved thus far (and display entirely) occurred on Defendants' servers. This includes storage of the raw data (as described in Defendants' motion at 5:19-21) and provision of bandwidth through which that raw data can be distributed to users.

But there is far more supporting application of the Copyright Act to the Defendants' contributory copyright infringement. These acts include the marketing and distribution of copies in the United States and export of merchandise embodying the Plaintiff's copyrights to the United States. Moreover, these underlying direct infringements were *completed* in the United States. *See*, *Nimmer on Copyright*, Section 17.02 (2007) ("[R]egardless of how much infringing conduct may

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule   - 3 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Infringement Claim.

or may not occur abroad, when violation of one of the exclusive rights in copyrighted works is completed within the United States, the activity becomes actionable under domestic law.") Plaintiff's investigator located in the United States, received what he viewed on the infringing websites that were hosted on Defendants' servers in San Jose. The appropriateness of the application of the Copyright Act is established.

The underlying acts of copyright infringement are clearly not *wholly* extraterritorial acts. While the counterfeit merchandise may be produced in China, it is in fact, as shown by the evidence presented by Plaintiff, specifically marketed and sold to persons within the United States.[1] Thus the underlying acts of direct infringement do, in part, occur within the United States and fall under the purview of the Copyright Act. In fact, "the mere act of importation" of the counterfeit copyrighted work alone constitutes infringement under the Copyright Act. *Parfums Givenchy, Inc. v. C&C Beauty Sales, Inc.*, 832 F. Supp 1378, 1383 (C.D. Cal. 1993); 17 U.S.C. § 501(a). So, where an act of infringement occurs within the United States, including but not limited to the marketing, sale and importation of counterfeit Louis Vuitton merchandise more specifically, the Copyright Act is properly applied, as it is in this instance. *L.A. News Serv. v. Reuters Tel. Int'l, Ltd.*, 340 F.3d 926, 928 (9th Cir. 2003).

Moreover, Congress made clear that the Copyright Act should apply extraterritorially in instances where unauthorized importation of copyrighted works occurs, such as it has in this case. *Subafilms, Ltd., supra* at 1095; *see* 17 U.S.C.A. § 602(a). Louis Vuitton neither authorized the counterfeiting of its products and infringement of its copyrights nor their importation into the United States, as claimed by Defendants in their motion.

For these reasons it is unnecessary for the Court to address the still more far-fetched argument that computer users viewing of the infringing images is a fair use. Louis Vuitton makes no claim or allegation concerning any purported infringement *by Internet consumers* who view

---

[1] Most all of the websites are in English and some reference specific policies for customs seizures and refunds of "US$18" should such seizure occur (e.g., Ex. 72.1), and many of the websites specifically provide for shipping rates to the United States (e.g., Ex. 63).

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule - 4 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Infringement Claim.

websites on Defendants' servers, as apparently set up at ¶ I.B.c.(2) and the Court need not concern itself with the fair use straw man Defendants strive to set up there.

The data acquired during the court ordered inspection shows that photos of copies and unauthorized uses of Louis Vuitton's properties resided on Defendants' servers and it did not require an internet browser to view those photos.[2]  See Exhibit 593.31.  The infringing images were not "only 0s and 1s" they were visually complete and identical to their online counterparts.  See Exhibits 611 and 613 re www.bigworldshoes.com.  Among other things, Defendants argument misses the point that the consumer's viewership *could not have occurred* but for the Defendants contributory infringement through serving up and distributing the data that consumers could view.  And it was Defendants' continued offering of goods and services despite specific and general knowledge of their infringing customers that gave rise to the claims at issue.  To take the view that the server hosts "only 0s and 1s" as apparently asserted by Defendants is inaccurate and would effectively and improperly insulate any online activity.

C. **Defendants' Motion Improperly Assumes Jurisdiction Over Underlying Direct Infringers is an Element Necessary to a Contributory Infringement Action.**

Defendants conflate their argument concerning proof of direct infringement with jurisdiction over direct infringers.  Defendants leap from this unexplained conjunction to a discussion about personal jurisdiction over online activity.  The only personal jurisdiction issue of relevance here is that which concerns the Defendants themselves.  As they are all California residents and the activities at issue occur a mere "couple of blocks" from the Courthouse as testified to by one witness, there can be no argument about the propriety of personal jurisdiction.

Defendants' motion posits that because Louis Vuitton can not demonstrate that it has personal jurisdiction over the Chinese sellers, Defendants should escape liability for contributory copyright infringement.  This is not the case.

The three elements required to establish contributory copyright liability are: (1) direct infringement by a primary infringer, (2) knowledge of the infringement, and (3) material

---

[2] Plaintiff's Expert specifically testified that Guidance Software computers are not connected to the internet for forensic purposes.

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule      - 5 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Infringement Claim.

contribution to the infringement. *MGM Studios, Inc. v. Grokster Ltd.*, 380 F.3d 1154, 1160 (9th Cir. 2004); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996). All that is required is that an underlying direct infringement has occurred; there is no requirement that the Court also have jurisdiction over third parties who are not Defendants in this case. There need not be "substantial" or "continuous and systematic" contact by the underlying infringers with this jurisdiction. The underlying infringers only need to have perpetrated the underlying infringement of which the Defendants had knowledge and materially contributed.

### D. **Plaintiff Has Proved All Elements of its Claims.**

#### i. **Plaintiff Has Shown Notice.**

The absurdity of Defendants' construction of *Subafilms*, *supra*, is underscored by its argument that it had no *specific* notice of any underlying direct infringement. This was contradicted by evidence presented by the Plaintiff and by Defendants' own Exhibit 1598. Accordingly, the only way Defendants' argument can pass muster is if all the notices of infringing conduct they received are to be considered ignored because, irrespective of such notice and the content located on servers in San Jose, their customers were located offshore. Acceptance of this construction is at odds with common sense, the current law and could only foster an environment where infringers (and other online criminals) would merely move their activity into a different jurisdiction to insure that it could be caught by no national law. Defendants have admitted notice and none of their attempts to discount these admissions should be accepted.

Plaintiff has also shown evidence of constructive knowledge sufficient to meet its burden of proving notice. Defendants cite the Supreme Court decision in *Grokster*, claiming that it supports the proposition that Defendants' general knowledge that infringement could occur using their servers does not constitute knowledge for purposes of contributory copyright infringement. Defendants fail to cite, however, further language in the decision stating that "evidence of infringement on a gigantic scale" occurring on the Grokster networks was enough to determine that the defendant had the intent to induce copyright infringement and that information about the general volume of infringing activity on a website could be considered when determining whether

or not a contributory infringer had the requisite knowledge to be held liable. *MGM Studios, Inc. v. Grokster,Ltd.,* 545 U.S. 913, 940 (2005). While knowledge of the existence of infringing potential or of particular methods of infringement is not enough to satisfy the knowledge requirement, Defendants' knowledge that a large volume of infringement was actually occurring on their servers is certainly enough to satisfy the knowledge requirement of contributory copyright infringement.

Courts have held in analogous situations that specific knowledge of infringement is not necessary to be held liable for contributory copyright infringement. Swap meet and flea market operators have been held contributorily liable where vendors sell counterfeit items where the operators were willfully blind to the vendor's infringing activities. *Fonovisa*, *supra*, at 265.

In *Fonovisa*, operators of swap meets where vendors offered for sale thousands of counterfeit recordings were notified via a letter from the Sheriff's office of the vendor's infringing conduct a year after a raid. *Id.* at 261. The Ninth Circuit held that this was indisputable evidence that the swap meet operators had the requisite knowledge that vendors were selling counterfeit recordings in order to be held liable for contributory copyright infringement. *Id.* If Defendants somehow avoided having actual knowledge of the massive amounts of infringement occurring on their servers, despite this lawsuit, a court ordered inspection of their servers and multiple notices, their willful blindness will satisfy the knowledge requirement of contributory copyright infringement.

  **ii.**   <u>**Plaintiff Has Shown Material Contribution.**</u>

Defendants do (finally) correctly state that it is Plaintiff's burden to prove "inducing, causing ***OR*** material contribution, citing among others, the governing Ninth Circuit decisions in *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) and *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, ltd.*, 380 F.3d 1154 (9th Cir. 2004). See also, *Perfect 10, Inc. v. Visa Int'l Service Assoc., et al*., 494 F.3d 788, 795 (9th Cir. 2007) *citing Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).

The more readily established element is material contribution as outlined by Louis Vuitton's witnesses, the evidence of Defendants' advertising practices, as well as Defendant

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule 50(a) Motion for Judgment as a Matter of Law Regarding: Contributory Infringement Claim.   - 7 -

Chen's testimony concerning the sophisticated equipment and back ups in place at their facility as well as their physical location and proximity to the "internet backbone" as described at length by Defendants witnesses and counsel, among other things. The continued willful blindness of the Defendants also materially contributes to the counterfeiting and piracy occurring on Defendants' servers.

Liability has also been found to exist where the defendants provide the "site and facilities" for infringing activity, *Fonovisa*, 76 F.3d at 264, when "a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system," *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007), or when a computer system operator knows that specific infringing materials are present on their systems and are able to take "simple measures" to limit infringement, they continue to provide access to the infringing materials. *Religious Tech. Ctr. V. Netcom On-Line Comm. Serv., Inc.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995). Defendants materially contribute to the infringing activity occurring their servers under all of these additional grounds for liability.

Defendants also cite that the inducement standard is defined by some courts as "actively and knowingly aid[ing] and abet[ting] another's direct infringement. Defendants' Motion p. 9:19-20; *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001) ("liability exists if the defendant engages in personal conduct that encourages or assists the infringement"). Plaintiff submits that viewing the evidence thus far in its favor satisfies this element as well.

**C.     <u>Defendants Are Not Eligible For DMCA Protection.</u>**

Defendants' assertions predicated upon the DMCA are entirely improper.

First, as noted by them, it is not a complete defense but a limited immunity which specifies remedies which may be ordered where an ISP is otherwise eligible for protection. Motion, 11:1-2 ("the protections include immunity from any copyright damage award and limitations on injunction"). As such it is not a basis for judgment as a matter of law.

Second, also as noted by Defendants, they first filed a designation of agent for service with the Copyright Office *after* the present action was filed. Motion, 10:24. Accordingly, Defendants

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule      - 8 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Infringement Claim.

did not qualify for safe harbor immunity and, ultimately, this will be a matter on which judgment as a matter of law is properly ordered in favor of Plaintiff and against Defendants.

Third, the DMCA safe harbor is an affirmative defense. As such, the Plaintiff has no burden of proof. *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 657 (E.D. Ill. 2002). It is Defendants' burden to show that they have fully complied with the provisions of the DMCA in order to seek its safe harbor protection and this they will be unable to do so, not only as noted above but for other reasons already before the Court including (but not limited to) the fact one Defendant, Managed Solutions Group, Inc. has no published terms of service to this day and the fact that neither ISP defendant took expeditious steps to disable access to the infringing material.

It is improper for Defendants to include an argument regarding the DMCA safe harbors in a Rule 50 motion when Defendants have yet to prove threshold applicability, and it is entirely Defendants' burden to show that they are eligible for safe harbor protection under the DMCA.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Judgment as a Matter of Law Regarding Copyright Infringement Claim.

Dated: August 24, 2009                     J. Andrew Coombs, A Professional Corp.

                                                ___/s/ J. Andrew Coombs_____
                                                By: J. Andrew Coombs
                                                    Annie Wang
                                                Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule          - 9 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Infringement Claim.