J. Andrew Coombs (SBN 123881)
*andy@coombspc.com*
Annie S. Wang (SBN 243027)
*annie@coombspc.com*
J. Andrew Coombs, A Prof. Corp.
517 E. Wilson Ave., Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | |
|---|---|
| Louis Vuitton Malletier, S.A., | ) Case No. C 07 3952 JW |
| Plaintiff, | ) OPPOSITION OF PLAINTIFF LOUIS VUITTON MALLETIER, S.A. TO |
| v. | ) DEFENDANTS' RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF |
| Akanoc Solutions, Inc., et al. | ) LAW REGARDING: CONTRIBUTORY TRADEMARK INFRINGMENT CLAIM |
| Defendants. | ) |

## **INTRODUCTION**

Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton" or "Plaintiff") files this Opposition to Defendants' Rule 50(a) Motion for Judgment as a Matter of Law Regarding Contributory Trademark Infringement Claim. Once again Defendants mischaracterize the record and the applicable law in support of the untenable proposition that Plaintiff has failed to introduce evidence on each element of the claim for contributory trademark infringement. At root, Plaintiff must show, as stated in the leading decision *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982), namely: "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit." *Id.* at 854; s*ee, also*, *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir. 1996).

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Trademark Infringement Claim.                       - 1 -

# ARGUMENT

## A. Introduction

Although a motion for judgment as a matter of law may be filed at any time before submission of the case to the jury, it must be construed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where reasonable minds can differ, where the evidence is in dispute or when credibility is at issue, the motion is properly denied. *Id*. at 250-51.

In addition to Defendants' fundamental misstatement of many of the applicable principles of law underpinning their motion, they cannot and do not meet their burden.

## B. Plaintiff Has Introduced Ample Proof on Each Element of Its Claim.

### i. Evidence of Direct Infringement: Infringer "Identification".

Defendants' scattershot contentions that Plaintiff has not presented evidence of underlying direct infringement are without merit. Plaintiff has introduced extensive evidence demonstrating the vast number of underlying infringements perpetrated with the use of Defendants' goods and services.[1]

As separately noted in Opposition to Defendants Motion for Judgment as a Matter of Law on Plaintiff's claim for contributory copyright infringement, Defendants improperly conflate the requirement to prove such infringement with the requirement that Plaintiff *identify* to the specifications desired by the Defendants of the underlying infringer. Plaintiff has provided multiple options to identify the direct infringer including by website, by Defendants' customer, and by payee information, but it is not enough for the Defendants. Defendants' desires in this arena do not comport with the requirements of the law and their motion is properly denied on this basis.

---

[1] Because Defendants supply both goods and services, their argument predicated upon a supposed distinction rooted in the Ninth Circuit's decision in *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir. 1999) can be safely disregarded. Testimony has clearly established that the Defendants supply a package of goods and services which enable China-based customers to conduct Internet businesses through websites hosted in the United States. The bundle of goods and services include (i) a server, the elements of which were further elaborated upon by Defendant Chen in his testimony; (ii) an operating system and other "control panel" type software; (iii) router programming which insures interactivity with the Internet community; and (iv) bandwidth which provides underlying connectivity, among other things.

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule - 2 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Trademark Infringement Claim.

Defendants then leap from this unexplained conjunction to a discussion about personal jurisdiction over online activity.  The only personal jurisdiction issue of relevance here is that which concerns the Defendants themselves.  As they are all California residents and the activity at issue occurs a mere "couple of blocks" from the Courthouse as testified to by one witness, there can be no argument about the propriety of personal jurisdiction.

Defendants' motion posits that because Louis Vuitton has not demonstrated that it has personal jurisdiction over the Chinese sellers, Defendants should escape liability for contributory trademark infringement.  This is not the case.

The elements required to establish contributory trademark liability were outlined at the outset: all that is required is that an underlying direct infringement have occurred; there is no requirement that the Court also have jurisdiction over third parties who are not Defendants in this case.  There need not be "substantial" or "continuous and systematic" contact by the underlying infringers with this jurisdiction.  The underlying infringers only need to have perpetrated the underlying infringement of which the Defendants had knowledge, control and to which they materially contributed or concerning which they remained willfully blind.

ii. **Evidence of Direct Infringement: Use in Commerce**

Infringers enabled by the valuable assistance provided by Defendants, "use" Plaintiff's trademarks in commerce.  Any other conclusion is absurd.

First, Defendants ignore *any* use which occurs other than that which is "affixed" to the goods themselves.  By this construction, no promotional materials or advertising could ever be construed a use in commerce and predicate for a claim for trademark infringement.  This is contradicted by the very definition of "use in commerce" quoted by Defendants which clearly states that a mark shall be deemed to be used in commerce, on goods when "it is placed in any manner on the goods or their containers *or the displays associated therewith*…" 15 U.S.C. § 1127.  The underlying direct infringers used Plaintiff's trademarks not only on the infringing websites but also on the counterfeit product and accompanying packaging and promotional materials as well.

Second, Defendants make the stunning assertion that the promotion, display, sale and importation into the United States of counterfeit knockoffs of Louis Vuitton's product does not satisfy Plaintiff's burden to show likelihood of confusion. This argument merely needs to be stated to be rejected. There is even a presumption at law which holds as true in common sense that the entire purpose of a knock off product is to appear like the genuine, and confusion its very purpose for existence.[2] Even were the Court to accept the argument that Plaintiff's election to make select purchases for the purposes of developing evidence supporting its claims constituted some form of retroactive endorsement of the underlying transaction such that the evidentiary transaction is not itself infringing, the Defendants' argument requires still further leaps in logic, including the conclusion that these same transactions cannot constitute evidence that other sales into the United States did not occur. In view of testimony that Defendants deliberately aim their goods and services at China-based customers who seek to develop United States business, this proposition must be categorically rejected.[3]

Moreover, this argument also requires the Court to accept the proposition (also noted in Opposition to the Motion on Contributory Copyright Infringement) that the storage and distribution of offers of counterfeit merchandise – because stored in bits of 0s and 1s – cannot constitute the

---

[2] There is a presumption of confusion or confusion as a matter of law when dealing with counterfeit marks. *Brookfield Communs. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."); *Shakespeare Co. v. Silstar Corp. of Am.*, 110 F.3d 234, 241 (4th Cir. 1997) ("Our cases make clear, however, that that presumption arises only where the intentional copying is motivated by an "intent to exploit the good will created by an already registered trademark""); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion."); *see Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 256-57 (9th Cir. 1986) (reversing a district court's finding of no likelihood of confusion even though the six other likelihood of confusion factors all weighed against a finding of likelihood of confusion); *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) citing *Phillip Morris USA Inc. v. Felizardo*, 2004 U.S. Dist. LEXIS 11154, at *18 (S.D.N.Y. June 18, 2004) ("However, "in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination . . . because counterfeit marks are inherently confusing."); *Phillip Morris USA Inc. v. Felizardo*, 2004 U.S. Dist. LEXIS 11154, at *18 (S.D.N.Y. June 18, 2004) ("[C]ounterfeit marks are inherently confusing."); *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003); ("[C]ounterfeits by their very nature, cause confusion…Indeed, confusing the customer is the whole purpose of creating counterfeit goods."); *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1007 fn. 11 (S.D. Tex. 2000) ("However, in the case of a counterfeit mark, likelihood of confusion is clear."); *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1346 (E.D.N.Y. 1994) ("Moreover, confusion is simply inevitable since the parties are selling the same products in the same channels of commerce under the guise of the identical Dial-A-Mattress mark.").

[3] This evidence was introduced through Defendants' own webpage as well as through testimony of Defendant Chen.

distribution or display of anything recognized as a trademark.  This is simply incorrect as evidenced by photos, visible to the human eye, that clearly exhibit knockoffs of Plaintiff's trademarks on Defendants' servers.  *See* Exhibit 593.31.  To endorse Defendants' argument would effectively insulate all online communications, a conclusion at odds with common sense, overwhelming case law and policy.

### iii. Use in Commerce: Extra-territorial Application.

Defendants reiterate their bankrupt argument regarding extraterritorial application of the Lanham Act.  Although governed by different authority and slightly different standards than the Copyright Act, the argument has no more traction in the trademark environment than it did in the copyright environment.

The Lanham Act has "broad" extraterritorial application.  *Ocean Garden v. Marktrade Co.*, 953 F.2d 500, 503 (9th Cir. 1991).  Defendants' motion grossly mischaracterizes the extraterritorial application of the Lanham Act and does not even set forth the proper test used by the Ninth Circuit to determine extraterritorial jurisdiction under the Lanham Act.  As stated by the Ninth Circuit in *Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552, 554 (1992) the extent of extraterritorial application of the Lanham Act is governed by the same standards that apply to extraterritorial application of the antitrust laws.  The prior Ninth Circuit decision in *Timberline Lumber Co. v. Bank of America Nat. Trust and Savings Assoc.,* 549 F.2d 597 (9th Cir. 1976) therefore sets forth the tests to be employed in this Circuit.[4]

The test has three basic factors: (1) whether there is *some* effect on American foreign commerce; (2) whether the effect is sufficiently great to present a cognizable injury to plaintiffs under the Lanham Act; and (3) whether the interests of and links to American foreign commerce

---

[4] Even were the Court to decide this issue with reference to the standards articulated by the Supreme Court in 1952 in *Steele v. Bulova Watch Co.*, 344 U.S. 280, those standards would inexorably lead to the same conclusion.  As stated in Defendants' motion, these are "(1) whether the defendant was a United States citizen; (2) whether the defendant's conduct had a substantial effect on United States commerce; and (3) whether there was a conflict with trademark rights established under foreign law."  *Totalplan Corp. fo America v. Colborne*, 5 F3d 824, 830 (2d Cir. 1994).  Defendants then conveniently convert this test into one which measures whether the direct infringer (not the defendant as stated in their own authorities) is a citizen – which they clearly are.  Defendants cannot argue their conduct had no effects on United States commerce and, in doing so, implicitly concede that there is therefore evidence of some effect which immediately precludes entry of judgment based on this fact and, finally, they are silent on the issue of conflict with foreign law as it is a given there is in fact no conflict in the laws of the United States and China on this point.

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule         - 5 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Trademark Infringement Claim.

are sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority. *Id.* at 613.

The first factor is satisfied where "sales of infringing goods in a foreign country may have a sufficient effect on commerce to invoke Lanham Act jurisdiction." *Ocean Garden,* 953 F.2d at 503. The infringing goods sold by Defendants' customers clearly have a sufficient effect on commerce. Flooding the internet with readily available knock-off goods will have numerous negative impacts on commerce. It is extremely harmful to Louis Vuitton's reputation to have cheap, lower quality knock offs proliferate in the marketplace and hurts consumer's confidence with regard to any item purchased on the internet.

The second prong is satisfied for much the same reason. Louis Vuitton is even more negatively affected when considering sales of counterfeit items outside the United States and courts have held that the sale of infringing goods into foreign countries can satisfy the second prong of the *Timberline* test. *Id.* Additionally, as exhibited by even potential jurors in the case, Louis Vuitton's customers complain and are understandably upset with Plaintiff when knock offs devalue their genuine investment and the strength of Louis Vuitton's trademarks. Louis Vuitton is a company that has a significant presence all over the world, including in the United States through corporate offices as well as production facilities in San Dimas, California. The effect of counterfeits at issue in this case on Plaintiff's brands worldwide can not be understated. Louis Vuitton is injured by these additional concerns.

The third prong is clearly satisfied in this instance by America's powerful interest in protecting the intellectual property rights of its citizens and protecting consumers. Louis Vuitton has acquired valid and enforceable trademarks. Using and promoting those trademarks for generations, many of Louis Vuitton's trademarks have become famous marks and have achieved secondary meaning. Counterfeits undermine those investments and deceive consumers here, and abroad. The negative effects of counterfeit goods are widely known and the United States has an interest in eliminating their sale and punishing those who facilitate their production and sale.

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule   - 6 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Trademark Infringement Claim.

Defendants' arguments that the Lanham Act should not apply in this instance are either wrong or irrelevant to the analysis. The citizenship of the direct infringers is irrelevant. Additionally, it is clear that the infringing activity perpetrated by Defendants' customers has a substantial effect in the United States. It is impossible for Plaintiff to obtain any sort of sales records from the infringing parties but it is common knowledge that counterfeit goods have an immensely negative effect on American commerce. To expect Louis Vuitton's investigators to purchase enough knock-off product to show a substantial effect is preposterous. Plaintiff's investigators have shown the ease with which an unsuspecting consumer can purchase a counterfeit product. This, with the additional reasons noted above, demonstrates the negative effect the infringers have on American commerce.

Defendants' argument that the Court needs jurisdiction over the direct infringers is also wrong. All that is required as that an underlying direct infringement have occurred; there is no requirement that the Court also have jurisdiction over third parties who are not Defendants in this case. There need not be "substantial" or "continuous and systematic" contact by the underlying infringers with this jurisdiction. The underlying infringers only need to have perpetrated the underlying infringement of which the Defendants had knowledge, control and to which they materially contributed or concerning which they remained willfully blind.

### iv. **Continues to Supply a Product or Services.**

Once again, Defendants misstate the applicable standards and, in a desperate attempt to avoid the liability which should properly attach to their systematic, ongoing and knowing contributory infringement, seek to confuse applicable principles. As stated in *Inwood*, *supra*, "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit." *Id.* at 854.

Plaintiff asserts the Ninth Circuit decision in *Lockheed, supra*, requires consideration of additional elements, specifically "direct control and monitoring". However, the *Lockheed* case

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule     - 7 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Trademark Infringement Claim.

indicated that the test was to consider the "extent of control exercised by the defendant over the third party's means of infringement" not that direct control and monitoring were required elements. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999). Defendants' attempt to add additional elements to the claim is properly rejected.

First, Defendants also provide goods. To suggest different standards apply with respect to their provision of goods (the server capacity, router and bandwidth), to other elements of the "package" sold by them would be unduly confusing.

Second, such a distinction is not required. As noted in *Lockheed*, the Court adopted the distinction while noting that the "service" supplied by the defendant in *Fonovisa, supra*, was more akin to products than to services and that such services did not mandate a different standard for liability. *Id.* at 984. This is also based, in part on the common law responsibilities of a landlord for activity occurring on rented premises – to which this fact pattern more closely correlates. *Id.*; *see also*, *Hard Rock Café Licensing Corp. v. Concession Svcs., Inc.,*, 955 F 2d 1143, 1148 (7th Cir. 1992). This court also agreed that:

> "In this case, Defendants' activity as Internet service providers is more like the flea market proprietors in Fonovisa than the domain name translation service in Lockheed. Here, Defendants do not simply translate domain names into IP addresses. Defendants physically host websites on their servers and route internet traffic to and from those websites. This service is the Internet equivalent of leasing real estate. Defendants' services, combined with Defendants' ability to remove infringing websites, entails a level of involvement and control that goes beyond "rote translation." As with the flea market operators in Fonovisa, Defendants cannot remain "willfully blind" to trademark infringement taking place on their servers."

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., et al.*, CV 07-3952 JW, Docket #99, pp. 16:24- 17:5, Court's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (N.D. Cal. December 23, 2008). It is therefore law of the case that the heightened standard asserted on behalf of Defendants does not apply.

Defendants' cited cases are also factually dissimilar and their holdings inapplicable. *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 689 (D. Md. 2001) in particular was a case involving a domain name dispute. The parties there also did not have the kind of website- webhost relationship as exists in the present case. In *SB Designs v. Reebok Int'l, Ltd.*, 338

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule         - 8 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Trademark Infringement Claim.

F. Supp. 2d 904, 913 (N.D. Ill. 2004) some allegedly infringing websites were not infringing at all as containing fan postings and the like. *Id*. at 913. There was also no evidence that the allegedly infringing websites were owned by, endorsed by, or otherwise affiliated with Reebok at all. *Id.* at 911-913. Unlike the Defendants here, Reebok was not alleged to have been the host of the websites, nor were they found to have any actionable connection to the allegedly infringing websites, period. *Habeeba's Dance for the Arts, Ltd. v. Knoblauch*, 430 F. Supp. 2d 709, (S.D. Ohio 2006) is even more attenuated as it involved the alleged infringing use of plaintiff's trademark in connection with a dance symposium put on by the defendant. The *Habeeba's* case did not even involve websites or web hosts.

In contrast, Plaintiff's evidence clearly shows that Defendants continued to provide IP addresses, connectivity and server space to infringing websites and counterfeiters, despite being aware of their infringing nature and activities.[5] Plaintiff entered evidence that conclusively shows Defendants marketing of server space and IP addresses to direct trademark infringers. Defendants actively supported and promoted the infringing websites by continuously and purposefully ignoring notices from trademark holders that notified Defendants of the infringing conduct occurring on their servers. Defendants' contentions are without merit and their motion properly denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Judgment as a Matter of Law Regarding Contributory Trademark Infringement Claim.

Dated: August 24, 2009                                 J. Andrew Coombs, A Professional Corp.

                                                                                                                       /s/ J. Andrew Coombs
                                                                                                                       By: J. Andrew Coombs
                                                                                                                           Annie Wang
                                                                   Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

---

[5] For these same reasons, Defendants' arguments regarding willful blindness are properly rejected. Because Defendants provide goods (as well as services) the willful blindness standard for liability applies.

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule                    - 9 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Trademark Infringement Claim.