IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Louis Vuitton Malletier, S.A., | NO. C 07-03952 JW |
| Plaintiff, | **CLOSING INSTRUCTIONS** |
| v. | |
| Akanoc Solutions, Inc., et al., | |
| Defendants. | |

    Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law which applies to this case. Copies of these instructions have been made available for you to consult.

    As I have instructed you, it is your duty to find the facts from all the evidence in the case. To those facts you must apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. In deciding the case you must not be influenced by any prejudices or sympathy. This means that you must decide the case solely on the evidence before you and according to the law. You will recall that you took an oath promising to do so at the beginning of the case.

    You must follow all of my instructions. You must not single out some and ignore others; they are all important.

    The evidence from which you are to base your verdict consists of: the sworn testimony of witnesses, both on direct and cross-examinations, regardless of who called the witness; the exhibits which have been received into evidence; the facts

which have been admitted during pre-trial proceedings; and any facts to which the lawyers have agreed or stipulated. The deposition testimony of one or more witnesses have been read or displayed. Deposition testimony is given under oath. You should give it the same force and effect as testimony given here in trial.

You must decide all questions of fact in this case from the evidence received in this trial and not from any other source. You must not make any independent investigation of the facts or the law or consider or discuss facts as to which there is no evidence. This means, for example, that you must not perform any research on your own or consult reference works for additional information. You must also not conduct any experiments.

If there is a conflict between the testimony of one or more witnesses and that of other witnesses, you may have to decide which testimony to believe and which testimony not to believe. You may disbelieve all or any part of any witness' testimony. In making that decision, you should take into account a number of factors including the following:

(1) Was the witness able to see, or hear, or know the things about which that witness testified?

(2) How well was the witness able to recall and describe those things?

(3) What was the witness' manner while testifying?

(4) Did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?

(5) How reasonable was the witness' testimony when considered in light of all the evidence in the case?

(6) Was the witness' testimony contradicted by what that witness said or did at another time, or by the testimony of other witnesses, or by other evidence?

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

The persuasiveness of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other. You must consider all the evidence in the case, and you may decide that the testimony of a smaller number of witnesses on one side has greater persuasiveness than that of a larger number on the other side.

You have heard testimony from individuals who, because of education or experience, have become experts in a particular field. The law permits experts to state opinions about matters in the field of their expertise and they are permitted to state the reasons for those opinions. Expert opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves. In deciding whether to believe an expert's testimony, you should consider the expert's training and experience, the facts the expert relied on, and the reasons for the expert's opinion.

Evidence may be direct or circumstantial. Direct evidence is testimony about an event by a witness who personally saw or heard or performed the event. Circumstantial evidence is indirect evidence about an event; that is, it is direct evidence that one event took place from which one can infer that another event, which was not itself directly observed, took place. You are to consider both direct and circumstantial evidence. The law permits you to consider direct and circumstantial evidence to be of equal persuasiveness. However, it is for you to decide how persuasive to consider any evidence.

During the trial, I have ordered that evidence be stricken from the record and instructed you to disregard the evidence. When you are deciding the case, you must not consider evidence which I told you to disregard.

During your deliberations, you will have paper copies of the documentary evidence. With respect to electronic evidence, we will provide you with a computer on which to view the exhibits. I have direct Ms. Garcia, the Deputy Clerk to assist you in understanding how to operate the equipment. You will also be provided with a list of all exhibits which have been received in evidence. If you need additional equipment or supplies, you may make a request by sending a note.

The parties to this case include corporations. All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party. Under the law, a corporation is considered to be a person and like a person, a corporation is responsible for its conduct. A corporation acts through its employees, agents, directors, or officers. During these instructions when I speak of the conduct of Louis Vuitton Malletier, S.A., Akanoc Solutions, Inc., Managed Solutions Group, Inc. ("MSGI"), I am referring to the conduct of their respective employees, agents, directors, and officers performed within the scope of their authority. You should decide the case as to each Defendant separately. However, in doing so you might find that one person took actions on behalf of more than one Defendant. If so, you should include each of those Defendants in your decision. Unless otherwise stated, the instructions apply to all parties.

## MULTIPLE CLAIMS

The Plaintiff is making two claims against the Defendants: Contributory Trademark Infringement and Contributory Copyright Infringement. If the Plaintiff proves all of the elements of each claim, the Plaintiff is entitled to your verdict as to each claim.

4

**BURDEN OF PROOF**

Louis Vuitton has the burden of establishing that Defendants Akanoc, MSGI and Steven Chen contributed to trademarks and copyrights infringement by another company by a preponderance of the evidence. This means that Louis Vuitton has to produce evidence which, considered in light of all the facts, leads you to believe that what Louis Vuitton claims is more likely true than not true. To put it differently, if you were to imagine that the persuasiveness of evidence could be weighed on scales, and you could put evidence tending to prove, for example, the likelihood that Akanoc, MSGI and Steven Chen contributed to trademarks and copyrights infringement on one side of a scales and evidence tending to prove the likelihood that these Defendants did not contribute to trademark and copyrights infringement on the other side of the scales, the evidence on the "likelihood of contributory infringement" side would have to make the scale tip in Louis Vuitton favor. If you evaluate the evidence and you find that the evidence is evenly balanced between the two sides, your decision on contributory trademarks and copyrights infringement must be in favor of Akanoc, MSGI and Steven Chen. If you evaluate the evidence and you decide that what Louis Vuitton claims is more likely true than not true, in other words, if the scale tips to Louis Vuitton's side–even slightly, then your decision should be in favor of Louis Vuitton.

**FIRST CLAIM**

**CONTRIBUTORY TRADEMARK INFRINGEMENT**

Plaintiff's First Claim is for Contributory Trademark Infringement. A trademark is a word, a name, a symbol, a device, or a combination of them that indicates the source of goods. The owner of a trademark has the right to exclude others from using that trademark.

The trademark laws balance three often-conflicting goals:

(1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market;

(2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and

(3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge. In my instructions, I will identify types of facts you are to consider in deciding if the Defendants are liable to the Plaintiff for contributory infringement of Plaintiff's trademarks.

One way for the Plaintiff to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

In this case, you have received evidence that the Plaintiff received registrations for the trademarks identified during these proceedings, including "LOUIS VUITTON," "LV" and "Damier" pattern trademarks and these registrations are now "incontestable" under the trademark laws. This means that the plaintiff's registration of the trademark is conclusive evidence of Plaintiff's ownership of those trademarks and that the trademarks are valid and protectable.

There is a presumption of a likelihood of confusion, or a likelihood of confusion as a matter of law, when the offending mark is a counterfeit mark, or a mark virtually identical to a previously registered mark coupled with the intent to pass off or borrow from established good will.

6

In order to recover for contributory trademark infringement you must find that Plaintiff has proved by a preponderance of the evidence the following:

(1) Defendants sold web hosting and Internet access services to some other persons or companies or in the case of an individual Defendant, owned or operated a company that sold such services. I will refer to individuals or companies to whom Defendants sold web hosting and Internet access services as "Defendants' customers;"

(2) Defendants knew or should have known that Defendants' customers were using Defendants' services to directly infringe or to facilitate infringement of Plaintiff's trademark;

(3) One or more of Defendants' customers used the services provided by Defendants to infringe Plaintiff's trademark or to facilitate infringement by another of Plaintiff's trademark;

(4) Plaintiff was damaged by the infringement.

In order to prove that "one or more of Defendants' customers used the services provided by Defendants to infringe Plaintiff's trademark," Plaintiff must prove that a web site of Defendants' customers or some other successor in interest to Defendants' customers knowingly and intentionally used a mark in connection with the offering for sale, sale, or distribution of goods in the United States or in a way that would substantially affect commerce in the United States; that the mark was counterfeit, that is, it was not a genuine mark applied to the goods or authorized to be applied by the Plaintiff; and the use was likely to confuse or deceive.

You must consider whether the Defendants' customers' use of the trademark is likely to cause confusion about the source of the Plaintiff's or the Defendants' customers' goods. I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily

7

resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

    (1) Strength or Weakness of the Plaintiff's Mark. The more the consuming public recognizes the Plaintiff's trademark as an indication of origin of the Plaintiff's goods, the more likely it is that consumers would be confused about the source of the Defendants' customers' goods if the they use a similar mark.

    (2) Defendants' customers' Use of the Mark. If the Defendants' customers and Plaintiff use their trademarks on the same, related, or complementary kinds of goods, there may be a greater likelihood of confusion about the source of the goods than otherwise.

    (3) Similarity of Plaintiff's and Defendants' Customers' Marks. If the overall impression created by the Plaintiff's trademark in the marketplace is similar to that created by the Defendants' customers' trademark in appearance, there is a greater chance that consumers are likely to be confused by Defendants' customers' use of a mark. Similarities in appearance weigh more heavily than differences in finding the marks are similar.

    (4) Actual Confusion. If use by the Defendants' customers of the Plaintiff's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However, actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the Defendants' customers' use of the trademark may still be likely to cause confusion. As you consider whether the trademark used by the Defendants' customers create for consumers a likelihood of confusion with the Plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial

actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5) Defendants' Customers' Intent. Knowing use by Defendants' customers of the Plaintiff's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the Plaintiff's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that the Defendants' customers acted knowingly, the use of Plaintiff's trademark to identify similar goods may indicate a likelihood of confusion.

(6) Marketing/Advertising Channels. If the Plaintiff's and Defendants' customers' goods are likely to be sold in the same or similar manner, such as on the Internet, stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7) Purchaser's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the Plaintiff's and Defendants' customers' trademarks.

(8) Product Line Expansion. When the parties' products differ, you may consider how likely the Plaintiff is to begin selling the products for which the Defendants' customers are using the Plaintiff's trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

To find that "Defendants knew or should have known that Defendants' customers were using Defendants' services to infringe or to facilitate infringement of Plaintiff's trademark," you must find that Plaintiff has proved that Defendants had

9

actual knowledge that one or more of Defendants' customers were in the business of themselves or of facilitating others to sell goods using counterfeit marks and would use the services purchased from Defendants for that purpose or should have known that one or more of Defendants' customers were doing so. In making that judgment, you may consider a number of factors, including the following:

(1) The timing, content and frequency of notices provided to Defendants by the owner of a mark that Defendants' services were being used to infringe Plaintiff's trademarks;

(2) Actions or inaction by Defendants after receiving notice and the effectiveness of any actions with respect to the provision of service by Defendants;

(3) Policies and practices by the Defendants imposed on its customers with respect to their using its services to infringe trademarks of others;

(4) The degree of control that Defendants could and did exercise over its servers or services and the use of its servers or services;

(5) The technical ability and feasibly of Defendants terminating the use of its servers or services by a direct infringer, without affecting its provision of services to legitimate users;

"Knew or should have known" standard is judged from the standpoint of what a reasonable person would do under the same or similar circumstances.

A web hosting server provider is not liable for contributory trademark infringement solely because the provider does not monitor the content of web sites stored on its servers. Liability must be based upon proof that the service provider knew that its services were being used to infringe and then acting or failing to act in a way to allow the infringement to continue.

10

It is no defense to contributory trademark infringement or contributory copyright infringement that termination of services to a direct infringer could be circumvented by the direct infringer switching to use of the services of some other company to continue direct infringement.

## SECOND CLAIM
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time.

Copyrighted work can be a literary work, musical work, dramatic work, pictorial work, graphic work, as well as various other forms of audiovisual works. However, facts, ideas, procedures, processes, systems, methods of operation, concepts, principles or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

Copyright automatically exists in a work the moment it is fixed in any tangible medium of expression. The owner of the copyright may register the copyright by delivering to the Copyright Office of the Library of Congress a copy of the copyrighted work. After examination and a determination that the material deposited constitutes copyrightable subject matter and that legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

In this case, Louis Vuitton alleges that Akanoc, MSGI and Steven Chen have contributed to the infringement of its valid copyrights. The copyrighted works involved in this trial are:

11

| Copyright | Registration No. | Date Published | Date Registered |
|---|---|---|---|
| Multicolor Monogram Black Print – Exhibit 450 | VA 1-250-121 | 12/18/02 | 6/24/04 |
| Mutlicolor Monogram White Print – Exhibit 449 | VA 1-250-120 | 12/18/02 | 6/24/04 |

If you find that the various websites infringed Louis Vuitton's copyright in selling counterfeited Louis Vuitton products, you may proceed to consider the Plaintiff's claim that the Defendants contributory infringed that copyright. In order to recover for contributory copyright infringement you must find that Plaintiff has proved by a preponderance of the evidence the following:

(1) Defendants sold web hosting and Internet access services to some other persons or companies or in the case of an individual Defendant, owned or operated a company that sold such services. I will refer to individuals or companies to whom Defendants sold web hosting and Internet access services as "Defendants' customers;"

(2) Defendants knew or should have known that Defendants' customers were using Defendants' services to infringe or to facilitate infringement of Plaintiff's copyright;

(3) One or more of Defendants' customers used the services provided by Defendants to infringe Plaintiff's copyright or to facilitate infringement by another of Plaintiff's copyright in the United States.

(4) Plaintiff was damaged by the infringement.

The factors and definitions I gave to you in the instructions on contributory trademark infringement may be used to infer knowledge with respect to contributory copyright infringement.

**DEFENSE TO COPYRIGHT INFRINGEMENT**

Even if you find that Defendants' customers use Defendants' services to sale products that infringe Plaintiff's copyrights, Defendants are entitled to rely on the "safe harbor" provisions of the Digital Millennium Act ("DMCA"), Title II, entitled Online Copyright Infringement Liability Limitation Act ("OCILLA") as a defense. This provision enables qualifying service providers to limit their liability for claimed copyright infringement. These safe harbors provide protection from liability for:

(1) transitory digital network communications;

(2) system caching;

(3) information residing on systems or networks at the direction of users; and

(4) information location tools.

To avail itself of any of the four safe harbors provision, Defendants must prove by preponderance of the evidence that:

(1) they are "service providers;"

(2) they adopted, "reasonably implemented" and informed subscribers of a policy providing that they may, in appropriate circumstances, terminate the accounts of repeat infringers;

(3) they accommodated and did not interfere with "standard technical measures" used by copyright owners to identify or protect copyrighted works;

(4) they designated an agent to receive notifications of claimed infringement by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office, substantially the following information:

    (a) the name, address, phone number, and electronic mail address of the agent;

    (b)  other contact information which the Register of Copyrights may deem appropriate;

 (5) upon notification of claimed infringement, they responded expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

"Service provider" means a provider of online services or network access, or the operator of facilities therefor, and includes an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received.

"Reasonably implemented" policy means that the service provider has a working notification system, a procedure for dealing with DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications. An implementation is reasonable if, under appropriate circumstances, the service provider terminates users who repeatedly or blatantly infringe copyright.

"Standard technical measures" are defined as "technical measures that are used by copyright owners to identify or protect copyrighted works" and which:

 (1) have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process;

 (2) are available to any person on reasonable and nondiscriminatory terms; and

 (3) do not impose substantial costs on service providers or substantial burdens on their systems or networks.

14

# DAMAGES

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue.

# TRADEMARKS STATUTORY DAMAGES

If you find for the Plaintiff on the Plaintiff's contributory trademark infringement claim, you must determine the Plaintiff's damages. The Plaintiff seeks a statutory damage award, established by Congress for each work infringed. In a case involving the use of a counterfeit mark in connection with sale or distribution of goods or services, the Plaintiff is entitled to statutory damages if:

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the you find that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed.

The Defendants are liable for willful contributory infringement if you find that the Plaintiff has proved by a preponderance of the evidence at least one of the following:

(1) Defendants acted in bad faith;

(2) Defendants acted with deliberate disregard for Plaintiff's trademark rights; or

(3) Defendants acted with intent that Defendants' customers infringe Plaintiff's trademarks.

## COPYRIGHTS STATUTORY DAMAGES

If you find for the Plaintiff on the Plaintiff's contributory copyright infringement claim, you must determine the Plaintiff's damages. The Plaintiff seeks a statutory damage award, established by Congress for each work infringed. Its purpose is to penalize the infringer and deter future violations of the copyright laws. The amount you may award as statutory damages is not less than $750, nor more than $30,000 for each work you conclude was infringed.

However, if you find the infringement was innocent, you may award as little as $200 for each work innocently infringed. An infringement is considered innocent when the Defendants proved both of the following elements by a preponderance of the evidence:

(1) Defendants were not aware that their acts contributed to infringement of Plaintiff's copyright; and

(2) Defendants had no reason to believe that their acts contributed to an infringement of Plaintiff's copyright.

If you find the infringement was willful, you may award as much as $150,000 for each work willfully infringed. An infringement is considered willful when the Plaintiff has proved both of the following elements by a preponderance of the evidence:

(1) Defendants engaged in acts that contributed to infringement of Plaintiff's copyright; and

(2) Defendants knew that those acts contributed to the infringement of Plaintiff's copyright.

## ARGUMENT OF COUNSEL

I will now permit counsel for the parties to make their closing arguments. Counsel for the Plaintiff will make a closing argument, followed by the closing

16

argument by counsel for the Defendants. If Plaintiff's counsel does not use all the allotted time, counsel for the Plaintiff will be permitted a brief rebuttal argument and then I will have some brief additional instructions for you with respect to the conduct of your deliberations. Remember, statements of the attorneys are not evidence.

[FOLLOWING CLOSING ARGUMENT]

**DUTY TO DELIBERATE**

When you retire, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

During the course of your deliberations, you may take rest breaks or lunch breaks as you wish. Since we will be standing by pending your deliberations, please send us a note as to what your schedule will be. During any break, do not deliberate further upon the case. Cease all deliberations until your foreperson has brought you back into session with all of you present.

**RETURN OF VERDICT**

After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that will be given to you. Sign and date the form and advise the Ms. Garcia, the Deputy Clerk, that you are ready to return to the courtroom.

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you will find a form for that purpose included in the material sent into the jury room. Any one of you may communicate with me by filling out the form. Bring it into my Chambers and give it to me or a member of my staff. No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

Dated: August 26, 2009

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Annie S Wang annie@coombspc.com
Brian S. Edwards bse@gauntlettlaw.com
David A. Gauntlett info@gauntlettlaw.com
J. Andrew Coombs andy@coombspc.com
James A. Lowe info@gauntlettlaw.com

**Dated: August 26, 2009**              **Richard W. Wieking, Clerk**

                                        **By:     /s/ JW Chambers**
                                               **Elizabeth Garcia**
                                               **Courtroom Deputy**