1   J. Andrew Coombs (SBN 123881)
    *andy@coombspc.com*
2   Annie S. Wang (SBN 243027)
    *annie@coombspc.com*
3   J. Andrew Coombs, A P. C.
    517 East Wilson Avenue, Suite 202
4   Glendale, California 91206
    Telephone:  (818) 500-3200
5   Facsimile:   (818) 500-3201

6   Attorneys for Plaintiff
    Louis Vuitton Malletier, S.A.
7

8                        UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

10  Louis Vuitton Malletier, S.A.,              )   Case No. C 07 3952 JW
                                                )
11                          Plaintiff,          )   SUPPLEMENTAL BRIEF RE
              v.                                )   APPLICABILITY OF US COPYRIGHT
12                                              )   AND TRADEMARK LAWS TO
    Akanoc Solutions, Inc., et al.              )   CALIFORNIA BASED WEB HOSTING
13                                              )   DEFENDANTS; REQUEST FOR ENTRY
                            Defendants.         )   OF JUDGMENT
14                                              )
                                                )   Trial:  August 18, 2009-August 29, 2009
15                                              )
                                                )
16  _____)

17       TO THE COURT AND TO DEFENDANTS:

18            Pursuant to the Court's request, Plaintiff Louis Vuitton Malletier, S.A. ("Plaintiff" or

19  "Louis Vuitton") submits the following Supplemental Brief re Applicability of US Copyright and

20  Trademark Laws to California Based Web Hosting Defendants.

21

22  DATED: September 3, 2009              J. Andrew Coombs, A Professional Corp.

23
                                          By:   /s/ J. Andrew Coombs_____
24                                              J. Andrew Coombs
                                                Annie S. Wang
25                                          Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

26

27

28

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**                                                                    1

**ARGUMENT**

    **A.**    <u>**Defendants Cannot Meet the Standard Required to Set Aside the**</u>
        <u>**Unanimous Verdict Reached in This Matter.**</u>                          2

    **B.**    <u>**Copyright.**</u>                                                   3

        **1.**    <u>**United States Law Is Properly Applied to Direct Infringements**</u>
              <u>**Occurring in the United States.**</u>                              3

            **a.**    <u>**Direct Infringement by Copying onto Defendants' Servers.**</u>     3

            **b.**    <u>**Direct Infringement by Importation into the United States.**</u>   6

        **2.**    <u>**Application of United States Law to Defendants' Own Conduct.**</u>   7

    **C.**    <u>**Trademark.**</u>                                                  10

        **1.**    <u>**The Lanham Act Applies to Use in Commerce of the Underlying Direct**</u>
              <u>**Infringements at Issue in the Case and Has Applied to Acts Even**</u>
              <u>**More Attenuated than the Direct Counterfeiting At Issue Here.**</u>    11

        **2.**    <u>**Even the Heightened Standard For Applicability of the Lanham Act**</u>
               <u>**Employed by the Court Was Met Due to the Nature and Volume of**</u>
              <u>**Counterfeiting Taking Place on Defendants' Servers.**</u>           12

**CONCLUSION**                                                                      15

Louis Vuitton v. Akanoc, et al.: Supplemental Brief re
Applicability of Copyright and Trademark Laws

1

## **TABLE OF AUTHORITIES**

2

3

**CASES**

4

*A&M Records, Inc., et al. v. Napster, Inc.*, 239 F.3d 1004, 1011 (9th Cir. 2001). ....................... 8, 9

5

*Advanced Computer Servs. of Mich., Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356, 364 fn. 9
   (E.D. Va. 1994) ..................................................................................................................... 5

6

*American Rice v. Arkansas Rice Growers Coop. Ass'n*, 701 F.2d 408, 414 (5th Cir. 1983)............. 13

7

*Atl. Recording Corp. v. Howell,* 554 F. Supp. 2d 976, 985 (D. Ariz. 2008) .................................... 7

8

*Berry v. United States,* 312 U.S. 450, 453, 61 S. Ct. 637, 85 L. Ed. 945 (1941) ............................. 2

9

*BMG Music v. Perez*, 952 F.2d 318, 319 (9th Cir. 1991).................................................................. 6

10

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005). .......................................... 11

11

*Brookfield Communs. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999) .................. 11

12

*CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 551 (4th Cir. 2004)......................................... 8

13

*El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005). ......................................................... 2

14

*Fin. Express LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160, 1172 (C.D. Cal. 2008)...................... 11

15

*Harper v. City of L.A.*, 533 F.3d 1010, 1021 (9th Cir. 2007). ......................................................... 2

16

*Int'l Bancorp, LLC v. Societe Des Bains De Mer Et Du Cercle Des Etrangers,* 329 F.3d 359, 364
   (4th Cir. 2003) ....................................................................................................................... 11

17

18

*ISC-Bunker Ramo Corp. v. Altech, Inc.,* 765 F. Supp. 1310, 1332 (N.D. Ill. 1990) ........................ 5

19

*Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001)..................... 2

20

*LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). .............................................. 2

21

*Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 745 (D. Md. 2003)...................... 5

22

*MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993) ........................... 4, 8

23

*Mattel, Inc. v. MCA Records*, 296 F.3d 894, 900 (9th Cir. 2002) ................................................... 13

24

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).............................. 8-10

25

*NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 235 (7th Cir. 1995)......................................... 4

26

*Nintendo of Am. v. Aeropower Co.,* 34 F.3d 246, 249-50 fn. 5 (4th Cir. 1994). ...................... 10, 13

27

*Ocean Garden v. Marktrade Co.*, 953 F.2d 500, 505 (9th Cir. 1991)............................................. 10

28

*Olan Mills Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1348 (8th Cir. 1994) ............................... 7

*Parfums Givenchy v. C & C Beauty Sales,* 832 F. Supp. 1378, 1390 (C.D. Cal. 1993) ................... 6

*Parfums Givenchy v. Drug Emporium*, 38 F.3d 477, 480 (9th Cir. 1994) ........................... 6

*Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 717 (9th Cir. 2007) ...........................9

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160, 1171-72 (9th Cir. 2007)............... 4, 9-10

*Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194 (11th Cir. 2001)...................... 11

*Playboy Enter., Inc., v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1024 (9th Cir. 2004)............. 11

*Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552, 554 (9th Cir.1992)............................... 13

*Reebok Int'l v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir. 1995)....................................... 13

*Religious Technology Center, et al. v. Netcom On-Line Communication Services, Inc., et al.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995)............................................................ 8

*Ryan v. Carl Corp.*, 23 F. Supp. 2d 1146, 1149 (N.D. Cal. 1998) ..................................... 7

*Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002) ................................................ 2

*Sega Enterprises Ltd. v. MAPHIA*, 857 F. Supp. 679, 683 (N.D. Cal. 1994) ........................... 4, 8

*Steele v. Bulova Watch Co.*, 344 U.S. 280, 283 (1952)........................................ 11, 13-15

*Stenograph L.L.C. v. Bossard Assocs.*, 144 F.3d 96, 100 (D.C. Cir. 1998) ....................... 4

*Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1096 (9th Cir. 1994) .............. 6

*Timberline Lumber Co. v. Bank of America Nat. Trust and Savings Assoc.*, 549 F.2d 597 (9th Cir. 1976);............................................................................................... 13

*Torres v. City of L.A.*, 548 F.3d 1197, 1205 (9th Cir. 2008) ....................................... 2

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir. 1985). .................. 2

*United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 92 (2d Cir. 1997) .... 11

*Vault Corp. v. Quaid Software, Ltd.*, 847 F.2d 255, 260 (5th Cir. 1988)................................ 5

*Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 428 (9th Cir. 1977) ................. 12-13

**STATUTES**

17 U.S.C. §101 ...................................................................................... 4

17 U.S.C. §102 ...................................................................................... 3

17 U.S.C. §501 ...................................................................................... 3

Louis Vuitton v. Akanoc, et al.: Supplemental Brief re
Applicability of Copyright and Trademark Laws

17 U.S.C. §602(a)(1)-(2) ................................................................................................... 6-7

Fed. R. Civ. P. 50 ............................................................................................................... 1

**OTHER**

2 MELVILLE B. NIMMER & DAVID NIMMER,
   *NIMMER ON COPYRIGHT* § 8.08[A][1], at 8-113 (1997) ............................................ 5

Louis Vuitton v. Akanoc, et al.: Supplemental Brief re
Applicability of Copyright and Trademark Laws

1

2

## **INTRODUCTION**

3        Defendants' argument that the imposition of liability upon their conduct constitutes an

4  improper extra-territorial application of United States law is properly rejected.  Judgment should

5  be entered in favor of Plaintiff as provided for by the unanimous verdict in favor of Louis Vuitton.

6  Defendants' assertions represent a further unconscionable effort to avoid responsibility for their

7  clearly willful, deliberate and contributory conduct.  One need only ask whether Defendants would

8  willingly submit to jurisdiction in the People's Republic of China.

9        The law abhors a vacuum yet that is what the Defendants hope to create with respect to

10 their conduct here.

11       Application of United States law is proper and appropriate for several separate and

12 independent reasons, each of which warrants a rejection of Defendants' arguments and entry of

13 judgment.  First, as previously set forth in Opposition to Defendants' motions under Rule 50(a) the

14 Court has jurisdiction over the underlying direct infringement – both because of offers made in the

15 United States to American consumers and because product is shipped to those consumers pursuant

16 to those offers.  These activities violate Louis Vuitton's display, distribution and importation rights

17 under the Copyright Act and constitute infringing uses in commerce under the Lanham Act.

18       Second, the storage of these offers on Defendants' servers and the routing of traffic to those

19 servers using hardware and software located at the Defendants' data center but a few blocks from

20 the courthouse where the jury entered its verdict constitutes an infringement for purposes of the

21 Copyright Act under long-established authority in the Ninth Circuit and elsewhere, and distinct

22 uses in commerce for purposes of the Lanham Act.

23       There was no error in allowing the claims to be decided by the jury.  The law is clear and

24 practice dictates a consistent outcome.  Defendants Akanoc Solutions, Inc., Managed Solutions

25 Group, Inc. and Steve Chen must answer under the Copyright Act and Lanham Act for their acts of

26 knowingly hosting counterfeit websites and facilitating sales of counterfeit and pirated product in

27 the United States.  There is no question that the laws apply according to controlling case law and

28 the practicalities of the digital world.

## ARGUMENT

**A.**     **Defendants Cannot Meet the Standard Required to Set Aside the Unanimous Verdict Reached in This Matter.**

Cases decided under Rule 50 of the Federal Rules of Civil Procedure specify a high burden to undo a verdict reached by jury. Fed. R. Civ. P. 50 provides for judgment as a matter of law when "the evidence presented at trial permits only one reasonable conclusion." *Torres v. City of L.A.*, 548 F.3d 1197, 1205 (9th Cir. 2008) *citing Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002). "A motion for a judgment as a matter of law is properly granted only if no reasonable juror could find in the non-moving party's favor." *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005). "The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). "Although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe, and may not substitute its view of the evidence for that of the jury." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (internal quotations omitted). "In making this determination, the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." *Harper v. City of L.A.*, 533 F.3d 1010, 1021 (9th Cir. 2007). "If sufficient evidence is presented to a jury on a particular issue and if the jury instructions on the issue stated the law correctly, the court must sustain the jury's verdict." *Id. citing Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1014 (9th Cir. 1985). "The jury is the 'constitutional tribunal provided for trying facts in courts of law.'" *Id.* at 1021-22 *citing Berry v. United States,* 312 U.S. 450, 453, 61 S. Ct. 637, 85 L. Ed. 945 (1941). In light of these governing principles, the unanimous eight juror verdict for Plaintiff should not be disturbed.

Defendants' attempts to dodge responsibility for their actions have been a repeated theme. Despite the fact that virtually all of their contributory acts occurred in California, Defendants forward a groundless argument to claim that their actions are not subject to American law.

As described below, there are numerous separate and independent bases for the application federal intellectual property laws. Not only are there sufficient grounds for application of United States law to the underlying direct infringements, Defendants have acted with knowledge and continue to do business with those direct infringers. To say Defendants are not responsible for their actions here, in their home forum, at a courthouse a mere few blocks from their datacenter, is unfathomable and contrary to precedence and reason.

**B.      Copyright.**

    **1.      United States Law Is Properly Applied to Direct Infringements Occurring in the United States.**

        **a.      Direct Infringement by Copying onto Defendants' Servers.**

Unauthorized copying, display and distribution infringe the exclusive rights of the copyright owner. 17 U.S.C. §501. These acts are not disputed by Defendants – only whether any of these acts occurred within the United States. This too cannot seriously be disputed, especially in view of established authority finding that the fixation of data that infringes alone constitutes copying for purposes of the Copyright Act. Moreover, there is ample evidence in both evidence from individual websites[1] and in Defendants' promotional materials (Exhibit 583) to show that the infringing offers were aimed at the US marketplace.

Copyright protection applies to original works of authorship "fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. §102. This definition squarely includes data files and even 0's and 1's, if necessary, to the extent they require the aid of a machine or device to be perceived, and specifically, communicated to the

---

[1] To name just a few examples from the Admitted Exhibits: (1) most all of the websites were in English even if operated by non-U.S. or Chinese nationals; (2) shipping costs to the United States were pre-calculated (Ex.s 63, 72.1, 360.1); (3) prices for the counterfeit products, prices for discounts, prices for shipping and penalties were all expressed in US Dollars (Ex.s 72.1,  81, 98.3, 116, 163, 173, 210, 212, 360, 588, 590, 611, 613); (4) measures regarding seizure at customs were specifically stated and included restocking fees in US Dollars (Ex. 72.1); (5) some websites included the trademarks of PayPal, FedEx, UPS, and other US companies on the pages advertising counterfeit Louis Vuitton product (Ex.s 13 (attachments), 63, 63.2, 94, 163) and (6) some websites specifically included links to "USA" specific EMS Tracking websites (Ex. 356 p.2).

Defendants and internet users in the public at large.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007) ("The computer owner shows a copy "by means of a . . . device or process" when the owner uses the computer to fill the computer screen with the photographic image stored on that computer, or by communicating the stored image electronically to another person's computer.").

Evidence was presented in the record that infringing pictures could be viewed in the normal visual sense on the servers owned and controlled by Defendants, or, that they could be accessed and were accessed by the Defendants and members of the general public in the United States on numerous occasions through standard internet browsers.  The work is "fixed" when its "embodiment in a copy…is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than a transitory duration."  17 U.S.C. §101; *Perfect 10, Inc.,* 508 F.3d at 1160 ("In sum, based on the plain language of the statute, a person displays a photographic image by using a computer to fill a computer screen with a copy of the photographic image fixed in the computer's memory.").  The infringing copies in the present case are not briefly, automatically, or transitorily stored, but instead, reside on Defendants' servers for months, and in some cases, years.  E.g., bag925.com (subject of complaints beginning in February, 2007, was also found to be residing on Defendants' servers during the trial, more than two years later in August, 2009).

Courts have repeatedly held that uploading content can be a basis for finding direct infringement for systems operators.  *Sega Enterprises Ltd. v. MAPHIA*, 857 F. Supp. 679, 683 (N.D. Cal. 1994) ("The unauthorized copying of copyrighted computer programs is prima facie an infringement of the copyright," in a case involving electronic bulletin board operators).  Courts have also held that the mere loading of infringing software onto a computer creates an infringing copy.  *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993); *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 235 (7th Cir. 1995); *Stenograph L.L.C. v. Bossard Assocs.,* 144 F.3d 96, 100 (D.C. Cir. 1998) ("The language of the Copyright Act, case law, and common sense support the proposition that the installation of software onto a computer results in "copying"

within the meaning of the Copyright Act" *also citing* 2 MELVILLE B. NIMMER & DAVID NIMMER, *NIMMER ON COPYRIGHT* § 8.08[A][1], at 8-113 (1997) ("the Act's language 'makes clear that the input of a work into a computer results in the making of a copy'"); *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 745 (D. Md. 2003) (stating "[u]nauthorized electronic transmission of copyrighted text, from the memory of one computer into the memory of another, creates an infringing "copy" under the Copyright Act."); *Advanced Computer Servs. of Mich., Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356, 364 fn. 9 (E.D. Va. 1994) *citing Vault Corp. v. Quaid Software, Ltd.*, 847 F.2d 255, 260 (5th Cir. 1988) ("the act of loading a program from a medium of storage into a computer's memory constitutes a copy of the program"); *ISC-Bunker Ramo Corp. v. Altech, Inc.,* 765 F. Supp. 1310, 1332 (N.D. Ill. 1990).

An abundant number of cases clearly establish that mere storage of software (programs, data, code, etc.) is infringing because it necessarily makes a copy, and is sufficient to trigger liability.  The fact that the physical characteristic of the store data is allegedly unreadable[2] without the aid of additional software does not alter this fact.  These cases correctly focus on the computer on which the copy resides, not the location of the uploader or user.  Accordingly, Defendants' additional actions that took place in the United States subject them to the authority of the Copyright Act.

Defendants do not dispute the key fact that the forensic inspection of just a sample of Defendants' servers revealed over one thousand websites that were responsive to searches for Louis Vuitton keywords, and some websites that were found were the subject of notices of infringement from more than a year preceding the inspection.  One kind of direct infringement of Louis Vuitton's copyrights occurred through the display and offer for sale of counterfeit goods that originated from websites hosted on Defendants' servers and transmitted through their routers.  The Defendants materially contributed to all of that infringement here, in their data center in San Jose and corporate office in Fremont, even though they were given notice of the rampant piracy taking place on their systems.

---

[2] Defendants' expert testified that he needed to run a specific, separate program to reduce the image he had identified into 1's and 0's thereby admitting to fabricating Defendants' Exhibits 1548 and 1549.

b.        **Direct Infringement by Importation into the United States.**

Direct infringers using Defendants' equipment have also infringed through the

unauthorized importation of copies acquired outside the United States.  *BMG Music v. Perez*, 952

F.2d 318, 319 (9th Cir. 1991); *Parfums Givenchy v. Drug Emporium*, 38 F.3d 477, 480 (9th Cir.

1994); *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1096 (9th Cir. 1994).  In

particular, 17 U.S.C. §602(a)(1)-(2) provides:

> "(1) Importation. Importation into the United States, without the authority
> of the owner of copyright under this title, of copies or phonorecords of a
> work that have been acquired outside the United States is an infringement
> of the exclusive right to distribute copies or phonorecords under section
> 106 [17 USCS § 106], actionable under section 501 [17 USCS § 501].
>
> (2) Importation or exportation of infringing items. Importation into the
> United States or exportation from the United States, without the authority
> of the owner of copyright under this title, of copies or phonorecords, the
> making of which either constituted an infringement of copyright, or which
> would have constituted an infringement of copyright if this title had been
> applicable, is an infringement of the exclusive right to distribute copies or
> phonorecords under section 106 [17 USCS § 106], actionable under
> sections 501 and 506 [17 USCS §§ 501 and 506]."

The Ninth Circuit has applied the Copyright Act to goods manufactured abroad but

imported into the United States.  "Section 602(a) was enacted in order to provide greater remedies

for U.S. copyright owners, and 'makes the mere act of importation - regardless of sale - an

infringement of Section 106(3)'s distribution right, and prohibits unauthorized importation, not

only of pirated copies, but also of copies that were lawfully made.'" *Parfums Givenchy*, 38 F.3d at

481 *quoting Parfums Givenchy v. C & C Beauty Sales*, 832 F. Supp. 1378, 1390 (C.D. Cal. 1993)

(citing considerable legislative history supporting this holding).  The Ninth Circuit in *Parfums*

*Givenchy* and *Subafilms* explicitly recognized that §602(a) gives the exclusive right of distribution

by a copyright owner extraterritorial scope.  *Id.; Subafilms*, 24 F.3d at 1096.  Thus, in addition to

the acts of unauthorized copying onto the Defendants' servers based in San Jose, the importation

by Defendants' customers of piratical product into the United States, even if manufacture of those

infringing goods occurred outside of the United States, has been consistently recognized as an

infringement of the Copyright Act.

Even if for the moment the Court is inclined to entertain Defendants' meritless argument that Louis Vuitton somehow authorized the sale of pirated goods through the actions of its investigator, §602(a)'s application to even non-piratical goods indicates that it is the unauthorized nature of the infringer seller's acts that gives rise to infringement and that liability is not influenced by the actions of the purchaser or even the copyright owner who may have originally manufactured the good under its authority.

Additionally, courts have repeatedly upheld findings of infringement and awards of damages based upon investigatory efforts and have understood the purpose of investigatory purchases to confirm infringement so that lawsuits, if necessary, have additional evidentiary support. Some courts have expressly outlined this understanding that investigators do not authorize unlawful copying by conducting their investigations and unauthorized copies made at the request of investigators are still infringing. *Olan Mills Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1348 (8th Cir. 1994); *Atl. Recording Corp. v. Howell,* 554 F. Supp. 2d 976, 985 (D. Ariz. 2008); *Ryan v. Carl Corp.*, 23 F. Supp. 2d 1146, 1149 (N.D. Cal. 1998). To hold otherwise would severely inhibit a copyright owner's ability to police and enforce its rights and would encourage cases to be filed based on less substantiated evidence. Such a holding would be contrary to law and good practice. In addition to the numerous bases for a finding of direct infringement under US copyright law is the Defendants' customers' unlawful importation of piratical goods.

### 2. Application of United States Law to Defendants' Own Conduct.

Although it should be clear from the fact that United States law is properly applied to the underlying direct infringement enabled by Defendants' contributory conduct, the Court can separately find that United States law applies due to the Defendants' own role in this infringing activity.

The continued storage and maintenance of servers housing infringing copies by a web host after being given notice proved Louis Vuitton's claim for contributory infringement. As described above, the uploaded data is itself infringing. Continuing to aid the public distribution of such material with notice supports a finding that a service provider is liable for contributory

infringement for that direct infringement.  *Religious Technology Center, et al. v. Netcom On-Line Communication Services, Inc., et al.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995); *Sega Enterprises Ltd. v. MAPHIA*, 857 F. Supp. 679, 683 (N.D. Cal. 1994); *MAI Systems Corp. v. Peal Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993); *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 551 (4th Cir. 2004) (stating ISP can be indirectly liable for users downloading infringing content onto RAM).  In fact, the realities of the electronic world and intellectual property infringement in that space has been recognized by controlling case law for even less involved acts of contribution.

For example, in the *Grokster* case, Grokster did not even store the infringing data on its servers but rather, provided software for others to infringe.  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).  While the Supreme Court applied an "inducement" theory, the scenario before us is much more concrete.  In *Grokster*, there was certainly not the kind of control over the data or the fixation of the data that exists on Defendants' servers in their datacenter in San Jose.  The very source of the infringing material was on Defendants' servers and the very first "hop" onto the internet of any infringing copies was from Defendants' router.  Defendant Chen provided ample testimony about the desirability of his systems situated so close to the Internet backbone as well as sophisticated cooling and power supplies, 24 hour, 7 days a week service, and other additional means to ensure continuous internet access to material located on Defendants' servers.  These services were continually provided to infringers despite specific and general notice.  Therefore, Defendants' involvement satisfies the requirements of a finding of infringement as well as of the applicability of the Copyright Act.

Defendants' were even more directly involved in the underlying direct infringement than the defendant in *Napster*, where a "peer to peer" network was established and infringing material was made accessible using in part, Napster's network servers and server-side software.  *A&M Records, Inc., et al. v. Napster, Inc.*, 239 F.3d 1004, 1011 (9th Cir. 2001).  Unlike Napster where individuals were connected to individual "host" computers from all over the world, Defendants' servers *are* the host servers, these host servers are located in one place, in one data center in San Jose, California, and Defendants have absolute control over the accessibility of any infringing

1   conduct of which they are aware.  The Ninth Circuit has cited numerous times, "if a computer

2   system operator learns of specific infringing material available on his system and fails to purge

3   such material from the system, the operator knows of and contributes to direct infringement."

4   *Perfect 10, Inc.*, 508 F.3d at 1171; *Napster*, 239 F.3d at 1021.  There is no question that the

5   unauthorized copying and storage of a copyrighted work on a server is infringing.  It has been time

6   and again found to be so by controlling authority.  In addition to the unauthorized copying and

7   storage on Defendants' servers, it is Defendants' knowledge and continued provision of services

8   that indisputably occur here, that satisfies the jurisdictional and elemental nexus under the law of

9   contributory copyright infringement.

10          Defendants' cited authority is distinguishable or inapplicable.  In particular, Defendants'

11   cite *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 717 (9th Cir. 2007) and specifically include

12   the portion where the Court states that "Google's computers do not store the photographic

13   images…"  Defendants' Moving Papers pp. 5:28-6:2.  This authority is inapplicable on its face

14   because it is undisputed that Defendants' servers store the images in their image form and

15   broadcast them online through Defendants' routers.  Defendant Chen, Defendants' expert and

16   Defendants' employee Andrew Cheng confirmed these facts.  Defendants' expert in particular,

17   testified that he had to use a specific program to create the 0's and 1's that Defendants' referenced

18   at trial and in their motion.  The distinction of visually perceptible images versus 0's and 1's was

19   fabricated by the Defendants and admittedly so.  This argument is meritless.

20          Furthermore, "[b]oth *Napster* and *Netcom* acknowledge that services or products that

21   facilitate access to websites throughout the world can significantly magnify the effects of

22   otherwise immaterial infringing activities."  *Perfect 10, Inc.*, 508 F.3d at 1172, *citing Napster*, 239

23   F.3d at 1022; *Netcom*, 907 F. Supp. at 1375.  The Supreme Court has acknowledged that "'[t]he

24   argument for imposing indirect liability' is particularly 'powerful' when individuals using the

25   defendant's software could make a huge number of infringing downloads every day."  *Grokster,*

26   545 U.S. at 929.  Moreover, copyright holders cannot protect their rights in a meaningful way

27   unless they can hold providers of such services or products accountable for their actions pursuant

28

1    to a test such as that enunciated in *Napster.  See Id.* at 929-30 ("When a widely shared service or

2    product is used to commit infringement, it may be impossible to enforce rights in the protected

3    work effectively against all direct infringers, the only practical alternative being to go against the

4    distributor of the copying device for secondary liability on a theory of contributory or vicarious

5    infringement.")". *Perfect 10, Inc.*, 508 F.3d at 1172.  The recognition of the sheer volume of

6    infringement that are made possible by service providers, such as web hosts and these Defendants,

7    further support application of the laws to Defendants here.

8         Controlling law on the extraterritorial application of the Copyright Act overwhelmingly

9    supports the same conclusion that Defendants must answer to US Copyright Law.[3]

10         **C.     Trademark.**

11         Defendants' bankrupt argument regarding extraterritorial application of the Lanham Act

12   can be given no greater credence with respect to Louis Vuitton's claim for contributory trademark

13   infringement.  Although governed by different authority and standards, the Defendants' argument

14   has no more traction to trademark than it does to copyright.

15         Indeed, trademark law has broader extraterritorial application than copyright.  *Nintendo of*

16   *Am. v. Aeropower Co.*, 34 F.3d 246, 249-50 fn. 5 (4th Cir. 1994).  This is reflected by controlling

17   authority holding that the Lanham Act applies upon entry of infringing goods into foreign trade

18   zones so long as the trademark was validly registered.  *Ocean Garden v. Marktrade Co.*, 953 F.2d

19   500, 505 (9th Cir. 1991) ("entry of infringing goods into a foreign trade zone is a sufficient act in

20   commerce to trigger subject matter jurisdiction in federal courts under the Lanham Act, which, by

21   definition, can only be brought to vindicate marks that enjoy protection in the United States by

22   virtue of proper registration.").  Plaintiff far exceeds the required standards given the more than

23   ample evidence presented that supports the jury's findings.

24         Furthermore, the acts at issue in the present case, most of which occurred in the United

25   States, clearly establish the propriety of Lanham Act application under overwhelming Ninth

26

27   _____
     [3] Citation concerning the applicability of copyright law to the present case given "any" act of infringement
     occurring here, and further discussion re *Subafilms* was included in Plaintiff's Opposition to Defendants'
28   Motion for Judgment, Docket No. 213, and will not be repeated herein.

1    Circuit authority and the facts of this case.  The Defendants' fail to show that a reasonable juror

2    could not have found for Plaintiff as a matter of law.  *Supra section B.(2)*.

3                    1.  __The Lanham Act Applies to Use in Commerce of the Underlying Direct__

4                        __Infringements at Issue in the Case and Has Applied to Acts Even More__

5                        __Attenuated than the Direct Counterfeiting At Issue Here.__

6              "The Supreme Court has held that the "in commerce" requirement should be construed

7    liberally because the Lanham Act 'confers broad jurisdictional powers upon the courts of the

8    United States.'"  *Fin. Express LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160, 1172 (C.D. Cal.

9    2008) *citing Steele v. Bulova Watch Co.*, 344 U.S. 280, 283 (1952).  Many appellate courts,

10   including the Ninth Circuit have found that "commerce" under the Lanham Act necessarily

11   includes all the explicitly identified variants of interstate commerce.  *Playboy Enter., Inc., v.*

12   *Netscape Commc'ns Corp.,* 354 F.3d 1020, 1024 fn 11 (9th Cir. 2004); *Int'l Bancorp, LLC v.*

13   *Societe Des Bains De Mer Et Du Cercle Des Etrangers,* 329 F.3d 359, 364 (4th Cir. 2003)

14   (equating reach of Lanham Act to any commerce covered by the Commerce Clause of the

15   Constitution including foreign trade. *Id.* at 364-66); *United We Stand Am., Inc. v. United We Stand,*

16   *Am. N.Y., Inc.*, 128 F.3d 86, 92 (2d Cir. 1997) (same); *Planetary Motion, Inc. v. Techsplosion, Inc.,*

17   261 F.3d 1188, 1194 (11th Cir. 2001) (same).  The Ninth Circuit has commented that there is no

18   requirement of even an actual "sale" for proper application of the Lanham Act if the "use" is in

19   connection with the sale of goods and services."  *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672,

20   679 (9th Cir. 2005).  The Ninth Circuit has addressed this question in the Internet context

21   specifically, and presumed that the use of protected marks was "in commerce" concerning even

22   more indirect uses such as domain name registration and keyword stuffing or keying.  *Brookfield*

23   *Communs. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999) and *Playboy Enter., Inc.,*

24   354 F.3d at 1024.  Thus, the hosting of offers for products infringing valid, long standing United

25   States trademarks by United States based websites in the United States where product reached the

26   United States, is a straightforward application of the Lanham Act.  There can be no serious

27

28

question as to the use of the marks in commerce, nor can there be any serious doubt as to the applicability of the Lanham Act to this case.

The record strongly supports the jury's finding. There was clearly use in commerce of Plaintiff's trademarks on the counterfeit product and packaging obtained by Plaintiff's investigator, as well as from the website printouts admitted into evidence. There was no dispute that the items purchased by the investigator were imported into the United States, nor was there any dispute that the websites at issue were commercial, hosted on Defendants' servers in San Jose, and displayed the very infringing products that were later received by the investigator in the United States. The jury was diligent in satisfying themselves that there was evidence in the record to support the damages award they entered. The questions that the jury posed to counsel and the Court is further evidence of this diligence and methodical examination of the record. *See* Docket No. 234. Defendants' attempts to flatly ignore evidence in the record (inexplicably disregarding images that were stored on the servers as shown in Ex. 593.31 and testimony from Plaintiff's witnesses of personal knowledge of uses in commerce) or, interject their own additional elements to the claim of trademark infringement (such as the requirement of surveys to show confusion, personal jurisdiction over the direct infringements, or evidence of promotion of the counterfeit marks, etc.) should be summarily rejected.

Defendants' argument that no reasonable juror could find "use in commerce" in the record is simply without merit. Defendants' motions should be denied.

**2. <u>Even the Heightened Standard For Applicability of the Lanham Act Employed by the Court Was Met Due to the Nature and Volume of Counterfeiting Taking Place on Defendants' Servers.</u>**

Defendants' trademark based arguments are additionally without merit as the Court instructed the jury on what Plaintiff believes was a higher burden that necessary concerning the applicability of the Lanham Act to foreign acts, requiring that those acts "substantially affect" commerce rather than just have "some affect."[4] *Wells Fargo & Co. v. Wells Fargo Express Co.*,

---

[4] Citation and further explanation concerning the applicable standard was included in Plaintiff's Opposition to Defendants' Motion for Judgment, Docket No. 214, and will not be repeated herein. *See also Wells*

556 F.2d 406, 428 (9th Cir. 1977) (stating "although foreign activities must of course have *some* effect on United States foreign commerce before they can be reached, we disagree with the district court's requirement that that effect must be "substantial." *Bulova* contains no such requirement."); *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952); *Reebok Int'l v. Marnatech Enters.,* 970 F.2d 552, 554 (9th Cir.1992); *Ocean Garden*, 953 F.2d at 503; *Timberline Lumber Co. v. Bank of America Nat. Trust and Savings Assoc.,* 549 F.2d 597 (9th Cir. 1976); *see also American Rice v. Arkansas Rice Growers Coop. Ass'n*, 701 F.2d 408, 414 (5th Cir. 1983) (absence of any one factor is not dispositive).  In any case, the jury's verdict is in line with the "broad" extraterritorial application of the Lanham Act and controlling Ninth Circuit authority has demonstrated this liberality in attaching Lanham Act jurisdiction when a shipment of infringing goods enters even a United States trade zone.  *Ocean Garden,* 953 F.2d at 503.  Despite the application of a higher standard than was necessary, the jury still found for the Plaintiff and its unanimous verdict must not be set aside.

The impropriety of Defendants' contentions can be exhibited by its heading "The Lanham Act Does Not Apply to Direct Infringement By Foreign Nationals Outside the United States" which is directly contradicted by controlling precedent and Defendants' own cited case law just one page later.  Defendants' Moving Papers pp.5:23, 6:23; compare *Reebok Int'l, Ltd.*, 970 F.2d at 556 (individual defendant and principal of the corporate defendant was a Mexican citizen); *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 900 (9th Cir. 2002) (affirming extraterritorial application of Lanham Act to foreign defendants); *see also Reebok Int'l v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir. 1995) (stating "this court has held that the Lanham Act may properly be applied to foreign defendants' activities outside the United States."); *see also e.g., Nintendo of Am.*, 34 F.3d at 248 and 252 (affirming determination that all Taiwanese defendants were liable for the various violations of federal and state law found, including Lanham Act violations).  The Lanham Act has and does apply to the acts of foreign nationals.

---

*Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 428-29 (9th Cir. 1977) for a list of considerations to consider extraterritorial application of the Lanham Act.

Additional grounds for application of the Lanham Act exist when the actions of the infringers are directed towards the United States, like those of Defendants' customers.  Exercise of the very broad reach of the trademark laws is entirely appropriate particularly when the websites were purposefully based in the United States on Defendants' servers close to the Internet backbone to take advantage of speed and infrastructure, and the websites specifically targeted American consumers as reflected on the websites themselves[5] and aptly expressed by Defendants' own advertisements, see Exhibit 583, that businesses overseas could better target American consumers through being hosted by web hosts like the Defendants.

Furthermore, Defendants for some inexplicable reason ignore the fact that they are all United States citizens, and most all of the contributorily infringing acts to which they are charged occurred in the United States.  Had Plaintiff brought suit in China, Defendants would be making the same arguments concerning their own "bulletproof" status there.  Such a result would be completely unjust.

There was also substantial and largely undisputed evidence in the record of the proliferation of counterfeit websites and their illegal wares originating from Defendants' servers in San Jose.  Similar to the *Bulova Watch Co.* case, involving a defendant located outside the United States selling counterfeit goods that were manufactured abroad but shipped into the United States causing the requisite harm, 344 U.S. at 287-88, the infringing goods sold by Defendants' customers clearly have the sufficient adverse effect on United States commerce and those sales would not have occurred but for access and transmission of infringements from websites residing on Defendants' servers.  Flooding the internet with readily available knock-off goods, that are illegal, have numerous negative impacts on commerce that the jury could reasonably conclude were sufficiently damaging.  It was also reasonable for the jury to conclude that counterfeits are extremely harmful to the reputation of a luxury goods company like Louis Vuitton, who has a significant United States presence, precisely because counterfeits are cheap, of lower quality, and proliferate in the marketplace improperly reducing the scarcity of Louis Vuitton's genuine product.

---

[5] See footnote 1.

Counterfeits and counterfeiting websites also hurt consumer's confidence in Louis Vuitton's ability to maintain the value of its name and its true products.  The jury also heard testimony concerning customer complaints into its call center in San Francisco, the role of Louis Vuitton's San Dimas, California manufacturing facility, and also the sizeable budget that Louis Vuitton has to expend to deal with counterfeiters and those that aid and contribute to the counterfeiting like the Defendants in this case.  The jury had ample support to find that Defendants' and their customers' acts affected United States commerce under either the "some affects" or "substantially affects" tests.

As outlined above, even as the Court instructed and the jury applied a higher standard under *Bulova Watch Co.*, 344 U.S. 280 (1952), the jury still found liability against Defendants. The jury had ample evidence of the impact of the actions of Defendants and their customers on United States commerce.  There was no dispute that Defendants were based in San Jose, specifically advertised their services to those that wanted to do business in the United States, or that the datacenter at which the infringing websites were hosted, was just a few blocks from the courthouse.  There was no error on the issues of the applicability of the Lanham Act to the case and the unanimous eight-person verdict is the strongest testament as to the sufficiency of the evidence on these issues.[6]

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny both of Defendants' Motions for Judgment as a Matter of Law and enter Judgment in favor of Plaintiff consistent with the jury's unanimous verdict.

Dated:  September 3, 2009                    J. Andrew Coombs, A Professional Corp.


                                                       ____/s/ J. Andrew Coombs_____
                                                       By:  J. Andrew Coombs
                                                              Annie Wang
                                                       Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

---

[6] The Court specifically requested further briefing on the applicability of the laws to the infringing acts at issue and Plaintiff did not address other of Defendants' arguments concerning the applicable legal standards in this Supplemental Brief.  Should the Court require additional briefing on the standards of liability, Plaintiff can do so at the Court's direction.