J. Andrew Coombs (SBN 123881)
andy@coombspc.com
Annie S. Wang (SBN 243027)
annie@coombspc.com
J. Andrew Coombs, A Prof. Corp.
517 East Wilson Avenue, Suite 202
Glendale, California 91206
Telephone:  (818) 500-3200
Facsimile:   (818) 500-3201

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | | |
|---|---|---|
| Louis Vuitton Malletier, S.A., | ) | Case No. C 07 3952 JW (HRLx) |
| | ) | |
| Plaintiff, | ) | REPLY OF PLAINTIFF IN SUPPORT |
| v. | ) | OF ENTRY OF PERMANENT |
| | ) | INJUNCTION; DECLARATION AND |
| Akanoc Solutions, Inc., et al. | ) | EXHIBITS IN SUPPORT |
| | ) | |
| Defendants. | ) | Date:    January 25, 2010 |
| | ) | Time:   9:00 a.m. |
| | ) | Court:  Hon. James Ware |

## INTRODUCTION

Defendants' desperate opposition to the entry of an injunction prohibiting future activity of the illegal use of their servers to infringe Plaintiff Louis Vuitton Malletier S.A.'s ("Plaintiff" or "Louis Vuitton") valuable intellectual properties is evident in: (a) their deliberate misreading of the proposed injunctive language[1]; (b) their misguided efforts to encourage the Court to disregard the trial record[2]; and (c) the attempt to argue based on "proffered" evidence which was ruled

---

[1] Perhaps the most astounding is Defendants' extensive and repetitious arguments regarding scienter.  Docket No. 257, Opposition, pp. 20:5-20, 21:3-22:24.  Paragraph (a) of the proposed injunction restrains and enjoins Defendants from "knowingly" infringing Louis Vuitton's intellectual properties.  Docket No. 256, Motion for Entry of Injunction, Exhibit G, p. 111:14-15; *see also* Docket No. 202-1, Plaintiff's Reply to Objections,  p. 6:9-13.  Moreover, Defendants enjoy a failsafe so long as specified actions are taken in response to written notice from Louis Vuitton which may take the form of a notice consistent with the DMCA.  *Id.* at p. 7:17-20.

[2] Rather than address the trial record, Defendants assert that the Court should disregard evidence admitted at trial and forget the testimony heard by the Court, referring to it as "mystery testimony".  Docket No. 257, p. 25, fn 24.  Defendants' objection to the format in which excerpts from that record were submitted for the Court's convenience and can be overruled as specified in more detail in Louis Vuitton's reply to Defendants' Objections, filed concurrently.

inadmissible by the Court.[3]  As a result, a significant part of the Opposition is simply irrelevant to Louis Vuitton's motion for entry of any injunction.

Instead of addressing Plaintiff's grounds for entry of an injunction or proposing any language for one, Defendants file a 25-page brief with no less than 24 extensive footnotes about almost everything else.  The injunction sought by Louis Vuitton is not extraordinary, imaginary or unexpected.  While Defendants argue about irrelevant burdens and responsibilities, nowhere in their opposition do they address the fact their own terms of service contemplate the lion's share of the obligations outlined in the draft proposed injunction.  Defendants also do not mention the DMCA requirement for "reasonable implementation" of a policy to terminate recidivist infringing customers.  Neither of these points on which Defendants are silent, implicate any of the supposed technological burdens set forth in the Opposition.  If a customer failed to pay them, that customer would be terminated.  The same should result for a customer who refuses to respect the intellectual property of others in violation of Defendants' own policies.  Defendants' feigned ignorance and continued willful blindness to infringement is precisely why this relief is necessary.

The need for the injunction is amplified by Defendants' endorsement of illegal activity, now boldly stated in their Opposition that counterfeits and copies are good advertising.  Docket No. 257, Opposition, p. 12:9-11.  Putting aside Defendants' approval of counterfeiting and piracy that brought about the case in the first case and no doubt influenced the jury in rendering its verdict, Defendants, located here and within the jurisdiction of the Court, cannot throw their hands up and allow that activity to continue. [4]  There is no question that Louis Vuitton is damaged by those who steal and distribute fakes in the marketplace as found by the jury and stated in Plaintiff's

---

[3] Defendants Opposition is also improperly based on "proffered" evidence ruled inadmissible by the Court in the form of financial statements of the parent company.  Contrast Second Order re Motions in Limine (Docket No. 203) and Docket No. 257, Opposition, pp.11, fn 8, 12:9-11.

[4] These arguments stand in marked contrast with Defendant Chen's testimony that counterfeiting is wrong, against the law, and against the policy of Akanoc Solutions.  Trial Transcript, August 21, 2009, p. 165:14-25, a courtesy copy of which is attached hereto as Exhibit C to the Coombs Declaration.

1    moving papers.  Defendants have the power to disable, unplug and terminate offending customers

2    but clearly, they will not do so unless ordered by this Court.

3        Much of Defendants' Opposition address topics that have already been rejected by this

4    Court and Magistrate Judge Lloyd as relating to the Stored Communications Act and Wiretap Act,

5    and simply do not apply to this case or these facts.[5]  For example, Defendants' vague and

6    overbroad objections are curious when Louis Vuitton has already agreed to provide DMCA type

7    notices under penalty of perjury for both copyright and trademark infringement that require

8    specificity.  Furthermore, their arguments of impossibility are contradicted by their prior actions

9    and admissions during trial that they are technologically able to do the things outlined in the

10   injunction.

11                                    **ARGUMENT**

12   **I.    Louis Vuitton Meets and Exceeds the Burden of Proof for Entry of an**

13   **       Injunction, Whether or Not the Court Applies *eBay v. MercExchange*.**

14   **       A. No Law Imposes Upon A Plaintiff the Burden to Show How Defendants**

15   **          Must Comply With an Injunction.**

16        Nowhere in the *eBay* standard or any other authoritative legal standard is the moving party

17   required to provide a detailed road map or other instruction for a found infringer to comply with

18   injunctive relief.  Even Defendants do not cite such a requirement.  Docket No. 257, Opposition, p.

19   10:10-13.  None is required and Defendants ignore the fact finder's unanimous decision as to the

20   existence of damage and harm to Plaintiff, Docket No. 235, Verdict, at pp. 7:18-24, 11:10-15, and

21   the continuing infringements concerning some of the same websites at issue from before the trial

---

[5] Discussion re Internet design, parental control techniques, content filtering for words or marks, the separate responsibilities of domain name registrars, routers, rebuilding of websites by Plaintiff's expert for trial purposes of publicly available websites, scienter, and monitoring of the Internet are irrelevant when Louis Vuitton is identifying the domain name and IP Address for Defendants who are then able to ascertain the customer for which the associated IP Address is responsible using their internal systems (CPRO) without having to access any stored or private data.  The same problem customers receive multiple notices but are still Defendants' customers. Trial Transcript, August 21, 2009, p. 196:24-197:11, August 25, 2009, p. 30:7-17, courtesy copies are attached hereto as Ex.s C and D to the Coombs Decl.  In furtherance of a strategy of distraction and obfuscation, Defendants argue even more unrelated and irrelevant issues, including Iranian and Chinese censorship capabilities.  Docket No. 257, Opposition, p.2:13-17.

1   began.  Declarations of J. Andrew Coombs, James A. Lowe and Steve Chen (Docket No.s 249-

2   251).

3        Given the infinite possibilities that are available, Louis Vuitton's proposal in fact helps

4   Defendants know exactly what they are supposed to do to accomplish a stop to infringing activity

5   on their servers that they otherwise refuse to address.  They are not prevented from doing other

6   things which prevent these same infringing situations from recurring.

7            **B.  Defendants' Narrow View of "Damage" and "Harm" is Inconsistent with**

8                **the Record, Law and Practice.**

9        A nearly two week long trial was conducted and the jury found that there was harm to

10  Plaintiff and awarded it a substantial sum of statutory damages as a result.  Docket No. 235,

11  Verdict, at pp. 7:18-24, 9:1-5, 11:10-15, 13:4-8.  The same activities that brought about the case,

12  the trial and now this motion have persisted.  Declarations of J. Andrew Coombs, James A. Lowe

13  and Steve Chen (Docket Nos. 249-251).  The harm is even more severe as Defendants continue to

14  look the other way despite Plaintiff's efforts and the jury's instructive verdict.  Defendants cannot

15  be allowed to take a nonchalant attitude about what they are really in the business of doing,

16  protecting, harboring, and promoting counterfeiters and pirates.

17       Though they disagree with (or more correctly, choose to ignore the record) Defendants do

18  not cite any contradictory authority regarding harm.  *Goldie's Bookstore, Inc. v. Sup. Ct.*, 739 F.2d

19  466 (9th Cir. 1984) was not a copyright or trademark action but instead involved an unlawful

20  detainer judgment by a state court involving an expired lease.  *Id.* at 467.  The case states that the

21  District Court's finding was not based on any factual allegations and that therefore "speculative

22  injury does not constitute irreparable injury," *Id.* at 472, not that "los[t] goodwill and 'untold'

23  customers" is speculative injury and does not constitute irreparable injury as a matter of law.

24  Docket No. 257, Opposition, p. 12:6-8.  Defendants' misleading statement and reliance on such an

25  inapposite case reflects the overall lack of merit to their opposition.

26       Defendants cite *Grokster* for the proposition that an injunction should only issue where

27  "essential to protect property rights against injuries otherwise irremediable."  Docket No. 257,

28

Opposition, p. 10:14-16.  Given Defendants' refusal to meaningfully address their counterfeiting and piracy issues, including terminating offending customers, despite having a $32.4 Million verdict entered against them, the Court's order enjoining them is therefore essential under Defendants' own reasoning.  Apparently no sum of money will deter Defendants from violating Plaintiff's rights necessitating this injunctive relief.

Defendants mischaracterize Plaintiff's arguments.  Not only is the harm obvious in cases of counterfeits and pirated goods, the civil equivalent to stealing, it is not limited to lost sales.  *See* Docket No. 256, Motion for Entry of Injunction, pp. 6:23-8:19.  Louis Vuitton has expended considerable resources to its fight against piracy and counterfeits.  In addition to the impairment of exclusivity, its strict control over production, and the proliferation of a network of pirates harbored by Defendants, none of which are trivial, Plaintiff also continues to expend unusually disproportionate resources on websites that are and have in the past despite notices, been hosted by Defendants.  Defendants' attempt to place a positive spin on theft, Docket No. 257, Opposition, p. 12:9-11, thus is unsurprising but still unacceptable.

### C.  Continued Harm is Evidenced by Defendants' Refusal to Act Meaningfully Against Any Infringers as Shown by Continued Infringements Even After the Jury's $32.4 M Verdict.

The jury has spoken as to the issue of harm and damages but Defendants are not listening.  They continue to do business as usual.  The "assumption" of future harm Defendants' claim is "unknowable" has already been exhibited by the same activity continuing on the same IP Addresses by no doubt the same customers.  This is not a case of past infringement.  The problem continues.  Declarations of J. Andrew Coombs, James A. Lowe and Steve Chen (Docket No.s 249-251).  If anything, it is worse that after years of litigation and a trial, Defendants believe they can still operate as they have without having to terminate any repeat offenders.  This practice must be addressed by the Court as Defendants refuse to be influenced by the will of the jury alone.

Because Defendants are undeterred even in the face of the verdict, it is clear that monetary damages are inadequate.  Irreparable harm continues as they refuse to terminate repeat offenders

and allow them to continue selling their illegal wares infringing Plaintiff's rights.  The Court must act to tell Defendants that their inaction is unacceptable.

### D.  Defendants' Confuse Hardship With What the Law and Good Business Sense Require.

It is no hardship for Defendants to do what other web hosts are able to routinely do.  Their incompetence (at best) or nefarious business plan (at worst) is no excuse.  If they are unhappy with Louis Vuitton's draft, influenced by Defendants' own Service Agreement, then they should have offered an alternative which achieves the same result.  Louis Vuitton has never opposed Defendants offering their own solutions, so long as they are actually implemented and achieve the required result of discontinuing the illegal offers using Defendants' servers and routers.

Termination of a repeat infringer is required.  The DMCA in the copyright context, specifically requires termination.  17 U.S.C. § 512(i)(1)(A).  By implication, the fact finder heard testimony of Defendants' procedures for handling abuse complaints and their failure to terminate any repeat offenders and found them liable for contributory trademark and copyright liability under the applicable legal standards.  Docket No. 235, Verdict.

If a customer failed to pay, they would be terminated because they broke their contract.  If the same contract is violated with regard to intellectual property infringement, the same result should follow.  The imagined complexities advanced by Defendants are unnecessary to this discussion.  They can and do terminate their customers.  They just choose not to do so for intellectual property infringement matters as to Louis Vuitton.

The Court's Order is required to force Defendants to do what they can and should do.

### II.  The Proposed Draft is Possible, Legal and Reasonable.

Defendants can not rewrite or ignore the record.[6]  Defendants' claims that "to their knowledge" compliance with injunctive relief is impossible, is hardly authority given an opposite

---

[6] E.g., that the proscriptions designed to prevent wiretapping in the context of criminal investigations do not apply was stated in connection with Louis Vuitton's motion to compel production of evidence of websites, the public access to which is at the heart of Louis Vuitton's claims against Defendants.  Defendants, by their own admission are accessing these transmissions for the purpose of routing traffic to the appropriate IP address.  Docket No. 257, Opposition, p. 3:14.  Just as they make an initial conversion of a queried domain name address into an IP address,

finding by the jury on this exact point. Docket No. 257, Opposition, p. 2:4-5; Docket No. 235, Verdict, p.7:2-14, pp. 10:20-11:4 (e.g., "Did Plaintiff…prove…that Defendants had reasonable means to withdraw its services so that their services could not be used to directly infringe but Defendants continued to provide its services to the customers?" This question was answered in the affirmative for all Defendants.). Additionally, Plaintiff's in-house legal counsel testified that other web hosts appear to have no problem achieving the same results as contemplated by the injunction when he stated that, "For letters sent to U.S. based web hosts," the success rate of compliance is "almost 100%." Trial Transcript from August 19, 2009, pp. 18:14-19:14, a copy of which is attached to the Declaration of J. Andrew Coombs ("Coombs Decl.") at Ex. A. Defendants stand alone in their argument that they are unable to comply with any injunction when, in fact, they are only unwilling to do so.

Defendants have at their disposal uncontroverted evidence of the means to disconnect infringing material residing on their servers from being accessed by the public. Their assertions otherwise are disingenuous.[7]

Defendants make a business out of being a bulletproof host to infringers. This is not an appropriate ground for denying relief. If Defendants did the things their own policies require as outlined in the proposed injunction, then the Court's involvement would be unnecessary, they would likely not have been sued or would have otherwise prevailed at trial. Because they continue to operate offering the same assistance to known counterfeiters, an injunction is required.

## III. The DMCA Safe Harbors Do Not Apply in this Case and Is Not Even Applicable in the Trademark Context.

The DMCA does not apply in the trademark context. Defendants can not prevent entry of the injunction for trademark infringement based on copyright law.

---

so too is it possible for Defendants, by accessing the IP address, to convert that information back into a domain name.

[7] E.g., Defendants dispute Louis Vuitton's language regarding a "permanent stop" to access to infringing material at specified domain names. It should be apparent that Plaintiff is seeking a stop to such activity using Defendants' routing and hosting services. To the extent the Court would prefer to clarify the language of the draft injunction to so provide, Louis Vuitton has no objection.

On the copyright side, Defendants concede they were not eligible for any DMCA safe harbor before they filed their designations with the Copyright Office. Docket No. 257, Opposition, p. 24, fn 23. The jury found that Defendants were not eligible for any DMCA safeharbor even after hearing Defendants' case. Docket No. 235, Verdict, pp. 11:21-12:4. Defendants would have to first qualify for the DMCA safe harbors and they still do not. While filing a designation for receipt of complaints is a requirement, so is expeditious removal of infringing content upon "claimed infringement", also negating Defendants' concern that Louis Vuitton is making the determination, and implementation of a policy for the termination of repeat infringers. 17 U.S.C. 512(c), (i)(1)(A). Defendants' refusal to terminate repeat offenders prevents them from benefiting from any of the limited immunities offered by the DMCA.

Even if Defendants did qualify for any safe harbor, and they would be required to do so before any limitations on injunctive relief were in place pursuant to 17 U.S.C. 512(j), the allowable scope of relief is consistent with what Plaintiff seeks. The DMCA endorses the appropriateness of entry of the kind of injunction Plaintiff seeks against Defendants. The Court is specifically allowed to order injunctive relief that accomplishes the following, among other things:

> "(i) An order restraining the service provider from providing access to infringing material or activity residing at a particular online site on the provider's system or network.
>
> (ii) An order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or network who is engaging in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order.
>
> (iii) Such other injunctive relief as the court may consider necessary to prevent or restrain infringement of copyrighted material specified in the order of the court at a particular online location, if such relief is the least burdensome to the service provider among the forms of relief comparably effective for that purpose."

17 U.S.C. § 512(j)(1)(A)(i)-(iii).

Accordingly, even were the DMCA applicable, section 512(j)(1(A)(iii) confers broad discretion to order appropriate relief. The proposed injunction is appropriate for the reasons stated, but also because it is Defendants' admitted failure to preserve information or to publish records of the allocation of their IP Addresses and update WHOIS information as testified to by Defendant

1    Chen which necessitates relief in the form proposed.  Trial Transcript, August 20, 2009, pp.

2    104:20-105:5 (CPRO data deleted), 119:15-120:5 (emails lost), 120:24-121:4 ("not that important"

3    to recover emails); Trial Transcript, August 21, 2009, pp. 201:1-13 (no email records before June

4    of 2007, despite multiple prior notices sent by Louis Vuitton); Trial Transcript, August 25, 2009,

5    pp. 7:18-9:14 (re outdated WHOIS information for Defendant Managed Solutions), 13:3-14:4 (re

6    ARIN allocations), 87:20-89:10 (re outdated WHOIS and ARIN allocation information); see

7    Exhibits A-D to Coombs Declaration.  They should not now be able to use their own

8    irresponsibility in preserving data to promote further irresponsibility.   The relief authorized by

9    512(j)(1)(A)(iii) for the Court to order such other relief as appropriate renders these restrictions

10   largely moot in this case.

## CONCLUSION

12          For the additional foregoing reasons, Plaintiff respectfully requests that the Proposed

13   Injunction lodged with the Court be entered without further delay.

15   Dated:  January 11, 2010                    J. Andrew Coombs, A Professional Corp.

17                                        _____/s/ J. Andrew Coombs_____
                                         By:    J. Andrew Coombs
18                                              Annie S. Wang
                                         Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

Louis Vuitton v. Akanoc, et al.: Reply in Support of Motion for          - 9 -
Entry of Permanent Injunction

## DECLARATION OF J. ANDREW COOMBS

I, J. Andrew Coombs, declare as follows:

1.      I am an attorney at law, duly admitted to practice before the Courts of the State of California and the United States District Court for the Northern District of California.  I am counsel of record for Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton") in an action styled *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., et al.*, and, except as otherwise expressly noted to the contrary, I have personal knowledge of the following facts.

2.      Attached Exhibit A is a true and accurate copy of portions of Volume 2 of the certified court reporter's transcript from the Trial in this matter from August 19, 2009, of the trial testimony of Plaintiff's witness Mr. Nikolay Livadkin.

3.      Attached Exhibit B is a true and accurate copy of portions of Volume 3 of the certified court reporter's transcript from the Trial in this matter from August 20, 2009, of the deposition reading of Defendant Steve Chen.

4.      Attached Exhibit C is a true and accurate copy of portions of Volume 4 of the certified court reporter's transcript from the Trial in this matter from August 21, 2009, of the trial testimony of Defendant Steve Chen.

5.      Attached Exhibit D is a true and accurate copy of portions of Volumes 8 and 9 of the certified court reporter's transcript from the Trial in this matter from August 25, 2009, of the trial testimony of Defendant Steve Chen and the trial testimony of Defendants' employee Mr. Andrew Cheng.

I declare under penalty of perjury that the foregoing is true and correct and this declaration was executed the 11th day of January, 2010, at Glendale, California.

_____/s/ J. Andrew Coombs_____
J. ANDREW COOMBS

# EXHIBIT A

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                       SAN JOSE DIVISION

4

5     LOUIS VUITTON              )   C-07-03952-JW
      MALLETIER, S.A.,           )
6                                )   AUGUST 19, 2009
               PLAINTIFF,        )
7                                )   VOLUME 2
               V.                )
8                                )   PAGES 1 - 230
      AKANOC SOLUTIONS, INC.,    )
9     ET AL.,                    )
                                 )
10             DEFENDANTS.       )
      _____   )
11

12            THE PROCEEDINGS WERE HELD BEFORE

13         THE HONORABLE UNITED STATES DISTRICT

14                   JUDGE JAMES WARE

15    A P P E A R A N C E S:

16    FOR THE PLAINTIFF:  J. ANDREW COOMBS
                          BY:  J. ANDREW COOMBS
17                             ANNIE S. WANG
                          517 E. WILSON AVENUE
18                        SUITE 202
                          GLENDALE, CALIFORNIA 91206
19

20    FOR THE DEFENDANTS: GAUNTLETT & ASSOCIATES
                          BY:  JAMES A. LOWE
21                             CHRISTOPHER G. LAI
                          18400 VON KARMAN
22                        IRVINE, CALIFORNIA 92612

23
           (APPEARANCES CONTINUED ON THE NEXT PAGE.)
24
      OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
25                             CERTIFICATE NUMBER 8074

                                                          1

1    A P P E A R A N C E S: (CONT'D)

2

3    ALSO PRESENT:              LAW OFFICES OF J. ANDREW
                               COOMBS
4                              BY:  RUTH ADLER, PARALEGAL
                               517 E. WILSON AVENUE
                               SUITE 202
5                              GLENDALE, CALIFORNIA 91206

6                              LVMH FASHION GROUP
                               BY:  NIKOLAY LIVADKIN
7                              2 RUE DU PONT-NEUF 75001
                               PARIS, FRANCE
8
                               AKANOC SOLUTIONS, INC.
9                              BY:  STEVE CHEN, PRESIDENT
                               45535 NORTH PORT LOOP EAST
10                             FREMONT, CALIFORNIA 94538

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                              2

INDEX OF PROCEEDINGS

**NIKOLAY LIVADKIN**          DIRECT EXAMINATION P. 4
                             (RESUMED)
                             CROSS-EXAMINATION P. 103
                             REDIRECT EXAMINATION P. 173
                             RECROSS-EXAMINATION P. 179
                             FURTHER REDIRECT P. 182


**DEPOSITION READ OF JULIANA LUK** P. 186

INDEX OF EXHIBITS

| FOR THE PLAINTIFF'S: | MARKED | ADMITTED |
|---|---|---|
| 75.1 | | 29 |

3

1           MR. LOWE:  YOUR HONOR, I THINK THAT

2    COUNSEL IS TRYING TO MOVE THIS ALONG, BUT I OBJECT

3    AS LEADING.

4           THE COURT:  LEADING.

5    BY MR. COOMBS:

6    Q    DID YOU SEND THIS LETTER?

7    A    YES.

8    Q    AND TO WHOM DID YOU SEND IT?

9    A    I SENT IT TO ABUSE@AKANOC.COM.

10   Q    AND WHERE DID YOU GET THE ADDRESS OF

11   ABUSE@AKANOC.COM?

12   A    THIS ADDRESS I GOT FROM THE IP ADDRESS WHOIS

13   INFORMATION.

14   Q    AND THE LETTER SEEMS TO BE INFORMAL, AND I

15   THINK IT FINISHES UNDER PENALTY OF PERJURY.  CAN

16   YOU EXPLAIN THE FORMAT OF THIS LETTER?

17   A    THIS LETTER IS FOLLOWING THE FORMAT REQUIRED

18   BY THE DIGITAL MILLENNIUM COPYRIGHT ACT.

19   Q    AND THIS IS A STANDARD FORM IN CONNECTION WITH

20   CLAIMS WHETHER COPYRIGHT OR TRADEMARK?

21   A    WELL, THIS IS REQUIRED BY THE DIGITAL

22   MILLENNIUM COPYRIGHT ACT.  I WOULD REFER TO IT AS

23   DNCA IF YOU DON'T MIND.

24           SO THIS FORMAT IS REQUIRED SPECIFICALLY

25   FOR CORPORATE -- I'M SORRY -- FOR THE NOTIFICATION

18

1    OF COPYRIGHT INFRINGEMENTS.

2            HOWEVER, IN PRACTICE IT'S ALSO USED FOR

3    THE IDENTIFICATION OF TRADEMARK IDENTIFICATIONS.

4    Q    AND APPROXIMATELY HOW MANY OF THESE LETTERS

5    GET SENT OUT ON A MONTHLY BASIS?

6    A    A HUNDRED PLUS.

7    Q    AND CAN YOU ESTIMATE FOR US THE RATE OF

8    RESPONSE THAT YOU RECEIVED FOR THESE LETTERS IN

9    TERMS OF SUCCESSFULLY REMOVING THE OFFERING THAT

10   ARE THE SUBJECT OF THE LETTERS?

11   A    FOR LETTERS SENT TO U.S. BASED WEB HOSTS THIS

12   RATE IS ALMOST 100 PERCENT.  SOMETIMES IT DOESN'T

13   WORK FOR THE FIRST -- AT THE FIRST ATTEMPT, BUT IT

14   USUALLY WORKS WITH A FOLLOW-UP LETTER.

15   Q    AND DO YOU HAVE EXPERIENCE TRANSMITTING

16   SIMILAR DEMANDS TO WHOLESALERS OF INTERNET CAPACITY

17   SUCH AS DEFENDANTS CLAIM TO BE HERE?

18   A    I HAVE INDEED EXPERIENCE WITH NOTIFYING

19   COMPETITORS TO DEFENDANTS, A COMPANY THAT HAS QUITE

20   SIMILAR ACTIVITY.

21   Q    AND DO YOU HAVE A SIMILAR RESPONSE TO THOSE AS

22   YOU HAVE HAD WITH DEFENDANTS, OR IS IT MORE GENERAL

23   CONSISTENT PRACTICE THAT YOU HAVE HAD WITH

24   DEFENDANTS?

25   A    WELL, IN THE BEGINNING WE HAVE HAD TROUBLE

                                                    19

## CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT
REPORTER OF THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH
FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY
CERTIFY:

THAT THE FOREGOING TRANSCRIPT,
CERTIFICATE, INCLUSIVE, CONSTITUTED A TRUE, FULL
AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN
AS SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS
HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED
TRANSCRIPTION TO THE BEST OF MY ABILITY.

IRENE RODRIGUEZ, CSR, CRR
CERTIFICATE NUMBER CSR 8074

# EXHIBIT B

1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5    LOUIS VUITTON                )  C-07-03952-JW
     MALLETIER, S.A.,             )
6                                 )  AUGUST 20, 2009
              PLAINTIFF,          )
7                                 )  VOLUME 3
              V.                  )
8                                 )  PAGES 1 - 267
     AKANOC SOLUTIONS, INC.,      )
9    ET AL.,                      )
                                  )
10            DEFENDANTS.         )
     _____     )
11

12

13           THE PROCEEDINGS WERE HELD BEFORE

14          THE HONORABLE UNITED STATES DISTRICT

15                  JUDGE JAMES WARE

16   A P P E A R A N C E S:

17   FOR THE PLAINTIFF:  J. ANDREW COOMBS
                         BY:  J. ANDREW COOMBS
18                            ANNIE S. WANG
                         517 E. WILSON AVENUE
19                       SUITE 202
                         GLENDALE, CALIFORNIA 91206
20

21   FOR THE DEFENDANTS: GAUNTLETT & ASSOCIATES
                         BY:  JAMES A. LOWE
22                            CHRISTOPHER G. LAI
                         18400 VON KARMAN
23                       IRVINE, CALIFORNIA 92612

24        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

25   OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                         CERTIFICATE NUMBER 8074

                                                      1

1    A P P E A R A N C E S: (CONT'D)

2

     ALSO PRESENT:              LAW OFFICES OF J. ANDREW
3                               COOMBS
                                BY:  RUTH ADLER, PARALEGAL
4                               517 E. WILSON AVENUE
                                SUITE 202
5                               GLENDALE, CALIFORNIA 91206

6                               LVMH FASHION GROUP
                                BY:  NIKOLAY LIVADKIN
7                               2 RUE DU PONT-NEUF 75001
                                PARIS, FRANCE
8
                                AKANOC SOLUTIONS, INC.
9                               BY:  STEVE CHEN, PRESIDENT
                                45535 NORTH PORT LOOP EAST
10                              FREMONT, CALIFORNIA 94538

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                              2

INDEX OF PROCEEDINGS


**ROBERT HOLMES**           DIRECT EXAMINATION P. 11
                           CROSS-EXAMINATION P. 38
                           REDIRECT EXAMINATION P. 84

**DEPOSITION READ OF STEVEN CHEN** P. 87


**MICHAEL WILSON**          DIRECT EXAMINATION P. 167
                           CROSS-EXAMINATION P. 196
                           REDIRECT EXAMINATION P. 253
                           RECROSS-EXAMINATION P. 259


INDEX OF EXHIBITS

                           IDENT.        EVIDENCE


FOR THE PLAINTIFF:

65, 81, 116, 128, 141, 173, 185,
195, 210, 584, 586, 588 & 590          25

94, 95.3, 95.4, 95.5, 98.3, 99.3,
99.4, 99.5, 169, 160, 160.1, 160.2,
161, 162.1, 162.2, 163, 164, 164.1,
614.2, 165, 166, 166.1, 166.2, 212,
213.2, 213.3, 213.4, 286, 287, 287.1,
287.2, 353, 353.1, 353.2, 356, 357,
357.1, 360, 361, 361.1, 361.2, 402,
403, 403.1, 403.2, 404, 405, 405.1,
405.2, 406, 406.1 AND 406.2            31

97.2, 109 491                          35

3

1    AKANOC SOLUTIONS?

2    A    YES, THESE WILL BE IP ADDRESSES ASSIGNED TO

3    US.

4    Q    AND ARIN -- I'M SORRY.  AKANOC STILL OWNS

5    AWFUL THE NAMES OR ALL OF THE IP ADDRESSES FIRST

6    ASSIGNED TO IT?

7    A    YES, THAT'S CORRECT.

8    Q    HAS IT REASSIGNED OR SUBDELEGATED ANY OF THOSE

9    IP ADDRESSES?

10   A    REASSIGNED BEING -- BEING WHAT?

11   Q    ASSIGNED IT TO THE CUSTOMERS, RESELLERS,

12   ANYONE ELSE?

13   A    YES, THAT'S WHAT WE DO EVERY DAY.

14   Q    YOU DO -- I'M SORRY?

15   A    THAT'S WHAT WE DO EVERY DAY.

16   Q    AND ARE THOSE REFLECTED IN THE CPRO DATABASE

17   THAT WE TALKED WITH EARLIER?

18   A    IT'S NOT ONLY CPRO, BUT ALSO PUBLIC.  YOU CAN

19   SEARCH THAT IN THE PUBLIC RECORDS.

20   Q    LET'S BACK UP FOR A MOMENT.  THE CPRO DATABASE

21   WILL REFLECT AN ASSIGNMENT BY AKANOC TO ONE OF ITS

22   CUSTOMERS OF AN IP ADDRESS THAT WAS ASSIGNED TO IT;

23   IS THAT CORRECT?

24   A    IF IT'S A LIVE IP, WE CAN SEARCH IT.  IF IT'S

25   A DEAD IP THEN IT'S -- ONCE IT'S TAKEN OUT FROM

                                                    104

1      THAT, THEN CPRO WILL NOT SHOW IT.

2      Q    SO IT DOESN'T SHOW HISTORICAL DATA?

3      A    YES.

4      Q    IT'S DELETED?

5      A    YES.

6      Q    WHO HANDLES THE ASSIGNMENT OF IP ADDRESSES?

7      A    AGAIN, IT'S PRETTY MUCH AUTOMATION.  LET'S SAY

8      THE CUSTOMER NEEDS FOUR EXTRA IP'S, EITHER MYSELF,

9      WILL LONE, PATRICK, WE CAN ALL GO INTO A SPECIFIC

10     INTERFACE AND WE TAKE OUT FROM THE AVAILABLE POOL

11     AND ATTACH IT TO SPECIFIC MAIN IP'S AND WE SUBMIT

12     TO THE PROCESS.

13              AND THEN WE UPDATE THAT INFORMATION INTO

14     THE ROUTER TO MAKE THAT ROUTING.  AND WHEN CUSTOMER

15     CANCEL THE SERVICE, OR FOR WHATEVER REASON WE NEED

16     TO TAKE IT OUT FROM THAT PARTICULAR ROUTE, AND THEN

17     WE CAN USE THE SAME INTERFACE.  WE CAN GO IN AND

18     SUBMIT THE REQUEST AND THEN THE TECHNICIAN WILL GO

19     TO THAT ROUTER AND THEN REROUTE IT.

20     Q    THAT ROUTER IS OWNED AND CONTROLLED BY AKANOC?

21     A    THAT'S CORRECT.

22     Q    WHAT PERCENTAGE OF THE SERVER CAPACITY THAT

23     YOU HAVE BEEN TALKING ABOUT IS DEDICATED TO WEB

24     SITE HOSTING?

25     A    I HAVE NO IDEA.  I DON'T KNOW THE PERCENTAGE

                                                      105

1    Q    NOW, IN CONNECTION WITH THE EXHIBIT 26 REPORT,

2    WHAT HAPPENED AFTER YOU SENT THIS E-MAIL?

3    A    IT'S UNPLUGGED.  SO IF IT'S UNPLUGGED, WE WAKE

4    HIM UP.  I MEAN, HE WILL COME BACK TO US.  I

5    REMEMBER THAT HE CAME BACK TO US.

6    Q    AND HE CAME BACK TO YOU BY E-MAIL?

7    A    YEAH.

8    Q    AND WHAT DID HE SAY?

9    A    I FORGOT.

10   Q    TO YOUR KNOWLEDGE HAS THE SERVER BEEN

11   UNPLUGGED?

12   A    I FORGOT, BUT AT LEAST WE MUST HAVE DONE

13   SOMETHING TO IT BECAUSE WHEN I PERSONALLY STEP IN

14   IT NEEDS TO BE RESOLVED.

15   Q    IT'S MY UNDERSTANDING THAT THERE WAS A POINT

16   ON WHICH E-MAIL TRAFFIC STORED ON THE SERVER WAS

17   LOST; IS THAT CORRECT?

18   A    YES.

19   Q    AND WHEN DID THAT OCCUR?

20   A    SOMEWHERE LATE IN 2006 TO MID -- I REMEMBER,

21   JUNE, JUNE 15TH WE STARTED A NEW SERVER SO JUNE

22   15TH OF 2007.

23   Q    WHEN YOU SAY YOU STARTED A NEW SERVER, YOU

24   OPENED UP A NEW BOX ESSENTIALLY?

25   A    YES, THAT'S CORRECT.

                                                      119

1    Q    AND WAS THERE ANY BACKUP OR OTHER PLACE IN

2    WHICH E-MAILS CAN WERE LOCATED ON THAT SERVER WERE

3    STORED AND WERE THERE ANY DUPLICATE COPIES, FOR

4    EXAMPLE?

5    A    NO.

6    Q    AND WHEN I RECEIVED AN E-MAIL TYPICALLY

7    DOWNLOADED FROM A SERVER.  THEY MAY BE KEPT ON THE

8    SERVER BUT ALSO ON THE WORK STATION.  DOES IT WORK

9    THAT WAY AT AKANOC?

10   A    NO.  YOU'RE ON THE SO-CALLED POP3 SO

11   EVERYTHING DOWNLOADED TO YOUR WORK STATION.  WE'RE

12   ON IMAP SO THAT'S EVERYTHING KEPT ON THE SERVER

13   SIDE.

14   Q    AND THAT APPLIES WOULD BOTH INCOMING AND

15   OUTGOING E-MAILS?

16   A    YES.

17   Q    AND IN BOX AND OUT BOX?

18   A    YES.

19   Q    AND IS THERE ANY WAY IN WHICH E-MAILS THAT

20   WERE LOCATED ON THE SERVER CAN BE RESTORED OR

21   RECOVERED?

22   A    I BELIEVE SO.  WE DON'T EVEN HAVE THE HARDWARE

23   ANYMORE.

24   Q    WAS THERE AN EFFORT MADE AT THE TIME TO

25   RECOVER E-MAILS THAT WERE STORED ON THAT SERVER?

                                                    120

1    A    PROBABLY SO BUT TO US WE, I MEAN, IT'S NOT

2    THAT IMPORTANT.  I MEAN, WE JUST WANT TO KEEP

3    THINGS GOING.  SO TO A CERTAIN POINT THE TECHNICIAN

4    JUST DECIDED LET'S MAKE A NEW ONE.

5    Q    I WANT TO MARK AS EXHIBIT 1 A SEVEN-PAGE

6    E-MAIL WHICH INCLUDES AN E-MAIL AN ATTACHMENT, I

7    BELIEVE, DATED OCTOBER 30TH, 2006.  LET ME KNOW IF

8    YOU HAVE SEEN IT BEFORE?

9    A    I HAVE NO --

10   Q    NO RECOLLECTION?

11   A    YEAH, NO IMPRESSIONS WHATSOEVER.

12   Q    AT THE TOP OF THE PAGE YOU'LL SEE AN E-MAIL

13   ADDRESS THAT SAYS ABUSE@AKANOC.COM.  DO YOU SEE

14   THAT?

15   A    YES.

16   Q    AND IS THAT THE ABUSE MAILBOX AT AKANOC?

17   A    YES, IT SHOULD BE.

18   Q    AND YOU HAVE NO REASON TO QUESTION ONE WAY OR

19   THE OTHER WHETHER OR NOT THIS E-MAIL WAS RECEIVED

20   ON OR ABOUT THE DATE IT BEARS?

21   A    YEAH.

22   Q    I STAND CORRECTED.  IT'S ACTUALLY DATED

23   JANUARY 17TH, 2007 AND IT HAS THE WORD REMINDER.

24   DO YOU SEE THAT?

25   A    YES.

121

## CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE, INCLUSIVE, CONSTITUTED A TRUE, FULL AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY.

IRENE RODRIGUEZ, CSR, CRR
CERTIFICATE NUMBER CSR 8074

# EXHIBIT C

1              IN THE UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION

4

5    LOUIS VUITTON              )   C-07-03952-JW
     MALLETIER, S.A.,          )
6                               )   AUGUST 21, 2009
                PLAINTIFF,     )
7                               )   VOLUME 4
                  V.           )
8                               )   PAGES 1 - 208
     AKANOC SOLUTIONS, INC.,   )
9    ET AL.,                    )
                                )
10              DEFENDANTS.     )
     _____   )
11

12

13           THE PROCEEDINGS WERE HELD BEFORE

14         THE HONORABLE UNITED STATES DISTRICT

15                  JUDGE JAMES WARE

16   A P P E A R A N C E S:

17   FOR THE PLAINTIFF:  J. ANDREW COOMBS
                         BY:  J. ANDREW COOMBS
18                            ANNIE S. WANG
                         517 E. WILSON AVENUE
19                       SUITE 202
                         GLENDALE, CALIFORNIA 91206
20
     FOR THE DEFENDANTS: GAUNTLETT & ASSOCIATES
21                       BY:  JAMES A. LOWE
                              CHRISTOPHER G. LAI
22                       18400 VON KARMAN
                         IRVINE, CALIFORNIA 92612
23

24        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

25   OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                              CERTIFICATE NUMBER 8074

                                                        1

1     A P P E A R A N C E S: (CONT'D)

2

      ALSO PRESENT:              LAW OFFICES OF J. ANDREW
3                                COOMBS
                                 BY:  RUTH ADLER, PARALEGAL
4                                517 E. WILSON AVENUE
                                 SUITE 202
5                                GLENDALE, CALIFORNIA 91206

6                                LVMH FASHION GROUP
                                 BY:  NIKOLAY LIVADKIN
7                                2 RUE DU PONT-NEUF 75001
                                 PARIS, FRANCE
8
                                 AKANOC SOLUTIONS, INC.
9                                BY:  STEVE CHEN, PRESIDENT
                                 45535 NORTH PORT LOOP EAST
10                               FREMONT, CALIFORNIA 94538

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                              2

         Exhibit C, Page 27

1                    <u>INDEX OF PROCEEDINGS</u>

2

   FOR THE DEFENDANTS:
3

4

   **STEVEN CHEN**            DIRECT EXAMINATION P. 5
5                              CROSS-EXAMINATION P. 165

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                          3

1    SO I'LL SUSTAIN THE OBJECTION.

2              HIS MAIN CONCERN IS NOT TO BE THE SOURCE

3    OF CURING THE PROBLEM.  HE'S NOT BEEN CHALLENGED

4    WITH NOT COMING UP WITH A SOLUTION.  HE'S BEING

5    CHALLENGED ON THE CLAIMS THAT ARE BEING MADE.

6    BY MR. LOWE:

7    Q    MR. CHEN, DO YOU THINK THAT THERE'S ANYTHING

8    THAT YOU CAN DO BEYOND WHAT YOU HAVE BEEN DOING

9    THAT WOULD STOP THE INFRINGEMENT OF PRODUCTS THAT

10   LOUIS VUITTON IS COMPLAINING ABOUT?

11   A    NO, WE HAD NO WAY OF KNOWING WHEN, WHERE, HOW

12   A DOMAIN NAME WOULD GET INTO OUR NETWORK.

13   Q    THANK YOU.

14             I HAVE NO FURTHER QUESTIONS AT THIS TIME,

15   YOUR HONOR.

16                      **CROSS-EXAMINATION**

17   BY MR. COOMBS:

18   Q    LET ME SEE, MR. CHEN, IF WE CAN AGREE ON A

19   COUPLE OF THINGS.  COUNTERFEITING IS WRONG; RIGHT?

20   A    YES.

21   Q    AND IT'S AGAINST THE LAW?

22   A    YES.

23   Q    AND IT'S AGAINST THE POLICY OF AKANOC

24   SOLUTIONS, IS THAT NOT ALSO CORRECT?

25   A    THAT'S CORRECT.

                                                    165

1    A    I HAVE NO IDEA.

2    Q    AND WE'LL PUT UP THE NEXT ONE THAT COMES NEXT

3    FROM MARCH 3, '08 AND THIS, TOO, IS A -- IS ANOTHER

4    TAKEDOWN NOTICE -- THAT'S THE TAKEDOWN NOTICE

5    REFERRING TO ESTARBIZ ON 3-3; IS THAT CORRECT?

6    A    YES.

7    Q    AND IT'S TO MR. WANG KIYO; IS THAT CORRECT?

8    A    YES.

9    Q    AND IT'S CONCERNING THE SAME DOMAIN NAME

10   ESTARBIZ.COM?

11   A    YES.

12   Q    AND IT CONCERNS THE SAME --

13   A    THIS ONE --

14   Q    I DIDN'T MEAN TO INTERRUPT.  BUT MY ONLY

15   QUESTION IS THAT IT'S THE SAME IP ADDRESS AS

16   REFLECTED ON THE PREVIOUS EXHIBITS?

17   A    YES.

18   Q    AND THAT SUGGESTS TO ME AT LEAST THAT THAT WEB

19   SITE WAS IN OPERATION FROM NOVEMBER OF 2007 AND

20   UNTIL MARCH OF 2008.  DO YOU HAVE A DIFFERENT

21   CONCLUSION?

22   A    CAN YOU PUT THE LAST?  THE FIRST THING I SAID

23   IS THAT YOUR SERVER HAS BEEN UNPLUGGED.

24   Q    MR. CHEN, I DIDN'T ASK YOU WHAT THE E-MAIL

25   SAID.  I ASKED YOU WHETHER THE ESTARBIZ WAS ON THE

196

1    SAME SERVER WITH THE SAME CUSTOMER FROM NOVEMBER OF

2    2007 UNTIL MARCH OF 2008?

3    A    YES.

4    Q    NOW, IS MR. WANG KIYO STILL A CUSTOMER OF

5    AKANOC SOLUTIONS?

6    A    MAYBE.

7    Q    YOU DON'T KNOW?

8    A    I DON'T KNOW.

9    Q    YOU NEVER TOOK ANY ACTION TO TERMINATE HIM AS

10   A CUSTOMER?

11   A    I DON'T HAVE A REASON TO TERMINATE HIM.

12   Q    SO IN SPITE OF THE LITIGATION AND IN SPITE OF

13   ALL OF THE DEMANDS THAT ARE GOING ON, THIS SITE CAN

14   STAY UP FOR FOUR MONTHS AND THE ONLY THING YOU CAN

15   DO IS UNPLUG THE SERVER.  AND DO YOU KNOW WHAT

16   HAPPENED TO THE SERVER AFTER HE UNPLUGGED IT?

17   A    AS I PREVIOUSLY SAID, I HAVE NO WAY OF

18   KNOWING.  THE ONLY THING I CAN BE IN CONTROL OF IS

19   UNPLUG THE SERVER.

20   Q    NOW, LET'S BACK UP FOR A MOMENT AND GO BACK TO

21   PAGE 1 OF 1598 AND THE FIVE WEB SITES THAT WERE

22   LISTED IN THE COMPLAINT WHICH YOU INDICATE HERE WAS

23   SERVED ON YOU ON AUGUST 20TH, 2007.  DO YOU SEE

24   THAT?

25   A    YES.

197

1    Q    YOU HAVE A SPECIFIC RECOLLECTION OF E-MAILS

2    DESPITE THE SERVER CRASH WE HAD TALKED ABOUT

3    EARLIER?

4    A    NO, BECAUSE ANYTHING -- THE E-MAIL RECORD THAT

5    WE HAVE, THE E-MAIL LOG THAT WE HAVE IS JUNE 15TH

6    AND AFTER.

7         AND JUNE 15TH, '07 AND AFTER

8    EVERYTHING -- AND I DID SEARCH THAT PERIOD OF TIME

9    AND THERE IS NOTHING IN IT.

10   Q    SO THERE IS NO EVIDENCE, NO E-MAIL TRAFFIC IN

11   PARTICULAR, RELATING TO ANYTHING CONCERNING THESE

12   FIVE WEB SITES BEFORE JUNE OF 2007?

13   A    THAT IS CORRECT.

14   Q    OKAY.  SO WHAT IS THERE REGARDING ACTIVITY

15   BETWEEN JUNE OF 2007 AND AUGUST 20TH, 2007?  WHY

16   HAVEN'T WE SEEN IT?

17   A    THE ANALYSIS I WAS DOING I THINK IS BASED ON

18   THE EVIDENCE THAT YOU PROVIDE OF CERTAIN COMPLAINTS

19   COMES IN, AND I WAS TRYING TO FIGURE OUT WHAT IS

20   THE IP CHANGE HISTORY BASED ON YOUR COMPLAINT.

21   Q    WELL, YOU WERE HERE YESTERDAY WHEN I WAS

22   READING FROM YOUR DEPOSITION TESTIMONY ABOUT ALL OF

23   THE COMPLAINTS THAT LOUIS VUITTON HAD SENT FROM

24   OCTOBER OF 2006 UNTIL APRIL OF 2007 AND IN RESPONSE

25   TO THOSE QUESTIONS YOU SAID YOU HAD NO

                                                    201

## CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE, INCLUSIVE, CONSTITUTED A TRUE, FULL AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY.

IRENE RODRIGUEZ, CSR, CRR
CERTIFICATE NUMBER CSR 8074

# EXHIBIT D

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4


5

   LOUIS VUITTON MALLETIER, S.A.,  )
6                                  )   C-07-03952 JW (HRL)
                    PLAINTIFF,     )
7                                  )   AUGUST 25, 2009
     V.                            )
8                                  )   VOLUMES 8 AND 9
   AKANOC SOLUTIONS, INC.,         )
9  MANAGED SOLUTIONS GROUP, INC.,  )   PAGES 1 - 231
   STEVEN CHEN AND DOES 1 THROUGH  )
10 10, INCLUSIVE,                  )
                                   )
11                  DEFENDANTS.    )
   _____)
12

13              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE JAMES WARE
14            UNITED STATES DISTRICT JUDGE

15
   A P P E A R A N C E S:
16

   OR THE PLAINTIFFS:  J. ANDREW COOMBS, A PROF. CORP.
17                     BY:  J. ANDREW COOMBS, ESQ.
                           ANNIE S. WANG, ESQ.
18                     517 E. WILSON AVE., SUITE 202
                       GLENDALE, CA  91206
19                     TEL:  (818) 500-3200

20 ALSO APPEARING:     RUTH ADLER
                       NIKOLAY LIVADKIN
21

   FOR THE DEFENDANTS:  GAUNTLETT & ASSOCIATES
22                      BY:  JAMES A. LOWE, ESQ.
                       18400 VON KARMAN, SUITE 300
23                     IRVINE, CA  92612
                       TEL:  (949) 553-1010

24
   OFFICIAL REPORTER PRO TEM:   JANA L. RIDENOUR, CSR
25                              LICENSE NUMBER 9302


                   U.S. DISTRICT COURT

## EXAMINATION INDEX

**STEVEN CHEN**
      CROSS BY MR. COOMBS (CONTINUED) . . . . .    4
      REDIRECT BY MR. LOWE . . . . . . . . .   47
      FURTHER REDIRECT BY MR. LOWE . . . . . .   62

**ANDREW CHENG**
      DIRECT BY MR. LOWE . . . . . . . . . .   65
      CROSS BY MS. WANG . . . . . . . . . . .   87

**RICHARD GRALNIK**
      DIRECT BY MR. LOWE . . . . . . . . . .   90
      CROSS BY MR. COOMBS . . . . . . . . . .  155
      REDIRECT BY MR. LOWE . . . . . . . . .  177
      RECROSS BY MR. COOMBS . . . . . . . . .  200
      FURTHER REDIRECT BY MR. LOWE . . . . . .  210
      FURTHER RECROSS BY MR. COOMBS . . . . . .  215

## EXHIBIT INDEX

                              IDENT.       EVIDENCE

PAGE 4                        625
PAGE 8                        626
PAGE 14                       627
PAGE 230      (ALL DOMAIN TOOLS REPORTS ARE ADMITTED)

REPORTER NOTE:  ALL QUOTED EXCERPTS IN THIS TRANSCRIPT
WERE REPORTED AND TYPED "AS READ."

1    2009.

2    Q.    ALL RIGHT.  THANK YOU.

3          SO BOTH BAG925.COM AND WWW.BAG925.COM APPEAR TO BE

4    HOSTED ON DEFENDANT'S SERVERS AS ESSENTIALLY TODAY; IS

5    THAT CORRECT?

6    A.    YES, THAT'S CORRECT.

7    Q.    AND THAT'S BORNE OUT BY THE OTHER PORTION OF THE

8    EXHIBIT I HAVE MARKED, WHICH IS NOW IN FRONT OF YOU, AND

9    WHICH HAS THE WHOIS ARIN RESULT FOR THAT IP ADDRESS;

10   CORRECT?

11   A.    THAT'S CORRECT.

12   Q.    NOW, ON THAT PORTION OF THE REPORT YOU WILL SEE

13   RA ABUSE HANDLE -- I'M SORRY, R ABUSE HANDLE, R TECH

14   HANDLE OR ABUSE HANDLE OR TECH HANDLE.  CAN YOU TELL US

15   WHAT THOSE REFER TO?

16   A.    "ABUSE" IS FOR ABUSE ISSUE TECH; "TECH HANDLE" IS

17   FOR TECH -- TECH ISSUES.

18   Q.    SO, AS I UNDERSTOOD YOUR TESTIMONY, THE

19   INFORMATION PERTAINING TO THOSE HANDLES SHOULD BE

20   CONTACT -- CURRENT CONTACT INFORMATION FOR MANAGED

21   SOLUTIONS GROUP; IS THAT CORRECT?

22   A.    THAT IS CORRECT.

23   Q.    SO IT SHOULD BE -- I THINK YOU SAID ABUSE.MANAGER

24   SG-INC.COM FOR THE E-MAIL ADDRESS?

25   A.    YES.

1    Q.    AND THAT WOULD BE THE NORTHPOINT LOOP ADDRESS IN

2    FREMONT FOR THE MAILING ADDRESS; IS THAT CORRECT?

3    A.    THAT'S CORRECT.

4    Q.    OKAY.  NOW, LET'S MARK AS 626 A ONE-PAGE ARIN

5    WHOIS DATABASE SEARCH FOR THE HANDLE ABUSE 429-ARIN.

6            MR. LOWE:  EXCUSE ME, YOUR HONOR.  I OBJECT TO

7    THIS.  WE HAVE NOT SEEN THESE EXHIBITS BEFORE.  THEY

8    WERE NOT PROVIDED IN DISCOVERY.  APPARENTLY, THEY HAVE

9    BEEN CREATED IN THE LAST DAY OR TWO.

10           THE COURT:  EVEN IF YOU ARE USING IT FOR

11   IMPEACHMENT, PROVIDE COUNSEL WITH THE DOCUMENTS YOU ARE

12   USING IN THIS EXAMINATION.

13           MR. COOMBS:  MY APOLOGY.

14           MR. LOWE:  I WOULD ASK HE HAND US ALL THE

15   DOCUMENTS HE INTENDS TO USE TODAY SO WE DON'T SEE THEM

16   ON THE SCREEN FOR THE FIRST TIME TODAY.

17           THE COURT:  OF COURSE.  THAT IS A COURTESY TO

18   DO THAT, COUNSEL.

19           MR. COOMBS:  YES, YOUR HONOR.  I APOLOGIZE.

20           (WHEREUPON, EXHIBIT 626 WAS MARKED FOR

21           IDENTIFICATION.)

22   BY MR. COOMBS:

23   Q.    NOW, CAN YOU TELL ME WHAT MAILING ADDRESS IS

24   INDICATED ON THAT WHO -- I'M SORRY, ARIN SEARCH RESULT?

25           THE COURT:  MAILING ADDRESS OR E-MAIL?

1   BY MR. COOMBS:

2   Q.   I'M SORRY.  THAT'S NOT THE ONE I WAS PUTTING UP.

3   THIS IS 626.  LET ME ZOOM IT OUT A BIT.

4         CAN YOU TELL ME WHAT THAT IS, MR. CHEN?

5   A.   IT LOOKS LIKE IT IS THE OLD ADDRESS WHEN WE FIRST

6   SET UP THE COMPANY, THE 46750 FREMONT BOULEVARD.

7   Q.   NOW, AS I UNDERSTOOD YOUR TESTIMONY, MANAGED

8   SOLUTIONS GROUP AKANOC, THEY HAVEN'T BEEN AT THAT

9   ADDRESS FOR MANY YEARS NOW?

10  A.   MANY YEARS.

11  Q.   AND I'LL JUST SCROLL UP, IF I CAN, AND CAN YOU

12  READ THE DATE THAT APPEARS AT THE BOTTOM RIGHT-HAND

13  CORNER OF THAT PAGE?

14  A.   AUGUST 24, 2009.

15  Q.   THANK YOU.

16        BAG925.COM, THAT WAS IN THE ORIGINAL COMPLAINT

17  SERVED IN AUGUST OF 2007; CORRECT?

18  A.   EXCUSE ME?

19  Q.   THAT WAS ONE OF THE --

20        THE COURT:  "THAT" BEING -- SAY THE NAME

21  AGAIN.

22  BY MR. COOMBS:

23  Q.   BAG925.COM WAS ONE OF THE WEBSITES THAT WAS

24  ALLEGED IN THE ORIGINAL COMPLAINT SERVED ON YOU IN

25  AUGUST OF 2007?

1   16,000 TO JACQUES PHAM.   JACQUES, J-A-C-Q-U-E-S, PHAM,

2   P-H-A-M.

3   Q.   LET'S PULL UP EXHIBIT 25.

4        I'LL ASK MS. ADLER TO TURN TO PAGE 2, AND

5   SCROLL DOWN TO PARAGRAPH 5-B.

6        CAN YOU READ PARAGRAPH 5-B FOR US, MR. CHEN?

7   A.   "APPLICANT IS RESPONSIBLE FOR THE TIMELY AND

8   ACCURATE MAINTENANCE OF DIRECTORY SERVICES DATA AS WELL

9   AS ANY ORGANIZATION TO WHICH IT FURTHER SUBDELEGATES

10  NUMBER RESOURCES."

11  Q.   I UNDERSTAND THAT TO MEAN THAT THE ENTITY TO WHICH

12  IP ADDRESSES ARE ALLOCATED IS REQUIRED TO MAINTAIN

13  CORRECT CONTACT INFORMATION IN THE ARIN DATABASE; IS

14  THAT YOUR UNDERSTANDING AS WELL?

15  A.   YES.

16  Q.   AND THAT APPLIES WHETHER OR NOT THE NAMES HAVE

17  BEEN SUBDELEGATED OR ASSIGNED OR ALLOCATED TO SOMEONE

18  ELSE ACTUALLY USING THE IP ADDRESSES?

19  A.   I DON'T UNDERSTAND THE WORD OF "SUBDELEGATE."

20  Q.   WELL, AS I UNDERSTAND IT, THE DEFENDANTS WILL

21  ASSIGN IP ADDRESSES TO THEIR CUSTOMERS.   WE WERE JUST

22  TALKING ABOUT THAT.

23  A.   THAT'S RIGHT.

24  Q.   AND I UNDERSTAND THAT TO BE SUBDELEGATING.

25  A.   YES.

1   Q.    SO THAT THIS CLAUSE WOULD APPLY REGARDLESS OF

2   WHETHER OR NOT THE DEFENDANTS ARE ASSIGNING IP ADDRESSES

3   TO THEIR CUSTOMERS?

4   A.    THAT'S CORRECT.

5           (WHEREUPON, EXHIBIT 627 WAS MARKED FOR

6           IDENTIFICATION.)

7   BY MR. COOMBS:

8   Q.    OKAY.  I HAVE JUST MARKED AS 627 A FOUR-PAGE

9   PRINTOUT FROM THE KNOWLEDGE BASE ON THE ARIN WEBSITE.

10  JUST FOCUSING ON THE TOP FIRST PARAGRAPH OF THAT

11  PRINTOUT, COULD YOU READ THE FIRST -- THE SENTENCE THAT

12  ENDS ON THE FOURTH LINE OF THAT?

13  A.    THE FOURTH LINE?

14  Q.    COULD YOU READ THE FIRST FOUR LINES OF THAT

15  PORTION?  MAYBE IT WOULD BE EASIER IF I DID IT THIS WAY.

16  I HAVE HIGHLIGHTED A PORTION OF THIS.  COULD YOU JUST

17  READ THIS FOR US?  COULD YOU READ IT INTO THE RECORD,

18  PLEASE.  COULD YOU READ IT OUT LOUD?

19  A.    "ARIN'S STEWARDSHIP OF INTERNET NUMBER" --

20          THE COURT:  WHY DON'T YOU READ IT?  DON'T --

21  YOU HAVE THE DOCUMENT.  YOU ARE MUCH BETTER ABLE TO

22  SEE IT.

23          MR. COOMBS:  YES.  THANK YOU, YOUR HONOR.

24  BY MR. COOMBS:

25  Q.    I'M READING FROM EXHIBIT 627 AND THE FIRST PORTION

U.S. DISTRICT COURT                    14

1   SUMMARY OF ALL THE E-MAILS THAT I SENT OUT.

2   Q.   MR. CHEN, I -- MAYBE I WAS NOT CLEAR ON MY

3   QUESTION.  DID YOU FINE MS. CHEN BECAUSE OF THIS

4   EXTENSIVE INFRINGEMENT THAT WAS IDENTIFIED ON HER SERVER

5   ON NOVEMBER 27TH?

6   A.   IF I VERIFY --

7   Q.   MR. CHEN, DID YOU FINE -- DID YOU IMPOSE ANY KIND

8   OF MONEY PENALTY ON MS. CHEN FOR THE VARIOUS

9   INFRINGEMENTS THAT WERE ON HER SERVER AT THE END OF

10  NOVEMBER 2007?

11  A.   NO.

12  Q.   DID YOU SUSPEND MS. CHEN -- I MEAN THE CUSTOMER,

13  MS. CHEN -- AS A RESULT OF THE VARIOUS INFRINGEMENTS

14  IDENTIFIED ON HER SERVER AT THE END OF NOVEMBER, 2007?

15  A.   NO.

16  Q.   DID YOU TERMINATE HER?

17  A.   NO.

18  Q.   OF COURSE NOT.

19       THE COURT:  DON'T -- YOUR COMMENT IS

20  ARGUMENTATIVE.

21       MR. COOMBS:  I'M SORRY.

22  BY MR. COOMBS:

23  Q.   LET'S GO BACK TO EXHIBIT 554.

24       THIS IS ONE OF THE E-MAILS WE WERE JUST

25  LOOKING AT, AND IT'S BUYMYSHOES.NET WHICH IS LOCATED ON

```
 1              THE COURT:  VERY WELL.

 2              ANY CROSS?

 3                    CROSS-EXAMINATION

 4    BY MS. WANG:

 5    Q.    GOOD MORNING, MR. CHENG.

 6    A.    GOOD MORNING.

 7    Q.    ISN'T IT CORRECT THAT WHEN YOU ARE ASSIGNING AN IP

 8    ADDRESS, IT ONLY GETS ASSIGNED TO ONE CUSTOMER AT A

 9    TIME?

10    A.    THAT'S CORRECT.

11    Q.    AND WHEN AN INTERNET USER IS TRYING TO ACCESS A

12    WEBSITE THAT IS ON ONE OF YOUR SERVERS, ISN'T AKANOC'S

13    SERVER THE FIRST HOP OUT?

14    A.    CAN YOU REPEAT THAT?

15    Q.    SURE.  WHEN INFORMATION IS BEING TRANSMITTED TO AN

16    INTERNET USER FROM DEFENDANT'S SERVERS, ISN'T THE FIRST

17    ROUTER OR HOP DEFENDANT'S ROUTER?

18    A.    SO THE FIRST HOP FROM A CUSTOMER SERVER WILL BE

19    AKANOC'S ROUTER.

20    Q.    AND YOU STATED EARLIER THAT THE ARIN WHOIS

21    DATABASE INFORMATION IS UPDATED BY AKANOC OR MSG; IS

22    THAT CORRECT?

23    A.    YES.

24    Q.    I'M GOING TO SHOW YOU --

25              THE COURT:  YOU MIGHT WANT TO BACK OUT A
```

Exhibit D, Page 42

1    LITTLE BIT.

2            MS. WANG:  IS IT FLASHING ON YOUR SCREENS AS

3    WELL?

4            THE COURT:  KEEP YOUR VOICE UP.

5    BY MS. WANG:

6    Q.   MR. CHENG, CAN YOU SEE THAT?

7    A.   YES.

8    Q.   AND WHAT DOES IT LIST AS MANAGED SOLUTIONS GROUP'S

9    CONTACT INFORMATION OR ADDRESS?

10   A.   IT'S A LITTLE BLURRY.

11           THE COURT:  IS THERE AN AUTOFOCUS BUTTON

12   THERE?

13           MS. WANG:  YEAH, I TRIED IT EARLIER, BUT --

14   YEAH.  SORRY, THAT IS ACTUALLY AUTOFOCUSED.

15           THE WITNESS:  IT LISTS 46750 FREMONT.

16   BY MS. WANG:

17   Q.   IS THAT A CORRECT ADDRESS FOR MANAGED SOLUTIONS

18   GROUP?

19   A.   I BELIEVE THAT IS A -- SOME TYPE OF ADDRESS.  IT

20   MIGHT BE THE REGISTERED ADDRESS FOR THE CORPORATION, I'M

21   NOT SURE.

22   Q.   COULD YOU READ THE DATE THERE?

23   A.   THAT SAYS "8/24/2009."

24   Q.   AND, MR. CHENG, YOU ALSO TESTIFIED THAT THE ARIN

25   WHOIS DATABASE WOULD REFLECT YOUR -- OR DEFENDANT'S

1    CUSTOMERS?

2    A.    YES.

3    Q.    AND THAT WOULD BE ACCORDING TO A SEARCH FOR A

4    PARTICULAR IP ADDRESS?

5    A.    YES.

6    Q.    I'M SHOWING YOU EXHIBIT 625, WHICH APPEARS TO BE A

7    WHOIS SEARCH FOR A PARTICULAR IP ADDRESS.

8            LOOKING AT THAT RESULT, CAN YOU TELL ME WHICH

9    CUSTOMER THAT IP ADDRESS BELONGED TO?

10   A.    I DON'T SEE ANY INFORMATION.

11           MS. WANG:  NO FURTHER QUESTIONS, YOUR HONOR.

12           THE COURT:  ANY FURTHER QUESTIONS?

13           MR. LOWE:  NO, YOUR HONOR.

14           THE COURT:  VERY WELL.  THE WITNESS IS

15   EXCUSED.

16           THANK YOU VERY MUCH.

17           CALL YOUR NEXT WITNESS.

18           MR. LOWE:  I CALL RICHARD GRALNIK.

19           (PAUSE IN PROCEEDINGS.)

20           THE COURT:  IS THERE SOMEONE WHO HAS SUMMONED

21   HIM?

22           MR. LOWE:  I BELIEVE SO.  HE IS STANDING IN

23   THE HALL.

24           THE COURT:  COME ALL THE WAY FORWARD HERE AND

25   BE SWORN BY THE CLERK.

Exhibit D, Page 44

1

2                    CERTIFICATE OF REPORTER

3

4

5           I, JANA L. RIDENOUR, OFFICIAL REPORTER PRO TEM

6    IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN

7    DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN

8    JOSE, CALIFORNIA, DO HEREBY CERTIFY:

9           THAT THE FOREGOING TRANSCRIPT IS A FULL, TRUE

10   AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HAD IN LOUIS

11   VUITTON MALLETIER, S.A., V. AKANOC SOLUTIONS, INC.,

12   MANAGED SOLUTIONS GROUP, INC., STEVEN CHEN AND DOES 1

13   THROUGH 10, INCLUSIVE, CASE NO. C-07-03952 JW (HRL),

14   DATED AUGUST 25, 2009; THAT I REPORTED THE SAME IN

15   STENOTYPE AND TRANSCRIBED THE SAME BY COMPUTER-AIDED

16   TRANSCRIPTION TO THE BEST OF MY ABILITY AS HEREIN

17   APPEARS.

18           DATED THIS _4th_ DAY OF DECEMBER, 2009.

19

20

21                    _Jana L. Ridenour, CSR # 9302_

22                    JANA L. RIDENOUR, CSR
                      OFFICIAL REPORTER PRO TEM
23                    LICENSE NUMBER 9302

24                    **CERTIFIED COPY**

25