# EXHIBIT 1621

Dockets.Justia.com

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                        SAN JOSE DIVISION

 4

 5   LOUIS VUITTON              )   C-07-03952-JW
     MALLETIER, S.A.,           )
 6                              )   AUGUST 19, 2009
            PLAINTIFF,          )
 7                              )   VOLUME 2
              V.                )
 8                              )   PAGES 1 - 230
     AKANOC SOLUTIONS, INC.,    )
 9   ET AL.,                    )
                                )
10          DEFENDANTS.         )
     _____)
11

12

13          THE PROCEEDINGS WERE HELD BEFORE

14       THE HONORABLE UNITED STATES DISTRICT

15                   JUDGE JAMES WARE

16   A P P E A R A N C E S:

17   FOR THE PLAINTIFF:   GAUNTLETT & ASSOCIATES
                          BY:  JAMES A. LOWE
18                               CHRISTOPHER G. LAI
                          18400 VON KARMAN
19                        IRVINE, CALIFORNIA 92612

20
     FOR THE DEFENDANTS: J. ANDREW COOMBS
21                        BY:  J. ANDREW COOMBS
                               ANNIE S. WANG
22                        517 E. WILSON AVENUE
                          SUITE 202
23                        GLENDALE, CALIFORNIA 91206

24       (APPEARANCES CONTINUED ON THE NEXT PAGE.)

25   OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                               CERTIFICATE NUMBER 8074
```

EXHIBIT 1621

1

U.S. COURT REPORTERS

```
 1    A P P E A R A N C E S: (CONT'D)

 2
      ALSO PRESENT:            LAW OFFICES OF J. ANDREW
 3                             COOMBS
                               BY:  RUTH ADLER, PARALEGAL
 4                             517 E. WILSON AVENUE
                               SUITE 202
 5                             GLENDALE, CALIFORNIA 91206

 6                             LVMH FASHION GROUP
                               BY:  NIKOLAY LIVADKIN
 7                             2 RUE DU PONT-NEUF 75001
                               PARIS, FRANCE
 8
                               AKANOC SOLUTIONS, INC.
 9                             BY:  STEVE CHEN, PRESIDENT
                               45535 NORTH PORT LOOP EAST
10                             FREMONT, CALIFORNIA 94538

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

U.S. COURT REPORTERS

```
1                        INDEX OF PROCEEDINGS
2

3    NIKOLAY LIVADKIN           DIRECT EXAMINATION P. 4
                                (RESUMED)
4                               CROSS-EXAMINATION P. 103
                                REDIRECT EXAMINATION P. 173
5                               RECROSS-EXAMINATION P. 179
                                FURTHER REDIRECT P. 182
6

7    DEPOSITION READ OF JULIANA LUK P. 186
8
                              INDEX OF EXHIBITS
9

10   FOR THE PLAINTIFF'S:          MARKED            ADMITTED
11
     75.1                                                29
12
```

**CROSS-EXAMINATION**

BY MR. LOWE:

Q GOOD AFTERNOON, MR. LIVADKIN.

A GOOD AFTERNOON.

Q ISN'T IT TRUE THAT YOU DO NOT REQUIRE THAT AN ISP SEND YOU A COMMUNICATION IN RESPONSE TO A COMPLAINT OF ALLEGED COPYRIGHT OR TRADEMARK INFRINGEMENT?

A THAT I NOT REQUIRE?

Q YOU DON'T EXPECT THAT THE ISP THAT YOU SEND THESE NOTICES TO, TO GIVE YOU A RESPONSE NECESSARILY; IS THAT RIGHT?

A WELL, I EXPECT THE ISP TO COMPLY WITH WHAT I'M REQUESTING IN THE LETTER.

Q TO TAKE SOME ACTION WITH RESPECT TO THE COMPLAINT?

A USUALLY WHAT IS THAT PRACTICE WHEN A COMPLAINT IS SENT TO AN ISP, WE RECEIVE AT LEAST AN E-MAIL SAYING THAT OUR NOTIFICATION HAS BEEN RECEIVED.

MOST OF THE TIMES WE ARE ASSIGNED A TICKET, WHICH ALLOWS US TO, IN CASE OF FURTHER DEALINGS WITH THE ISP, TO REFER TO THE PARTICULAR MATTER THAT HAS BEEN BROUGHT TO THEIR ATTENTION.

Q ARE YOU SAYING THAT YOU DO REQUIRE OR YOU DO NOT REQUIRE A COMMUNICATION CONFIRMING THAT THE ISP

1   HOST AND WE WOULD FOCUS ON A MORE DETERRENT ACTION.
2   Q    AND WHAT MIGHT THAT BE?
3   A    THAT MIGHT BE A CRIMINAL OR CIVIL PROSECUTION
4   AGAINST THE OPERATOR OF THE WEB SITE.
5   Q    AND IN THE UNITED STATES OR SOMEWHERE ELSE?
6   A    IT DEPENDS ON WHERE HE'S LOCATED.
7   Q    ALL OF THE WEB SITES THAT YOU HAVE TESTIFIED
8   ABOUT IN THE LAST TWO DAYS HAVE BEEN LOCATED IN
9   CHINA; IS THAT RIGHT?
10  A    I THINK SO.  I THINK THAT ALL OF THEM HAVE
11  BEEN LOCATED IN CHINA, YES.
12  Q    SO AS FAR AS YOU KNOW BASED ON YOUR
13  INVESTIGATION ALL OF THE MANUFACTURING AND ALL OF
14  THE SALES OCCUR IN CHINA?
15  A    MOST OF THE COUNTERFEIT PRODUCTS INDEED ARE
16  PRODUCED IN CHINA.  THE SALES -- THESE WEB SITES
17  STARTED TO THE U.S. MARKET AND THE REASON WHY THESE
18  WEB SITES ARE HOSTED HERE IN CALIFORNIA IS BECAUSE
19  THE CHINESE OPERATORS OF THESE WEB SITES REQUIRE
20  HIGH QUALITY INFRASTRUCTURE BASED HERE IN THE
21  UNITED STATES TO TARGET AMERICAN CUSTOMERS.
22       THE PROBLEM IS THAT THEIR WEB SITES ARE
23  HOSTED IN CHINA IS THAT THE CONNECTION TIME IS TOO
24  LONG; THE RESPONSE TIME IS TOO LONG; AND USUALLY
25  THEIR AMERICAN CUSTOMERS GIVE UP BECAUSE THE WEB

142

1   SITE ULTIMATELY DOESN'T WORK WELL.
2            AND BY THE WAY, THIS IS AN ARGUMENT USED
3   BY DEFENDANTS ON THEIR WEB SITES TO MARKET THEIR
4   PRODUCTS.
5   Q   ALL RIGHT.  NOW -- SO YOU AGREE THAT THE
6   MANUFACTURING OF ALL OF THESE COUNTERFEITS THAT
7   YOU'RE TALKING ABOUT OCCURRED IN CHINA.
8            ARE THE PEOPLE SELLING THE PRODUCTS IN
9   CHINA AS FAR AS YOU KNOW?
10  A   AS FAR AS I KNOW THE SELLER IS LOCATED IN
11  CHINA AND THE CUSTOMERS ARE LOCATED IN THE UNITED
12  STATES.
13  Q   ALL RIGHT.  WELL, THEY'RE LOCATED ALL OVER THE
14  WORLD, AREN'T THEY?
15  A   OF COURSE.
16  Q   WELL, NOW, ISN'T IT ALSO TRUE THAT YOU DON'T
17  KNOW THE IDENTITY OF ANY OF THE PEOPLE SELLING
18  THESE PRODUCTS THAT YOU HAVE TALKED ABOUT HERE IN
19  THE LAST TWO DAYS?  YOU DON'T KNOW WHO THE PEOPLE
20  ARE THAT ARE BEHIND ESHOES99, FOR EXAMPLE?
21  A   WELL, THERE ARE MANY WEB SITES.  THERE ARE
22  MORE THAN 100.  SOME OF THEM WE HAVE BEEN
23  SUCCESSFUL TO IDENTIFY THE OPERATOR AND SOME OF
24  THEM NOT.
25  Q   OFTEN YOU CANNOT?

143

1   A   I'M SORRY?
2   Q   YOU OFTEN CANNOT IDENTIFY THE OPERATOR OF THE
3   WEB SITE; IS THAT RIGHT?
4   A   FOR CHINESE OPERATORS, I HAVE TO SAY IT'S NOT
5   EASY TO IDENTIFY.
6   Q   WHY IS IT NOT EASY?
7   A   IT'S NOT EASY TO -- THE WEB SITES TARGET
8   AMERICAN CUSTOMERS OR IN MANY CASES ENGLISH
9   SPEAKING CUSTOMERS.  SO IF AN INVESTIGATOR
10  APPROACHES THEM IN ANOTHER LANGUAGE THAN CHINESE,
11  IF A LAWFUL INVESTIGATOR IS USED, FOR EXAMPLE, THE
12  WEB SITE OPERATORS BECOME SUSPICIOUS AND IT'S VERY
13  DIFFICULT TO ESTABLISH A PRETEXT COMMUNICATION
14  WHICH WOULD ALLOW THE INVESTIGATOR TO IDENTIFY WHO
15  IS BEHIND THE WEB SITE.
16  Q   DO THE WEB -- DO THE OPERATORS OF THIEVES WEB
17  SITES THAT YOU COMPLAIN ABOUT OFTEN GIVE FALSE
18  INFORMATION ABOUT THEIR IDENTITY IN YOUR
19  EXPERIENCE?
20  A   WELL, THEY JUST DON'T PROVIDE IDENTIFICATION
21  INFORMATION.
22  Q   DO YOU GET FALSE INFORMATION ABOUT THE
23  ADDRESSES THAT THEY'RE USING FROM THE LOCATIONS
24  FROM WHICH THEY OPERATE?
25  A   VERY OFTEN THEY WILL PROVIDE INFORMATION ABOUT

144

1  A BOOTH WITHIN THE LEATHER MARKET IN GUANG ZOU IN
2  CHINA AND ON THIS MARKET THERE ARE HUNDREDS OF
3  BOOTHS.
4  Q  SO A BOOTH IDENTIFICATION REALLY DOESN'T DO
5  YOU ANY GOOD?
6  A  NOT NECESSARILY. AGAIN, YOU'RE ASKING ME TO
7  RESPOND WITH A GENERAL ANSWER TO HUNDREDS OF
8  PARTICULAR SITUATIONS.
9  Q  WELL, DO YOU EVER TAKE ACTION AGAINST THESE
10 COUNTERFEITERS IN CHINA?
11 A  YES, WE DO.
12 Q  IN FACT, YOU TESTIFIED THAT LOUIS VUITTON HAS
13 AN OFFICE IN HONG KONG?
14 A  YES.
15 Q  AND WHAT SORT OF ACTIONS DO YOU TAKE THERE IN
16 ORDER TO STOP THIS COUNTERFEIT?
17 A  WELL, FIRST OF ALL, WE COOPERATE WITH LOCAL
18 CUSTOMS BOTH IN MAINLAND, CHINA AND IN HONG KONG TO
19 ATTEMPT TO STOP THE COUNTERFEIT GOODS FROM LEAVING
20 THESE TERRITORIES.
21      WE ALSO ORGANIZE SEVERAL RAIDS EVERY
22 MONTHS AGAINST PRODUCTION FACILITIES. AND WHEN WE
23 SUCCEED IN IDENTIFYING SPECIFICALLY A WEB SITE
24 OPERATOR, WE TRY TO GET PROSECUTION IN CHINA.
25 Q  DO YOU, IN FACT, PROSECUTE OR FILE LAWSUITS OR

1     A    YES.

2     Q    AND DO YOU FIND THAT THEY ROUTINELY BRING YOU

3 LOTS OF RESULTS OF POTENTIALLY COUNTERFEIT

4 PRODUCTS?

5     A    YES.

6     Q    ARE THEY IN THE HUNDREDS OR THOUSANDS WHEN YOU

7 MAKE A SEARCH OF LOUIS VUITTON BAGS OR SOMETHING?

8     A    WELL, WE WOULD USUALLY -- AS I SAID, WE WOULD

9 GIVE PRIORITY TO THE WEB SITES THAT WE FIND ON THE

10 FIRST TO SECOND PAGES OF RESULTS ON SEARCH ENGINES.

11     ANYTHING THAT IS BEYOND THE SECOND PAGE

12 USUALLY WE DO NOT LOOK AT.

13     Q    WHY IS THAT?

14     A    THEY JUST DON'T BOTHER GOING ON THE FURTHER

15 PAGES.  AND FOR US IF A COUNTERFEIT OFFER IS NOT

16 VISIBLE OR HAS LOW VISIBILITY ON THE INTERNET, THAT

17 MAKES IT LESS OF A PROBLEM.

18     Q    ISN'T IT TRUE YOU HAVE NO EVIDENCE OF THE

19 PARTNERSHIP BETWEEN THE DEFENDANTS AND THEIR

20 RESELLERS?

21     A    I HAVE NO INFORMATION ABOUT THAT.

22     Q    ISN'T IT TRUE THAT YOU HAVE NO EVIDENCE OF ANY

23 PARTNERSHIP BETWEEN ANY OF THE DEFENDANTS AND ANY

24 WEB SITE OR COUNTERFEIT?

25     A    I HAVE NO INFORMATION ABOUT THAT.  AS FAR AS

153

1   RESELLERS ARE CONCERNED, WE CAN CONDUCT BUSINESS
2   DEALINGS FROM THE FACT THAT RECENTLY RESELLERS
3   STARTED APPEARING ON THE IP HOST.  SO IF DEFENDANTS
4   AS AN UPSWING PROVIDER HAS DESIGNATED THEIR
5   RESELLERS AS A DOWNSTREAM PROVIDER, IT MEANS FOR US
6   THAT THERE ARE SOME BUSINESS DEALINGS BETWEEN THEM.
7   Q    I'M SORRY.  HOW DOES IT SHOW THAT THERE'S A
8   BUSINESS DEALING OTHER THAN RENTING SPACE TO THE
9   RESELLER?
10  A    WELL, RENTING SPACE IS THE BUSINESS IT IS IN.
11  Q    WELL, IT'S RENTING SPACE AND AN IP ADDRESS,
12  BUT IS THERE ANY OTHER EVIDENCE OF ANY OTHER
13  BUSINESS DEALINGS?
14  A    UNLESS I DON'T UNDERSTAND WHAT YOU'RE TELLING
15  ME, FOR ME RENTING SPACE TO SOMEONE IS A BUSINESS
16  DEALING.
17  Q    MY QUESTION, SIR, DO YOU HAVE ANY EVIDENCE OF
18  ANY OTHER BUSINESS DEALING BETWEEN ANY OTHER
19  RESELLER AND ANY OTHER DEFENDANT OTHER THAN RENTING
20  A SERVER AND AN IP ADDRESS AND SOME BANDWIDTH?
21  A    I HAVEN'T SEARCHED FOR THEM BECAUSE IT'S NOT
22  REALLY MY BUSINESS.
23  Q    WELL, THEN YOU HAVE NO INFORMATION ABOUT THAT,
24  NO EVIDENCE; RIGHT?
25  A    YES.

1  Q    AND DO YOU KNOW WHAT THE DEFENDANTS AKANOC
2  SOLUTIONS AND MANAGED SOLUTIONS, INC., CHARGE FOR
3  SERVERS AND IP ADDRESSES AND BANDWIDTH ON A MONTHLY
4  BASIS?
5  A    I DON'T.
6  Q    AND DO YOU KNOW WHETHER IT'S BETWEEN $55 TO
7  $70 TO $80 A MONTH?
8  A    NO.
9  Q    AND YOU HAVE NO INFORMATION OR EVIDENCE THAT
10 THE DEFENDANTS GET ANY PART OF THE PROFIT FROM ANY
11 SALE OF ANY COUNTERFEIT BAG; ISN'T THAT TRUE?
12 A    NO, I DON'T.
13 Q    DO YOU HAVE ANY EVIDENCE OF ANY DIRECT
14 CONNECTION WITH ANY -- BETWEEN ANY DEFENDANT AND
15 ANYBODY SELLING COUNTERFEIT PRODUCTS?
16 A    NO.
17 Q    DO YOU HAVE ANY EVIDENCE THAT ANY DEFENDANT
18 CREATED ANY WEB SITE THAT IS USED BY ANY
19 COUNTERFEITER?
20 A    NO, I DON'T.
21 Q    DO YOU HAVE ANY EVIDENCE THAT ANY DEFENDANT
22 OPERATED OR ADVERTISED OR PROMOTED ANY WEB SITE
23 SELLING COUNTERFEIT PRODUCTS?
24 A    NO.
25 Q    DO YOU HAVE ANY EVIDENCE THAT ANY OF THE

1  DEFENDANTS ADVERTISED ANY INFRINGING USE OF THE
2  SERVERS SUCH AS "COME HERE AND WE'LL HELP YOU SELL
3  COUNTERFEIT PRODUCTS"?  HAVE YOU SEEN ANY
4  ADVERTISEMENT LIKE THAT?
5  A    NO.
6  Q    THANK YOU.  DO YOU HAVE ANY EVIDENCE THAT THE
7  DEFENDANTS EVER INSTRUCTED ANY OUTSIDE OPERATOR OF
8  HOW TO ENGAGE IN THE INFRINGING USE OF ITS SERVERS?
9  A    CAN YOU REPEAT, PLEASE.
10 Q    DO YOU HAVE ANY EVIDENCE THAT ANY OF THE
11 DEFENDANTS HAVE EVER INSTRUCTED ANY WEB SITE
12 OPERATOR HOW TO USE THEIR SERVERS FOR INFRINGEMENT?
13 A    WELL, I BELIEVE I HAVE CIRCUMSTANTIAL EVIDENCE
14 OF ALL OF THIS.  I DON'T HAVE DIRECT EVIDENCE.  I
15 HAVE CIRCUMSTANTIAL EVIDENCE, EVEN THE PATTERN OF
16 CONDUCT OF THE DEFENDANTS, THAT'S WHAT I CAN
17 DEDUCT.
18 Q    WOULD YOU PLEASE TAKE A LOOK AT YOUR
19 DEPOSITION.  I WOULD DIRECT YOUR ATTENTION TO PAGE
20 159.  IN PARTICULAR LINES 18 TO 22.  DURING YOUR
21 DEPOSITION ON APRIL 23RD, 2008 --
22 A    I'M SORRY.  WHAT PAGE?
23 Q    I'M SORRY.  159.
24 A    159?
25 Q    YES.  HAVE YOU FOUND IT?

U.S. COURT REPORTERS

1  A    YES.

2  Q    LINES 18 TO 22 IS WHAT I'M DIRECTING YOUR

3  ATTENTION TO.

4       IN THAT DEPOSITION WAS THIS QUESTION

5  ASKED AND THIS ANSWER GIVEN:  "WHAT EVIDENCE DOES

6  LOUIS VUITTON HAVE THAT ANY OF THE DEFENDANTS

7  ADVERTISED AN INFRINGING USE OF ITS SERVERS OR

8  INSTRUCTED ANY WEB SITE OPERATORS HOW TO ENGAGE IN

9  ANY INFRINGING USE OF ITS SERVER?

10      "ANSWER:  I DON'T THINK WE HAVE ANY."

11      WAS THAT QUESTION ASKED AND THAT ANSWER

12 GIVEN?

13 A    YES.

14 Q    THANK YOU.  ISN'T IT TRUE THAT YOU HAVE NO

15 EVIDENCE THAT THE DEFENDANTS HAD ANY AFFIRMATIVE

16 INTENT THAT THEIR INTERNET HOSTING SERVICES WERE

17 USED TO -- WOULD BE USED TO INFRINGE ANY RIGHTS OF

18 LOUIS VUITTON?

19 A    NO.

20 Q    NO YOU DON'T HAVE ANY EVIDENCE?  IS THAT WHAT

21 YOU'RE SAYING?

22 A    YES.

23 Q    THANK YOU.  ISN'T IT TRUE THAT YOU HAVE NO

24 EVIDENCE THAT THE DEFENDANTS RECEIVED ANY MONEY

25 FROM THE SALE OF INFRINGING PRODUCTS THAT MAY HAVE

157

```
1    BEEN HOSTED ON THEIR SERVERS?
2    A    NO, I DON'T.
3    Q    ISN'T IT TRUE THAT YOU HAVE NO EVIDENCE THAT
4    THE DEFENDANTS RECEIVED ANY COMMISSION OR
5    PERCENTAGE OF SALES OR ANY EXTRA MONEY, EXCEPT FOR
6    THE HOSTING FEE FROM ANY WEB SITE SELLING
7    INFRINGING PRODUCTS?
8    A    I DON'T HAVE SUCH EVIDENCE.
9    Q    ISN'T IT TRUE THAT YOU HAVE NO EVIDENCE THAT
10   THE DEFENDANTS, ANY OF THEM, INTENTIONALLY INDUCED
11   OR CAUSED ANY WEB SITE OPERATORS TO INTENTIONALLY
12   INFRINGE THE RIGHTS OF LOUIS VUITTON?
13   A    AGAIN, CIRCUMSTANTIAL EVIDENCE WE HAVE.
14   DIRECT EVIDENCE, NO.
15   Q    DIRECTING YOUR ATTENTION TO PAGE 171 OF YOUR
16   DEPOSITION, AND PARTICULARLY LINES 21 TO 24.
17             DURING THAT DEPOSITION WAS THIS QUESTION
18   ASKED AND THIS ANSWER GIVEN:  WHAT EVIDENCE DOES
19   LOUIS VUITTON HAVE THAT ANY OF THE DEFENDANTS
20   INTENTIONALLY INDUCED OR CAUSED THE THIRD PARTY WEB
21   SITE OPERATORS TO INFRINGE ANY RIGHTS OF LOUIS
22   VUITTON?
23   A    I'M SORRY.  WHAT PAGE WAS THAT?
24   Q    171, LINES 21 TO 24.
25             WAS THIS QUESTION ASKED AND THIS ANSWER
```

1   GIVEN: "WHAT EVIDENCE DOES LOUIS VUITTON HAVE THAT
2   ANY OF THE DEFENDANTS INTENTIONALLY INDUCED OR
3   CAUSED THE THIRD PARTY WEB SITE OPERATORS TO
4   INFRINGE ANY RIGHTS OF LOUIS VUITTON?
5              "ANSWER:  I DON'T."
6   A    THE QUESTION THAT YOU'RE ASKING ME TODAY IS
7   DOES IT REFER TO THE ACTUAL MOMENT OR ARE YOU
8   PLACING YOURSELF IN THE TIME WHEN I WAS DEPOSED?
9   Q    IS IT TRUE THAT AT THE TIME THAT YOU WERE
10  DISPOSED YOU SAID YOU HAD NO EVIDENCE?
11  A    AT THE TIME I WAS DEPOSED, NO.
12  Q    THANK YOU.
13  A    YES, IT WAS TRUE.
14  Q    WHAT EVIDENCE DO YOU HAVE TODAY, IF ANY, THAT
15  IS DIFFERENT THAN THE TESTIMONY AT YOUR DEPOSITION
16  THAT THERE IS ANY INTENTIONAL INDUCEMENT BY THE
17  DEFENDANTS TO CAUSE ANY WEB SITE OPERATOR TO
18  INFRINGE ANY RIGHT OF LOUIS VUITTON?
19  A    I BELIEVE WE HAVE CIRCUMSTANTIAL EVIDENCE.
20  Q    WELL, WHAT IS THAT?
21  A    WE -- FROM THE PATTERN OF CONDUCT OF THE
22  DEFENDANTS WHICH HAVE BEEN TO SYSTEMATICALLY ALLOW
23  ALL OF THESE DOZENS OF COUNTERFEIT WEB SITES TO
24  PERSISTENTLY COME ON THEIR SERVICE, WE HAVE
25  DEDUCTED THAT IN A CERTAIN, IN A CERTAIN WAY

1  DEFENDANTS ARE ENCOURAGING THIS INFRINGING
2  ACTIVITY.
3  Q    ISN'T THAT JUST SPECULATION?
4  A    NO.
5  Q    YOU HAVE NO EVIDENCE OF ANY DIRECT CONNECTION
6  BETWEEN ANY OF THE INFRINGEMENTS AND THE
7  DEFENDANTS; ISN'T THAT TRUE?
8  A    BETWEEN WHAT?  I'M SORRY.
9  Q    YOU HAVE NO DIRECT EVIDENCE OF ANY CONNECTION
10 BETWEEN ANY INFRINGEMENTS AND THE DEFENDANTS; ISN'T
11 THAT TRUE?
12 A    CAN YOU DEFINE "INFRINGEMENTS"?
13 Q    WHAT YOU SUED THESE DEFENDANTS FOR, THE DIRECT
14 INFRINGEMENTS YOU'RE SAYING THAT THEY CONTRIBUTED
15 TO, THAT INFRINGEMENT OF COUNTERFEIT -- OF
16 TRADEMARK AND COPYRIGHTS OF LOUIS VUITTON THAT YOU
17 TESTIFIED TO THE LAST TWO DAYS?
18 A    NO.
19 Q    YOU HAVE NO EVIDENCE OF THAT; IS THAT RIGHT?
20 A    YES.
21 Q    ISN'T IT TRUE THAT YOU HAVE NO EVIDENCE THAT
22 THE DEFENDANTS PROVIDED ANY WEB HOSTING SERVICES
23 WITH THE OBJECT OR INTENT OF PROMOTING ITS USE TO
24 INFRINGE LOUIS VUITTON'S TRADEMARKS OR THE
25 TRADEMARKS OF ANYONE?

1   A   I DO NOT HAVE DIRECT EVIDENCE.
2   Q   ISN'T IT TRUE THAT YOU HAVE NO ACTUAL EVIDENCE
3   THAT THE DEFENDANTS ENGAGED IN ANY PURPOSEFUL
4   CULPABLE EXPRESSION OR CONDUCT AS OPPOSED TO ANY
5   MERE KNOWLEDGE WITH REGARD TO ANY MERE INFRINGEMENT
6   BY ALLEGED WEB SITES USING ITS SERVERS?
7   A   NO.
8   Q   ISN'T IT TRUE THAT YOU HAVE NO ACTUAL EVIDENCE
9   THAT THE DEFENDANTS ACTUALLY CONTROLLED ANY WEB
10  SITES, SUCH AS OPERATING THEMSELVES OR CAUSING
11  SOMEONE ELSE TO OPERATE THEM OR MANIFESTING ANY
12  CONTROL OVER THOSE WEB SITES?
13  A   WE HAVE EVIDENCE THAT THEY HAVE CONTROL.
14  Q   WHAT EVIDENCE DO YOU HAVE OF CONTROL?
15  A   WELL, WE HAVE TESTIMONY OF OUR EXPERT.
16          THE COURT:  LET'S USE THIS SUBJECT MATTER
17  CHANGE CONTROL, IF YOU'RE GOING TO PURSUE THAT, AS
18  AN OPPORTUNITY TO TAKE A MID-AFTERNOON BREAK.  IT'S
19  ABOUT 2:30.  WE'LL COME BACK IN ABOUT TEN MINUTES.
20          MR. LOWE:  THANK YOU.
21          (WHEREUPON, A RECESS WAS TAKEN.)
22          THE COURT: VERY WELL.  YOU MAY RESUME
23  YOUR EXAMINATION.
24          MR. LOWE:  MAY IT PLEASE THE COURT.
25  Q   MR. LIVADKIN, IN YOUR TESTIMONY EARLIER TODAY

## CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE, INCLUSIVE, CONSTITUTED A TRUE, FULL AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY.

IRENE RODRIGUEZ, CSR, CRR
CERTIFICATE NUMBER CSR 8074