J. Andrew Coombs (SBN 123881)
andy@coombspc.com
Annie S. Wang (SBN 243027)
annie@coombspc.com
J. Andrew Coombs, A Prof. Corp.
517 E. Wilson Ave., Suite 202
Glendale, California 91206
Telephone:  (818) 500-3200
Facsimile:   (818) 500-3201

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | |
|---|---|
| Louis Vuitton Malletier, S.A., | ) Case No. C 07 3952 JW |
| Plaintiff, | ) OPPOSITION OF PLAINTIFF LOUIS |
| v. | ) VUITTON MALLETIER, S.A. TO |
| | ) DEFENDANTS' RULE 50(b) MOTION; |
| Akanoc Solutions, Inc., et al. | ) DECLARATION AND EXHIBITS IN |
| | ) SUPPORT |
| Defendants. | ) |
| | ) Date:     February 22, 2010 |
| | ) Time:    9:00 a.m. |
| | ) Court:   Hon. James Ware |
| | ) |

Plaintiff Louis Vuitton Malletier, S.A. ("Plaintiff" or "Louis Vuitton") submits that Dendants Akanoc Solutions, Inc. ("Akanoc"), Managed Solutions Group, Inc. ("MSG") (collectively the "ISP Defendants") and Steve Chen's ("Chen") (collectively "Defendants") Rule 50(b) Motions must be denied in light of the applicable legal standards, the weight and credibility of the evidence offered at trial satisfying the requisite legal showings and supporting the jury's verdict and its finding of liability and awarding damages for Defendants' contributory copyright and trademark infringement.

Plaintiff incorporates herein and references its initial and supplemental responses to Defendants' Rule 50(a) motions filed as Docket No.s 213 and 214 on August 24, 2009, and Docket No. 237 on September 3, 2009, copies of which are attached hereto as Exhibits A-C to the Declaration of J. Andrew Coombs for the Court's convenience.

1

## <u>CONCLUSION</u>

2

3       For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendants'

motions for judgment as a matter of law in their entirety.

4

5  Dated:  February 1, 2010          J. Andrew Coombs, A Professional Corp.

6

7                         ____/s/ J. Andrew Coombs_____
By:  J. Andrew Coombs

8                            Annie S. Wang
Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

## DECLARATION OF J. ANDREW COOMBS

I, J. Andrew Coombs, declare as follows:

1.    I am an attorney at law duly admitted to practice before the Courts of the Northern District of California.  I am counsel of record for Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton") in the above-captioned matter.  Except as otherwise stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2.    On or about August 24, 2009, I caused to be filed Docket No. 213, Opposition of Plaintiff Louis Vuitton Malletier, S.A. to Defendants' Rule 50(a) Motion for Judgment As a Matter of Law Regarding: Contributory Copyright Infringement Claim and Docket No. 214, Opposition of Plaintiff Louis Vuitton Malletier, S.A. to Defendants' Rule 50(a) Motion for Judgment As a Matter of Law Regarding: Contributory Trademark Infringement Claim, as initial responses to Defendants' Rule 50(a) Motions for Judgment as a Matter of Law.  Attached hereto as Exhibit A and B are true and correct copies of Plaintiff's filings identified as Docket No.s 213 and 214.

3.    On or about September 3, 2009, in response to the Court's request for additional briefing on the issues of the application of the Copyright Act and Lanham Act to this case, I caused to be filed as Docket No. 237, Plaintiff's Supplemental Brief re Applicability of US Copyright and Trademark Laws to California Based Web Hosting Defendants; Request for Entry of Judgment.  A true and correct copy of which is attached hereto as Exhibit C.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed the 1st day of February, 2010, at Glendale, California.


   __/s/ J. Andrew Coombs_____ _____

   J. ANDREW COOMBS

# EXHIBIT A

J. Andrew Coombs (SBN 123881)
*andy@coombspc.com*
Annie S. Wang (SBN 243027)
*annie@coombspc.com*
J. Andrew Coombs, A Prof. Corp.
517 E. Wilson Ave., Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | |
|---|---|
| Louis Vuitton Malletier, S.A., | Case No. C 07 3952 JW |
| Plaintiff, | OPPOSITION OF PLAINTIFF LOUIS VUITTON MALLETIER, S.A. TO DEFENDANTS' RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING: CONTRIBUTORY COPYRIGHT INFRINGMENT CLAIM |
| v. | |
| Akanoc Solutions, Inc., et al. | |
| Defendants. | |

**INTRODUCTION**

Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton" or "Plaintiff") files this Opposition to Defendants' Rule 50(a) Motion for Judgment as a Matter of Law Regarding Contributory Copyright Infringement Claim.

Defendants' motion betrays a profound misunderstanding of the standards applicable to a motion for judgment as a matter of law and for liability under the Copyright Act. Defendants' motion misapplies the holdings in the decision of the Ninth Circuit in *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F. 3d 1088 (9th Cir. 1994), the evidence already introduced evidencing the elements of the claim for contributory copyright infringement, the standards for constructive knowledge as apply in this Circuit, including *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) and the application of the safe harbor provided for by the *Digital Millennium Copyright Act* ("DMCA)".

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule     - 1 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Infringement Claim.

Exhibit A Page 5

# ARGUMENT

**A. Introduction**

Although a motion for judgment as a matter of law may be filed at any time before submission of the case to the jury, it must be construed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where reasonable minds can differ, where the evidence is in dispute or when credibility is at issue, the motion is properly denied. *Id*. at 250-51.

In addition to Defendants' fundamental misstatement of many of the applicable principles of law underpinning their motion, they cannot and do not meet their burden.

**B. Extraterritoriality of the Copyright Act; Acts of Underlying Infringement Occurred in the United States.**

Defendants engage in ongoing, persistent, willful conduct to facilitate the infringement of the Plaintiff's copyrights. The rights infringed through Defendants' assistance are extensive and enumerated in the Copyright Act. These include, for purposes of this action, the display of Plaintiff's copyrights on webpages located on the Defendants' servers, blocks from the courthouse, the distribution of copies of those images to Internet users both here in the United States and located elsewhere around the world with data originating from San Jose, California, the reproduction and sale of merchandise embodying unauthorized copies of those copyrights and the export/import of that merchandise into the United States. Any one of these acts (and Plaintiff argues **all** of these acts) provide the requisite territoriality.

Defendants' argument on these issues is predicated upon the Ninth Circuit's decision in *Subafilms*, *supra*, but Defendants fail to cite key portions of the authority. In *Subafilms*, the Plaintiff's claim for copyright infringement against the defendant rested upon one central allegation. The overseas distribution of a film in which the Plaintiff owned applicable copyrights, was purportedly "authorized" by the defendant located in the United States. There was no allegation that any action – other than the underlying authorization – occurred within the United States. The copies were made, distributed, displayed and sold *entirely* outside the United States.

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule 50(a) Motion for Judgment as a Matter of Law Regarding: Contributory Infringement Claim.       - 2 -

Exhibit A Page 6

In arriving at its conclusion that United States courts could not address the Plaintiff's claim in that case, the Ninth Circuit did rule that "*wholly* extraterritorial acts of infringement cannot support a claim under the Copyright Act[.]"  *Subafilms*, *supra*, at 1095 (emphasis added).

What the Defendants omit, however, is "to the extent part of an 'act' of infringement occurs within the United States, then, although such act is completed in a foreign jurisdiction, those parties who contributed to the act within the United States may be rendered liable under American copyright law."  Id. at fn 9, quoting from Nimmer § 17.02, at 17-19.  Thus, Plaintiff meets its burden under *Subafilms* not only because part of the infringement occurred in the United States, some of the claims for infringement were completed entirely within the United States.

The presumption against extraterritoriality serves two purposes.  First, it serves to protect against unintended clashes between our laws and those of other nations which could result in international discord.  Second, it reflects the notion that when Congress legislates, it is primarily concerned with domestic conditions.  *ARC Ecology v. U.S. Dept. of the Air Force*, 294 F. Supp. 2d 1152, 1158 (N.D. Cal. 2003).  These purposes are not advanced by Defendants interpretation of the applicable standards: whatever the difference in enforcement standards between the United States and China, there is no difference or dispute regarding the equivalent illegality of the underlying direct infringement.  Moreover, there is ample testimony that Defendants and their customers clearly aim their goods and services at the United States marketplace.

There is no question that *part* of the acts of infringement proved thus far (and display entirely) occurred on Defendants' servers.  This includes storage of the raw data (as described in Defendants' motion at 5:19-21) and provision of bandwidth through which that raw data can be distributed to users.

But there is far more supporting application of the Copyright Act to the Defendants' contributory copyright infringement.  These acts include the marketing and distribution of copies in the United States and export of merchandise embodying the Plaintiff's copyrights to the United States.  Moreover, these underlying direct infringements were *completed* in the United States.  *See*, *Nimmer on Copyright*, Section 17.02 (2007) ("[R]egardless of how much infringing conduct may

1    or may not occur abroad, when violation of one of the exclusive rights in copyrighted works is

2    completed within the United States, the activity becomes actionable under domestic law.")

3    Plaintiff's investigator located in the United States, received what he viewed on the infringing

4    websites that were hosted on Defendants' servers in San Jose.  The appropriateness of the

5    application of the Copyright Act is established.

6        The underlying acts of copyright infringement are clearly not *wholly* extraterritorial acts.

7    While the counterfeit merchandise may be produced in China, it is in fact, as shown by the

8    evidence presented by Plaintiff, specifically marketed and sold to persons within the United

9    States.[1]  Thus the underlying acts of direct infringement do, in part, occur within the United States

10   and fall under the purview of the Copyright Act.  In fact, "the mere act of importation" of the

11   counterfeit copyrighted work alone constitutes infringement under the Copyright Act.  *Parfums*

12   *Givenchy, Inc. v. C&C Beauty Sales, Inc.*, 832 F. Supp 1378, 1383 (C.D. Cal. 1993); 17 U.S.C. §

13   501(a).  So, where an act of infringement occurs within the United States, including but not limited

14   to the marketing, sale and importation of counterfeit Louis Vuitton merchandise more specifically,

15   the Copyright Act is properly applied, as it is in this instance.  *L.A. News Serv. v. Reuters Tel. Int'l,*

16   *Ltd.*, 340 F.3d 926, 928 (9th Cir. 2003).

17       Moreover, Congress made clear that the Copyright Act should apply extraterritorially in

18   instances where unauthorized importation of copyrighted works occurs, such as it has in this case.

19   *Subafilms, Ltd., supra* at 1095; *see* 17 U.S.C.A. § 602(a).  Louis Vuitton neither authorized the

20   counterfeiting of its products and infringement of its copyrights nor their importation into the

21   United States, as claimed by Defendants in their motion.

22       For these reasons it is unnecessary for the Court to address the still more far-fetched

23   argument that computer users viewing of the infringing images is a fair use.  Louis Vuitton makes

24   no claim or allegation concerning any purported infringement *by Internet consumers* who view

---

[1] Most all of the websites are in English and some reference specific policies for customs seizures and refunds of "US$18" should such seizure occur (e.g., Ex. 72.1), and many of the websites specifically provide for shipping rates to the United States (e.g., Ex. 63).

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule        - 4 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Infringement Claim.                                              Exhibit A Page 8

websites on Defendants' servers, as apparently set up at ¶ I.B.c.(2) and the Court need not concern itself with the fair use straw man Defendants strive to set up there.

The data acquired during the court ordered inspection shows that photos of copies and unauthorized uses of Louis Vuitton's properties resided on Defendants' servers and it did not require an internet browser to view those photos.[2] See Exhibit 593.31. The infringing images were not "only 0s and 1s" they were visually complete and identical to their online counterparts. See Exhibits 611 and 613 re www.bigworldshoes.com. Among other things, Defendants argument misses the point that the consumer's viewership *could not have occurred* but for the Defendants contributory infringement through serving up and distributing the data that consumers could view. And it was Defendants' continued offering of goods and services despite specific and general knowledge of their infringing customers that gave rise to the claims at issue. To take the view that the server hosts "only 0s and 1s" as apparently asserted by Defendants is inaccurate and would effectively and improperly insulate any online activity.

### C. Defendants' Motion Improperly Assumes Jurisdiction Over Underlying Direct Infringers is an Element Necessary to a Contributory Infringement Action.

Defendants conflate their argument concerning proof of direct infringement with jurisdiction over direct infringers. Defendants leap from this unexplained conjunction to a discussion about personal jurisdiction over online activity. The only personal jurisdiction issue of relevance here is that which concerns the Defendants themselves. As they are all California residents and the activities at issue occur a mere "couple of blocks" from the Courthouse as testified to by one witness, there can be no argument about the propriety of personal jurisdiction.

Defendants' motion posits that because Louis Vuitton can not demonstrate that it has personal jurisdiction over the Chinese sellers, Defendants should escape liability for contributory copyright infringement. This is not the case.

The three elements required to establish contributory copyright liability are: (1) direct infringement by a primary infringer, (2) knowledge of the infringement, and (3) material

---

[2] Plaintiff's Expert specifically testified that Guidance Software computers are not connected to the internet for forensic purposes.

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Infringement Claim.                    - 5 -

Exhibit A Page 9

contribution to the infringement. *MGM Studios, Inc. v. Grokster Ltd.*, 380 F.3d 1154, 1160 (9th Cir. 2004); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996). All that is required is that an underlying direct infringement has occurred; there is no requirement that the Court also have jurisdiction over third parties who are not Defendants in this case. There need not be "substantial" or "continuous and systematic" contact by the underlying infringers with this jurisdiction. The underlying infringers only need to have perpetrated the underlying infringement of which the Defendants had knowledge and materially contributed.

**D. Plaintiff Has Proved All Elements of its Claims.**

    **i.**     **Plaintiff Has Shown Notice.**

The absurdity of Defendants' construction of *Subafilms*, *supra*, is underscored by its argument that it had no *specific* notice of any underlying direct infringement. This was contradicted by evidence presented by the Plaintiff and by Defendants' own Exhibit 1598. Accordingly, the only way Defendants' argument can pass muster is if all the notices of infringing conduct they received are to be considered ignored because, irrespective of such notice and the content located on servers in San Jose, their customers were located offshore. Acceptance of this construction is at odds with common sense, the current law and could only foster an environment where infringers (and other online criminals) would merely move their activity into a different jurisdiction to insure that it could be caught by no national law. Defendants have admitted notice and none of their attempts to discount these admissions should be accepted.

Plaintiff has also shown evidence of constructive knowledge sufficient to meet its burden of proving notice. Defendants cite the Supreme Court decision in *Grokster*, claiming that it supports the proposition that Defendants' general knowledge that infringement could occur using their servers does not constitute knowledge for purposes of contributory copyright infringement. Defendants fail to cite, however, further language in the decision stating that "evidence of infringement on a gigantic scale" occurring on the Grokster networks was enough to determine that the defendant had the intent to induce copyright infringement and that information about the general volume of infringing activity on a website could be considered when determining whether

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule 50(a) Motion for Judgment as a Matter of Law Regarding: Contributory Infringement Claim.     - 6 -

Exhibit A Page 10

or not a contributory infringer had the requisite knowledge to be held liable. *MGM Studios, Inc. v. Grokster,Ltd.,* 545 U.S. 913, 940 (2005). While knowledge of the existence of infringing potential or of particular methods of infringement is not enough to satisfy the knowledge requirement, Defendants' knowledge that a large volume of infringement was actually occurring on their servers is certainly enough to satisfy the knowledge requirement of contributory copyright infringement.

Courts have held in analogous situations that specific knowledge of infringement is not necessary to be held liable for contributory copyright infringement. Swap meet and flea market operators have been held contributorily liable where vendors sell counterfeit items where the operators were willfully blind to the vendor's infringing activities. *Fonovisa*, *supra*, at 265.

In *Fonovisa*, operators of swap meets where vendors offered for sale thousands of counterfeit recordings were notified via a letter from the Sheriff's office of the vendor's infringing conduct a year after a raid. *Id.* at 261. The Ninth Circuit held that this was indisputable evidence that the swap meet operators had the requisite knowledge that vendors were selling counterfeit recordings in order to be held liable for contributory copyright infringement. *Id.* If Defendants somehow avoided having actual knowledge of the massive amounts of infringement occurring on their servers, despite this lawsuit, a court ordered inspection of their servers and multiple notices, their willful blindness will satisfy the knowledge requirement of contributory copyright infringement.

**ii.**      **Plaintiff Has Shown Material Contribution.**

Defendants do (finally) correctly state that it is Plaintiff's burden to prove "inducing, causing **OR** material contribution, citing among others, the governing Ninth Circuit decisions in *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) and *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, ltd.*, 380 F.3d 1154 (9th Cir. 2004). See also, *Perfect 10, Inc. v. Visa Int'l Service Assoc., et al.*, 494 F.3d 788, 795 (9th Cir. 2007) *citing Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).

The more readily established element is material contribution as outlined by Louis Vuitton's witnesses, the evidence of Defendants' advertising practices, as well as Defendant

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule 50(a) Motion for Judgment as a Matter of Law Regarding: Contributory Infringement Claim.     - 7 -

Exhibit A Page 11

Chen's testimony concerning the sophisticated equipment and back ups in place at their facility as well as their physical location and proximity to the "internet backbone" as described at length by Defendants witnesses and counsel, among other things. The continued willful blindness of the Defendants also materially contributes to the counterfeiting and piracy occurring on Defendants' servers.

Liability has also been found to exist where the defendants provide the "site and facilities" for infringing activity, *Fonovisa*, 76 F.3d at 264, when "a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system," *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007), or when a computer system operator knows that specific infringing materials are present on their systems and are able to take "simple measures" to limit infringement, they continue to provide access to the infringing materials. *Religious Tech. Ctr. V. Netcom On-Line Comm. Serv., Inc.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995). Defendants materially contribute to the infringing activity occurring their servers under all of these additional grounds for liability.

Defendants also cite that the inducement standard is defined by some courts as "actively and knowingly aid[ing] and abet[ting] another's direct infringement. Defendants' Motion p. 9:19-20; *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001) ("liability exists if the defendant engages in personal conduct that encourages or assists the infringement"). Plaintiff submits that viewing the evidence thus far in its favor satisfies this element as well.

### C.   Defendants Are Not Eligible For DMCA Protection.

Defendants' assertions predicated upon the DMCA are entirely improper.

First, as noted by them, it is not a complete defense but a limited immunity which specifies remedies which may be ordered where an ISP is otherwise eligible for protection. Motion, 11:1-2 ("the protections include immunity from any copyright damage award and limitations on injunction"). As such it is not a basis for judgment as a matter of law.

Second, also as noted by Defendants, they first filed a designation of agent for service with the Copyright Office *after* the present action was filed. Motion, 10:24. Accordingly, Defendants

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule 50(a) Motion for Judgment as a Matter of Law Regarding: Contributory Infringement Claim.    - 8 -

Exhibit A Page 12

did not qualify for safe harbor immunity and, ultimately, this will be a matter on which judgment as a matter of law is properly ordered in favor of Plaintiff and against Defendants.

Third, the DMCA safe harbor is an affirmative defense. As such, the Plaintiff has no burden of proof. *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 657 (E.D. Ill. 2002). It is Defendants' burden to show that they have fully complied with the provisions of the DMCA in order to seek its safe harbor protection and this they will be unable to do so, not only as noted above but for other reasons already before the Court including (but not limited to) the fact one Defendant, Managed Solutions Group, Inc. has no published terms of service to this day and the fact that neither ISP defendant took expeditious steps to disable access to the infringing material.

It is improper for Defendants to include an argument regarding the DMCA safe harbors in a Rule 50 motion when Defendants have yet to prove threshold applicability, and it is entirely Defendants' burden to show that they are eligible for safe harbor protection under the DMCA.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Judgment as a Matter of Law Regarding Copyright Infringement Claim.

Dated: August 24, 2009        J. Andrew Coombs, A Professional Corp.

                           ___/s/ J. Andrew Coombs_____
                           By: J. Andrew Coombs
                             Annie Wang
                           Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule     - 9 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Infringement Claim.                        Exhibit A Page 13

# EXHIBIT B

J. Andrew Coombs (SBN 123881)
*andy@coombspc.com*
Annie S. Wang (SBN 243027)
*annie@coombspc.com*
J. Andrew Coombs, A Prof. Corp.
517 E. Wilson Ave., Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

Attorneys for Plaintiff Louis
Vuitton Malletier, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | |
|---|---|
| Louis Vuitton Malletier, S.A.,<br><br>                              Plaintiff,<br><br>        v.<br><br>Akanoc Solutions, Inc., et al.<br><br>                              Defendants. | Case No. C 07 3952 JW<br><br>OPPOSITION OF PLAINTIFF LOUIS VUITTON MALLETIER, S.A. TO DEFENDANTS' RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING: CONTRIBUTORY TRADEMARK INFRINGMENT CLAIM |

## INTRODUCTION

Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton" or "Plaintiff") files this Opposition to Defendants' Rule 50(a) Motion for Judgment as a Matter of Law Regarding Contributory Trademark Infringement Claim. Once again Defendants mischaracterize the record and the applicable law in support of the untenable proposition that Plaintiff has failed to introduce evidence on each element of the claim for contributory trademark infringement. At root, Plaintiff must show, as stated in the leading decision *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982), namely: "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit." *Id.* at 854; s*ee, also, Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir. 1996).

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule 50(a) Motion for Judgment as a Matter of Law Regarding: Contributory Trademark Infringement Claim.

- 1 -

Exhibit B Page15

# ARGUMENT

### A. Introduction

Although a motion for judgment as a matter of law may be filed at any time before submission of the case to the jury, it must be construed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where reasonable minds can differ, where the evidence is in dispute or when credibility is at issue, the motion is properly denied. *Id.* at 250-51.

In addition to Defendants' fundamental misstatement of many of the applicable principles of law underpinning their motion, they cannot and do not meet their burden.

### B. Plaintiff Has Introduced Ample Proof on Each Element of Its Claim.

#### i. Evidence of Direct Infringement: Infringer "Identification".

Defendants' scattershot contentions that Plaintiff has not presented evidence of underlying direct infringement are without merit. Plaintiff has introduced extensive evidence demonstrating the vast number of underlying infringements perpetrated with the use of Defendants' goods and services.[1]

As separately noted in Opposition to Defendants Motion for Judgment as a Matter of Law on Plaintiff's claim for contributory copyright infringement, Defendants improperly conflate the requirement to prove such infringement with the requirement that Plaintiff *identify* to the specifications desired by the Defendants of the underlying infringer. Plaintiff has provided multiple options to identify the direct infringer including by website, by Defendants' customer, and by payee information, but it is not enough for the Defendants. Defendants' desires in this arena do not comport with the requirements of the law and their motion is properly denied on this basis.

---

[1] Because Defendants supply both goods and services, their argument predicated upon a supposed distinction rooted in the Ninth Circuit's decision in *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir. 1999) can be safely disregarded. Testimony has clearly established that the Defendants supply a package of goods and services which enable China-based customers to conduct Internet businesses through websites hosted in the United States. The bundle of goods and services include (i) a server, the elements of which were further elaborated upon by Defendant Chen in his testimony; (ii) an operating system and other "control panel" type software; (iii) router programming which insures interactivity with the Internet community; and (iv) bandwidth which provides underlying connectivity, among other things.

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Trademark Infringement Claim.

- 2 -

Defendants then leap from this unexplained conjunction to a discussion about personal jurisdiction over online activity. The only personal jurisdiction issue of relevance here is that which concerns the Defendants themselves. As they are all California residents and the activity at issue occurs a mere "couple of blocks" from the Courthouse as testified to by one witness, there can be no argument about the propriety of personal jurisdiction.

Defendants' motion posits that because Louis Vuitton has not demonstrated that it has personal jurisdiction over the Chinese sellers, Defendants should escape liability for contributory trademark infringement. This is not the case.

The elements required to establish contributory trademark liability were outlined at the outset: all that is required is that an underlying direct infringement have occurred; there is no requirement that the Court also have jurisdiction over third parties who are not Defendants in this case. There need not be "substantial" or "continuous and systematic" contact by the underlying infringers with this jurisdiction. The underlying infringers only need to have perpetrated the underlying infringement of which the Defendants had knowledge, control and to which they materially contributed or concerning which they remained willfully blind.

### ii. Evidence of Direct Infringement: Use in Commerce

Infringers enabled by the valuable assistance provided by Defendants, "use" Plaintiff's trademarks in commerce. Any other conclusion is absurd.

First, Defendants ignore *any* use which occurs other than that which is "affixed" to the goods themselves. By this construction, no promotional materials or advertising could ever be construed a use in commerce and predicate for a claim for trademark infringement. This is contradicted by the very definition of "use in commerce" quoted by Defendants which clearly states that a mark shall be deemed to be used in commerce, on goods when "it is placed in any manner on the goods or their containers *or the displays associated therewith*…" 15 U.S.C. § 1127. The underlying direct infringers used Plaintiff's trademarks not only on the infringing websites but also on the counterfeit product and accompanying packaging and promotional materials as well.

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Trademark Infringement Claim.

- 3 -

Exhibit B Page17

Second, Defendants make the stunning assertion that the promotion, display, sale and importation into the United States of counterfeit knockoffs of Louis Vuitton's product does not satisfy Plaintiff's burden to show likelihood of confusion. This argument merely needs to be stated to be rejected. There is even a presumption at law which holds as true in common sense that the entire purpose of a knock off product is to appear like the genuine, and confusion its very purpose for existence.[2] Even were the Court to accept the argument that Plaintiff's election to make select purchases for the purposes of developing evidence supporting its claims constituted some form of retroactive endorsement of the underlying transaction such that the evidentiary transaction is not itself infringing, the Defendants' argument requires still further leaps in logic, including the conclusion that these same transactions cannot constitute evidence that other sales into the United States did not occur. In view of testimony that Defendants deliberately aim their goods and services at China-based customers who seek to develop United States business, this proposition must be categorically rejected.[3]

Moreover, this argument also requires the Court to accept the proposition (also noted in Opposition to the Motion on Contributory Copyright Infringement) that the storage and distribution of offers of counterfeit merchandise – because stored in bits of 0s and 1s – cannot constitute the

---

[2] There is a presumption of confusion or confusion as a matter of law when dealing with counterfeit marks. *Brookfield Communs. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."); *Shakespeare Co. v. Silstar Corp. of Am.*, 110 F.3d 234, 241 (4th Cir. 1997) ("Our cases make clear, however, that that presumption arises only where the intentional copying is motivated by an "intent to exploit the good will created by an already registered trademark""); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion."); *see Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 256-57 (9th Cir. 1986) (reversing a district court's finding of no likelihood of confusion even though the six other likelihood of confusion factors all weighed against a finding of likelihood of confusion); *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) citing *Phillip Morris USA Inc. v. Felizardo*, 2004 U.S. Dist. LEXIS 11154, at *18 (S.D.N.Y. June 18, 2004) ("However, "in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination . . . because counterfeit marks are inherently confusing."); *Phillip Morris USA Inc. v. Felizardo*, 2004 U.S. Dist. LEXIS 11154, at *18 (S.D.N.Y. June 18, 2004) ("[C]ounterfeit marks are inherently confusing."); *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003); ("[C]ounterfeits by their very nature, cause confusion…Indeed, confusing the customer is the whole purpose of creating counterfeit goods."); *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1007 fn. 11 (S.D. Tex. 2000) ("However, in the case of a counterfeit mark, likelihood of confusion is clear."); *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1346 (E.D.N.Y. 1994) ("Moreover, confusion is simply inevitable since the parties are selling the same products in the same channels of commerce under the guise of the identical Dial-A-Mattress mark.").
[3] This evidence was introduced through Defendants' own webpage as well as through testimony of Defendant Chen.

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule - 4 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Trademark Infringement Claim.                    Exhibit B Page18

distribution or display of anything recognized as a trademark.  This is simply incorrect as evidenced by photos, visible to the human eye, that clearly exhibit knockoffs of Plaintiff's trademarks on Defendants' servers.  *See* Exhibit 593.31.  To endorse Defendants' argument would effectively insulate all online communications, a conclusion at odds with common sense, overwhelming case law and policy.

### iii.  **Use in Commerce: Extra-territorial Application.**

Defendants reiterate their bankrupt argument regarding extraterritorial application of the Lanham Act.  Although governed by different authority and slightly different standards than the Copyright Act, the argument has no more traction in the trademark environment than it did in the copyright environment.

The Lanham Act has "broad" extraterritorial application.  *Ocean Garden v. Marktrade Co.*, 953 F.2d 500, 503 (9th Cir. 1991).  Defendants' motion grossly mischaracterizes the extraterritorial application of the Lanham Act and does not even set forth the proper test used by the Ninth Circuit to determine extraterritorial jurisdiction under the Lanham Act.  As stated by the Ninth Circuit in *Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552, 554 (1992) the extent of extraterritorial application of the Lanham Act is governed by the same standards that apply to extraterritorial application of the antitrust laws.  The prior Ninth Circuit decision in *Timberline Lumber Co. v. Bank of America Nat. Trust and Savings Assoc.*, 549 F.2d 597 (9th Cir. 1976) therefore sets forth the tests to be employed in this Circuit.[4]

The test has three basic factors: (1) whether there is *some* effect on American foreign commerce; (2) whether the effect is sufficiently great to present a cognizable injury to plaintiffs under the Lanham Act; and (3) whether the interests of and links to American foreign commerce

---

[4] Even were the Court to decide this issue with reference to the standards articulated by the Supreme Court in 1952 in *Steele v. Bulova Watch Co.*, 344 U.S. 280, those standards would inexorably lead to the same conclusion.  As stated in Defendants' motion, these are "(1) whether the defendant was a United States citizen; (2) whether the defendant's conduct had a substantial effect on United States commerce; and (3) whether there was a conflict with trademark rights established under foreign law."  *Totalplan Corp. fo America v. Colborne*, 5 F3d 824, 830 (2d Cir. 1994).  Defendants then conveniently convert this test into one which measures whether the direct infringer (not the defendant as stated in their own authorities) is a citizen – which they clearly are.  Defendants cannot argue their conduct had no effects on United States commerce and, in doing so, implicitly concede that there is therefore evidence of some effect which immediately precludes entry of judgment based on this fact and, finally, they are silent on the issue of conflict with foreign law as it is a given there is in fact no conflict in the laws of the United States and China on this point.

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule                         - 5 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Trademark Infringement Claim.                                                    Exhibit B Page19

are sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority. *Id.* at 613.

The first factor is satisfied where "sales of infringing goods in a foreign country may have a sufficient effect on commerce to invoke Lanham Act jurisdiction." *Ocean Garden,* 953 F.2d at 503. The infringing goods sold by Defendants' customers clearly have a sufficient effect on commerce. Flooding the internet with readily available knock-off goods will have numerous negative impacts on commerce. It is extremely harmful to Louis Vuitton's reputation to have cheap, lower quality knock offs proliferate in the marketplace and hurts consumer's confidence with regard to any item purchased on the internet.

The second prong is satisfied for much the same reason. Louis Vuitton is even more negatively affected when considering sales of counterfeit items outside the United States and courts have held that the sale of infringing goods into foreign countries can satisfy the second prong of the *Timberline* test. *Id.* Additionally, as exhibited by even potential jurors in the case, Louis Vuitton's customers complain and are understandably upset with Plaintiff when knock offs devalue their genuine investment and the strength of Louis Vuitton's trademarks. Louis Vuitton is a company that has a significant presence all over the world, including in the United States through corporate offices as well as production facilities in San Dimas, California. The effect of counterfeits at issue in this case on Plaintiff's brands worldwide can not be understated. Louis Vuitton is injured by these additional concerns.

The third prong is clearly satisfied in this instance by America's powerful interest in protecting the intellectual property rights of its citizens and protecting consumers. Louis Vuitton has acquired valid and enforceable trademarks. Using and promoting those trademarks for generations, many of Louis Vuitton's trademarks have become famous marks and have achieved secondary meaning. Counterfeits undermine those investments and deceive consumers here, and abroad. The negative effects of counterfeit goods are widely known and the United States has an interest in eliminating their sale and punishing those who facilitate their production and sale.

Defendants' arguments that the Lanham Act should not apply in this instance are either wrong or irrelevant to the analysis. The citizenship of the direct infringers is irrelevant. Additionally, it is clear that the infringing activity perpetrated by Defendants' customers has a substantial effect in the United States. It is impossible for Plaintiff to obtain any sort of sales records from the infringing parties but it is common knowledge that counterfeit goods have an immensely negative effect on American commerce. To expect Louis Vuitton's investigators to purchase enough knock-off product to show a substantial effect is preposterous. Plaintiff's investigators have shown the ease with which an unsuspecting consumer can purchase a counterfeit product. This, with the additional reasons noted above, demonstrates the negative effect the infringers have on American commerce.

Defendants' argument that the Court needs jurisdiction over the direct infringers is also wrong. All that is required as that an underlying direct infringement have occurred; there is no requirement that the Court also have jurisdiction over third parties who are not Defendants in this case. There need not be "substantial" or "continuous and systematic" contact by the underlying infringers with this jurisdiction. The underlying infringers only need to have perpetrated the underlying infringement of which the Defendants had knowledge, control and to which they materially contributed or concerning which they remained willfully blind.

### iv. **Continues to Supply a Product or Services.**

Once again, Defendants misstate the applicable standards and, in a desperate attempt to avoid the liability which should properly attach to their systematic, ongoing and knowing contributory infringement, seek to confuse applicable principles. As stated in *Inwood*, *supra*, "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit." *Id.* at 854.

Plaintiff asserts the Ninth Circuit decision in *Lockheed, supra*, requires consideration of additional elements, specifically "direct control and monitoring". However, the *Lockheed* case

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule 50(a) Motion for Judgment as a Matter of Law Regarding: Contributory Trademark Infringement Claim.

- 7 -

Exhibit B Page21

indicated that the test was to consider the "extent of control exercised by the defendant over the third party's means of infringement" not that direct control and monitoring were required elements. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999). Defendants' attempt to add additional elements to the claim is properly rejected.

First, Defendants also provide goods. To suggest different standards apply with respect to their provision of goods (the server capacity, router and bandwidth), to other elements of the "package" sold by them would be unduly confusing.

Second, such a distinction is not required. As noted in *Lockheed*, the Court adopted the distinction while noting that the "service" supplied by the defendant in *Fonovisa, supra*, was more akin to products than to services and that such services did not mandate a different standard for liability. *Id.* at 984. This is also based, in part on the common law responsibilities of a landlord for activity occurring on rented premises – to which this fact pattern more closely correlates. *Id.*; *see also*, *Hard Rock Café Licensing Corp. v. Concession Svcs., Inc.,*, 955 F 2d 1143, 1148 (7th Cir. 1992). This court also agreed that:

> "In this case, Defendants' activity as Internet service providers is more like the flea market proprietors in <u>Fonovisa</u> than the domain name translation service in <u>Lockheed</u>. Here, Defendants do not simply translate domain names into IP addresses. Defendants physically host websites on their servers and route internet traffic to and from those websites. This service is the Internet equivalent of leasing real estate. Defendants' services, combined with Defendants' ability to remove infringing websites, entails a level of involvement and control that goes beyond "rote translation." As with the flea market operators in <u>Fonovisa</u>, Defendants cannot remain "willfully blind" to trademark infringement taking place on their servers."

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., et al.*, CV 07-3952 JW, Docket #99, pp. 16:24- 17:5, Court's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (N.D. Cal. December 23, 2008). It is therefore law of the case that the heightened standard asserted on behalf of Defendants does not apply.

Defendants' cited cases are also factually dissimilar and their holdings inapplicable. *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 689 (D. Md. 2001) in particular was a case involving a domain name dispute. The parties there also did not have the kind of website- webhost relationship as exists in the present case. In *SB Designs v. Reebok Int'l, Ltd.*, 338

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule 50(a) Motion for Judgment as a Matter of Law Regarding: Contributory Trademark Infringement Claim.

- 8 -

Exhibit B Page22

F. Supp. 2d 904, 913 (N.D. Ill. 2004) some allegedly infringing websites were not infringing at all as containing fan postings and the like. *Id*. at 913. There was also no evidence that the allegedly infringing websites were owned by, endorsed by, or otherwise affiliated with Reebok at all. *Id*. at 911-913. Unlike the Defendants here, Reebok was not alleged to have been the host of the websites, nor were they found to have any actionable connection to the allegedly infringing websites, period. *Habeeba's Dance for the Arts, Ltd. v. Knoblauch*, 430 F. Supp. 2d 709, (S.D. Ohio 2006) is even more attenuated as it involved the alleged infringing use of plaintiff's trademark in connection with a dance symposium put on by the defendant. The *Habeeba's* case did not even involve websites or web hosts.

In contrast, Plaintiff's evidence clearly shows that Defendants continued to provide IP addresses, connectivity and server space to infringing websites and counterfeiters, despite being aware of their infringing nature and activities.[5]  Plaintiff entered evidence that conclusively shows Defendants marketing of server space and IP addresses to direct trademark infringers. Defendants actively supported and promoted the infringing websites by continuously and purposefully ignoring notices from trademark holders that notified Defendants of the infringing conduct occurring on their servers. Defendants' contentions are without merit and their motion properly denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Judgment as a Matter of Law Regarding Contributory Trademark Infringement Claim.

Dated: August 24, 2009                    J. Andrew Coombs, A Professional Corp.


                                              ___/s/ J. Andrew Coombs_____
                                          By: J. Andrew Coombs
                                              Annie Wang
                                          Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

---

[5] For these same reasons, Defendants' arguments regarding willful blindness are properly rejected. Because Defendants provide goods (as well as services) the willful blindness standard for liability applies.

Louis Vuitton v. Akanoc, et al.: Opposition to Defendants' Rule        - 9 -
50(a) Motion for Judgment as a Matter of Law Regarding:
Contributory Trademark Infringement Claim.                                              Exhibit B Page23

# EXHIBIT C

1   J. Andrew Coombs (SBN 123881)
    *andy@coombspc.com*
2   Annie S. Wang (SBN 243027)
    *annie@coombspc.com*
3   J. Andrew Coombs, A P. C.
    517 East Wilson Avenue, Suite 202
4   Glendale, California 91206
    Telephone:  (818) 500-3200
5   Facsimile:   (818) 500-3201

6   Attorneys for Plaintiff
    Louis Vuitton Malletier, S.A.
7

8                    UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

10  Louis Vuitton Malletier, S.A.,          )  Case No. C 07 3952 JW
                                            )
11                          Plaintiff,      )  SUPPLEMENTAL BRIEF RE
            v.                              )  APPLICABILITY OF US COPYRIGHT
12                                          )  AND TRADEMARK LAWS TO
    Akanoc Solutions, Inc., et al.          )  CALIFORNIA BASED WEB HOSTING
13                                          )  DEFENDANTS; REQUEST FOR ENTRY
                            Defendants.     )  OF JUDGMENT
14                                          )
                                            )  Trial:  August 18, 2009-August 29, 2009
15                                          )
                                            )
16  _____)

17          TO THE COURT AND TO DEFENDANTS:

18          Pursuant to the Court's request, Plaintiff Louis Vuitton Malletier, S.A. ("Plaintiff" or

19  "Louis Vuitton") submits the following Supplemental Brief re Applicability of US Copyright and

20  Trademark Laws to California Based Web Hosting Defendants.

21

22  DATED: September 3, 2009          J. Andrew Coombs, A Professional Corp.

23                                    By:   /s/ J. Andrew Coombs_____
24                                          J. Andrew Coombs
                                            Annie S. Wang
25                                    Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

26

27

28

# TABLE OF CONTENTS

INTRODUCTION    1

ARGUMENT

    A.    **Defendants Cannot Meet the Standard Required to Set Aside the Unanimous Verdict Reached in This Matter.**    2

    B.    **Copyright.**    3

        1.    **United States Law Is Properly Applied to Direct Infringements Occurring in the United States.**    3

            a.    **Direct Infringement by Copying onto Defendants' Servers.**    3

            b.    **Direct Infringement by Importation into the United States.**    6

        2.    **Application of United States Law to Defendants' Own Conduct.**    7

    C.    **Trademark.**    10

        1.    **The Lanham Act Applies to Use in Commerce of the Underlying Direct Infringements at Issue in the Case and Has Applied to Acts Even More Attenuated than the Direct Counterfeiting At Issue Here.**    11

        2.    **Even the Heightened Standard For Applicability of the Lanham Act Employed by the Court Was Met Due to the Nature and Volume of Counterfeiting Taking Place on Defendants' Servers.**    12

CONCLUSION    15

1

2

## <u>TABLE OF AUTHORITIES</u>

**CASES**

3

4

*A&M Records, Inc., et al. v. Napster, Inc.*, 239 F.3d 1004, 1011 (9th Cir. 2001). ........................ 8, 9

5

*Advanced Computer Servs. of Mich., Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356, 364 fn. 9
   (E.D. Va. 1994) ............................................................................................ 5

6

*American Rice v. Arkansas Rice Growers Coop. Ass'n*, 701 F.2d 408, 414 (5th Cir. 1983)............. 13

7

*Atl. Recording Corp. v. Howell,* 554 F. Supp. 2d 976, 985 (D. Ariz. 2008) ...................................... 7

8

*Berry v. United States,* 312 U.S. 450, 453, 61 S. Ct. 637, 85 L. Ed. 945 (1941) .............................. 2

9

*BMG Music v. Perez*, 952 F.2d 318, 319 (9th Cir. 1991)..................................................................... 6

10

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005). .............................................. 11

11

*Brookfield Communs. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999) ................... 11

12

*CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 551 (4th Cir. 2004)............................................ 8

13

*El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005). ............................................................ 2

14

*Fin. Express LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160, 1172 (C.D. Cal. 2008)....................... 11

15

*Harper v. City of L.A.*, 533 F.3d 1010, 1021 (9th Cir. 2007). ............................................................ 2

16

*Int'l Bancorp, LLC v. Societe Des Bains De Mer Et Du Cercle Des Etrangers,* 329 F.3d 359, 364
   (4th Cir. 2003) ................................................................................................ 11

17

18

*ISC-Bunker Ramo Corp. v. Altech, Inc.,* 765 F. Supp. 1310, 1332 (N.D. Ill. 1990) ......................... 5

19

*Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001)...................... 2

20

*LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). ................................................ 2

21

*Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 745 (D. Md. 2003)...................... 5

22

*MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993) ........................... 4, 8

23

*Mattel, Inc. v. MCA Records*, 296 F.3d 894, 900 (9th Cir. 2002) ..................................................... 13

24

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005)............................... 8-10

25

*NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 235 (7th Cir. 1995).......................................... 4

26

*Nintendo of Am. v. Aeropower Co.*, 34 F.3d 246, 249-50 fn. 5 (4th Cir. 1994). ....................... 10, 13

27

*Ocean Garden v. Marktrade Co.*, 953 F.2d 500, 505 (9th Cir. 1991)............................................. 10

28

Louis Vuitton v. Akanoc, et al.: Supplemental Brief re
Applicability of Copyright and Trademark Laws

Exhibit C Page27

*Olan Mills Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1348 (8th Cir. 1994) ............................................ 7

*Parfums Givenchy v. C & C Beauty Sales,* 832 F. Supp. 1378, 1390 (C.D. Cal. 1993) ................... 6

*Parfums Givenchy v. Drug Emporium*, 38 F.3d 477, 480 (9th Cir. 1994) ........................................ 6

*Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 717 (9th Cir. 2007).........................................9

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160, 1171-72 (9th Cir. 2007)............... 4, 9-10

*Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1194 (11th Cir. 2001)...................... 11

*Playboy Enter., Inc., v. Netscape Commc'ns Corp.,* 354 F.3d 1020, 1024 (9th Cir. 2004).............. 11

*Reebok Int'l v. Marnatech Enters.,* 970 F.2d 552, 554 (9th Cir.1992)............................................... 13

*Reebok Int'l v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir. 1995)...................................................... 13

*Religious Technology Center, et al. v. Netcom On-Line Communication Services, Inc., et al.,*
907 F. Supp. 1361, 1375 (N.D. Cal. 1995)...................................................................................... 8

*Ryan v. Carl Corp.,* 23 F. Supp. 2d 1146, 1149 (N.D. Cal. 1998) ..................................................... 7

*Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002) .......................................................................... 2

*Sega Enterprises Ltd. v. MAPHIA*, 857 F. Supp. 679, 683 (N.D. Cal. 1994) ............................... 4, 8

*Steele v. Bulova Watch Co.*, 344 U.S. 280, 283 (1952)........................................................... 11, 13-15

*Stenograph L.L.C. v. Bossard Assocs.,* 144 F.3d 96, 100 (D.C. Cir. 1998) ...................................... 4

*Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1096 (9th Cir. 1994) .............. 6

*Timberline Lumber Co. v. Bank of America Nat. Trust and Savings Assoc.,* 549 F.2d 597 (9th Cir.
1976);..............................................................................................................................................13

*Torres v. City of L.A.*, 548 F.3d 1197, 1205 (9th Cir. 2008) .............................................................. 2

*Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1014 (9th Cir. 1985). ................... 2

*United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.,* 128 F.3d 86, 92 (2d Cir. 1997) .... 11

*Vault Corp. v. Quaid Software, Ltd.*, 847 F.2d 255, 260 (5th Cir. 1988)........................................... 5

*Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 428 (9th Cir. 1977) ................. 12-13

**STATUTES**

17 U.S.C. §101 ................................................................................................................................... 4

17 U.S.C. §102 ................................................................................................................................... 3

17 U.S.C. §501 ................................................................................................................................... 3

Louis Vuitton v. Akanoc, et al.: Supplemental Brief re
Applicability of Copyright and Trademark Laws

Exhibit C Page28

17 U.S.C. §602(a)(1)-(2) ............................................................................................ 6-7

Fed. R. Civ. P. 50 ........................................................................................................ 1

**OTHER**

2 MELVILLE B. NIMMER & DAVID NIMMER,
   *NIMMER ON COPYRIGHT* § 8.08[A][1], at 8-113 (1997) ............................................ 5

Louis Vuitton v. Akanoc, et al.: Supplemental Brief re
Applicability of Copyright and Trademark Laws

Exhibit C Page29

**INTRODUCTION**

Defendants' argument that the imposition of liability upon their conduct constitutes an improper extra-territorial application of United States law is properly rejected.  Judgment should be entered in favor of Plaintiff as provided for by the unanimous verdict in favor of Louis Vuitton.  Defendants' assertions represent a further unconscionable effort to avoid responsibility for their clearly willful, deliberate and contributory conduct.  One need only ask whether Defendants would willingly submit to jurisdiction in the People's Republic of China.

The law abhors a vacuum yet that is what the Defendants hope to create with respect to their conduct here.

Application of United States law is proper and appropriate for several separate and independent reasons, each of which warrants a rejection of Defendants' arguments and entry of judgment.  First, as previously set forth in Opposition to Defendants' motions under Rule 50(a) the Court has jurisdiction over the underlying direct infringement – both because of offers made in the United States to American consumers and because product is shipped to those consumers pursuant to those offers.  These activities violate Louis Vuitton's display, distribution and importation rights under the Copyright Act and constitute infringing uses in commerce under the Lanham Act.

Second, the storage of these offers on Defendants' servers and the routing of traffic to those servers using hardware and software located at the Defendants' data center but a few blocks from the courthouse where the jury entered its verdict constitutes an infringement for purposes of the Copyright Act under long-established authority in the Ninth Circuit and elsewhere, and distinct uses in commerce for purposes of the Lanham Act.

There was no error in allowing the claims to be decided by the jury.  The law is clear and practice dictates a consistent outcome.  Defendants Akanoc Solutions, Inc., Managed Solutions Group, Inc. and Steve Chen must answer under the Copyright Act and Lanham Act for their acts of knowingly hosting counterfeit websites and facilitating sales of counterfeit and pirated product in the United States.  There is no question that the laws apply according to controlling case law and the practicalities of the digital world.

# ARGUMENT

**A.**     **Defendants Cannot Meet the Standard Required to Set Aside the Unanimous Verdict Reached in This Matter.**

Cases decided under Rule 50 of the Federal Rules of Civil Procedure specify a high burden to undo a verdict reached by jury.  Fed. R. Civ. P. 50 provides for judgment as a matter of law when "the evidence presented at trial permits only one reasonable conclusion." *Torres v. City of L.A.*, 548 F.3d 1197, 1205 (9th Cir. 2008) *citing Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002). "A motion for a judgment as a matter of law is properly granted only if no reasonable juror could find in the non-moving party's favor."  *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005). "The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000).  "Although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe, and may not substitute its view of the evidence for that of the jury." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (internal quotations omitted).  "In making this determination, the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion."  *Harper v. City of L.A.*, 533 F.3d 1010, 1021 (9th Cir. 2007).  "If sufficient evidence is presented to a jury on a particular issue and if the jury instructions on the issue stated the law correctly, the court must sustain the jury's verdict." *Id. citing Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1014 (9th Cir. 1985).  "The jury is the 'constitutional tribunal provided for trying facts in courts of law.'" *Id.* at 1021-22 *citing Berry v. United States,* 312 U.S. 450, 453, 61 S. Ct. 637, 85 L. Ed. 945 (1941).  In light of these governing principles, the unanimous eight juror verdict for Plaintiff should not be disturbed.

Defendants' attempts to dodge responsibility for their actions have been a repeated theme. Despite the fact that virtually all of their contributory acts occurred in California, Defendants forward a groundless argument to claim that their actions are not subject to American law.

As described below, there are numerous separate and independent bases for the application federal intellectual property laws. Not only are there sufficient grounds for application of United States law to the underlying direct infringements, Defendants have acted with knowledge and continue to do business with those direct infringers. To say Defendants are not responsible for their actions here, in their home forum, at a courthouse a mere few blocks from their datacenter, is unfathomable and contrary to precedence and reason.

**B.   Copyright.**

    **1.   United States Law Is Properly Applied to Direct Infringements Occurring in the United States.**

        **a.   Direct Infringement by Copying onto Defendants' Servers.**

Unauthorized copying, display and distribution infringe the exclusive rights of the copyright owner. 17 U.S.C. §501. These acts are not disputed by Defendants – only whether any of these acts occurred within the United States. This too cannot seriously be disputed, especially in view of established authority finding that the fixation of data that infringes alone constitutes copying for purposes of the Copyright Act. Moreover, there is ample evidence in both evidence from individual websites[1] and in Defendants' promotional materials (Exhibit 583) to show that the infringing offers were aimed at the US marketplace.

Copyright protection applies to original works of authorship "fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. §102. This definition squarely includes data files and even 0's and 1's, if necessary, to the extent they require the aid of a machine or device to be perceived, and specifically, communicated to the

---

[1] To name just a few examples from the Admitted Exhibits: (1) most all of the websites were in English even if operated by non-U.S. or Chinese nationals; (2) shipping costs to the United States were pre-calculated (Ex.s 63, 72.1, 360.1); (3) prices for the counterfeit products, prices for discounts, prices for shipping and penalties were all expressed in US Dollars (Ex.s 72.1, 81, 98.3, 116, 163, 173, 210, 212, 360, 588, 590, 611, 613); (4) measures regarding seizure at customs were specifically stated and included restocking fees in US Dollars (Ex. 72.1); (5) some websites included the trademarks of PayPal, FedEx, UPS, and other US companies on the pages advertising counterfeit Louis Vuitton product (Ex.s 13 (attachments), 63, 63.2, 94, 163) and (6) some websites specifically included links to "USA" specific EMS Tracking websites (Ex. 356 p.2).

Defendants and internet users in the public at large. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007) ("The computer owner shows a copy "by means of a . . . device or process" when the owner uses the computer to fill the computer screen with the photographic image stored on that computer, or by communicating the stored image electronically to another person's computer.").

Evidence was presented in the record that infringing pictures could be viewed in the normal visual sense on the servers owned and controlled by Defendants, or, that they could be accessed and were accessed by the Defendants and members of the general public in the United States on numerous occasions through standard internet browsers. The work is "fixed" when its "embodiment in a copy…is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than a transitory duration." 17 U.S.C. §101; *Perfect 10, Inc.,* 508 F.3d at 1160 ("In sum, based on the plain language of the statute, a person displays a photographic image by using a computer to fill a computer screen with a copy of the photographic image fixed in the computer's memory."). The infringing copies in the present case are not briefly, automatically, or transitorily stored, but instead, reside on Defendants' servers for months, and in some cases, years. E.g., bag925.com (subject of complaints beginning in February, 2007, was also found to be residing on Defendants' servers during the trial, more than two years later in August, 2009).

Courts have repeatedly held that uploading content can be a basis for finding direct infringement for systems operators. *Sega Enterprises Ltd. v. MAPHIA*, 857 F. Supp. 679, 683 (N.D. Cal. 1994) ("The unauthorized copying of copyrighted computer programs is prima facie an infringement of the copyright," in a case involving electronic bulletin board operators). Courts have also held that the mere loading of infringing software onto a computer creates an infringing copy. *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993); *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 235 (7th Cir. 1995); *Stenograph L.L.C. v. Bossard Assocs.,* 144 F.3d 96, 100 (D.C. Cir. 1998) ("The language of the Copyright Act, case law, and common sense support the proposition that the installation of software onto a computer results in "copying"

1    within the meaning of the Copyright Act" *also citing* 2 MELVILLE B. NIMMER & DAVID

2    NIMMER, *NIMMER ON COPYRIGHT* § 8.08[A][1], at 8-113 (1997) ("the Act's language 'makes

3    clear that the input of a work into a computer results in the making of a copy'"); *Lowry's Reports,*

4    *Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 745 (D. Md. 2003) (stating "[u]nauthorized

5    electronic transmission of copyrighted text, from the memory of one computer into the memory of

6    another, creates an infringing "copy" under the Copyright Act."); *Advanced Computer Servs. of*

7    *Mich., Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356, 364 fn. 9 (E.D. Va. 1994) *citing Vault Corp. v.*

8    *Quaid Software, Ltd.*, 847 F.2d 255, 260 (5th Cir. 1988) ("the act of loading a program from a

9    medium of storage into a computer's memory constitutes a copy of the program"); *ISC-Bunker*

10   *Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1332 (N.D. Ill. 1990).

11        An abundant number of cases clearly establish that mere storage of software (programs,

12   data, code, etc.) is infringing because it necessarily makes a copy, and is sufficient to trigger

13   liability.  The fact that the physical characteristic of the store data is allegedly unreadable[2] without

14   the aid of additional software does not alter this fact.  These cases correctly focus on the computer

15   on which the copy resides, not the location of the uploader or user.  Accordingly, Defendants'

16   additional actions that took place in the United States subject them to the authority of the

17   Copyright Act.

18        Defendants do not dispute the key fact that the forensic inspection of just a sample of

19   Defendants' servers revealed over one thousand websites that were responsive to searches for

20   Louis Vuitton keywords, and some websites that were found were the subject of notices of

21   infringement from more than a year preceding the inspection.  One kind of direct infringement of

22   Louis Vuitton's copyrights occurred through the display and offer for sale of counterfeit goods that

23   originated from websites hosted on Defendants' servers and transmitted through their routers.  The

24   Defendants materially contributed to all of that infringement here, in their data center in San Jose

25   and corporate office in Fremont, even though they were given notice of the rampant piracy taking

26   place on their systems.

27   ─────────────────────────

28   [2] Defendants' expert testified that he needed to run a specific, separate program to reduce the image he had
     identified into 1's and 0's thereby admitting to fabricating Defendants' Exhibits 1548 and 1549.

Louis Vuitton v. Akanoc, et al.: Supplemental Brief re
Applicability of Copyright and Trademark Laws                    - 5 -                    Exhibit C Page34

b.       **Direct Infringement by Importation into the United States.**

Direct infringers using Defendants' equipment have also infringed through the unauthorized importation of copies acquired outside the United States. *BMG Music v. Perez*, 952 F.2d 318, 319 (9th Cir. 1991); *Parfums Givenchy v. Drug Emporium*, 38 F.3d 477, 480 (9th Cir. 1994); *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1096 (9th Cir. 1994). In particular, 17 U.S.C. §602(a)(1)-(2) provides:

> "(1) Importation. Importation into the United States, without the authority of the owner of copyright under this title, of copies or phonorecords of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies or phonorecords under section 106 [17 USCS § 106], actionable under section 501 [17 USCS § 501].
>
> (2) Importation or exportation of infringing items. Importation into the United States or exportation from the United States, without the authority of the owner of copyright under this title, of copies or phonorecords, the making of which either constituted an infringement of copyright, or which would have constituted an infringement of copyright if this title had been applicable, is an infringement of the exclusive right to distribute copies or phonorecords under section 106 [17 USCS § 106], actionable under sections 501 and 506 [17 USCS §§ 501 and 506]."

The Ninth Circuit has applied the Copyright Act to goods manufactured abroad but imported into the United States. "Section 602(a) was enacted in order to provide greater remedies for U.S. copyright owners, and 'makes the mere act of importation - regardless of sale - an infringement of Section 106(3)'s distribution right, and prohibits unauthorized importation, not only of pirated copies, but also of copies that were lawfully made.'" *Parfums Givenchy*, 38 F.3d at 481 *quoting Parfums Givenchy v. C & C Beauty Sales*, 832 F. Supp. 1378, 1390 (C.D. Cal. 1993) (citing considerable legislative history supporting this holding). The Ninth Circuit in *Parfums Givenchy* and *Subafilms* explicitly recognized that §602(a) gives the exclusive right of distribution by a copyright owner extraterritorial scope. *Id.; Subafilms*, 24 F.3d at 1096. Thus, in addition to the acts of unauthorized copying onto the Defendants' servers based in San Jose, the importation by Defendants' customers of piratical product into the United States, even if manufacture of those infringing goods occurred outside of the United States, has been consistently recognized as an infringement of the Copyright Act.

Even if for the moment the Court is inclined to entertain Defendants' meritless argument that Louis Vuitton somehow authorized the sale of pirated goods through the actions of its investigator, §602(a)'s application to even non-piratical goods indicates that it is the unauthorized nature of the infringer seller's acts that gives rise to infringement and that liability is not influenced by the actions of the purchaser or even the copyright owner who may have originally manufactured the good under its authority.

Additionally, courts have repeatedly upheld findings of infringement and awards of damages based upon investigatory efforts and have understood the purpose of investigatory purchases to confirm infringement so that lawsuits, if necessary, have additional evidentiary support. Some courts have expressly outlined this understanding that investigators do not authorize unlawful copying by conducting their investigations and unauthorized copies made at the request of investigators are still infringing. *Olan Mills Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1348 (8th Cir. 1994); *Atl. Recording Corp. v. Howell,* 554 F. Supp. 2d 976, 985 (D. Ariz. 2008); *Ryan v. Carl Corp.*, 23 F. Supp. 2d 1146, 1149 (N.D. Cal. 1998). To hold otherwise would severely inhibit a copyright owner's ability to police and enforce its rights and would encourage cases to be filed based on less substantiated evidence. Such a holding would be contrary to law and good practice. In addition to the numerous bases for a finding of direct infringement under US copyright law is the Defendants' customers' unlawful importation of piratical goods.

### 2. Application of United States Law to Defendants' Own Conduct.

Although it should be clear from the fact that United States law is properly applied to the underlying direct infringement enabled by Defendants' contributory conduct, the Court can separately find that United States law applies due to the Defendants' own role in this infringing activity.

The continued storage and maintenance of servers housing infringing copies by a web host after being given notice proved Louis Vuitton's claim for contributory infringement. As described above, the uploaded data is itself infringing. Continuing to aid the public distribution of such material with notice supports a finding that a service provider is liable for contributory

infringement for that direct infringement.  *Religious Technology Center, et al. v. Netcom On-Line Communication Services, Inc., et al.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995); *Sega Enterprises Ltd. v. MAPHIA*, 857 F. Supp. 679, 683 (N.D. Cal. 1994); *MAI Systems Corp. v. Peal Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993); *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 551 (4th Cir. 2004) (stating ISP can be indirectly liable for users downloading infringing content onto RAM).  In fact, the realities of the electronic world and intellectual property infringement in that space has been recognized by controlling case law for even less involved acts of contribution.

For example, in the *Grokster* case, Grokster did not even store the infringing data on its servers but rather, provided software for others to infringe.  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).  While the Supreme Court applied an "inducement" theory, the scenario before us is much more concrete.  In *Grokster*, there was certainly not the kind of control over the data or the fixation of the data that exists on Defendants' servers in their datacenter in San Jose.  The very source of the infringing material was on Defendants' servers and the very first "hop" onto the internet of any infringing copies was from Defendants' router. Defendant Chen provided ample testimony about the desirability of his systems situated so close to the Internet backbone as well as sophisticated cooling and power supplies, 24 hour, 7 days a week service, and other additional means to ensure continuous internet access to material located on Defendants' servers.  These services were continually provided to infringers despite specific and general notice.  Therefore, Defendants' involvement satisfies the requirements of a finding of infringement as well as of the applicability of the Copyright Act.

Defendants' were even more directly involved in the underlying direct infringement than the defendant in *Napster*, where a "peer to peer" network was established and infringing material was made accessible using in part, Napster's network servers and server-side software.  *A&M Records, Inc., et al. v. Napster, Inc.*, 239 F.3d 1004, 1011 (9th Cir. 2001).  Unlike Napster where individuals were connected to individual "host" computers from all over the world, Defendants' servers *are* the host servers, these host servers are located in one place, in one data center in San Jose, California, and Defendants have absolute control over the accessibility of any infringing

conduct of which they are aware.  The Ninth Circuit has cited numerous times, "if a computer

system operator learns of specific infringing material available on his system and fails to purge

such material from the system, the operator knows of and contributes to direct infringement."

*Perfect 10, Inc.*, 508 F.3d at 1171; *Napster*, 239 F.3d at 1021.  There is no question that the

unauthorized copying and storage of a copyrighted work on a server is infringing.  It has been time

and again found to be so by controlling authority.  In addition to the unauthorized copying and

storage on Defendants' servers, it is Defendants' knowledge and continued provision of services

that indisputably occur here, that satisfies the jurisdictional and elemental nexus under the law of

contributory copyright infringement.

Defendants' cited authority is distinguishable or inapplicable.  In particular, Defendants'

cite *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 717 (9th Cir. 2007) and specifically include

the portion where the Court states that "Google's computers do not store the photographic

images…"  Defendants' Moving Papers pp. 5:28-6:2.  This authority is inapplicable on its face

because it is undisputed that Defendants' servers store the images in their image form and

broadcast them online through Defendants' routers.  Defendant Chen, Defendants' expert and

Defendants' employee Andrew Cheng confirmed these facts.  Defendants' expert in particular,

testified that he had to use a specific program to create the 0's and 1's that Defendants' referenced

at trial and in their motion.  The distinction of visually perceptible images versus 0's and 1's was

fabricated by the Defendants and admittedly so.  This argument is meritless.

Furthermore, "[b]oth *Napster* and *Netcom* acknowledge that services or products that

facilitate access to websites throughout the world can significantly magnify the effects of

otherwise immaterial infringing activities."  *Perfect 10, Inc.*, 508 F.3d at 1172, *citing Napster*, 239

F.3d at 1022; *Netcom*, 907 F. Supp. at 1375.  The Supreme Court has acknowledged that "'[t]he

argument for imposing indirect liability' is particularly 'powerful' when individuals using the

defendant's software could make a huge number of infringing downloads every day."  *Grokster,*

545 U.S. at 929.  Moreover, copyright holders cannot protect their rights in a meaningful way

unless they can hold providers of such services or products accountable for their actions pursuant

1    to a test such as that enunciated in *Napster*.  *See Id.* at 929-30 ("When a widely shared service or

2    product is used to commit infringement, it may be impossible to enforce rights in the protected

3    work effectively against all direct infringers, the only practical alternative being to go against the

4    distributor of the copying device for secondary liability on a theory of contributory or vicarious

5    infringement.")".  *Perfect 10, Inc.*, 508 F.3d at 1172.  The recognition of the sheer volume of

6    infringement that are made possible by service providers, such as web hosts and these Defendants,

7    further support application of the laws to Defendants here.

8         Controlling law on the extraterritorial application of the Copyright Act overwhelmingly

9    supports the same conclusion that Defendants must answer to US Copyright Law.[3]

10   **C.    Trademark.**

11        Defendants' bankrupt argument regarding extraterritorial application of the Lanham Act

12   can be given no greater credence with respect to Louis Vuitton's claim for contributory trademark

13   infringement.  Although governed by different authority and standards, the Defendants' argument

14   has no more traction to trademark than it does to copyright.

15        Indeed, trademark law has broader extraterritorial application than copyright.  *Nintendo of*

16   *Am. v. Aeropower Co.*, 34 F.3d 246, 249-50 fn. 5 (4th Cir. 1994).  This is reflected by controlling

17   authority holding that the Lanham Act applies upon entry of infringing goods into foreign trade

18   zones so long as the trademark was validly registered.  *Ocean Garden v. Marktrade Co.*, 953 F.2d

19   500, 505 (9th Cir. 1991) ("entry of infringing goods into a foreign trade zone is a sufficient act in

20   commerce to trigger subject matter jurisdiction in federal courts under the Lanham Act, which, by

21   definition, can only be brought to vindicate marks that enjoy protection in the United States by

22   virtue of proper registration.").  Plaintiff far exceeds the required standards given the more than

23   ample evidence presented that supports the jury's findings.

24        Furthermore, the acts at issue in the present case, most of which occurred in the United

25   States, clearly establish the propriety of Lanham Act application under overwhelming Ninth

26

27   ---
     [3] Citation concerning the applicability of copyright law to the present case given "any" act of infringement
     occurring here, and further discussion re *Subafilms* was included in Plaintiff's Opposition to Defendants'
28   Motion for Judgment, Docket No. 213, and will not be repeated herein.

1   Circuit authority and the facts of this case.  The Defendants' fail to show that a reasonable juror

2   could not have found for Plaintiff as a matter of law.  *Supra section B.(2).*

3         **1.**   **The Lanham Act Applies to Use in Commerce of the Underlying Direct**

4               **Infringements at Issue in the Case and Has Applied to Acts Even More**

5               **Attenuated than the Direct Counterfeiting At Issue Here.**

6         "The Supreme Court has held that the "in commerce" requirement should be construed

7   liberally because the Lanham Act 'confers broad jurisdictional powers upon the courts of the

8   United States.'"  *Fin. Express LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160, 1172 (C.D. Cal.

9   2008) *citing Steele v. Bulova Watch Co.*, 344 U.S. 280, 283 (1952).  Many appellate courts,

10  including the Ninth Circuit have found that "commerce" under the Lanham Act necessarily

11  includes all the explicitly identified variants of interstate commerce.  *Playboy Enter., Inc., v.*

12  *Netscape Commc'ns Corp.,* 354 F.3d 1020, 1024 fn 11 (9th Cir. 2004); *Int'l Bancorp, LLC v.*

13  *Societe Des Bains De Mer Et Du Cercle Des Etrangers,* 329 F.3d 359, 364 (4th Cir. 2003)

14  (equating reach of Lanham Act to any commerce covered by the Commerce Clause of the

15  Constitution including foreign trade. *Id.* at 364-66); *United We Stand Am., Inc. v. United We Stand,*

16  *Am. N.Y., Inc.*, 128 F.3d 86, 92 (2d Cir. 1997) (same); *Planetary Motion, Inc. v. Techsplosion, Inc.,*

17  261 F.3d 1188, 1194 (11th Cir. 2001) (same).  The Ninth Circuit has commented that there is no

18  requirement of even an actual "sale" for proper application of the Lanham Act if the "use" is in

19  connection with the sale of goods and services."  *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672,

20  679 (9th Cir. 2005).  The Ninth Circuit has addressed this question in the Internet context

21  specifically, and presumed that the use of protected marks was "in commerce" concerning even

22  more indirect uses such as domain name registration and keyword stuffing or keying.  *Brookfield*

23  *Communs. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999) and *Playboy Enter., Inc.,*

24  354 F.3d at 1024.  Thus, the hosting of offers for products infringing valid, long standing United

25  States trademarks by United States based websites in the United States where product reached the

26  United States, is a straightforward application of the Lanham Act.  There can be no serious

27

28

1    question as to the use of the marks in commerce, nor can there be any serious doubt as to the

2    applicability of the Lanham Act to this case.

3        The record strongly supports the jury's finding.  There was clearly use in commerce of

4    Plaintiff's trademarks on the counterfeit product and packaging obtained by Plaintiff's

5    investigator, as well as from the website printouts admitted into evidence.  There was no dispute

6    that the items purchased by the investigator were imported into the United States, nor was there

7    any dispute that the websites at issue were commercial, hosted on Defendants' servers in San Jose,

8    and displayed the very infringing products that were later received by the investigator in the United

9    States.  The jury was diligent in satisfying themselves that there was evidence in the record to

10   support the damages award they entered.  The questions that the jury posed to counsel and the

11   Court is further evidence of this diligence and methodical examination of the record.  *See* Docket

12   No. 234.  Defendants' attempts to flatly ignore evidence in the record (inexplicably disregarding

13   images that were stored on the servers as shown in Ex. 593.31 and testimony from Plaintiff's

14   witnesses of personal knowledge of uses in commerce) or, interject their own additional elements

15   to the claim of trademark infringement (such as the requirement of surveys to show confusion,

16   personal jurisdiction over the direct infringements, or evidence of promotion of the counterfeit

17   marks, etc.) should be summarily rejected.

18       Defendants' argument that no reasonable juror could find "use in commerce" in the record

19   is simply without merit.  Defendants' motions should be denied.

20       **2.  Even the Heightened Standard For Applicability of the Lanham Act**

21       **Employed by the Court Was Met Due to the Nature and Volume of**

22       **Counterfeiting Taking Place on Defendants' Servers.**

23       Defendants' trademark based arguments are additionally without merit as the Court

24   instructed the jury on what Plaintiff believes was a higher burden that necessary concerning the

25   applicability of the Lanham Act to foreign acts, requiring that those acts "substantially affect"

26   commerce rather than just have "some affect."[4]  *Wells Fargo & Co. v. Wells Fargo Express Co.,*

27   _____

28   [4] Citation and further explanation concerning the applicable standard was included in Plaintiff's Opposition
     to Defendants' Motion for Judgment, Docket No. 214, and will not be repeated herein.  See also *Wells*

556 F.2d 406, 428 (9th Cir. 1977) (stating "although foreign activities must of course have *some* effect on United States foreign commerce before they can be reached, we disagree with the district court's requirement that that effect must be "substantial." *Bulova* contains no such requirement."); *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952); *Reebok Int'l v. Marnatech Enters.,* 970 F.2d 552, 554 (9th Cir.1992); *Ocean Garden,* 953 F.2d at 503; *Timberline Lumber Co. v. Bank of America Nat. Trust and Savings Assoc.,* 549 F.2d 597 (9th Cir. 1976); *see also American Rice v. Arkansas Rice Growers Coop. Ass'n*, 701 F.2d 408, 414 (5th Cir. 1983) (absence of any one factor is not dispositive). In any case, the jury's verdict is in line with the "broad" extraterritorial application of the Lanham Act and controlling Ninth Circuit authority has demonstrated this liberality in attaching Lanham Act jurisdiction when a shipment of infringing goods enters even a United States trade zone. *Ocean Garden,* 953 F.2d at 503. Despite the application of a higher standard than was necessary, the jury still found for the Plaintiff and its unanimous verdict must not be set aside.

The impropriety of Defendants' contentions can be exhibited by its heading "The Lanham Act Does Not Apply to Direct Infringement By Foreign Nationals Outside the United States" which is directly contradicted by controlling precedent and Defendants' own cited case law just one page later. Defendants' Moving Papers pp.5:23, 6:23; compare *Reebok Int'l, Ltd.*, 970 F.2d at 556 (individual defendant and principal of the corporate defendant was a Mexican citizen); *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 900 (9th Cir. 2002) (affirming extraterritorial application of Lanham Act to foreign defendants); *see also Reebok Int'l v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir. 1995) (stating "this court has held that the Lanham Act may properly be applied to foreign defendants' activities outside the United States."); *see also e.g., Nintendo of Am.,* 34 F.3d at 248 and 252 (affirming determination that all Taiwanese defendants were liable for the various violations of federal and state law found, including Lanham Act violations). The Lanham Act has and does apply to the acts of foreign nationals.

---

*Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 428-29 (9th Cir. 1977) for a list of considerations to consider extraterritorial application of the Lanham Act.

1        Additional grounds for application of the Lanham Act exist when the actions of the

2    infringers are directed towards the United States, like those of Defendants' customers.  Exercise of

3    the very broad reach of the trademark laws is entirely appropriate particularly when the websites

4    were purposefully based in the United States on Defendants' servers close to the Internet backbone

5    to take advantage of speed and infrastructure, and the websites specifically targeted American

6    consumers as reflected on the websites themselves[5] and aptly expressed by Defendants' own

7    advertisements, see Exhibit 583, that businesses overseas could better target American consumers

8    through being hosted by web hosts like the Defendants.

9        Furthermore, Defendants for some inexplicable reason ignore the fact that they are all

10    United States citizens, and most all of the contributorily infringing acts to which they are charged

11    occurred in the United States.  Had Plaintiff brought suit in China, Defendants would be making

12    the same arguments concerning their own "bulletproof" status there.  Such a result would be

13    completely unjust.

14        There was also substantial and largely undisputed evidence in the record of the

15    proliferation of counterfeit websites and their illegal wares originating from Defendants' servers in

16    San Jose.  Similar to the *Bulova Watch Co.* case, involving a defendant located outside the United

17    States selling counterfeit goods that were manufactured abroad but shipped into the United States

18    causing the requisite harm, 344 U.S. at 287-88, the infringing goods sold by Defendants'

19    customers clearly have the sufficient adverse effect on United States commerce and those sales

20    would not have occurred but for access and transmission of infringements from websites residing

21    on Defendants' servers.  Flooding the internet with readily available knock-off goods, that are

22    illegal, have numerous negative impacts on commerce that the jury could reasonably conclude

23    were sufficiently damaging.  It was also reasonable for the jury to conclude that counterfeits are

24    extremely harmful to the reputation of a luxury goods company like Louis Vuitton, who has a

25    significant United States presence, precisely because counterfeits are cheap, of lower quality, and

26    proliferate in the marketplace improperly reducing the scarcity of Louis Vuitton's genuine product.

27

28    [5] See footnote 1.

1   Counterfeits and counterfeiting websites also hurt consumer's confidence in Louis Vuitton's

2   ability to maintain the value of its name and its true products.  The jury also heard testimony

3   concerning customer complaints into its call center in San Francisco, the role of Louis Vuitton's

4   San Dimas, California manufacturing facility, and also the sizeable budget that Louis Vuitton has

5   to expend to deal with counterfeiters and those that aid and contribute to the counterfeiting like the

6   Defendants in this case.  The jury had ample support to find that Defendants' and their customers'

7   acts affected United States commerce under either the "some affects" or "substantially affects"

8   tests.

9          As outlined above, even as the Court instructed and the jury applied a higher standard

10   under *Bulova Watch Co.*, 344 U.S. 280 (1952), the jury still found liability against Defendants.

11   The jury had ample evidence of the impact of the actions of Defendants and their customers on

12   United States commerce.  There was no dispute that Defendants were based in San Jose,

13   specifically advertised their services to those that wanted to do business in the United States, or

14   that the datacenter at which the infringing websites were hosted, was just a few blocks from the

15   courthouse.  There was no error on the issues of the applicability of the Lanham Act to the case

16   and the unanimous eight-person verdict is the strongest testament as to the sufficiency of the

17   evidence on these issues.[6]

18                                   **CONCLUSION**

19          For the foregoing reasons, Plaintiff respectfully requests that the Court deny both of

20   Defendants' Motions for Judgment as a Matter of Law and enter Judgment in favor of Plaintiff

21   consistent with the jury's unanimous verdict.

22

23   Dated:  September 3, 2009               J. Andrew Coombs, A Professional Corp.

24                                           _____/s/ J. Andrew Coombs_____
                                             By:  J. Andrew Coombs
25                                                  Annie Wang
                                             Attorneys for Plaintiff Louis Vuitton Malletier, S.A.
26

27   [6] The Court specifically requested further briefing on the applicability of the laws to the infringing acts at issue and Plaintiff did not address other of Defendants' arguments concerning the applicable legal standards in this Supplemental Brief.  Should the Court require additional briefing on the standards of liability, Plaintiff can do so at the Court's direction.

28

Louis Vuitton v. Akanoc, et al.: Supplemental Brief re          - 15 -                          Exhibit C Page44
Applicability of Copyright and Trademark Laws