**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Raymond K. Chan (SBN 220534)
Preston K. Ascherin (SBN 260361)
18400 Von Karman Avenue, Suite 300
Irvine, California 92612
Telephone:     (949) 553-1010
Facsimile:     (949) 553-2050
jal@gauntlettlaw.com
rkc@gauntlettlaw.com
pka@gauntlettlaw.com

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.
and Steve Chen

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A.,<br><br>                    Plaintiff,<br><br>          vs.<br><br>AKANOC SOLUTIONS, INC., et al.,<br><br>                    Defendants. | Case No.:  C 07-3952 JW (HRL)<br><br>Hon. James Ware<br><br>**DEFENDANTS' REPLY ON MOTION FOR RULE 59 RELIEF**<br><br>Date:          February 22, 2010<br>Time:          9:00 a.m.<br>Ctrm:          8, 4th Floor |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     VUITTON DID NOT PROVE DIRECT OR CONTRIBUTORY INFRINGMENT ............................................................................................. 1

    A.    Vuitton Has Not Shown Direct *Trade*mark Infringement ...................... 1

         1.    A *Trade*mark Use Requires a Sale or a Transport in Commerce ............... 1

         2.    A Foreign Sale Is Not an Infringement ............................................... 2

         3.    Vuitton Has Not Proven a Likelihood of Confusion .................................. 4

    B.    Vuitton Has Not Shown Direct Copyright Infringement ........................ 5

    C.    Vuitton Has Not Shown Contributory Infringement .............................. 6

         1.    Vuitton Has Not Shown Specific Knowledge .......................................... 6

         2.    Defendants Did Not Directly Control Means of Infringement ..................... 7

         3.    Defendants Did Not Materially Contribute to Infringement ...................... 8

         4.    Improper Instructions on Defendants' Responses to Vuitton's Notices ........ 8

III.    THE STATUTORY DAMAGES AWARDS MUST BE VACATED .................... 9

    A.    The Awards Here Are Beyond the Statutory Maximums ........................ 9

         1.    Defendants Are Jointly and Severally Liable, If Liable At All ................... 9

         2.    Vuitton Improperly Speculates About the Jury's Intent ......................... 10

             a.    The Jury Did Not Break Down Awards per Work or Mark ......... 10

             b.    The Jury Did Not Grant Separate Awards for Each Defendant ................................................................. 10

    B.    The Awards Here Are Unsustainable Under *Gore* and *Campbell* ........ 10

    C.    Awards Here Are Unconstitutional Even If Within Statutory Damages Ranges ............................................................................ 11

    D.    Awards Here Are Unsustainable Independent of Constitutional Considerations ...................................................................... 13

         1.    The Awards Are Grossly Excessive and Monstrous ................................ 13

         2.    The Awards Are Clearly Not Supported by the Evidence......................... 13

3.      The Awards Result from Speculation and Guesswork ............................... 14

E.      Chen Did Not Authorize, Direct or Participate in Any Infringement ................... 14

IV.     CONCLUSION ................................................................................................... 15

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001)..............................................................................6, 8

5

6

*Atlantic Recording Corp. v. Howell*,
   554 F. Supp. 2d 976 (D. Ariz. 2008)..........................................................................3

7

*Bly v. Banbury Books, Inc.*,
   638 F. Supp. 983 (E.D. Pa. 1986)............................................................................11

8

9

*Brookfield Comms., Inc. v. West Coast Entertainment Corp.*,
   174 F.3d 1036 (9th Cir. 1999)....................................................................................2

10

*Columbia Pictures Indus., Inc. v. Krypton Broadcasting of Birmingham, Inc.*,
   259 F.3d 1186 (9th Cir. 2001)..................................................................................11

11

12

*Committee for Idaho's High Desert, Inc. v. Yost*,
   92 F.3d 814 (9th Cir. 1996)......................................................................................14

13

*Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*,
   528 F.3d 1001 (8th Cir. 2008)..................................................................................10

14

15

*Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*,
   458 F.3d 931 (9th Cir. 2006)......................................................................................4

16

*Ellinson v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004)....................................................................................8

17

18

*Exxon Shipping Co. v. Baker*,
   128 S. Ct. 2605 (2008)..............................................................................................12

19

*Feltner v. Columbia Pictures Television*,
   523 U.S. 340 (1998)..................................................................................................12

20

21

*Finance Express LLC v. Nowcom Corp.*,
   564 F. Supp. 2d 1160 (C.D. Cal. 2008)......................................................................2

22

*Harris v. Mexican Specialty Foods, Inc.*,
   564 F.3d 1301 (11th Cir. 2009)................................................................................12

23

24

*Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortg. Co.)*,
   471 F.3d 977 (9th Cir. 2006)....................................................................................13

25

*Johansen v. Combustion Engineering, Inc.*,
   170 F.3d 1320 (11th Cir. 1999)................................................................................12

26

27

*Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc.*,
   285 F.3d 848 (9th Cir. 2002)................................................................................2, 3

28

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery,*
   150 F.3d 1042 (9th Cir. 1998) ................................................................................ 4

*Lockheed Martin Corp. v. Network Solutions, Inc.,*
   194 F.3d 980 (9th Cir. 1999) .................................................................................. 7

*Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League,*
   791 F.2d 1356 (9th Cir. 1984) .............................................................................. 13

*In re Mann,*
   410 B.R. 43 (Bankr. C.D. Cal. 2009) ................................................................... 12

*Medtronic, Inc. v. White,*
   526 F.3d 487 (9th Cir. 2008) .................................................................................. 4

*Millennium Enterprises, Inc. v. Millennium Music, LP,*
   33 F. Supp. 2d 907 (D. Or. 1999)) ......................................................................... 4

*Olan Mills, Inc. v. Linn Photo Co.,*
   23 F.3d 1345 (8th Cir. 1994) .................................................................................. 3

*Peer Int'l Corp. v. Pausa Records Inc.,*
   909 F.2d 1332 (9th Cir. 1990) .............................................................................. 11

*Perfect 10, Inc. v. Amazon.com, Inc.,*
   508 F.3d 1146 (9th Cir. 2007) ......................................................................... 5, 6, 9

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
   494 F.3d 788 (9th Cir. 2007) .................................................................................. 7

*Philip Morris USA v. Williams,*
   549 U.S. 346 (2007) .............................................................................................. 14

*Playboy Enterprises, Inc. v. Netscape Communications, Inc.,*
   354 F.3d 1020 (9th Cir. 2004) ................................................................................ 2

*Religious Tech. Center v. Netcom On-Line Communication Servs., Inc.,*
   907 F. Supp. 1361 (N.D. Cal. 1995) ...................................................................... 7

*Rexel, Inc. v. Rexel Int'l Trading Corp.,*
   540 F. Supp. 2d 1154 (C.D. Cal. 2008) ................................................................. 1

*Rodick v. City of Schenectady,*
   1 F.3d 1341 (2d Cir. 1993) ................................................................................... 10

*Rodriguez v. Farm Stores Grocery, Inc.,*
   518 F.3d 1259 (11th Cir. 2008) ............................................................................ 14

*Ryan v. Carl Corp.,*
   23 F. Supp. 2d 1146 (N.D. Cal. 1998) ................................................................... 3

*Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.,*
   647 F.2d 200 (Fed. Cir. 1981) ................................................................................ 9

*Subafilms, Ltd. v. MGM-Pathe Communications Co.*,
   24 F.3d 1088 (9th Cir. 1994) ................................................................................. 5

*Tiffany (NJ) Inc. v. eBay, Inc.*,
   576 F. Supp. 2d 463 (S.D.N.Y. 2008) ............................................................. 6, 7

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
   768 F.2d 1001 (9th Cir. 1985) ........................................................................ 9, 15

**INTERNATIONAL CASES**

*Roadshow Films Pty Ltd. v. iiNet Ltd.* (No. 3) [2010] FCA 24 (Australia) .................................. 1, 7, 8

**DOCKETED CASES**

*Facebook, Inc. v. Wallace*,
   2009 WL 3617789 (N.D. Cal. 2009) .................................................................. 11

*Jacobs v. Local Union 48*,
   2002 WL 31470405 (D. Or. 2002) ..................................................................... 10

*Microsoft Corp. v. V3 Solutions, Inc.*,
   2003 WL 22038593 (N.D. Ill. 2003) .................................................................. 13

*Novell, Inc. v. Unicom Sales, Inc.*,
   2004 WL 1839117 (N.D. Cal. 2004) .................................................................. 15

*Toyz, Inc. v. Wireless Toyz, Inc.*,
   2010 WL 334475 (N.D. Cal. 2010) .................................................................... 15

*Verizon California Inc. v. OnlineNIC, Inc.*,
   2009 WL 2706393 (N.D. Cal. 2009) .................................................................. 11

*Woodward v. Mutual Benefit Life Ins. Co.*,
   1997 WL 488277 (N.D. Cal. 1997) .................................................................... 10

**FEDERAL RULES AND STATUTES**

15 U.S.C. § 1114(1)(a) ............................................................................................ 1

15 U.S.C. § 1117(c) ............................................................................................ 1, 12

15 U.S.C. § 1127 .............................................................................................. 1, 2, 4

17 U.S.C. § 504(c) ................................................................................................ 12

17 U.S.C. § 504(c)(1) ............................................................................................. 9

Fed. R. Civ. P. 59 ................................................................................................. 12

## I.  INTRODUCTION

Last week, in a mirror image of this case, in a matter of first impression a court refused to hold an ISP liable for "large scale" infringement by its customers "merely because it is felt that 'something must be done' to stop the infringements."[1]  The court distinguished between the actual **means of infringement** and the provision of Internet services, which it found merely to be only "a **precondition** to infringement."[2]  Setting aside liability here is all the more necessary given (1) Vuitton's lack of harm from the accused websites, and (2) the grossly excessive and monstrous damages award Vuitton cajoled from the jury with its claims of "large scale" infringement.

## II.  VUITTON DID NOT PROVE DIRECT OR CONTRIBUTORY INFRINGMENT

### A.  Vuitton Has Not Shown Direct *Trade*mark Infringement

#### 1.  A *Trade*mark Use Requires a Sale or a Transport in Commerce

Under the Lanham Act, the term "mark" includes *both* a "trademark" and a "service mark." 15 U.S.C. § 1127 clearly distinguishes between the two – a trademark identifies the source of goods; a service mark does so for services.  Under Section 1127, what constitutes a "use in commerce" of a trademark also differs from the use of a service mark.  A trademark is used in commerce only when it is affixed to goods *and the goods are sold or transported*.  *Id*.  In contrast, a service mark is used in the sale or *advertising* of services and when the services are rendered.  *Id*.

Vuitton cites Sections 1114(1)(a) and 1117(c) to argue that an offer for sale constitutes a use in commerce.  [Doc. 277, 3:22 & 11:15-12:6]  These sections, however, refer *generally* to marks, which necessarily includes the use of both trademarks and service marks.  Thus, they must be read in context with Section 1127, which Vuitton ignores altogether.  Instead, it attempts to distinguish *Rexel*, that Defendants cite only to show the alleged use of a trademark by a party accused of infringement must satisfy Section 1127 to constitute an infringing use.  *Rexel, Inc. v. Rexel Int'l Trading Corp.*, 540 F. Supp. 2d 1154, 1161 (C.D. Cal. 2008).  Vuitton asserted only trademarks in this suit, and so cannot rely on legal principles only applicable to service marks.  Under Section 1127, a trademark is not used in commerce until a good bearing the trademark is sold or transported.

---

[1] *Roadshow Films Pty Ltd. v. iiNet Ltd.* (No. 3) [2010] FCA 24 (Australia), Summary, ¶ 19.
[2] *See id*. at ¶ 12 (emphasis added).

**REPLY IN SUPPORT OF DEFTS' S RULE 59 MTN – C 07-3952 JW (HRL)**

1    Thus, an offer for sale, without more, does *not* constitute a use in commerce.

2         Vuitton selectively quotes *Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc.*, 285

3    F.3d 848, 855 (9th Cir. 2002) for the proposition that a "use in commerce is not limited to sales."

4    [Doc. 277, 4:1-5]  That case actually held that the "or transported" language of Section 1127 made

5    clear that a use in commerce is not so limited.  Vuitton also completely misses the crux of *Karl*

6    *Storz*.  There, Surgi-Tech charged customers a fee to completely rebuild Storz endoscopes using

7    third party parts.  *Id.* at 856.  The Ninth Circuit held that the rebuilding was "functionally equivalent

8    to a sale," because the "substance of [the] rebuild was the construction of a different product

9    associated with the Storz trademark."  *See id.*[3]  But here, Vuitton has no evidence of any act that is

10   "functionally equivalent" to the sale of its trademarked goods.

11        Lastly, Vuitton quotes *Finance Express LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160, 1172-

12   73 (C.D. Cal. 2008) to argue that "offers for sales and simple promotion uses do constitute a use in

13   commerce."  [Doc. 277, 4:10-20]  That argument is flawed for two reasons.  First, *Nowcom* was

14   wrong to hold that *Brookfield* did not address "use in commerce."  *Brookfield* actually held that

15   Congress *strengthened* this requirement by amending Section 1127 in 1988.  *Brookfield Comms.,*

16   *Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999).  *Brookfield* also held

17   that the use of moviebuff.com *as a service mark* did not occur until the defendant made a

18   "widespread and public announcement" about the imminent launch of its website.  *Id.* at 1053; *cf.* 15

19   U.S.C. § 1127 ("A service mark is used when it is used in the sale or *advertising* of services.").

20   Second, the "factual background" section in *Nowcom* makes clear that the case concerns the marks

21   plaintiff used on its *services*.  *Nowcom* at 1165.  The cases on which *Nowcom* relies, *Brookfield* and

22   *Playboy*, also involve the sale of *services*.[4]  Here, in contrast, the alleged use of Vuitton's trademarks

23   on goods is at issue.  Thus, an actual sale or transport is necessary to constitute a use in commerce.

             **2.    A Foreign Sale Is Not an Infringement**

25        Vuitton argues that the sale and shipment of accused products to its investigator constitutes

---

[3]Moreover, the rebuilt endoscopes with the Storz trademark were also transported.  *See Storz* at 853.

[4]*Brookfield* involved competing online databases of the senior user of the mark MovieBuff and the
first registrant of moviebuff.com.  *Brookfield* at 1041-42.  *Playboy Enterprises, Inc. v. Netscape
Comms., Inc.*, 354 F.3d 1020, 1023 (9th Cir. 2004) involved the sale of "keyed" advertising.

1 | trademark infringement.  [Doc. 277, 2:21-26]  This argument is without merit for three reasons.

2 |      First, all those sales occurred *entirely* in China, beyond the reach of the Lanham Act.  All of

3 | the evidence shows that Mr. Holmes purchased the accused products by sending e-mails and money

4 | to unknown persons in China (*without* going through Defendants' servers or network), rather than

5 | from any accused websites.  *See* Exh. 1622 (Doc. 270-9), 43:7-48:9 & 72:21-25.[5]

6 |      Vuitton would have the Court ignore the *Bulova* factors altogether because the Ninth Circuit

7 | allegedly requires only "some effect" rather than a "substantial effect" on United States commerce to

8 | apply the Lanham Act to foreign activity.  [Doc. 277, 12:17-26 (citing *Wells Fargo & Co. v. Wells*

9 | *Fargo Express Co.*, 556 F.2d 406, 428 (9th Cir. 1977)]  Vuitton has *not* shown, however, that the

10 | accused websites have had *any* effect on commerce.[6]  In fact, Vuitton's evidence shows that only

11 | persons overseas have viewed the accused websites.  *See* Exh. 1622, 238:16-245:3 (*discussing* Exh.

12 | 1559).  Vuitton also did *not* show that the other two *Bulova* factors – citizenship of direct infringer

13 | and conflict with foreign trademark rights – favor the extraterritorial application of the Lanham Act

14 | here.  Thus, the jury finding of direct infringement was clearly against the weight of the evidence.

15 |      Second, Mr. Holmes undoubtedly made the purchases only to create evidence for use in this

16 | suit.  *See* Exh. 1627, 17:5-22:21.  Vuitton cites *Olan Mills* (and two cases which followed it) to

17 | argue that such purchases constitute infringement.   However, all three cases involved only

18 | copyrights.[7]   But to constitute trademark infringement, a mere sale is not enough.  Infringement

19 | requires both a "use in commerce" and a "likelihood of confusion."  *See Karl Storz* at 853-54.  Mr.

---

[5] Vuitton claims that payments were completed through lvbagz.com and/or watchnreplica.net.  *See* Doc. 277, 2:24-25.  But that claim is belied by Mr. Holmes' records, which showed that payment was made through Pay Dollar (a PayPal-like service) and Wing Hang Bank to a merchant named HK Newender E-Business Company.  *See* Exh. 1622, 46:3-52:9.

[6] Vuitton attempts to show that the accused websites "specifically" target the United States through (1) the use of the English language, (2) pre-calculated shipping costs to the U.S., (3) pricing in U.S. dollars, (4) the reference to customs, (5) the trademarks of other U.S. companies such as PayPal, FedEx, and UPS, and (6) U.S. specific shipment tracking links.  First, factors (1), (3), (4), and (5) are *not* specific to the U.S.  Second, with regard to factors (2) and (6), respectively, there are also pre-calculated shipping costs and shipment tracking links for the rest of the world.  Lastly, whether the United States was "specifically" targeted does *not* change the fact that there was no evidence that the accused websites had any effect on the United States.

[7] *See Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345 (8th Cir. 1994); *Atlantic Recording Corp. v. Howell,* 554 F. Supp. 2d 976 (D. Ariz. 2008); *Ryan v. Carl Corp.*, 23 F. Supp. 2d 1146 (N.D. Cal. 1998).

1    Holmes' purchases were *not* a bona fide use of a mark in the ordinary course of trade under Section

2    1127.[8]  *See Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 936 (9th Cir.

3    2006) (holding that "bona fide" under Section 1127 means in good faith, without fraud or deceit).

4    Moreover, Mr. Holmes was certainly not confused as to the source of the accused products.  *See*

5    Exh. 1627, 39:3-40:18.  The "gravamen" of trademark infringement is whether the defendant has

6    created a likelihood of confusion; where the plaintiff's agent purchases an accused product, it "can

7    hardly argue that such action caused a likelihood of confusion," because its agent "knew exactly

8    with whom she was dealing and knew that defendants were not associated in any way with plaintiff."

9    *See Millennium Enterprises, Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 911 (D. Or. 1999)

10   (*followed by U.S. Olympic Committee v. Does*, 2008 WL 2948280, at \*2 (N.D. Cal. 2008)).

11         Lastly, even assuming, *arguendo*, that the sale or transport of the accused products

12   constitutes trademark infringement, Defendants do *not* control or monitor the means for either the

13   sale or the transport of such products.  Thus, they cannot be liable for contributory infringement.

### 3.    Vuitton Has Not Proven a Likelihood of Confusion

15         Ascribing a "presumption of a likelihood of confusion" to counterfeit goods is clearly

16   erroneous under controlling Ninth Circuit precedent.  *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo*

17   *Winery*, 150 F.3d 1042, 1052 n.11 (9th Cir. 1998).  Vuitton's argument that "the jury was not

18   required nor was it suggested that they rely on any presumption of a likelihood of confusion alone"

19   is patently absurd.  [Doc. 277, 13:12-13]  When the instructions misstate the law, prejudice is

20   presumed and the burden shifts to Vuitton "to demonstrate that it is more probable than not that the

21   jury would have reached the same verdict had it been properly instructed."  *Medtronic, Inc. v. White*,

22   526 F.3d 487, 497 (9th Cir. 2008).  Vuitton argues that "the jury was able to find likelihood of

23   confusion under multiple avenues by way of the presumption, by applying the *Sleekcraft* factors, or

24   through its own visual comparison."  [Doc. 277, 5:19-21[9]]  This is unfounded speculation.  Mr.

---

[8]In all three cases cited by Vuitton, the infringement occurred within the U.S., whereas all activities connected to the use of Vuitton's trademarks in this case occurred overseas. Mr. Holmes' purchases did not somehow transform such activities into actionable infringement in the U.S.

[9]Vuitton appears to argue that the erroneous inclusion of a presumption of confusion does not matter so long the instructions also include the *Sleekcraft* factors.  This makes no sense whatsoever.

1   Livadkin testified that, even on "the closest imitation to the genuine product . . . the qualities of the

2   nongenuine product are uncomparable to the genuine." *See* Exh. 1626, 154:3-16.  He further

3   testified that it was "quite easy" to identify a counterfeit product. *See id.* at 160:7-24.  In addition,

4   there was evidence that the accused websites expressly disclaimed Vuitton as the source of the

5   accused products, by advertising such products as "replicas." *See, e.g.*, Exh. 1620, 174:19-175:2.

6   Vuitton cannot baldly argue that the jury would have found a likelihood of confusion based on the

7   similarities between the accused "replica" products and their genuine counterparts.  No evidence

8   exists of likelihood of confusion.  Thus, no direct infringement was proven.

9   **B.    Vuitton Has Not Shown Direct Copyright Infringement**

10          Vuitton asserts copyrights on two registered works, its Multicolor Monogram fabric/leather

11   prints.  Vuitton claims its copyrights were reproduced on unauthorized merchandise, and photos of

12   such merchandise were displayed on the accused websites hosted by Defendants.  [Doc. 277, 6:7-10]

13   But to the extent that there was any reproduction of Vuitton's copyrighted works on the accused

14   products, such reproduction occurred entirely in China, outside the purview of the Copyright Act.

15   *See* Exh. 1621, 142:7-144:21.  Defendants had absolutely nothing to do with such reproduction.

16   Overseas conduct cannot constitute direct infringement, or support contributory liability.  *See*

17   *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1093 (9th Cir. 1994).

18          Vuitton's claim highlights its misunderstanding of Internet technology.  No *merchandise* was

19   displayed on the accused websites.  Rather, *images* of products are displayed only when someone

20   visits the accused websites.  Vuitton, citing the "server test" in *Amazon.com*, argues that the storage

21   and transmission of data representing those images constitute infringement.  [Doc. 277, 7:6-12]

22   However, *Amazon.com* is not applicable here because the nature of the respective copyrighted works

23   is different.  In *Amazon.com*, Perfect 10 owned copyrights in the actual photos at issue and sold

24   those very photos itself. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155 & 1159 (9th

25   Cir. 2007).  But here the copyrights cover only Vuitton's fabric/leather prints, not the accused

26   images on Defendants' servers.[10]  Google stored copies of the very copyrighted works themselves;

27   _____

28   [10]*See* Rule 59 Motion (Doc. 272), 7:2-8:3.  Vuitton's asserted copyrights do *not* cover the accused images as they are *not* derivative works based on its copyrighted prints.

1  Defendants did *not* store copies of Vuitton's copyrighted fabric/leather prints, only *photos of objects*

2  allegedly made from such copies.  Unlike Perfect 10, Vuitton does *not* own the copyrights to the

3  photos.  Google also *initiated* and *controlled* the *storage* and *communication* of infringing images.

4  *See id*. at 1160 n.6.  Not so with respect to the storage of the photos on Defendants' servers.  Third-

5  party storage of photos of products made and sold overseas is not infringement.

6        Vuitton broadly claims that "any number of [its] exclusive rights *could have been* infringed"

7  by the distribution, display, reproduction and use of its works.  [Doc. 277, 14:7-8]  But it never

8  explains which rights were at issue and how such rights were infringed.  To the extent that Vuitton

9  refers to activities concerning the accused products, everything occurred overseas without

10  Defendants' knowledge or involvement.  To the extent that it refers to the accused images, they are

11  not protected by the asserted copyrights.  Thus, no direct infringement occurred.

12        **C.**      **Vuitton Has Not Shown Contributory Infringement**

13              **1.**      **Vuitton Has Not Shown Specific Knowledge**

14        The Closing Instructions erred by allowing contributory liability to be found if Defendants

15  knew "that . . . Defendants' customers were *in the business of . . . sell[ing] goods using counterfeit*

16  *marks* and would use the services purchased from Defendants for that purpose or should have known

17  that . . . Defendants' customers were doing so."  *See* Doc. 227, 10:1-4 (emphasis added).

18        Vuitton improperly contends that the "knew or should have known" language was the proper

19  standard regarding Defendants' knowledge.  [Doc. 277, 7:21-28]  That is a red herring; the italicized

20  part clearly shows that Defendants object to their liability being based on *general knowledge*

21  regarding the sale of alleged counterfeit goods, rather than *specific knowledge of infringement*.

22  "[A]bsent any specific information which identifies infringing activity, a computer system operator

23  cannot be liable for contributory infringement."  *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d

24  1004, 1021 (9th Cir. 2001).  Vuitton argues without merit that specific knowledge is not required.

25  *Id*.; *see also Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 510 (S.D.N.Y. 2008) ("Instead,

26  courts have required a much higher showing that a defendant knew or had reason to know of specific

27  instances of actual infringement.").

28        Vuitton argues that its notices to Defendants regarding the accused websites gave Defendants

1  specific knowledge of infringement.  [Doc. 277, 7:29-8:3]  However, storing images, in and of itself,

2  infringes neither Vuitton's trademarks nor copyrights.  Nor can goods made and sold overseas be

3  infringing.  Defendants could not verify Vuitton's claims of infringement.  *See* Exh. 1628, 83:15-

4  85:7.  Where a computer system operator cannot reasonably verify a claim of infringement, his lack

5  of knowledge is reasonable and he is not liable for contributory infringement.  *See Religious Tech.*

6  *Center v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1374 (N.D. Cal. 1995).

7  ## 2.    Defendants Did Not Directly Control Means of Infringement

8          Vuitton misses the point again when it argues that Defendants had control over their servers.

9  Liability for contributory trademark infringement turns on the extent of control exercised by the

10  defendant over the third party's *means of infringement*.  *See Lockheed Martin Corp. v. Network*

11  *Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999).  Here, the activities Vuitton objects to – the offer

12  for sale of the accused products using the third-party photos – centers on the accused *websites*.  If

13  such activities even constitute infringement, the *websites and not servers are the third party's means*

14  *of infringement*.  This comports with the analysis in *Lockheed*, *Visa*, and *Tiffany*.  *Lockheed* held that

15  it is only the use of the mark on the accused websites that could constitute infringement.  *See id.* at

16  985.[11]  *Visa* likewise held that the "instrumentality" of infringement was the websites selling the

17  infringing products.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007).

18  *Tiffany* also found that eBay exercised sufficient control over its website where the infringing goods

19  were sold.  *Tiffany* at 506; s*ee also iiNet* (Exh. 1625), Reasons for Judgment, ¶¶ 400-02.

20          It is indisputable that Defendants do not exercise the requisite direct control over the accused

21  websites.  It is undisputed that they cannot prevent the accused websites from "reappearing" on their

22  servers.  *See* Exh. 1628, 131:2-132:15 & 136:21-137:20.  Vuitton baldly asserts that *Visa* is factually

23  unrelated, but does not explain why the *means of infringement* here should be broadened to include

24  Defendants' servers.  Following Vuitton's argument, if it gives notice to the local utility company

25  that shows (1) the utility supplies electricity to Akanoc, (2) Akanoc hosts an accused website,

26

27  [11]Vuitton argues that the law of the case precludes Defendants from relying on *Lockheed*.  However,
the Court did *not* rule on summary judgment whether Defendants had direct control over the means

28  of infringement.  Instead, that issue was given to the jury, albeit with erroneous instructions.

(3) links to the accused products on the accused website, the utility would have contributory liability unless it also unplugs Akanoc immediately.  *See iiNet*, ¶¶ 400-02.  This absurd outcome illustrates that concisely defining the means of infringement is necessary to limit contributory liability.

### 3.    Defendants Did Not Materially Contribute to Infringement

Contributory copyright infringement may only be found if a defendant, with knowledge of the infringing activity, materially contributes to the infringing conduct of another.  *Napster* at 1019.  Defendants distinguished this case from the circumstances under which *Visa*, *Amazon.com*, *Napster*, *Grokster*, and *Fonovisa* found material contribution.  [Doc. 272, 15:26-17:8]  Rather than address these cases, Vuitton trots out its nonsensical "bulletproof host" refrain.  [Doc. 277, 9:12-19]  Vuitton further claims, without any citation to the trial record, that it "demonstrate[d] . . . active operational involvement of Defendants" in (presumably) the alleged underlying direct infringement.  [*Id*. at 10:13-14]  But name calling – no matter how catchy – is not evidence.

Vuitton contends that the jury instructions on copyright may "incorporate the services that constituted the material contribution."  *See id*. at 16:21-28.  This is without merit.  The jury, as the fact finder, must decide *whether* the services provided by Defendants materially contributed to the alleged infringement.  *See Ellinson v. Robertson*, 357 F.3d 1072, 1077-78 (9th Cir. 2004) (whether AOL materially contributed to the copyright infringement is a triable issue of fact).  The instructions impermissibly equated Defendants' provision of services with material contribution, and removed this issue of material fact from the jury.  This clear error gave Vuitton an automatic verdict.

### 4.    Improper Instructions on Defendants' Responses to Vuitton's Notices

Vuitton does *not* dispute that the instructions regarding Defendants' *responses* to Vuitton's notices of alleged infringement were conflated with those on Defendants' *knowledge*, or that the jury was *not* told that Defendants may *avoid contributory liability* if they took reasonable and feasible steps to curb access to accused websites upon specific knowledge of infringement.  [Doc. 277, 17:5-13]  Under *Inwood*, *Visa*, and *Amazon.com*, such actions are a defense.  [Doc. 272, 17:17-18:1]  This error significantly prejudiced Defendants.  Vuitton bears the burden to show the jury would have returned the same verdict even if correctly instructed on this issue.  Instead, Vuitton only argues this error did not matter because the jury was instructed to consider Defendants' responses.

Vuitton incorrectly implies the inclusion of the "Defense to Copyright Infringement" section in the jury instructions somehow remedies the above error.  First, taking reasonable steps to curb access *also* provides a defense to contributory trademark infringement.  *See Visa* at 807.  Second, the DMCA specifically provides that the "failure of a service provider's conduct to qualify for limitation of liability under this section shall not bear adversely upon the consideration of a defense . . . that the service provider's conduct is not infringing under [the DMCA] or any other defense."  *Amazon.com* at 1158 n.4 (citing 17 U.S.C. § 512(l)).  So the inclusion of the DMCA defense does *not* negate the need to correctly instruct the jury regarding the import of Defendants' responses to their liability.

## III.   THE STATUTORY DAMAGES AWARDS MUST BE VACATED

### A.   The Awards Here Are Beyond the Statutory Maximums

Damages awards here are multiples of the statutory maximums.  Vuitton's contrary contention ignores the law and speculates as to jury intent.  Two points are pertinent:  (1) Defendants are jointly and severally liable, if at all; (2) the jury actually awarded $32,400,000 [Doc. 234, 9:5 & 13:8] where the statutory maximum was $17,300,000.  [Doc. 272, 19:3-13]

#### 1.   Defendants Are Jointly and Severally Liable, If Liable At All

Joint and several liability attaches to multiple defendants involved in the same tortious act of trademark or copyright infringement.  17 U.S.C. § 504(c)(1) ("copyright owner may elect . . . statutory damages for all infringements . . . [of] one work . . . for which any **two or more infringers are liable jointly and severally**") (emphasis added); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 207 (Fed. Cir. 1981) ("Courts have long held that in … trademark … and copyright infringement cases … joint tortfeasors are jointly and severally liable"); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1023 (9th Cir. 1985).  So the jury was instructed to grant awards "as to [] Defendant **or Defendants** ... per counterfeit mark" and "per copyright … infringe[d] … [by] **Defendants**."  [Doc. 235, 8:20-23 & 12:24-2 (emphasis added)]

Vuitton cannot collect triple damages by accusing three defendants of the same infringement.  Nor can it apportion an excessive award to justify it.  If Vuitton wanted findings on separate infringements, it would not have opposed Defendants' proposed verdict forms asking the jury to identify which Defendant infringed which marks or works and how.  [Docs. 219 to 220-16]

### 2.   Vuitton Improperly Speculates About the Jury's Intent

#### a.   The Jury Did Not Break Down Awards per Work or Mark

Vuitton speculates that the $31.5M trademark award means "the jury found damages of $700,000 for each of the fifteen trademarks . . . infringed" and "$150,000 [] for each of two copyrights." [Doc. 277, 19:5-11]  The verdict form only reflects total damages awarded:  $31.5M for trademark infringement and $900,000 for copyright infringement **without** a per work/mark decision.  Where a verdict reveals a total award, not even juror affidavits can explain its components. *Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc*., 528 F.3d 1001, 1022 (8th Cir. 2008).  It is improper to speculate how a jury arrived at an unapportioned award.  *See, e.g., Jacobs v. Local Union 48*, 2002 WL 31470405, at *2 (D. Or. 2002); *Woodward v. Mutual Benefit Life Ins. Co*., 1997 WL 488277, at *2 (N.D. Cal. 1997).  Vuitton cannot speculate to apportion or justify the awards.

#### b.   The Jury Did Not Grant Separate Awards for Each Defendant

The jury was not instructed "to arrive at awards as to each of the three Defendants." [Doc. 277, 19:18]  It was only asked, "What amount, if any, do you award to [Vuitton] for statutory damages for contributory [] infringement?"  [Doc. 235, 8:15-16 & 12:22-23]  Note the singular "amount."  In *Rodick v. City of Schenectady*, 1 F.3d 1341, 1349 (2d Cir. 1993), a jury awarded $55,000 against each of four defendants but did not total its award.  A new trial followed the court's refusal to speculate if the jury meant to award $55,000 or $220,000.  *Id*.  As in *Rodick*, the jury here indicated equal amounts per Defendant.  Whether it concluded "[D]efendants should each be held separately liable" [Doc. 277, 20:1-3] is impermissible speculation.  Unlike in *Rodick*, we know the jury's total award: $32,400,000, well beyond statutory maximums.  [Doc. 272, 19:3-13]

### B.   The Awards Here Are Unsustainable Under *Gore* and *Campbell*

All three *Gore* guideposts (Vuitton calls them *Campbell* factors) show the awards here are unconstitutionally excessive.

**Reprehensibility**:  Vuitton equates willfulness with reprehensibility.  But none of Vuitton's assertions – all contradicted by cited evidence – are relevant to *Gore's* reprehensibility subfactors. Defendants addressed the subfactors:  any harm was purely economic; no evidence showed a threat to health or safety; and Vuitton was not financially vulnerable.  [Doc. 272, 25:2-26:28]

**Ratio of Award to Harm:**  Vuitton presented no evidence of harm.  The explicitly punitive $32.4M awards here cannot bear any relation to actual harm.  Proper statutory damages "should bear some relation to the actual damages suffered."  *Bly v. Banbury Books, Inc.,* 638 F. Supp. 983, 987 (E.D. Pa. 1986).  Vuitton contends "that hundreds of commercial websites . . . [e]ach . . . engaged in the sale of counterfeit merchandise that ... undermine[d] the sale of legitimate Louis Vuitton Product which commands a substantial premium."  [Doc. 277, 24:3-10]  Vuitton's unexplained citation to trial documents proves no harm.  No evidence shows "hundreds" of sales.  *Id.*  No evidence shows any undermined sales.  To the contrary; Vuitton's in-house counsel testified that commoners who buy counterfeits would not buy genuine products, which might disgust Vuitton's customers.  [Doc. 270-7, 166:1-7]  No evidence shows Vuitton had to lower its exorbitant prices.  And no evidence shows hundreds of counterfeiting sites remained on Defendants' servers during this suit.  Instead, the evidence shows Defendants' actions resulted in each allegedly infringing website noticed by Vuitton moving elsewhere or shutting down as a result of Defendants' actions.  [Docs. 249 & 251]

**Comparable Cases:**  Vuitton cites three cases[12] where substantial damages were awarded.  [Doc. 277, 24:11-21]  But Defendants' conduct here is not comparable.  In *Peer* and *Krypton,* defendants ceased paying royalties and continued distributing copyrighted media despite plaintiffs' legal actions.  In *Verizon,* the defendant did not defend its actions, ran a "massive cybersquatting operation" with over 600 domain names, hid further misconduct by using "numerous aliases," and lied to plaintiff and the court.  In each case, defendants actually knew of direct infringement and affirmatively acted to further it.  The evidence here shows the Defendants did none of that.

**C.**    **Awards Here Are Unconstitutional Even If Within Statutory Damages Ranges**

Vuitton's assertion that statutory damages are always constitutional is simply false.  "[A] statutory damages award may violate the due process rights of a defendant where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable."  *Facebook, Inc. v. Wallace*, 2009 WL 3617789, at *2 (N.D. Cal. 2009) (quotation

---

[12](1) *Peer Int'l Corp. v. Pausa Records Inc.*, 909 F.2d 1332 (9th Cir. 1990); (2) *Columbia Pictures Indus., Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001); and (3) *Verizon California Inc. v. OnlineNIC, Inc.*, 2009 WL 2706393 (N.D. Cal. 2009).

1   marks omitted) (quoting *U.S. v. Citrin*, 972 F.2d 1044, 1051 (9th Cir. 1992), (in turn quoting *St.*

2   *Louis, Iron Mt. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919))).

3              If a statute provides for a range of penalties depending on the
    severity of the violation, []it cannot be presumed that the defendant

4   had notice that the . . . *specific* conduct at issue in the case [warrants]
    the maximum fine provided by the statute. . . . [C]onstitutionally

5   adequate notice [under *Gore*] . . . in a particular case depends upon
    whether this defendant had reason to believe that his specific conduct

6   could result in a particular damage award.

7   *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1337 (11th Cir. 1999) (emphasis in

8   original).  *Cf. Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1311-12 (11th Cir. 2009) (no

9   constitutional violation where jury's discretion to award damages "is limited to a narrow, statutorily-

10  established range," of $100 to $1,000, in contrast with the "Copyright Act . . . and the

11  Communications Act . . . [which] both contain larger statutory-damages ranges").   Vuitton

12  completely ignores Defendant's Rule 59 cited authority.  Vast statutory damages ranges did not

13  satisfy Defendants' constitutional right to notice of the statutory damages awarded here.

14        Vuitton is also wrong that "Congress has provided clear standards to help a jury arrive at a

15  just award."  [Doc. 277, 20:16-18]  *See In re Mann*, 410 B.R. 43, 49 (Bankr. C.D. Cal. 2009) (15

16  U.S.C. § 1117(c) "does not provide guidelines for . . . determining an appropriate award," so courts

17  use common law factors developed under 17 U.S.C. § 504(c)).  Congress did not provide a system

18  like the Federal Sentencing Guidelines that can be used to arrive at a proper award.  Neither 17

19  U.S.C. § 504(c) nor 15 U.S.C. § 1117(c) guides a jury as to whether it should award:

20        •   $750 versus $150,000 (200 times greater) for willful copyright infringement; or

21        •   $1,000 versus $1,000,000 (1,000 times greater) for willful trademark infringement.

22  The Copyright and Lanham Acts ranges dwarf the narrow range of $100 to $1,000 (merely 10 times

23  greater).  *Harris* at 1311.  With no jury guidance, Defendants were impermissibly left "at large,

24  wandering in deserts of uncharted discretion . . . [where the jury's] only restraint beyond a core sense

25  of fairness [was] the due process limit."  *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2628 (2008).

26        Rather than address notice and guidance issues, Vuitton throws up straw man arguments.

27        First, Defendants never argued "that statutory damages should not be decided by a jury"

28  because "the Supreme Court's decision in *Feltner v. Columbia Pictures Television*, 523 U.S. 340,

355 (1998) invalidated [] statutory damages provision[s]."  [Doc. 277, 20:21-29]  Defendants

conceded the statutes might be applied constitutionally in some cases.  [Doc. 272, 23:9-11]  But they

were demonstrably not applied constitutionally **in this case.**  [*Id.* at 23:7-9, 24 & 24:4-6, 10-11]

Second, Defendants never argued that a lack of harm absolutely bars all statutory damages awards.

Rather, Vuitton's failure to prove any real harm – quantifiable or not – is one reason the statutory

damages awards of $32.4M **in this case** cannot stand.  *See, e.g., Microsoft Corp. v. V3 Solutions,*

*Inc.*, 2003 WL 22038593, at *16 (N.D. Ill. 2003) (awarding $5,000 per copyright and trademark

willfully infringed through counterfeiting because "statutory damages . . . should . . . not [be] unduly

large considering [there was] little, if any, actual injury").  [Doc. 272, 30:2-9]

### D.      Awards Here Are Unsustainable Independent of Constitutional Considerations

Independent of the *Gore* framework, Vuitton acknowledges that an award must be vacated if:

(1) grossly excessive and monstrous; (2) not supported by the evidence; or (3) based on speculation

or guesswork.  *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356,

1360 (9th Cir. 1984).  While one condition would require vacatur, all three are satisfied here.

### 1.      The Awards Are Grossly Excessive and Monstrous

The awards here are both grossly excessive and monstrous.  Even Vuitton admits there is no

relevant precedent for the massive awards here.  [Doc. 277, 24:11-15]  This is not because

Defendants' conduct is particularly egregious.  It is because:  (1) liability cannot attach for similar

conduct; and (2) the awards here dwarf those in cases with far more egregious conduct supporting

liability. [Doc. 272, 28:19-30:17]  Awards here also grossly exceed statutory maximums.

### 2.      The Awards Are Clearly Not Supported by the Evidence

Not even Vuitton believed the evidence at trial supported a $32.4M award; it only asked for

damages of $1M in closing argument.  Exh. 1624, 97:15-23.  Vuitton does not explain how the

evidence supported an unprecedented award over thirty times its own request and well over statutory

maximums.   Ninth Circuit authority cited by Vuitton shows how exceptional this case is.

"Generally, a jury's award of damages is entitled to great deference. … This, however, appears to be

the rare case in which it is sufficiently certain that the jury award was … based on improperly

considered evidence, directly traceable to [erroneous jury instructions]."  *Henry v. Lehman Commer.*

1    *Paper, Inc. (In re First Alliance Mortg. Co.),* 471 F.3d 977, 1001 (9th Cir. 2006) (vacating award

2    consistent with erroneous damages instructions that were corrected before jury returned its verdict).

3         The jury instructions here:  misstated legal standards; mandated enhanced statutory damages;

4    explicitly instructed on purely punitive damages; failed to provide (and deleted) guidance as to

5    proper statutory and punitive damages; and instructed the jury to deter future infringement regardless

6    of where, when, how or by whom.  All of this despite extensive testimony on counterfeiting having

7    nothing to do with Vuitton or Defendants, such as about families locked in sweatshops with noxious

8    fumes.  [Doc. 272, 22:20-26]  Unlike in *Henry*, instructions here were never corrected.

9                    **3.      The Awards Result from Speculation and Guesswork**

10        Where the jury had zero guidance, its awards were necessarily based on speculation and

11   guesswork.  *Philip Morris USA v. Williams*, 549 U.S. 346, 354 (2007) (instructions allowing award

12   based partially on harm to nonparties are "standardless" so **"[t]he jury will be left to speculate,"**

13   magnifying the threat to due process of arbitrary, uncertain and unnoticed awards) (emphasis added).

14        Vuitton only argues that the jury was "careful" because it asked "four questions concerning

15   the determination of damages."  [Doc. 277, 18:19-24]  This no more proves the jury was careful than

16   it was baffled.  And the test is not whether a jury was "careful."  It does a jury no good to carefully

17   follow erroneous and inadequate jury instructions.  *See, e.g., Rodriguez v. Farm Stores Grocery,*

18   *Inc.,* 518 F.3d 1259, 1268, 1270 (11th Cir. 2008).

19            **E.      Chen Did Not Authorize, Direct or Participate in Any Infringement**

20        Vuitton again takes a litigation-by-sound-bite approach to discuss Chen's liability.  Quoting

21   *Wolf Designs, Inc. v. DHR & Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004), it names Chen as

22   the "guiding spirit in the alleged wrongdoing," without examining *Wolf Designs*.  [Doc. 277, 25:1-

23   10.]  The individual there had the final say on which infringing products would be offered for sale.

24   *Wolf Designs* at 1069.  But Chen had absolutely no input on the accused products, sales or websites.

25        In all cases cited by Vuitton holding a corporate officer liable, the individual committed a

26   deliberate act to further his company's direct infringement.  In *Committee for Idaho's High Desert,*

27   *Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996), the individual defendants deliberately adopted the

28   plaintiff's trademark when naming their own corporation, committing the very act of infringement.

1   In *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1011 & 1021 (9th Cir. 1985),

2   Jacoby gave Transgo's confidential information to his supplier, and asked his supplier to leave its

3   name off its products so that his company could pass them off as Transgo's.  In *Novell, Inc. v.*

4   *Unicom Sales, Inc.*, 2004 WL 1839117, *6-7 (N.D. Cal. 2004), Saghafian personally misrepresented

5   to Novell the extent of his company's infringement, and reneged on his promise to stop infringing.

6          The evidence here shows Chen attempted to curb access to the accused websites by sending

7   notices, disabling IP addresses, and unplugging servers.  *See* Exh. 1623, 94:2-96:25, 115:4-15 &

8   120:8-122:9.  Vuitton claims he should have done more, such as charging $25 fees and terminating

9   "recidivists."   [Doc. 277, 25:15-18]   Chen reasonably testified it made no sense to terminate a

10  reseller customer who had only nine Vuitton complaints on three servers out of the hundred servers

11  her company rented.  *See* Exh. 1629, 49:6-52:13.  Chen's refusal to take unreasonable actions does

12  *not* rise to the level of authorizing, directing or participating in infringement.  *Transgo* at 1021 ("A

13  corporate officer . . . is . . . personally liable for all torts which he authorizes or directs or in which he

14  participates.").  The jury instructions fail to set forth this standard, simply equating ownership with

15  liability.  *See* Doc. 227, 7:4-5 ("or in the case of an individual Defendant, owned or operated a

16  company that sold such services").  While the instructions also required knowledge on Chen's part,

17  "mere knowledge of tortious conduct by the corporation is not enough to hold a director or officer

18  liable . . . absent other 'unreasonable participation' in the unlawful conduct by the individual." *Toyz,*

19  *Inc. v. Wireless Toyz, Inc.*, 2010 WL 334475, at *7 (N.D. Cal. 2010) (citing *Wolf Designs* at 1072).

20  **IV.   CONCLUSION**

21         For the foregoing reasons, the Court should vacate the damages awards or grant a new trial.

22  Dated:  February 8, 2010                **GAUNTLETT & ASSOCIATES**

23

24                                          By:     s/James A. Lowe
                                                    David A. Gauntlett
25                                                  James A. Lowe
                                                    Raymond K. Chan
26                                                  Preston K. Ascherin
                                            Attorneys for Defendants Akanoc Solutions,
27                                          Inc., Managed Solutions Group, Inc., and Steven
                                            Chen

28